**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
633 West 5th Street, Suite 3500
Los Angeles, CA  90071-2054
Phone:      (213) 239-5100
Facsimile:  (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
Stacy S. Jakobe (*pro hac vice*)
sjakobe@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:      (312) 222-9350
Fax:           (312) 527-0484

Attorneys for Defendants Kraft Foods Global, Inc., improperly sued as Kraft Foods North America, and Kraft Foods Inc.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated,<br><br>          Plaintiffs,<br>        vs.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br><br>          Defendants. | No. CV10-01028 (GW) (AGRX)<br><br>**KRAFT FOODS GLOBAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO RULES 9(B) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTORITIES IN SUPPORT**<br><br>Hearing Date: June 10, 2010<br>Time: 8:30 a.m.<br>Courtroom: 10<br>Judge: Hon. George H. Wu<br>Action Filed: February 11, 2010 |

# **TABLE OF CONTENTS**

Table of Contents ................................................................................ i

Memorandum Of Points & Authorities...................................... 1

Introduction ................................................................................ 1

Summary of Allegations ........................................................... 2

Argument...................................................................................... 4

I.   Because All Statements on Kraft's Labels Fully Comply With Federal Law and Are Not Misleading, the Statements Are Not Actionable and Plaintiffs' State Law Claims Are Expressly Preempted.............................. 5

   A.   Plaintiffs' Request That This Court Impose Labeling Requirements for *Trans* Fat Different Than Those Required by the FDA Are Expressly Preempted. ...................................................... 6

   B.   Plaintiffs' Claims Based on True Statements That Products Contain "No Cholesterol" Are Expressly Preempted. ...................... 8

   C.   Plaintiffs' Claims Related to "Good Source of Calcium, Iron & Zinc" Claim Are Expressly Preempted. ............................. 11

   D.   Plaintiffs' Claims Related to "Provides" or "Contains 5 Grams Whole Grain!" Are Expressly Preempted. ........................ 12

II.   Plaintiffs' Claims Should Be Dismissed Because the FDA Has Primary Jurisdiction Over Matters of Food Labeling................................ 13

III.   Plaintiffs' Claims Fail Because All Statements Made on Kraft Foods' Labels Are True and Non-Deceptive or Constitute Mere Puffery. .............. 16

   A.   Plaintiffs' Claims Are Based on Representations That Are True and Non-Deceptive................................................... 16

      (i)    "Made With Real Vegetables" Is True and Non-Deceptive.... 16

      (ii)   "Nutritionists Recommend" Is True and Non-Deceptive. ....... 17

   B.   Plaintiffs' Claims Are Based on Non-Actionable Puffery................. 19

IV.   Plaintiffs Fail to Adequately Plead with Particularity the Facts Underlying Their Alleged Purchases and Their Alleged Reliance on Misrepresentations. ............................................................... 21

V.   Plaintiffs Lack Standing to Pursue Any of the Claims Alleged in the Complaint........................................................................... 22

A.  Plaintiffs Lack Standing to Bring a Claim Under the Lanham Act Because They Cannot Allege a Competitive Injury................................ 22

B.  Plaintiffs Lack Standing to Assert a Claim Under UCL, FAL or CLP Because They Fail to Allege a Cognizable Injury. ..................... 23

Conclusion.............................................................................................. 24

Certificate Of Service............................................................................. 26

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Anderson v. Clow,*
    89 F.3d 1399 (9th Cir. 1996) ................................................................ 4

*Ashcroft v. Iqbal,*
    556 U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).................. 23

*Balistreri v. Pacifica Police Department,*
    901 F.2d 696 (9th Cir. 1990) ............................................................... 4

*Barrus v. Sylvania,*
    55 F.3d 468 (9th Cir. 1995) ............................................................... 22

*Bell Atlantic Corp. v. Twombley,*
    550 U.S. 544, 127 S. Ct. 1955, L. Ed. 2d 929 (2007)........................ 23

*Cattie v. Wal-Mart Stores, Inc.,*
    504 F. Supp. 2d 939 (S.D. Cal. 2007)................................................. 24

*City of Arcadia v. U.S. Environmental Protection Agency,*
    411 F.3d 1103 (9th Cir. 2005) ............................................................. 4

*Clark v. Time Warner Cable,*
    523 F.3d 1110 (9th Cir. 2008) ..................................................... 14, 15

*Coastal Abstract Service, Inc. v. First American Title Insurance Co.,*
    173 F.3d 725 (9th Cir. 1999) ....................................................... 19, 20

*Davis v. Chase Bank U.S.A., N.A.,*
    650 F. Supp. 2d 1073 (C.D. Cal. 2009) .............................................. 24

*Fraker v. KFC Corp.,*
    No. 06-CV-01284-JM (WMC),
    2007 WL 1296571 (S.D. Cal. Apr. 30, 2007)....................... 4, 8, 15, 20

*Freeman v. Time, Inc.,*
    68 F.3d 285 (9th Cir. 1995) ................................................................. 6

*Haskell v. Time, Inc.,*
    857 F. Supp. 1392 (E.D. Cal. 1994)................................................... 16

*Hoyte v. Yum! Brands, Inc.*,
   489 F. Supp. 2d 24 (D.D.C. 2007) ............................................... 4, 20

*In re Pepsico, Inc. Bottled Water Marketing and Sales Practices Litigation*,
   588 F. Supp. 2d 527 (S.D.N.Y. 2008) ................................... 5, 8, 12, 13

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................. 21

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) .............................. 24

*Lyons v. Coxcom, Inc.*,
   No. 08-CV-02047-H (CAB), 2009 WL 347285 (S.D. Cal. Feb. 6, 2009) .. 19, 21

*McKinniss v. Sunny Delight Beverages Co.*,
   No. CV 07-02034-RGK (JCX), 2007 WL 4766525
   (C.D. Cal. Sept. 4, 2007) ........................................ 2, 4, 6, 16

*Mills v. Giant of Maryland, LLC*,
   441 F. Supp. 2d 104 (D.D.C. 2006) ................................... 5

*Newcal Industries, Inc. v. Ikon Office Solutions*,
   513 F.3d 1038 (9th Cir. 2008) ..................................... 19

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ............................. 19

*Pelman ex rel. Pelman v. McDonald's Corp.*, No. 02 Civ. 7821 (RWS), 2003
   WL 22052778 (S.D.N.Y. Sept. 5, 2003) ............................. 10

*Pelman v. McDonald's Corp.*,
   452 F. Supp. 2d 320 (S.D.N.Y 2006) ............................... 10

*Pelman v. McDonald's Corp.*,
   237 F. Supp. 2d 512 (S.D.N.Y. 2003) ............................... 20

*Reddy v. Litton Industries, Inc.*,
   912 F.2d 291 (9th Cir. 1990) ..................................... 4

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ......... 24

*Sugawara v. Pepsico, Inc.,*
   No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115
   (E.D. Cal. May 21, 2009).................................................................... 6

*Synetk Semiconductor Co. v. Microchip Technology Inc.,*
   307 F.3d 775 (9th Cir. 2002) .......................................................... 14

*Tylka v. Gerber Products. Co.,*
   No. 96 C 1647, 1999 WL 495126 (N.D. Ill. July 1, 1999)............... 20

*United States v. General Dynamics Corp.,*
   828 F.2d 1356 (9th Cir. 1987) ....................................................... 14

*United States v. Western Pacific R.R. Co.,*
   352 U.S. 59 (1956) ........................................................................ 14

*Videtto v. Kellogg USA,*
   No. 2:08-cv-01324-MCE-DAD, 2009 WL 1439086
   (E.D. Cal. May 21, 2009)............................................................... 6

*Von Grabe v. Sprint PCS,*
   312 F. Supp. 2d 1285 (S.D. Cal. 2003)..................................... 22, 24

*Wright v. General Mills, Inc.,*
   No. 08cv1532 2009, WL 3247148 (S.D. Cal. Sept. 30, 2009)............... 2, 23, 24

STATE CASES

*Lavie v. Proctor & Gamble Co.,*
   105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486 (2003) ...................... 6

FEDERAL STATUTES

15 U.S.C. § 1125 *et seq.*............................................................................. 2

21 U.S.C. § 301 *et seq.*.............................................................................. 5

21 U.S.C. §§ 341 *et seq.*............................................................................ 5

21 U.S.C. § 343(q), (r) .............................................................................. 5

21 U.S.C. § 343-1(a)(3)............................................................................. 5

21 U.S.C. § 343-1(a)(4)-(5)....................................................................... 5

21 U.S.C. § 393(b)(2)(A) ..................................................................... 14

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 *et seq.* ................................................ 2

Cal. Bus. & Prof. Code § 17500 *et seq.* ................................................ 3

Cal. Civ. Code § 1750 *et seq.* .............................................................. 3

Cal. Civ. Code § 1782(a) ...................................................................... 24

**RULES**

Federal Rule of Civil Procedure 9(b) ..................................................... 21

Federal Rule of Civil Procedure 12(b)(6) .......................................... 4, 19

**REGULATIONS**

21 C.F.R. § 10.25(b) ............................................................................. 14

21 C.F.R. § 100.1 .................................................................................. 5

21 C.F.R. §§ 101.1-101.18 .................................................................... 14

21 C.F.R. § 101.9(c)(2)(ii) ........................................................ 4, 7, 9, 11

21 C.F.R. § 101.13(i)(3) ......................................................................... 12

21 C.F.R. § 101.22 ................................................................................. 14

21 C.F.R. § 101.30 ................................................................................. 14

21 C.F.R. § 101.36 ................................................................................. 14

21 C.F.R. §§ 101.42-101.45 .................................................................. 14

21 C.F.R. § 101.54 ................................................................................. 14

21 C.F.R. § 101.54(c)(1) ........................................................................ 11

21 C.F.R. § 101.56 ................................................................................. 14

21 C.F.R. §§ 101.60-101.62 .................................................................. 14

21 C.F.R. § 101.62(d)(1)(i)(A)-(D) ............................................................ 8

21 C.F.R. § 101.65 .................................................................................. 14

21 C.F.R. § 101.67 .................................................................................. 14

21 C.F.R. § 101.69 .................................................................................. 14

21 C.F.R. §§ 101.70-101.83 ..................................................................... 15

21 C.F.R. § 101.75 (a)(2), (b)(1) ........................................................ 9, 10

21 C.F.R. § 101.93 .................................................................................. 15

21 C.F.R. § 101.95 .................................................................................. 15

21 C.F.R. § 101.100 ................................................................................ 15

21 C.F.R. § 101.105 ................................................................................ 15

21 C.F.R. § 101.108 ................................................................................ 15

68 F.R. 41507, 41508 (July 11, 2003) ................................................. 9, 16

**OTHER AUTHORITIES**

Food and Drug Administration, "Guidance for Industry and FDA Staff:  Whole
    Grain Label Statements" (2006) ............................................... 12, 13

H.R. Rep. No. 101-538 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336 ................. 5

## NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on June 10, 2010 at 8:30 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable George H. Wu, United States District Judge, Central District of California, located at 225 East Temple Street, Los Angeles, CA 90012, Defendant Kraft Foods Global, Inc. will move, and hereby does move, to dismiss the Complaint of Plaintiffs Evangeline Red and Rachel Whitt pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) on the ground that the Complaint fails to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, and supporting Memorandum of Points and Authorities (attached), the declaration of Ellen M. Smith, Defendant's Request for Judicial Notice, and the court records and files in this Action.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3 which took place by telephone on March 30, 2010.

Dated:        April 6, 2010

DEAN N. PANOS
KENNETH K. LEE
STACY S. JAKOBE

By: /s/ Dean N. Panos

Attorneys for Defendants KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.

## MEMORANDUM OF POINTS & AUTHORITIES

### INTRODUCTION

Plaintiffs Evangeline Red and Rachel Whitt's lawsuit alleging supposedly inaccurate food labels suffers from a fatal flaw:  Nearly all of the claims are preempted by a comprehensive federal system of regulation for food labeling.  Plaintiffs allege that the labeling of certain Kraft Foods snack products is misleading and deceptive under the federal Lanham Act and three California consumer protection statutes because the labels do not disclose the fact that the products contain trace amounts of *trans* fat.  Plaintiffs contend that the presence of these trace amounts negates all other health and nutrition benefits from these products and should preclude Kraft Foods from marketing the positive nutritional attributes these products possess or suggesting that the products can be part of a healthful lifestyle.  Nowhere, however, do Plaintiffs allege that Kraft Foods' labeling and marketing of its snack products violates the comprehensive regulatory scheme for food labeling set up by the Federal Food, Drug, and Cosmetic Act ("FFDCA") and Nutrition Labeling and Education Act ("NLEA"), as administered by the U.S. Food and Drug Administration ("FDA").  Nor can they point to any statement made in Kraft Foods' packaging that is objectively false.  Only by ignoring federal law and relying on a theory of recovery that has no legal support can Plaintiffs pursue this litigation.

In fact, all of the Kraft Foods labels at issue fully comply with the labeling mandates of the FDA regulations, are true and not misleading, and provide no basis for any of Plaintiffs' claims.  FDA regulations **require** that trace amounts of *trans* fat of less than .5 grams per serving be disclosed on the nutrition facts panel as "0 g," and Kraft Foods' labels comply with that requirement.  Similarly, information on Kraft Foods' labels regarding cholesterol, whole grains and various nutrients mirrors the federal mandates.  Plaintiffs' demand that this Court impose labeling requirements on Kraft Foods that are different than the federal scheme based solely on the presence of

trace amounts of *trans* fat runs afoul of the express preemption provision of the NLEA and should be rejected.  Moreover, all factual statements on Kraft Foods' packaging are true and objectively not misleading, while various other generalized statements on the packaging are mere puffery and non-actionable.  Finally, Plaintiffs have failed to satisfy the fundamental pleading requirements of federal and California law by failing to allege with specificity *which products* they allegedly purchased, *which* purported material misrepresentations they relied upon, and *what* purported injury they suffered.  Accordingly, Plaintiffs' claims should be dismissed in their entirety.

## SUMMARY OF ALLEGATIONS

Plaintiffs attack as false and deceptive the product labeling of the following Kraft Foods snack food brands: (i) Teddy Grahams Graham Snacks (Cinnamon, Honey, Chocolatey Chip, Mini Honey) (respectively attached hereto as Exhibits A, B, C, and D); (ii) Vegetable Thins Baked Snack Crackers (attached hereto as Exhibit E); (iii) Ritz Crackers (Roasted Vegetable, Hint of Salt, Reduced Fat, Whole Wheat) (respectively attached hereto as Exhibits F, G, H, and I); (iv) Original Premium Saltine Crackers (attached hereto as Exhibit J); (v) Honey Maid Grahams (Honey, Low Fat Honey) (respectively attached hereto as Exhibits K and L); and (vi) Ginger Snaps (attached hereto as Exhibit M).[1]  Plaintiffs claim that the labeling violates the Federal Lanham Act, 15 U.S.C. § 1125 *et seq.*, the California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq.*, the California False Advertising Law

---

[1] Plaintiffs' Complaint contains images of selected portions of packaging for these Kraft Foods products.  Because the Court is entitled to consider the *entire* label and because the images attached to the Complaint are grainy and difficult to view, Kraft Foods attaches to this motion true and correct copies of the product labels. *See Wright v. General Mills, Inc.*, No. 08cv1532, 2009 WL 3247148, at *4-5 (S.D. Cal. Sept. 30, 2009) (taking judicial notice of and incorporating by reference product labels and packaging items because they serve as the basis for the allegations in the plaintiff's complaint); *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-02034-RGK (JCX), 2007 WL 4766525, at *4 n.1 (C.D. Cal. Sept. 4, 2007) (taking judicial notice of examples provided by defendant).  Filed contemporaneously with this Motion to Dismiss is Kraft Foods' Request for Judicial Notice of Kraft Foods' packaging.

("FAL"), Bus. & Prof. Code § 17500 *et seq.*, and the California Consumer Legal Remedies Act ("CLRA"), Civ. Code § 1750 *et seq.*, because Kraft Foods makes certain factual and laudatory statements regarding the health and nutritional benefits of these products despite the fact that the products contain trace amounts of *trans* fat. Specifically, Plaintiffs contend that these trace amounts make it misleading for Kraft Foods to include the following statements:

- *"No Cholesterol"* - various products (Compl. ¶¶ 55, 62, 64, 66, 69, 72, 74, 77).

- *"A fun, wholesome choice for your family"*- Teddy Grahams  (Compl. ¶ 56).

- *"A good source of Calcium, Iron & Zinc to Help Support Kids' Growth and Development"* - Teddy Grahams  (Compl. ¶ 57).

- *"Smart Choices Program"* - Teddy Grahams  (Compl. ¶ 58).

- *"Made With Real Vegetables"* - Vegetable Thins and Ritz Crackers Roasted Vegetable (Compl. ¶¶ 59, 60).

- *"Provides 5g Whole Grain"* and *"Contains 5 Grams Whole Grain! per serving"* - Ritz Crackers Whole Wheat and Honey Maid Low Fat Grahams (Compl. ¶¶ 67, 73).

- *"STEPS TO A HEALTHIER YOU"* and *"Nutritionists Recommend"* - Ritz Crackers Whole Wheat  (Compl. ¶ 67).

- *"Sensible Snacking"* and *"Sensible Solution"* - Original Premium Saltine Crackers, Honey Maid Grahams and Ginger Snaps (Compl. ¶¶ 70, 73, 75).

The Complaint includes a ten-page "Summary of the Strong Evidence of Health Dangers of Artificial Trans Fat" (Compl. ¶¶ 13-55) but does not even mention the comprehensive federal regulation of the labeling of products containing *trans* fat, including the mandate that trace amounts of *trans* fat of less than .5 grams per serving

1   be disclosed as "0 g" on the nutrition facts panel.  21 C.F.R. § 101.9(c)(2)(ii) (July 11,

2   2003) (effective Jan. 1, 2006).  Nor does the Complaint mention the federal regulations

3   regarding labeling information related to cholesterol levels, nutrient content and

4   presence of whole grain, with which Kraft Foods also fully complies.

5       The Complaint alleges that Plaintiffs "repeatedly purchased packaged food

6   products made by Kraft Foods during the class period" (Compl. ¶ 4) but provides no

7   specifics regarding those purchases.  While the Complaint alleges that all of the above-

8   referenced statements made on Kraft Foods' labels were false and misleading,

9   Plaintiffs do not allege which such statements were material and do not identify which

10  statements they relied upon in making their purchases.

11  **ARGUMENT**

12      Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where

13  a plaintiff's complaint lacks a cognizable legal theory or sufficient facts to support a

14  cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th

15  Cir. 1990); *see also City of Arcadia v. U.S. Environmental Protection Agency*, 411

16  F.3d 1103, 1106 n.3 (9th Cir. 2005) ("Dismissal is proper when there is a 'lack of a

17  cognizable legal theory' to support a claim.").  Although factual averments must be

18  accepted as true, "[c]onclusory allegations of law and unwarranted inferences are

19  insufficient to defeat a motion to dismiss for failure to state a claim." *Anderson v.*

20  *Clow*, 89 F.3d 1399, 1403 (9th Cir. 1996).  A complaint that fails to satisfy these

21  pleading standards should be dismissed with prejudice where amendment cannot cure

22  the deficiency.  *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990).

23  Alleged misbranding and misrepresentations regarding food products may properly be

24  disposed of under Rule 12(b)(6).  *See, e.g., Fraker v. KFC Corp.*, No. 06-CV-01284-

25  JM (WMC), 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007); *Hoyte v. Yum! Brands, Inc.*,

26  489 F. Supp. 2d 24 (D.D.C. 2007); *McKinniss v. Sunny Delight Beverages Co.*, No.

27  CV 07-02034-RGK (JCX), 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007).

28

1   **I.   Because All Statements on Kraft's Labels Fully Comply with Federal Law
2           and Are Not Misleading, the Statements Are Not Actionable and Plaintiffs'
        State Law Claims Are Expressly Preempted.**

3           The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FFDCA"),

4   establishes a comprehensive federal scheme of food regulation to ensure that food is

5   safe and labeled in a manner that does not mislead consumers. 21 U.S.C. §§ 341 *et seq.*

6   Congress amended the FFDCA through the passage of the Nutrition Labeling and

7   Education Act ("NLEA"), thereby seeking  to "clarify and to strengthen the Food and

8   Drug Administration's legal authority to require nutrition labeling on foods, and to

9   establish the circumstances under which claims may be made about nutrients in

10  foods." H.R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336,

11  3337.   The NLEA sets forth specific requirements for the labeling of "nutrition

12  information" and the making of "nutrient content claims."  21 U.S.C. § 343(q), (r).

13          The NLEA includes a broad express preemption provision.  21 U.S.C. § 343-

14  1(a)(3); *see Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006)

15  (noting the expansive scope of the NLEA preemption clause).  The NLEA provides

16  that "no State or political subdivision of a State may directly or indirectly establish . . .

17  any requirement for nutrition labeling of food that is not identical to the

18  requirement[s]" set forth in the NLEA.  21 U.S.C. § 343-1(a)(4)-(5).  "'Not identical

19  to' does not refer to the specific words in the requirement but instead means that the

20  State requirement directly or indirectly imposes obligations or contains provisions"

21  that are "not imposed by or contained in" or that "differ from those specifically

22  imposed by or contained in" the statute or its implementing regulations.  21 C.F.R. §

23  100.1.  Thus, "state law cannot impose obligations beyond, or different from, what

24  federal law requires." *In re Pepsico, Inc. Bottled Water Marketing and Sales Practices

25  Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (dismissing state law claims for false

26  advertising under express preemption doctrine).  Because Plaintiffs try to do precisely

27  that with their Complaint, the claims are preempted and must be dismissed.

28

Moreover, the claims fail because the representations Plaintiffs complain about are neither false nor misleading. To state a claim for false advertising under the UCL, FAL, CLRA, or Lanham Act, Plaintiffs must allege that Kraft Foods made statements *likely to deceive a reasonable consumer*. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *McKinniss*, 2007 WL 4766525 at *3. "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal. Rptr. 2d 486 (2003). Rather, the advertisement must be "such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* Courts routinely grant motions to dismiss where, as here, it is evident from the package itself that the representations are unlikely to deceive a reasonable consumer. *See, e.g., Videtto v. Kellogg USA*, No. 2:08-cv-01324-MCE-DAD, 2009 WL 1439086, at *2-3 (E.D. Cal. May 21, 2009); *Sugawara v. Pepsico, Inc.*, No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115, at *2-4 (E.D. Cal. May 21, 2009); *McKinniss*, 2007 WL 4766525 at *5; *Freeman*, 68 F.3d at 289-90.

Because Plaintiffs' Complaint seeks to prohibit Kraft Foods from making claims which are expressly allowed under federal regulations and to require disclosures different from those which are required by the FDA, those claims are expressly preempted. Because the challenged statements are also not false or misleading, there is no basis upon which Plaintiffs' claims can be pursued.

A. **Plaintiffs' Request That This Court Impose Labeling Requirements for Trans Fat Different Than Those Required by the FDA Is Expressly Preempted.**

In 2003, the FDA issued its final ruling on the appropriate disclosures related to content of *trans* fat. The regulations mandate that if a product contains *trans* fat in an

1  amount less than 0.5 gram per serving, the manufacturer *shall* declare that the product
2  contains "zero" grams of *trans* fat:

3           A statement of the number of grams of *trans* fat in a serving .
4           . . is not required for products that contain less than 0.5 gram
5           of total fat in a serving if no claims are made about fat, fatty
6           acid or cholesterol content. . . .   *Trans* fat content shall be
7           indented and expressed as grams per serving to the nearest
8           0.5 (1/2)-gram increment below 5 grams and to the nearest
9           gram increment above 5 grams.  *If the serving contains less*
10          *than 0.5 gram, the content, when declared, shall be*
11          *expressed as zero.*

12  21 C.F.R. § 101.9(c)(2)(ii) (July 11, 2003) (effective Jan. 1, 2006) (emphasis added).
13  Here, Plaintiffs do not contend that Kraft Foods' product labels disclosing 0g *trans* fat
14  per serving violate FDA regulations, nor do they claim that any of Kraft Foods'
15  products exceed the .5 gram per serving threshold (*See* Exhs. A - M).  Yet every one of
16  Plaintiffs' claims alleges that statements made on Kraft Foods labels are misleading
17  because the products contain small amounts of *trans* fat, a fact which Plaintiffs allege
18  is omitted from product labels.  For a court to require that a label disclose *trans* fat at a
19  level other than zero, where as here, the level is below the FDA's .5 gram per serving
20  threshold, would be "not identical to" the federal regulations.  Plaintiffs' claims also
21  implicate these regulations in a roundabout way, by seeking an order enjoining Kraft
22  Foods from making representations about various nutritional attributes of its products,
23  on the grounds that these products contain trace amounts of *trans* fat.  But, as part of
24  the FDA's comprehensive regulatory scheme for food labeling and specific regulations
25  regarding disclosure of *trans* fat, the FDA has chosen not to prohibit food
26  manufacturers from making claims about other nutrient contents of their products
27  because the products contain trace amounts of *trans* fat.  Thus, Plaintiffs' state law
28

claims clearly seek to impose requirements that are "not imposed by or contained in" federal regulations and are therefore preempted.[2]

## B. Plaintiffs' Claims Based on True Statements That Products Contain "No Cholesterol" Are Expressly Preempted.

Plaintiffs' claims related to the "no cholesterol" statement made on labeling for seven Kraft Foods products are expressly preempted, as this statement complies with federal regulations, is true and is objectively non-deceptive.  The FDA has set forth specific conditions under which a "no cholesterol" claim may be made, including requirements related to fat content. The claim "no cholesterol" may be used in labeling where "[t]he food contains less than 2mg of cholesterol per reference amount customarily consumed [RACC] and per label serving," "contains no ingredient that is generally understood by consumers to contain cholesterol," and "contains 2 g or less of saturated fatty acids" per RACC.  21 C.F.R. § 101.62(d)(1)(i)(A)-(D) (Jan. 6, 1993) (effective Feb. 14, 1994).[3]  Plaintiffs do not allege that Kraft Foods' products do not comply with FDA regulations.  Instead, Plaintiffs seek to impose a new requirement for the use of a "no cholesterol" designation: that in addition to the FDA requirements of 2g or less of saturated fat, a product must also contain no trace amounts of *trans* fat. Imposing a state law requirement for "no cholesterol" that is not equivalent to what the FDA has mandated would clearly "impose obligations beyond, or different from, what federal law requires." *In re Pepsico*, 588 F. Supp. 2d at 532.[4]  Accordingly, Plaintiff's

---

[2] In a case where the plaintiff alleged that Kentucky Fried Chicken represented its product as healthy despite its allegedly high trans fat content, the Southern District of California dismissed plaintiff's claims on preemption grounds. *Fraker v. KFC Corp.*, No. 06-CV-01284-JM (WCM), 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) (finding plaintiff's state law misbranding claims were preempted on the grounds that "the FDCA presents a comprehensive regulatory scheme of branding and labeling of food products").

[3] 21 C.F.R. § 101.62(d)(1)(i)(D), which addresses an additional requirement for foods which do not ordinarily contain cholesterol, such as applesauce, is inapplicable here.

[4] The FDA has already considered nutrient content claims regarding cholesterol in relation to *trans* fat content, and found it would be premature to establish new or revised definitions for such claims. 68 F.R. 41507, 41508 (July 11, 2003).

1  claims related to the representation that Kraft Foods' products contain "no cholesterol"
2  are expressly preempted and must be dismissed.

3        Further, the FDA regulations applicable to *trans* fat address cholesterol claims.
4  21 C.F.R. § 101.9(c)(2)(ii).  Where *trans* fat content is between zero and .5 gram per
5  serving, if no claims related to cholesterol or fat content are made, the regulations
6  specify that no disclosure regarding *trans* fat content need be included.  *Id*.  It therefore
7  follows that if claims related to cholesterol or fat content are made, the label must
8  disclose the *trans* fat content in accordance with the FDA regulations.  Here, that's
9  exactly what Kraft Foods did: in using the "no cholesterol" claim, Kraft Foods
10 appropriately disclosed 0g *trans* fat per serving on the nutrition facts panel.  (*See* Exhs.
11 F - M).  However, by seeking an order enjoining Kraft Foods from marketing its
12 products using the term "no cholesterol" on the grounds that these products contain
13 trace amounts of *trans* fats per serving, which the FDA has determined shall be
14 disclosed as zero, Plaintiffs seek to impose a new requirement for "no cholesterol"
15 claims.

16       Moreover, Plaintiffs do not allege the statement "no cholesterol" to be untrue.
17 Instead, Plaintiffs allege "no cholesterol" is misleading because Kraft Foods' products
18 contain "dangerous levels of artificial *trans* fat" which Plaintiffs claim has the effect of
19 increasing serum cholesterol levels (Compl. ¶¶ 55, 62, 64, 66, 69, 72, 74, 77).
20 However, the underlying premise of Plaintiffs' allegation -- that the "risk of
21 cardiovascular disease is not related to the consumption of dietary cholesterol" -- is
22 inconsistent with the FDA's view (Compl. ¶ 53).   Contrary to Plaintiffs' assertion, the
23 FDA has found that high intake of saturated fat and dietary cholesterol is relevant to
24 risk of heart disease.[5]  Here, it is undisputed that Kraft Foods' products contain no

25

26 _____
27 [5] In particular, the FDA found "[t]he scientific evidence establishes that diets high in saturated fat
   and cholesterol are associated with increased levels of blood total- and LDL-cholesterol and, thus,
   with increased risk of coronary heart disease. Diets low in saturated fat and cholesterol are

28

dietary cholesterol, and contain less than 2g saturated fat per serving.  The presence of trace amounts of *trans* fat does not render the statement "no cholesterol" untrue or misleading; it provides relevant information to the consumer regarding the absence of dietary cholesterol.

Finally, the statement "no cholesterol" is objectively non-deceptive.  Courts have recognized that there is a difference between the content of a food and the effects it may have.  *See Pelman ex rel. Pelman v. McDonald's Corp.*, No. 02 Cv. 7821 (RWS), 2003 WL 22052778, at *13 (S.D.N.Y. Sept. 5, 2003), *rev'd on other grounds*, 396 F.3d 508 (2nd Cir. 2005); *Pelman v. McDonald's Corp.*, 452 F. Supp. 2d 320, 327 (S.D.N.Y 2006) (finding Second Circuit decision did not disturb ruling that that "cholesterol free" representation was objectively non-deceptive).  In *Pelman*, the plaintiffs argued that McDonald's claim that its french fries are cholesterol-free is misleading because the fries are cooked in oils that contain trans fatty acids, which can raise blood cholesterol levels, leading to coronary heart disease.  2003 WL 22052778 at *13.  However, the court agreed with McDonald's argument that it had made no representations about the effect of its fries on blood cholesterol levels: "The contents of food and the effects of food are entirely different things. A person can become 'fat' from eating 'fat-free' foods, and a person's blood sugar level can increase from eating 'sugar-free' foods."  *Id*.  Therefore, the court found that McDonald's "cholesterol-free" statement is objectively non-deceptive.  *Id*.  Likewise, Kraft Foods does not claim that its products have no effect on blood serum levels; it indicates that certain products contain no cholesterol, which is true and objectively non-deceptive.

---

associated with decreased levels of blood total- and LDL-cholesterol, and thus, with decreased risk of developing coronary heart disease.... The scientific evidence indicates that reducing saturated fat and cholesterol intakes lowers blood LDL-cholesterol and risk of heart disease in most individuals. There is also evidence that reducing saturated fat and cholesterol intakes in persons with blood cholesterol levels in the normal range also reduces risk of heart disease." 21 C.F.R. § 101.75 (a)(2), (b)(1) (Jan. 6, 1993).

1

### C. Plaintiffs' Claims Related to "Good Source of Calcium, Iron & Zinc" Claim Are Expressly Preempted.

Plaintiffs' claim based on the representation of Teddy Grahams as a "good source of Calcium, Iron and Zinc to Help Support Kids' Growth and Development" is expressly preempted. Under applicable FDA regulations, the term "good source" may be used on a label "provided that the food contains 10 to 19 percent of the RDI [Reference Daily Intake] or the DRV [Daily Reference Value] per reference amount customarily consumed." 21 CFR § 101.54(c)(1) (Jan. 6, 1993; corrected Apr. 2, 1993) (effective Feb. 14, 1994). Plaintiffs do not allege that Teddy Grahams fail to meet the statutory requirement to make a "good source" claim. In fact, the nutrition facts panels confirm that a serving of any of the Teddy Graham products whose labels appear in Plaintiffs' Complaint contain 10 percent of the DRV for calcium, iron and zinc. (*See* Exhs. A - D). Instead, Plaintiffs claim that Kraft Foods' statement is misleading because it "omits the fact that Teddy Grahams contain artificial *trans* fat" and implies that the product is healthy when it contains *trans* fat. (Compl. ¶ 57).

This argument is expressly preempted. To require a label for a product having less than .5 grams of *trans* fat per serving to disclose its *trans* fat content as anything other than zero would be "not identical to" what is required by 21 C.F.R. §101.9(c)(2)(ii) (July 11, 2003). Here, Plaintiffs do not dispute that Teddy Grahams contain less than .5 gram of *trans* fat per serving, or that the *trans* fat content is appropriately disclosed on the nutrition facts panel as 0g *trans* fat, as mandated by federal regulation. Rather, Plaintiffs seek to impose a new requirement on "good source" claims, namely that they cannot be made if the product contains trace amounts of *trans* fat which FDA has required Kraft Foods to disclose as "zero." Requiring Kraft Foods to make a *trans* fat disclosure other than zero, or omit the statement that is allowed under the regulations, would "impose obligations beyond, or different from,

what federal law requires." *In re Pepsico*, 588 F. Supp. 2d at 532.   Thus, Plaintiffs'

claims related to the "good source" representation are expressly preempted.

A "good source of Calcium, Iron, Zinc to Help Support Kids' Growth and

Development" is also objectively non-deceptive as it plainly sets forth the levels of

specific nutrients.      This statement is objectively non-deceptive on its face.   There is

nothing about the presence of calcium, iron or zinc that implies or connotes anything

about the presence or absence of *trans* fat.   The role of calcium, iron and zinc in

children's growth and development is well documented, and undisputed by Plaintiffs.

### D.   Plaintiffs' Claims Related to "Provides" or "Contains 5 Grams Whole Grain!" Are Expressly Preempted.

Plaintiffs' claims related to the representations "Contains 5 Grams Whole

Grains! per serving" on labels for Honey Maid Honey Grahams, and "provides 5g

whole grain" on labels for Ritz Whole Wheat crackers, are expressly preempted.

(Compl. ¶¶ 67, 73).   Nutrient content claims regarding the amount or percentage of a

nutrient may be made where "the statement does not in any way implicitly characterize

the level of the nutrient in the food and it is not false or misleading in any respect (e.g.

"100 calories" or "5 grams of fat")."   21 C.F.R. § 101.13(i)(3) (Jan. 6, 1993) (effective

Feb. 14, 1994).   Plaintiffs do not allege that Honey Grahams or Ritz Whole Wheat

crackers do not contain the amount of whole grain represented, nor do they claim that

Kraft Foods has implicitly characterized the level of whole grain.   In fact, Kraft Foods'

claims are indistinguishable from the example in the regulation, except that it refers to

whole grain.[6]   Rather, Plaintiffs allege that the "obvious implication" is that Kraft

---

[6] The FDA's Draft Guidance of February 17, 2006 regarding Whole Grain Label Statements provides guidance regarding what the FDA considers "whole grain" and discusses the current regulatory framework as it applies to whole grains: "Manufacturers can make factual statements about whole grains on the label of their products such as '100% whole grain' (as percentage labeling under 21 CFR 102.5(b)) or '10 grams of whole grains' (21 CFR 101.13(i)(3)) provided that the statements are not false or misleading under section 403(a) of the Federal Food, Drug and Cosmetic Act (the Act) and do not imply a particular level of the ingredient, i.e. 'high' or 'excellent source.'   Food and Labeling Standards Staff; Office of Nutritional Products, Labeling, and Dietary Supplements; Center

Foods products are healthy, despite containing *trans* fat.   (Compl. ¶¶ 67, 73). However, any state law requirement that Kraft Foods must make a different disclosure or omit the representation would "impose obligations beyond, or different from, what federal law requires." *In re Pepsico*, 588 F. Supp. 2d at 533.   Accordingly, Plaintiffs' claims are expressly preempted.

Also, the statements "provides 5g whole grain" and "Contains 5 Grams Whole Grain! per serving" are true and objectively non-deceptive.   Plaintiffs do not dispute that these statements are true (Comp. ¶¶ 67, 73).   Plaintiffs instead argue these statements are misleading in that they imply Kraft Foods' products are healthy, when they contain *trans* fat.   *Id.*   But, the whole grain claims are objectively non-deceptive on their face, as they plainly connote the amount of a specific ingredient.   A reasonable consumer would not understand a statement about the presence of whole grain to imply anything about the quantity of an ingredient that is not listed, such as *trans* fat.

Moreover, as reflected in the Ritz Whole Wheat packaging set forth in paragraph 67 of the Complaint, Kraft Foods provides information to consumers about the amount of daily consumption of whole grain recommended by the FDA on its Mypyramid.gov website and the amount that one serving of Ritz Whole Wheat crackers contributes to FDA's recommended daily amounts.   Thus, far from deceptive, the packaging provides helpful factual information to consumers about whole grain.

## II.   Plaintiffs' Claims Should Be Dismissed Because the FDA Has Primary Jurisdiction Over Matters of Food Labeling.

Plaintiffs' claims also should be dismissed under the primary jurisdiction doctrine.   In order to promote the "proper relationship between the courts and administrative agencies charged with particular regulatory duties," the primary jurisdiction doctrine is applied when enforcement of a claim "requires the resolution of

for Food Safety and Applied Nutrition at The Food and Drug Administration, "Guidance for Industry and FDA Staff:  Whole Grain Label Statements" (2006),
http://www.fsa.gov/OHRMS/DOCKETS/98fr/06d-0066-gd10001.pdf.

issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956).  Deferral to an agency is appropriate where it has been "vested with the authority to regulate an industry or activity such that it would be inconsistent with the statutory scheme to deny the agency's power to resolve the issues in question." *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1363 (9th Cir. 1987). Application of the primary jurisdiction doctrine "is a matter of the court's discretion." *Synetk Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). When exercising its discretion, the court must determine whether there is: "(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008) (quoting *Synetk*, 307 F.3d at 781).  Here, each of these factors weighs in favor of dismissal of Plaintiffs' claims.

*First*, the issue of whether and to what extent a manufacturer may make claims such as "no cholesterol," "contains 5g whole grains," and "good source" is within the jurisdiction of the FDA. 21 U.S.C. § 393(b)(2)(A) (FDA has authority to ensure that foods are properly labeled); 21 C.F.R. § 10.25(b) ("FDA has primary jurisdiction to make the initial determination on issues within its statutory mandate").

*Second*, the FDA has used its authority to promulgate and enforce a complex and comprehensive regulatory scheme governing misbranding in general, and food and beverage labeling in particular. *See generally* 21 C.F.R. §§ 101.1-101.18 (outlining general provisions relating to food labeling and misbranding); §§ 101.22, 101.30 (mandating specific food labeling requirements); §§ 101.36, 101.42-101.45 (setting forth specific nutrition labeling requirements and guidelines); §§ 101.54, 101.56, 101.60-101.62, 101.65, 101.67, 101.69 (mandating specific requirements for nutrient

1  content claims); §§ 101.70-101.83 (setting forth specific requirements for "health
2  claims"); §§ 101.93, 101.95 (outlining specific requirements for descriptive claims that
3  are neither nutrient content claims nor health claims); §§ 101.100, 101.105, 101.108
4  (listing exemptions from food labeling requirements).

5  *Third*, consistent administration of the complex federal regulatory scheme
6  governing product labeling requires the expertise and considered judgment of the
7  FDA.[7]  Plaintiffs' claims are predicated on the allegation that "no cholesterol," "good
8  source," and other representations are misleading and deceptive, because the products
9  contain trace amounts of *trans* fat.  Under Plaintiffs' theory, then, a manufacturer is
10 prohibited under California law from making *any* representation as to the nutrients
11 contained in its products when those products also contain trace amounts of *trans* fat
12 per serving.  Because this interpretation would eviscerate countless FDA regulations
13 governing nutrient content claims and because it would create different rules in
14 different jurisdictions, this Court should dismiss this entire action under the primary
15 jurisdiction doctrine. *See Clark*, 423 F.3d at 1114-15 (applying primary jurisdiction
16 doctrine where plaintiff's claim "implicate[d] technical and policy questions that
17 should be addressed in the first instance by the agency with regulatory authority over
18 the relevant industry").

19 Here, Plaintiffs seek to circumvent the FDA and impose new rules in California
20 related to how products that contain *trans* fat are labeled, notwithstanding the FDA's
21 regulations regarding *trans* fat and ongoing regulation of nutrient content claims in
22 relation to *trans* fat.  Specifically, the FDA has already considered *trans* fat content
23 criteria for claims regarding cholesterol, and found it would be premature to establish
24 new or revised definitions for such claims.  68 F.R. 41507, 41508 (July 11, 2003).
25 Instead, the FDA issued an Advance Notice of Proposed Rulemaking to solicit

---

[7] *See, e.g., Fraker*, 2007 WL 1296571 at *4-5 (dismissing plaintiffs' state law misbranding claims while recognizing that "[t]o overlay the state law tort system over the FDCA would significantly increase the burdens on the FDA to ensure uniform enforcement of its administrative duties").

comment and consumer research on, among other things, "an appropriate basis for establishing qualifying criteria for trans fat in … nutrient content claims for saturated fat and cholesterol." *Id.* Because Plaintiffs' claims fall squarely within the expertise and rulemaking authority of the FDA, and raise issues that are under continuing evaluation and regulation, they are within the primary jurisdiction of the FDA.

## III.   Plaintiffs' Claims Fail Because All Statements Made on Kraft Foods' Labels Are True and Non-Deceptive or Constitute Mere Puffery.

In addition to the express preemption of several of Plaintiffs' claims by FDA regulations, Plaintiffs' claims fail because the alleged misrepresentations are not actionable.   Where an alleged misrepresentation would not deceive a reasonable consumer or amounts to mere puffery, then any cause of action having deception as an element may be addressed, as a matter of law, on a motion to dismiss. *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994). Here, Plaintiffs' Complaint is predicated on a series of representations that are neither false nor misleading, or that constitute non-actionable puffery.

### A.   Plaintiffs' Claims Are Based on Representations That Are True and Non-Deceptive.

#### (i)   "Made With Real Vegetables" Is True and Non-Deceptive.

Plaintiffs do not dispute that Vegetable Thins and Ritz Crackers Roasted Vegetables are in fact made with real vegetables as is clearly disclosed on the nutrition facts panel. (Compl. ¶¶ 59, 60). Rather, they claim that packaging for these products which contains "images of vegetables and advertises: Made With Real Vegetables" is misleading because each product "contains more partially hydrogenated vegetable oil, a form of artificial *trans* fat, than it does any vegetables." *Id.* However, a reasonable consumer would understand this packaging to indicate the flavor or presence of vegetables as an ingredient, not as a representation about the quantity of vegetables as compared to some other ingredient, as Plaintiffs suggest. *McKinniss*, 2007 WL

1   4766525 at *4 (holding that "the depiction of fruit on a product label is not a specific

2   affirmation that a product contains a particular amount of fruit").   Here, the packaging

3   at issue contains images of crackers, along with vegetables (*See* Exhs. E and F).   A

4   reasonable consumer would not conclude from those images, or from the

5   representation "Made With Real Vegetables," that Kraft Foods' products contain a

6   particular amount of vegetables, nor would a reasonable consumer conclude anything

7   about the amount of an ingredient that is not listed, such as *trans* fat.

8           **(ii)    "Nutritionists Recommend" Is True and Non-Deceptive.**

9           The side panel of Ritz Whole Wheat crackers includes the familiar image of a

10  pyramid, over the statement "MyPyramid.gov STEPS TO A HEALTHIER YOU*,"

11  followed by the following paragraph:

12              Nutritionists Recommend eating at least three one-ounce

13              equivalents of whole grain products per day (about 16g

14              whole grains per serving, or at least 48g per day).   One

15              serving of Ritz Whole Wheat crackers provides 5g of whole

16              grain, approximately 10% of the minimum daily amount

17              nutritionists recommend.  Log on to MyPyramid.gov to help

18              you make smart food choices and get the most nutrition out

19              of your calories.

20  (Compl. ¶¶ 66-67).   Plaintiffs allege that "Nutritionists Recommend" and "STEPS TO

21  A HEALTHIER YOU*" are misleading because they imply that Ritz Whole Wheat

22  Crackers are healthy, when they contain trace amounts of *trans* fat per serving.

23  (Compl. ¶ 67).   However, Plaintiffs do not dispute the factual claim made regarding

24  the whole grain content of Ritz Whole Wheat crackers, nor do they dispute the veracity

25  of the other information provided regarding the recommended daily intake of whole

26  grains.   Kraft Foods has clearly attributed the source of the nutrition information

27  provided.     As   evidenced   by   the   above   passage,   "Nutritionists   Recommend"

28

unambiguously refers to the USDA's recommendation regarding daily consumption of whole grain. As it appears in context, "STEPS TO A HEALTHIER YOU*" is clearly attributable to the government website listed immediately above it in larger typeface. No reasonable consumer would understand this passage, when taken as a whole, to imply anything about the presence of an ingredient other than whole grain.

The statements "no cholesterol," "provides" or "contains 5 grams whole grain" and "good source of calcium, iron and zinc" are likewise objectively non-deceptive, as discussed herein. (*See infra* pp. 8-13).

> **(iii)    Claims Related to "Sensible Solutions", "Sensible Snacking" and "Smart Choices Program" Are True and Non-Misleading.**

Plaintiffs allege that "Sensible Solutions," "Sensible Snacking," and "Smart Choices Program" are misleading. However, the product labels explicitly state that these phrases refer to specific product attributes. For instance:

- Original Premium Saltine Crackers contain a "Sensible Snacking" flag which lists "No Cholesterol" and "No Saturated Fat," (*See* Exh. J).

- A "Sensible Solution" flag on Ginger Snaps labels lists two bullet points: "Low Saturated Fat" and "No Cholesterol," (*See* Exh. M).

- Ritz Crackers Whole Wheat labels contain a "Sensible Solution" flag with the bullet points "No Cholesterol," "Low Saturated Fat" and "5g Whole Grain per serving," (*See* Exh. I).

- The Teddy Grahams package which bears the "Smart Choices Program" representation states "For more information go to: SmartChoicesProgram.com." (*See* Exhs. A - D).[8]

---

[8] The website link provides consumers with the nutrient qualifying criteria for products which bear the "Smart Choices Program" claim. For a snack food to qualify for the Smart Choices Program, it must meet the following criteria: (i) Total fat must be 35% or less of calories; (ii) Saturated fat must be less than 10% of calories; (iii) Trans fat must be 0g (as labeled); (iv) Cholesterol must be 60 mg or less per serving; (v) Added sugars must be 25% or less of total calories; and (vi) Sodium must be 480 mg or less per serving. In addition, the product must include 10% or more of the Daily Value (a

Plaintiffs do not allege that any of the claims made in connection with the "Sensible Solutions" or "Sensible Snacking" flags are untrue, nor do they allege that Teddy Grahams do not meet the nutritional requirements for the "Smart Choices Program." The statements "No Cholesterol" and "5g Whole Grain per serving," are objectively non-misleading for reasons discussed herein, and a reasonable consumer would not understand them to imply anything about an ingredient not listed (*See infra.* pp. 8-13).

**B.    Plaintiffs' Claims Are Based on Non-Actionable Puffery.**

Plaintiffs' claims fail because, in addition to not being false or misleading, all of the purported misrepresentations that are not objectively true constitute non-actionable puffery. *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008) (noting that "the determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion").   It is well settled that "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008).   "[A] statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." *Newcal*, 513 F.3d at 1053.   Thus, "[t]o be actionable, advertisements must be verifiable factual representations that can be demonstrated to be true, or false." *Lyons v. Coxcom, Inc.*, No. 08-CV-02047-H (CAB), 2009 WL 347285, at *11 (S.D. Cal. Feb. 6, 2009); *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (affirming dismissal where representation "was not a specific and measurable claim, capable of being proved false").

---

"good source") of at least one of the following: Calcium, Potassium, Fiber, Magnesium, Vitamin A, Vitamin C and Vitamin E.  *See* http://www.smartchoicesprogram.com/nutrition.html.

Here, the allegedly misleading claims are not quantifiable, measurable, or verifiable -- and cannot be proven true or false.  For example, "A fun wholesome choice for your whole family" is non-actionable puffery because it is not a verifiable assertion of fact capable of being proved or disproved.   Likewise, "STEPS TO A HEALTHIER YOU*,"[9] "Smart Choices Program," "Sensible Snacking" and "Sensible Solutions" do not constitute "specific and measurable claim[s], capable of being proved false." *Coastal Abstract*, 173 F.3d at 731.  There is no standard by which a court could measure whether a choice is in fact "wholesome" or "smart."  Rather, they constitute assertions that cannot be proven true or false.  *See, e.g.*, *Fraker v. KFC Corp.*, 2007 WL 1296571 at *1, *3 (S.D. Cal. April 30, 2007) (finding that "highest quality ingredients," "balanced eating plan" and "part of a sensible diet" constitute puffery); *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 30 (D.D.C. 2007) ("best food" is non-actionable puffery); *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 528 (S.D.N.Y. 2003) ("Merely encouraging consumers to eat its products 'everyday' is mere puffery."); *Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126, at *8 (N.D. Ill. July 1, 1999) ("optimum nutrition," "nutritionally, you can't buy a better food," and "most wholesome nutritious safe foods" constitute puffery).

Plaintiffs' claims regarding "smart" and "sensible" statements are non-actionable; that they call attention to certain product attributes to help consumers make food choices within product categories does not render them misleading or actionable. (*See infra.* pp. 18-19).[10]  The highlighted claims, as discussed herein, are true and objectively non-deceptive.

[9] As discussed herein, "STEPS TO A HEALTHIER YOU*" is attributed to a government website. (*See supra* pp. 17-18).
[10] Of course, whether a product meets the Smart Choices Program criteria is an objective fact that consumers can verify simply by reviewing the nutrient facts panel.

**IV.     Plaintiffs Fail to Adequately Plead with Particularity the Facts Underlying Their Alleged Purchases and Their Alleged Reliance on Misrepresentations.**

Plaintiffs' claims also must be dismissed for failure to meet minimum pleading requirements.  In *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), the Ninth Circuit held that claims for violations of California's unfair competition laws must be pled with particularity under Rule 9(b).  This means that a plaintiff must allege facts sufficient to detail "'the who, what, when, where, and how' of the misconduct charged"; in other words, the plaintiff must "set forth *more* than the neutral facts necessary to identify the transaction." *Id.* at 1124 (citations omitted; emphasis in original).  Further, where, as here, the claim is "'grounded in fraud' . . . the pleading of that claim as a *whole* must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1127 (emphasis and omission in original).

Here, Plaintiffs' Complaint fails to allege the details necessary to meet the particularity requirements of Rule 9(b).  Plaintiffs offer, at most, vague and conclusory allegations that they "repeatedly" purchased snack products made by Kraft Foods during the ten year class period, but fail to state with specificity *which* products they allegedly purchased. (Compl. ¶ 4).   Further, while Plaintiffs state that absent unspecified "deceptions, misstatements, and omissions, Plaintiffs and other Class members would not have purchased the Kraft Products," they fail to identify *which* purported misrepresentations they found to be material and/or *which* they relied upon. (Compl. ¶ 82).    Nor do Plaintiffs allege *when* they viewed the purported misrepresentations or *when* they purchased the products. *Kearns*, 567 F.3d at 1126 (dismissing unfair competition claims where plaintiff failed to allege "which [representations] he found to be material" "when he was exposed to them" and "which [representations] he relied upon"); *Lyons*, 2009 WL 347285 at *11 (dismissing false advertising claims where plaintiff failed to specify which advertisement she relied upon).  Further, Plaintiffs do not allege that the current product labels are the same

1  product label that Kraft Foods used throughout the class period, or even that the

2  current product label is the same product label that Plaintiffs purportedly viewed and

3  relied upon in making their alleged purchases.

4  **V.    Plaintiffs Lack Standing to Pursue the Claims Alleged in the Complaint.**

5          Plaintiffs' claims also fail because Plaintiffs lack standing.  Plaintiffs cannot

6  state a claim under the Lanham Act because they claim to be consumers and have

7  failed to identify a commercial injury.  Likewise, Plaintiffs cannot state a claim under

8  the UCL, FAL, or CLRA because their Complaint fails to allege facts sufficient to

9  show that they suffered an injury in fact and lost money or property as a result of the

10 allegedly deceptive conduct.

11         **A.    Plaintiffs Lack Standing to Bring a Claim Under the Lanham Act**
12                **Because They Cannot Allege a Competitive Injury.**

13         Plaintiffs lack standing to bring suit under the Lanham Act.  To state a claim

14 under the Lanham Act, "the plaintiff must allege commercial injury based upon a

15 misrepresentation about a product, and also that the injury was 'competitive,' i.e.,

16 harmful to the plaintiff's ability to compete." *Barrus v. Sylvania*, 55 F.3d 468, 470

17 (9th Cir. 1995).  For this reason, it is well settled that "consumers do not meet the

18 standing requirement for the Lanham Act." *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d

19 1285, 1302-03 (S.D. Cal. 2003) (dismissing Lanham Act claim for lack of standing);

20 *see also Barrus*, 55 F.3d at 470 (affirming dismissal of Lanham Act claim where "[a]s

21 consumers, [plaintiffs] have alleged neither commercial injury nor competitive

22 injury").

23         Here, Plaintiffs are alleged to be *consumers* of Kraft Foods' products: "Plaintiffs

24 are residents of California who repeatedly purchased packaged Kraft foods containing

25 artificial *trans* fat during the class period defined below." (Compl. ¶ 8)   Further,

26 Plaintiffs do not identify a *commercial injury*, instead alleging that absent the "material

27 deceptions, misstatements, and omissions, Plaintiffs and other Class members would

28

not have purchased the Kraft products." (Compl. ¶ 82). Because Plaintiffs are alleged to be consumers and have identified no commercial injury, Plaintiffs' Lanham Act claim must be dismissed for lack of standing.

**B.    Plaintiffs Lack Standing to Assert a Claim Under UCL, FAL or CLRA Because They Fail to Allege a Cognizable Injury.**

Plaintiffs also lack standing to assert claims for unfair competition. In order to state a claim under the UCL, FAL, or CLRA, a plaintiff must set forth facts that show that he "has suffered an injury in fact and has lost money or property" as a result of the unfair, fraudulent, or deceptive practices. In *Wright v. General Mills Co.*, No. 08cv1532 L (NLS), 2009 WL 3247148, at *1 (S.D. Cal. Sept. 30, 2009), the plaintiff asserted claims under the UCL, FAL, and CLRA based on the allegation that the defendant misrepresented its Nature Valley products to be "100% Natural" when, in fact, they contained non-natural or artificial ingredients, such as high fructose corn syrup. The plaintiff also identified the following purported economic injury: "As a direct result of its misleading, deceptive, untrue advertising and its unlawful, unfair, and fraudulent business practices . . . , Defendant caused Plaintiff and other members of the Class to purchase, purchase more of, or pay more for, these Nature Valley products." *Id.* at *5. In dismissing plaintiff's claims, the court found that "[t]his sparse allegation of injury-in-fact does not meet the *Twombley* and *Iqbal* pleading standard. . . . [F]actual allegations must provide more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do' in order to 'raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S. Ct. 1955, 1964-1965, L. Ed. 2d 929 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Here, too, Plaintiffs' purported injury is insufficient to confer standing. Plaintiffs allege that absent the "material deceptions, misstatements, and omissions, Plaintiffs and other Class members would not have purchased the Kraft Products."

1   (Compl. ¶ 82).   Without a more concrete and particularized allegation of injury,

2   Plaintiffs lacks standing to assert any claims against Kraft Foods.  *Wright*, 2009 WL

3   3247148 at *5 (dismissing claims based on "sparse allegation of injury-in-fact" that

4   constituted nothing more than "labels and conclusions, and a formulaic recitation of

5   the elements").

6       **C.    The Court Should Strike Plaintiffs' CLRA Damage Claim.**

7       The CLRA requires that written notice be provided to the defendant at least

8   thirty days *prior to* the commencement of an action seeking damages.  Cal. Civ. Code

9   §1782(a).  Plaintiffs did not timely send their "30-day letter" before commencing suit

10  as required by the statute.

11      The Complaint was filed on February 11, 2010.  Plaintiffs allege that they "sent

12  written notice to Kraft of their claims."  (Compl. ¶110).  However, Plaintiffs do not

13  and cannot allege that they sent a "30-day letter" to Kraft Foods thirty days prior to the

14  filing of their Complaint, because the letter was not sent until February 10, 2010.  (*See*

15  Exh. N).  This does not constitute compliance with the statute.  Courts have dismissed

16  CLRA damage claims without leave to amend due to the late filing of the "30 day

17  letter."  *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at

18  *15 (N.D. Cal. June 5, 2009); *accord Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp.

19  2d 1073, 1089 (C.D. Cal. 2009) (the CLRA's "procedural requirements are strictly

20  adhered to," and the sanction for non-compliance is "dismissing a claim with

21  prejudice"); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949-50 (S.D. Cal.

22  2007); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195-96 (S.D. Cal. 2005);

23  *Von Grabe*, 312 F. Supp. 2d at 1304.  Therefore, the Court should strike Plaintiffs'

24  CLRA damage claim without leave to amend.

25              **CONCLUSION**

26      For the forgoing reasons, the Court should dismiss Plaintiffs' Complaint in its

27  entirety.   Because the purported misrepresentations are preempted and/or not

28

1   actionable as a matter of law, granting leave to amend would be futile.   Accordingly,

2   Plaintiffs' Complaint should be dismissed with prejudice.

3

4     Dated:  April 6, 2010                    KRAFT FOODS INC., KRAFT FOODS

5                                                       NORTH AMERICA, and KRAFT

6                                                       FOODS GLOBAL, INC.

7

                                          /s/ Dean N. Panos

8

9                                                       dpanos@jenner.com

10                                                      By one of their attorneys

11                                                      JENNER & BLOCK LLP
                                                        Dean N. Panos (*pro hac vice*)
12                                                      dpanos@jenner.com
                                                        Stacy S. Jakobe (*pro hac vice*)
13                                                      sjakobe@jenner.com
                                                        353 N. Clark Street
14                                                      Chicago, IL 60654-3456
                                                        Phone:     (312) 222-9350
15                                                      Fax:       (312) 527-0484

16                                                      JENNER & BLOCK LLP
                                                        Kenneth K. Lee (Cal. Bar No. 264296)
17                                                      633 West 5th Street, Suite 3500
                                                        Los Angeles, CA  90071-2054
18                                                      Phone:     (213) 239-5100
                                                        Fax:       (312) 239-5199
19
                                                        Attorneys for Defendants
20

21

22

23

24

25

26

27

28

KRAFT FOODS GLOBAL, INC.'S MOTION TO DISMISS
CV10-01028 (GW) (AGRX)

- 25 -