**THE WESTON FIRM**
GREGORY S. WESTON (239944)
JACK FITZGERALD (257370)
888 Turquoise Street
San Diego, California  92109
Telephone: 858.488.1672
Facsimile:  480.247.4553
greg@westonfirm.com
jack@westonfirm.com

**BECK & LEE BUSINESS TRIAL LAWYERS**
JARED H. BECK (233743)
ELIZABETH LEE BECK (233742)
Courthouse Plaza Building
28 West Flagler Street, Suite 555
Miami, Florida 33130
Telephone: 305.789.0072
Facsimile:  786.664.3334
jared@beckandlee.com
elizabeth@beckandlee.com

Counsel for Plaintiffs and the Proposed Classes

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GOLBAL, INC.,<br><br>Defendants. | Case No. 2:10-cv-01028 GW (AGRX)<br>Pleading Type: Class Action<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT KRAFT FOODS GLOBAL, INC.'S MOTION TO DISMISS**<br><br>Hearing Date: June 24, 2010<br>Time: 8:30 a.m.<br>Courtroom: 10<br>Judge: The Hon. George H. Wu<br>Action Filed: February 11, 2010 |

1

## <u>TABLE OF CONTENTS</u>

2   I.      INTRODUCTION ............................................................... 1

3   II.     ARGUMENT .................................................................... 2

4           A. Dismissal Is Reserved For "Extraordinary" Cases ................. 2

5           B. Plaintiffs' "No Cholesterol" & Whole Grains Claims Are Not
               Expressly Preempted ......................................................... 3

6
                  1. There Is No "Clear And Manifest Purpose Of Congress"
7                    Demanding Preemption ................................................ 4

8                 2. NLEA Preemption Applies Only To Labeling "Requirements,"
                     Not Plaintiffs' State Law Claims ................................. 6
9
                  3. Plaintiffs' Claims Are Permitted Because Express Nutrient
10                   Content Claims May Not Be "False or Misleading In Any
11                   Respect" ................................................................. 8

12                4. There Is No Preemption Where The FDA Does Not Regulate
                     Disqualifying Trans Fat Criteria For "No Cholesterol" Claims .......... 9
13
            C. The Court Should Not Refer This Action To The FDA ......... 11
14
            D. Dismissal Is Not Warranted On The Basis That The Challenged
15             Statements Are "True and Non-Deceptive" ......................... 16

16                1. "Made With Real Vegetables" & Vegetable Depictions ........ 17

17                2. "Nutritionists Recommend" ..................................... 18

18                3. "Sensible Solutions" & "Sensible Snacking," .............. 18

19                4. "Smart Choices Program" ....................................... 19

                  5. "Support Kids' Growth And Development" .................... 20
20
                  6. The Purported Truth Of A Claim Is Not Determinative ...... 20
21
            E. The Challenged Statements Are Not "Mere Puffery" ............ 21
22
            F. Plaintiffs Allegations Are Sufficient Under Rule 9(b) .......... 22
23
            G. Rosen Applies The Wrong Standard And Is Inapplicable ....... 24
24
            H. Plaintiffs' Injuries Establish Standing .............................. 24
25
            I. Plaintiffs Have Standing Under § 1116 Of The Lanham Act Because
26             They Seek Only Injunctive Relief .................................... 25

    III.    CONCLUSION ............................................................... 25
27

28

i

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3   *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934 (8th Cir. 2005).........................11

4   *Altria Group Inc. v. Good*, 129 S. Ct. 538 (2008)..............................................3, 6, 7

5   *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)................................................................2

6   *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108, 2007 U.S. Dist. LEXIS 659, at
    *5 (N.D. Cal. Aug. 29, 2007)................................................................................22

7   *Barrus v. Sylvania*, 55 F.3d 468 (9th Cir. 1995) ..................................................25

8   *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005)......................................8, 9

9   *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989) ..................5

10  *Brown v. MCI Worldcom Network Servs., Inc.*, 277 F.3d 1166 (9th Cir. 2002).....12

11  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992)...........................................7

12  *Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008) ..........................11, 12

13  *Cook, Perkiss, & Liehe, Inc., v. N. Cal. Collection Serv.*, 911 F.2d 242 (9th Cir.
    1990)....................................................................................................................21

14  *County of Santa Clara v. Astra United States*, 588 F.3d 1237 (9th Cir. 2009).......12

15  *Davel Communs., Inc. v. Qwest Corp.*, 460 F.3d 1075 (9th Cir. 2006) ...........12, 13

16  *DeVivo v. Indymac Bank*, No. CV 09-2555, 2009 U.S. Dist. LEXIS 51477 at *6
17  (C.D. Cal. June 10, 2009)......................................................................................2

18  *Doyle v. Ill. Cent. R.R. Co.*, No. CV F 08-0971, 2009 U.S. Dist. LEXIS 8852 (E.D.
    Cal. Jan. 29, 2009)................................................................................................2

19  *Elhilu v. Quizno's Franchising Co., LLC*, No. 06-cv-07855, 2008 U.S. Dist.
20  LEXIS 109435 (C.D. Cal. Apr. 3, 2008) .............................................................23

21  *English v. Gen. Elec. Co.*, 496 U.S. 72 (1990)........................................................3

22  *Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008) ..........................................4

23  *Farokhzadeh v. Too Faced Cosmetics*, No. B213306, 2010 Cal. App. Unpub.
    LEXIS 3004 (Apr. 26, 2010)................................................................................24

24  *Franklin Fueling Sys. v. Veeder-Root Co.*, 2009 U.S. Dist. LEXIS 72953 (E.D.
25  Cal. Aug. 11, 2009) .........................................................................................20, 21

26  *Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995) ...............................................10

27  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997)....................................2

28  *Healthpoint, Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526, 2008 U.S. Dist.

LEXIS 20971 (W.D. Tex. Mar. 18, 2008) ..........................................................15

*Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241 (C.D. Cal. 2003) .....18

*Hitt v. Arizona Beverage Co., LLC*, No. 08cv809, 2009 WL 449190 (S.D. Cal. Feb. 4, 2009)..........................................................................................................18

*Holk v. Snapple Bev. Corp.*, 575 F.3d 329 (3d Cir. 2009) .........................................4

*Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24 (D.D.C. 2007) ............................21

*In re Bisphenol-A Polycarbonate (BPA) Plastic Prods. Liab. Litig.*, MDL No. 1967, 2009 U.S. Dist. LEXIS 104451 (W.D. Mo. Nov. 9, 2009).................13, 15

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282 (C.D. Cal. 2008) .................................................................................14

*In re Pepsico, Inc. Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008) ...................................................................................11

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009).......................................23

*Laster v. T-Mobile United States, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005).....24

*Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009) ...15, 16

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 623 (C.D. Cal. 2008) ...............21

*McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ...............................................................................17

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ...................................................3, 7, 9

*Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943 (9th Cir. 2009) .......................2

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989)..........23, 24

*Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235 (2009).............20

*Mut. Pharm. Co. v. Watson Pharms., Inc.*, No. 09-5421, 2010 U.S. Dist. LEXIS 10542 (D.N.J. Feb. 8, 2010)...........................................................................14

*N.Y. State Rest. Ass'n v. N.Y. City Bd. Of Health*, 509 F. Supp. 2d 351 (S.D.N.Y. 2007)..............................................................................................................7

*N.Y. State Rest. Ass'n v. N.Y. City Bd. Of Health*, 556 F.3d 114 (2d Cir. 2009) ....11

*Nader v. Allegheny Airlines*, 426 U.S. 290 (1976)..................................................14

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993)..................................................23

*Newcal Indus. v. Ikon Office Solutions*, 513 F.3d 1038 (9th Cir. 2008) ................21

*Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512 (S.D.N.Y. 2003)....................21

*People v. Orange Co. Charitable Servs.*, 73 Cal. App. 4th 1054 (1999)................24

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112 (C.D. Cal. 2009) ................................................................................16

*Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62 (1970) ........................................................................................11

*Reyes v. McDonald's Corp.*, No. 06 C 1604, 2006 U.S. Dist. LEXIS 81684 (N.D. Ill. Nov. 8, 2006) ........................................................................................7

*Ryan v. Chemlawn Corp.*, 935 F.2d 129 (7th Cir. 1991)..................................15

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) .........................................22

*Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167 (9th Cir. 2009) ...................3

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997).............21

*TrafficSchool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063 (C.D. Cal. 2008)..25

*Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773 (5th Cir. 1990).......................14

*Tylka v. Gerber Prods. Co.*, 211 F.3d 445 (7th Cir. 2000) ....................................22

*Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 U.S. Dist. LEXIS 10718 (N.D. Ill. June 29, 1999).......................................................................................21

*United States v. General Dynamics Corp.*, 828 F.2d 1356 (9th Cir. 1987) ......11, 12

*United States v. Redwood City*, 640 F.2d 963 (9th Cir. 1981) ................................2

*Vermont Pure Holdings, Ltd. v. Nestle Waters N. Am.*, No. 03-11456, 2006 U.S. Dist. LEXIS 13683 (D. Mass. Mar. 28, 2006) .....................................................11

*Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003).........................25

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) .........................passim

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987) .........................23

*Wright v. Gen. Mills*, No. 08cv1532, 2009 U.S. Dist. LEXIS 90576 (S.D. Cal. Sept. 30, 2009)......................................................................................13, 14, 16

*Wyeth v. Levine*, 129 S. Ct. 1187 (2009) .........................................................passim

*Yeksigian v. Nappi*, 900 F.2d 101 (7th Cir. 1990)...................................................2

*Yumul v. Smart Balance, Inc.*, No. CV 10-00927, slip op. (C.D. Cal., May 24, 2010).................................................................................................16, 18, 19

## **Statutes**

15 U.S.C. § 1116..........................................................................................25

15 U.S.C. § 1125(a)(1) ..............................................................................25

15 U.S.C. § 1334(b).......................................................................................6

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

21 U.S.C. § 343(r)(2)(A)(vi) ............................................................................9

21 U.S.C. § 343-1(a) .......................................................................................6

7 U.S.C. § 136(q)(1)(a) ...................................................................................8

7 U.S.C. § 136v(b) ..........................................................................................8

Pub. L. No. 101-535, § 6(c)(1) .......................................................................4

Pub. L. No. 101-535, § 6(c)(2) .......................................................................4

**<u>Rules</u>**

Fed. R. Civ. P. 8..............................................................................................2

**<u>Regulations</u>**

21 C.F.R. § 100.1 .........................................................................................5, 6

21 C.F.R. § 101.13(b) .....................................................................................8

21 C.F.R. § 101.13(i)(3) ...............................................................................8, 9

21 C.F.R. § 101.62(d) ..................................................................................8, 9

21 C.F.R. § 101.62(d)(1)(i)(C) ........................................................................9

40 C.F.R. § 156.10(a)(5)(ii) ............................................................................8

**<u>Other Authorities</u>**

136 Cong. Rec. H5836 ....................................................................................5

51 F.R. 25,012 (July 9, 1986) ..........................................................................5

60 F.R. 57076-01 (Nov. 13, 1995) ...............................................................5, 9

68 F.R. 41507 (July 11, 2003) ........................................................................13

Connecticut Attorney General's Office Press Release, dated October 20, 2009 ....20

Food and Drug Administration, "*Trans* Fat Now Listed with Saturated Fat and Cholesterol on the Nutrition Facts Label" (Jan. 1, 2006) ...................................10

Food and nutrition board, institute of medicine of the national academies, *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, and Amino Acids (Macronutrients)*, 504 (National Academies Press) (2005) ...............................................................................................................1

Transcript of *Yumul* Hearing, dated May 17, 2010 .................................................24

William Neuman, *For Your Health, Froot Loops*, N.Y. Times, September 4, 2009 .......................................................................................................................19

*Red et al. v. Kraft Foods Inc., et al*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## I.    INTRODUCTION

The *seventeen* occurrences in Kraft's Memorandum of the incorrect phrase "trace amounts" notwithstanding,[1] scientific evidence overwhelmingly shows *there is no safe level of trans fat intake*.

Trans fats are dangerous even in miniscule quantities. Humans do not digest these man-made acids, which are stiff and build up in the body, unlike natural fats, which are supple and pliable. Trans fats irritate and clog the linings of blood vessels and surfaces in the brain. The intake of trans fats—even in small quantities—causes coronary heart disease, diabetes, cancer, obesity, high cholesterol, liver dysfunction, Alzheimer's Disease, and even female infertility. Trans fats are particularly malignant to human health because they deleteriously affect blood chemistry. Unlike saturated fats, which raise "bad" LDL cholesterol levels, trans fats *both raise* LDL levels and *lower* "good" HDL cholesterol concentrations.[2] Scientists estimate that up to 100,000 Americans each year die from diseases contracted through the intake of trans fat. Several countries and U.S. jurisdictions already ban or severely limit use of the toxin.

Because of these risks, food experts overwhelmingly endorse avoiding *completely* the intake of trans fats. The National Academy of Science, which advises the U.S. government on nutritional science for use in public policy and product labeling, has concluded that there is no safe level of trans fat consumption, and has refused to recommend a daily amount or tolerable upper limit for trans fats, because any incremental increase in trans fat intake increases the risk of coronary heart disease.

That many of Kraft's products contain trans fats is itself disturbing. But

---

[1] Scientifically, a "trace amount" is detectable but too small to even accurately measure, i.e., approaching the limit of detection.

[2] Food and nutrition board, institute of medicine of the national academies, *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, and Amino Acids (Macronutrients)*, 504 (National Academies Press) (2005) ("the net result is a higher total cholesterol or LDL cholesterol: HDL cholesterol ratio" (citations omitted)).

1

1  Kraft compounds the problem—and violates California's Unfair Competition Law,
2  False Advertising Law, Consumer Legal Remedies Act, and the Lanham Act—
3  when it tells consumers those products are healthy. As discussed below, Kraft's
4  motion to dismiss should be denied.

5  **II.  ARGUMENT**

6  **A.  Dismissal Is Reserved For "Extraordinary" Cases**

7  The Ninth Circuit is "particularly hostile" to Rule 12(b)(6) motions. *DeVivo*
8  *v. Indymac Bank*, No. CV 09-2555, 2009 U.S. Dist. LEXIS 51477 at *6 (C.D. Cal.
9  June 10, 2009). Dismissal is proper under Rule 12(b)(6) only in "extraordinary"
10  cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). Federal
11  pleading requirements are "extremely liberal," requiring only "a short and plain
12  statement of the claim," so as to "minimize disputes over pleading technicalities."
13  *Doyle v. Ill. Cent. R.R. Co.*, No. CV F 08-0971, 2009 U.S. Dist. LEXIS 8852, at
14  *9-10 (E.D. Cal. Jan. 29, 2009) (citing Fed. R. Civ. P. 8).  In addition, "[p]leadings
15  must be construed so as to do justice." Fed. R. Civ. P. 8(e). Courts hear such
16  motions with "a powerful presumption against rejecting pleadings for failure to
17  state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997)
18  (internal quotation omitted).

19  "[D]efendants have the burden on a motion to dismiss to establish the legal
20  insufficiency of the complaint." *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir.
21  1990). A plaintiff's claim should not be dismissed where "the plaintiff pleads
22  factual content that allows the court to draw the reasonable inference that the
23  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937,
24  1949 (2009). Moreover, "[w]hen there are well-pleaded allegations, a court should
25  assume their veracity and then determine whether they plausibly give rise to an
26  entitlement for relief." *Id.* at 1950. In deciding a motion to dismiss, courts should
27  draw "all reasonable inferences from the complaint in [Plaintiffs'] favor,"
28  *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009), and

2

1    "accept the plaintiffs' allegations as true and construe them in the light most
2    favorable to the plaintiffs." *Siracusano v. Matrixx Initiatives, Inc*., 585 F.3d 1167,
3    1177 (9th Cir. 2009).

4        **B.    Plaintiffs' "No Cholesterol" & Whole Grains Claims Are
             Not Expressly Preempted[3]**
5

6    There are two "cornerstones" of preemption jurisprudence:

7        First, the purpose of Congress is the ultimate touchstone in every pre-
8        emption case. . . . Second, in all pre-emption cases, and particularly in
9        those in which Congress has legislated in a field which the States have
10       traditionally occupied, we start with the assumption that the historic
11       police powers of the States were not to be superseded by the Federal
12       Act unless that was the clear and manifest purpose of Congress.

13   *Wyeth v. Levine*, 129 S. Ct. 1187, 1194-95 (2009) (citations omitted). The
14   assumption against preemption exists because "respect for the States as
15   'independent sovereigns in our federal system'" means that "Congress does not
16   cavalierly pre-empt state-law causes of action." *Id.* at 1195 n.3 (quoting *Medtronic,*
17   *Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). The assumption "applies with particular
18   force when Congress has legislated in a field traditionally occupied by the States."
19   *Altria Group Inc. v. Good*, 129 S. Ct. 538, 543 (2008). "[T]he mere existence of a
20   federal regulatory or enforcement scheme, even [a detailed one], does not by itself
21   imply pre-emption of state remedies." *English v. Gen. Elec. Co.*, 496 U.S. 72, 87
22   (1990).

23       "[C]onsumer protection laws such as the UCL, false advertising law, and
24   CLRA, are within the states' historic police powers and are therefore subject to the

25

26   ――――――――――――――――
     [3] Plaintiffs do not challenge Kraft's Nutrition Facts box labeling. The phrase "0g trans fat" in
27   paragraph 16 of the First Amended Complaint is a typographical error and should read "no
     cholesterol." As is apparent from Plaintiffs' allegations concerning Kraft's Specific
28   Misrepresentations, Material Omissions, and Deceptive Acts, FAC ¶¶ 60-87, Plaintiffs do not
     challenge any statements made within the Nutrition Facts box of any Kraft product.

presumption against preemption." *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1087-88 (2008) (interpretation of the Federal Food, Drug, and Cosmetic Act is "informed by a strong presumption against preemption"). Laws concerning "the proper marketing of food, including the prevention of deceptive sales practices, are likewise within states' historic police powers." *Id.*

> 1.   There Is No "Clear And Manifest Purpose Of Congress" Demanding Preemption

As the proponent of preemption, Kraft has the burden of demonstrating a "clear and manifest purpose of Congress" to preempt Plaintiffs' state law claims under the Nutrition Labeling and Education Act, but has failed to do so. On the contrary, the legislative history shows Congress intended to preserve state authority in the food and beverage labeling field.

The NLEA categorically excludes implied preemption, Pub. L. No. 101-535, § 6(c)(1), and prior to its passage, there was no express preemption provision in the Federal Food, Drug and Cosmetics Act. *See Wyeth*, 129 S. Ct. at 1200. This alone demonstrates "we are lacking a 'clear and manifest' expression of Congressional intent to occupy" the food and beverage field. *Holk v. Snapple Bev. Corp.*, 575 F.3d 329, 338 (3d Cir. 2009)  (no preemption over state law claims concerning the "all natural" statement on beverage label).

And the NLEA's express preemption provision itself demonstrates Congress' intent to keep intact the states' police powers over food labeling. Pub. L. No. 101-535, § 6(c)(1) (the Act "*shall not be construed to preempt any provision of State law*, unless such provision is expressly preempted . . . ." (emphasis added)). The NLEA also preserves state warning laws, Pub. L. No. 101-535, § 6(c)(2). "These provisions demonstrate that Congress was cognizant of the operation of state law and state regulation in the food and beverage field, and it therefore enacted limited exceptions in the NLEA." *Holk*, 575 F.3d at 338. "The case for federal pre-emption is particularly weak where Congress has indicated its

awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them." *Wyeth*, 129 S. Ct. at 1200 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166-67 (1989)).

The Congressional Record confirms Congress' intent to preserve state authority over food labeling. Representative Henry Waxman said of the NLEA that "any preemption provision must recognize the important contribution that the State can make in regulation, and it must leave a role for the states." *See* 136 Cong. Rec. H5836. Congress' recently-passed health care reform bill, which amended the FDCA to strengthen nutrition disclosures by chain restaurants, *see* Pub. L. No. 111-148, § 4205, reiterated this intent:

> Nothing in the amendments made by this section shall be construed to preempt any provision of State or local law, unless such provision establishes or continues into effect nutrient content disclosures of the type required under section 403(q)(5)(H) of the [FDCA] (as added by subsection (b)) and is expressly preempted under subsection (a)(4) of such section . . . .

*Id.*, § 4205(d)(1).

The FDA has also expressed a policy favoring state law: "The agency does not use its authority to preempt State requirements unless there is a genuine need to stop the proliferation of inconsistent requirements between the FDA and the States." 51 F.R. 25,012, at 25,016 (July 9, 1986). Moreover, the FDA has stated in response to requests for clarification as to the scope of preemption under § 343-1, "[t]he only State requirements that are subject to preemption are those that are affirmatively different from the Federal requirements." 60 F.R. 57076-01, 57120 (Nov. 13, 1995).

Kraft's reliance on 21 C.F.R. § 100.1 (Mot. at 6) to suggest an expansive scope of preemption is wrong for two reasons. First, the section is limited to "the

5

*Red et al. v. Kraft Foods Inc., et al*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

submission and consideration of petitions . . . *by a State or political subdivision of a State*, requesting exemption of a State requirement from preemption under section 403A(a)" of the FDCA. *Id.* § 100.1(a)(1) ("Scope and purpose"). Section 100.1 has nothing at all to do with state fraud and unfair competition claims brought by private consumers. Second, even if the section applied to this suit (which it does not), the FDA's interpretation of 403A(a) "does not merit deference," *see Wyeth*, 129 S. Ct. at 1203, because "agencies have no special authority to pronounce on pre-emption absent delegation by Congress . . . ." *Id.* at 1201.

### 2.   NLEA Preemption Applies Only To Labeling "Requirements," Not Plaintiffs' State Law Claims

Plaintiffs' state law claims fall outside the NLEA's preemption clause, because it applies only to "any *requirement* for nutrition labeling of food . . . ." 21 U.S.C. § 343-1(a) (emphasis added). California's consumer fraud laws cannot be preempted because they impose no "requirement" for nutrition labeling; instead, food product manufacturers are subject to the same standard as all companies that sell products to the public—they may not deceive or defraud. Furthermore, Plaintiffs do not seek an order limiting the challenged statements to products containing threshold trans fat levels; rather, Plaintiffs seek a judgment that the statements are misleading in light of the Kraft products' trans fat content.

It was for this exact reason that the Supreme Court upheld Plaintiffs' claims under Maine's Unfair Trade Practices Act for a cigarette manufacturer's use of the term "light." *See Altria Group*, 129 S. Ct. 538. At issue in *Altria* was a preemption provision under the Federal Cigarette Labeling and Advertising Act, which stated "[n]o *requirement* or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." *Id.* at 544 (emphasis added) (quoting 15 U.S.C. § 1334 (b)). "Although both the Act's

6

1   purposes are furthered by prohibiting States from supplementing the federally
2   prescribed warning," the Court held, "neither would be served by limiting the
3   States' authority to prohibit deceptive statements in cigarette advertising." *Id.* at
4   544. Moreover, state fraud rules do not defeat the Act's purpose of preventing
5   nonuniform state warning requirements because "fraud claims rely only on a
6   single, uniform standard: falsity." *Id.* at 545 (quoting *Cipollone v. Liggett Group,*
7   *Inc.*, 505 U.S. 504, 529 (1992) ). *See also Medtronic*, 518 U.S. 470 (no preemption
8   over claims that pacemaker regulated under FDCA violated Florida state common
9   law duties); *Reyes v. McDonald's Corp.*, No. 06 C 1604, 2006 U.S. Dist. LEXIS
10  81684 (N.D. Ill. Nov. 8, 2006)  (no preemption of claim under Illinois Consumer
11  Fraud and Deceptive Practices Act concerning misrepresentation of trans fat, fat
12  and calorie content of french fries); *contra N.Y. State Rest. Ass'n v. N.Y. City Bd.*
13  *Of Health*, 509 F. Supp. 2d 351 (S.D.N.Y. 2007)  (New York City health code
14  regulation requiring restaurants that disclosed calorie content to post such
15  information on menus preempted under NLEA § 343(r)).

16         The Supreme Court similarly rejected an argument that the FDA's approval
17  of a drug label foreclosed state law claims against its manufacturer for failure to
18  warn about the risks of injecting it directly into a patient's vein, which left the
19  plaintiff with an amputated arm and a $7.4 million jury verdict. The question the
20  Court faced was whether the FDA's labeling judgments "preempt state law product
21  liability claims premised on the theory that different labeling judgments were
22  necessary to make drugs reasonably safe for use." *Wyeth*, 129 S. Ct. at 1193. More
23  succinctly, the Court considered "whether the FDA's approvals provide Wyeth
24  with a complete defense to Levine's tort claims." *Id.* at 1191. The Court held they
25  did not. Writing in concurrence, Justice Thomas explained that FDA approval of
26  the product's label does not "give[] Wyeth the unfettered right, for all time, to
27  market its drug with the specific label that was federally approved. . . . It does not
28  represent a finding that the drug, as labeled, can never be deemed unsafe by . . .

7

*Red et al. v. Kraft Foods Inc., et al*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    application of state law." *Id.* at 1210.

2        Here, FDA regulations similarly "approve" the use of the term "no

3    cholesterol" and nutrient characterizations (like the ones Kraft makes about whole

4    grains) under certain circumstances, *see* 21 C.F.R. § 101.62(d) and § 101.13(i)(3),

5    respectively. But that approval does not license Kraft to deceive consumers in

6    violation of California state law.

7            3.    <u>Plaintiffs' Claims Are Permitted Because Express</u>

8                  <u>Nutrient Content Claims May Not Be "False or</u>

9                  <u>Misleading In Any Respect"</u>

10       "No Cholesterol," "provides 5g whole grain," and "Contains 6 Grams Whole

11   Grain! per serving" are express nutrient content claims, *see* 21 C.F.R. § 101.13(b).

12   Such claims may not be "false or misleading in any respect . . . ." 21 C.F.R. §

13   101.13(i)(3). Plaintiffs allege that Kraft's "No Cholesterol" and whole grain

14   statements are misleading because they falsely suggest the Kraft products are

15   healthy. Thus, Plaintiffs' claims are not preempted, but expressly allowed.

16       The Supreme Court has adopted this exact view. *Bates v. Dow Agrosciences*

17   *LLC*, 544 U.S. 431 (2005). *Bates* involved claims brought by Texas peanut farmers

18   that the label on the pesticide Strongarm, which stated "use of Strongarm is

19   recommended in all areas where peanuts are grown," *id.* at 435, were misleading

20   because the pesticide actually stunted the growth of peanuts in soils with a pH

21   above 7.0. Defendant Dow argued that plaintiffs' claims were preempted under the

22   Federal Insecticide, Fungicide, and Rodenticide Act, which contains a clause

23   exactly like 21 C.F.R. § 101.13(i)(3): under FIFRA, a pesticide is misbranded if

24   "its labeling bears any statement . . . which is *false or misleading in any*

25   *particular*." 7 U.S.C. § 136(q)(1)(a); 40 C.F.R. § 156.10(a)(5)(ii) (emphasis

26   added); *see Bates*, 544 U.S. at 438. FIFRA also contains a preemption clause just

27   like the NLEA's—it prohibits state-law labeling and packaging requirements that

28   are "in addition to or different from" the requirements under FIFRA. 7 U.S.C. §

136v(b). "Petitioners argue that their claims based on fraud and failure to warn are not pre-empted because these common-law duties are equivalent to FIFRA's requirements that a pesticide not contain 'false or misleading' statements, or inadequate instructions or warnings. We agree . . . [and] hold that state law need not explicitly incorporate FIFRA's standards as an element of a cause of action in order to survive pre-emption." *Bates*, 544 U.S. at 447. *See also*, *Medtronic*, 518 U.S. at 513 (O'Connor, J., concurring in part and dissenting in part) (claims not preempted because, "[w]here a state cause of action seeks to enforce an FDCA requirement, that claim does not impose a requirement that is 'different from, or in addition to,' requirements under federal law").

### 4. There Is No Preemption Where The FDA Does Not Regulate Disqualifying Trans Fat Criteria For "No Cholesterol" Claims

In addition to the requirement that express nutrient content claims not be false or misleading under § 101.13(i)(3), "no cholesterol" claims are subject to disqualifying criteria for cholesterol, saturated fat and total fat. That is, manufacturers are prohibited from making "no cholesterol" claims, even if true, where a product's cholesterol, saturated fat or total fat exceeds a prescribed level. *See* 21 C.F.R. § 101.62(d). Implicit in these regulations is the notion that a true statement might nevertheless mislead consumers by drawing attention away from harmful aspects of a product.[4] Thus, for example, a product that contains no cholesterol may not be labeled "no cholesterol" if it contains more than 2 grams of saturated fat. 21 C.F.R. § 101.62(d)(1)(i)(C). But because the FDA has *not* established disqualifying trans fat criteria for no cholesterol statements, claims that such statements are misleading on products containing trans fat are not subject to the NLEA's preemption provision. *See* 60 F.R. 57076-01, 57120 (Nov. 13, 1995)

---

[4] *See, e.g.*, 21 U.S.C. § 343(r)(2)(A)(vi) (a nutrient content claim may not be made if "the claim is misleading in light of the level of another nutrient in the food.")

1    (FDA clarified that where no federal requirement exists, preemption does not

2    occur).

3         In *Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995), the Supreme Court

4    held that the absence of a federal standard is not itself a standard that extinguishes

5    state law under a preemption scheme. *Myrick* involved automobile accidents

6    caused when two trucks, which were not equipped with anti-lock brakes,

7    jackknifed into oncoming traffic. Defendants argued Plaintiffs' tort claims were

8    preempted by the National Traffic and Motor Vehicle Safety Act (which includes

9    an express preemption clause like the NLEA), under which the National Highway

10   Traffic Safety Administration had issued a regulation that would necessitate anti-

11   lock brakes on trucks. But that regulation became suspended upon a Ninth Circuit

12   finding that the agency had not compiled sufficient justifying evidence. *See id.* at

13   283-86. The Supreme Court rejected the petitioners' argument that "the absence of

14   regulation itself constitutes regulation" such that the respondent's claims were

15   preempted. *Id.* at 286.

16        Like in *Myrick*, the FDA's failure to establish disqualifying trans fat criteria

17   for health claims is not an affirmative decision that the minimum, objective

18   standard should be "the absence of all standards," *id.* at 287, but rather stems from

19   the lack of sufficient evidence to establish a Daily Reference Value, a prerequisite

20   to regulating health claims for a substance.[5] And where there is no regulation, there

21

22   ───────────────────
     [5] By policy, the FDA limits the regulation of health claims to substances for which the agency
23   has established a Daily Reference Value. 68 F.R. 41433, at 41464-65 (July 11, 2003). After
     soliciting comment through an Advanced Notice of Proposed Rulemaking in 2003, 68 F.R.
24   41507 (July 11, 2003), the FDA elected to require the disclosure of trans fat in the Nutrition
     Facts box, but declined to regulate health claims concerning products containing trans fats
25   because "[w]hile scientific reports have confirmed the relationship between trans fat and an
     increased risk of [Coronary Heart Disease], none has provided a reference value for trans fat or
26   any other information that FDA believes is sufficient to establish a Daily Reference Value or a
     %DV." Food and Drug Administration, "*Trans* Fat Now Listed with Saturated Fat and
27   Cholesterol on the Nutrition Facts Label" (Jan. 1, 2006), *available at*
28   http://www.fda.gov/Food/LabelingNutrition/ConsumerInformation/ucm109832.htm#choice2.
     The failure to establish a suitable DRV is because, while "trans fat consumption [should] be as

                                          10

1    can be no preemption. This case is thus more like *Vermont Pure Holdings, Ltd. v.*

2    *Nestle Waters N. Am.*, No. 03-11456, 2006 U.S. Dist. LEXIS 13683 (D. Mass.

3    Mar. 28, 2006)  (no preemption of claim for misleading "pure" statement where no

4    FDA standards for purity existed) and *N.Y. State Rest. Ass'n v. N.Y. City Bd. Of*

5    *Health*, 556 F.3d 114 (2d Cir. 2009)  (no preemption in the absence of a regulation

6    under the FDCA for the disclosure of calorie information by chain restaurants), and

7    less like *In re Pepsico, Inc. Bottled Water Mktg. & Sales Practices Litig.*, 588 F.

8    Supp. 2d 527 (S.D.N.Y. 2008) (preemption of claim that *source* of water was

9    misleading because product met FDA labeling regulation as to source).

10        **C.    The Court Should Not Refer This Action To The FDA**

11        The Court should not refer this matter to the FDA under the primary

12   jurisdiction doctrine because (a) Kraft fails to raise a threshold issue requiring

13   agency resolution, (b) the FDA has intentionally refrained from regulating health

14   claims in relation to *trans* fat, (c) Kraft has not demonstrated that FDA scientific or

15   technical expertise is needed, and (d) the FDA cannot provide the remedies

16   Plaintiffs seek.

17        The doctrine of primary jurisdiction provides that, "[w]hen there is a basis

18   for judicial action, independent of agency proceedings, courts may route the

19   threshold decision as to certain issues to the agency charged with primary

20   responsibility for governmental supervision or control of the particular industry or

21   activity involved." *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362

22   (9th Cir. 1987)   (quoting *Port of Boston Marine Terminal Ass'n v.*

23   *Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 68 (1970)). Primary jurisdiction

24   "applies in a limited set of circumstances," *Clark v. Time Warner Cable,* 523 F.3d

25   1110, 1114 (9th Cir. 2008), and "is to be invoked sparingly, as it often results in

26   added expense and delay." *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938

27

28   low as possible," "trans fats are unavoidable in ordinary diets . . . ." 68 F.R. 41433, at 41436
     (citation omitted).

(8th Cir. 2005) (citation omitted). Courts prudentially apply the doctrine of primary jurisdiction *only* where there is (1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration. *General Dynamics*, 828 F.2d at 1362*.*

At the motion to dismiss stage, when deciding whether to defer jurisdiction, the courts must "apply a standard derived from Rule 12(b)(6) jurisprudence: whether the complaint plausibly asserts a claim that would *not* implicate the doctrine." *County of Santa Clara v. Astra United States*, 588 F.3d 1237, 1251-52 (9th Cir. 2009) (declining to invoke primary jurisdiction where action could "plausibly be adjudicated" without agency's expertise) (citations omitted). Where "the allegations of the complaint do not necessarily require the doctrine's applicability, then the primary jurisdiction doctrine may not be applied on a motion to dismiss . . . ." *Davel Communs., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1088 (9th Cir. 2006) .

Primary jurisdiction doctrine "is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit" but instead "is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Clark*, 523 F.3d at 1114 (citations omitted); *see also Brown v. MCI Worldcom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002) (same); *Davel*, 460 F.3d at 1086 (The doctrine "does not require that all claims within an agency's purview be decided by the agency" (citation omitted)); *General Dynamics*, 828 F.2d at 1363 ("While it is certainly true that the competence of an agency to pass on an issue is a necessary condition to the application of the doctrine, competence alone is not sufficient."). The Court should not invoke the FDA's primary jurisdiction here.

1    *First*, Kraft does not identify any issue that needs resolving, instead merely
2    noting that whether and to what extent a manufacturer may make some of the
3    claims challenged in the Complaint is within the FDA's jurisdiction. (Mot. at 13.)
4    That an agency exercises jurisdiction over the general subject matter of a
5    complaint does not suggest the presence of a threshold issue needing agency
6    resolution before the court may hear plaintiffs' claims. Kraft begs the question
7    rather than identifying an issue requiring the FDA's scientific expertise. Moreover,
8    the FDA's jurisdiction over the subject matter of the Complaint does not rob this
9    Court of jurisdiction—because primary jurisdiction is applicable to claims properly
10   cognizable in court, it "is not a doctrine that implicates the subject matter
11   jurisdiction of the federal courts. . . . Consequently, even where the doctrine
12   requires an issue to be referred to an administrative agency, it does not deprive the
13   court of jurisdiction." *Davel*, 460 F.3d at 1080 (citations and internal quotations
14   omitted).

15   *Second*, the FDA has specifically declined to promulgate regulations
16   concerning *trans* fat disqualifying levels for the types of health claims Plaintiffs
17   challenge, as described *supra* in footnote 5. Furthermore, the agency limited its
18   solicitation of comment, and the possibility of establishing qualifying criteria for
19   *trans* fat in health claims, solely to (1) saturated fat and cholesterol claims, (2) lean
20   and extra lean claims, and (3) health claims that contain a message about
21   cholesterol-raising fats. 68 F.R. 41507 (July 11, 2003). This leaves unaddressed a
22   slew of Kraft claims Plaintiffs challenge. In addition, the Court may properly take
23   into account an agency's lack of diligence in resolving an issue in exercising its
24   discretion to retain jurisdiction. *See In re Bisphenol-A Polycarbonate (BPA)*
25   *Plastic Prods. Liab. Litig.*, MDL No. 1967, 2009 U.S. Dist. LEXIS 104451, at *31
26   (W.D. Mo. Nov. 9, 2009). Because the FDA solicited comment *seven years ago*
27   and has not yet acted, the Court should refrain from invoking the primary
28   jurisdiction doctrine to refer the matter to the FDA.

1    Facing a similar situation to the one here, the court in *Wright v. Gen. Mills*,

2 No. 08cv1532, 2009 U.S. Dist. LEXIS 90576, at *8-9 (S.D. Cal. Sept. 30, 2009),

3 declined to invoke the primary jurisdiction doctrine to refer to the FDA plaintiff's

4 claims under the UCL, FAL and CLRA concerning defendant's use of the term

5 "100% natural" in labeling and advertising its Nature Valley products. While the

6 FDA had "addressed the use of the term 'natural,'" its policy with respect to the

7 use of the term was "unrestrictive," and therefore, state law claims based upon the

8 use of the term were (1) not an issue of first impression, (2) did not require

9 technical expertise within the FDA's special competence, and (3) did not raise

10 particularly complicated issues outside the ability of the Court to consider and

11 decide. *Id.*

12    *Third*, the Court does not need the FDA's technical or scientific expertise to

13 resolve Plaintiff's claims. Those claims do not depend upon the establishment of a

14 *trans* fat DRV to determine whether *trans* fat is dangerous, and whether, in light of

15 its danger, Kraft's health claims are misleading. *See Nader v. Allegheny Airlines*,

16 426 U.S. 290, 304 (1976)[6] (fraudulent omission claim against airline carrier was

17 not within primary jurisdiction of FAA because the standards to be applied in an

18 action for fraudulent misrepresentation are within the conventional competence of

19 the courts); *see also Mut. Pharm. Co. v. Watson Pharms., Inc.*, No. 09-5421, 2010

20 U.S. Dist. LEXIS 10542, at *16 (D.N.J. Feb. 8, 2010) ("the complaint alleges that

21 defendants . . . made false and misleading representations on their product inserts

22 and labels. Whether these statements are false and misleading to relevant

23 consumers is not a matter reserved for the FDA, but a matter that falls within the

24 jurisdiction of this Court."); *In re Epogen & Aranesp Off-Label Mktg. & Sales*

25 *Practices Litig.*, 590 F. Supp. 2d 1282, 1292 (C.D. Cal. 2008) ("To hold contrary

26 would mean that the FDA, not the courts, would be responsible for resolving all

27

28 [6] *Superseded by statute (on another ground) as stated in*, *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 782 (5th Cir. 1990).

questions of whether a statement made in connection with prescription drug advertising was false, misleading, or omitted a material fact. This Court would not extend the FDA's primary jurisdiction so far."). While the FDA is the correct body to establish a *trans* fat DRV, that is not a prerequisite to adjudicating Plaintiffs' claims. It is within the Court's competence to review the scientific literature and expert testimony offered to determine how dangerous *trans* fat is and, based on that determination, to decide whether Kraft's advertising practices are unlawful. *See, e.g.*, *Healthpoint, Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526, 2008 U.S. Dist. LEXIS 20971, at *32-33 (W.D. Tex. Mar. 18, 2008) (even where FDA has not required a defendant to demonstrate a quality of its product, the defendant is "not free to make false or misleading statements about its product").

*Fourth*, because the FDA cannot provide the monetary relief Plaintiffs seek, the Court should decline to invoke primary jurisdiction. *See Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991) ("[A]s both parties agree that the EPA cannot provide the plaintiff with any form of compensatory or punitive damages, we fail to understand what role the EPA can play in this suit . . . ."); *In re BPA*, 2009 U.S. Dist. LEXIS 104451, at *31-32 ("With respect to the type of relief requested, Plaintiffs seek only monetary remedies, which the FDA cannot provide. This factor further supports denial of Defendants' claim that the FDA has primary jurisdiction over Plaintiffs' claims.").

That primary jurisdiction referral is inappropriate here is reflected in the case law. In *Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009), a plaintiff consumer alleged the defendant deceptively labeled its pasta sauce "all natural" even though it contained high fructose corn syrup. In denying the defendant's motion to dismiss, the court found "application of the [primary jurisdiction] doctrine is not appropriate" because the question of deceptive food labeling "is not a technical area in which the FDA has greater technical expertise than the courts—every day the courts decide whether conduct is misleading." *Id.* at

15

*Red et al. v. Kraft Foods Inc., et al*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1035. Judge Breyer also noted that "plaintiffs' claims are based on state law and, as the Court's analysis of implied preemption suggests, even if the FDA were to formally define 'natural,' federal law would not dispose of plaintiffs' state law claims." *Id.*

*This court*, in *Pom Wonderful*, followed the *Lockwood* court's reasoning. There, a plaintiff beverage producer alleged the defendant competitor deceptively marketed beverage products as pomegranate and cranberry juice even though the primary ingredients were apple and grape juice. In denying defendant's motion to dismiss, Judge Pregerson found that even though "there [were] complex labeling issues raised," the case did "not require expertise or implicate uniformity in administration." *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1123 (C.D. Cal. 2009). The court further found "plaintiff's claims are not based on a technical area over which the FDA has more expertise than the courts" and "are also based on state law, which would not necessarily be resolved in the event of an FDA ruling." *Id.* (citation omitted).

Finally, in *Wright*, the court determined that, even where "the FDA has addressed the use of [a] term" it should not apply the primary jurisdiction doctrine in deference to the FDA where the question presented is "not an issue of first impression [that] does not require technical expertise within the special competence of the FDA." *Wright*, 2009 U.S. Dist. LEXIS 90576, at *8.

## D.    Dismissal Is Not Warranted On The Basis That The Challenged Statements Are "True and Non-Deceptive"

Following a detailed review of applicable case law, *this court* recently rejected the argument that Plaintiffs' claims should be dismissed because packaging like Kraft's is not misleading under the reasonable consumer standard. *See Yumul v. Smart Balance, Inc.*, No. CV 10-00927, slip op. at 9-16 (C.D. Cal., May 24, 2010) (Morrow, J.) (lodged concurrently herewith). In *Yumul*, Judge Morrow held that Smart Balance's representations on its Nucoa margarine

16

1  packaging—including that the product was "healthy" and "Cholesterol Free"—
2  might lead a reasonable consumer to believe the product contained nothing that
3  raised blood cholesterol levels, which is untrue because Nucoa contains trans fat.

4               1.    "Made With Real Vegetables" & Vegetable Depictions

5       Kraft relies on *McKinniss* for the proposition that the depiction of vegetables
6  is not deceptive (Mot. at 16), but the case is bad law. *McKinniss* held that no
7  reasonable consumer could conclude from the depiction of fruit on a label that the
8  product contains significant quantities of fruit because, through the federally-
9  mandated Nutrition Facts label, "a consumer can readily and accurately determine
10 the composition and nutritional value of a product . . . by reading the front and
11 back of the label . . . ." *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-
12 02034, 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007). But the Ninth Circuit
13 subsequently rejected the exact reasoning used in *McKinniss*, that a reasonable
14 consumer should review the Nutrition Facts box to determine the truth about a
15 product's front-label claims:

16         We disagree with the district court that reasonable consumers should
17         be expected to look beyond misleading representations on the front of
18         the box to discover the truth from the ingredient list in small print on
19         the side of the box. . . . We do not think that the FDA requires an
20         ingredient list so that manufacturers can mislead consumers and then
21         rely on the ingredient list to correct those misrepresentations and
22         provide a shield for liability for the deception. Instead, reasonable
23         consumers expect that the ingredient list contains more detailed
24         information about the product that confirms other representations on
25         the packaging.

26 *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Since Kraft's
27 vegetable claims are not, as a matter of law, not-deceptive, Plaintiff should be
28 permitted to "submit evidence to demonstrate whether a reasonable consumer

17

*Red et al. v. Kraft Foods Inc., et al*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  would find the labeling on the subject product to be deceptive." *Yumul*, slip op. at
2  16 (quoting *Hitt v. Arizona Beverage Co., LLC*, No. 08cv809, 2009 WL 449190, at
3  *7 (S.D. Cal. Feb. 4, 2009)).

4             2.      "Nutritionists Recommend"

5         Kraft's characterization of the "Nutritionists Recommend" claim is self-
6  serving and inaccurate. As is evident from the packaging, "Nutritionists
7  Recommend" is set out from the remainder of the paragraph in enlarged, bold,
8  bright yellow font, far more prominent than the remaining small white print. It is
9  plainly designed to catch the consumer's eye at a glance, so that she believes
10 nutritionists recommend eating *Ritz Whole Wheat Crackers* specifically, rather
11 than three one-ounce equivalents of whole grain products per day.

12        Kraft also claims that "Nutritionists Recommend" "refers to the USDA's
13 recommendation regarding daily consumption of whole grain" (Mot. at 17), but
14 this connection is dubious—a reasonable consumer is unlikely to consider the
15 United States Department of Agriculture a "nutritionist," and would instead
16 reasonably assume that "Nutritionists Recommend" refers to one or more
17 unidentified professionals, such as registered dieticians or nutrition scientists.

18        As with Nucoa margarine and Kraft's vegetable claims, the Court should not
19 find that Kraft's packaging "does not make it 'impossible for the plaintiff to prove
20 that a reasonable consumer was likely to be deceived.'" *Yumul*, slip op. at 16
21 (quoting *Williams*, 552 F.3d at 939). Thus, Plaintiffs should be allowed to
22 "demonstrate by extrinsic evidence, such as consumer survey evidence, that the
23 challenged statements tend to mislead consumers." *Id.* (quoting *Heighley v. J.C.
24 Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260 (C.D. Cal. 2003)).

25             3.      "Sensible Solutions" & "Sensible Snacking,"

26        Kraft's "Sensible" claims are both a vehicle for making other claims that are
27 addressed elsewhere (such as "No Cholesterol") (*see* Mot. at 18), and independent
28 claims—that is, Kraft is telling consumers that it is "sensible" to eat (or "snack"

18

*Red et al. v. Kraft Foods Inc., et al*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

on) its Premium Saltine Crackers and Nabisco Ginger Snaps. The word "sensible" is much like the word "healthy" used in Nucoa, which Judge Morrow found should be considered as part of the package's deception as alleged. *See Yumul*, slip op. at 15 n.13. This Court should find that "Sensible Solutions" and "Sensible Snacking" are properly considered as label statements bearing on deceptiveness from the reasonable consumer's vantage point.

### 4.   "Smart Choices Program"

Kraft's claim that the products are part of the Smart Choices Program is particularly deceitful. The Smart Choices Program is an industry-funded initiative created by a coalition of market giants including Kraft, Kellogg's, General Mills, Unilever, ConAgra, Tyson Foods, and PepsiCo. Products that have received the "Smart Choices" checkmark include Froot Loops, Lucky Charms, Cocoa Crispies, Ritz Bitz Peanut Butter Chocolately Blast Crackers, both regular and light mayonnaise, and Fudgesicles. Froot Loops contains 41% sugar by weight—more than many popular brands of cookies.

Walter Willett, chair of the nutrition department at the Harvard School of Public Health, called Smart Choice's criteria "seriously flawed," and "not credible."[7] New York University nutrition professor Marion Nestle said, "[t]he object of this is to make highly processed foods appear as healthful as unprocessed foods, which they are not." *Id.* Michael Jacobson, executive director of the Center for Science in the Public Interest, was previously part of the Smart Choices panel responsible for devising nutritional criteria, but quit because it was dominated by members of the food industry, which skewed the panel's decisions. *Id.* Those criteria, for example, designate as a "Smart Choice" frozen meals and sandwiches containing 600 milligrams of sodium, a quarter of the recommended daily maximum intake. *Id.*

---

[7] William Neuman, *For Your Health, Froot Loops*, N.Y. Times, September 4, 2009, *available at* http://www.nytimes.com/2009/09/05/business/05smart.html.

So dubious is the Smart Choices program that Connecticut's Attorney General initiated an investigation into whether it represents a form of consumer deception in September, 2009, calling the program "nutritionally suspect."[8] In the light of extensive criticism and following a letter from the FDA, Smart Choices *voluntarily suspended its program on October 23, 2009*. Following that suspension, PepsiCo cut ties with the program and Kellogg's announced it would phase out packaging bearing the Smart Choices label. But Kraft has kept the Smart Choice label.

In light of these facts, Kraft's Smart Choices claim plainly could be deceptive to a reasonable consumer, and the Court should allow Plaintiffs to offer evidence of that deception.

### 5.   "Support Kids' Growth And Development"

Like the other challenged claims, Kraft's claim that Teddy Grahams support the growth and development of children is likely to be deceptive to a reasonable consumer in light of the trans fat content of Teddy Grahams. Although some minerals in Teddy Grahams might benefit children, a reasonable consumer can easily obtain the minerals from healthier products that do not contain trans fat.

### 6.   The Purported Truth Of A Claim Is Not Determinative

Finally, the purported truth of a claim is not determinative of whether it is actionable under the UCL, FAL and Lanham Act. *See Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1255 (2009)  ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL."); *Franklin Fueling Sys. v. Veeder-Root Co.*, No. S-09-580, 2009 U.S. Dist. LEXIS 72953, at *21-22 (E.D. Cal. Aug. 11, 2009) (the FAL prohibits "not only advertising which is false, but advertising which, although true, is either actually

---

[8] *See* Connecticut Attorney General's Office Press Release, dated October 20, 2009, *available at* http://www.ct.gov/ag/cwp/view.asp?Q=449216&A=3673.

1    misleading or which has a capacity, likelihood, or tendency to deceive or confuse

2    the public"); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th

3    Cir. 1997)  ("Even if an advertisement is not literally false, relief is available under

4    Lanham Act §43(a) if it can be shown that the advertisement has misled, confused,

5    or deceived the consuming public.").

6            **E.     The Challenged Statements Are Not "Mere Puffery"**

7            Puffery involves "outrageous generalized statements . . . that are so

8    exaggerated as to preclude reliance by consumers." *Franklin Fueling*, 2009 U.S.

9    Dist. LEXIS 72953, at *14 (quoting *Cook, Perkiss, & Liehe, Inc., v. N. Cal.*

10   *Collection Serv.,* 911 F.2d 242, 246 (9th Cir. 1990)). "Conversely, 'misdescriptions

11   of specific or absolute characteristics of a product are actionable.'" *Id.* A statement

12   is mere puffery only where it is "*extremely unlikely* to induce consumer reliance."

13   *Newcal Indus. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008)

14   (emphasis added). This is untrue of the challenged Kraft statements, which are part

15   and parcel of the deceptive packaging of the Kraft products at issue. Moreover,

16   where a series of statements "contribute[s] to the deceptive context of the

17   packaging as a whole" the court should not dismiss the statements as puffery. *See*

18   *Williams*, 552 F.3d at 939 n.3.

19           The authority Kraft relies on to support its puffery defense is inapplicable

20   because it involves claims addressed to the relative merits of the product in the

21   marketplace, phrased in superlative terms, for example, "best food," *Hoyte v. Yum!*

22   *Brands, Inc.*, 489 F. Supp. 2d 24, 30 (D.D.C. 2007), or "nutritionally you can't buy

23   a better food [than Gerber]," *Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999

24   U.S. Dist. LEXIS 10718 (N.D. Ill. June 29, 1999).[9] The Kraft statements, by

25

26   _____

27   [9] *Hoyte*, *Tylka* and *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512 (S.D.N.Y. 2003) are out-
     of-state cases, but "California's consumer protection statutes are among the strongest in the
28   country." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 623 (C.D. Cal. 2008). Thus, they are
     of limited—if any—persuasive value with respect to the standard for puffery under California

1   contrast, "call attention to certain product attributes . . . ." (Mot. at 21.) The Ninth

2   Circuit has held that nearly identical statements to Kraft's are *not* mere puffery

3   because, individually or collectively, they contribute to the potential deception

4   caused by a product's packaging. *Williams*, 552 F.3d at 939. A comparison of the

5   non-puffery statements in *Williams* to Kraft's must resolve any lingering doubt:

| Non-Puffery Gerber Statement | Kraft Statement |
|---|---|
| "made with fruit juice" | "made with vegetables" |
| "wholesome" | "wholesome choice for your whole family" |
| "safe" | "smart choice"; "sensible" |
| "help toddlers grow up strong and healthy" | "support kids' growth and development" "STEPS TO A HEALTHIER YOU" |
| "nutritious" | "nutritionists recommend" |

### F.    Plaintiffs Allegations Are Sufficient Under Rule 9(b)

16      Rule 9(b) is satisfied where allegations are "specific enough to give

17   defendants notice of the particular misconduct which is alleged to constitute the

18   fraud charged so that they can defend against the charge and not just deny that they

19   have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

20   1985). And while averments of fraud must be particularized, Rule 9(b) "must be

21   read in harmony with Fed. R. Civ. P. 8's requirement of a 'short and plain'

22   statement of the claim." *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108, 2007

23   U.S. Dist. LEXIS 659, at *5 (N.D. Cal. Aug. 29, 2007). The particularity

24   requirement is satisfied "if the complaint 'identifies the circumstances constituting

25   fraud so that a defendant can prepare an adequate answer from the allegations.'"

26   *Id.* (quoting *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir.

---

27
28   law. Moreover, *Tylka* was later vacated by the Seventh Circuit, *Tylka v. Gerber Prods. Co.*, 211 F.3d 445 (7th Cir. 2000).

1  1989)). A claim should not be dismissed under Rule 9(b) where "[a]lthough
2  plaintiffs do not identify every speaker who made representations to them . . . there
3  is more than sufficient detail in the Complaint to enable defendants to formulate a
4  defense." *Elhilu v. Quizno's Franchising Co., LLC*, No. 06-cv-07855, 2008 U.S.
5  Dist. LEXIS 109435, at *12 (C.D. Cal. Apr. 3, 2008).

6  Moreover, the requirements of Rule 9(b) "may be relaxed with respect to
7  matters within the opposing party's knowledge. In such situations, plaintiffs can
8  not be expected to have personal knowledge of the relevant facts." *Neubronner v.
9  Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Where there are allegations of corporate
10 fraud, "the particularity requirement may be satisfied if the allegations are
11 accompanied by a statement of facts on which the belief is founded." *Moore*, 885
12 F.2d at 540 (citing *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.
13 1987)). Applying *Neubronner*, Judge White upheld a complaint alleging that
14 unnamed managers manipulated time records of store employees. Noting that
15 "once Plaintiffs have access to the computer records through discovery, they will
16 be able to more fully determine who made the changes and which managing agents
17 . . . were specifically alleged in the fraud," the court held the complaint met the
18 Rule 9(b) standard. *Baas*, 2007 U.S. Dist. LEXIS 65979, at *6.

19 Finally, unlike the complaint dismissed in *Kearns v. Ford Motor Co.*, 567
20 F.3d 1120 (9th Cir. 2009), which failed to state the specific content of the allegedly
21 deceptive statements, *id.* at 1126, Plaintiffs here specify the exact wording of each
22 deceptive statement, include images of each product claim challenged, and
23 describe in detail why each statement is deceptive. (FAC ¶¶ 60-87.) Even where
24 Plaintiffs' allegations do not identify specific people, dates, etc., though, the First
25 Amended Complaint should not be dismissed under Rule 9(b) because Plaintiffs'
26 allegations of Kraft's behavior are sufficient at this stage to put Kraft on notice of
27 Plaintiffs' claims and allow Kraft to answer the Complaint. Moreover, Plaintiffs
28 allege as much as they could reasonably be expected to know before discovery.

23

*Red et al. v. Kraft Foods Inc., et al*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    Their allegations, when taken as a whole in the First Amended Complaint, are
2    specific enough to meet the Rule 9(b) standard of "identify[ing] the circumstances
3    constituting fraud so that a defendant can prepare an adequate answer from the
4    allegations." *Moore*, 885 F.2d at 540. Finally, Plaintiffs need not plead reliance,
5    since that is not an element of claims under the UCL, FAL and CLRA, *see, e.g.*,
6    *People v. Orange Co. Charitable Servs.*, 73 Cal. App. 4th 1054, 1076 (1999)
7    ("Allegations of actual deception, reasonable reliance, and damage are
8    unnecessary."), though they did so plead, *see* FAC ¶ 16.

### G.    *Rosen* Applies The Wrong Standard And Is Inapplicable

10    The Court should give no weight to the *Rosen v. Unilever* opinion because it
11    applied an incorrect standard, i.e., not the reasonable consumer standard under
12    *Williams*, 552 F.3d 934, as *this court* recently recognized. (*See* Transcript of *Yumul*
13    Hearing, dated May 17, 2010, at 14:15-23, attached to the Declaration of Gregory
14    S. Weston as <u>Exhibit A</u>). Moreover, in contrast to the Rosen plaintiff's allegation
15    that "made with a blend of nutrition oils" was literally false, Plaintiffs here allege
16    that Kraft's statements are *deceptive* in light of the products' trans fat content,
17    without regard to the literal truth of the statements.

### H.    Plaintiffs' Injuries Establish Standing

19    California courts have held that consumers' purchases of products as a result
20    of deceptive advertising sufficiently allege an injury in fact to establish standing
21    under the UCL, FAL and CLRA. *See, e.g.*, *Laster v. T-Mobile United States, Inc.*,
22    407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005); *Farokhzadeh v. Too Faced*
23    *Cosmetics*, No. B213306, 2010 Cal. App. Unpub. LEXIS 3004 (Apr. 26, 2010)
24    (consumer has lost money sufficient to establish "injury in fact" standing when she
25    buys a product that does not meet the product's represented qualities). Although
26    *Wright* held that a plaintiff's allegation that the defendant's misrepresentations
27    caused her to purchase a product was insufficient to establish injury in fact, *Wright*
28    provides no guidance on how that claim might be more particularized, and it is

24

difficult to imagine how a plaintiff could plead her injury in a case like this any more particularly than by pointing to the money she spent on a product which did not meet the expectation created by its deceptive advertising.

## I.    Plaintiffs Have Standing Under § 1116 Of The Lanham Act Because They Seek Only Injunctive Relief

Because Plaintiffs seek only injunctive relief under the Lanham Act (FAC ¶¶ 103-104), standing is governed by 15 U.S.C. § 1116, not § 1125(a)(1). Both *Barrus v. Sylvania*, 55 F.3d 468 (9th Cir. 1995) and *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003) (Mot. at 24-25) were dismissed for lack of § 1125(a)(1) standing. Section 1116, which governs Lanham Act *injunctive relief* actions, is far broader.  *See TrafficSchool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063, 1085 (C.D. Cal. 2008)  ("Plaintiffs need not prove actual injury in order to be entitled to injunctive relief under the Lanham Act . . . . [R]elief is available under Lanham Act §43(a) if it can be shown that the advertisement has misled, confused or deceived the consuming public."). Decisions whether to grant injunctive relief under the statute are governed by "principles of equity and upon such terms as the court may deem reasonable"; where the case involves the public interest, "those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake."  *Id.* (citations omitted).

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Kraft's Motion to Dismiss. In the event the Court sees fit to dismiss any portion of the First Amended Complaint, Plaintiffs respectfully request that it be without prejudice and that Plaintiffs be granted leave to amend.

1   DATED: June 9, 2010                          Respectfully Submitted,

2

3                                                /s/ Gregory S. Weston
                                                 Gregory S. Weston
4

5                                                **THE WESTON FIRM**
                                                 GREGORY S. WESTON
6                                                JACK FITZGERALD
7                                                888 Turquoise Street
                                                 San Diego, CA 92109
8                                                Telephone: (858) 488-1672
9                                                Facsimile:  (480) 247-4553

10                                               **BECK & LEE BUSINESS TRIAL**
11                                               **LAWYERS**
                                                 JARED H. BECK
12                                               ELIZABETH LEE BECK
13                                               Courthouse Plaza Building
                                                 28 West Flagler Street, Suite 555
14                                               Miami, FL 33130
15                                               Telephone: (305) 789-0072
                                                 Facsimile:  (786) 664-3334
16

17                                               **Counsel for Plaintiffs and the**
                                                 **Proposed Classes**
18

19

20

21

22

23

24

25

26

27

28

---

26

*Red et al. v. Kraft Foods Inc., et al*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS