UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   CV 10-1028-GW(AGRx)                                      Date   June 24, 2010

Title   *Evangeline Red, et al. v. Kraft Foods, Inc., et al.*

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Elizabeth L. Beck
Jared H. Beck
Gregory S. Weston
John J. Fitzgerald, IV

Attorneys Present for Defendants:

Dean N. Panos

PROCEEDINGS:   **DEFENDANT KRAFT FOODS GLOBAL, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULES (9)(B) AND 12(B)(6) (filed 05/26/10)**

Hearing is held. The Court's tentative ruling is circulated and attached hereto.

The Court sets the following:

| | |
|---|---|
| Deadline for defendants to file Motion to Strike | July 8, 2010 |
| Plaintiff's opposition | July 16, 2010 |
| Defendant's reply | July 21, 2010 |
| Hearing on Motion to Strike | **July 26, 2010 at 8:30 a.m.** |

Defendant Kraft Foods Global, Inc.'s Motion to Dismiss First Amended Complaint Pursuant to Rules (9)(b) and 12(b)(6) is **taken under submission.**

: 40

Initials of Preparer   JG

*Red v. Kraft Foods, Inc.*, Case No. CV-10-1028
Tentative Ruling on Motion to Dismiss the FAC

      Defendants Kraft Goods, Inc., Kraft Foods North America, and Kraft Foods Global, Inc. (collectively, "Kraft" or "Defendants") move to Dismiss the First Amended Complaint of Plaintiffs Evangeline Red and Rachel Whitt ("Plaintiffs") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motion to dismiss will be GRANTED IN PART AND DENIED IN PART.

**Background**
      Plaintiffs filed this putative class action lawsuit on February 11, 2010. In their First Amended Complaint ("FAC"), filed May 17, 2010, Plaintiffs plead four claims for relief for violation of: (1) the Lanham Act, 15 U.S.C. § 1125 et seq., (2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., (3) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq., and (4) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq. Each of these claims for relief arises from Plaintiffs' allegations that the labeling of certain Kraft foods products is deceptive and misleading. For example, paragraph 5 of the FAC avers that "Kraft falsely markets Ritz Crackers, Original Premium Saltine Crackers, Ginger Snaps, and Teddy Grahams (the 'Kraft Trans Fat Products') as heathful despite that they contain dangerous levels of artificial *trans* fat, a toxic food additive banned in many parts of the world."
      Plaintiffs allege that, on or after January 1, 2000, they each repeatedly purchased for their own use Kraft packaged food products containing artificial trans fat.[1] FAC ¶¶ 14, 89. A large portion of the FAC is taken up with a documentation of scientific research regarding the adverse health consequences to humans of ingesting artificial trans fat, including an increased risk of cardiovascular disease, type 2 diabetes, and cancer. See id. at ¶¶ 17-51. Despite these known adverse health consequences, Plaintiffs allege that Kraft employs various methods to suggest to consumers that its products containing artificial trans fat are healthy. These include making the following statements in connection with various products:
    - "No Cholesterol" (various products), FAC ¶¶ 58, 59, 67, 70, 73, 77, 81, 83, 86;
    - "A fun, wholesome choice for your family" (Teddy Grahams), id. at ¶ 50;
    - "A good source of Calcium, Iron & Zinc to Help Support Kids' Growth and Development" (Teddy Grahams), id. at ¶ 61;
    - "Smart Choices Program" (Teddy Grahams), id. at ¶ 62;
    - "Made With Real Vegetables" (Vegetable Thins and Ritz Crackers

---

[1] All of the products at issue in this case disclose on their packaging that they contain "0g trans fat" per serving. U.S. Food and Drug Administration regulations provide that if the designated food serving contains less than .5 grams of trans fat, "the content, when declared, shall be expressed as zero." See 21 C.F.R. § 101.9(c)(2)(ii). Plaintiffs do not contend that Defendants' products contain trans fat in a greater amount than .5 grams per serving.

      Roasted Vegetable), id. at ¶¶ 64, 66
- "Provides 5g whole grain" and "Contains 6 Grams Whole Grain per serving" (Ritz Crackers Whole Wheat and Honey Maid Low Fat Grahams), id. at ¶¶ 76, 83;
- "STEPS TO A HEALTHIER YOU" and "Nutritionists Recommend" (Ritz Crackers Whole Wheat), id. at ¶ 76.
- "Sensible Snacking" and "Sensible Solution" (Ritz Crackers Hint of Salt, Ritz Crackers Reduced Fat, Ritz Crackers Whole Wheat, Original Premium Saltine Crackers, Honey Maid Grahams and Nabisco Ginger Snaps), id. at ¶¶ 72, 75, 79, 80, 83, 85.

Plaintiffs allege that they did not discover Kraft's allegedly unlawful acts until approximately December 2009, when they became aware that the "Kraft Trans Fat Products" contained artificial trans fat which is dangerous to human health. Id. at ¶ 15.

      The FAC seeks a combination of mandatory and prohibitive injunctive relief and restitution including: (1) an order enjoining Kraft from continuing to engage in its alleged deceptive advertising practices; (2) an order compelling Kraft to conduct a corrective advertising campaign; (3) restitution of all monies, revenues, and profits obtained by means of any wrongful act or practice; and (4) an order compelling Kraft to destroy all misleading and deceptive advertising materials.

**Legal Standards**

      Plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

      In deciding a 12(b)(6) motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly subject to judicial notice, and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). The court must construe the complaint in the light most favorable to the plaintiff and must accept all properly delineated factual allegations as true. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The court must also accept as true all reasonable inferences

to be drawn from the material allegations in the complaint. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth. See Iqbal, 129 S. Ct. at 1951; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

**Analysis**

Federal Preemption

Defendants first argue Plaintiffs' claims pertaining to all of the allegedly misleading statements on the labeling of Defendants' products are preempted under the express preemption provision of the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343-1(a). This argument is well-taken insofar as it pertains to certain of Plaintiffs' claims, e.g. that Kraft's designation of "0g trans fat" on its packaging is misleading where the serving portion of the product may in fact contain less than .5 grams of trans fat. See FAC ¶16. However, the NLEA's express preemption provision would not appear to bar Plaintiffs from alleging that Kraft's general assertions about the healthfulness of its products containing artificial trans fats are deceptive and misleading to consumers.

"When addressing questions of express or implied pre-emption, we begin our analysis 'with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" Altria Group, Inc. v. Good, 129 S. Ct. 538, 543 (2008) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). "Thus, when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption." Id. (citation and internal quotes omitted).

In 1990, Congress passed the NLEA, 104 Stat. 2353, 21 U.S.C. § 343 et seq., which amended the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, et seq. ("FDCA"), by providing a preemption provision which created express preemption for state laws, including certain labeling requirements that were added in the NLEA. See Wright v. General Mills, Inc., 2009 U.S. Dist. LEXIS 90576 * 4-5 (S.D. Cal. Sept. 30, 2009); 21 U.S.C. § 343-1.[2] Section 343-1(a) expressly preempts state regulation of specific topics related to food labeling and provides that states may not establish any requirement respecting these specified topics "that is not identical" to the requirements in the FDCA in certain categories. Section 343-1(a)(4) and (5) concern, respectively, "any requirement for nutrition labeling of food that is not identical to the requirement of section 403(q) [21 USCS § 343(q)]," and "any requirement respecting any claim of the type described in section 403(r)(1) [21 U.S.C. § 343(r)(1)] made in the label or labeling of food that is not identical to the requirement of section 403(r) [21 U.S.C. § 343(r)]."

In turn, Section 403(q)(1) states, in pertinent part, that a food shall be deemed to be "misbranded" unless its label provides nutritional information detailing:

---

[2] The NLEA's rule of construction concerning the scope of preemption excludes implied preemption, providing in relevant part that, "[t]he [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the [FDCA]." Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364; see also In re Pepsico, Inc., 588 F. Supp. 2d 527, 532-33 (S.D. N.Y. 2008).

>  (A)(i) the serving size which is an amount customarily consumed and which is expressed in a common household measure that is appropriate to the food, or
>  (ii) if the use of the food is not typically expressed in a serving size, the common household unit of measure that expresses the serving size of the food,
>  (B) the number of servings or other units of measure per container,
>  (C) the total number of calories--
>  (i) derived from any source, and
>  (ii) derived from the total fat,
>  in each serving size or other unit of measure of the food,
>  (D) the amount of the following nutrients: Total fat, saturated fat, cholesterol, sodium, total carbohydrates, complex carbohydrates, sugars, dietary fiber, and total protein contained in each serving size or other unit of measure.

Section 403(r), in pertinent part, provides that claims -

>  (iii) may not be made with respect to the level of cholesterol in the food if the food contains, as determined by the Secretary by regulation, fat or saturated fat in an amount which increases to persons in the general population the risk of disease or a health related condition which is diet related unless [certain conditions are met].
>  \*   \*   \*   \*
>  (v) may not state that a food is high in dietary fiber unless the food is low in total fat as defined by the Secretary or the label or labeling discloses the level of total fat in the food in immediate proximity to such statement and with appropriate prominence which shall be no less than one-half the size of the claim with respect to the level of dietary fiber, and
>  (vi) may not be made if the Secretary by regulation prohibits the claim because the claim is misleading in light of the level of another nutrient in the food.

FDA regulations state:

>  A statement of the number of grams of trans fat in a serving . . . is not required for products that contain less than 0.5 gram of total fat in a serving if no claims are made about fat, fatty acid or cholesterol content . . . . Trans fat content shall be indented and expressed as grams per serving to the nearest 0.5 (1/2)-gram increment below 5 grams and to the nearest gram increment above 5 grams. If the serving contains less than 0.5 gram, the content, when declared, shall be expressed as zero.

21 CFR 101.9(c)(2)(ii).

Directed, as it ostensibly is, to all of Plaintiffs' claims related to Defendants' labeling, Defendants' express preemption argument is overreaching. There is a colorable (and, in fact, ultimately successful) argument that claims based on <u>some</u> of the alleged misrepresentations cited in the Complaint - in particular, the claims based on the designation of "0g trans fat," "no cholesterol," and representations concerning the amounts of whole grain in Defendants' products - are preempted by the FDCA. By contrast, Defendants' assertion (that the FDA's decision not to generally prohibit food manufacturers from making claims about the nutrient content of their products precludes all lawsuits based on alleged deceptive or misleading product labeling) finds scant support in the relevant case law.

By its terms, the NLEA's preemption clause applies only to "any requirement for nutrition labeling of food," 21 U.S.C. § 243-1(a). "In the context of express preemption provisions, 'the term "requirements" . . . reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties.' <u>Bates v. Dow Agrosciences L.L.C.</u>, 544 U.S. 431, 443, 125 S. Ct. 1788, 161 L. Ed. 2d 687 (2005)." <u>In re Pepsico, Inc.</u>, 588 F. Supp. 2d at 532 (additional citations omitted). Plaintiffs, however, argue that their state law consumer fraud law claims cannot be preempted. Rather than seeking to impose a <u>requirement</u> for nutrition labeling, Plaintiffs urge, they are simply seeking to hold food product manufacturers to the same standard as all companies that sell products to the public - <u>i.e.</u>, "that they may not deceive or defraud."

Certainly with respect to Plaintiffs' claims regarding Defendants' "0g trans fat" and perhaps also with their "no cholesterol"designations - where the FDCA sets guidelines specifying when a product may or may not state that it contains 0g trans fat or no cholesterol - this argument is disingenuous at best, because the effect of an injunction in this case would be to impose a requirement that the phrases "0g trans fat" or "no cholesterol" not be used when a product contains any amount of trans fat. The same argument could be made with respect to Defendants' labeling regarding the amounts of whole grain in their products. Other phrases used by Defendants in their product labeling are not explicitly regulated by the FDCA. Thus, Plaintiffs' challenges to Defendants' alleged labeling claims about the overall healthiness/ wholesomeness of their products (<u>e.g.</u> "STEPS TO A HEALTHIER YOU, ""A fun, wholesome choice for your family," "Made With Real Vegetables," "A good source of Calcium, Iron & Zinc," etc.) would not be expressly preempted.

Plaintiffs make the somewhat tortured argument that, because "no cholesterol" claims are subject to disqualifying criteria for cholesterol, saturated fat, and total fat, but not for trans fat, claims that such statements are misleading on products containing trans fat are not subject to the NLEA's preemption provision. Plaintiffs analogize to <u>Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.</u>, 2006 U.S. Dist. LEXIS 13683 (D. Mass. Mar. 28, 2006). In that case, however, the district court permitted a false advertising claim to go forward based on allegations that the defendant falsely marketed its water as "pure" because "no federal standards of identity for bottled water purity exist." <u>Id.</u> at * 30. Here, by contrast, there <u>is</u> a federal standard for a "no cholesterol claim" (<u>see</u> 21 CFR § 101.62(c) and (d)) and to prohibit such a claim when a product contains trans fat would be to impose a requirement that is different from the requirements of the FDCA.

Similarly, Plaintiffs' reliance on <u>Bates</u> to salvage their claims based on Defendants' representations of "no cholesterol" and "whole grain" would be ineffectual. The Supreme Court

in that case simply held that state law need not explicitly incorporate federal standards as an element of a cause of action in order to survive preemption, finding that an express preemption provision in the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) did not "pre-empt any state rules that are fully consistent with federal requirements." 544 U.S. at 452. It is true that regulations promulgated under both FIFRA and the FDA forbid labeling that "bears any statement . . . which is false or misleading in any particular." Compare 21 C.F.R. § 101.13(i)(3) with 40 C.F.R. § 156.10(a)(5)(ii). The Bates Court did not, however, suggest that such regulatory provisions somehow authorize claims under state law that, as here, would have the effect of imposing duties that are inconsistent with federal statutes.[3] The Court never reached the question of whether the state law claims in that case would have such an effect. See id. at 447 ("[W]e leave it to the Court of Appeals to decide in the first instance whether these particular common-law duties are equivalent to FIFRA's misbranding standards.").

    Plaintiffs also cite two more recent Supreme Court cases, Wyeth v. Levine, 129 S. Ct. 1187 (2009), and Altria Group, Inc. v. Good, 129 S. Ct. 538 (2008), in support of their argument against federal preemption. In Wyeth, the Supreme Court, in finding that Plaintiff's tort claims were not preempted, remarked upon the absence of an express preemption provision and so it is not particularly applicable here. Altria, is more favorable to Plaintiff's position. There, the Supreme Court upheld claims under Maine's Unfair Trade Practices Act for a cigarette manufacturer's use of the allegedly deceptive statements "light" and "lowered tar and nicotine" notwithstanding a provision in the Federal Cigarette Labeling and Advertising Act stating that "[no] requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." Altria, 129 S. Ct. at 544 (quoting 15 U.S.C § 1334(b)).

    There is language in Altria that could be read to suggest that Plaintiffs' "no cholesterol" and whole grain claims would not be preempted even though they appear to impose requirements that are "not identical" to those of the FDCA. Noting that the presence of an express preemption provision "does not immediately end the inquiry," id. at 543, the Supreme Court wrote:

> We have construed the operative phrases of [the pre-
> emption clause of the Cigarette Labeling and Advertising Act]§

---

[3] The Supreme Court did, in the context of a claim for breach of express warranty, reject an "inducement test" for preemption, writing:
> This effects-based test finds no support in the text of § 136v(b), which speaks only of "requirements." A requirement is a rule of law that must be obeyed; an event, such as a jury verdict, that merely motivates an optional decision is not a requirement. The proper inquiry calls for an examination of the elements of the common-law duty at issue, see Cipollone, 505 U.S., at 524, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (plurality opinion); it does not call for speculation as to whether a jury verdict will prompt the manufacturer to take any particular action (a question, in any event, that will depend on a variety of cost/benefit calculations best left to the manufacturer's accountants).

544 U.S. at 445.

> 1334(b) in two prior cases: <u>Cipollone</u>, 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407, and <u>Reilly</u>, 533 U.S. 525, 121 S. Ct. 2404, 150 L. Ed. 2d 532. On both occasions we recognized that the phrase a "based on smoking and health" modifies the state-law rule at issue rather than a particular application of that rule.
>
> In <u>Cipollone</u>, the plurality. . . read the pre-emption provision . . . to pre-empt common-law rules as well as positive enactments. . . . [T]he plurality concluded that the provision does not preclude all common-law claims that have some relationship to smoking and health. 505 U.S., at 521-523, 112 S. Ct. 2608, 120 L. Ed. 2d 407. To determine whether a particular common-law claim is pre-empted, the plurality inquired "whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health . . . with respect to . . . advertising or promotion,' giving that clause a fair but narrow reading." <u>Id.</u>, at 524, 112 S. Ct. 2608, 120 L. Ed. 2d 407.
>
> Applying this standard, the plurality held that the plaintiff's claim that cigarette manufacturers had fraudulently misrepresented and concealed a material fact was not pre-empted. That claim alleged a violation of the manufacturers' duty not to deceive--a duty that is not "based on" smoking and health. <u>Id.</u>, at 528-529, 112 S. Ct. 2608, 120 L. Ed. 2d 407. Respondents in this case also allege a violation of the duty not to deceive as that duty is codified in the MUTPA. The duty codified in that state statute, like the duty imposed by the state common-law rule at issue in <u>Cipollone</u>, has nothing to do with smoking and health.

129 S. Ct. at 545. Here, as in <u>Altria</u>, the consumer protection statutes at issue impose a different duty than the labeling requirements of the FDCA. Critically, however, the NLEA preemption clause does not contain limiting language that is exactly analogous to the "based on smoking and health" language in section 1334(b). Moreover, the <u>Altria</u> Court noted that "the FTC has in fact never required that cigarette manufacturers disclose tar and nicotine yields, nor has it condoned representations of those yields through the use of 'light' or 'low tar' descriptors. <u>Id.</u> at 550. Arguably the opposite is true with respect to the "0g trans fat," "no cholesterol" and "whole grain" descriptors in this case. Thus, <u>Altria</u> does not compel the conclusion that Plaintiffs claim in connection with these descriptors which are not covered by the NLEA's express preemption clause.

For the foregoing reasons, the Court would find that claims against certain of Defendants' labeling provisions such as "0g trans fat," "no cholesterol" and "whole grain" are not actionable because they are preempted by federal law. Plaintiffs' claims relating to Defendants' more general assertions regarding the healthfulness of their products do not appear to be preempted. As it does not dispose of any of Plaintiffs' claims in their entirety, portions of Defendants' motion to dismiss should more appropriately be treated as a motion to strike. However,

Defendants should be allowed to designate which portions of the FAC should be so striken.

### Primary Jurisdiction

In addition to federal preemption, Defendants raise a secondary argument that Plaintiffs' claims should be dismissed under the primary jurisdiction doctrine. "The primary jurisdiction doctrine is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." North County Communs. Corp. v. Cal. Catalog & Tech., 594 F.3d 1149, 1155-56 (9th Cir. 2010) (quoting W. Radio Servs. Co. v. Qwest Corp., 530 F.3d 1186, 1200 (9th Cir. 2008)). "When a district court determines that primary jurisdiction applies, it enables a 'referral' of the issue to the relevant agency," meaning in practice "that the court either stays proceedings or dismisses the case without prejudice, so that the parties may seek an administrative ruling." Clark v. Time Warner Cable, 523 F.3d 1110, 1115 (9th Cir. 2008) (citations and internal quote omitted). The doctrine has been applied when there exists -
> (1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.

Id. "[T]he doctrine is not designed 'to secure expert advice' from agencies "every time a court is presented with an issue conceivably within the agency's ambit." [Citation]. Instead, it is to be used only if a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency," [citation], and if "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme," [citation]." Id.

Here, Defendants have not identified any issue to be resolved in this case that requires the expertise of the FDA. In their Reply, Defendants do not address any of Plaintiffs' arguments against abstention, but, rather, appear to all but abandon their primary jurisdiction argument. (They simply repeat the argument from their moving papers that because "trans fat is a specific area under consideration by the FDA," the Court should abstain). None of the cases cited by Defendants suggest that abstention would be appropriate in this case, and In re Paxil Litig., 218 F.R.D. 242, 248 (C.D. Cal. 2003) - in which the district court, denying class certification, opined that "Plaintiffs would use the Court as a forum to challenge and to second-guess the FDA's prior approval of Paxil's safety and efficacy" - is wildly inapposite. As the district court observed in Lockwood v. ConAgra Foods, Inc., 597 F.Supp.2d 1028 (N.D, Cal. 2009), the question of deceptive food labeling "is not a technical area in which the FDA has greater technical expertise than the courts." Id. at 1035; see also Pom Wonderful LLC v. Ocean Spray Cranberries, Inc., 642 F. Supp. 2d 1112, 1123 (C.D. Cal. 2009).

### Whether Plaintiffs' Remaining Claims Are Non-Deceptive and/or Constitute Mere Puffery

Reasonable reliance is not an element of claims under the UCL, FAL, and CLRA. In re Tobacco II Cases, 46 Cal.4th 298, 312 (2009). "Rather, claims under these California statutes are

governed by the "reasonable consumer" test." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." Brockey v. Moore, 107 Cal. App. 4th 86, 100 (2003); see also Sugawara v. Pepsico, Inc., 2009 U.S. Dist. LEXIS 43127 (E.D. Cal. 2009). Where, however, an "alleged misrepresentation, in context, is such that no reasonable consumer could be misled," or where such an alleged misrepresentation amounts to "mere puffery," then the allegation may be dismissed as a matter of law. Haskell v. Time, Inc., 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).

    Defendants assert that no reasonable consumer could be misled as to any of the challenged statements on their product packaging. However, this argument fails to dispose of Plaintiffs' remaining allegations, as the Court cannot say at this stage that none of the challenged statements are not deceptive as a matter of law.

    First, Defendants assert that Plaintiffs cannot state a claim for relief with respect to Defendants' claims that their products are "made with real vegetables," because it is literally true that their products are made with real vegetables. Plaintiffs, however, allege that depictions of vegetables and the phrase "Made with Real Vegetables" on Defendants' product packaging are misleading because each product "contains more [trans fat] than all of the pictured vegetables combined." FAC ¶¶ 64, 66. Defendants correctly observe that the FAC indulges in hyperbole. ("[T]he large images of several particularly healthful vegetables conveys the concrete message to a reasonable consumer: "You can trust eating this product is not bad for your health. We use a lot of vegetables in it." Id. at ¶ 65. ). However, Defendants' implicit argument - that consumers assessing the significance of pictures of vegetables and other depictions of healthfulness should be expected to rely on the federally mandated ingredient list on the product boxes - is undermined (if not negated) by the following language from the Ninth Circuit's opinion in Williams:

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.

552 F.3d at 939.

    It is noted that the juxtaposition between the actual ingredients and the representation of fruits in the Gerber case is arguably somewhat more dramatic than it is here. Nevertheless, Plaintiffs' allegations relating to Defendants' "real vegetable" claims probably should survive this motion to dismiss.

    Defendants next challenge Plaintiffs' claims relating to their "Nutritionists Recommend" and "STEPS TO A HEALTHIER YOU" labeling. These statements appear in the context of the side panel of Kraft's Ritz whole wheat crackers packaging depicting an image of a pyramid over the words "MyPyramid.gov STEPS TO A HEALTHIER YOU," followed by the following

paragraph:
> Nutritionists Recommend eating at least three one-ounce equivalents of whole grain products per day (about 16g whole grains per serving, or at least 48g per day). One serving of Ritz Whole Wheat crackers provides 5g of whole grain, approximately 10% of the minimum daily amount nutritionists recommend. Log on to MyPyramid.gov to help you make smart food choices and get the most nutrition out of your calories.

See FAC p. 35. In this context, the challenged packaging statements are not likely to be determined to be deceptive. Whether the Court can conlude at this juncture that the packaging makes it "impossible for [Plaintiffs] to prove that a reasonable consumer was likely to be deceived," Williams, 552 F.3d at 939, is a closer question (and arguably one that the Court, having determined that at least some of Plaintiffs' allegations give rise to a colorable claim, need not resolve at this juncture).

Defendants' third challenge is to Plaintiffs' claims based on Defendants' "Sensible Solutions," "Sensible Snacking," and "Smart Choices" labeling. In attempting to distinguish Yumul v. Smart Balance, No. 10-cv-00927 (C.D. Cal. May 21, 2010), a recent decision by a court within this district, Defendants urge that "Kraft Foods never described its products as healthy." Reply 15:26-16:1. Whether Defendants' labeling creates such a perception is, manifestly, a jury question. Kraft's attempt to demonstrate that its "Sensible Solutions," "Sensible Snacking," and "Smart Choices" labels cannot provide the basis for a colorable claim is unpersuasive.[4]

Finally, Defendants argue that Plaintiffs' claims that their Teddy Grahams products are a "good source of Calcium, Iron & Zinc to Help Support Kids' Growth and Development" are not deceptive. The requirements for making a "good source" claim are set forth at 21 C.F.R. § 101.54(c)(1). Plaintiffs' FAC does not allege that Teddy Grahams fail to meet these statutory requirements. Plaintiffs nevertheless argue that "[a]lthough some minerals in Teddy Grahams might benefit children, a reasonable consumer can easily obtain the minerals from healthier

---

[4] Although it is getting somewhat far afield of proper analysis on a motion to dismiss, it should be noted that the "Smart Choices" labeling is apt to give rise to some interesting problems down the line in this case. The "Smart Choices" program appears to be an industry-created program; Plaintiffs' claims relating to it are therefore tantamount to an allegation that the entire program is one of consumer fraud. In their motion to dismiss, Defendants note that the Teddy Graham package bearing the "Smart Choices Program" representation directs consumers to the website "SmartChoicesProgram.com" which provides consumers with the nutrient criteria for products bearing the "Smart Choices" label. The fact that Defendants' products might meet these criteria so that the "Smart Choices" statement is literally true does not necessarily protect it from claims of consumer fraud. See, e.g., Morgan v. AT&T Wireless Services, Inc., 177 Cal. App. 4th 1235, 1255 (2009) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL."); Franklin Fueling Sys. v. Veeder-Root Co., 2009 U.S. Dist. LEXIS 72953, at *21-22 (E.D. Cal. Aug. 11, 2009) (finding that the FAL prohibits "not only advertising which is false, but advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public").

products that do not contain trans fat." Opp. 20:15-17. It is doubtful whether a claim based solely on allegations relating to this claim could survive a motion to dismiss under the Twombly/Iqbal standard.

In addition to statements that they assert are not deceptive because they are literally true, Defendants also argue that some of their labeling statements are non-actionable puffery. "[T]he determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion." Newcal Indus. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008) (quoting Cook, Perkiss, & Liehe v. Northern California Collection Service, Inc., 911 F.2d 242, 245 (9th Cir. 1990)).

> A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. [Citation]. "The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." [Citation]. Thus, a statement that is quantifiable, that makes a claim as to the "specific or absolute characteristics of a product," may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery. [Citation].

Id.

Plaintiffs go somewhat too far in arguing that the Ninth Circuit held, in Williams, that certain generalized statements did not constitute puffery. Rather, the Ninth Circuit wrote:

> Gerber's claim that Snacks is "nutritious," were it standing on its own, could arguably constitute puffery, since nutritiousness can be difficult to measure concretely. [Citation]. This statement certainly contributes, however, to the deceptive context of the packaging as a whole. Given the context of this statement, we decline to give Gerber the benefit of the doubt by dismissing the statement as puffery.

Williams, 552 F.3d at 939. Here, too, Plaintiffs have successfully alleged the deceptive nature of various examples of Defendants' product packaging when each package is "taken as a whole." The fact that some of Defendants' labeling statements might constitute mere puffing does not warrant dismissal of this entire action.

### Whether Plaintiffs' Claims Are Pleaded with Sufficient Particularity

Rule 9(b) of the Federal Rules of Civil Procedure states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. Rule 9(b). The particularity requirement is satisfied if the circumstances constituting the alleged fraud are described specifically enough so that defendants can meaningfully defend against the charge. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). "'[W]hile a federal court will examine state law to determine whether the

elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the <u>circumstances</u> of the fraud must be stated with particularity is a federally imposed rule.'" Id. at 1103-04 (quoting <u>Hayduk v. Lanna</u>, 775 F.2d 441, 443 (1st Cir. 1985) (emphasis in original) ).

The Ninth Circuit has held that Rule 9(b)'s particularity requirement applies to claims alleged under the fraud prong of the UCL and CLRA. <u>See</u> <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009). "The Ninth Circuit has not determined that Rule 9(b) applies to Lanham Act [false advertising] claims, although some district courts have applied this standard." <u>Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.</u>, 642 F. Supp. 2d 1112, 1123-24 (C.D. Cal. 2009). District courts in California tend to agree that false advertising claims are "grounded in fraud" and are therefore subject to the requirements of Rule 9(b). <u>See, e.g.</u>, <u>Ecodisc Tech. AG v. DVD Format/Logo Licensing Corp.</u>, 2010 U.S. Dist. LEXIS 55660 (C.D. Cal. Apr. 22, 2010); <u>Pom Wonderful LLC.</u>, 642 F. Supp. 2d at 1124.

Defendants urge that Plaintiffs' FAC fails to allege the details necessary to meet the particularity requirements of Rule 9(b) because they merely allege that they purchased "packaged food" products made by Kraft during the ten year period, but fail to state (1) which specific products they purchased, (2) which particular misrepresentations they relied upon in purchasing the products, or (3) when they viewed the products. Moreover, Defendants note that Plaintiffs do not allege that the current product labels were used throughout the alleged class period, so it is unclear whether the current product labels are the ones that Plaintiffs relied on when they made their purchases. They further argue that Plaintiffs have not adequately alleged that they suffered an injury.

Except with respect to Plaintiffs' allegations of harm, Defendants' argument is well taken. The FAC should be amended to include allegations of which specific products Plaintiffs' purchased, when they purchased them, and what specific allegations they relied upon in deciding to purchase the products.

<u>The Plausability of Plaintiffs' Allegations that the Trans Fat Content of Defendants' Products Falsifies Representations as to their Healthfulness</u>

Defendants final argument in favor of dismissing Plaintiffs' state law claims is that Plaintiffs have failed to allege facts to support the conclusion that the presence of trans fat "regardless of the amount" negates the healthful attributes of Defendants' products. In making this argument, Defendants rely principally upon <u>Rosen v. Unilever Us., Inc.</u>, No. C 09-02563, 2010 U.S. Dist. LEXIS 43797 (N.D. Cal May 3, 2010), where, they assert, the district court found that "nearly identical" allegations related to other products containing trace amounts of trans fat failed to state a claim under Rule 12(b)(6). Obviously, this Court is not bound by the decision in <u>Rosen</u>. The decision in <u>Rosen</u>, moreover, centered on allegations that the defendant's use of the word "nutritious" was false and misleading because it implied that the product contains only nutritious oils. <u>See id.</u> at * 13. The district court wrote:

> The implausibility of Plaintiff's allegations can more readily be
> seen if the allegation are expressed as a categorical syllogism: "For
> the representation 'blend of nutritious oils' to be true, all
> constituent oils must be nutritious. One of the constituent oils in

> the product [partially hydrogenated oil] is not nutritious. Therefore,
> the product representation is false."

Id. (footnote omitted) (brackets in original). Rejecting both the major and minor premise of this "categorical syllogism," the district court found that the plaintiff had not plausibly stated a claim for relief.

Here, Plaintiffs' allegations are not susceptible to such a demonstration of logical fallacy. Plaintiffs have adequately alleged facts to support their assertion that trans fat is harmful for humans to consume. Whether it is harmful in the amounts present in Defendants' products is not an appropriate question for resolution at this stage.

### Plaintiffs Lack of Standing to Bring a Claim under the Lanham Act

Plaintiff lacks standing to bring a claim for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). "That section provides potential relief for competitors, not consumers, to protect against unfair competition." Peiper v. MBNA, 2007 U.S. Dist. LEXIS 13540, 1-2 (D. Haw. Feb. 27, 2007) (citing Halicki v. United Artists Communications, Inc., 812 F.2d 1213, 1214 (9th Cir. 1987)).

Defendants correctly observe that the fact that Plaintiffs are only seeking injunctive relief does not confer standing upon them. Section 1116 of the Lanham Act provides an injunctive remedy to prevent either a trademark violation or a violation of section 1125. A claim under section 1125 still requires the type of anti-competitive injury that the Lanham Act is designed to redress. See, e.g., Ditri v. Coldwell Banker Residential Affliates, Inc., 954 F.2d 869 (3d Cir. 1993); Swartz v. Schaub, 826 F. Supp. 274 (N.D. Ill. 1993). Accordingly, Plaintiffs' Lanham Act claim would be DISMISSED WITHOUT LEAVE TO AMEND.

**Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss would be GRANTED IN PART AND DENIED IN PART. Plaintiffs' claims with respect to Defendants' product statements that would impose requirements that are clearly inconsistent with the relevant federal statutes (e.g., the "no cholesterol" and "whole grain" claims) would be deemed stricken from the Complaint. Plaintiffs' case should be allowed to go forward with respect to their other claims of deceptive packaging. Plaintiffs must amend their complaint to include allegations of which specific products Plaintiffs' purchased, when they purchased them, and what specific allegations they relied upon at the time of purchase. Plaintiffs' Lanham Act claim will be DISMISSED without leave to amend.