**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
633 West 5th Street, Suite 3500
Los Angeles, CA 90071-2054
Phone:      (213) 239-5100
Facsimile:  (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
Stacy S. Jakobe (*pro hac vice*)
sjakobe@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:      (312) 222-9350
Fax:        (312) 527-0484

Attorneys for Defendants Kraft Foods Global, Inc., improperly sued as Kraft Foods North America, and Kraft Foods Inc.

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br><br>        Defendants. | No. CV10-01028 (GW) (AGRX)<br><br>**KRAFT FOODS GLOBAL, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE FIRST AMENDED COMPLAINT**<br><br>Hearing Date: July 26, 2010<br>Time: 8:30 a.m.<br>Courtroom: 10<br>Judge: Hon. George H. Wu<br>Action Filed: February 11, 2010 |

# **TABLE OF CONTENTS**

Introduction ................................................................................................................2

Argument....................................................................................................................3

I.  Plaintiffs' Allegations Based on "No Cholesterol," Statements
    Concerning Whole Grain Content, and "0g Trans Fat" Must Be Stricken
    In Light of the Court's Preemption Ruling.........................................................3

II. Allegations Based On Generalized And Innocuous Statements Must Also
    Be Stricken Or Dismissed As A Logical Consequence Of This Court's
    Preemption Ruling. ...........................................................................................5

    A.  It Is Not "Likely" Or "Probable" That A Reasonable Consumer
        Would Be Misled By The Terms "Sensible Solutions" Or "Sensible
        Snacking." .............................................................................................6

    B.  It Is Not "Likely" Or "Probable" That A Reasonable Consumer
        Would Be Misled By The Statement "Made With Real
        Vegetables." ........................................................................................11

    C.  It Is Not "Likely" Or "Probable" That A Reasonable Consumer
        Would Be Misled By Mere Puffery Such As "Smart Choices" Or
        "A Fun, Wholesome Choice For Your Family." .................................13

III. The Court Should Strike Or Dismiss The Various Non-Preempted
     Statements That It Suggested Were Not Actionable. ......................................13

Conclusion ..............................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**FEDERAL CASES**

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ..................................................................6

*McKinnis v. Kellogg USA*,
    No. 07-cv-2661, 2007 WL 4766060 (E.D. Cal. Sept. 19, 2007) ..................10, 11

*McKinniss v. Sunny Delight Beverages Co.*,
    No. 07-cv-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ..................6, 9, 10

*Sugawara v. PepsiCo, Inc.*,
    No. 08-cv-01335, 2009 WL 1439115 (E.D. Cal. May 21, 2009)..........................10

*Videtto v. Kellogg USA*,
    No. 08-cv-01324, 2009 WL 1439086 (E.D. Cal. May 21, 2009)..............10, 11, 12

*Williams v. Gerber*,
    523 F.3d 935 (9th Cir. 2008) ........................................................6, 10, 12

*Yumul v. Smart Balance, Inc.*,
    No. 10-cv-927, Slip Op. (C.D. Cal. May 24, 2010) ........................................10, 12

**STATE CASES**

*Lavie v. Proctor & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ...........................................................6, 9

*Morgan v. AT&T Wireless Serv., Inc.*,
    177 Cal. App. 4th 1235 (2009) .............................................................12

**FEDERAL RULES, STATUTES, AND REGULATIONS**

Federal Rule of Civil Procedure 12(b)(6) ....................................................11

21 U.S.C. § 343-1(a)(4)-(5) ..................................................................3

21 C.F.R. § 101.9(c)(2)(ii) ....................................................................7

21 C.F.R. § 101.13(i) .........................................................................4, 5

21 C.F.R. § 101.54(c)(1) ........................................................................9

21 C.F.R. § 101.62(d) ...........................................................................4

64 Fed. Reg. 62746, 62758 (Nov. 17, 1999) .......................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO STRIKE

TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on July 26, at 8:30 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable George Wu, United States District Judge, Central District of California, located at 225 East Temple Street, Los Angeles, CA 90012, Defendant Kraft Foods Global, Inc. will move, and hereby does move, to strike the First Amended Complaint of Plaintiffs Evangeline Red and Rachel Whitt in accordance with this Court's June 24, 2010 Minute Order.

This Motion is based on this Notice of Motion and Motion, and Defendant's supporting Memorandum of Points and Authorities (attached).

Dated: July 8, 2010

DEAN N. PANOS
KENNETH K. LEE
STACY S. JAKOBE

By: _/s/ Kenneth Lee_____

Attorneys for Defendants KRAFT FOODS
INC., KRAFT FOODS NORTH AMERICA,
and KRAFT FOODS GLOBAL, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") is predicated on a single, crucial premise: Kraft Foods "deceptively omits the fact" that its snacks contain trace amounts of trans fat. FAC ¶¶ 61, 69, 72, 75, 79. From this "deceptive omission" spring forth all of the FAC's allegations of misleading statements. According to Plaintiffs, even accurate nutrient content statements and innocuous puffery are rendered misleading due to this "deceptive omission." For example, Plaintiffs argue that the phrases "Sensible Snacking" or "5g Whole Grain" on the packaging of Kraft Foods snacks would mislead a reasonable consumer into believing that they are healthy in every aspect because there is no mention that they include a miniscule amount of trans fat.

This Court's June 23 tentative decision has swept away the factual predicate for Plaintiffs' claim that the various food packaging is misleading. The Court recognized that the federal Nutrition Labeling and Education Act ("NLEA") requires Kraft Foods to declare sub-0.5g of trans fat as "0g trans fat." Op. 7. It further held that NLEA expressly permits Kraft Foods to declare that its products have "no cholesterol" and contains whole grains. Therefore, this Court ruled that federal law expressly preempts state law claims based on the following statements: (1) "No cholesterol," (2) "Provides 5g Whole Grain" and "Contains 6 grams Whole Grain Per Serving," and (3) "0g trans fat." Op. 7. Accordingly, all allegations based on them are not actionable under state law and must be stricken from the FAC.

Plaintiffs' allegations based on other statements (*e.g.*, "Made With Real Vegetables," "Sensible Snacking") must also be stricken or dismissed as a logical result of the Court's preemption ruling. This Court's preemption ruling has taken away the assumption — *i.e.*, Kraft Foods supposedly has a duty to disclose sub-0.5g of trans fat — that is central to Plaintiffs' claim of deception. Therefore, without that

assumption, it is not "likely" or "probable" that any of these generalized or factually accurate statements would mislead a reasonable consumer into believing that these snacks are absolutely healthy.

Finally, this Court should strike or dismiss several of the other statements that the tentative ruling indicated likely would not state a plausible claim for relief.

## ARGUMENT

I.   **Plaintiffs' Allegations Based on "No Cholesterol," Statements Concerning Whole Grain Content, and "0g Trans Fat" Must Be Stricken In Light of the Court's Preemption Ruling.**

This Court correctly ruled that NLEA preempts state law claims based on statements that are required or permitted under federal law.  NLEA, which amended the Food, Drug and Cosmetic Act (FDCA), includes an express preemption provision forbidding a State from "directly or indirectly establish[ing] . . . any requirement" that is "not identical" to federal labeling standards.  21 U.S.C. § 343-1(a)(4)-(5).  NLEA and its implementing regulations further set "guidelines when a product may or may not state that it contains 0g trans fat or no cholesterol" as well as standards for listing "the amounts of whole grain in their products."  Op. 5.

As the Court pointed out, Kraft Foods products in question complied with federal law in listing the amount of trans fat, cholesterol, and whole grain:

"0g trans fat."  FDA regulations state: "If the serving contains less than 0.5 gram [of trans fat], the content, when declared, shall be expressed as zero."  Op. 4 (citing 21 C.F.R. § 101.9(c)(2)(ii)).  The reason why FDA mandates that trans fat below 0.5 grams be listed as "zero" is that such miniscule amounts "cannot be adequately analyzed."  *See, e.g.,* Food Labeling: Trans Fatty Acids in Nutritional Labeling Nutrient Content Claims, and Health Claims, 64 Fed. Reg. 62746, 62758 (Nov. 17, 1999).  It is undisputed that Kraft Foods has complied with this federal regulation.

<u>Statements concerning amount of "whole grain" nutrients.</u>   FDA regulations state that "a product may contain a statement about the amount or percentage of a nutrient" such as whole grain.  21 C.F.R. § 101.13(i) (Jan. 6, 1993); Op. 5.  There is again no dispute that Kraft Foods' statements about whole grain nutrient content are factually accurate and in compliance with FDA regulation.

<u>"No cholesterol."</u>  There "is a federal standard for 'no cholesterol claim' (*see* 21 C.F.R. § 101.62(c) and (d))."  Op. 5.  This federal standard is very detailed and precise. For example, a food product with less than 13 grams of total fat per reference amount customarily consumed can be described as having "no cholesterol" only if (a) it has "less than 2 mg of cholesterol," (b) it "contains no ingredient that is generally understood by consumers to contain cholesterol," (c) it "contains 2g or less of saturated fatty acids," and (d) in the case of food products that satisfy the other requirements without any special processing or formulation, "it is labeled to disclose that cholesterol is not usually present in the food."  21 C.F.R. § 101.62(d)(i)(A)-(D) (Jan. 6, 1993).

Plaintiffs conceded at the hearing that Kraft Foods "actually do[es] comply with" this "no cholesterol" FDA regulation. Tr. 16.  However, Plaintiffs half-heartedly argued that Kraft Foods' "no cholesterol" statement runs afoul of the "general rule defining nutrient content claims" which prohibits "false or misleading" statements.  Tr. 16-17 (citing 21 C.F.R. § 101.13(i)(3)).  This argument lacks merit.  FDA regulations make clear that the term "no cholesterol" may be used "provided that" certain conditions are met.  21 C.F.R. § 101.62(d) (Jan. 6, 1993).  There is no language in the more general "nutrient content" regulation suggesting that it trumps the very detailed requirements for the specific "no cholesterol" regulation.  Otherwise, it would make little sense to have such elaborate "no cholesterol" statement requirements.  In any event, the general "nutrient content" regulation merely states that a "product may contain a statement about the amount or percentage of a nutrient if . . . [t]he statement

does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., "100 calories" or "5 grams of fat")."  21 C.F.R. § 101.13(i)(3) (Jan. 6, 1993).  That is precisely what Kraft Foods has done: Kraft lawfully states that its products have "no cholesterol."

In light of these federal standards, this Court ruled that "to prohibit" statements regarding 0g trans fat, zero cholesterol or whole grain content just because "a product contains [trace amounts] of trans fat would be to impose a requirement that is different from the requirements of the FDCA."  Op. 5.  Plaintiffs' attorney at the hearing essentially agreed with this Court's preemption analysis, explaining he "generally agree[s] with almost everything" in the tentative opinion.  Hearing Tr. 16.

Accordingly, the following paragraphs in the First Amended Complaint must be stricken in their entirety: ¶¶ 58, 59, 67, 68, 70, 71, 73, 74, 77, 78, 81, 82, 84, 86 and 87.  Portions of ¶¶ 8, 76, 83, 92, 104, 107, 108, 109, 125 and certain statements on page 46 of the FAC must be stricken as well.  These preempted allegations are crossed out in red in the attached Exhibit A.[1]

## II.   Allegations Based On Generalized And Innocuous Statements Must Also Be Stricken Or Dismissed As A Logical Consequence Of This Court's Preemption Ruling.

If there is any doubt that the crux of this lawsuit is about Kraft Foods' "deceptive omission" about the trace presence of trans fat, one only needs to count the number of times — 152 — that "trans fat" is mentioned in the complaint.  *See, e.g.,* FAC ¶¶ 16, 61, 69, 72, 75, 79 (paragraphs alleging that Kraft Foods deceptively omitted that its products contain tiny amounts of trans fat).

This Court's preemption ruling, however, has cast aside the factual predicate for Plaintiffs' claim that vague statements (such as "Sensible Solutions" and "Sensible Snacking") are rendered misleading by the presence of sub-0.5 grams of trans fat.  It

---

[1]    Paragraphs 99-104 have also been crossed out in red to reflect this Court's ruling that Plaintiffs lack standing to bring a claim under the Lanham Act.  Op. 13.

therefore logically follows that allegations based on such statements must be stricken or dismissed because a reasonable consumer would not likely be misled by them.

At the hearing, the Court asked what standard it should apply for determining on a motion to dismiss whether a "reasonable consumer" would be misled by a food packaging.  Tr. 4-5.  It is well-established under California law that a court must examine whether a reasonable person would "<u>likely to be deceived</u>" by an advertisement.  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (affirming 12(b)(6) dismissal of §17200 and §17500 claims) (emphasis added).  The Ninth Circuit in *Williams v. Gerber* recently affirmed that "[u]nder the reasonable consumer standard," the plaintiff "must show that 'members of the public are likely to be deceived.'" 523 F.3d 935, 938 (9th Cir. 2008) (citing *Freeman v. Time*). "The term 'likely' indicates that the <u>deception must be probable, not just possible</u>." *McKinniss v. Sunny Delight Beverages Co.*, No. 07-cv-02034-RGK (JCX), 2007 WL 4766525, at *3 (C.D. Cal. Sept. 4, 2007) (citing *Freeman v. Time*) (granting 12(b)(6) motion) (emphasis added).  Stated differently, "'[l]ikely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the ad is such that it is <u>probable that a significant portion of the general consuming public</u> or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (emphasis added).

### A.   It Is Not "Likely" Or "Probable" That A Reasonable Consumer Would Be Misled By The Terms "Sensible Solutions" Or "Sensible Snacking."

This Court's preemption ruling has undermined the factual linchpin for Plaintiffs' claim that the statements "Sensible Solutions" and "Sensible Snacking" — combined with the "deceptive omission" about the trace presence of trans fat — would

likely mislead a reasonable consumer into concluding that the snacks are absolutely healthy.

Plaintiffs do not allege that the vague adjective "sensible" is by itself deceptive. Rather, the FAC states that "Sensible Solutions" and "Sensible Snacking" are misleading because the packaging "deceptively omits the fact that the product contains artificial trans fat," and therefore a reasonable consumer would erroneously believe that the snacks are healthy in every single aspect. *See, e.g.,* FAC ¶¶ 69, 72, 75, 79 (emphasis added). The terms "Sensible Solutions" and "Sensible Snacking," in other words, would no longer be misleading if the packaging stated that there are miniscule amounts of trans fat. However, this Court has recognized in its preemption ruling that FDA regulations require Kraft Foods to state that its food products contain "0g trans fat." Op. 4; 21 C.F.R. § 101.9(c)(2)(ii) (July 11, 2003). Therefore, as a logical matter, Kraft Foods could not have "deceptively omit[ted] the fact that the product contains artificial trans fat" because federal law prevents it from declaring the very statement that Plaintiffs seek.

In short, this Court's preemption ruling has effectively excavated the factual foundation for Plaintiffs' state law claims: Once the premise for Plaintiffs' claim of deception — *i.e.,* the allegedly "deceptive omission" of the trace presence of trans fat — is taken away, Plaintiffs' argument, like a stack of cards, topples over. In the absence of the predicate that "0g trans fat" in the nutritional panel is falsely labeled, it is not "likely" or "probable" that a reasonable consumer would be misled into believing that "Sensible Snacking" or "Sensible Solution" indicates that the snacks are healthy in every respect.

Even if this Court had not recognized in its preemption ruling that the statement "0g trans fat" is required by federal law here, Plaintiffs' argument would still fail. It is not "likely" or "probable" that a reasonable consumer would be misled because the terms "Sensible Solutions" or "Sensible Snacking" cannot be read in isolation. Even a

cursory glance at the packaging makes clear that those terms refer to specific product attributes that are listed immediately below (*e.g.*, "No Cholesterol," "5g Whole Grain"). For example, the First Amended Complaint includes the following image of the packaging for the Teddy Grahams Cinnamon Graham Snacks:



*See* FAC p. 16.  The term "Sensible Solution" in the bottom right hand corner clearly refers to the fact that the product has "5g Whole Grain Per Serving" and is a "Good Source of Calcium."[2]  Plaintiffs do not factually dispute that the Teddy Grahams Cinnamon Graham Snacks contains 5g whole grain per serving.  And this Court has recognized that FDA regulations expressly permit Kraft Foods to declare that this product has 5 grams of whole grain and that such a nutrient declaration is non-actionable.  Op. 5-7.  Stated differently, a reasonable consumer would understand that Teddy Grahams are described as a "sensible" snack because they contain 5 grams of whole grain, not because they are supposedly healthy in every single aspect.

Yet Plaintiffs insist that even this innocuous packaging is misleading to consumers because they are not aware of the trace amount of trans fat.  It is, of course, possible that some consumers may be confused by the packaging.  But that is not the proper standard.  Under the reasonable consumer standard, the "deception must be probable, not just possible." *McKinniss*, 2007 WL 4766525, at *3 (granting 12(b)(6) motion).  To sustain such a claim under California law, it must be "probable that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled." *Lavie*, 105 Cal. App. 4th at 508.  That is not the situation here.

Indeed, numerous federal courts in California have dismissed complaints where the allegations of misleading food packaging were on firmer factual ground.  For example, in *McKinniss v. Sunny Delight*, Judge Klausner of the Central District of California dismissed a complaint that alleged that Sunny Delight's "Orange Fused Pineapple" and "Orange Fused Peach" drinks, by virtue of their name and images of fruits on its labels, misleadingly suggested that they were fruit drinks when in fact their primary ingredient was high fructose corn syrup.  2007 WL 4766525, at *3.  The court

---

[2]    Plaintiffs do not allege that the latter statement is misleading.  In any event, FDA regulations expressly permit Kraft Foods to state that its product is a "Good Source of Calcium." 21 C.F.R. §101.54(c)(1).

granted the motion to dismiss, ruling that a reasonable consumer would not likely be misled by the product labels because the labels had no affirmative misrepresentations and disclosed the full nutritional value of a product. *See id.* at *4. *See also, e.g., Videtto v. Kellogg USA*, 08-cv-01324, 2009 WL 1439086, at *1 (E.D. Cal. May 21, 2009) (dismissing complaint that alleged that Froot Loops misleadingly suggested it contained actual fruit by use of the word "Froot" in its name and "pictures of brightly colored cereal made to resemble fruit."); *McKinnis v. Kellogg USA*, No. 07-cv-2661, 2007 WL 4766060 (E.D. Cal. Sept. 19, 2007) (dismissing similar Froot Loops complaint); *Sugawara v. PepsiCo, Inc.*, 08-cv-01335, 2009 WL 1439115 (E.D. Cal. May 21, 2009) (dismissing complaint that alleged that Crunch-berries cereal misleadingly suggested inclusion of berries).

At its core, Plaintiffs' claim is that a reasonable consumer would believe that snacks such as Teddy Grahams Cinnamon Graham Snacks and Ritz Crackers are healthy in every single aspect because the packaging mentions the phrases "Sensible Solution" or "Sensible Snacking."[3] But a reasonable consumer understands that even the most natural or health-conscious food may not be healthy in every possible way because it may contain calories, fat, carbohydrates or other ingredients that may not be healthy. For example, a milk company should not be precluded from touting calcium content on its milk cartons just because milk contains calories as well as fat and is low in iron nutrients. *A fortiori*, it is not "probable" or "likely" that a reasonable consumer would believe that, for example, cinnamon-flavored graham crackers in the shape of bears must be healthy in all aspects because it is described as "Sensible Snacking" or "Sensible Solutions" in reference to, for example, its whole grain content.

[3] Plaintiffs do not cite a single relevant opinion establishing that the vague and generalized term "sensible" is synonymous with "healthy." Where courts have refused to dismiss similar lawsuits, the food products in question included direct language touting its healthiness. *See, e.g., Yumul v. Smart Balance, Inc.*, 10-cv-927, Slip Op. at 15 (C.D. Cal. May 24, 2010) (noting that the product label described it as "healthy" and that "healthy" is similar to the term "nutritious"); *Williams v. Gerber*, 523 F.3d 935 (9th Cir. 2008) (baby fruit juice was described as "nutritious").

As one California federal court put it, a judge need not "ignore all concepts of . . . common sense" in deciding whether a complaint alleging misleading food packaging should be dismissed under Rule 12(b)(6). *Videtto v. Kellogg USA*, 08-cv-01324, 2009 WL 1439086, at *1 (E.D. Cal. May 21, 2009) (dismissing complaint that alleged Froot Loops misleadingly suggested fruits were included because of its name and the shape and color of the cereal). Likewise here, this Court need not "ignore all concepts of . . . . common sense" and blindly accept the improbable and unlikely proposition that a reasonable consumer would construe the vague term "Sensible Snacking" or "Sensible Solutions" to mean that Teddy Grahams Cinnamon Graham Snacks and Ritz Crackers found in the snacks aisle of the supermarket are healthy in all aspects.

This Court should accordingly dismiss or strike all of the allegations premised on the "Sensible Solution" and "Sensible Snacking" statements in FAC ¶¶ 69, 72, 75, 79, 80, 83, 85 and on page 46. These proposed stricken paragraphs are highlighted in red in the attached Exhibit A.

**B.      It Is Not "Likely" Or "Probable" That A Reasonable Consumer Would Be Misled By The Statement "Made With Real Vegetables."**

Plaintiffs' argument that the phrase "Made With Real Vegetables" would mislead consumers is similarly premised on the assumption that Kraft should have disclosed that its products contain miniscule amounts of trans fat. Plaintiffs do not dispute that Vegetable Thins and Ritz Crackers are indeed made with real vegetables that are accurately depicted on the boxes. *See* FAC ¶¶ 64-66. But Plaintiffs nevertheless claim that the statement "is misleading because the product contains more partially hydrogenated vegetable oil, a form of artificial *trans* fat than it does all of the vegetables pictured on the box," and therefore a reasonable consumer would be misled into believing these snacks are healthy in every aspect. *Id.* ¶ 66. In other words,

Plaintiffs are implicitly arguing that Kraft Foods should have declared the miniscule sub-0.5 grams of trans fat contained in its products.

But this Court's preemption decision held that Kraft Foods cannot, even if it wanted to do so, state the amount of trans fat as other than "0 grams." In light of that backdrop, a reasonable consumer cannot be deceived by the factually correct statement "Made with Real Vegetables." Plaintiffs cannot stave off dismissal by relying on the general principle that a literally true statement sometimes can be misleading. A literally true statement can only be misleading if a contrary material fact has been omitted, despite an obligation to disclose it. *See, e.g., Morgan v. AT&T Wireless Serv., Inc.,* 177 Cal. App. 4th 1235, 1255 (2009) (literally true statement can be made misleading by "failure to disclose other relevant information"). Here, the situation is the exact opposite: The supposedly material fact — the sub-0.5g amount of trans fat — cannot be disclosed under federal law because FDA has deemed that such trace amount of trans fat cannot be "adequately analyzed" and therefore must be stated as "0g trans fat."

Furthermore, the Ninth Circuit's decision in *Williams v. Gerber* is not to the contrary. The critical distinction is that there were <u>affirmative</u> misrepresentations in that case. For example, Gerber's Fruit Juice Snacks contained "no fruit juice from any of the fruits pictured on the packaging," and "the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' . . . appears to be false." 523 F.3d at 936 & 939. Judge Pregerson thus wrote that the complaint cannot be dismissed in light of these affirmative misrepresentations. In short, "*Williams* stands for the proposition that where product packaging contains an <u>affirmative misrepresentation,</u> the manufacturer cannot rely on the small-print nutritional label to contradict and cure that misrepresentation." *Yumul,* 10-cv-927, Slip Op. at 15 (emphasis added). *See also Videtto,* 2009 WL 1439086, at *1 (post-*Williams* decision dismissing complaint where there was no affirmative misrepresentation and "common sense" dictated that no

reasonable consumer would be deceived that Froot Loops contains actual fruits). Here, there is no such affirmative misrepresentation because there is no factual dispute that Kraft Foods products are made of real vegetables.

This Court should accordingly dismiss or strike all of the allegations premised on the "Made With Real Vegetable" statements in FAC ¶¶ 64-66. These proposed stricken paragraphs are highlighted in red in the attached Exhibit A.

**C.   It Is Not "Likely" Or "Probable" That A Reasonable Consumer Would Be Misled By Mere Puffery Such As "Smart Choices" Or "A Fun, Wholesome Choice For Your Family."**

Plaintiffs argue that vague and generalized statements such as "A Fun, Wholesome Choice For Your Family" and "Smart Choices" are misleading because of the presence of trans fat. As the FAC puts it, "far from wholesome, Teddy Grahams contain artificial trans fat" and "are far from a 'smart choice'" because it has "significant amounts of artificial *trans* fat." FAC ¶¶ 60, 62.

As set forth above, this Court's preemption ruling has completely undercut Plaintiffs' claim of deception because their argument is premised on the notion that Kraft Foods has an obligation to disclose the amount of trans fat in its products. Once that premise is taken away, no reasonable consumer can conceivably be misled by this type of puffery.

Paragraphs 60, 62 and 63, as well as certain statements on page 46, of the FAC should, therefore, be stricken or the claims based on these statements be dismissed. These proposed stricken paragraphs are highlighted in red in the attached Exhibit A.

**III.   The Court Should Strike Or Dismiss The Various Non-Preempted Statements That It Suggested Were Not Actionable.**

In its tentative ruling, this Court observed that the following non-preempted statements likely are non-actionable but refrained from outright dismissing claims based on them:

- MyPyramid.gov "STEPS TO A HEALTHIER YOU." FAC ¶ 76; Exhibit I to Request for Judicial Notice (Doc. 18) ("Request").
- "Nutritionists Recommend eating at least three one-ounce equivalents of whole grain products per day (about 16g whole grains per serving, or at least 48g per day). One serving of Ritz Whole Wheat crackers provides 5g of whole grain, approximately 10% of the minimum daily amount nutritionists recommend. Log on to MyPyramid.gov to help you make smart food choices and get the most nutrition out of your calories." FAC ¶ 76; Exhibit I to Request.
- "A good source of Calcium, Iron, & Zinc to Help Support Kids' Growth and Development." FAC ¶ 61; *e.g.*, Exhibit A to Request.

All three statements are non-actionable and should be stricken or dismissed. With respect to the first two statements, the tentative ruling said that the "challenged packaging statements are <u>not likely</u> to be determined deceptive." Op. 10 (emphasis added). Under California's well-established standard, such statements are non-actionable as a matter of law because they are "not likely" to deceive a reasonable consumer. *Supra* at 6.

For the third statement, this Court doubted "whether a claim based solely on allegations relating to this claim could survive a motion to dismiss under the *Twombly/Iqbal* standard." Op. 11. This Court's assessment is correct. Plaintiffs concede "some minerals in Teddy Grahams might benefit children," but insist that the statement is misleading because a "reasonable consumer can easily obtain the minerals from <u>healthier</u> products that do not contain trans fat." Opp. Br. 20 (emphasis added). But Kraft Foods did not state that Teddy Grahams was the only or best source of such minerals; it merely stated the accurate statement that Teddy Grahams contained these minerals.

This Court should accordingly dismiss or strike FAC ¶¶ 61, 76. These proposed stricken paragraphs are highlighted in red in the attached Exhibit A.

## CONCLUSION

For the foregoing reasons, the Court should strike allegations based on "no cholesterol," whole grain content, and "0g trans fat." Paragraphs containing those allegations are crossed out in red in the attached Exhibit A. The remaining generalized and vague statements found on Kraft Foods' packaging must also be stricken or dismissed as a logical consequence of the Court's preemption ruling. Those paragraphs are highlighted in red in the attached Exhibit A.

Dated: July 8, 2010

KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.


        /s/ Kenneth K. Lee

By one of their attorneys

JENNER & BLOCK LLP
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
Stacy S. Jakobe (*pro hac vice*)
sjakobe@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:    (312) 222-9350
Fax:      (312) 527-0484

JENNER & BLOCK LLP
Kenneth K. Lee (Cal. Bar No. 264296)
633 West 5th Street, Suite 3500
Los Angeles, CA 90071-2054
Phone:    (213) 239-5100
Fax:      (312) 239-5199

Attorneys for Defendants