# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-1028-GW(AGRx) | Date | July 26, 2010 |
| Title | *Evangeline Red, et al. v. Kraft Foods, Inc., et al.* | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Gregory S. Weston
John J. Fitzgerald, IV

Attorneys Present for Defendants:

Dean N. Panos
Kenneth K. Lee

**PROCEEDINGS:**   **DEFENDANT KRAFT FOODS GLOBAL, INC.'S MOTION TO STRIKE FIRST AMENDED COMPLAINT (filed 07/08/10)**

The Court's tentative ruling is circulated and attached hereto. Court hears oral argument.

For reasons stated on the record, plaintiffs' are ordered to file an offer of proof as to all claims by August 2, 2010. Any response from defendants will be filed by August 9, 2010. Defendant Kraft Foods Global, Inc.'s Motion to Strike First Amended Complaint is continued is continued to **August 12, 2010 at 8:30 a.m.**

                                                                                              :     22

                                                               Initials of Preparer    JG

***Red, et. al v. Kraft Foods Inc.***, Case No. CV-10-1028
Tentative Ruling on Motion to Strike Plaintiffs' First Amended Complaint Pursuant to FRCP 12(f)

## I. Introduction

The facts of this case were previously set out in the Court's June 24, 2010 Tentative Ruling on the Motion to Dismiss the First Amended Complaint ("FAC"). This matter is before the Court for hearing on Defendants' Kraft Goods Inc., Kraft Foods North America, and Kraft Foods Global, Inc. (collectively "Defendants") Motion to Strike portions of Plaintiff's FAC ("Motion to Strike").

## II. Background

Following the June 24, 2010 hearing on Defendant's Motion to Dismiss and in light of the Court's indicated ruling that some but not all of the claims raised by Plaintiffs were preempted by federal law, Defendants were invited to file the instant motion in an attempt to make the pleadings more manageable. It was not anticipated that the parties would treat the motion to strike as, essentially, an opportunity to re-argue the Court's Tentative Ruling, but this appears to be what they have done. Had the Court intended this to be other than a more or less ministerial motion, it would not have set a briefing schedule under which the Reply Brief would not be received until, effectively, two days before the hearing.

Nevertheless, no really new arguments are raised, and there is no reason for the Court to revisit its earlier indicated ruling that Plaintiffs' allegations based on statements in Defendants' product packaging concerning whole grain content, "no cholesterol," and "0g trans fat" must, in light of the express preemption provision at 21 U.S.C. § 343-1 (a)(4)-(5) be stricken. Nor will the Court revisit, as Defendants urge, its ruling that Plaintiffs' claims - with respect to Defendants' statements about the overall healthfulness of their products - may proceed.

Defendants' argument is essentially that the Court's preemption ruling with respect to "0g trans fat" (the one point, incidentally, that is conceded by Plaintiffs) "has cast aside the factual predicate for Plaintiffs' claim that [such] vague statements ... are

rendered misleading by the presence of sub-0.5 grams of trans fat." Motion 5:23-25. But Defendants commit a logical fallacy. They write:

> The terms "Sensible Solutions" and "Sensible Snacking," in other words, would no longer be misleading if the packaging stated that there are miniscule amounts of trans fat. However, this Court has recognized in its preemption ruling that FDA regulations require Kraft Foods to state that its food products contain "0g trans fat." Op. 4; 21 C.F.R. § 101.9(c)(2)(ii) (July 11, 2003). Therefore, as a logical matter, Kraft Foods could not have "deceptively omit[ted] the fact that the product contains artificial trans fat" because federal law prevents it from declaring the very statement that Plaintiffs seek.

Motion 7:8-15. This is not a preemption argument. Plaintiffs are not, with these claims, seeking to impose any requirement that is "not identical" to federal labeling standards. See 21 U.S.C. § 343-1 (a)(4)-(5). If, on the other hand, the statute (or regulations promulgated under the statute) expressly authorized statements about the overall healthfulness of products containing trans fat, then claims based on such statements obviously would be preempted.

The remainder of Defendants' motion is devoted to arguing that a reasonable consumer would not be confused by certain statements on Defendants' packaging, or that such statements constitute "mere puffing." This Court has previously indicated that it would not dismiss or strike Plaintiffs' claims on this basis. Although the Court indicated that certain statements were "not likely" to be determined deceptive, Defendants overreach in their assertion that "[u]nder California's well-established standard, such statements are non-actionable as a matter of law because they are 'not likely' to deceive a reasonable consumer." Here, as in Williams v. Gerber Prods. Co., 552 F.3d 934 (9th Cir. 2008), the challenged statements may "contribute[ ] . . . to the deceptive context of the packaging as a whole," and cannot at this point be stricken.

Plaintiffs' Opposition to the Motion to Strike is even more overreaching. Seemingly retreating from their concession at oral argument that some of their claims were preempted, Plaintiffs, too seek to revisit the Court's entire Tentative Ruling. Their arguments are still unpersuasive. Plaintiffs' brief embarks on a lengthy, unnecessary, discussion of so-called field preemption principles when this is an express preemption

case in which Congressional intent is relatively clear cut. In addition, Plaintiffs discuss Pom Wonderful LLC v. Ocean Spray Cranberries, Inc., 642 F. Supp. 2d 1112, 1122 (C.D. Cal. 2009), in which the court held UCL claims were not preempted "[a]s long as Plaintiff's state claims do not impose different requirements than the FFDCA or FDA regulations," but this precisely begs the issue. Here, it is not only "theoretically possible to create a scenario where a court decision regarding Defendant's product label may conflict directly with FDA regulations," id. at 1120, Plaintiffs are literally seeking to impose a different requirement - i.e. that claims regarding "No Cholesterol" and "whole grain" may not be made when a product contains any amount of trans fat.

  As they did in their Opposition to Defendant's Motion to Dismiss, Plaintiffs place great weight on the general "false and misleading" provision found in 21 U.S.C. § 343(a) and 21 C.F.R. § 101.13. The general statutory provision which Plaintiffs rely on - that a food is misbranded if "its labeling is false or misleading in any particular" - was part of the original enactment of the Federal Food, Drug, and Cosmetic Act ("FDCA") in 1938. See Pub. L. 75-717, § 403(a), 52 Stat. 1040, 1047. The more specific provisions involving nutrition information, nutrition levels, and health-related claims were added much more recently, through the Nutrition Labeling and Education Act of 1990 ("NLEA"). See Pub. L 101-535, §§ 2(a), 3(a), 104 Stat. 2353, 2353-2356, 2357-2360. As Defendants observe, a later and more specific enactment controls over an earlier but more general enactment. See United States v. Estate of Romani, 523 U.S. 517, 532 (1998).

  Similarly, Plaintiffs cannot escape the effects of the preemption provision based on their argument that the regulatory "false and misleading" provision is "integral to the FDA's regulation of food manufacturers' front-label advertising statements" and that it was added because "FDA simply cannot anticipate every advertisement a food manufacturer might conceive." Opp. 6:8. Plaintiffs rely on this provision to resurrect their "no cholesterol" claims in particular. They argue that Kraft cannot rely solely on its compliance with 21 C.F.R. § 101.62(d)'s "no cholesterol" disqualifying criteria to exempt the statement on its front label advertisements from state law claims because § 101.62 provides that "no cholesterol" advertisements are subject to both specific disqualifying criteria under § 101.62(d) and the regulatory prohibition on false and

misleading statements under § 101.13(i)(3). As Defendants argue, however, "neither the text nor the structure of 21 C.F.R. § 101.31 (i) indicates that it was intended as a catch-all provision." Reply 7:11-13. Plaintiffs cannot rely on the "false and misleading provision" to avoid the fact that they are seeking to impose a different requirement than any that are set out in § 101.62(d).

### III. Legal Standard

Defendants ask the Court to strike certain material from the FAC. Under Rule 12(f), a party may move to strike any "redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion may be used to strike particular categories of relief where they are not recoverable as a matter of law. *See Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005); *see also* Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Proc. Before Trial* (the Rutter Group 2009) § 9:389 at 9-111.

### IV. Analysis

#### A. Federal Preemption

Defendants argue that Plaintiffs' allegations based on statements of "no cholesterol," whole grain content, and "0g trans fat" must be stricken in light of this Court's preemption discussion/holding in its Tentative Ruling. Therein, this Court found that claims against certain of Defendants' labeling provisions such as "0g trans fat," "no cholesterol" and "whole grain" are not actionable because they are preempted by federal law. Specifically, Plaintiffs' claims regarding Defendants' "0g trans fat" and its "no cholesterol" designations, are explicitly regulated by the FDCA and therefore are preempted pursuant to the NLEA's preemption clause. *See* 21 U.S.C. § 243-1(a) ("no State or political subdivision of a State may directly or indirectly establish any requirement for nutrition labeling of food that is not identical to the requirement[s]" set forth in the NLEA). By contrast, the Court stated in its Tentative Ruling that Plaintiffs' claims relating to Defendants' more general assertions regarding the healthfulness of their products, such as "Made With Real Vegetables" and "Sensible Snacking," do not appear to be preempted.

"When addressing questions of express or implied pre-emption, we begin our analysis 'with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of

Congress.'" *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). "Thus, when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption. *Id.* (citation and internal quotes omitted).

In 1990, Congress passed the NLEA, which amended the FDCA, by providing a provision which created express preemption for state laws, including certain labeling requirements that were added in the NLEA. *See Wright v. General Mills, Inc.* 2009 U.S. Dist. LEXIS 90576 * 4-5 (S.D. Cal. Sept. 30, 2009); 21 U.S.C. § 343-1.[1] Section 343-1(a) expressly preempts state regulation of specific topics related to food labeling and provides that states may not establish any requirement respecting these specified topics "that is not identical" to the requirements in the FDCA in certain categories. Sections 343-1(a)(4) and (5) concern, respectively, "any requirement for nutrition labeling of food that is not identical to the requirement of section 403(a) [21 U.S.C. § 343(q)]," and "any requirement respecting any claim of the type described in section 403(r)(1) [21 U.S.C. § 343(r)(1)] made in the label or labeling of food that is not identical to the requirement of section 403(r) [21 U.S.C. § 343(r)]." Section 343(q) sets out the amount of certain specified nutrients, such as cholesterol, that must be included on the label. 21 U.S.C. § 343(q)(1)(D), (E). Section 343(r) sets out when a label may include certain statements characterizing nutrient levels or the relationship between certain nutrients and a disease or health-related condition. 21 U.S.C. § 343(r)(1). Under Section 343(r), statements characterizing nutrient levels "may be made only if the characterization of the level made in the claim uses terms which are defined in regulations of the Secretary." 21 U.S.C. § 343(r)(2)(A)(i).

In their Opposition to the Motion to Strike, Plaintiffs put forth many of the same arguments from their Opposition to Defendants' Motion to Dismiss, despite this Court's preemption holding in its Tentative Ruling. Plaintiffs revisit the preemption issue, arguing that their claims challenging FDA-authorized statements are not preempted because they seek to enforce state law claims that are "identical" to federal standards.

---

[1] The NLEA's rule of construction concerning the scope of preemption excludes implied preemption, providing in relevant part that, [t]he [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the [FDCA]." Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364; *see also In re Pepsico, Inc.*, 588 F. Supp. 2d 527, 532-33 (S.D.N.Y. 2008).

According to Plaintiffs, nutrient content statements that are expressly permitted by the NLEA are disallowed if the products contain any amount of trans fat. However, as this Court has already indicated, federal law expressly preempts allegations based on "no cholesterol" and specific grams of whole grain content because the FDCA has set guidelines specifying when a product label may or may not make these statements.

"0g trans fat." With respect to Defendants' labeling claims about the overall healthiness/wholesomeness of their products (*e.g.*, "Sensible Solutions," "STEPS TO A HEALTHIER YOU,"etc.), Defendants argue that the Court's preemption ruling with respect to "0g trans fat" "has cast aside the factual predicate for Plaintiffs' claim that [such] vague statements . . . are rendered misleading by the presence of sub-0.5 grams of trans fat." Motion 5:23-25. However, this is not a preemption argument. Plaintiffs are not, with these claims, seeking to impose any requirement that are "not identical" to federal labeling standards. *See* 21 U.S.C. § 343-1(a)(4)-(5). If, on the other hand, the statute or its implementing regulations expressly authorized statements about the overall healthfulness of products containing trans fat, then claims based on such statements would be preempted.

"No Cholesterol." Defendants seek to strike Plaintiffs' allegations based on Defendants' "No Cholesterol" designations because there is a federal standard for a "no cholesterol" claim, *see* 21 C.F.R. § 101.62(c), (d), that preempts Plaintiffs' state law claims of "false and misleading" advertising. There is no dispute that Defendants complied with the specific "No Cholesterol" requirement, but Plaintiffs argue that Defendants must also comply with the "false and misleading" provision in Section 101.13(i)(3). Plaintiffs allege that because Defendants' "No Cholesterol" advertisements are false and misleading under California law, their claims seek only to enforce a standard "identical to" Section 101.13(i)(3)'s prohibition on false and misleading statements. Therefore, Plaintiffs conclude that those claims are not preempted by federal law.

"No Cholesterol" claims are subject to disqualifying criteria for cholesterol, saturated fat, and total fat. *See* 21 C.F.R. § 101.62(d)(i)(A)-(D). Section 101.62 provides that "No Cholesterol" advertisements are subject to both specific disqualifying criteria

under § 101.62(d) and the regulatory prohibition on false and misleading statements under § 101.13(i)(3).

In light of NLEA's express preemption clause, the FDA regulations that expressly permit the "No Cholesterol" statements at issue, and this Court's Tentative Ruling, it is difficult to see how Plaintiffs' claims with respect to Defendants' "No Cholesterol" allegations are exempt from federal preemption. NLEA's preemption provision expressly prohibits states from establishing "*any* requirement" for nutrition labeling "that is *not identical* to the requirement of the section" in NLEA. 21 U.S.C. § 343-1(a)(4), (5) (emphasis added). The FDA regulations expressly authorize Defendants' "No Cholesterol" statements, provided that certain conditions are met. *See* 21 C.F.R. § 101.62(d). As this Court has already explained in its Tentative Ruling, Plaintiffs are literally seeking to impose a different requirement than any that are set out in § 101.62(d), *i.e.* that claims regarding "No Cholesterol" may not be made when a product contains any amount of trans fat.

Furthermore, Plaintiffs cannot escape the effects of the preemption provision based on their argument that the regulatory "false and misleading" provision is "integral to the FDA's regulation of food manufacturer's front-label advertising statements" and that it was added because "FDA simply cannot anticipate every advertisement a food manufacturer might conceive." Opp. 6:8. As Defendants argue, "neither the text nor the structure of 21 C.F.R. § 101.31(i) indicates that it was intended as a catch-all provision." Reply 7:11-13. Defendants correctly note that the "false or misleading" language is found only in Section 101.13(i)(3), the third sub-part governing non-implicit characterizations.[2] According to Plaintiffs' interpretation, the "false or misleading" language would not apply at all had Defendants implicitly characterized its nutrient content (*i.e.*, "less than 5 mg of cholesterol," as opposed to "3 mg of cholesterol").

Plaintiffs raise a new case, *Mason v. The Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 65107, to salvage their claims based on Defendants' representations of "no cholesterol."

---

[2] The first two subparts of Section 101.13(i) explain the requirements for a statement that "implicitly characterizes the level of the nutrient." Examples of implicit characterizations of nutrients include "less than 3g of fat per serving" and "a good source [of a nutrient]." The third subpart, Section 101.13(i)(3), concerns statements that do "not in any way implicitly characterize the level of the nutrient." Examples given of a non-implicit characterization include "100 calories" or "5 grams of fat."

7

In that case, however, the product label for "Diet Coke Plus" did not satisfy the definition that the FDA had set for use of the term "plus," a term related to the presence of additional vitamins and minerals that the plaintiff alleged the product lacked. *See id.* at *2. In holding that the plaintiffs' claim was not preempted, the court reiterated the fundamental proposition that "[n]othing in the language of the statute expressly preempts a state claim for consumer fraud *based on a failure to follow federal labeling regulations*." *Id.* at *3 (emphasis added). Here, by contrast, there is no dispute that Defendants' statements of "no cholesterol" are in compliance with FDA labeling regulations.

As such, the Court would grant Defendants' Motion to Strike with respect to Plaintiffs' claims regarding Defendants' "no cholesterol" statements.

"Whole Grain." The FDCA explicitly regulates labeling concerning the amounts of whole grain through the general nutrient content regulation in § 101.13: "[A] product may contain a statement about the amount or percentage of a nutrient," such as whole grain. 21 C.F.R. § 101.13(i). Defendants point out that there is no dispute that its statements about whole grain nutrient content are factually accurate and in compliance with FDA regulation. Plaintiffs contend that their "No Cholesterol" analysis applies with equal force to Defendants' statements concerning whole grain content: because Plaintiffs assert that Defendants' whole grain content statements are actionable under the "false and misleading" standard of California state law, their claims are identical to FDA's prohibition on "false and misleading" statements under § 101.13(i)(3), and are therefore not preempted.

The Court would therefore similarly grant the Motion to Strike with respect to Plaintiffs' claims regarding Defendants' whole grain content statements.

B. Other Claims of Deceptive Packaging

Claims under the UCL, FAL, and CLRA are governed by the "reasonable consumer" test. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under California law, a court must examine whether a reasonable person would "likely to be deceived" by an advertisement. *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995). As this Court has already indicated in its Tentative Ruling, "whether a business practice is deceptive will usually be a question of fact not appropriate for a decision on [a

motion to dismiss]." *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003). Where, however, an "alleged misrepresentation, in context, is such that no reasonable consumer could be misled," or where such an alleged misrepresentation amounts to "mere puffery," then the allegation may be dismissed as a matter of law. *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).

    Defendants assert that no reasonable consumer could be misled by statements in their product packaging about the overall healthfulness of their products, and that such statements are non-actionable puffery. However, this Court has previously indicated that it would not dismiss or strike Plaintiffs' claims on this basis. Although the Court indicated that certain statements were "not likely" to be determined deceptive, Defendants overreach in their assertion that "[u]nder California's well-established standard, such statements are non-actionable as a matter of law because they are 'not likely' to deceive a reasonable consumer." Motion 14:15-17. The Court cannot say at this stage that none of the challenged statements are not deceptive as a matter of law. Here, as in *Williams*, the challenged statements can "contribute[ ] . . . to the deceptive context of the packaging as a whole," and should not be stricken.

    Accordingly, the Court would deny the Motion to Strike as it relates to Plaintiffs' allegations based on Defendants' labeling claims regarding the overall healthiness/wholesomeness of Defendants' products.

## V. Conclusion

    The Court would grant Defendants' Rule 12(f) motion as it relates to Plaintiffs' claims based on statements of "no cholesterol" and representations concerning the amounts of whole grain in Defendants' products. As identified by Defendants, paragraphs 58, 59, 67, 68, 70, 71, 73, 74, 77, 78, 81, 82, 84, 86, and 87, should be stricken, and portions of paragraphs 8, 76, 83, 92, 104, 107, 108, 109, 125 and certain statements at page 46 of the FAC should be stricken. (Defendants have submitted as Exh. A to their Motion to Strike showing the preempted provisions crossed out in red. The Court will inquire of Plaintiffs whether they agree with Defendants' proposals as to form only.) In addition, the Court will dismiss (if it has not already done so) Plaintiffs' Lanham Act claim, which Plaintiffs have conceded is not viable. The Court would otherwise deny the Rule 12(f) Motion to Strike as to the other allegations targeted at the

labeling claims about the overall healthiness/wholesomeness of Defendants' products (*e.g.* "Made with Real Vegetables," "Nutritionists Recommend," "STEPS TO A HEALTHIER YOU").