**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
633 West 5th Street, Suite 3500
Los Angeles, CA 90071-2054
Phone:      (213) 239-5100
Facsimile:  (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
Stacy S. Jakobe (*pro hac vice*)
sjakobe@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:      (312) 222-9350
Fax:        (312) 527-0484

Attorneys for Defendants Kraft Foods Global, Inc., improperly sued as Kraft Foods North America, and Kraft Foods Inc.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br>vs.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br><br>**Defendants.** | No. CV10-01028 (GW) (AGRX)<br><br>**RESPONSE TO PLAINTIFFS' OFFER OF PROOF CONCERNING NON-PREEMPTED CLAIMS**<br><br>Hearing Date: August 12, 2010<br>Time: 8:30 a.m.<br>Courtroom: 10<br>Judge: Hon. George H. Wu<br>Action Filed: February 11, 2010 |

# TABLE OF CONTENTS

Introduction ........................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I. The FAC Must Be Dismissed Because It Is Entirely Premised on The Presence and Non-Disclosure of Sub-0.5g of Trans Fat .................................................. 2

   A. Every challenged statement in the FAC is allegedly misleading solely because of the presence or non-disclosure of sub-0.5g of trans fat. ......... 3

   B. Because the FAC is based solely on the presence and non-disclosure of sub-0.5g of trans fat, it must be dismissed in its entirety. ...................... 6

   C. Plaintiffs' renewed preemption arguments are meritless. ......................... 8

II. Plaintiffs' Attached Second Amended Complaint Does Not Save Their First Amended Complaint From Being Dismissed. ................................................. 10

   A. Plaintiffs' request to seek leave is premature and improper. .................. 10

   B. If given the opportunity to oppose the request, Kraft Foods will show that the proposed Second Amended Complaint is also fatally flawed. ... 10

Conclusion ........................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Fourco Glass Co. v. Transmirra Products Co.*,
353 U.S. 222 (1957) .................................................................................9

*Hinton v. Pacific Enterprises*,
5 F.3d 391 (9th Cir. 1993) ......................................................................12

*In re PepsiCo, Inc. Bottled Water Marketing and Sales Practices Litigation*,
588 F. Supp. 2d 527 (S.D.N.Y. 2008) .....................................................7

*Mills v. Giant of Maryland, LLC*,
441 F. Supp. 2d 104 (D.D.C. 2006) .........................................................7

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) ..................................................................12

*Rojas v. Brinderson Constructors, Inc.*,
567 F. Supp. 2d 1205 (C.D. Cal. 2008) ..................................................12

**STATUTES**

21 U.S.C. § 343-1(a)(4)-(5) .............................................................. 2, 7, 8

**RULES AND REGULATIONS**

21 C.F.R. § 101.9(c)(2)(ii) .........................................................................7

21 C.F.R. § 101.13 ....................................................................................9

21 C.F.R. § 101.62(d)(1)(i)(A)-(D) ...........................................................9

Federal Rule of Civil Procedure 15(a) ....................................................10

Federal Rule of Civil Procedure 15(a)(2) ................................................12

# INTRODUCTION

Plaintiffs have effectively conceded that their First Amended Complaint ("FAC") is about one and one thing only — trans fat — and that concession dooms their case. This Court at the July 26 hearing indicated that the FAC should be dismissed if the claim of "misleading" labels is predicated solely on the presence of sub-0.5g of trans fat. As the Court put it, "I had thought there were other aspects of this case other than trans fat, but if I'm wrong then I'm going to have to change my tentative." Ex. A (Tr. 11).[1] Plaintiffs' counsel advised the Court that the FAC alleges other reasons — unrelated to trans fat — why Kraft Foods' labels are supposedly "misleading." *Id.* at 6-7. This Court, therefore, ordered Plaintiffs to identify specifically these non-trans fat allegations in the FAC. *Id.* at 14-16.

Tellingly, Plaintiffs' Offer of Proof ignores the Court's order and says nothing about non-trans fat allegations in the FAC. And for good reason: Plaintiffs' lawsuit entirely hinges on the trace presence of trans fat. Plaintiffs argue that accurate statements and unquantifiable puffery (e.g., "5g whole grain," "Sensible Snacking") are rendered misleading under California law solely because the snacks contain miniscule amounts of trans fat that Kraft did not and could not disclose. That is the reason why the FAC mentions "trans fat" a staggering 152 times.

Notwithstanding Plaintiffs' refrain that trans fat is "dangerous," Congress and FDA have already made the policy judgment that trans fat can be included in food products and that sub-0.5g of trans fat must be disclosed as "0g trans fat." Thus Plaintiffs are left to argue that (a) Kraft Foods has to disclose its sub-0.5g of trans fat content in violation of federal law, or (b) trans fat is so "dangerous" that virtually any statement on the food labeling becomes an actionable claim, even though Kraft has complied with all laws regulating trans fats content and disclosure. Neither argument

---

[1] We have attached a draft copy of the July 26 hearing transcript as Exhibit A. We have not yet received a final version of the hearing transcript.

holds water. The FAC must be dismissed because the challenged statements are preempted and further are not misleading once it is accepted that Kraft Foods has no duty to disclose sub-0.5g of trans fat.

Perhaps recognizing the fatal flaw in the FAC, Plaintiffs seek leave to file a Second Amended Complaint that incorporates some non-trans fat allegations. This request is premature and should be denied. If and when Plaintiffs seek leave to file another amended complaint, Kraft Foods should be given an opportunity to oppose it because the proposed Second Amended Complaint still is premised on the presence and non-disclosure of sub-0.5g of trans fat.

## ARGUMENT

**I.   The FAC Must Be Dismissed Because It Is Entirely Premised on The Presence and Non-Disclosure of Sub-0.5g of Trans Fat.**

As this Court has recognized in its tentative opinion, the Nutritional Labeling and Education Act ("NLEA") and its implementing regulations expressly preempt any state law claims based on "no cholesterol," "0g trans fat," and whole grain content statements. July 26 Tentative Ruling (Doc. 40) ("Op.") at 4; 21 U.S.C. § 343-1(a)(4)-(5).

This Court at the July 26 hearing further stated that the remaining challenged statements should also be dismissed if Plaintiffs' theory is premised solely on the presence of sub-0.5g of trans fat in Kraft Foods' products:

> What I guess what the plaintiff is basically saying is that trans fat is so unhealthy that even those trace amounts in a serving size is not healthy and therefore the defendants shouldn't be allowed to do such things as referencing that it is made with real vegetables or steps to a healthier you, et cetera, et cetera, et cetera, as long as there is some trace element of trans fat in the product. I understand that argument.

<u>I don't think that argument is going to fly however.</u> So the question is what else do you have besides that?

Ex. A (Tr. 13) (emphasis added). To determine whether Plaintiffs' claim of "misleading" labels depends solely upon the presence or non-disclosure of trans fat, this Court instructed Plaintiffs to identify the specific factual bases for their claims. As explained below, the FAC is wholly premised on the presence and non-disclosure of sub-0.5g trans fat and thus must be dismissed.

### A. Every challenged statement in the FAC is allegedly misleading solely because of the presence or non-disclosure of sub-0.5g of trans fat.

Plaintiffs by their actions have admitted that their lawsuit is predicated on Kraft Foods' non-disclosure of small amounts of trans fat in its food products. Their Offer of Proof fails to cite a single example of the FAC alleging that Kraft Foods' labels are misleading for reasons unrelated to trans fat. Indeed, as the following chart shows, every single one of the challenged statements in the FAC is allegedly misleading due to the presence of sub-0.5g of trans fat:

| Product(s) | Claim(s) | Reason Claim Is Allegedly Misleading |
|---|---|---|
| Ritz Crackers Roasted Vegetable<br><br>Ritz Crackers Hint of Salt<br><br>Ritz Crackers Reduced Fat<br><br>Ritz Crackers Whole Wheat<br><br>Nabisco Ginger Snaps | "Sensible Solution"<br><br>"Made with Real Vegetables" | Ritz Crackers' reference to "Sensible Solution" is "misleading as it deceptively **omits** the fact that the product contains **artificial trans fat.**" ¶¶ 69, 72, 75, 79.<br><br>Ginger Snaps misleadingly "implies that it is 'sensible' to consume the product contained within. Ginger Snaps, however, **contain artificial *trans* fat** which, far from a 'sensible solution,' will cause heart disease, cancer, and diabetes." ¶ 85.<br><br>"Real Vegetables" claim is "misleading" because it contains "partially hydrogenated vegetable oil, a form of **artificial *trans* fat.**" ¶ 66. |

| | | |
|---|---|---|
| Original Premium Saltine Crackers | "Sensible Snacking" | The term "Sensible Snacking" is "misleading" because the crackers "contain **artificial *trans* fat** which, far from 'sensible snacking,' will cause heart disease, cancer, and diabetes in many of the people that consume them." ¶ 80. |
| Teddy Grahams | "support kids' growth and development" | This statement "[is] deceptive in intent and nature: they not only **omit** the fact that Teddy Grahams contain **artificial *trans* fat**, . . . but also imply that Teddy Grahams are healthy when in fact they contain a product [trans fat] known to raise one's risk for CHD, cancer, and diabetes." ¶ 61. |
| All Ritz Crackers varieties in FAC<br><br>Original Premium Saltine Crackers<br><br>Nabisco Ginger Snaps | "No Cholesterol" | "No Cholesterol" is "misleading" because the products "contain dangerous levels of **artificial *trans* fat**, which increases LDL cholesterol and decreases HDL cholesterol levels." ¶ 68; *also* ¶¶ 71, 74, 78, 82, 87. |
| Ritz Crackers Whole Wheat | "provides 5g whole grain"<br><br>"Nutritionists Recommend"<br><br>"STEPS TO A HEALTHIER YOU" | "These claims are misleading, as the obvious implication is that Ritz Whole Wheat Crackers are healthy when in fact they contain **artificial *trans* fat**, a toxic additive that causes heart disease, cancer, and type-2 diabetes." ¶ 76. |

| Product | Statement | Allegation |
|---|---|---|
| Honey Maid Grahams | "Contains 6 Grams Whole Grain! per serving"<br><br>"Sensible Solution"<br><br>"No Cholesterol" | Statements "both individually and taken together imply that Honey Maid Grahams are healthy despite the fact that they contain **artificial *trans* fat**, a toxic additive that causes heart disease, cancer, and type-2 diabetes." ¶ 83. They "contain dangerous levels of ***trans* fat**, which increases LDL cholesterol and decreases HDL cholesterol levels." ¶ 84. |
| Teddy Grahams | "Smart Choices Program" | Teddy Grahams are "[f]ar from a 'smart choice'" because "many other graham cracker products do not **contain trans fat** but are otherwise similar." ¶ 62. |
| Teddy Grahams | "A fun, wholesome choice for your whole family" | "[F]ar from wholesome, Teddy Grahams contain **artificial trans fat**, a toxic ingredient that will cause death and disease for many of those who regularly consume it." ¶ 60. |

In a last ditch attempt to salvage their lawsuit, Plaintiffs suggest that they are not complaining so much about trans fat but rather "partially hydrogenated vegetable oil" (PHVO). *See* Offer of Proof at 4 ("At bottom, Plaintiffs claim that certain label statements . . . are misleading in light of a constituent ingredient (partially hydrogenated vegetable oil ('PHVO'))"). But this argument amounts to semantics and only reinforces that their claims are really about the presence and non-disclosure of sub-0.5g of trans fat. As their FAC states, the hydrogenation process that turns normal vegetable oil into PHVO creates trans fat within the PHVO. *See* FAC ¶¶ 20-21. Plaintiffs further point out that the presence of PHVO is synonymous with the
KRAFT FOODS' RESPONSE TO PLAINTIFFS' OFFER OF PROOF
CV10-01028 (GW) (AGRX)
5

presence of trans fat: Artificial trans fats "necessarily exist where partially hydrogenated oil is used as an ingredient in a food product." FAC ¶ 16.[2]

Whether couched as "PHVO" or "trans fat," Plaintiffs' claim is that they purchased Kraft Foods snacks "without the knowledge that [they] contained toxic artificial trans fat" and that "they would not have . . . purchased had Kraft disclosed their actual trans fat content." FAC ¶¶ 113 (alleging violation of California False Advertising Law because packages resulted in purchase and use of products without knowledge that they contained trans fat), 125 (alleging violation of CLRA because Kraft Foods did not compensate them for expenses and damages from purchase of products they would not have purchased if actual trans fat content had been disclosed). In fact, Plaintiffs point to no other information or disclosure that would have changed their purchasing decision. Thus one of the remedies that they seek is to enjoin Kraft Foods from using terms such as "no cholesterol," "sensible," or "wholesome" if the products "<u>contain artificial *trans* fat</u>." FAC p. 46 (emphasis added). In short, this lawsuit is entirely based on the presence of sub-0.5g trans fat that Kraft did not (and could not) disclose on its packaging.

### B. Because the FAC is based solely on the presence and non-disclosure of sub-0.5g of trans fat, it must be dismissed in its entirety.

As this Court stated at the July 26 hearing, the FAC must be dismissed if Plaintiffs' claim of "misleading" labels is based solely on the fact that Kraft Foods has not (and cannot) disclose that its products contain sub-0.5g of trans fat. Ex. A (Tr. 11-13).

Plaintiffs are essentially arguing that Kraft Foods has a duty under California state law to disclose that its food products contain sub-0.5g of trans fat to ensure that the packaging is not "misleading." For example, Plaintiffs in the FAC repeatedly

---

[2] In any event, Plaintiffs' argument that the presence of PHVO rendered other statements misleading fails because Kraft Foods has disclosed the content of PHVO on the ingredients list of each of the products. *See* FAC ¶ 21; Exs. A - M to Request for Judicial Notice (Doc. 30) (product labels).

claim that Kraft Foods' "deceptive omission" about its sub-0.5g of trans fat content renders its labels "misleading." *See* FAC ¶¶ 61, 69, 72, 75, 79; *see also* FAC ¶¶ 115, 125. But imposing a requirement to disclose sub-0.5g of trans fat would obviously violate federal law by establishing a "requirement" that is "not identical" to federal labeling standards. 21 U.S.C. § 343-1(a)(4)-(5). *See also, e.g., In re PepsiCo, Inc. Bottled Water Mktg. and Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (NLEA bars state from imposing food labeling requirements "beyond, or different from, what federal law requires"); *Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 108-09 (D.D.C. 2006) (NLEA preempts non-federal claim that lactose intolerance warning should be on milk cartons). The challenged statements are accordingly preempted because Plaintiffs seek to impose a state law requirement that is "not identical" to federal law.

      Plaintiffs also appear to resort to the argument that trans fat is so "dangerous" that even its trace presence transforms virtually any statement on the packaging (including accurate descriptions and innocuous puffery that cannot be either proven or unproven) into an actionable "misleading" statement. This Court at the July 26 hearing rejected that argument, remarking, "I don't think that argument is going to fly however." Ex. A (Tr. 13). And the Court is absolutely correct. Congress and the FDA have already deliberated on the "dangerousness" of trans fat and issued their policy judgment: Trans fat can be included in food products, and if there is less than 0.5g of trans fat, then it "shall be expressed as zero." 21 C.F.R. § 101.9(c)(2)(ii). It is undisputed here that Kraft Foods has complied with all laws governing the presence and disclosure of trans fat. Furthermore, as detailed in Kraft Foods' Motion to Strike Reply brief (pp. 8-10), the FDA has considered whether the presence of trans fat less than 0.5 gram renders a nutrient content claim misleading or false, but refused to promulgate such a regulation.

Once this Court accepts that trans fat can be included in food products and that sub-0.5g trans fat must be disclosed as "0g trans fat," Plaintiffs' claim of "misleading" statements crumbles. Kraft Foods' accurate or puffing statements cannot be deemed "misleading" as a logical matter because the only reason why they are allegedly misleading in the first place is the presence and non-disclosure of sub-0.5g trans fat. As Plaintiffs put it in their FAC, the Kraft foods products "would not have been purchased had Kraft <u>disclosed their actual *trans* fat content</u> [because they] pose serious health consequences for those who consume them." FAC ¶ 125. But there can be no "deceptive omission" here (FAC ¶¶ 61, 69, 72, 75, 79) because Kraft as a matter of federal law cannot disclose the sub-0.5g trans fat content.

### C.   Plaintiffs' renewed preemption arguments are meritless.

Plaintiffs also rehash their preemption arguments for the third time, and they lack merit now as they did the first two times. Kraft Foods refers to the arguments presented in the prior briefs, but will briefly address them again here. *See* Kraft Foods' Mem. in Support of Motion to Dismiss First Am. Compl. Pursuant to Rules 9(b) and 12(b)(6) (Doc. 29) ("Motion to Dismiss") at 5-13; Kraft Foods' Reply Mem. in Support of Motion to Dismiss (Doc. 33) at 2-11; Kraft Foods' Motion to Strike First Am. Compl. (Doc. 37) ("Motion to Strike") at 3-6; Kraft Foods' Reply Mem. in Support of Motion to Strike (Doc. 39) ("Motion to Strike Reply") at 2-10. As this Court has acknowledgd, NLEA's express preemption provision in 21 U.S.C. § 343-1(a)(4)-(5) applies to claims about how trans fat is disclosed and whether statements such as "no cholesterol" may be made. June 24 Tentative Ruling (Doc. 36) at 5; Op. at 6-8. Plaintiffs try to avoid this express preemption provision by referring to a language in one regulatory provision that prohibits "false or misleading" statements. That is a red herring, and none of Plaintiffs' arguments has any merit.

<u>First</u>, Plaintiffs recycle their argument that Kraft Foods' "no cholesterol" statement is not preempted because a different, more general regulation prohibits

"false or misleading" statements. 21 C.F.R. § 101.13. But it is undisputed that Kraft Foods has complied with the highly detailed and specific regulations governing the use of the term "no cholesterol." 21 C.F.R. § 101.62(d)(1)(i)(A)-(D). A core principle of statutory construction is that a specific provision trumps a more general provision. *See, e.g., Fourco Glass Co. v. Transmirra Prods. Co.*, 353 U.S. 222, 228, 229 (1957) ("However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment. Specific terms prevail over the general in the same or another statute which otherwise might be controlling.") (citations omitted).

Plaintiffs claim *Fourco* and other cited cases are inapplicable because they involved situations where it was "impossible" to comply with both provisions. But the issue in *Fourco* was the very question facing this Court: whether the provision applicable to a specific circumstance is exclusive or is further supplemented by a general provision. *See Fourco*, 353 U.S. at 229 (holding that the patent-specific venue provision was the sole and exclusive provision controlling venue in patent infringement cases and that it was "not to be supplemented by" the general venue provision). And contrary to Plaintiffs' claim, the specific and general provisions here are not "complementary." Plaintiffs are arguing that a general provision precludes Kraft from making a "no cholesterol" statement, even though specific regulations expressly permit it. As the Court did in *Fourco*, this Court should apply the maxim that the specific controls over the general and not supplement the specifically tailored "no cholesterol" regulations with the more general provision.

<u>Second</u>, Plaintiffs argue that the specific "no cholesterol" regulation refers to the section containing more general provisions. But it is clear from the context that the specific regulation's reference to "general requirements for nutrient content claims in § 101.13" concerns the general rules (like font size) that are in that section.

Third, Plaintiffs have no response to the point that, under their reading of the regulation, a food manufacturer that used implicit nutrient content characterization (*e.g.*, "less than 5mg of cholesterol") instead of non-implicit characterization (*e.g.*, "3mg of cholesterol") would not be subject to the "false or misleading" language. Such a reading of the regulation would make little sense, as explained in the Motion to Strike Reply brief at 7 n.3.

## II. Plaintiffs' Attached Second Amended Complaint Does Not Save Their First Amended Complaint From Being Dismissed.

### A. Plaintiffs' request to seek leave is premature and improper.

Perhaps recognizing that their FAC is fatally flawed, Plaintiffs seek leave to file a Second Amended Complaint. At the outset, the request is procedurally improper and premature. Plaintiffs have already taken the "free" amendment permitted under Federal Rule of Civil Procedure 15(a). Furthermore, the allegations in the Second Amended Complaint are not properly before the Court while the Motions to Dismiss and Strike the First Amended Complaint are still pending. The pending motions should be decided prior to permitting Plaintiffs to file yet another complaint. If the Court is inclined to consider the request for leave to file the Second Amended Complaint, Kraft Foods respectfully requests an opportunity to oppose it.

### B. If given the opportunity to oppose the request, Kraft Foods will show that the proposed Second Amended Complaint is also fatally flawed.

While Kraft Foods does not want burden the Court with extensive briefing that is unnecessary at this time, Kraft Foods briefly notes that the Proposed Second Amended Complaint ("PSAC") would not provide Plaintiffs with viable claims that could survive a motion to dismiss. Among other problems, the crux of Plaintiffs' claims remains the presence and non-disclosure of trans fat.

Plaintiffs apparently believe that they can avoid dismissal if they simply use a different term to describe "trans fat." For example, Plaintiffs have now renamed the

"Kraft Trans Fat Products" as the "Kraft PHVO Products," and repeatedly reference partially hydrogenated vegetable oil (PHVO) alongside or in place of trans fat. But as discussed above, Plaintiffs already claim that PHVO and trans fat are synonymous.

Although Plaintiffs now mention that Kraft Foods products are also unhealthy and misleading because they contain other ingredients (such as sugar, high fructose corn syrup, white flour), the PSAC is still premised on trans fat. The PSAC mentions the term "trans fat" 96 times, and "PHVO" or "partially hydrogenated vegetable oil" 81 times. A few examples from the PSAC confirm that the new proposed complaint is again about trans fat:

- Plaintiffs allege they first discovered Kraft Foods' "unlawful acts" "when Plaintiffs first learned that the Kraft PHVO Products contained PHVO and thus artificial *trans* fat." PSAC ¶ 15. Plaintiffs claim that they did not have the knowledge that "would have enabled them to associate partially hydrogenated oil with artificial *trans* fat, and then artificial *trans* fat with disease." PSAC ¶17.
- Plaintiffs argue that they suffered an injury under the California Unfair Competition Law because they purchased Kraft PHVO Products instead of other products "which are less expensive and/or contain no artificial trans fat." PSAC ¶ 162.
- For their California False Advertising Law claim, Plaintiffs allege that Kraft Foods' labels "were designed to, and did, result in the purchase and use of the products without the knowledge that the Kraft PHVO Products contained toxic artificial *trans* fat." PSAC ¶ 172. No other label representations or omissions — other than those related to trans fat — are raised as the basis for a FAL claim.
- Plaintiffs argue Kraft Foods is liable under the California Legal Remedies Act because it failed to offer to compensate Plaintiffs and the Classes for

expenses and damages "incurred as a result of purchasing Kraft PHVO Products, which would not have been purchased had Kraft disclosed their actual *trans* fat content." PSAC ¶ 184.

- Plaintiffs seek an order enjoining Kraft Foods from marketing the products using the words "sensible" or "wholesome" *"when they contain PHVO."* PSAC p. 58 (emphasis added).

Because the proposed Second Amended Complaint suffers from the same fatal flaws as First Amended Complaint, it would similarly be dismissed and the amendment would be futile. Leave to amend is within the discretion of the Court and generally is to be freely given under Rule 15(a)(2), but leave to amend need not be given if the complaint as amended would be subject to dismissal. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989); *see also Hinton v. Pac. Enterprises*, 5 F.3d 391, 395-96, 397 (9th Cir. 1993) (affirming denial of leave to amend where proposed amendments would not have cured statute of limitations defects and amended complaint would have been dismissed); *Rojas v. Brinderson Constructors, Inc.*, 567 F. Supp. 2d 1205, 1211 (C.D. Cal. 2008) (denying leave to amend where additional amendments were unlikely to cure the pleading deficiencies, noting that discretion to deny leave is "particularly broad" where a plaintiff has previously amended the complaint).

Should the Court be inclined to consider granting Plaintiffs leave to amend yet again, Kraft Foods respectfully requests the opportunity to fully address the futility of the amendment with a showing that the proposed amended complaint could not survive a motion to dismiss. Kraft Foods would also seek to address the other factors relevant to a determination of whether justice requires granting leave to amend, including Plaintiffs' failure to cure the deficiencies when given the opportunity to do so previously.

## CONCLUSION

For the above reasons, Kraft Foods respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint in its entirety with prejudice. The Court should reject Plaintiffs' improper attempt to file a Second Amended Complaint in lieu of making any showing that their claims are based on anything other than the presence and disclosure of trans fat.

Dated: August 9, 2010

KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.

/s/ Kenneth K. Lee
By one of their attorneys

JENNER & BLOCK LLP
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
Stacy S. Jakobe (*pro hac vice*)
sjakobe@jenner.com
353 N. Clark Street
Chicago, IL  60654-3456
Phone:     (312) 222-9350
Fax:          (312) 527-0484

JENNER & BLOCK LLP
Kenneth K. Lee (Cal. Bar. No. 264296)
633 West 5th Street
Los Angeles, CA  90071-2054
Phone:     (213) 239-5100
Fax:          (213) 239-5199

Attorneys for Defendants