# EXHIBIT A

```
 1            LOS ANGELES, CA.; MONDAY, JULY 26, 2010; 2:24 P.M.
 2                               -oOo-
 3            THE COURT:  Let me call the matter of Red v. Kraft
 4  Foods.
 5            MR. PANOS:  Good morning, Your Honor, Dean Panos
 6  and Kenneth Lee on behalf of the defendant Kraft Foods
 7  Global, Inc.
 8            THE COURT:  All right.
 9            MR. WESTON:  Good morning, Your Honor, Greg Weston
10  and Jack Fitzgerald on behalf of all of the plaintiffs.
11            THE COURT:  All right.  Let me ask counsel.  Both
12  sides saw the court's tentative insofar as the motion to
13  strike is concerned?
14            MR. WESTON:  We have, Your Honor.
15            THE COURT:  All right.  I hate to say this, but
16  does anybody want to argue anything?
17            MR. PANOS:  Well, it does appear to be I'd say
18  less tentative perhaps than the prior one in terms of some
19  of its language, but if Your Honor would permit a couple of
20  minutes I think there are a couple of points that we would
21  like to make if in fact the ruling is still tentative.
22            THE COURT:  All right.  It's tentative, but it's
23  less tentative than the other tentative was.
24            MR. PANOS:  It certainly appeared that way.
25            THE COURT:  Let's put it this way.  The parties'
```

Case 2:10-cv-01028-GW -AGR   Document 46-1   Filed 08/09/10   Page 3 of 19   Page ID #:972

2

1  additional submissions made my prior tentative much more
2  firm.
3       MR. PANOS:  Well, then that's perhaps helpful
4  briefing then.
5       THE COURT:  I don't know.  You guys spent a lot of
6  time trying to argue those same points over and over again.
7       MR. PANOS:  Now you are giving the lawyers another
8  chance apparently.  Your Honor, this is our view on the
9  tentative, and we don't seek to change any of the portions
10 on the preemption of those statements that you found to be
11 sanctioned or approved by the FDA.
12      But it does appear that the Court's theory for its
13 ruling in keeping some statements in is the notion that
14 certain statements have sort of a general health or
15 nutrition sort of connotation and/or it may be implicit or
16 explicit.
17      Here is where we would respectfully disagree and
18 would suggest that the Court would need to still analyze
19 those issues in the context of the trans fat issue meaning
20 the presence of trans fats in there.
21      First and foremost, with due respect, we don't say
22 healthy.  We don't say nutritious.  Those statements healthy
23 and nutritious, Your Honor, can in fact be proven or
24 disproven.  You can have expert testimony from scientists
25 and doctors.

1      Puffery are things that cannot be proven or
2  disproven that are generalized statements.  There can be no
3  expert testimony that would suggest that a statement is a
4  sensible solution or that it's a sensible snack or it would
5  be smart for people to do that.  That strikes us as pure
6  puffery and not actionable.
7      But, Your Honor, in fact, the context in which we
8  make those statements which Your Honor found to still not be
9  preempted are not isolated statements.  They come with a
10  description of why in fact Kraft identifies those statements
11  as smart or sensible.  It will state for example two
12  statements that appear with a flag.
13      THE COURT:  Let me stop you.  There is a
14  difference between the preemption argument and the argument
15  that you are making now; is that correct?
16      MR. PANOS:  There is a difference, but there is
17  also a preemption argument to this which is in the context
18  of whether something is deceptive the only theory by which
19  plaintiffs can proceed here, Your Honor --
20      THE COURT:  Let me stop you.  The preemption
21  argument would be that, in other words, it has to be
22  something that was specifically set out in either the
23  statute or regulations.
24      The things that you are talking about now are not
25  specifically set out in the statute or regulations.

1   Therefore, it would be at best subject to implicit
2   preemption which is not provided for by the statute
3   explicitly.  In other words, it says that which we've
4   explicitly said is preempted is preempted.
5         There is no such thing however in this particular
6   matter or in this particular situation of implicit
7   preemption.
8         MR. PANOS:  Well, Your Honor, I think if the
9   relief sought contradicts federal law then I think there is
10  an argument there.
11        THE COURT:  But is it relief that's separate from
12  the claim?  In other words, I can grant the claim and not
13  grant the relief or a jury can grant the claim or whatever
14  and the relief would be irrelevant vis-a-vis the claim.
15        You are right.  They could ask for all sorts of
16  things which would be improper, but that doesn't necessarily
17  mean that the claim does not survive.
18        MR. PANOS:  Well, it would strike me, Your Honor,
19  that if the claim at the pleading stage would violate, if
20  the prayer for relief would violate federal law then the
21  claim is properly dismissible, whether Your Honor wants to
22  call it under preemption or Your Honor wants to say it's a
23  claim under California law.
24        THE COURT:  I don't think Iqbal/Twombly goes that
25  far.

```
 1              MR. PANOS:  Well, Your Honor, there is only two
 2   ways to go with this case in terms of these sort of puffery
 3   statements.  One is the defendants could be required to
 4   disclose the amount of trans fats which would render the
 5   statements not misleading under plaintiffs' theory or they
 6   could be barred under California law from making any
 7   statements about any feature or beneficial feature in the
 8   product which to consumers might be beneficial.
 9              THE COURT:  Let me put it this way.  I don't think
10   I need to decide the issue at this point in time is what I'm
11   saying.  In other words, I understand your point.  It might
12   very well be a great point but not necessarily either in a
13   motion to dismiss or a motion to strike.
14              MR. PANOS:  Well, in terms of, Your Honor, then
15   going back to the arguments that would not be subject to
16   preemption and thus the Gerber standard, we think that you
17   still would have to find either, a., that the statements are
18   puffery.
19              And if they are not puffery -- and we submit that
20   they are, Your Honor, for the reasons I just stated that
21   can't be proven or disproven.  Then the question would be if
22   they are not puffery can they prove under the applicable
23   standard -- which we do have some disagreement with, but I
24   think Your Honor correctly set it forth in its tentative --
25   whether those statements could arguably be deceptive.
```

1   And our point is simply this, Your Honor, when we
2   make the statements that the court has found are not
3   preempted; for example, real vegetables, made with real
4   vegetables, a completely truthful statement. Where we make
5   the statement sensible solution, we say it's sensible right
6   underneath --
7   THE COURT: Let me stop you. Let's assume that
8   there is some trace of a real vegetable in the product, but
9   the rest of it is not.
10   MR. PANOS: Is not what?
11   THE COURT: Is not real vegetables.
12   MR. PANOS: It doesn't make the statement made
13   with real vegetables any less true or false. Of course,
14   there is things in there other than vegetables.
15   THE COURT: So in other words if something has say
16   .0000001 percent of real vegetable and the rest is not, you
17   could say made with real vegetables, and that would not be
18   problematic.
19   MR. PANOS: Then, Your Honor, the claim is
20   different than the one that they brought. Their claim is in
21   the context of trans fats. They are saying that it's
22   unlawful or deceptive because of trans fats. If they want
23   to make a claim as other plaintiffs have done --
24   THE COURT: Maybe I've mistaken the plaintiffs'
25   claim. Is your entire case based solely on trans fats?

1        MR. WESTON:  No, Your Honor.  Certainly a large
2   part of it is based on the presence of transfat.  But our
3   claim is that real vegetables is misleading.  It's
4   misleading to have big images of healthy vegetables when a
5   product has trans fat in it, but it's also that it's just
6   misleading when the amount is so miniscule that it's
7   insignificant.
8        THE COURT:  Let me ask this.  Is the amount of
9   real vegetables the same amount as trans fat?
10        I think's it's more, but I'm not sure, Your Honor,
11  to be honest with you.  Let's put it this way.  They have
12  trans fats all over that complaint 152 times.  This case is
13  about trans fats.
14        If they want to make a made with real vegetables
15  claim, then that case fits identically into all of the fruit
16  cases that have been dismissed in this court.
17        THE COURT:  Let's put it this way.  If everything
18  involved in this case was based on trans fats, then I could
19  understand your argument, but the way I had read the
20  complaint is that it wasn't 100 percent based on trans fat.
21        MR. PANOS:  What would be the argument as to why
22  anything else would be deceptive if it is not based on trans
23  fat?
24        First of all, trans fats is mentioned 152 times in
25  the complaint.  They specifically state that it is

```
 1  misleading because we omit to tell people that there is
 2  trans fats in the product.  So if it's not based on trans
 3  fat, then we are reading a different complaint than what
 4  plaintiffs are reading, Your Honor.
 5          Everything is based on trans fat.  How is the
 6  phrase sensible solutions otherwise misleading if it isn't
 7  in the context of the fact that there are trans fats,
 8  miniscule as it is, amounts in the product?
 9          How is the statement that the product is made with
10  real zinc, calcium and iron is deceptive unless the argument
11  is that it's deceptive in light of the fact that it's trans
12  fat.
13          This court is not in a position to determine, nor
14  should it nor can it, whether it is appropriate for products
15  to include trans fat and whether that's healthy or not
16  healthy which is their argument because the FDA has already
17  said it's healthy.
18          They've already permitted it.  They've already
19  allowed trans fats in our food.  It's not for anybody else
20  here to make a different decision.  This entire complaint is
21  predicated on the fact that you can't say anything
22  beneficial about your product if the product contains some
23  amount of trans fats.
24          The reason why it's deceptive according to
25  plaintiffs and the only theory by which they can go by under
```

```
 1   California law is because consumers are misled into thinking
 2   that the product has beneficial attributes but isn't told
 3   that it also contains less than 0.5-grams of trans fat.
 4           That's why all roads lead to the same place in
 5   this case, Your Honor, because every claim is predicated on
 6   the presence of trans fats here.  Either, a., we can't
 7   disclose it any other way because that's preempted or, b.,
 8   they seek to rewrite the federal law and say if the product
 9   contains less than 0.5 grams of trans fat, you,
10   manufacturer, cannot say the product contains whole grains.
11   You can't say that it contains iron or calcium.  You can't
12   even say it's got low saturated fat.  You can't say anything
13   on the front of the package, and that is why everything is
14   preempted, Your Honor.
15           THE COURT:  All right.  Let me ask plaintiffs'
16   counsel.  What parts of your complaint are not based on the
17   trans fat element?
18           MR. WESTON:  Thank you, Your Honor.
19           The claims are not only those claims that are in
20   the context of calcium amounts, but even if they were they
21   are still general claims.
22           And how the reasonable consumer reads sensible
23   solution with a couple of other things right under it
24   varies.  Of course, there is the statement wholesome choice
25   for your family.  That's not made in any type of context.
```

```
 1            THE COURT: Let me stop you. Wholesome choice for
 2  your family, you are saying that is misleading. Why? Other
 3  than trans fat, I understand the trans fat portion of that,
 4  but other than trans fat why are you saying that that is
 5  misleading under California law?
 6            MR. WESTON: Well, it's misleading for a number of
 7  reasons, but I'd love to sort of take on the argument that
 8  they've made first before I get to that.
 9            THE COURT: Answer my question first before you
10  get to your argument.
11            MR. WESTON: Sure, sure.
12            If we were to rewrite this complaint again, we
13  might point out the fact that it contains massive amounts of
14  sugar, and it has very little redeeming value in it at all
15  other than a few things that it was fortified with.
16            THE COURT: Let me stop you. When you say that if
17  you were to rewrite the complaint --
18            MR. WESTON: Yes.
19            THE COURT: -- in other words have I misread the
20  complaint because I had assumed that there was something
21  else in there other than your reference to trans fat?
22            MR. WESTON: Wholesome is misleading for a large
23  number of reasons. I think trans fat is the most prominent
24  reason because trans fat is the worst ingredient in the
25  product.
```

```
 1              THE COURT:  Well, that's being kind.
 2              Let me just ask you this.  In the end if the
 3   plaintiff really is arguing trans fat, then let's just put
 4   the cards on the table and let's let the chips fall where
 5   they may and you can appeal to the Ninth Circuit.
 6              I had thought there were other aspects of this
 7   case other than trans fat, but if I'm wrong then I'm going
 8   to have to change my tentative.
 9              MR. WESTON:  I hope the Court won't.  As well, we
10   do talk about a lot of the other things in it.  It's also
11   the fact that it's just not true.  We offer one specific
12   reason why it's not true, but that does not change our
13   general allegation that it's not true that the product is
14   wholesome.  It's not true that the product contains a lot of
15   vegetables.
16              Do you want me to stay there or may I rebut some
17   of what the defendant said?
18              THE COURT:  You can rebut.
19              MR. WESTON:  Well, the defendants' argument is
20   that because the FDA has some minimal regulation on trans
21   fat -- and I will tell you the entire extent of the FDA's
22   trans fat regulation.  The first one only concerns how it's
23   disclosed in the nutrition facts box, and the second --
24              THE COURT:  I understand the regulations.  You can
25   put in the word trans fat or trans fatty or trans fat with
```

1   an apostrophe into LexisNexis and you can see wherever it's
2   cited in the regulations.  It's not hard to do.
3           MR. WESTON:  It's not particularly regulated.
4           THE COURT:  I agree that it's not mentioned all
5   that often.
6           MR. WESTON:  Yes.
7           THE COURT:  But as pointed out by the defense
8   counsel, there was a distinct discussion about the issue of
9   trans fat in relationship to other things, and that's
10  discussed in the Federal Register the citations that were
11  brought up by the defendants.  It's not a situation where
12  they didn't consider it at all because obviously they did.
13          MR. WESTON:  Well, Your Honor, in the issue of
14  natural and high fructose corn syrup the FDA considered
15  regulating the term natural and chose not to.  And in that
16  decision not to, Judge ^Bryer and a number of other
17  decisions over the use of the word natural together with
18  high fructose corn syrup ruled that the FDA's decision not
19  to specifically regulate the use of the term natural and
20  nutrient content claims and front of product labels doesn't
21  mean that the FDA specifically intended to have any type of
22  claim be allowed.
23          THE COURT:  But here it is a situation where the
24  FDA specifically said in its regulations that if the serving
25  size contains less than .5 grams of trans fat that the

1  indication and the word is shall.  They didn't say may.
2  They said shall be indicated as zero.
3          So therefore, these products, nobody's disagreeing
4  that Kraft is properly labeling the products as having zero
5  trans fat because it's less than .5 grams per serving.
6          What I guess what the plaintiff is basically
7  saying is that trans fat is so unhealthy that even those
8  trace amounts in a serving size is not healthy and therefore
9  the defendants shouldn't be allowed to do such things as
10 referencing that it is a made with real vegetables or steps
11 to a healthier you, et cetera, et cetera, et cetera, as long
12 as there is some trace element of trans fat in the product.
13         I understand that argument.  I don't think that
14 argument is going to fly however.  So the question is what
15 else do you have besides that?
16         MR. WESTON:  I would say that the implication of
17 defendant's argument is one of the studies that we noted
18 said that trans fat causes the formation of artheroscleratic
19 lesions in the arteries, what if they said Vegetable Thins
20 does not contain any ingredient that caused the formation of
21 areartheroscleratic lesions.  That's literally completely
22 false because it does contain trans fats.
23         THE COURT:  It depends on whether or not simply
24 because of the fact that there is at least one scientific
25 study out that says that generally makes it a fact which is

```
 1  a different question, and the other question is whether or
 2  not this court is suppose to make the determination as to
 3  whether or not one scientific report out there will all of a
 4  sudden make that a scientific fact which I don't know if
 5  that's necessarily what I'm suppose to do in the context of
 6  this type of action.
 7          MR. WESTON:  Well, they might also say -- what if
 8  they said contains no product recognized to raise LDL
 9  cholesterol?
10          There is more than one study on there and our
11  allegation should be taken as true as well at this stage and
12  it would be that -- I would also look at the fact that with
13  saturated fat for instance, there is a regulation on how
14  saturated fat is disclosed in the nutrient content box and
15  there is also a regulation how saturated fat may be
16  disclosed elsewhere and you are not simply allowed to
17  take -- for instance, you could have zero grams of saturated
18  fat and you would be required to say zero grams of saturated
19  fat on the nutrition facts box but you could not then move
20  it to the front of the label unless several other standards
21  were met regarding disqualifying procedure.  So there is two
22  sets of regulations there.
23          THE COURT:  Let me stop you.  This is what I'm
24  going to ask plaintiff's counsel to do.  I want you to give
25  me as an offer of proof all of plaintiff's claims just
```

```
 1   listing them numerically.  I want them just separately as to
 2   say that this is misleading because of this whatever it is.
 3   Because it seems to me that maybe I'm just confuseed when I
 4   read the pleadings here as to what your claims are and we
 5   will see how many rely on trans fat and how many don't rely
 6   specifically on trans fat and we will go from there.
 7         MR. PANOS:  Your Honor, so that it's clear, it
 8   needs to be confined to what the first amended complaint is,
 9   and just so Your Honor understands why I said what I said --
10         THE COURT:  I will do it this way.  I want you to
11   do the first one as the offer of proof what's contained in
12   the amended complaint and then as an offer of proof whatever
13   else you want to allege, propose to allege that is not
14   contained in the first amended complaint so I get a sense of
15   where exactly the plaintiff is.
16         MR. WESTON:  Okay.  Do you want me to just go by
17   product?
18         THE COURT:  However you want to do it.  In other
19   words, I will take a look at this and see.  Because it seems
20   to me that if in fact everything is going to connect in the
21   end to trans fat, then it seems to me that most of the
22   things -- I mean the regulation already covers what the
23   percentage of whatever it is vis-a-vis trans fat.
24         If what you are basically saying is that the
25   presence of any trans fat will bar the defendants from
```

1  making any other representations such as this product, the
2  same language the nutritionists recommend this product or
3  steps to a healthier you or made with real vegetables or
4  whatever, I understand that argument, but if there is
5  anything else let me just know what they are.
6       MR. WESTON:  Yes, Your Honor.  Well, the use of
7  the word wholesome and these are products --
8       Do you want me to confine it to what's
9  specifically allege in the complaint?
10      THE COURT:  I indicated to you what I wanted.  You
11 could put it in two parts.  The first one is that which is
12 contained in the first amended complaint and then if I allow
13 you to amend what you would be amending to add.
14      MR. WESTON:  Thank you, Your Honor.
15      For Teddy Grahams --
16      THE COURT:  Don't give it to me now.  I want you
17 to do it in written form.  I don't like oral stuff because
18 it goes in one ear and out the other.
19      MR. WESTON:  All right.  Your Honor.
20      THE COURT:  Any time you want to give it to me is
21 fine.
22      MR. WESTON:  Okay.
23      THE COURT:  But I want you to tell me now, how
24 long will it take?
25      MR. WESTON:  How long it will take?  Well, we can

```
 1  have that in a week.
 2          THE COURT:  Okay, a week, and I will give the
 3  defendant's a week to respond.  I will put your matter -- so
 4  in other words, a week from today's date would be August the
 5  2nd, a week from that date would be August the 9th, and I
 6  will have you guys back here on the 12th.  Anything else?
 7          MR. WESTON:  If Your Honor would permit me --
 8          THE COURT:  Sure.
 9          MR. WESTON:  -- there are two parts of the
10  tentative order where the court seems to adopt arguments
11  that the defendants make in their reply brief, and we had an
12  opportunity to rebut the reply brief except for here.
13          THE COURT:  I will indicate that the defendants
14  indicated insofar as vis-a-vis the motion to strike that
15  they identified certain paragraphs to strike and I listed
16  them in the tentative.  When I looked at some of the
17  paragraphs that they sought to either strike all or part of,
18  I don't know whether or not I would agree, so I wanted you
19  to respond to those.  But actually if you are going to do
20  something in writing do that in writing too.
21          MR. WESTON:  Okay, your Honor.
22          THE COURT:  All right.  Anything else?
23          MR. WESTON:  So just to be clear, I will say in my
24  additional supplement any portions that we want to rebut in
25  the reply brief as well as what portions of our complaint as
```

```
 1  it exists now state claims --
 2          THE COURT: Yes.
 3          MR. WESTON: -- beyond those claims that are
 4  predicated on the existence of trans fat?
 5          THE COURT: Yes.
 6          MR. WESTON: And as the third matter what we would
 7  additionally allege on like Teddy Grahams for instance other
 8  reasons why it's not wholesome besides the presence of trans
 9  fat?
10          THE COURT: Yes. But the word wholesome -- yes.
11  If you want to make another swing at trying to attack
12  wholesome, we will see what you've got.
13          MR. WESTON: Thank you, Your Honor. I appreciate
14  your time.
15          THE COURT: Oh, my pleasure. That's what I'm here
16  for.
17          Anything else from defense?
18          MR. PANOS: No, Your Honor. I guess if we are
19  going to confine this to the first amended complaint, I
20  think it will be very illuminating.
21          THE COURT: Well, yes, illumination is nice.
22  Thank you very much, gentlemen. Have a very nice day.
23          MR. WESTON: Thank you, Your Honor.
24          MR. PANOS: Thank you, Your Honor.
25
```