# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-1028-GW(AGRx) | Date | January 13, 2011 |
| Title | *Evangeline Red, et al. v. Kraft Foods, Inc., et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Victoria Valine | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Gregory S. Weston<br>Elizabeth Lee Beck - by telephone | Dean N. Panos |

**PROCEEDINGS:**   **DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULES 9(B) AND 9(B)(6) (filed 12/07/10);**

**SCHEDULING CONFERENCE**

Court hears oral argument. The tentative circulated is hereby adopted as the Court's final ruling (attached). Defendant Kraft Foods Global, Inc.'s Motion to Dismiss Second Amended Complaint Pursuant to Rules 9(b) and 9(b)(6) is **denied.**

The Scheduling Conference is continued to **January 31, 2011 at 8:30 a.m.** Joint Rule 26(f) report will be filed by noon on January 27, 2011.

|  | : | 17 |
|---|---|---|

Initials of Preparer   JG

***Red v. Kraft Foods, Inc.***, Case No. CV-10-1028
  Tentative Ruling on Motion to Dismiss Second Amended Complaint

**Introduction**
  This is the latest motion to dismiss in this case and it will be the last. The gist of Plaintiffs' complaint as originally filed was that the presence of trans fat in the subject products made certain of Kraft's claims about the healthfulness of some of its products deceptive. Some but not all of the claims in previous versions of the complaint were expressly preempted under federal law - as has been extensively addressed in a series of prior hearings. At one point the Court made a comment from the bench suggesting that any claims that were premised in any way upon the presence of trans fat in Defendant's products would be preempted, but it has since acknowledged that this was probably wrong. In response to this suggestion, however, Plaintiffs added a number of claims that were either unrelated or only tangentially related to their trans fat claims (they also somewhat transparently reformulated their trans fat claims as claims about the presence of PHVO in Defendant's products). For example, they alleged that such statements as "Made with Real Vegetables," "Graham," and "Made with Ginger and Molasses" were misleading to consumers. The current motion to dismiss challenges those allegations, certain averments based on statements relating to the overall healthfulness of Defendant's products, and certain labeling claims that Kraft characterizes as non-actionable "puffing."[1] As Plaintiffs have sufficiently alleged that each of the challenged statements is either deceptive in its own right or contributes to the deceptive nature of the packaging as a whole, Kraft's renewed motion to dismiss would be DENIED.

**Discussion**
  A. Williams v. Gerber Products Co.
  As a preliminary matter, the Court would note that much of Kraft's motion is based on its assertion that "objectively true" statements cannot be challenged as misleading unless there was additional relevant information that Kraft was obligated to mention. Plaintiffs note that Kraft, on five separate occasions, mis-characterizes Aron v. U-Haul Co. of California, 143 Cal.App.4th 796, 807 (2006), as holding that a true statement is actionable only if "other relevant information" has been omitted, when, in fact, Aron states that "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, *such as* by failure to disclose other relevant information, is actionable [emphasis added]." Id. at 807 (quoting Day v. AT&T Corp. 63 Cal.App.4th 325, 332–333 (1998)). Kraft in its Reply simply notes that Aron was in fact a case where there was an affirmative misrepresentation by the defendant, but this does not rectify its liberties with the language in Aron.
  The binding standard for stating a claim for false statements on packaged foods under the UCL and CLRA is found in the Ninth Circuit decision in Williams v. Gerber Prods. Co., 552 F.3d 934 (9th Cir. 2008), reh'g en banc denied, 2008 U.S. App. LEXIS 27421 (Dec. 22, 2008).

---

[1] The Court has basically ruled on these challenges before. However, it permitted Defendant to file a further motion to dismiss ostensibly so the record would be clear.

These statutes "prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." 552 F. 3d. at 938 (internal citations omitted). The Ninth Circuit did not suggest that Plaintiffs must also plead that "other relevant information has been omitted."

In Williams, the plaintiffs challenged the following five features of the packaging used by Gerber to sell its Fruit Juice Snacks: (1) the use of the words "Fruit Juice" juxtaposed alongside images of fruits such as oranges, peaches, strawberries, and cherries when the only juice contained in the product was white grape juice from concentrate; (2) a statement on the product label describing the product as made "with real fruit juice and other all natural ingredients," even though the main ingredients in the product were corn syrup and sugar; (3) the statement that Fruit Juice Snacks was "one of a variety of nutritious Gerber Graduates foods and juices;" (4) the labeling of the product as a "snack" instead of a "candy," "sweet," or a "treat," and (5) the font size of the phrase "naturally flavored." Id. at 936.

In reversing the district court's ruling granting a motion to dismiss by Gerber, the Ninth Circuit wrote:

> The facts of this case . . . do not amount to the rare situation in which granting a motion to dismiss is appropriate. Here, there are a number of features of the packaging Gerber used for its Fruit Juice Snacks product which could likely deceive a reasonable consumer. The product is called "fruit juice snacks" and the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product. Further, the statement that Fruit Juice Snacks was made with "fruit juice and other all natural ingredients" could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false. And finally, the claim that Snacks is "just one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy" adds to the potential deception.

Id. at 939. Addressing Gerber's claim that Fruit Juice Snacks were "nutritious," the Ninth Circuit noted that, while such a claim "could arguably constitute puffery," it "contributes . . . to the deceptive context of the packaging as a whole." Id. at 939 n. 3.

### B. "Made With" Claims

Plaintiffs analogize the "Made with Real Vegetables" claims in the SAC to the "Fruit Juice and All Natural Ingredients" claims in Williams. They write that it is Kraft's burden to show "that a reasonable consumer could not interpret 'Made With Real Vegetables,' in the context of large images of vegetables and then word 'vegetable' in the very name of the product, as meaning the product actually is made with a significant amount of vegetables." Opp. 7:24-27. The Court would initially agree that Plaintiff's allegation that the statement "Made with Real Vegetables" is potentially deceptive to consumers is not appropriate for dismissal at the pleading

stage.[2]

 Similarly, with respect to Kraft's use of the word "honey" and images of bees and honey pots on certain product packages, Plaintiffs allege that Kraft's "Honey" products are sweetened with white sugar and high-fructose corn syrup and not honey, which is "absent except in a trace amount." Id. at 8:13. Kraft argues, inter alia, that "FDA regulations authorize food packaging to include 'the common or usual name of the characterizing flavor, e.g., 'vanilla'" of a product. The regulation it cites, 21 C.F.R. § 101.22(i)(1), provides as follows:

> (1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that:
> (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the

---

[2] Clearly, the issue is a matter of degree. For example, in Werbert v. Pepsico, Inc., 2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010), the district court granted defendant's motion to dismiss without hearing oral argument on the issue of whether "members of the public are likely to be deceived into believing that Cap'n Crunch derives nutrition from actual fruit by virtue of the reference to 'Berries' and because the Crunch berries allegedly are 'shaped to resemble berries.'" Id. at *9. The court found that contention to be "nonsense" because:

> "the term 'Berries' is not used alone, but always is preceded by the word 'Crunch' to form the term 'Crunch Berries.' The image of the Crunch Berries, which is 'ENLARGED TO SHOW TEXTURE,' shows four cereal balls with a rough, textured surface in hues of deep purple, teal, chartreuse green and bright red . . . . These cereal balls do not even remotely resemble any naturally occurring fruit of any kind. There are no representations that the Crunch Berries are derived from real fruit nor are there any depictions of any fruit on the cereal box. To the contrary, the packaging clearly states that product is a 'SWEETENED CORN & OAT CEREAL.' In short, no reasonable consumer would be deceived into believing that Cap'n Crunch 'has some nutritional value derived from fruit.'"

Id. at *9-10.

characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".

(ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially flavored."

(iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

21 C.F.R. § 101.22(i)(1). None of the "Honey" products illustrated in the SAC make any reference to honey "flavor." See SAC ¶¶ 18, 23, 42, 43. Thus, they do not appear to be attempting to comply with the "characterizing flavor" regulations.

Kraft also argues that the FDA-regulated ingredient lists on the products disclose that there is more high fructose corn syrup than honey in them, but this seems to be at least arguably the type of contention that the Ninth Circuit meant to foreclose when it wrote: "We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." Williams, 552 F.3d at 939. It is not clear that Plaintiffs' claim that the use of the word "honey" and related imagery is susceptible to dismissal at this stage.

Plaintiff's "whole wheat" and "graham" claims probably can be treated together, as Plaintiffs assert that the label "graham" suggests that Teddy Grahams and Honey Made Graham Crackers are made from whole wheat flour, whereas the whole wheat and graham products are made primarily with refined white flour.[3] Kraft's primary argument for dismissal is that the actual ingredients are disclosed in the ingredients list. Once again, Williams suggests that this would not be an appropriate basis for dismissing Plaintiffs' claims. Kraft also suggests that reasonable consumers could not be misled by these representations because the products are sold in the cookie aisle of the supermarket, but this argument takes us fairly far afield of facts that would be appropriately considered on a motion to dismiss.

Plaintiffs allege that the phrase "Made With Real Ginger and Molasses" implies that Nabisco Ginger Snaps are flavored and sweetened with ginger and molasses, whereas they are primarily flavored and sweetened with refined white sugar and high fructose corn syrup. Here, too, the Court would reject Kraft's argument in favor of dismissal - which is essentially the claim that the claim "Made With Real Ginger and Molasses" cannot be misleading as long as the products contain some amount of ginger and molasses. Once again, Williams, at least, appears to

---

[3] Webster's New World Dictionary, Third College Edition (1988) at page 585 defines "graham" as "designating or made of whole-wheat flour [graham crackers]" noting that the word originates "after S. Graham (1794-1851), U.S. dietary reformer".

caution otherwise.

### C. "Healthfulness" Claims

The second portion of Kraft's motion to dismiss concerns the statements "Nutritionists Recommend," "Steps to a Healthier You," and "Good Source of Calcium, Iron & Zinc to Support Kid's Growth and Development." The third claim is the trickiest one just because Plaintiffs have conceded that any attack on the "Good Source" claim would be expressly preempted because the requirements for making a "good source" claim are set forth at 21 C.F.R. § 101.54(c)(1), and Plaintiffs have not alleged that Kraft has failed to meet these requirements. To the extent that the "Support[s] Kid's Growth and Development" statement can be divorced from the "good source" claim, Plaintiffs have adequately alleged that it - along with the other claims - is misleading based on their claim that consumption of the products at issue is, overall, unhealthy.

### D. "Puffing" Claims

This Court has twice previously concluded - based on <u>Williams</u> - that the statements described by Defendants as "mere puffery" can "contribute[ ] . . . to the deceptive context of the packaging as a whole," and that they should not be stricken. <u>See</u> Doc. No. 40, p. 10 (quoting <u>Williams</u>, 552 F.3d at 939 n.3). There is nothing in the current motion that would cause the Court to reconsider this ruling.

**Conclusion**

Kraft's Motion to Dismiss would be DENIED.