1  **THE WESTON FIRM**
2  GREGORY S. WESTON (239944)
3  JACK FITZGERALD (257370)
   MELANIE PERSINGER (275423)
4  888 Turquoise Street
5  San Diego, CA 92109
   Telephone:    858 488 1672
6  Facsimile:    480 247 4553
7  greg@westonfirm.com
   jack@westonfirm.com
8  mel@westonfirm.com
9
10 **LAW OFFICES OF RONALD A. MARRON, APLC**
11 RONALD A. MARRON (175650)
12 3636 4th Avenue, Suite 202
   San Diego, CA 92109
13 Telephone:    619 696 9066
14 Facsimile:    619 564 6665
15 ron.marron@gmail.com

16 *Attorneys for Plaintiffs and the Proposed*
17 *Classes*

**JENNER & BLOCK LLP**
KENNETH K. LEE (264296)
633 West 5th Street, Suite 3500
Los Angeles, CA 90071
Telephone:    213 239 5100
Facsimile:    213 239 5199
klee@jenner.com

DEAN N. PANOS (*pro hac vice*)
JILL M. HUTCHISON (*pro hac vice*)
353 N. Clark Street
Chicago, IL 60645
Telephone:    312 222 9350
Facsimile:    312 527 0484
dpanos@jenner.com
jhutchison@jenner.com

*Attorneys for Defendants*

18           **UNITED STATES DISTRICT COURT**
19           **CENTRAL DISTRICT OF CALIFORNIA**

20 EVANGELINE RED and RACHEL
   WHITT, on Behalf of Themselves and All
21 Others Similarly Situated,
22
            Plaintiffs,
23
24                v.
25
26 KRAFT FOODS INC., KRAFT FOODS
   NORTH AMERICA, AND KRAFT
27 FOODS GLOBAL, INC.,
28
            Defendants.
29
30
31
32

Case No. 2:10-cv-01028 GW(AGRx)
Pleading Type: Class Action

**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION AND INTERROGATORIES AND PRODUCE WITNESSES PURSUANT TO RULE 30(B)(6).**

Judge: The Hon. Alicia G. Rosenberg
Hearing: July 12, 2011 at 10:00am
Location: Courtroom D

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

   A.  PLAINTIFFS' PRELIMINARY STATEMENT ............................................. 2

      1.  Background & Procedural History ........................................................ 2

      2.  Class Certification Discovery ............................................................. 2

      3.  Kraft's Incomplete Discovery Response ............................................ 3

   B.  DEFENDANT KRAFT FOODS' PRELIMINARY STATEMENT ............. 6

      1.  Introduction ........................................................................................ 6

      2.  Brief background and procedural history ............................................ 9

         (a) Plaintiffs file a putative class action lawsuit on behalf of consumers in all 50 states. ........................................................... 9

         (b) The Court limits discovery to class certification issues, but Plaintiffs propound overbroad and overreaching discovery requests. ............... 10

         (c) Kraft Foods Undertakes Reasonable Efforts to Provide the Discovery Responses Necessary to Class Certification. ................................. 12

      3.  Plaintiffs' motion to compel must be denied because their discovery requests violate Judge Wu's bifurcation order, are not necessary for class certification, are unduly burdensome, and are tardy. ................................... 14

GENERAL DISCOVERY DISPUTES ........................................................... 17

   A.  THE PROPER TEMPORAL SCOPE OF DISCOVERY ............................ 17

      1.  Plaintiffs' Position On The Proper Temporal Scope ............................... 18

      2.  Defendant's Position On The Proper Temporal Scope ........................... 20

   B.  THE PROPER GEOGRAPHIC SCOPE OF DISCOVERY ........................ 21

      1.  Plaintiffs' Position On Geographic Scope ................................................. 21

      2.  Defendant's Position On Geographic Scope ............................................ 22

REQUESTS FOR PRODUCTION IN DISPUTE .......................................... 23

   A.  REQUEST FOR PRODUCTION NO. 2 ................................................... 23

   B.  REQUESTS FOR PRODUCTION NOS. 3-4 ............................................ 25

   C.  REQUESTS FOR PRODUCTION NOS. 12-13, 16, 44-54, 59 ................. 27

   D.  REQUESTS FOR PRODUCTION NOS. 23, 36 ........................................ 34

   E.  REQUESTS FOR PRODUCTION NOS. 30-34 ........................................ 36

i

INTERROGATORIES IN DISPUTE ...................................................................42

   A.  INTERROGATORY NO. 1 .................................................................42

   B.  INTERROGATORY NO. 3 .................................................................44

   C.  INTERROGATORY NOS. 4-6...............................................................46

   D.  INTERROGATORY NO. 11 ................................................................48

RULE 30(B)(6) DEPOSITION TOPICS ...........................................................49

   A.  R. 30(B)(6) DEPOSITION TOPIC NO. 2 ........................................49

   B.  R. 30(B)(6) DEPOSITION TOPIC NOS. 3-6, 11............................50

   C.  R. 30(B)(6) DEPOSITION TOPIC NO. 8 ........................................53

   D.  R. 30(B)(6) DEPOSITION TOPIC NO. 9-10....................................54

*Red et al. v. Kraft Foods Inc. et al.*, Case No. 2:10-cv-01028 GW (AGRx)
JOINT STIPULATION RE PLAINTIFFS' MOTION TO COMPEL RESPONSES
TO PLAINTIFFS' DISCOVERY REQUESTS AND PRODUCE WITNESSES PURSUANT TO RULE 30(B)(6)

## **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 37(a) and Local Rule 37-2.1, Plaintiffs Evangeline Red and Rachel Whitt ("Plaintiffs"), and Defendants Kraft Foods, Inc., Kraft Foods North American, Inc., and Kraft Foods Global, Inc. (collectively "Defendant" or "Kraft") submit the following joint stipulation regarding Plaintiffs' Motion to Compel:

- Discovery responses based on the full putative class period (January 1, 2000 to the present);

- Discovery responses based on the full geographic scope of the putative nationwide class;

- Responses to Plaintiffs' Interrogatories Nos. 1-6 and 11;

- Responses to Requests for Production Nos. 2-4, 12-13, 16, 23, 30-34, 36, 44-54, and 59; and

- Production of witnesses pursuant to Rule 30(b)(6) for Topics 2, 3-6, and 8-11, identified in Plaintiffs' Rule 30(b)(6) Notice.

Plaintiffs' discovery requests, and Kraft's objections and responses, are attached to the Weston Declaration as **Exhibits 1-6**. Pursuant to Fed. R. Civ. P. 26(f) and Local Rule 37-1, the parties conducted a telephonic pre-filing conference of counsel on May 10, 2011. The parties have also exchanged the following relevant communications:

- April 30, 2011 Letter from Gregory S. Weston, counsel for Plaintiffs, to Dean Panos, counsel for Kraft (**Exhibit 7**);

- May 11, 2011 Letter from Jack Fitzgerald, counsel for Plaintiffs, to Dean Panos (**Exhibit 8**);

- May 18, 2011 Letter from Dean Panos to Jack Fitzgerald (**Exhibit 9**).

Also attached is a 4-page excerpt from Kraft's document production (**Exhibit 10**), and excerpts from the deposition transcripts of two Kraft witnesses (**Exhibits 11-12**).

## A.   PLAINTIFFS' PRELIMINARY STATEMENT

### 1.   Background & Procedural History

Plaintiffs assert claims under California's UCL, FAL and CLRA alleging Kraft labels six packaged foods made with dangerous and unwholesome ingredients like trans fat and high-fructose corn syrup with deceptive health and wellness claims. After Judge Wu denied entirely Kraft's motion to dismiss Plaintiffs' Second Amended Complaint ("SAC"), *Red v. Kraft Foods, Inc.*, 2011 U.S. Dist. LEXIS 26893 (C.D. Cal. Jan. 13, 2011), Plaintiffs began taking discovery on issues related to their class certification motion, including by propounding interrogatories and document requests on Kraft, and seeking to depose, pursuant to Rule 30(b)(6), Kraft representatives on several topics.

Kraft has failed, however, to respond to even routine interrogatories (for example, those seeking the identification of knowledgeable witnesses) and document requests (like Kraft's document retention policy). Although Plaintiffs filed their class certification motion on May 13 (Dkt. No. 95), Plaintiffs were and are entitled to the discovery of additional information relevant to issues on class certification, and which comprise the common proof necessary to show the propriety of certifying the putative class. Kraft should be ordered to comply with its discovery obligations without further delay or obstruction.

### 2.   Class Certification Discovery

In order for Plaintiffs' proposed class to be certified, they must make "a *prima facie* showing that the prerequisites set forth in Fed. R. Civ. P. 26(a) have been satisfied, i.e., (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Heffelfinger v. Elec. Data Sys. Corp.*, NO. CV 07-00101 MMM (Ex), 2008 U.S. Dist. LEXIS 5296 at *24 (C.D. Cal. Jan. 7, 2008). After satisfying the Rule 23(a) requirements, a plaintiff must then meet at least one of the three prerequisites of Rule 23(b). *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168,

2

*Red et al. v. Kraft Foods Inc. et al.*, Case No. 2:10-cv-01028 GW (AGRx)
Joint Stipulation Re Plaintiffs' Motion to Compel Responses
to Plaintiffs' Discovery Requests and Produce Witnesses Pursuant to Rule 30(b)(6)

1176 (9th Cir. 2007) (citation omitted) ("*Dukes I*"). Plaintiffs seek certification under either Rule 23(b)(2), 23(b)(3), or both. (*See* Dkt. No. 95.)

Pursuant to the Federal Rules, Plaintiffs are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's *claim or defense* – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1) (emphasis added). Moreover, for good cause, the Court may grant Plaintiffs a broader scope by permitting "discovery of any matter relevant to the *subject matter* involved in the action." *Id.* (emphasis added). At this stage in the case, discovery has been limited to the issue of class certification. Thus, any information that is relevant to the prerequisites of class certification outlined above or any defense thereto is discoverable by Plaintiffs.

### 3.    Kraft's Incomplete Discovery Response

From the time they filed this case, Plaintiffs have sought to represent a putative class of all U.S. purchases of the Kraft brands at issue, from January 1, 2000 to the present. (*See* original Compl., Dkt. No. 1 at ¶ 79.) Rule 12 briefing here was extensive. Kraft filed five separate motions to dismiss or strike the pleadings, which included ten total briefs (since Kraft replied in each case). (Dkt. Nos. 17, 29, 37, 63, 76.) Kraft also submitted a brief in response to an offer of proof made by Plaintiffs. (Dkt. No. 46.) In sum, Kraft had many opportunities to raise and argue the proposed class period and its geographic scope. After multiple briefing rounds and a half-dozen oral hearings, Judge Wu permitted Plaintiffs' full Second Amended Complaint to proceed, complete with a nationwide class definition beginning January 1, 2000, and instructed Plaintiffs to begin class certification discovery.

Nevertheless, *in response to every single discovery request*, Kraft asserted

3

the following objections:

- Kraft Foods objects to Plaintiffs' Requests to the extent they seek information going back over ten years to 2000 as beyond the applicable statute of limitations. A three-year statute of limitations applies to CLRA claims, and a four-year statute of limitations applies to the alleged UCL and FAL claims. Cal. Civ. Code § 1783; Cal. Bus. & Prof. Code § 17208. Therefore, to the extent Kraft Foods agrees to provide responsive documents, Kraft Foods will provide only information going back four years from the date the initial Complaint was filed on February 11, 2010.

- Kraft objects to Plaintiffs' Requests to the extent that they seek documents related to Kraft's marketing, sale, and distribution of products in states other than California as not relevant and unduly burdensome.

As discussed below, Kraft's unilaterally limiting its production to the class definition it prefers (a California-only class during the past 3-4 years) is untenable, falls short of its discovery obligations under the Federal Rules, and yet has permeated every discovery request Plaintiffs made in this case.

But Kraft's obstructionist behavior did not end there. Notwithstanding the broad scope of discovery permitted by the Federal Rules, Kraft refuses to produce routine information like its document retention policy and organization charts so that Plaintiffs may learn of or evaluate the "existence of . . . any [relevant] documents" and identify "persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1).

During meet-and-confer calls, Kraft also admitted it did not search *any* email, and took the position that while *attachments* to email comprising Kraft market research were relevant to class certification and Kraft therefore produced them, the *email communications* about those documents are not relevant.[1]

---

[1] For example, Kraft's Director of Consumer Insights & Strategy, Amelia Strobel, testified that she regularly deals with focus group reports, consumer studies, reports, polls, and other marketing analysis, *e.g.*, Ex. 11, Strobel Dep. Tr. at 70:23-71:2, and that she communicates regularly by email, *e.g.*, *id.* at 175:14-176:16,

4

*Red et al. v. Kraft Foods Inc. et al.*, Case No. 2:10-cv-01028 GW (AGRx)
JOINT STIPULATION RE PLAINTIFFS' MOTION TO COMPEL RESPONSES
TO PLAINTIFFS' DISCOVERY REQUESTS AND PRODUCE WITNESSES PURSUANT TO RULE 30(B)(6)

In fact, purported irrelevance is Kraft's answer to virtually every discovery request Plaintiffs made. Kraft objected *and refused to produce responsive information on the basis of the objection*, to 8 of 12 interrogatories (67%), 37 of 61 document requests (61%), and 11 of 14 deposition topics in Plaintiffs' Rule 30(b)(6) notice (85%).

Kraft also admitted it unilaterally elected not to search the files of some custodians, even though they are likely to have relevant information, such as Kraft's own General Counsel. In reaction to that revelation, Plaintiffs requested Kraft provide a list of the locations and files it searched, as well as a list of custodians whose files were searched, so that Plaintiffs could evaluate the completeness of Kraft's search and, if necessary, request a search of additional files or custodians. Kraft took the request under advisement, but ultimately was only willing to state that, "The files searched to produce documents KFG000001-KFG003750 were located at the Kraft Foods' Management Center in East Hanover, New Jersey." (Ex. 9.) Thus, Kraft apparently did not even search the records in its principal place of business, Northfield, Illinois, nor in any other U.S. location.

Nor has Kraft produced the privilege log described in Fed. R. Civ. P. 26(b)(5), which is required if Kraft wishes to withhold from production responsive but purportedly privileged information.[2] *See In re Grand Jury Investigation*, 974

---

179:15. Such documents clearly fall within the scope of requests to which *Kraft agreed to produce responsive documents*, yet Kraft's entire production included only a single email.

[2] Kraft redacted full pages from some of its documents without any explanation or privilege log. *See* Ex. 10, KFG0000293-96. During the meet-and-confer call, Kraft represented that these pages contained information about products it believes are not at issue in this case. Even if true, that is not a proper basis on which to redact full pages of a document otherwise responsive to a proper discovery request. Nor

F.2d 1068, 1071 (9th Cir. 1992).

As discussed below, Kraft's discovery responses fall well short of its obligations under the Federal Rules. Plaintiffs need and are entitled to full, fair responses from Kraft in order to complete their motion for class certification. For that reason, Plaintiffs' Motion should be granted.

## B.   DEFENDANT KRAFT FOODS' PRELIMINARY STATEMENT

### 1.  Introduction

Plaintiffs have devoted nearly 35 pages of this joint stipulation to complain about Kraft Foods' supposedly deficient discovery responses.  They repeatedly cry foul, alleging that Kraft Foods' responses "fall well short" of its obligations.  But tucked away in the middle of one of their many paragraphs is a critical concession that fatally undermines their motion to compel: "*At this stage in the case, discovery has been limited to the issue of class certification*."  Yet Plaintiffs are seeking to compel Kraft Foods to expend enormous resources to respond to discovery requests that have no bearing on whether a class should be certified.

On January 31, 2011, Judge Wu — over Plaintiffs' objections — ruled that discovery should be bifurcated into "class certification discovery" and "merits discovery."  *See* Dkt. 84.  The reason was obvious:  Parties should not waste time and money on far-reaching discovery that has little relevance on whether or not the putative class should be certified in this case.  If this Court denies Plaintiffs' request for class certification, then discovery into the merits issues would likely be rendered moot.  Judge Wu thus directed the parties to engage in discovery related to only class certification at this time.

---

can Kraft's objection on the basis of burden be credited where Kraft refused (Ex. 9) to even consider Plaintiffs' suggestion of providing a narrow, limited list of custodians and search terms (Ex. 8).

*Red et al. v. Kraft Foods Inc. et al.*, Case No. 2:10-cv-01028 GW (AGRx)
JOINT STIPULATION RE PLAINTIFFS' MOTION TO COMPEL RESPONSES
TO PLAINTIFFS' DISCOVERY REQUESTS AND PRODUCE WITNESSES PURSUANT TO RULE 30(B)(6)

Despite Judge Wu's order bifurcating discovery, Plaintiffs propounded a fusillade of overly broad discovery requests — 61 requests for documents, 14 interrogatories, and 14 Rule 30(b)(6) deposition topics — that are not reasonably related to whether Plaintiffs have met the class certification requirements under Rule 23(a) and 23(b).[3] For example, they want Kraft Foods to search for and produce:

- "All DOCUMENTS or COMMUNICATIONS sent or received by YOU from or to any health care professional, science-related organization, or nutrition-related organization regarding the PRODUCTS, including, but not limited to, letters, correspondence and reports."

- "All DOCUMENTS which reflect, summarize, analyze or discuss the pricing of the PRODUCTS, including wholesale or retail prices."

- "All DOCUMENTS RELATING TO the effects of artificial trans fat on human or animal health."

To make matters worse, Plaintiffs insist that Kraft Foods, a company with tens of thousands of employees across the country, should search for documents extending back 11 years and relating to thirteen different food products.

In response to these discovery requests, Kraft Foods has produced reams of documents that are relevant to class certification, including nationwide advertisements and food packaging that consumers saw, Kraft Foods' consumer research reports, and its final marketing plans for these products. Kraft Foods has

---

[3]    Kraft Foods informed Plaintiffs that it would discuss requests that arguably may encompass both "class-based" and "merits-based" issues. Plaintiffs, however, have insisted that Kraft Foods respond to every single one of the overly broad 61 requests for documents and other discovery requests.

7

*Red et al. v. Kraft Foods Inc. et al.*, Case No. 2:10-cv-01028 GW (AGRx)
JOINT STIPULATION RE PLAINTIFFS' MOTION TO COMPEL RESPONSES
TO PLAINTIFFS' DISCOVERY REQUESTS AND PRODUCE WITNESSES PURSUANT TO RULE 30(B)(6)

conferred with literally dozens of Kraft employees to locate and produce documents, provided nearly 4,000 pages of documents, and prepared and proffered two Kraft employees for Rule 30(b)(6) depositions that each lasted a full day.  In sum, Plaintiffs have more than necessary documents for purposes of determining class certification.[4]

Perhaps the most telling sign that Plaintiffs' complaints ring hollow is their own conduct.  Even though Plaintiffs now assert that they need this discovery for their class certification motion, they filed their class certification brief nearly *two weeks before* they submitted their portion of this Rule 37 joint stipulation.  If they genuinely needed these documents for their class certification motion, they would have sought these documents prior to submitting their class certification brief.  But Plaintiffs said not a word about Kraft Foods' responses and objections for *two months* after receiving them. Indeed, Plaintiffs in their class certification brief contend that they have already met the Rule 23 requirements, implicitly conceding that the additional discovery they seek is unnecessary.

This Court should deny Plaintiffs' motion to compel because Plaintiffs failed to make any showing that they need additional discovery. Any class-related discovery they supposedly are seeking is too late and unnecessary because they have already filed their class certification brief and they contend they have met their Rule 23 requirements.  And the merits-based discovery they seek is too early because the Court has limited discovery to class certification issues at this time. Finally, if this Court were to grant Plaintiffs' motion to compel discovery, it would derail the class certification schedule established by Judge Wu.  Kraft Foods' response to Plaintiffs' Motion for Class Certification is due on July 28, and the

---

[4]   In contrast, as of the date of this Joint Stipulation, in response to Defendants' very limited and narrow class certification discovery requests, Plaintiffs have not produced a single document and failed to fully respond to a single interrogatory.

expansive discovery sought by Plaintiffs would cause substantial delay to the class certification motion and trial schedule. This scheduling predicament is of Plaintiffs' own making because they submitted this motion to compel weeks after they had already filed their class certification motion.

## 2. **Brief background and procedural history**

### (a) Plaintiffs file a putative class action lawsuit on behalf of consumers in all 50 states.

Purporting to represent consumers across the entire United States who have purchased various Kraft Foods snacks since 2000, Plaintiffs allege that they were misled into believing that snacks such as Cinnamon Teddy Grahams were completely healthful. Plaintiffs insist that positive statements on the packaging (*e.g.*, "fun, wholesome choice," "Made With Real Ginger") are misleading because the snacks also contain allegedly "bad" ingredients (*e.g.*, sugar, white flour), which were in any event fully disclosed in accordance with federal law.

The Court expressed serious doubts about the viability of these claims, requesting Plaintiffs to reframe their allegations and ordering the parties to submit multiple rounds of briefing. The Court winnowed Plaintiffs' claims as it entertained multiple rounds of briefing. For example, it dismissed the Lanham Act claim. *See* Dkt. 36. The Court further held that a number of Plaintiffs' claims were expressly preempted, including claims based on "0g trans fat," "No Cholesterol," "good source of Calcium, Iron, & Zinc," and specific "whole grain" statements. *See* Dkt. 36 at 5; Dkt. 59; Dkt. 67 at 3 n.3; Dkt. 79 at 5.

To stave off dismissal, Plaintiffs' theory of the case constantly evolved, giving rise to an ever-expanding list of claims and allegations. Their complaint now objects to thirteen distinct products. Further, Plaintiffs' claims originally related to only trans fat, but their claims have since ballooned to encompass at least thirteen different ingredients. *See, e.g.*, Second Amended Complaint ("SAC")

9

*Red et al. v. Kraft Foods Inc. et al.*, Case No. 2:10-cv-01028 GW (AGRx)
JOINT STIPULATION RE PLAINTIFFS' MOTION TO COMPEL RESPONSES
TO PLAINTIFFS' DISCOVERY REQUESTS AND PRODUCE WITNESSES PURSUANT TO RULE 30(B)(6)

(Dkt. 58) ¶¶ 67, 90, 95, 105, 111, 114, 121 (white flour); SAC ¶¶ 70, 91, 96, 106, 117, 128 (sugar).   And the supposedly misleading statements on the food packaging have multiplied to include at least nineteen widely-varying statements and packaging features.

The Court ultimately declined to dismiss the complaint in its entirety at the motion-to-dismiss stage, but it reserved the right to revisit the issue at a later point. *See* Ex. A, Transcript of Jan. 13, 2011 Hearing at 12:16-23.

> **(b)  The Court limits discovery to class certification issues, but Plaintiffs propound overbroad and overreaching discovery requests.**

Perhaps recognizing the ever-expanding scope and nature of Plaintiffs' claims, the Court on January 31 ruled that discovery should be bifurcated into "class certification" and "merits" stages.  *See* Dkt. 84.  Plaintiffs objected to bifurcated discovery, but the Court rejected Plaintiffs' plea and agreed with Kraft Foods' argument that "[w]ithout appropriate discovery limitations set by the Court, the Kraft defendants will likely incur hundreds of thousands of dollars in costs to respond to discovery request that are not relevant to the Court's determination of the class certification motion."  Dkt. 82 at 3 (Joint Rule 26(f) report).   The Court then set a truncated period for class certification discovery, and Plaintiffs' discovery requests on class certification were to be submitted immediately.  *See* Dkt. 84.

Despite the court's directive to engage in limited, class-specific discovery, Plaintiffs on February 2 propounded 14 interrogatories, 14 topics for 30(b)(6) depositions, and a whopping 61 requests for the production of documents.  *See* Ex. B, Plaintiffs' First Set of Interrogatories; Ex. C, Plaintiffs' Notice of Taking Rule 30(b)(6) Deposition of Defendants; Ex. D, Plaintiffs' First Set of Requests for the Production of Documents ("RFPs").

Most of Plaintiffs' discovery requests plainly are not relevant to the narrow

10

issue of class certification and are so overbroad that they would be improper even during the merits phase of discovery:

- Plaintiffs have requested information and documents about products *not* even at issue in the Second Amended Complaint. *See* Interrogatory 1.

- They want the identity of all employees, suppliers, and vendors involved in manufacturing or developing of the products — a gargantuan task for a company the size of Kraft and unrelated to class certification. *See* RFPs 3-4.

- They seek information about the effects of artificial trans fat on human or animal health, even though their Second Amended Complaint does not seek any damages related to purported health issues, and the court dismissed all of Plaintiffs' claims concerning the disclosure of "0g trans fat." *See, e.g.*, RFP 59 (seeking documents relating to the effects of artificial trans fat on human or animal health).

- Plaintiffs demand a wide range of financial data and communications that have little bearing on class certification. *See* Interrogatories 2-6 (asking for advertising and promotional expenditures, net sales, and cost of goods); RFPs 6-11 and 24-28 (seeking documents regarding sales, cost of goods sold, advertising and promotional expenses, research and development expenses, operating income, gross margin); 30(b)(6) Notice Topics 4 and 6 (seeking witnesses to testify about various financial information).

- Although Plaintiffs did not identify any allegedly deceptive advertising or marketing in the SAC and claim only to have relied upon statements on the packaging, they have submitted extensive discovery requests relating to marketing and advertising. *See* SAC ¶¶

11

131-133.   These   requests   include   drafts,   plans,   internal communications,   and   tangential   information   related   to   the development of the marketing and advertising that consumers never even saw. *See, e.g.*, RFP 14.

Plaintiffs' kitchen-sink strategy of discovery is particularly onerous because of the breadth of their claims and the extended period and geographic area for which they seek discovery. Each of Plaintiffs' multiple requests relates to 13 distinct products that have been sold in all 50 states during a period of more than ten years.

### (c) Kraft Foods Undertakes Reasonable Efforts to Provide the Discovery Responses Necessary to Class Certification.

Upon   receiving   these   discovery   requests,   Kraft   Foods   promptly   devoted significant time and effort to provide Plaintiffs with the evidence necessary for their class certification motion.   On March 1, Kraft Foods provided its objections and responses.   Ex. E, Answers to Plaintiffs' First Set of Interrogatories; Ex. F, Objections to Plaintiffs' Notice of Taking Rule 30(b)(6) Deposition of Defendants; Ex. G, Response to Plaintiffs' First Set of Requests for the Production of Documents.   Kraft Foods indicated to Plaintiffs that it would provide information and documents related to the actual packaging and advertising for the products, results of consumer research, and final marketing plans.   Kraft Foods further stated that it would provide information from 2006-2010, a five-year period, and would provide certain discovery for California.   Plaintiffs did not complain about any of Kraft's objections or limits of what Kraft agreed it would produce for class discovery.

In the twenty-seven days Kraft Foods was given to respond to Plaintiffs' discovery, it focused on responding to the requests for documents necessary to class certification.   Kraft Foods targeted the custodians most likely to have relevant

12

information and documents and conducted extensive inquiries. Counsel for Kraft Foods interviewed more than fifty-five individuals in New Jersey, each of whom had involvement in Kraft's marketing of one or more of the products at some time between 2006 and 2010.   *See* Declaration of Jill M. Hutchison ("J. Hutchison Dec.") at ¶ 3.

Given the abbreviated time frame to complete the class certification discovery and expansive scope of Plaintiffs' discovery request, counsel focused on searching for and producing documents relevant to class certification.   For example, Kraft Foods thoroughly searched for the actual packaging and advertising because Plaintiffs themselves have stated that the "primary evidence' in a California law false advertising case 'is the advertising.'"   *See* Plaintiffs' Mem. in Support of Class Cert. at 18 (Dkt. 95) (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003)).   But Kraft Foods did not provide every *draft* of an advertisement, but instead produced those advertisements that reached the public. *See* J. Hutchison Dec. at ¶ 5.   The putative class members could not have seen the drafts or marketing materials that were never used, and therefore could not have relied upon them in purchasing the snacks.   Moreover, such documents have little relevance for determining class certification under Rule 23(a) and 23(b).

Similarly, Kraft Foods candidly advised Plaintiffs that it was not going to search for and produce internal e-mails of the tens of thousands of Kraft employees because their internal communications or state-of-mind have no bearing on Rule 23 class certification issues.   But Kraft Foods took appropriate steps to preserve electronic data, such as e-mails that might have some relevance to the merits.

During this limited time frame for class certification discovery, Kraft Foods also undertook extensive efforts to prepare its two Rule 30(b)(6) witnesses on the topics for which they were offered.   Both of Kraft Foods' witnesses spent numerous hours reviewing Kraft's advertising, marketing plans, and consumer

13

research so that they were prepared to testify as 30(b)(6) witnesses on the topics for which they were designated.  *See* J. Hutchison Dec. at ¶ 8.

### 3.   Plaintiffs' motion to compel must be denied because their discovery requests violate Judge Wu's bifurcation order, are not necessary for class certification, are unduly burdensome, and are tardy.

Plaintiffs' motion to compel discovery should be denied for four independent reasons.  The discovery requests: (1) violate Judge Wu's January 31 order limiting discovery to class certification; (2) are not necessary to determine class certification issues; (3) are unnecessarily burdensome, overly broad, and would take months to comply with; and (4) are too late.

First, Plaintiffs' wide-ranging and scattershot discovery requests violate Judge Wu's January 31 order bifurcating discovery into "class certification" and "merits" stages. In accordance with Ninth Circuit precedent,  Judge Wu appropriately limited discovery to class certification issues at this stage.  *See Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975) (allowing district courts to limit discovery to class certification issues).  Even Plaintiffs concede that discovery is limited to only class certification issues.

Yet, as detailed above, Plaintiffs have propounded discovery requests that plainly are not relevant to class certification issues.  For instance, they request documents related to trans fat's health impact (even though they do not plead any damages arising from supposed health issues).  They also want Kraft Foods' internal financial documents that have no relevance to class certification, and virtually any internal communications with scientists or health professionals about Kraft Foods' snacks.  Many of these discovery requests would not even be relevant to the merits of the case even if their proposed class is granted certification, and all

14

of them simply are not germane to the discrete Rule 23(a) and Rule 23(b) class certification issues.

<u>Second</u>, even assuming for argument's sake that these discovery requests are somehow relevant to class certification, they are not *necessary* to determine class certification. Federal Rule of Civil Procedure 23(c)(1)(A) requires a court to determine whether to certify an action as a class action at an early time. For this reason, class discovery is properly limited to only that evidence *necessary* for the class certification determination, and leave to seek discovery may be denied entirely where no further evidence is needed to make the determination. *See Kamm*, 509 F.2d at 210 (affirming decision to deny additional discovery where the record provided sufficient evidence from which to determine the superiority question).

Accordingly, courts have repeatedly denied pre-certification discovery requests if they were not *necessary* for the court to determine class certification. *See, e.g.*, *Thornton v. State Farm Mut. Auto Ins. Co., Inc*., No. 1:06-cv-18, 2006 WL 3359482, at *4 (N.D. Ohio Nov. 17, 2006) (denying further discovery on issues related to class certification where the existing record was sufficient to resolve the motion); *Galloway v. American Brands, Inc*., 81 F.R.D. 580, 587 (D.N.C. 1978) ("The plaintiff's assertion that additional discovery is required, without a specific showing of necessity, is not sufficient to overcome the mandate of Rule 23(c)(1) that class determination be made as soon as practicable.").

Here, the discovery sought by Plaintiffs would require far more than the short period of time allotted by Judge Wu and would unnecessarily delay the determination on class certification. Although Plaintiffs complain that this extensive discovery is "relevant," they have not shown why it is *necessary* to class certification. To the contrary, they have *already* filed a class certification motion claiming that they have met all of the elements of class certification. *See*

15

Plaintiffs' Mem. in Support of Class Cert. (Dkt. 95).  Plaintiffs' own actions show that the requested discovery is not "necessary" to determine class certification.

Third, Plaintiffs' overly broad requests would impose a significant burden at this early stage of the case, requiring Kraft Foods to spend months locating such documents and expend hundreds of thousands of dollars to respond to discovery requests that may be rendered moot if the class certification motion is denied. Such  unduly burdensome discovery is inappropriate at the pre-certification stage. *Cf. Thorogood v. Sears, Roebuck and Co*.,  624 F.3d 842, 849-50 (7th Cir. 2010) (recognizing the asymmetry of pretrial discovery in class actions, that an "improper and rarely acknowledged but pervasive" purpose of pretrial discovery is that "it makes one's opponent spend money," and that the "vast and ever-expanding volume of [corporations' e-mails] has made the cost of discovery soar").

Indeed, this motion to compel is in reality an attempt to wage a one-sided war of attrition against Kraft Foods in hopes of increasing the costs of this litigation and extracting a favorable settlement.  As one federal court put it, the scour-the-earth discovery tactic championed by Plaintiffs is inconsistent with the fundamental nature of pre-certification discovery:

> Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification. Unnecessarily broad discovery will not benefit either party. To spend either three million or three hundred thousand dollars, in order to move a mountain of documents and statistics from the defendant's facilities to the plaintiffs' offices, would be, in this pre-certification context, a wasteful and unjustifiable action.

*National Organization for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980).

Finally, the unnecessary expense Plaintiffs seek to impose on Kraft Foods is particularly inappropriate because they have not been diligent in seeking a remedy for the supposedly deficient production.   Despite the abbreviated discovery schedule set by the court and the impending class certification deadlines, Plaintiffs waited two months after receiving Kraft Foods' discovery responses to make any form of objections. By the time Plaintiffs sent their first discovery letter on Saturday, April 30, it was less than two weeks before the May 13 class certification deadline.  *See* Ex. H, April 30, 2011 Letter.  Following the May 10 meet and confer, Plaintiffs then waited until May 26 — nearly two weeks *after* they filed their class certification motion — to provide Kraft Foods with their portion of this Rule 37 motion to compel.  *See* Ex. I, May 26, 2011 E-mail.

Plaintiffs had a responsibility to exercise diligence in obtaining the discovery responses they now seek.  *See, e.g.*, *Jackson v. Bailey*, 305 Fed. Appx. 246, 248-49 (5th Cir. 2008) ("a continuance should not be granted when the non-moving party has not diligently pursued discovery of the evidence"); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647  (7th Cir. 2001) (ruling that delay in filing motion to compel to address perceived inadequacies until after summary judgment motion was filed warranted denial of motion to compel).  It is now too late for Plaintiffs to seek discovery on class certification issues weeks after they have already filed their motion.  Indeed, Kraft Foods would be fundamentally prejudiced in responding to Plaintiffs' Motion for Class Certification if Plaintiffs could simply attempt to elicit new facts or arguments in their reply brief.

## GENERAL DISCOVERY DISPUTES

### A.    THE PROPER TEMPORAL SCOPE OF DISCOVERY

Because Plaintiffs seek certification of a class period beginning January 1, 2000, Plaintiffs' discovery requests seek information concerning that time period,

17

such as the labels and advertisements of the six challenged brands that were in use during the class period.

Kraft has lodged a general objection to all Plaintiffs' discovery requests to the extent they seek information beginning January 1, 2000, as beyond the applicable statute of limitations, and on the basis of that objection, has agreed to provide only information going back four years from the date the initial Complaint was filed on February 11, 2010.

### 1.      Plaintiffs' Position On The Proper Temporal Scope

Kraft's objection is improper. The SAC alleges delayed discovery (SAC ¶¶ 140-144), and asserts a putative class of purchasers of the Kraft products at issue in this case beginning January 1, 2000. Plaintiffs' delayed discovery allegations are properly pled. *See, e.g.*, *Henderson v. J.M. Smucker Co.*, No. CV 10-4524-GHK (VBKx), 2011 U.S. Dist. LEXIS 27953, at *6-8 (C.D. Cal. Mar. 13, 2011) (after discussion of nearly identical allegations in class action, holding "[a]s to all statute of limitations issues, the motions are [denied]."); *Yumul v. Smart Balance, Inc.*, 733 F.Supp. 2d 1134, 1140-44 (C.D. Cal. 2010) (permitting delayed discovery allegations to proceed in class action so long as Plaintiff properly pled manner of discovery).

Kraft had several opportunities to challenge the alleged class period at the pleading stage, but after multiple rounds of detailed briefing, the Court denied Kraft's Motion to Dismiss the SAC in full. *Red*, 2011 U.S. Dist. LEXIS 26893. Thus, the currently-operative Complaint—on which Plaintiffs move for class certification and are entitled full discovery—alleges a class beginning in January 2000. Since the proper scope of discovery is all matters "relevant to the claim or defense of any party," Fed. R. Civ. P. 26(b), Kraft's objection is improper.

In addition Kraft's Answer (Dkt. No. 83) asserts eight affirmative defenses, ***but does not even assert a statute of limitations defense***. It is improper for Kraft to

assert this defense as a shield against relevant discovery to which Plaintiffs are entitled to help demonstrate the bases for certification.

Even if Kraft were correct that the statute of limitations applied, Kraft is not entitled to make a unilateral decision as to the cut-off date of the discovery it will produce, and documents and testimony predating the limitations period would, in any event, still be relevant to Plaintiffs' claims.

Despite that their requested time scope of discovery is proper, during meet-and-confer conferences, Plaintiffs offered a reasonable compromise viewed favorably elsewhere, namely that Kraft produce responsive information for three of the six years in dispute, for example, 2000, 2002, and 2004.  *See Perez v. State Farm Mut. Auto Ins. Co.*, 2011 U.S. Dist. LEXIS 41009, at *13 (N.D. Cal. Apr. 11, 2011).  Kraft rejected this offer of compromise and proposed nothing in return.[5]

Kraft's reluctance to produce documents predating 2006 is unsurprising because that is the date the FDA began requiring the disclosure of trans fat in the Nutrition Facts box of packaged foods, which caused manufacturers like Kraft to reformulate their products to take advantage of the FDA's permitting the disclosure of trans fat as "0g" when a product contains up to 0.49 grams per serving. Kraft's aversion to showing product labels with health and wellness claims during a time when the products were even *less* healthy is, nevertheless, an improper basis on which to withhold production of relevant information.

Plaintiffs therefore seek: (1) with respect to Plaintiffs' requests to which Kraft produced responsive documents beginning in 2006, an order that Kraft complete its production by producing the withheld documents dating to January 1,

---

[5] Parties sometimes agree to limit discovery to the time period covered by an applicable document retention policy. *See, e.g., Hocking v. City of Roseville*, No. CIV S-06-0316 RRB EFB, 2007 U.S. Dist. LEXIS 81540, at *11 (E.D. Cal. Nov. 2, 2007). That was not even an option here, though, because Kraft has refused to produce its document retention policy.

2000,[6] and (2) with respect to any further requests for production raised herein, and for which the Court orders Kraft to respond, an order that Kraft produce a full response, beginning January 1, 2000.

## 2. Defendant's Position On The Proper Temporal Scope

Plaintiffs seek documents reaching back over a decade — to the year 2000 — even though claims arising pre-2006 are barred by the statute-of-limitation. The over-breadth of the proposed class period is appropriately raised at the class certification stage. For example, a federal judge in the Central District of California recently deferred ruling on the proper class period until the class certification stage. *See Henderson v. J.M. Smucker*, No. 10-cv-4524 (C.D. Cal. March 17, 2011) (King, J.) (indicating the court would wait until the class certification stage to consider the argument that tolling cannot be alleged on behalf of putative class members).

As noted in Kraft Foods' discovery objections, Plaintiffs' claims for 2006-2010 are within the four-year statute-of-limitation period for CLRA claims. Plaintiffs, however, bear the burden of proving that their claims for earlier years could not have been discovered and that the statute of limitations should be tolled. *See, e.g., O'Connor v. Boeing North American, Inc*., 311 F.3d 1139, 1150 (9th Cir. 2002) ("Plaintiffs have the burden of proof at trial to establish that they are entitled to the benefit of the discovery rule . . . ."); *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1030, 98 Cal. Rptr. 2d 661, 669 (Cal. Ct. App. 2000) ("because the [discovery] rule is a nonstatutory exception to a limitation period, [plaintiff] has the burden of proof to bring itself within it").

Kraft Foods has denied Plaintiffs' allegations concerning the class period and has properly raised this as a disputed issue. *See* Answer ¶¶ 140-144. To date,

---

[6] This includes request nos. 1, 5, 8, 13-15, 17-22, 37-42, 55-58, and 61.

Plaintiffs have put forth no proof, and have only made blanket legal conclusions of the sort that were deemed inadequate by Judge Morrow in *Yumul v. Smart Balance*, No. 10-cv-927 (C.D. Cal. July 30, 2010) (noting that plaintiffs are required to plead the time and manner of discovery).   Given that Plaintiffs have failed to provide any evidence that would carry their burden of proof to expand the class period beyond the applicable statute of limitations, it would be unreasonably burdensome and costly to require Kraft Foods to provide discovery that exceeds the four year period set forth in the CLRA.   Additionally, it is unnecessary to the resolution of the Motion for Class Certification.   Plaintiffs have not pleaded any reliance on packaging prior to 2006, and in fact all of the statements on which they claim to have relied are from packaging circa 2010.

## B.   THE PROPER GEOGRAPHIC SCOPE OF DISCOVERY

Because Plaintiffs seek certification of a nationwide class, some discovery requests seek information relating to Kraft's nationwide sales. Kraft has lodged a general objection to Plaintiffs' requests to the extent they seek documents related to Kraft's marketing, sale, and distribution of the challenged products in states other than California.

### 1.   Plaintiffs' Position On Geographic Scope

Like Kraft's objection to the time scope of discovery, Kraft's objection to producing discovery relevant to its nationwide marketing and sale of its products is improper where Plaintiffs seek to represent a nationwide class and the Court has permitted their SAC to proceed.   *See*, *e.g.*, *Union Mut. Life Ins. Co. v. Super. Ct.*, 80 Cal. App. 3d 1, 10-13 (1978) (allowing nationwide discovery where plaintiffs merely expressed an intention to amend the complaint to include a nationwide class action). Even if Kraft objects to the certification of a nationwide class, it is firmly established "that the premature determination of the validity or invalidity of

21

a class action is not desirable. . . . Such issues should not be litigated in the context of a discovery order." *Id.* at 12.  The proper inquiry is whether such information is relevant to Plaintiffs' claims.  Because Plaintiffs seek certification of a nationwide class, it is improper for Kraft to unilaterally limit its production of documents to a single state.

### 2.     Defendant's Position On Geographic Scope

Kraft Foods provided Plaintiffs with all documents necessary for class certification.  In a class certification motion involving consumer misrepresentation claims, the central documents are those that were seen and potentially relied upon by putative class members. Here, Kraft produced those critical documents — the actual advertisements and packaging that may have been seen by prospective class members nationwide — to Plaintiffs.  Kraft Foods further advised Plaintiffs that those advertisements and packaging were used nationwide, not just in California. Kraft Foods also produced business plans that addressed marketing the products across the country and studies on the reactions of consumers to the products and their marketing. In short, Plaintiffs have all of the nationwide documents that are necessary to determine class certification.

In any event, Plaintiffs' burdensome requests for nationwide discovery are unnecessary because the geographic scope of the class can be resolved based on the face of the complaint as a matter of law.  Regardless of whether the marketing materials across the country were the same or varied, the variation in state consumer protection statutes renders a nationwide class impractical.

For example, many states' consumer protection statutes impose some knowledge or intent requirement.[7]  Further, some states require proof of actual

---

[7] *See, e.g.*, Colo. Rev. Stat. 6-1-105(1)(e), (g), (u) (knowingly); Idaho Code § 48-603 (knowledge); 815 Ill. Comp. Stat. 505/2 (construed in *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992) (intent to induce reliance)); Kan. Stat. Ann. §§ 50-626(a), (b)(2)-(4) (willful,

22

*Red et al. v. Kraft Foods Inc. et al.*, Case No. 2:10-cv-01028 GW (AGRx)
JOINT STIPULATION RE PLAINTIFFS' MOTION TO COMPEL RESPONSES
TO PLAINTIFFS' DISCOVERY REQUESTS AND PRODUCE WITNESSES PURSUANT TO RULE 30(B)(6)

reliance on the part of individual class members, while others do not.  As in *Corder v. Ford Motor Co.*, 2011 WL 30363 (W.D. Ky. Jan. 5, 2011), this distinction would create significant challenges for managing the class and provides a strong basis for the court to reject a nationwide class – without delving into any potential differences in the marketing of Kraft Foods products in all 50 states.

A nationwide class also would require conducting individualized inquiries into the state of mind of each consumer from certain states.  *See id.* As the documents that have already been produced show, consumers have many reasons for purchasing Kraft Foods' products. Delving into the reliance inquiry on an individualized basis, as required by many states' consumer protection laws, would undermine any claimed commonality or predominance.

## REQUESTS FOR PRODUCTION IN DISPUTE

### A.    REQUEST FOR PRODUCTION NO. 2

All of YOUR document retention policies in effect during the CLASS PERIOD.

**RESPONSE TO RFP NO. 2**

Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as seeking documents that are not relevant to class certification issues. Kraft Foods further objects to this Request on the grounds that it is overly broad and unduly

---

knowing, or with reason to know); Mich. Comp. Laws Ann. § 445.911(6) (intent to deceive); Nev. Rev. Stat. Ann. 598.0915 (knowingly); N.J. Stat. Ann. § 56:8-2 (knowledge and intent for omissions); Or. Rev. Stat. § 646.638(1) (willful for damages); Utah Code §§ 13-11-4(2), 13-11-5(3) (knowing or intentional); W. Va. Code § 46A-6-102(M) (intent to induce reliance).  *See also Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 553 (D. Minn.1999) (intent to induce reliance) (Minnesota law); *Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. 2002) (knowledge or reckless disregard); *Cooper v. GGGR Invest., LLC*, 334 B.R. 179, 188 (E.D. Va. 2005) (Virginia law) (intent).

burdensome because the temporal limit on the documents requested exceeds the applicable statute of limitations.

**Plaintiffs' Position On RFP No. 2**

Document retention policies are routinely produced early in discovery and are relevant to class certification because they will allow Plaintiffs to ascertain the completeness of any production and the extent to which they will need to question Kraft's witnesses about documents that once existed but were destroyed or that were destroyed by Kraft, but may be in the possession of other parties. *See*, *e.g.*, *Uribe v. McKesson*, 2010 U.S. Dist. LEXIS 35359, at *7 (E.D. Cal. Mar. 8, 2010) (if discoverable documents were not produced, "[Defendant] must . . . explain [its] document retention policy" so that Plaintiff could evaluate whether Defendant upheld his "obligation to conduct a reasonable inquiry to determine whether [the documents] are in his custody or control and produce them, if found").

Moreover, Pursuant to Fed. R. Civ. P. 26(b)(1), Plaintiffs are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence . . . of any documents or other tangible things." Kraft's document retention policy is necessary for Plaintiffs to determine the existence or nonexistence of relevant documents and is thus clearly discoverable under Rule 26(b)(1).

Notably, one Kraft marketing Director testified Kraft's policy requires the preservation of documents for 15 years (Ex. 11, Strobel Dep. Tr. 252:13-22), while another testified he destroyed documents recently, and could not remember whether he destroyed documents relating to *this case* (Ex. 12, Low Dep. Tr. 196:16-201:6).

**Defendant's Position On RFP No. 2**

The document retention policy has no bearing on class certification. Nonetheless, Kraft Foods will endeavor to locate and provide this policy.

24

## B.    REQUESTS FOR PRODUCTION NOS. 3-4

(3) Organization charts sufficient to show YOUR employees who, during the CLASS PERIOD, were involved in the MARKETING, manufacturing, or developing any of the PRODUCTS.

(4) DOCUMENTS sufficient to show the identity of any suppliers, vendors, or distributors involved in the MARKETING, manufacturing, or developing of any of the PRODUCTS during the CLASS PERIOD.

## RESPONSE TO RFP NOS. 3-4

(3) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as not relevant to class certification issues. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence because there is no geographic limit on the documents requested, and the temporal limit on the documents requested exceeds the applicable statute of limitations.

(4) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as not relevant to class certification issues. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information about "suppliers" and "vendors" related to Kraft Foods' manufacturing or developing of the products.

### Plaintiffs' Position On RFP Nos. 3-4

The identification of Kraft's employees, suppliers and vendors involved in marketing, manufacturing or developing the Kraft products at issue in this case is calculated at obtaining admissible evidence, since those persons may testify to relevant facts or be the custodian of, and able to produce, relevant documents. *See*

Fed. R. Civ. P. 26(b)(1); *see also Thornberry v. Delta Air Lines*, 1978 U.S. Dist. LEXIS 18601, at *15-16 n.5 (N.D. Cal. Apr. 3, 1978) (analyzing organization chart in determining whether to certify a class); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1050 (E.D. Cal. 2010) (analyzing organization chart in determining whether to allow a party to depose a witness).[8]

### **Defendant's Position On RFP Nos. 3-4**

As an initial matter, Plaintiffs do not argue that this information is necessary for class certification. That alone should be sufficient grounds to deny their request. But these requests are improper even for merits discovery. Plaintiffs argue that this information may ultimately lead them to some evidence relevant to their claims. The relevance of these requests is highly questionable. For example, it is unclear what evidence an employee, supplier, or vendor involved in the manufacturing process might have in an action about allegedly deceptive packaging.

What is clear, however, is that the requests call for a massive undertaking. Kraft Foods has over 37,000 employees in North America, the majority of whom are involved in some aspect of marketing, manufacturing, or developing Kraft Foods' products. *See* Declaration of Ellen M. Smith ("E. Smith Dec.") at ¶ 4. There is no central organization chart that shows all Kraft Foods employees, even within the Snacks Business Unit that is responsible for the products at issue. *Id.* Additionally, many of the positions in the Biscuit Unit experience frequent

---

[8] Moreover, Kraft objected to the request for "organization charts" as ambiguous. In their meet-and-confer letter, Ex. 7, Plaintiffs told Kraft that, "if there are multiple types of its documents which Kraft understands to be 'organization charts,' responsive to this request, Kraft should produce all such charts. Alternatively, if Kraft does not understand 'organization chart,' please advise us the specific ambiguity so that we may rephrase the request more specifically." Kraft did not ask for any clarification of the term "organization chart."

turnover.  For example, within the brand teams that are involved in developing marketing plans for the products, employees change positions frequently.  *See* Ex. J, Excerpts from Deposition of Jim Low ("J. Low Tr.") at 54:13-55:3.  Attempting to cobble together the employee information sought by Plaintiffs would be no small feat.  Attempting to gather documents sufficient to show all of the suppliers, vendors, and distributors involved in virtually any manner with any of these products would be an equally herculean task.

Where even a "compromise," such as a documents related to employees in the Biscuit Unit rather than across all of Kraft Foods, would require an extensive effort, it is appropriate to deny such discovery until after class certification.  *See National Organization for Women, Farmington Valley Chapter v. Sperry Rand Corp.*, 88 F.R.D. 272, 276 n.6 (D. Conn. 1980) (denying discovery of organizational charts showing all departments and divisions of company, the person responsible for the division or department, and any changes thereto).

## C.      REQUESTS FOR PRODUCTION NOS. 12-13, 16, 44-54, 59

(12) All DOCUMENTS or COMMUNICATIONS sent or received by YOU from or to any health care professional, science-related organization, or nutrition-related organization regarding the PRODUCTS, including, but not limited to, letters, correspondence and reports.

(13) All DOCUMENTS that refer to or discuss the United States Food and Drug Administration and the advertising, MARKETING, sale or distribution of the PRODUCTS.

(16) All DOCUMENTS RELATING TO, constituting or comprising substantiation of claims made by YOU about the PRODUCTS to third parties during the CLASS PERIOD, including requests by third parties for claims substantiation and YOUR response(s).

(44) DOCUMENTS sufficient to show the amount of partially hydrogenated oil used in each of the PRODUCTS during the CLASS PERIOD, including any changes thereto.

(45) DOCUMENTS sufficient to show the amount of high fructose corn syrup used in each of the PRODUCTS during the CLASS PERIOD, including any changes thereto.

(46) DOCUMENTS sufficient to show the makeup of vegetable powder used in each of the PRODUCTS during the CLASS PERIOD, including any changes thereto.

(47) DOCUMENTS sufficient to show the amount of honey used in each of the PRODUCTS during the CLASS PERIOD, including any changes thereto.

(48) DOCUMENTS sufficient to show the amount of unbleached enriched flour used in each of the PRODUCTS during the CLASS PERIOD, including any changes thereto.

(49) DOCUMENTS sufficient to show the amount of graham flour used in each of the PRODUCTS during the CLASS PERIOD, including any changes thereto.

(50) DOCUMENTS sufficient to show the amount of ginger used in each of the PRODUCTS during the CLASS PERIOD, including any changes thereto.

(51) DOCUMENTS sufficient to show the amount of molasses used in each of the PRODUCTS DURING the CLASS PERIOD, including any changes thereto.

(52) DOCUMENTS sufficient to show the amount of disodium 5'-guanylate used in each of the PRODUCTS during the CLASS PERIOD, including any changes thereto.

(53) DOCUMENTS sufficient to show the amount of monosodium glutamate used in each of the PRODUCTS during the CLASS PERIOD, including any changes thereto.

28

(54) DOCUMENTS sufficient to show the amount of hydrolyzed soy and wheat protein used in each of the PRODUCTS during the CLASS PERIOD, including any changes thereto.

(59) All DOCUMENTS RELATING TO the effects of artificial trans fat on human or animal health.

**RESPONSE TO RFP NOS. 12-13, 16, 44-54, 59**

(12) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as seeking documents that are not relevant to class certification issues. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

(13) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to this Request on the grounds that it seeks all documents that "refer to or discuss the United States Food and Drug Administration" or which refer to or discuss the "sale" or "distribution" of products as vague, ambiguous, overly broad, unduly burdensome and not relevant to class certification issues. In particular, this Request is overly broad and unduly burdensome because there is no geographic or temporal limit on the documents requested, and it seeks all documents which refer to or discuss the FDA and the "marketing, sale or distribution" of the products at issue. Further, Kraft Foods specifically objects to the extent that this Request calls for the disclosure of trade secrets or confidential, proprietary, or competitively sensitive information and will produce such documents only pursuant to an appropriate protective order. Subject to and without waiving its General Objections, Kraft Foods will make available to Plaintiffs at a mutually agreed time and place non-privileged documents of its advertising and marketing in California of the Products identified

in the Second Amended Complaint during the time period covered by the applicable statute of limitations.

(16) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as seeking documents that are not relevant to class certification issues. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, and ambiguous in that the Request does not identify for which "claims" Plaintiffs seek responsive information. Further, this Request is overly broad and unduly burdensome because the temporal limit on the documents requested exceeds the applicable statute of limitations.

(44-54) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as seeking documents that are not relevant to class certification issues. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, this Request is overly broad and unduly burdensome because there is no geographic limit on the documents requested, and the temporal limit on the documents requested exceeds the applicable statute of limitations. Further, Kraft Foods specifically objects to the extent that this Request calls for the disclosure of trade secrets or confidential, proprietary, or competitively sensitive information.

(59) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as seeking documents that are not relevant to class certification issues. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, this Request is overly broad and

unduly burdensome because there is no geographic or temporal limit on the documents requested. Further, Kraft Foods specifically objects to the extent that this Request calls for the disclosure of trade secrets or confidential, proprietary, or competitively sensitive information.

### Plaintiffs' Position On RFP Nos. 12-13, 16, 44-54, 59

Plaintiffs seek class certification pursuant to Rule 23(b)(2), which requires them to demonstrate that Kraft has "acted or refused to act in a manner generally applicable to all class members, rendering injunctive or declaratory relief appropriate to the class as a whole." This is a proper inquiry of certification discovery. *See Thompson v. Jiffy Lube Int'l*, No. 05-1203-WEB , 2006 U.S. Dist. LEXIS 27837, at *6 n.3 (D. Kan. May 1, 2006) ("depending on plaintiffs' class theory, discovery may also cover issues related to whether . . . the party opposing class certification has acted or refused to act on grounds applicable to the class (Rule 23(b)(2))").

The information sought in these requests is necessary so that Plaintiffs can demonstrate viable proof on a class-wide basis that Kraft knew of the adverse effects of trans fat and other objectionable substances in its products. *See In re Methionine Antitrust Litig.*, 2003 U.S. Dist. LEXIS 14828, at *15 (granting Defendant's motion to decertify the class where "[Defendant did] not have [a] 'colorable' method for proving antitrust injury, and the extent of that injury, on a class-wide basis").

Notably, Kraft agreed to produce documents in response to request no. 13, which calls for Kraft marketing documents that also discuss the FDA. Such documents are likely to show Kraft's internal policies and procedures—official or not—relating to compliance with federal regulations, a key issue in this case involving Kraft's health and wellness claims on the packaging of six of its brands. During meet and confer calls, Kraft represented it was not withholding any

31

communications between Kraft and the FDA, but the request is broader than that, and would include any internal Kraft marketing documents *discussing* the FDA. And, Kraft admitted it did not search the files of its General Counsel, and apparently excluded many other custodians, though Kraft will not provide a list of the custodians whose files it did search.

In addition, requests for information that would show Kraft's awareness of the health effects of the six challenged brands, or the objectionable substances in those brands at issue here, would inform the Court's decision on whether injunctive relief—Plaintiffs' request that Kraft either remove these dangerous substances from its products or stop advertising them as promoting health and wellness—or monetary relief predominates, a key inquiry in Rule 23(b)(2) analysis. Requests 12 and 16 are narrowly tailored at obtaining information detailing the health effects of the challenged Kraft products, while 45-54 ask for basic information about the amount of challenged substances in the products, which weighs on the degree to which they are unhealthy or dangerous. Plaintiffs believe these documents will help substantiate their allegations that trans fat is extremely dangerous, that other substances in the amounts in the Kraft products are unhealthy and objectionable, and therefore that the injunctive relief Plaintiffs seek is more important than money damages.

Finally, the proportions of ingredients in the Kraft Products, and any changes thereto during the proposed class period informs the commonality and typicality requirements of Rule 23, since any substantial differences in the formula of the products during the class period may exclude certain groups and/or require certain subclasses. This presents an equally valid but independent reason for compelling Kraft to respond to requests 45-54.

### **Defendant's Position On RFP Nos. 12-13, 16, 44-54**

Plaintiffs seek a wide variety of internal Kraft Foods documents that have no relevance to class certification.  Plaintiffs largely rely on boilerplate language that their document requests are relevant to "commonality," "typicality" or other Rule 23 requirements — without specifically articulating how or why they are relevant to class certification.  Plaintiffs cannot cite the Rule 23 requirements and blithely assert that their requests are relevant.

<u>RFP Nos. 12, 13 and 16:</u>  Plaintiffs demand that Kraft Foods search for and produce for any communications with "any health care professional, science-related organization, or nutrition-related organization" about over a dozen Kraft Foods snacks since 2000.   They also want documents that "refer to or discuss" the FDA in connection with Kraft Foods products and that relate to "substantiation of claims" made by Kraft.  Plaintiffs claim that these documents are relevant because their lawsuit questions "compliance with federal regulations."  That inquiry may possibly be related to the *merits* of their lawsuit, but the issue of FDA compliance has no relevance to the discrete issue of class certification under Rule 23.

<u>RFP Nos. 44-54, 59</u>:  Plaintiffs also want a trove of documents about the specific amount of particular ingredients in the Kraft Foods products and the "effects of artificial trans fat on human or animal health."

They argue that the information sought is "necessary so that Plaintiffs can demonstrate viable proof on a class-wide basis that *Kraft knew* of the adverse effects of trans fat and other objectionable substances in its products" (emphasis added).  This is a red herring.  The critical evidence in a false advertising case is not the defendants' state-of-mind, but rather the advertising itself and the *plaintiffs*' state-of-mind.  *See Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003), *quoted by Plaintiffs in* Mem. in Support of Motion for Class Certification (Dkt. 95) at 18.  In any event, Kraft Foods' state-of-mind is not relevant for purposes of class certification.

Further, Plaintiffs harp on the health effects of the various ingredients, but they have not stated a cause of action for personal injury.  Their purported injury is not that they were physically harmed by the Kraft Foods products, but that they paid more for them than they would have paid had they known of the presence of certain ingredients.  Documents involving the health effects of these ingredients, and what Kraft Foods knew or did not know about them, are therefore not only unnecessary to class certification, but irrelevant to even the merits of the suit.

Plaintiffs' requests for the precise amount of challenged ingredients are also beside the point because they already have all of the information necessary for class certification.  The precise amount of these ingredients contained in the products is not relevant to class certification, and its relevance to even the merits of the action is questionable. The proportions and changes to the ingredients are apparent from the packaging, which Plaintiffs already have.  Plaintiffs' claims have two fundamental premises:  (1) *any* amount of PHVO/trans fat is harmful; and (2) the products contain *more* of a certain undesirable ingredient than an ingredient that plaintiffs prefer. Plaintiffs' counsel can determine whether either of these assertions applies to a particular product at a particular time simply by looking at the ingredient list on the package.  *See* 21 C.F.R. § 101.4(a)(1).   Further, it is premature to require Kraft Foods to disclose what amounts to a trade secret when a class has not yet even been certified.

**D.     REQUESTS FOR PRODUCTION NOS. 23, 36**

(23) All DOCUMENTS which reflect, summarize, analyze or discuss the pricing of the PRODUCTS, including wholesale or retail prices.

(36) For each of YOUR PRODUCTS, DOCUMENTS sufficient to show or calculate YOUR total profit from the sale of PRODUCTS in the United States for each year in the CLASS PERIOD.

34

**RESPONSE TO RFP NOS. 23, 36**

(23) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as seeking documents that are not relevant to class certification issues. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, this Request is overly broad and unduly burdensome because the there is no geographic or temporal limit on the documents requested. Further, Kraft Foods specifically objects to the extent that this Request calls for the disclosure of trade secrets or confidential, proprietary, or competitively sensitive information.

(36) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as seeking documents that are not relevant to class certification issues. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, this Request is overly broad and unduly burdensome because the temporal limit on the documents requested exceeds the applicable statute of limitations. Further, Kraft Foods specifically objects to the extent that this Request calls for the disclosure of trade secrets or confidential, proprietary, or competitively sensitive information.

**Plaintiffs' Position On RFP Nos. 23, 36**

The pricing of and Kraft's profit on the challenged products is necessary so Plaintiffs can prove they can calculate damages on a class-wide basis, as they are required to do in order to have a class certified.  *See*, *e.g.*, *Pecover v. Elec. Arts Inc.*, 2010 U.S. Dist. LEXIS 140632, at *66 (N.D. Cal. Dec. 21, 2010) (determining whether the plaintiff could prove, *on a class-wide basis*, that

35

increased costs were passed on to the consumers in deciding whether the typicality and adequacy requirements of class certification were satisfied); *In re Methionine Antitrust Litig.*, 2003 U.S. Dist. LEXIS 14828, at *10-11 ("The question, then, is whether what [Plaintiff's expert] did do is sufficient to support a finding that the class was damaged by the price-fixing conspiracy and is sufficient to support a finding on a *class wide basis* of the amount or amounts of the overcharge. If it is not, common questions of law or fact may not predominate, making maintenance of the class inappropriate." (emphasis added)).

### **Defendant's Position On RFP Nos. 23, 36**

Plaintiffs offer the bare-bones explanation that the requested pricing and profit information is relevant to show that they can calculate damages on a class-wide basis. But they do not explain how this request goes to whether the damages can be calculated on a class-wide basis. The cases cited by Plaintiffs (*Pecover* and *Methionine*) are simply inapposite. Both cases involved antitrust pricing conspiracies, and whether an injury had occurred was entirely dependent on establishing the existence of a complex overpricing strategy. In a consumer class action like this one, the profits or pricing of the product is not relevant to whether the consumer was deceived by the alleged misrepresentation.

### E.   REQUESTS FOR PRODUCTION NOS. 30-34

(30) For each of YOUR PRODUCTS, DOCUMENTS sufficient to show the amount and percentage of units manufactured in the United States that were manufactured entirely in California for each year of the CLASS PERIOD.

(31) For each of YOUR PRODUCTS, DOCUMENTS sufficient to show the amount and percentage of units manufactured in the United States that were manufactured partly in California for each year of the CLASS PERIOD.

(32) For each of YOUR PRODUCTS, DOCUMENTS sufficient to show the amount and percentage of your sales in the United States that were sold in California for each year of the CLASS PERIOD.

(33) For each of YOUR PRODUCTS, DOCUMENTS sufficient to show the amount and percentage of funds spent on television advertisements in California media markets relative to the amount and percentage of funds spent on television advertisements that did not reach California media markets, for each year during the CLASS PERIOD.

(34) For any advertisement of any PRODUCT that ran on television during the CLASS PERIOD, DOCUMENTS sufficient to show (a) the location where the advertisement was produced and filmed, and (b) the company or companies that produced and filmed the advertisement.

**RESPONSE TO RFPS NOS. 30-34**

(30) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as seeking documents that are not relevant to class certification issues or any other issues in this case. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

(31) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as seeking documents that are not relevant to class certification issues or any other issues in this case. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.

(32) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as

seeking documents that are not relevant to class certification issues. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, this Request is overly broad and unduly burdensome because the temporal limit on the documents requested exceeds the applicable statute of limitations. Further, Kraft Foods specifically objects to the extent that this Request calls for the disclosure of trade secrets or confidential, proprietary, or competitively sensitive information. To the extent Kraft Foods maintains such information, Kraft Foods will propose a stipulation in lieu of production of documents.

(33) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as seeking documents that are not relevant to class certification issues or any other issues in this case. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, this Request is overly broad and unduly burdensome because the temporal limit on the documents requested exceeds the applicable statute of limitations. Further, Kraft Foods specifically objects to the extent that this Request calls for the disclosure of trade secrets or confidential, proprietary, or competitively sensitive information.

(34) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Request as seeking documents that are not relevant to class certification issues. Kraft Foods further objects to this Request on the grounds that it is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, this Request is overly broad and unduly burdensome because the temporal limit on the documents requested

38

exceeds the applicable statute of limitations. Kraft Foods further objects to this Request as seeking information that has no relevance to any claims made in Plaintiffs' Second Amended Complaint. Further, Kraft Foods specifically objects to the extent that this Request calls for the disclosure of trade secrets or confidential, proprietary, or competitively sensitive information.

### Plaintiffs' Position On RFP Nos. 30-34

Plaintiffs seek certification of a nationwide California law class, which requires them to show application of California law to a nationwide class would not be so unfair to Kraft as to offend Due Process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985). *See also Pecover*, 2010 U.S. Dist. LEXIS 140632, at *48 ("Before certifying a nationwide class, the court must determine whether the state has a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that choice of . . . [substantive state] law is not arbitrary or unfair." (internal quotes omitted) (quoting *Shutts*, 472 U.S. at 821-22)).

Request Nos. 30-34 seek documents that would help Plaintiffs demonstrate applying California law to a nationwide class is fair. Courts have consistently held factors like the location of manufacturing, the amount of sales, and business contacts within a state are relevant to this inquiry. *See Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 339-40 (N.D. Cal. 2010) (applying California law to nationwide class where (a) 21% of the products were manufactured in California and (b) 19% of sales occurred in California); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008) ("[G]iven the volume of California automobile sales and the number of in-state dealerships, plaintiffs claim it is likely that more class members reside in California than any other state. Thus, plaintiffs' alleged contacts are sufficient to satisfy the test under Shutts."); *In re St. Jude Med., Inc.*, 2003 U.S. Dist. LEXIS 5188, at *27 n.9 (D. Minn. 2003) (application

39

of Minnesota law to nationwide class was fair under *Shutts* in part because defendant's manufacturing facilities were in Minnesota); *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 620 (location of defendant's advertising vendors in California weighed in favor of application of California law to nationwide class under *Shutts*); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613 (1987) (sufficient contacts where, in part, defendant's agents who prepared advertising and other misrepresentations at issue were located in California); *compare In re Hitachi TV Optical Block Cases*, 2011 U.S. Dist. LEXIS 135, at *20 (S.D. Cal. Jan. 3, 2011) (Denying certification of nationwide California law class in part because "the manufacturing process actually occurred at a plant in Mexico."); *Tidwell v. Thor Indus.*, 2007 U.S. Dist. LEXIS 21819, at *25 (S.D. Cal. Mar. 26, 2007) (finding insufficient contacts to support application of California law to nationwide class where manufacturing took place outside California).

After Plaintiffs cited these authorities to Kraft, it stated that it is "currently investigating how IRI data[9] is reported and whether it has any IRI data showing sales of the products at issue in California and nationwide." (Ex. 9.) Kraft has not committed to producing such information, though, nor represented that it is searching for other documents "sufficient to show" California and U.S. sales of the six brands during the proposed class period. And Kraft refused to produce information about its California manufacturing or its contacts with distributors, suppliers and vendors in California. Kraft should now be ordered to produce that information.[10]

---

[9] A subscription source of information about packaged food purchases, similar to A.C. Nielsen.

[10] Plaintiffs are amenable to a stipulation by which Kraft identifies for each of the past two years in which Kraft has complete information, (a) the percentage of United States sales of the products identified in the complaint that occurred in

### Defendant's Position On RFP Nos. 30-34

After undertaking an extensive inquiry, Kraft Foods has now been able to obtain some of the information sought by Plaintiffs.

In response to RFPs 30 and 31, Kraft Foods has confirmed that none of the products at issue were manufactured in California from 2006-2010.  *See* E. Smith Dec. at ¶¶ 8-14.   As Plaintiffs' own case law recognizes, this weighs heavily against a nationwide California law class.  *See In re Hitachi TV Optical Block Cases*, 2011 U.S. Dist. LEXIS 135, at *20 (S.D. Cal. Jan. 3, 2011) (Denying certification of nationwide California law class in part because "the manufacturing process actually occurred at a plant in Mexico."); *Tidwell v. Thor Indus.*, 2007 U.S. Dist. LEXIS 21819, at *25 (S.D. Cal. Mar. 26, 2007) (finding insufficient contacts to support application of California law to nationwide class where manufacturing took place outside California).

In response to RFP 32, Kraft Foods is willing to provide its best estimate of the percentage of the products sold in the United States were sold in California.

With regard to RFP 33, Kraft Foods has not located any documents that break down the amount and percentage of funds spent on television advertisements in California media markets relative to the funds spent on advertising that did not reach California media markets for each year during the class period.  Kraft Foods further questions the necessity of this information, as it is not mentioned in Plaintiffs' laundry list of factors that courts consider as relevant to the question of whether a California law class may be certified.

With regard to RFP 34, "the location where the advertisement was produced and filmed" and "the company or companies that produced and filmed the

_____

California, (b) the percentage of units of the products manufactured in California, and (c) a statement that the percentage of each did not vary by a material amount during the previous years of the proposed class period.

advertisement," Kraft Foods has not located any responsive documents.

## INTERROGATORIES IN DISPUTE

### A.    INTERROGATORY NO. 1

Identify all PRODUCTS YOU sold during the CLASS PERIOD, including but not limited to the PRODUCTS, that contained partially hydrogenated oil, and for each such PRODUCT (a) identify the amount of revenue YOU received from its sale during the CLASS PERIOD; and (b) the time period during the CLASS PERIOD which such products that contained partially hydrogenated oil were sold or manufactured by YOU.

### RESPONSE TO INTERROGATORY NO. 1

Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Interrogatory as seeking information that is not relevant to class certification issues. Kraft Foods specifically objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome. In particular, this Interrogatory is overly broad, unduly burdensome, and unlikely to lead to the discovery of relevant evidence because it asks Kraft Foods to identify and provide information regarding "all products" Kraft Foods sold that contained partially hydrogenated oil, while the Plaintiffs' claims are limited to specific products: Ritz Crackers, Original Premium Saltine Crackers, Vegetable Thins, Ginger Snaps, and Teddy Grahams. Further, this Interrogatory is overly broad and unduly burdensome because the temporal limit on the information requested exceeds the applicable statute of limitations.

### Plaintiffs' Position On Interrogatory No. 1

Kraft objects to this interrogatory on several grounds, including that it asks Kraft to identify products, other than those already identified in the SAC, which

42

contained trans fat during the class period. But this is exactly the information Plaintiffs seek by this interrogatory, and to which they are entitled, since they may amend their Complaint to the extent Kraft engaged in substantially related unlawful behavior. This information is relevant to defining the full scope of the class and issues in this case.

The law provides that Plaintiffs need not share the exact injury of every class member. *See*, *e.g.*, *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("The test of typicality is whether other members have the same or *similar* injury . . . ." (emphasis added)), quoting *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (Typicality is met if a plaintiff's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical."); *accord Rikos v. P&G*, No. 1:11-cv-226, 2011 U.S. Dist. LEXIS 49076, at *27-30 (S.D. Ohio) May 4, 2011) (plaintiff may state claims for related advertising he did not view). In sum, to the extent Kraft engaged in the same behavior with respect to other products (i.e., labeling them with health and wellness claims despite that they contain toxic artificial trans fat), Plaintiffs are entitled to know that, and to represent the class of consumers who purchased those products during the class period.[11]

Additionally, Kraft's revenue from the sale of the challenged products during the time period is relevant to CAFA jurisdiction (Plaintiffs must prove jurisdiction as part of their class certification motion), *see* 28 U.S.C. § 1332(d)(2), whether Kraft's behavior and Plaintiffs' damages are provable on a class-wide basis, *e.g.*, *Pecover*, 2010 U.S. Dist. LEXIS 140632, at *66; *In re Methionine Antitrust Litig.*, 2003 U.S. Dist. LEXIS 14828, at *10-11, and the propriety of

---

[11] Plaintiffs could also seek additional class representatives if necessary.

applying a nationwide California law class, *Shutts,* 472 U.S. at 821-22; *Pecover,* 2010 U.S. Dist. LEXIS 140632, at *48.

### **Defendant's Position On Interrogatory No. 1**

Plaintiffs admit that the purpose of seeking information about other products is not to obtain information relevant to the claims made, but *to identify potential claims other than those already identified in the SAC*.  Plaintiffs have had more than a year to determine whether they wished to amend their complaint to add additional products or claims.   Indeed, Plaintiffs have already amended their complaint on multiple occasions.   This request amounts to a fishing expedition.

Additionally, Plaintiffs do not have leave to file yet another amended complaint in what is already an unwieldy matter.  The Second Amended Complaint currently relates to more than a dozen products and raises a variety of complaints about each of them, focusing on the presence of trans fat but also including unrelated qualities that range from the proportion of whole wheat to white flour to what "honey" or "real vegetables" implies.   Having already responded to Plaintiffs' requests for thirteen disparate products, Kraft Foods should not be put to the burdensome effort and expense of providing discovery on products that are not even at issue in this matter.

## B.   INTERROGATORY NO. 3

Identify the amount of partially hydrogenated oil and trans fat for each PRODUCT during the CLASS PERIOD to the nearest one hundred milligrams and any changes thereto.

## RESPONSE TO INTERROGATORY NO. 3

Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Interrogatory as seeking information that is not relevant to class certification issues. Kraft Foods further objects to this Interrogatory on the grounds that it is

44

overly broad and unduly burdensome because the temporal limit on the documents
requested exceeds the applicable statute of limitations.

### Plaintiffs' Position On Interrogatory No. 3

In this action, Plaintiffs allege Kraft's advertising is misleading because of
the products' trans fat content. In order to show how they intend to prove their
claims on a class-wide basis, Plaintiffs are entitled to know exactly how much
trans fat was in each of the Kraft products throughout the class period. *See In re
Methionine Antitrust Litig.*, 2003 U.S. Dist. LEXIS 14828, at *15 (granting
Defendant's motion to decertify the class where "[Defendant did] not have [a]
'colorable' method for proving antitrust *injury*, and *the extent of that injury*, on a
class-wide basis" (emphasis added)). This discovery also goes to the requirement
of showing, pursuant to Rule 23(b)(2), that Kraft acted in a manner applicable to
the class, and that injunctive relief predominates, as discussed with respect to
document request nos. 12-13, 16, 44-54, and 59, above.

### Defendant's Position On Interrogatory No. 3

The precise amount of PHVO or trans fat is not relevant to the claims made
by Plaintiffs or to the issue of class certification.  Plaintiffs' claims have two
fundamental premises:  (1) *any* amount of PHVO/trans fat is harmful; and (2) the
products contain *more* of a certain undesirable ingredient than an ingredient that
plaintiffs prefer. Plaintiffs' counsel can determine whether either of these
assertions applies to a particular product at a particular time simply by looking at
the ingredient list on the package. See 21 C.F.R. § 101.4(a)(1). Plaintiffs already
have the packaging necessary to determine whether there have been any changes
that relate to the validity of their claims, and it is premature to require Kraft Foods
to disclose what amounts to a trade secret when a class has not yet even been
certified.

## C.    INTERROGATORY NOS. 4-6

(4) Provide on a quarterly basis the net sales and cost of goods sold attributable to the sale of the PRODUCTS in the United States during the CLASS PERIOD, as these terms are used in Generally Accepted Accounting Practices.

(5) Provide on a quarterly basis the advertising and promotional expenses attributable to the sale of the Products in the United States during the Class Period.

(6) State the amount of money YOU spent on the advertising and promotion of the PRODUCTS in the United States for each year in the CLASS PERIOD or fraction thereof.

## RESPONSES TO INTERROGATORY NOS. 4-6

(4) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Interrogatory as seeking information that is not relevant to class certification issues. Kraft Foods specifically objects to this Interrogatory as unduly burdensome and vague to the extent that it asks Kraft Foods to determine undefined "costs of goods sold." This Interrogatory is overly broad and unduly burdensome because the temporal limit on the information requested exceeds the applicable statute of limitations.

(5) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Interrogatory as seeking information that is not relevant to class certification issues. Kraft Foods specifically objects to this Interrogatory as unduly burdensome and vague to the extent that it asks Kraft Foods to determine undefined "advertising and promotional expenses" on a "quarterly basis." This Interrogatory also is overly broad and unduly burdensome because the temporal limit on the information requested exceeds the applicable statute of limitations.

(6) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Interrogatory as seeking information that is not relevant to class certification issues. Kraft Foods specifically objects to this Interrogatory as unduly burdensome and vague to the extent that it asks Kraft Foods to determine undefined "advertising and promotion" spending. This Interrogatory also is overly broad and unduly burdensome because the temporal limit on the information requested exceeds the applicable statute of limitations.

### Plaintiffs' Position On Interrogatory Nos. 4-6

Kraft objects and refuses to respond to these interrogatories on grounds including that the phrase "advertising and promotion" is supposedly vague. That term, however, is a standard industry term, and Kraft was unable during meet and confer conferences to articulate in what way the term is ambiguous.

Kraft's national advertising spending is relevant to the question of whether Kraft's behavior and Plaintiffs' damages may be proved on a class-wide basis, *e.g.*, *Pecover*, 2010 U.S. Dist. LEXIS 140632, at *66; *In re Methionine Antitrust Litig.*, 2003 U.S. Dist. LEXIS 14828, at *10-11, and to the issue of commonality. Kraft's sales and cost of goods sold are relevant to issues including commonality, the propriety of certifying a nationwide California law class, *e.g.*, *Shutts,* 472 U.S. at 821-22; *Pecover*, 2010 U.S. Dist. LEXIS 140632, at *48, and Plaintiffs' ability to prove damages on a class-wide basis.

### Defendant's Position On Interrogatory Nos. 4-6

Kraft Foods' advertising spending is not relevant to any "common" issue that Plaintiffs have alleged in their SAC.  Plaintiffs have submitted extensive discovery requests relating to marketing and advertising, yet they did not identify any allegedly deceptive advertising or marketing in the SAC and claim only to have relied upon statements on the packaging.  (*See* SAC ¶¶ 131-133.)  Moreover,

47

*Pecover* and *Methionine* were cases involving pricing conspiracies, and the need for pricing information in those cases was entirely distinguishable from Plaintiffs' claimed "need" for pricing information in this case.

Further, having taken the depositions of Amelia Strobel and James Low, Plaintiffs should now be aware that advertising and promotion are facilitated at many levels. *See, e.g.*, J. Low Tr. 112:3-18. Before Kraft Foods could begin to calculate the expenses sought by this request, it would be necessary for Plaintiffs to clarify which categories of expenses are encompassed in their request.

**D.     INTERROGATORY NO. 11**

Identify the name, address, and phone number of any advertising agencies YOU used during the CLASS PERIOD for services relating to the PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 11**

Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to Plaintiffs' Interrogatory as seeking information that is not relevant to class certification issues. Kraft Foods further specifically objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome because there is no geographic limit contained in this Interrogatory, and the temporal limit on the information requested exceeds the applicable statute of limitations.

**<u>Plaintiffs' Position On Interrogatory No. 11</u>**

Plaintiffs challenge Kraft's advertising in this action. The identity of third parties who may have relevant information about that advertising is therefore highly relevant and a proper interrogatory inquiry. *See* Fed. R. Civ. P. 26(b)(1) (Plaintiffs are entitled to "the identity and location of persons who know of any discoverable matter.") Kraft's refusal to respond on the purported basis that the interrogatory calls for irrelevant information is absurd and, we believe, obstructionist. Moreover, identifying the advertising agencies that worked on

advertising for the few products in this case over the course of ten years is not burdensome. And, as discussed above, the extent to which Kraft used vendors like advertisers in California is relevant to the question of whether the Court may apply California law to a nationwide class.

### Defendant's Position On Interrogatory No. 11

Plaintiffs have received copies of the actual advertising used in California during the time period covered by the applicable statute of limitations.  Given that Plaintiffs' Second Amended Complaint does not specify any advertisements that were allegedly relied upon, information about advertising agencies that may have developed advertising for Kraft Foods is not necessary for certifying a class based on the claims currently made.


### RULE 30(b)(6) DEPOSITION TOPICS

**A.      R. 30(b)(6) DEPOSITION TOPIC NO. 2**

The creation, makeup, formula, recipe, and/or ingredients in the Kraft PHVO Products throughout the Class Period

**RESPONSE TO R. 30(b)(6) DEPOSITION TOPIC NO. 2**

Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to this topic as seeking information that is not relevant to class certification issues and because it seeks information beyond the applicable statute of limitations. This topic is also overly broad and unduly burdensome because it contains no geographic limit on the information sought. Further, information about the "creation, formula, recipe" of the Products is not relevant to any of Plaintiffs' claims, and the ingredients of the Products are fully disclosed and known to Plaintiffs.

### Plaintiffs' Position on R. 30(b)(6) Deposition Topic No. 2

Plaintiffs allege Kraft's advertising of the Kraft products was misleading, in

49

part, because of their composition. While Kraft asserts "the ingredients of the Products are fully disclosed and are known to Plaintiffs," this request seeks testimony about more than just the ingredients in the products, including, for example, the proportions and any changes thereto. That information informs the commonality and typicality requirements of Rule 23, since any substantial differences in the formula of the products during the class period may exclude certain groups and/or require certain subclasses. In addition, as discussed above, the health effects of the products, information which may be derived from an understanding of their makeup, formula, recipe and ingredients, is relevant to the Court's decision whether to certify under Rule 23(b)(2).

### Defendant's Position on R. 30(b)(6) Deposition Topic No. 2

As already discussed, Plaintiffs have long had the information needed on this issue to determine the commonality and typicality requirements of Rule 23(b)(2) and to have determined whether to seek subclasses.  The proportions and changes to the ingredients are apparent from the packaging, which Plaintiffs already have.  Further, Plaintiffs' suggestion that this topic is relevant to health effects ignores that Plaintiffs have not asserted a cause of action for personal injury.  The crux of Plaintiffs' claims is that they paid more for these products than they would have paid absent the allegedly deceptive packaging.

**B.   R. 30(b)(6) DEPOSITION TOPIC NOS. 3-6, 11**

(3) The manufacture and distribution of the Kraft PHVO Products throughout the Class Period.

(4) Sales numbers and figures concerning the Kraft PHVO Products throughout the Class Period.

(5) The geographic scope of sales of the Kraft PHVO Products throughout the Class Period.

(6) Profit and revenue from the sale of the Kraft PHVO Products throughout the Class Period.

(11) Defendants' knowledge of, study of, or research relating to the effects or impact of its advertising of the Kraft PHVO Products during the Class Period on Defendants' revenue and profit.

**RESPONSE TO R. 30(b)(6) DEPOSITION TOPIC NOS. 3-6, 11**

(3) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to this topic as seeking information that is not relevant to class certification issues and because it seeks information beyond the applicable statute of limitations. This topic is also overly broad and unduly burdensome because it contains no geographic limit on the information sought. Further, information about the manufacture of the Products is not relevant to any of Plaintiffs' claims.

(4) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to this topic as seeking information that is not relevant to class certification issues and because it seeks information beyond the applicable statute of limitations. This topic is also overly broad and unduly burdensome because it contains no geographic limit on the information sought. In particular, Kraft Foods objects to Plaintiffs' noticed topic as unduly burdensome and vague to the extent that it fails to define "sales numbers" and "figures."

(5) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to this topic as seeking information that is not relevant to class certification issues and is beyond the applicable statute of limitations. Kraft further objects on the grounds that this topic is vague, overly broad and unduly burdensome to the extent it seeks information regarding the "geographic scope of sales of Kraft's products." To the extent this

51

topic seeks information regarding the states in which Kraft Foods sells the Products, Kraft Foods will propose a stipulation identifying the states in which Kraft Foods sells these Products in lieu of producing a witness.

(6) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to this topic as seeking information that is not relevant to class certification issues and is beyond the applicable statute of limitations. This topic is also overly broad and unduly burdensome because it contains no geographic limit on the information sought.

(11) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to this topic as seeking information that is not relevant to class certification issues and is beyond the applicable statute of limitations.

### Plaintiffs' Position on R. 30(b)(6) Deposition Topic No. 3-6,11

Plaintiffs seek a nationwide California law class. Information relating to the location of Kraft's manufacture and distribution of the Kraft products during the class period, and relating to the geographical scope or distribution of sales of the Kraft products during the class period, is relevant to the question of whether the Court may constitutionally apply California law to a nationwide class. Moreover, elsewhere Kraft agreed to produce documents relating to "MARKETING analysis or research conducted *in connection with the promotion, advertising, packaging, labeling, distribution or sale* of the PRODUCTS," acknowledging the relevance of these topics to issues on class certification (*see* RFP Response No. 19).

### Defendant's Position on R. 30(b)(6) Deposition Topic No. 3-6, 11

As discussed above, a nationwide class is inappropriate in the case, and it is premature to impose the burden of gathering this information on a nationwide basis and educating a corporate representative to testify regarding it.  Kraft Foods has already provided much of this information through documents, interrogatory

52

responses, or stipulations.   For example, Kraft Foods has stipulated that these products are sold in all fifty states.   (*See* Ex. K, Stipulation Regarding Numerosity.)   It would be redundant and unnecessary to require a 30(b)(6) deposition at this time.

Further, Plaintiffs overreach in suggesting that Kraft Foods' agreement to provide marketing analysis and research is an acknowledgement of the relevance of the above topics to class certification.   Sales figures, the geographic scope of sales, and the sweeping topic of "manufacture and distribution of the Kraft PHVO Products" are not synonymous with market research.

## C.    R. 30(b)(6) DEPOSITION TOPIC NO. 8

Defendants' knowledge of, study of, or research relating to the effects of the Kraft PHVO Products on consumers' health.

## RESPONSE TO R. 30(b)(6) DEPOSITION TOPIC NO. 8

Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects to this topic as seeking information that is not relevant to class certification issues. Kraft Foods further objects that this topic is vague, overly broad, and unduly burdensome and seeks information that is not relevant to any claims in the Second Amended Complaint, as Plaintiffs have not alleged that they were physically injured by any of the Kraft Foods' products.

### <u>Plaintiffs' Position on R. 30(b)(6) Deposition Topic No. 8</u>

This topic is relevant to the question of commonality, inasmuch as Plaintiffs seek information relating to the common behavior of Defendant Kraft. To the extent that Kraft studied or knew of the harmful effects of the Kraft PHVO Products and advertised them as healthy anyway, as Plaintiffs allege, this would factor into the question of whether the challenged advertisements were deceptive,

or likely to deceive reasonable consumers and other members of the class. As discussed above, it is also relevant to the Court's decision on whether injunctive relief predominates under Rule 23(b)(2).

### **Defendants' Position on R. 30(b)(6) Deposition Topic No. 8**

Plaintiffs offer no explanation how Kraft Foods' study or knowledge of the health effects of the products affects whether the packaging and advertisements were deceptive or likely to deceive reasonable consumers.  To the contrary, whether Kraft Foods knew about or studied the health effects of the products has no impact on the actual perceptions that consumers had based on the packaging and advertisements.[12]  Simply put, it is Plaintiffs' — not Kraft Foods' — state-of-mind that is relevant in this case.

Again, although Plaintiffs themselves claim to be concerned about the health effects of the products, they have not stated a cause of action for personal injury. Their purported injury is not that they were physically harmed by the Kraft Foods products, but that they paid more for them than they would have paid had they known of the presence of certain ingredients.  Documents involving the health effects of these products, and what Kraft Foods knew or did not know about them, are therefore not only unnecessary to class certification, but irrelevant to even the merits of the suit.  Plaintiffs are therefore not entitled to this discovery, and there is no basis for imposing the burden of educating a corporate representative to testify on this topic.

## **D.    R. 30(b)(6) DEPOSITION TOPIC NO. 9-10**

---

[12]  Kraft Foods disputes Plaintiffs' characterization that the products were advertised as "healthy," a word that appears nowhere on the packaging or advertising.

(9) Defendants' knowledge of, study of, or research relating to the effects or impact of its advertising of the Kraft PHVO Products during the Class Period on consumers' perceptions of the Kraft PHVO Products.

(10) Defendants' knowledge of, study of, or research relating to the effects or impact of its advertising of the Kraft PHVO Products during the Class Period on consumers' perceptions of the Kraft PHVO Products.

**RESPONSE TO R. 30(b)(6) DEPOSITION TOPIC NOS. 8-9**

(9-10) Kraft Foods incorporates by reference all of its General Objections as if specifically stated herein. Kraft Foods specifically objects on the grounds that this topic is overly broad and unduly burdensome. In particular, it is overly broad an unduly burdensome and seeks information beyond the statute of limitations. Subject to and without waiving its General and Specific Objections, Kraft Foods will make available to Plaintiffs at a mutually agreed time and place a witness who is knowledgeable about the noticed topic for the Products identified in the Second Amended Complaint during the time period covered by the applicable statute of limitations.

**Plaintiffs' Position on R. 30(b)(6) Deposition Topic Nos. 9-10**

While Kraft produced witnesses on these topics, they were only prepared to testify about information beginning in 2006. Indeed, one witness only began working at Kraft in July 2009, and another specialized in brands not at issue in this case, and repeatedly testified he lacked knowledge about one of the biggest brands in this case, Teddy Grahams. (*See* Ex. 12, Low Dep. Tr. 11:16-18, 12:21-13:11, 35:2-35:15, 53:23-54:12, 76:1-78:11, 84:9-86:19.)

**Defendants' Position on R. 30(b)(6) Deposition Topic Nos. 9-10**

Kraft Foods designated Amelia Strobel as the Rule 30(b)(6) witness for Topics 9 and 10.  Plaintiffs do not cite to any deficiency in her knowledge of these topics, other than to complain that she began working at Kraft Foods in July 2009.

This complaint ignores the fundamental premise of a 30(b)(6) deposition.

Rule 30(b)(6) plainly anticipates that a corporate representative may be someone who is educated about the topic.  It does not require personal experience with the topic.  *See, e.g.*, *Bd. of Trustees of the Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 524, 526 (C.D. Cal. 2008) ("[B]ecause Rule 30(b)(6) explicitly requires a company to have persons testify on its behalf *as to all matters reasonably available to it,* the Rule implicitly requires persons to review all matters known or reasonably available to the corporation in preparation for the Rule 30(b)(6) deposition.  In other words, personal knowledge of the designated subject matter by the selected deponent is of no consequence."); *Great American Ins. Co. v. Vegas Construction Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008) ("By its very nature, a Rule 30(b)(6) deposition notice requires the responding party to prepare a designated representative so that he or she can testify on matters not only within his or her personal knowledge, but also on matters reasonably known by the responding entity.").

Although Ms. Strobel's *personal* experience extended back only to July 2009, she was prepared to testify and had been educated regarding relevant information going back to 2006.  (*See* J. Hutchison Dec. at ¶ 8; *see, e.g.*, Ex. L , Excerpts from Deposition of Amelia Strobel, at 230:5-10 (agreeing that some of her knowledge came from review of documents in preparation for the deposition).) Plaintiffs were therefore provided with a witness who could testify as to Kraft Foods' corporate knowledge, which is sufficient under Rule 30(b)(6).  Plaintiffs' complaint that Ms. Strobel lacks personal knowledge does not carry their burden of proof or justify the added burden of an additional deposition.  *See Stanford*, 253 F.R.D. at 526 (The party issuing the deposition notice "ha[s] the burden to show . . . lack of preparation.").

1

2   DATED: June 15, 2011                    Respectfully Submitted,

3

4   /s/Gregory S. Weston

5   Gregory S. Weston                       /s/ Kenneth Lee_____

6                                           JENNER & BLOCK LLP
    **THE WESTON FIRM**                     Kenneth K. Lee (Cal. Bar No.
7   GREGORY S. WESTON                       264296)
8   JACK FITZGERALD                         633 West 5th Street, Suite 3500
9   MELANIE PERSINGER                       Los Angeles, CA  90071-2054
    888 Turquoise Street                    Phone:     (213) 239-5100
10  San Diego, CA 92109                     Fax:       (312) 239-5199
11  Telephone:  858 488 1672
12  Facsimile:480 247 4553                  JENNER & BLOCK LLP
                                            Dean N. Panos (*pro hac vice*)
13                                          dpanos@jenner.com
    **LAW OFFICES OF RONALD A.**            Stacy S. Jakobe (*pro hac vice*)
14  **MARRON, APLC**                        sjakobe@jenner.com
15  RONALD A. MARRON                        Jill M. Hutchison (*pro hac vice*)
16  3636 4th Avenue, Suite 202              jhutchison@jenner.com
    San Diego, CA 92109                     353 N. Clark Street
17  Telephone:  (619) 696 9066              Chicago, IL 60654-3456
18  Facsimile:   (619) 564 6665             Phone:     (312) 222-9350
19                                          Fax:         (312) 527-0484
20  Counsel  for  Plaintiffs  and  the
    Proposed Class                          Counsel for Kraft Foods Inc., Kraft
21                                          Foods North America, Kraft Foods
22                                          Global, Inc.

23

24

25

26

27

28

29

30

31

32

---

57