THE WESTON FIRM
GREGORY S. WESTON (239944)
greg@westonfirm.com
JACK FITZGERALD (257370)
jack@westonfirm.com
MELANIE PERSINGER (275423)
mel@westonfirm.com
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:  (619) 798-2006
Facsimile: (480) 247-4553

LAW OFFICES OF RONALD A.
MARRON, APLC
RONALD A. MARRON (175650)
ron.marron@gmail.com
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone:  (619) 696-9066
Facsimile: (619) 564-6665

**Counsel for Plaintiffs and the Proposed Class**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br><br>Defendants. | Case No. 2:10-cv-01028 GW(AGRx)<br>Pleading Type: Class Action<br>Action Filed: February 11, 2010<br><br>**REPLY IN SUPPORT OF CLASS CERTIFICATION**<br><br>Judge: The Honorable George Wu<br>Date: September 8, 2011<br>Time: 8:30 a.m.<br>Location: Courtroom 10 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 3

I. THE CLASS IS ASCERTAINABLE ....................................................... 3

II. THE CLASS IS MANAGEABLE ............................................................. 5

III. THE CLASS HAS ARTICLE III STANDING ......................................... 6

IV. PLAINTIFFS HAVE STANDING TO REPRESENT THE CLASS ......... 9

    A. Plaintiffs Relied on Kraft's Deceptive Advertisements ................. 10

    B. Plaintiffs Have Shown Material Misrepresentations ...................... 16

        1. Plaintiffs' Reliance Shows Materiality ................................. 16

        2. Kraft's Documents Show Materiality ................................... 16

        3. The Kivetz and Strobel Declarations are Irrelevant and Contradicted by Kraft's Own Documents ........................... 17

V. THE REQUIREMENTS OF RULE 23(a) ARE MET ............................. 18

    A. Commonality .................................................................................. 18

    B. Typicality ....................................................................................... 20

    C. Adequacy ....................................................................................... 26

VI. CERTIFICATION UNDER RULE 23(b)(2) REMAINS PROPER AFTER *DUKES III* .......................................................................... 30

VII. THE REQUIREMENTS OF RULE 23(b)(3) ARE MET ....................... 31

    A. Materiality ...................................................................................... 31

    B. Damages ......................................................................................... 33

    C. Statute of Limitations ..................................................................... 35

i

1

VIII.   A NATIONWIDE CALIFORNIA LAW CLASS IS PROPER .............. 37

      A.     Nationwide Application of California Law Does Not Violate
           Due Process Under *Shutts* ............................................................. 37

      B.     Kraft Did Not Satisfy Its California Choice-of-Law Burden ........ 38

CONCLUSION .................................................................................................. 40

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Cases**

*Aho v. Americredit Fin. Servs.*,
   2011 U.S. Dist. LEXIS 80426 (S.D. Cal. July 25, 2011) ........................7, 31

*Allapattah Servs. v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003)....................................................35

*Alonzo v. Maximus, Inc.*,
   2011 U.S. Dist. LEXIS 63243 (C.D. Cal. June 13, 2011) ....................21, 29

*Anderson v. New Dimension Fin. Servs., L.P.*,
   2001 U.S. Dist. LEXIS 11412 (N.D. Ill. Aug. 7, 2001)..............................24

*Arrendondo v. Delano Farms Co.*,
   2011 U.S. Dist. LEXIS 44134 (E.D. Cal. Apr. 19, 2011)...........................19

*Avritt v. Reliastar Life Ins. Co.*,
   615 F.3d 1023 (8th Cir. 2010)........................................................8

*Bates v. United Parcel Service, Inc.*,
   511 F.3d 974 (9th Cir. 2007)..........................................................6

*Bautista-Perez v. Holder*,
   2009 U.S. Dist. LEXIS 63446 (N.D. Cal. July 9, 2009).............................36

*Berrien v. New Raintree Resorts Int'l, LLC*,
   2011 U.S. Dist. LEXIS 90594 (N.D. Cal. Aug. 15, 2011).........................26

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ....................................................................33

*Cameron v. E.M. Adams & Co.*,
   547 F.2d 473 (9th Cir. 1976)..........................................................36

*Campbell v. PricewaterhouseCoopers*,
   253 F.R.D. 586 (E.D. Cal. 2008) ......................................................5

*Campion v. Old Republic Home Prot. Co.*,
   272 F.R.D. 517 (S.D. Cal. Jan. 6, 2011) ..........................................39

iii

*Chacanaca v. Quaker Oats Co.*,
    2011 U.S. Dist. LEXIS 65023 (N.D. Cal. June 14, 2011) ...........................29

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) .........................................................9

*Charlebois v. Angels Baseball, LP*,
    2011 U.S. Dist. LEXIS 71452 (C.D. Cal. June 30, 2011) ........................3, 5

*Chavez v. Blue Sky Nat. Bev. Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010)...........................................................passim

*Cleary v. Philip Morris USA*,
    265 F.R.D. 289 (N.D. Ill. 2010) ...................................................................22

*Cohen v. DIRECTV, Inc.*,
    178 Cal. App. 4th 966 (2009).......................................................................32

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995).........................................................................23

*Gen. Bedding Corp. v. Echevarria*,
    947 F.2d 1395 (9th Cir. 1991)......................................................................35

*Greenwood v. Compucredit Corp.*,
    2010 U.S. Dist. LEXIS 127719 (N.D. Cal. Nov. 19, 2010).......................7, 9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)................................................................18, 26

*Hanon v. Dataprods. Corp.*,
    976 F.2d 497 (9th Cir. 1992)................................................................20, 25

*Harris v. Vector Mktg. Corp.*,
    753 F. Supp. 2d 996 (N.D. Cal. 2010) ........................................................29

*Heisler v. Maxtor Corp.*,
    2010 U.S. Dist. LEXIS 125745 (N.D. Cal. Nov. 17, 2010).........................21

*Henderson v. J.M. Smucker Co.*,
    2011 U.S. Dist. LEXIS 27953 (C.D. Cal. Mar. 17, 2011)...........................35

iv

*Herrera v. LCS Fin. Servs. Corp.*,
    2011 U.S. Dist. LEXIS 58288 (N.D. Cal. June 1, 2011) ..............................24

*Hodges v. Akeena Solar, Inc.*,
    274 F.R.D. 259 (N.D. Cal. 2011) ........................................................27, 28

*Hohenberg v. Ferrero U.S.A., Inc.*,
    2011 U.S. Dist. LEXIS 38471 (S.D. Cal. Mar. 22, 2011) ..........................29

*In re Brazilian Blowout Litig.*,
    2011 U.S. Dist. LEXIS 40158 (C.D. Cal. Apr. 12, 2011) ..........................21

*In re Citric Acid Antitrust Litig.*,
    1996 U.S. Dist. LEXIS 16409 (N.D. Cal. Oct. 1, 1996)..............................24

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*,
    270 F.R.D. 521 (N.D. Cal. 2010)..................................................................36

*In re Initial Pub. Offering Sec. Litig.*,
    227 F.R.D. 65 (S.D.N.Y. 2004)....................................................................33

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
    268 F.R.D. 652 (S.D. Cal. 2010)..................................................................32

*In re Steroid Hormone Prod. Cases*,
    181 Cal. App. 4th 145 (2010)................................................................7, 32

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009)........................................................................passim

*Jaimez v. Daiohs USA, Inc.*,
    181 Cal. App. 4th 1286 (2010)....................................................................33

*Johnson v. Gen. Mills, Inc.*,
    2011 U.S. Dist. LEXIS 45120 (C.D. Cal. Apr. 20, 2011) ....................18, 32

*Jorst v. Bros.*,
    2001 U.S. Dist. LEXIS 12824 (N.D. Cal. Aug. 13, 2001)..........................25

*Keilholtz v. Lennox Hearth Prods.*,
    2009 U.S. Dist. LEXIS 81108 (N.D. Cal. Sept. 8, 2009) .............32, 36, 38

v

*Kingsbury v. U.S. Greenfiber, LLC*,
    2011 U.S. Dist. LEXIS 71058 (C.D. Cal. May 23, 2011) .................7, 10, 32

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011)........................................................................9, 21

*Kyne v. Ritz-Carlton Hotel Co., L.L.C.*,
    2011 U.S. Dist. LEXIS 77814 (D. Haw. June 27, 2011) ...........................26

*Lewis v. Casey*,
    518 U.S. 343 (1996) ..................................................................................6

*Lowry v. City of Albuquerque*,
    273 F.R.D. 668, 683 (D.N.M. 2011) ........................................................19

*Lukovsky v. San Francisco*,
    2006 U.S. Dist. LEXIS 3174 (N.D. Cal. Jan. 17, 2006) ..............................3

*Martin v. Dahlberg*,
    156 F.R.D. 207 (N.D. Cal. 1994) .............................................................38

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
    97 Cal. App. 4th 1282 (2002)..................................................................32

*Mazza v. Am Honda Motor Co.*,
    254 F.R.D. 610 (C.D. Cal. 2008) ........................................................18, 39

*McKenzie v. Fed. Express Corp.*,
    2011 U.S. Dist. LEXIS 65278 (C.D. Cal. June 16, 2011) ......................3, 33

*Menagerie Prods. v. Citysearch*,
    2009 U.S. Dist. LEXIS 108768 (C.D. Cal. Nov. 9, 2009)...................passim

*Miletak v. Allstate Ins. Co.*,
    2010 U.S. Dist. LEXIS 26913 (N.D. Cal. Mar. 5, 2010)......................10, 23

*Moeller v. Taco Bell Corp.*,
    220 F.R.D. 604 (N.D. Cal. 2004) .............................................................27

*Morrison v. Mahoney*,
    299 F.3d 1042 (9th Cir. 2005)..................................................................25

*NAACP v. Corinth*,
    83 F.R.D. 46 (N.D. Miss. 1979)...................................................................25

*O'Connor v. Boeing N. Am., Inc.*,
    284 F.R.D. 311 (C.D. Cal. 1998) .................................................................3

*Occidental Land, Inc. v. Super. Ct.*,
    18 Cal. 3d 355 (1976).................................................................................16

*Pecover v. Elec. Arts Inc.*,
    2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 21, 2010) ..........6, 20, 34, 38

*Pella Corp. v. Saltzman*,
    606 F.3d 391 (7th Cir. 2010).......................................................................5

*Pfizer v. Super. Ct.*,
    182 Cal. App. 4th 622 (2010).....................................................................33

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................................37

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. Cal. 2010) .............................................................39

*Potter v. Blue Cross Blue Shield of Mich.*,
    2011 U.S. Dist. LEXIS 92076 (E.D. Mich. July 14, 2011) .........................31

*Red et al. v. Kraft Foods, Inc.*,
    2011 U.S. Dist. LEXIS 26893 (C.D. Cal. Jan. 13, 2011) ....................passim

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. Cal. 2010) ...........................................................20

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) ...............................................................20

*Sevidal v. Target Corp.*,
    189 Cal. App. 4th 905 (2010)................................................................32, 33

vii

*Simpson v. Fireman's Fund Ins. Co.*,
    231 F.R.D. 391 (N.D. Cal. 2005)..................................................................20

*State Farm v. Super. Ct.*,
    45 Cal. App. 4th 1093 (1996)..............................................................7, 22

*Stearns v. Ticketmaster Corp.*,
    2011 U.S. App. LEXIS 17454 (9th Cir. Aug. 22, 2011).........................8, 32

*Stiller v. Costco*,
    2010 U.S. Dist. LEXIS 140297 (S.D. Cal. Dec. 13, 2010).........................25

*Stukenberg v. Perry*,
    2011 U.S. Dist. LEXIS 59453 (S.D. Tex. June 2, 2011) .............................33

*Taylor v. Garrett*,
    1992 U.S. Dist. LEXIS 14328 (E.D. Pa. Sept. 17, 1992) ...........................25

*Tibble v. Edison Int'l*,
    2009 U.S. Dist. LEXIS 120939 (C.D. Cal. June 30, 2009) .........................36

*Turner v. A.B. Carter, Inc.*,
    85 F.R.D. 360 (E.D. Va. 1980) ............................................................26, 27

*Tylka v. Gerber Prods. Co.*,
    178 F.R.D. 493 (N.D. Ill. 1998) ..........................................................19, 39

*Ugas v. H&H Block Enters., LLC*,
    2011 U.S. Dist. LEXIS 86769 (C.D. Cal. Aug. 4, 2011).............................30

*Vuyanich v. Republic Nat'l Bank of Dallas*,
    82 F.R.D. 420 (N.D. Tex. 1979) ...................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................18

*Warth v. Seldin*,
    422 U.S. 490 (1975) .......................................................................................6

*Wash. Mut. Bank v. Super. Ct.*,
    24 Cal. 4th 906 (2001)..........................................................................38, 39

viii

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ........................................................... 9

*Weinstat v. Dentsply Int'l, Inc.*,
    180 Cal. App. 4th 1213 (2010) ........................................................... 16

*Wiener v. Dannon Co.*,
    255 F.R.D. 658 (C.D. Cal. 2009) ........................................................... 16

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ........................................................... 10

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011) ........................................ 17, 32, 38

*Yamada v. Nobel Biocare Holding AG*,
    2011 U.S. Dist. LEXIS 92598 (C.D. Cal. Aug. 12, 2011) ........................ 9

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ........................................................... 19

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................... 7

*Zeisel v. Diamond Foods, Inc.*,
    2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011) .................. passim

**Other Authorities**

C.M.C. Bassett, et al. \*trans-Fatty acids in the diet stimulate*
    *atherosclerosis*,\ 58 Metabolism Clinical and Experimental 1802-
    1808 (2009) ........................................................................................... 1

Chavarro JE, et al. *A Prospective Study of Trans-Fatty Acid Levels in*
    *Blood and Risk of Prostate Cancer*, 17(1) Cancer Epidemiol.,
    Biomarkers & Prev. 95-101 (2008) ................................................... 1

Chavarro JE, et al. *Dietary Fatty Acids Intakes and the Risk of Ovulatory*
    *Infertility*, 85 Am. J. Clin. Nutr. 231-237 (2007) ............................... 2

E.E. Devore, SCD, et al. *Dietary fat intake and cognitive decline in women with type 2 diabetes*, 32 Diabetes Care 635-40 (2009) ....................... 2

Herbert B. Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th ed. 2002) .................................................................................. 6

Lopez-Garcia E, et al. *Consumption of Trans Fatty Acids Is Related to Plasma Biomarkers of Inflammation and Endothelial Dysfunction*, 135 J. Nutr. 562-66 (2005) ........................................................................ 2

Véronique Chajès et al., *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study*. 167 Am. J. Epidemiol. 1312-1320 (2008) ............................ 2

Vinikoor L, et al. *Consumption of Trans-Fatty Acid and Its Association with Colorectal Adenomas*, 168(3) Am. J. Epidemiol. 289-297 (2008) ......................................................................................... 1

**INTRODUCTION**

Kraft's Opposition has done nothing to counter the salient points of Plaintiffs' Motion, instead habitually overreaching, mischaracterizing the record and law, citing inapt cases involving different claims, and making straw man assertions about Plaintiffs' allegations, though Kraft did identify an easily-rectified flaw in the initial class definition. The most compelling aspect of Kraft's Opposition is not its argument, but its admission—presumably inadvertent—that its customers "are unlikely to depend upon beliefs about the products' nutritional value or health consequences" because Kraft's challenged health and wellness advertising is **"unrelated to actual product experience."** Opp. 12.

Kraft's claims about the "nutritional value" of its goods is "unrelated to actual product experience" because the foods are loaded with artificial trans fat, sugar, refined flour and other unwholesome chemicals, exposing consumers who eat the products to increased risks for obesity, type-2 diabetes, cancer, chronic heart disease, and death.

In fact, trans fats "directly stimulate atherosclerotic development" which is "the principle cause of cardiovascular morbidity and mortality in North America."[1] They also cause cancer, for example they "increase the risk of colorectal neoplasia," in high-consumption groups by 86% over controls,[2] and increase the risk of non-aggressive prostate tumors in men by 121%.[3] In younger women they cause infertility, in middle-aged women they cause breast cancer, and in older

[1] C.M.C. Bassett, et al. *trans-Fatty acids in the diet stimulate atherosclerosis*, 58 Metabolism Clinical and Experimental 1802-1808 (2009).

[2] Vinikoor L, et al. *Consumption of Trans-Fatty Acid and Its Association with Colorectal Adenomas*, 168(3) Am. J. Epidemiol. 289-297 (2008).

[3] Chavarro JE, et al. *A Prospective Study of Trans-Fatty Acid Levels in Blood and Risk of Prostate Cancer*, 17(1) Cancer Epidemiol., Biomarkers & Prev. 95-101 (2008)

1

women they accelerate cognitive decline.[4] They also deform the endothelial cells that line blood vessels and major organ systems, leading to brain dysfunction, diabetes, and systemic inflammation, a chronic autoimmune disorder.[5]

These consequences are incompatible with the impression Kraft conveys of the products in this action, which each are sold in packaging bearing similar, sometimes identical, health and wellness advertising—advertising that this Court previously held Plaintiffs sufficiently pled was likely to deceive a reasonable consumer. *Red et al. v. Kraft Foods, Inc.*, 2011 U.S. Dist. LEXIS 26893 (C.D. Cal. Jan. 13, 2011).

More than a decade after trans fat was shown to be highly toxic, and after most food companies have stopped using it, Kraft continues to pump it into the American diet, labeling products made with trans fat "wholesome," "sensible" and "smart," promoting them with images of fresh vegetables and natural ingredients like honey, and telling mothers they "support kids growth and development."

As Plaintiffs' Motion demonstrates, the requirements of Rule 23(a), 23(b)(2) and 23(b)(3) are met. The class is ascertainable and has Article III standing, and Plaintiffs have standing to represent the class. *See infra* Points I-IV. This action, like the many similar false advertising cases recently certified, presents abundant predominating common questions, Plaintiffs' claims are typical of the class's, and Plaintiffs are adequate class representatives and their attorneys adequate class

---

[4] Chavarro JE, et al. *Dietary Fatty Acids Intakes and the Risk of Ovulatory Infertility*, 85 Am. J. Clin. Nutr. 231-237 (2007); Véronique Chajès et al., *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study*. 167 Am. J. Epidemiol. 1312-1320 (2008); E.E. Devore, SCD, et al. *Dietary fat intake and cognitive decline in women with type 2 diabetes*, 32 Diabetes Care 635-40 (2009).

[5] Lopez-Garcia E, et al. *Consumption of Trans Fatty Acids Is Related to Plasma Biomarkers of Inflammation and Endothelial Dysfunction*, 135 J. Nutr. 562-66 (2005).

1  counsel. *See infra* Points V-VII. Thus, the millions of small acts of fraud Kraft has

2  perpetrated upon American consumers by pretending the challenged products are

3  healthy, are ripe for review and remedy. In sum, Class treatment is the appropriate

4  procedure, and wholly warranted.

5  <u>**ARGUMENT**</u>

6  Two prerequisites for class certification do not appear in Rule 23. First, "the

7  class must be adequately defined and clearly ascertainable before a class action

8  may proceed," *Lukovsky v. San Francisco*, 2006 U.S. Dist. LEXIS 3174, at *5

9  (N.D. Cal. Jan. 17, 2006) (citation omitted). Second, "[a] plaintiff seeking to

10  represent a class must establish personal standing." *McKenzie v. Fed. Express

11  Corp.*, 2011 U.S. Dist. LEXIS 65278, at *12 (C.D. Cal. June 16, 2011) (citation

12  omitted). Kraft argues each point but in a haphazard manner, often integrating

13  these arguments into or confusing them with the express requirements of Rule 23.

14  These prerequisites are better dealt with first, before turning to the requirements of

15  Rule 23(a), 23(b)(2), and 23(b)(3).

16  **I.    THE CLASS IS ASCERTAINABLE**

17  "In order to properly ascertain a class, the definition must specify a distinct

18  group of plaintiffs whose members [can] be identified with particularity." 

19  *Charlebois v. Angels Baseball, LP*, 2011 U.S. Dist. LEXIS 71452, at *7 (C.D. Cal.

20  June 30, 2011). A class is ascertainable if it is "administratively feasible for the

21  court to determine whether a particular individual is a member." *O'Connor v.

22  Boeing N. Am., Inc.*, 284 F.R.D. 311, 319 (C.D. Cal. 1998). "Objective criteria

23  must be used to ascertain class members." *Charlebois*, 2011 U.S. Dist. LEXIS

24  71452, at *7 (citing 5 MOORE'S FED. PRAC. § 23.21[a]).

25  Kraft's Opposition is dedicated at every turn to the proposition that the class

26  definition is overbroad, inevitably arguing that some other requirement is

27  unsatisfied as a result. Although Plaintiffs' opening brief identified the universe of

28  challenged claims with respect to each of the six products, Mot. 5-6, they concede

3

that the proposed class definition was overbroad because two of the products, Ritz and Premium Saltines, did not bear any challenged packaging during parts of the class period. This oversight is rectified in Plaintiffs' revised class definition, which excludes buyers of Ritz and Premium Saltines that did not bear the allegedly deceptive claims and is as follows:

> All persons who purchased in the United States, on or after January 1, 2000, one or more of the following Kraft products for their own or household use, and not for resale or distribution: (1) Teddy Grahams; (2) Honey Maid Grahams; (3) Ginger Snaps; (4) Vegetable Thins; (5) Ritz Crackers  with packaging bearing any of the following statements and images: "real vegetables," depictions of vegetables, "sensible solution," "nutritionists recommend," "steps to a healthier you," and "whole wheat"; and (6) Premium Saltine Crackers with packaging bearing the phrase "sensible snacking," or "sensible solution." Excluded from the Class are officers, directors, and employees of Kraft and their immediate families, and the Court, its officers, and their immediate families.[6]

The Court may consider such a modified class definition. *Charlebois*, 2011 U.S. Dist. LEXIS 71452, at *9 (citations omitted). As modified, the Court should "not find this definition to be subjective or imprecise," *Zeisel v. Diamond Foods, Inc.*,

---

[6] Because some Ritz and Premium Saltines packages sold during the class period did not contain challenged claims, by conditioning class membership on exposure to those claims, Plaintiffs necessarily exclude consumers who lack standing. By contrast, for Teddy Grahams, Honey Maid Grahams, Ginger Snaps and Vegetable Thins, Plaintiffs allege that, along with other health and wellness advertising, the *product names* are deceptive, SAC ¶¶ 63, 93, 118, 126, and this Court upheld those challenges. *See Red et al. v. Kraft Foods, Inc.*, 2011 U.S. Dist. LEXIS 26893, at *8-12 (C.D. Cal. Jan. 13, 2011). Because every purchaser of these products was exposed to their allegedly deceptive names, each has standing.

2011 U.S. Dist. LEXIS 60608, at *20-21 (N.D. Cal. June 7, 2011), because the class is ascertainable by reference to objective criteria, namely (1) all persons (2) in the United States (3) who purchased on or after January 1, 2000 (4) for personal or household use and not for resale (5) at least one of the enumerated Kraft products (6) sold in packaging containing at least one of the enumerated statements. *See Chavez v. Blue Sky Nat. Bev. Co.*, 268 F.R.D. 365 (N.D. Cal. 2010).

## II.    THE CLASS IS MANAGEABLE

Where a class is ascertainable, manageability concerns, which "must be weighed against the alternatives[,] 'will rarely, if ever, be in itself sufficient to prevent certification of a class.'" *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *36 (quoting *Campbell v. PricewaterhouseCoopers*, 253 F.R.D. 586, 605 (E.D. Cal. 2008)). That this case involves six products does not make it unmanageable. In *Zeisel*, for example, the court was "not persuaded" that it would be administratively infeasible to determine class membership simply because defendant "sells numerous other nut products and that neither the prospective class members nor the Court would have a means by which they could determine whether they purchased the products at issue in this litigation." 2011 U.S.Dist. LEXIS 60608, at *20. Rather, the class definition "includes objective characteristics that would permit a consumer to identify themselves as a member of the proposed class." *Id.* at *20-21 (citations omitted). *See also Pella Corp. v. Saltzman*, 606 F.3d 391, 392-94 (7th Cir. 2010) (affirming certification of class of buyers who purchased, from 1991 through 2010, six window models, over argument that class would be unmanageable); *Pecover v. Elec. Arts Inc.*, 2010 U.S. Dist. LEXIS 140632, at *24-25 (N.D. Cal. Dec. 21, 2010) (class of buyers of multiple video games was ascertainable).

### III.   THE CLASS HAS ARTICLE III STANDING

Standing is a threshold issue in every federal case, *Warth v. Seldin*, 422 U.S. 490, 498 (1975), and has three elements: (1) the plaintiff must have suffered an "injury in fact," (2) there must be a "causal connection between the injury and the conduct complained of," and (3) the injury must be likely to be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In a class action, however, standing "is assessed solely with respect to class representatives, not unnamed members of the class." *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *14 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009)).[7] That is because:

> In a class action . . . the trial court initially must address whether the named plaintiffs have standing under Article III to assert their individual claims. If that initial test is met, the court must then scrutinize the putative class and its representatives to determine whether the relationship between them is such that under the requirements of Rule 23 the named plaintiffs may represent the class. . . . . If that court, guided by the nature and purpose of the substantive

---

[7] *See also* Herbert B. Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th ed. 2002) ("[P]assive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court"); *Lewis v. Casey*, 518 U.S. 343, 395 (1996) (Souter, J., concurring) (class certification "does not require a demonstration that some or all of the unnamed class could themselves satisfy the standing requirements for named plaintiffs."); *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements."); *Greenwood v. Compucredit Corp.*, 2010 U.S. Dist. LEXIS 127719, at *10 (N.D. Cal. Nov. 19, 2010) ("Plaintiffs are not required to establish absent class members' individual reliance and personal standing, and the class has adequately established Article III standing."); *Chavez*, 268 F.R.D. 365 (N.D. Cal. 2010) ("unnamed class members in an action under the [UCL] . . . are not required to establish standing").

1       law on which the plaintiffs base their claims, properly applies rule 23,

2       then the certified class must necessarily have standing as an entity.

3 *Vuyanich v. Republic Nat'l Bank of Dallas*, 82 F.R.D. 420, 428 (N.D. Tex. 1979).

4 A class must therefore be defined in such a way that anyone in it has standing. *See*

5 *Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426, at *30 n.7 (S.D. Cal.

6 July 25, 2011) (citations omitted).

7       While named plaintiffs who pursue a UCL or FAL action on behalf of others

8 based on allegations of false or fraudulent advertising must demonstrate that they

9 have suffered an injury in fact by pleading and proving actual reliance and the loss

10 of money or property, *Tobacco II*, 46 Cal. 4th at 321, the reliance requirement does

11 not apply to other members of the class. *See Greenwood*, 2010 U.S. Dist. LEXIS

12 127719, at *4; *Kingsbury v. U.S. Greenfiber, LLC*, 2011 U.S. Dist. LEXIS 71058,

13 at *8 (C.D. Cal. May 23, 2011); *In re Steroid Hormone Prod. Cases*, 181 Cal. App.

14 4th 145, 158 (2010). That is because the "substantive right extended to the public

15 by the UCL is the right to protection from fraud, deceit and unlawful conduct," so

16 that "the focus of the statute is on the defendant's conduct." *Tobacco II*, 46 Cal.

17 4th at 324 ("[A] section 17200 violation [can be shown] even if no one was

18 actually deceived, relied upon the fraudulent practice, or sustained any damage.")

19 (citing *State Farm v. Super. Ct.*, 45 Cal. App. 4th 1093, 1105 (1996)).

20       In false advertising cases under the UCL, FAL and CLRA the relevant

21 inquiry is whether "members of the public are likely to be deceived." *Tobacco II*,

22 46 Cal. 4th at 312; *see also Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117,

23 1125 (C.D. Cal. 2010). Accordingly, those who suffered an economic injury by

24 purchasing Kraft products in packaging likely to deceive a reasonable consumer

25 have Article III standing to assert a claim. *Accord Tobacco II*, 46 Cal. 4th at 312,

26

27

28

320 ("relief under the UCL is available without individualized proof of deception, reliance and injury").[8]

If there was any doubt remaining, two days ago the Ninth Circuit definitively rejected Kraft's argument that "to the extent that *Tobacco II* holds that a single injured plaintiff may bring a class action on behalf of a group of individuals who may not have had a cause of action themselves, it is inconsistent with the doctrine of standing as applied by federal courts." Opp. 31 (quoting *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023. 1034 (8th Cir. 2010)). The Court of Appeals held:

> Nor do we agree with Appellees' argument that because it need not be shown that class members have suffered actual injury in fact connected to the conduct of the Appellees, the alternative to the district court's ruling must be that the class lacks standing under Article III of the United States Constitution. No doubt plaintiff's injury must be "concrete and particularized." The injury here meets both of those requirements. Each alleged class member was relieved of money in the transactions. Moreover, it can hardly be said that the loss is not fairly traceable to the action of the Appellees within the meaning of California substantive law.

*Stearns v. Ticketmaster Corp.*, 2011 U.S. App. LEXIS 17454, at *13-14 (9th Cir. Aug. 22, 2011) (citations omitted).[9] In other words, the presumption of reliance in

---

[8] Kraft's assertion that its expert's opinion "undercuts the SAC's characterization of consumers as victims who rely on puffery statements on the front of packaging to determine a product's nutritional value," Opp. 12, is misplaced. This Court has *thrice* rejected Kraft's puffery argument. *See Red*, 2011 U.S. Dist LEXIS 26893, at *13.

[9] Other California courts have questioned *Avritt*. *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *17 n.8 (distinguishing *Avritt*); *see also Greenwood* 2010 U.S. Dist.

UCL actions "buttresses the ruling that class members suffered Article III injury," *Greenwood*, 2010 U.S. Dist. LEXIS 127719, at *15.

## IV.   PLAINTIFFS HAVE STANDING TO REPRESENT THE CLASS

In order to establish standing on their claims under the UCL, FAL and CLRA, Plaintiffs must show they "lost money or property" as a result of Kraft's conduct. *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *8 (citations omitted). These statutes impose a reliance requirement on Ms. Red and Ms. Whitt. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *see also Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 321-22 (2011). "It is not necessary," however, "that [their] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing [their] conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor in influencing [their] decision." *Tobacco II*, 46 Cal. 4th at 326 (quotations and citation omitted); *see also Kwikset*, 51 Cal. 4th at 327 (same).

Moreover, "[t]here is no requirement under the UCL that Plaintiff rely on the misrepresentation on multiple occasions, or that there is a pattern of reliance.

---

LEXIS 127719, at *8 ("The decision in *Avritt* does not bind this Court, and it is unpersuasive."); *Chavez v. Blue Sky Nat. Bev. Co.*, 2010 U.S. Dist. LEXIS 138696 (N.D. Cal. Nov. 22, 2010) (denying motion for reconsideration of order granting class certification in light of *Avritt*).

*Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011), Opp. 31, is also inapposite, not involving false advertising, but allegations that ink in the label of defendant's garments could cause a skin rash. The court, however, found that a large majority of the proposed class, unlike the plaintiff, was not sensitive to the ink, and suffered no injury. Unlike in Webb, however, "here, there is no evidence to show that members of the absent class have *not* suffered any injury." *Yamada v. Nobel Biocare Holding Ag*, 2011 U.S. Dist. LEXIS 92598, at *16 (C.D. Cal. Aug. 12, 2011) (certifying class). Instead, the injury alleged here is identical among class members and has repeatedly been held sufficient to confer standing. *See, e.g.*, *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010) ("The injury alleged here is the *purchase* of food products" with deceptive labels.).

9

1   Plaintiff need only prove that he relied on the misrepresentation once." *Miletak*,

2   2010 U.S. Dist. LEXIS 26913, at *17. In addition, "a presumption, or at least an

3   inference, of reliance arises whenever there is a showing that a misrepresentation

4   was material," that is, "if a reasonable man would attach importance to its

5   existence or nonexistence in determining his choice of action in the transaction in

6   question." *Tobacco II*, 46 Cal. 4th at 327 (internal quotations omitted). *See also*

7   *Kingsbury*, 2011 U.S. Dist. LEXIS 71058, at *8-11.

8   **A.   Plaintiffs Relied on Kraft's Deceptive Advertisements**

9   For certification, Plaintiffs need only establish that there is an issue of fact as

10  to standing; they need not submit proof sufficient to withstand summary judgment.

11  *See Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *12-13 & n.6; *Miletak*, 2010 U.S.

12  Dist. LEXIS 26913, at *16 (plaintiff had standing for class certification purposes

13  based solely on allegations of reliance and injury). Here, Plaintiffs allege they

14  "read and relied on, for each purchase of the Kraft PHVO Products made during

15  the Class Period, Kraft's misleading . . . health claims." SAC ¶ 131; *see id.*¶ 134

16  ("Plaintiffs would not have purchased the Kraft PHVO Products at the prices they

17  did absent these advertisements."). Their deposition testimony substantiated these

18  allegations, showing that Plaintiffs bought each of the products at least once in

19  reliance on challenged health and wellness statements and their contribution to the

20  deceptive nature of the products' packaging as a whole.

21  Nevertheless, relying on dubious characterizations of the record, Kraft

22  attempts to cast doubt on whether Red and Whitt relied on some of the individual

23  challenged statements. Kraft's approach ignores that the central question in this

24  case, as in *Williams*, is whether the conglomeration of the challenged health and

25  wellness advertising, rendered each (or any) of the challenged Kraft products

26  "deceptive . . . as a whole." *Red*, 2011 U.S. Dist. LEXIS 26893, at *6 (citing

27  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008)).

28  Accordingly, the relevant question is not whether each Plaintiff relied on every

10

individual challenged statement, but whether Plaintiffs present a question of fact with respect to each of the six products as to whether they relied on the deceptive nature of the health and wellness advertising as a whole in purchasing each product. In addition to the allegations in their Complaint, Plaintiffs' deposition testimony—despite that it was entirely cross-examination—attests to their reliance.

**_Teddy Grahams_.**   Kraft's counsel asked Ms. Red "what was your concern or what was your problem with the labeling of the Kraft Foods products at the time you filed this lawsuit?" Ms. Red replied**:**

> A.   *I thought it was labeled healthy, and it had the labels were – I don't know if – like this product – Can I show you?*
>
> Q.   You can take – yeah.
>
> A.   *Like all these, sensible solutions, I would – and whole grain –*
>
> Q.   Okay.
>
> A.   *Every time I would buy that, I would look at those; and I assume that's healthy. And then, like Teddy Grahams, it will say calcium, iron to help support kids' growth development. I already assume that's a healthier product than any products out there, smart choices. Just in the front of the box, it looks healthy already.*

Deposition Transcript of Evangeline Red ("Red Dep. Tr."), attached to the Supplemental Declaration of Gregory Weston ("Weston Dec.") as Exhibit A, at 111:2-20. When presented with a Honey variety Teddy Grahams label and asked to "identify . . . anything on the packaging that you see in front of you that you think is deceptive or gives you some concern," Ms. Red responded:

> A.   *"To help support kids' growth and development," it's a smart choice food category. That's – and it says "honey." To me, honey is healthier than – it's natural.*

*Id.* 138:8-14. On a different panel of the same product, Ms. Red identified:

---

11

1   *A.   Same thing. In the top right, it will say, "Calcium, iron, zinc to help*
2   *support kids' growth and development."*

3   Q.   Okay.

4   *A.   I would choose that because it has that statement on there.*

5   *Id.* 139:20-140:5. Kraft's counsel also asked Ms. Red about the "smart choices"
6   advertisement on Teddy Grahams:

7   Q.   You think you bought it just because it said "smart choices"?

8   *A.   Yeah. Other people said smart choices category would be better*
9   *alternative.*

10   *Id.* 140:19-22.

11   Like Ms. Red, Ms. Whitt testified she relied on the deceptive packaging of
12   Teddy Grahams as a whole in deciding to purchase them. When asked what she
13   found misleading, she said:

14   *A.   "A good source of calcium, iron, zinc to help support kids' growth*
15   *and development. It's a smart choice program."*

16   Q.   Anything else?

17   *A.   "Honey" can be misleading. . . The "wholesome choice for your*
18   *family."*

19   Deposition Transcript of Rachel Whitt ("Whitt Dep. Tr."), attached to the Weston
20   Dec. as Exhibit B, at 109:24-110:7. Ms. Whitt testified she took "honey" to mean
21   the product was sweetened with "pure honey," *id.* at 110:8-14. She also said she
22   took the phrase, "A fun wholesome choice for your family" to mean:

23   *A.   It's good for your family.*

24   Q.   How did you construe it that way?

25   *A.   Healthy food for your family.*

26   Q.   Can you just explain it a little bit more why you thought it meant it's
27   healthy.

28

1     A.     *It's just by the labels. It says, "Honey." It says all these good sources.*

2            *And it says, "support kids' growth and development."*

3  *Id.* 110:24-111:8.

4  **Ritz Crackers.** Ms. Red testified she purchased each of the challenged

5  varieties, except Hint of Salt. Red. Dep. Tr. 172:15-173:20, 189:3-19. She testified

6  that with respect to the Roasted Vegetables variety, she found the depiction of

7  vegetables and the phrase "real vegetables" deceptive. *Id.* 177:6-10. When asked

8  what about the Whole Wheat variety Ms. Red found deceptive, she answered:

9     A.     *Just looks – whole wheat – it looks more – I don't know. This package*

10         *looks a little bit more healthier than –*

11     Q.     I'm sorry. The package looks more healthier than what?

12     A.     *This looks health – looks like a healthy Ritz Cracker over any other*

13         *product, because it says "whole wheat."*

14  *Id.* 181:16-182:3. When asked what else on the package indicated to Ms. Red that

15  it was healthy, she testified, "It also has the sensible solution on there," *id.* 185:13-

16  21. With respect to the Reduced Fat variety, when asked what "made you want to

17  purchase the product?," Ms. Red answered, "It has the statement 'sensible solution,

18  no cholesterol, low saturated fat.'" *Id.* 188:6-10.

19  Ms. Whitt purchased each of the varieties of Ritz Cracker. Whitt Dep. Tr.

20  127:2-25. She testified prior to buying Ritz Whole Wheat and Reduced Fat, she

21  noticed the sensible solution flag. *Id.* at 134:18-21, 144:18-21.

22  **Premium Saltines.** Ms. Whitt testified that before buying Premium Saltines,

23  she noticed the "sensible snacking" box, and that she found it misleading. *Id.*

24  148:6-7, 22-24.

25  **Honey Maid Grahams.** Ms. Red testified she purchased Honey Maid

26  Grahams for household and occasional personal use approximately once a year

27  during the class period, Red Dep. Tr. 156:14-158:6. She testified she purchases

28  products, like Honey Maid Grahams, that she believes are sweetened with honey

13

because it is a *"[b]etter alternative than sugar. . . It's natural." See id.* 160:24-161:9. She also testified she understands wheat flour to be healthier than white flour. *Id.* 163:2-15. Then, when shown a copy of the packaging and asked to identify what she considered deceptive, Ms. Red testified: *"It says 'Whole grain, 5 grams, honey, sensible solution, low saturated fat, no cholesterol.' [. . .] Those make me want to buy the product than other alternatives." Id.* 164:4-10. *See also id.* 170:8-14 (same elements deceptive on Reduced Fat variety). Like Ms. Red, Ms. Whitt testified "sensible solution" and "whole grain" representations were deceptive. Whitt Dep. Tr. 151:7-9.

**_Ginger Snaps._** Ms. Red testified she purchased Ginger Snaps and found the "sensible solution" label misleading. Red Dep. Tr. 201:24-202:1.

**_Vegetable Thins._** When asked why she bought Vegetable Thins, Ms. Red responded, *"To snack on, because it looks like the healthiest option there." Id.* 190:22-25. When asked specifically, Ms. Red identified the depictions of vegetables and the statement that it is "Made with Real Vegetables" as leading her to believe the product was healthier than other options. *See id.* 192:2-8.

Ms. Whitt testified she purchased Vegetable Thins about twice a month after comparing them to other crackers, Whitt Dep. Tr. 119:11-120:1, because *"It's vegetables, the box – pure vegetable – it says 'real vegetables' in it."* When Kraft's counsel pressed Ms. Whitt, "And you purchased this product because you like the taste of Vegetable Thins; right?," she said again, *"It says, 'real vegetables.'" Id.* 121:6-8. Later, Ms.Whitt affirmed that she saw the label, "Made with real vegetables," before buying the product, and said *"there's vegetables all over the place. It's green,"* referring to the whole packaging. *See id.* at 123:10-18.

*             *             *

Kraft's repeated mischaracterizations of the record do not compel a different conclusion, especially given Plaintiffs' limited burden at this stage. For example, Kraft claims Plaintiffs "admitted they did not rely on *any* of the challenged

14

1    statements on the packaging in purchasing the products," and their "purchases of

2    these snacks had *nothing to do with* the supposedly misleading statements on the

3    packaging" Opp. 6, 8 (emphasis added), but the testimony Kraft cites does not

4    support its assertion.[10]

5           For example, in claiming Ms. Red "admitted" she "did not rely on any of the

6    challenged statements on the packaging in purchasing the products," Kraft cites

7    pages 140, 142-43, and 164-65. Opp. 6-7, 16. On page 140, Ms. Red said she does

8    "not really" believe she purchased Teddy Grahams because of the statement, "A

9    good source of calcium, iron and zinc to help support kids' growth and

10   development," but when the question was asked and answered earlier, Ms. Red

11   responded that she "preferred choosing" the product because of that statement.

12   Red. Dep. Tr. 139:20-140:5. In any event, immediately afterward, Ms. Red

13   testified she *did* buy the product because of the "smart choices" statement. *Id.*

14   140:16-22. When asked *again* if she would have bought Teddy Grahams *without*

15   the "smart choices" label, Ms. Red answered, *"I really don't know if I would*

16   *have." Id.* 141:14-24 Thus, this does not undermine Ms. Red's allegation that the

17   health and wellness advertising on Teddy Grahams was a substantial factor in her

18   decision to purchase the product. And pages 142-43 do not support Kraft's

19   argument at all, since the questioning had nothing to do with Ms. Red's reliance.

20   Ms. Red's response, "yes," to the hypothetical question on page 165, "if you're

21   going to include these products with a pie or with S'mores, you weren't looking to

22   buy them for their nutritional value. Is that a fair statement?," hardly qualifies as an

23

24   ---

     [10] This is not the first time Kraft has overreached. In its order denying Kraft's

25   motion to dismiss the SAC, the Court noted "much of Kraft's motion is based on
     its assertion" about a supposed holding of *Aron v. U-Haul Co. of California* which

26   "Kraft, on five separate occasions, mis-characterizes" by substituting the phrase
     *such as* in the decision with *only*. Further, Kraft's later attempt at explaining this

27   away in its reply brief "does not rectify its liberties with the language in <u>Aron</u>."
     *Red*, 2011 U.S. Dist. LEXIS 26893, at *4.

28

1  admission that she did not rely on the challenged advertising. Reasonable

2  consumers might choose one product over another based on a health claim, even if

3  intended for use in a dessert.

4        Kraft fares no better with respect to Ms. Whitt, relying solely on

5  hypothetical questions about whether she would have purchased a product if a

6  single, discrete health and wellness claim was missing. This type of testimony is

7  irrelevant and inconclusive. A product might have several claims, for example, and

8  a consumer may have relied on each but nevertheless agree she would have bought

9  the product with any single claim missing. In addition, Ms. Whitt's answers to

10  these types of questions were entirely non-committal. *See* Whitt Dep. Tr. 123:10-

11  18 ("I don't know"); 131:16-19 ("I don't know"); 141:11-15 ("Yes, maybe.");

12  145:1-4 ("Maybe, yes."); 148:25-149:2 ("I don't know.").

13        **B.     Plaintiffs Have Shown Material Misrepresentations**

14              **1.     *Plaintiffs' Reliance Shows Materiality***

15        By showing *they* relied on Kraft's misrepresentations, Plaintiffs permit the

16  Court to draw an inference of materiality separate and distinct from their reliance.

17  *See Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) ("An inference

18  of reliance arises of material misrepresentations were 'made to persons whose acts

19  thereafter were consistent with reliance upon the representation.'") (quoting

20  *Occidental Land, Inc. v. Super. Ct.*, 18 Cal. 3d 355 (1976)); *accord Weinstat v.*

21  *Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1223 n.8 (2010) (materiality of

22  Defendant's representations established objectively by plaintiffs' actual use of

23  product in accordance with representations).

24              **2.     *Kraft's Documents Show Materiality***

25        Although Plaintiffs have just scratched the surface of Kraft's vast marketing

26  machine, their Motion presented substantial evidence, through Kraft's documents,

27  that the challenged health and wellness claims in this suit raise expectations for

28  consumers, and are material. *See* Mot. 7-9. Because materiality is "an objective

standard subject to common proof," *Wolph v. Acer Am. Corp.,* 272 F.R.D. 477, 488 (N.D. Cal. 2011), and Plaintiffs have met their burden of showing they may prove materiality through common evidence like these Kraft documents, Mot. 18-19, an inference of reliance arises.

### 3.   The *Kivetz* and *Strobel* Declarations are Irrelevant and Contradicted by Kraft's Own Documents

Kraft offers the declarations of its own Director of Consumer Insight and Strategy and the opinion of Professor Ran Kivetz as evidence that consumers buy food products for a variety of reasons. That is irrelevant because to state a cause of action, Plaintiff only need show that the "misrepresentation was a substantial factor in influencing [her] decision"—that's all. *See Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *12. Indeed, both declarations are replete with conclusions premised on wrong interpretations of California law and Rule 23, rendering neither useful nor relevant to certification.[11]

If Kraft is correct that the claims Strobel makes (and Kivetz confirms) about consumer behavior are relevant, classes could not be certified where plaintiffs allege a food is deceptively labeled, so long as: (1) the food is a cookie, cracker, or other snack food, or if it is found in certain "disqualifying locations" in the grocery store, *see* Strobel Dec. ¶¶ 4-5; (2) the food has been in the marketplace for a sufficiently long period of time and/or enjoys brand equity and consumer loyalty, *see id.* ¶ 7; (3) the food tastes good, is priced well, or has a good shelf life, *see id.* at ¶ 8; (4) the food occasionally forgoes making the deceptive claims in order to run promotions appealing to children, *see id.* ¶ 9; or (5) the food occasionally goes on sale, *see id.*

None of these are actual obstacles to class treatment. In addition, even if general information about the reasons consumers purchase food (for example,

---

[11] *See also* Plaintiffs' Objections to the Kivetz Declaration, concurrently filed.

1  because it tastes good) were relevant to the question of whether Kraft sold products

2  in packaging likely to deceive a reasonable consumer, the argument is one on the

3  merits, and inappropriate now. *See Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *10.

4  **V.  THE REQUIREMENTS OF RULE 23(a) ARE MET**

5      **A.  Commonality**

6      As the U.S. Supreme Court just explained:

7      Commonality requires the plaintiff to demonstrate that the class

8      members have suffered the same injury. . . . Their claims must depend

9      upon a common contention . . . that is capable of classwide

10      resolution—which means that determination of its truth or falsity will

11      resolve an issue that is central to the validity of each one of the claims

12      in one stroke.

13  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("*Dukes III*")

14  (quotations omitted). "Even a single common question will do." *Id.* at 2556

15  (alterations and citation omitted); *see also Mazza v. Am Honda Motor Co.*, 254

16  F.R.D. 610, 618 (C.D. Cal. 2008) ("Only one significant issue of law or fact need

17  be demonstrated to meet this requirement."). Moreover, "[t]he existence of shared

18  legal issues with divergent factual predicates is sufficient . . . ." *Hanlon v. Chrysler*

19  *Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

20      Here, common issues of law and fact abound, including: (1) whether

21  representations on Kraft's labels violated the FDCA or Sherman Law as a

22  predicate UCL "unlawful" violation, *see* SAC ¶¶ 158-60; (2) whether the

23  challenged representations on Kraft's labels were misleading; (3) whether the

24  representations were material to consumers; (4) whether the labeling for each

25  challenged product was deceptive as a whole; and (5) how damages should be

26  calculated for reasonable consumers deceived by material misrepresentations. *See*

27  *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *24; *Chavez*, 268 F.R.D. at 377; *Johnson*

28  *v. Gen. Mills, Inc.*, 2011 U.S. Dist. LEXIS 45120, at *8 (C.D. Cal. Apr. 20, 2011).

18

1    Plaintiffs also allege deceptive omissions. *See, e.g.*, SAC ¶¶ 72-77, 175, 183,

2  193-94. Such allegations easily raise common issues. *See Yokoyama v. Midland*

3  *Nat'l Life Ins. Co.*, 594 F.3d 1087, 1093 (9th Cir. 2010) ("The jury will not have to

4  determine whether each plaintiff subjectively relied on the omissions, but will

5  instead have to determine only whether those omissions were likely to deceive a

6  reasonable person."); *Lowry v. City of Albuquerque*, 273 F.R.D. 668, 683 (D.N.M.

7  2011) ("Where the facts as alleged show that Defendants' course of conduct

8  concealed material information from an entire putative class, the commonality

9  requirement is met." (citation omitted)); *Menagerie Prods. v. Citysearch*, 2009

10  U.S. Dist. LEXIS 108768, at *43-44 (C.D. Cal. Nov. 9, 2009).

11    Just as the class is not unmanageable because it includes purchasers of six

12  products, neither does the variation defeat commonality—"[a] 'common nucleus of

13  operative facts' is usually enough to satisfy the commonality requirement."

14  *Arrendondo v. Delano Farms Co.*, 2011 U.S. Dist. LEXIS 44134, at *18 (E.D. Cal.

15  Apr. 19, 2011) (citation omitted).

16    In *Tylka v. Gerber Prods. Co.*, the court rejected defendant's argument that

17  because the case concerned several Gerber products and consumers were "subject

18  to different ads run in a variety of mediums, at different times," there was "no

19  common nucleus of facts," 178 F.R.D. 493, 497 (N.D. Ill. 1998). The court

20  explained that "the presence of some factual variations among class members'

21  experiences will not defeat class certification," and "does not alter Plaintiffs'

22  central claim that the advertisements were designed to deceive consumers." *Id.*

23  (citation omitted). Here, not only is there a "common nucleus of operative facts"

24  because the action challenges the advertising on six products manufactured by a

25  single defendant, but there are substantial similarities between the products'

26  advertising and ingredients (the basis for Plaintiffs' allegations that the advertising

27  is deceptive). For example, five products have "made with" or similar ingredient

28  claims; four have "sensible" and two have "smart" claims; two have "graham" and

19

1  "honey" claims; and two have "wholesome" claims. All six products are made with

2  trans fat and refined white flour, four with HFCS, and three with added sugar.

3  **B.   Typicality**

4  "In determining whether typicality is met, the focus should be on the

5  defendants' conduct and plaintiff's legal theory, not the injury caused to the

6  plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal.

7  2005) (quotation omitted). The focus of the typicality question is therefore on

8  Plaintiffs' claims, not their circumstances (which Kraft focuses on). *See, e.g.*,

9  *Menagerie*, 2009 U.S. Dist. LEXIS 108768, at *25 ("Notwithstanding any asserted

10  differences between class members, plaintiffs' claims are based on an alleged

11  common course of conduct by [defendant] . . . . Accordingly, plaintiffs' claims . . .

12  are typical of the claims of the proposed class."). The typicality requirement is

13  "satisfied when each class member's claim arises from the same course of events,

14  and each class member makes similar legal arguments to prove the defendant's

15  liability." *Rodriguez v. Hayes,* 591 F.3d 1105 (9th Cir. 2010) (quoting *Armstrong

16  v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)). "As with the commonality

17  requirement, the typicality requirement is applied permissively." *Zeisel*, 2011 U.S.

18  Dist. LEXIS 60608, at *25 (citation omitted).

19  Moreover, "claims of named plaintiffs are typical if they relate to a common

20  scheme, even if the mix of products purchased is different." *Pecover*, 2010 U.S.

21  Dist. LEXIS 140632, at *34 (citation omitted). To assess typicality, courts look to

22  "whether other members have the same or similar injury, whether the action is

23  based on conduct which is not unique to the named plaintiffs, and whether other

24  class members have been injured by the same course of conduct." *Hanon v.

25  Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*,

26  108 F.R.D. 279, 282 (C.D. Cal. 1985)).

27  Here, Plaintiffs' claims are identical to the claims of the other class members

28  because all class members purchased Kraft products with the same or similar

20

health and wellness advertising, and each will try to prove the advertising was likely to deceive a reasonable consumer. In sum, Kraft cannot show the representations made to Plaintiffs "differed in any meaningful regard from the . . . statements provided to putative class members." *Alonzo v. Maximus, Inc.*, 2011 U.S. Dist. LEXIS 63243, at *23 (C.D. Cal. June 13, 2011).

Kraft nevertheless argues *Plaintiffs* (not their claims) are atypical because they supposedly (1) did not rely on the health and wellness advertising and thus suffered no injury, (2) had additional reasons for buying the products, like taste and brand familiarity, (3) did not find the challenged statements misleading, (4) did not look at the ingredient list, (5) continued to buy products with "bad" ingredients, and (6) are subject to the "unique defenses" of reliance and statute of limitations. Kraft also argues Plaintiffs are atypical because (7) their purchasing habits varied from other class members. *See* Opp. 20-21. All these arguments lack merit.

As demonstrated above, Plaintiffs' allegations and testimony adequately raise questions—indeed, convincingly establish—that Ms. Red and Ms. Whitt relied on Kraft's health and wellness advertising, and the deceptive "net impression" of the packaging as a whole, in buying each of the challenged products at least once.[12] *See In re Brazilian Blowout Litig.*, 2011 U.S. Dist. LEXIS 40158, at *12-13 (C.D. Cal. Apr. 12, 2011) (rejecting argument that supposed lack of reliance rendered plaintiffs atypical).

---

[12] Kraft's reliance on *Heisler v. Maxtor Corp.*, 2010 U.S. Dist. LEXIS 125745, at *14 (N.D. Cal. Nov. 17, 2010), Opp. 21, is misplaced. That was a warranty case where it was "unclear whether three out of the four named class representatives can show that the alleged hard drive failures occurred during the life of their particular warranty." Here by contrast, if Plaintiffs prove their claims, every class member will be presumed to have relied on advertising likely to deceive a reasonable consumer, and thus each will have suffered the same cognizable injury as Plaintiffs. *See Kwikset*, 51 Cal. 4th at 327-28.

21

Kraft's next argument, based on force-fed but unremarkable testimony that Plaintiffs bought the products in part because of taste and brand familiarity, even if true, is irrelevant, since a "plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Tobacco II*, 46 Cal. 4th at 328.[13]

Kraft also asserts Plaintiffs are atypical because they did not find "certain challenged statements" misleading. Opp. 21-22. But Kraft's argument relies on objectionable questions calling for obviously affirmative answers about isolated characteristics of hypothetical statements and products, which have no bearing on whether the Kraft health and wellness advertising, in its specific context, when used to promote specific Kraft products, is misleading to a reasonable consumer.[14] What's more, Plaintiffs' "UCL claim will be adjudicated under the 'reasonable consumer' standard rather than by examining the individual circumstances of each plaintiff." *Menagerie*, 2009 U.S. Dist. LEXIS 108768, at *44.

Next, Kraft contends Plaintiffs did not act as reasonable consumers, failing to read the products' ingredient lists and continuing to purchase foods with "bad"

---

[13] *Cleary v. Philip Morris USA*, 265 F.R.D. 289, 292-93 (N.D. Ill. 2010), Opp. 21, is easily distinguishable, since it involves an unjust enrichment claim under Illinois law, which "requires a showing of damages for each plaintiff," rather than UCL, FAL and CLRA claims under California law, in which liability may be established "even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage," *State Farm*, 45 Cal. App. 4th at 1105. Moreover, unlike here, the plaintiff in *Cleary* "fail[ed] to address in his briefs supporting class certification how he intends to show that he himself suffered detriment . . . . [or] how, if at all, his claims are typical of those of class members in this regard. This will not do." *Cleary*, 265 F.R.D. at 292-93.

[14] *See, e.g.*, Red. Dep. Tr. 168:10-14 ("Q. I mean, is that a good thing, that a snack product contains 5 grams of whole grain, no saturated fat and no cholesterol per serving, or is that not a good thing? *A. That's a good thing.*"); Whitt Dep. Tr. 135:23-136:2 ("Q. Is it fair to say that someone can say that its sensible to have no cholesterol in a snack? . . . *A. Yes.*").

ingredients after being deceived by Kraft's health and wellness advertising. This Court has previously rejected Kraft's first point, that Plaintiffs' failure to read the label renders them "unreasonable consumers" as a matter of law. *Red*, 2011 U.S. Dist. LEXIS 26893, at *10-11.[15] But there is a more fundamental problem with Kraft's assertion that Plaintiffs' allegedly unreasonable conduct renders their claims atypical. In *Miletak*, the defendant argued that the "typicality requirement [was] not met because [p]laintiff did not read his policy documents or other notices." 2010 U.S. Dist. LEXIS 26913, at *29. The court found the argument:

> unavailing because the Court applies an objective 'reasonable consumer' standard in determining whether [d]efendants' billing statements or other materials are fraudulent within the meaning of the UCL. . . .  Plaintiff's alleged failure to carefully scrutinize the Statements is not relevant to establishing his claim or those of the absent class members [and thus his] . . . claims are typical of the proposed class.

*Id.* at *31 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)); *accord Menagerie*, 2009 U.S. Dist. LEXIS 108768, at *43-44. ("The Court agrees with plaintiffs that common issues predominate with regard to plaintiffs' claim of a common classwide omission under the 'fraudulent' prong of the UCL. This UCL

---

[15] Once again, Kraft misrepresents facts, claiming Ms. Whitt "purchases a variety of snacks and food for her family, including KFC fried chicken, eggs, bacon, ice cream, potato chips, white bread, and Goldfish crackers—all of which have trans fat, high fructose corn syrup, white flour, and other 'bad' ingredients that are the subject of this case." Opp. 8. In fact, KFC fried chicken contains none of these ingredients. Nor do eggs, nor the market-leading bacons, Hormel Black Label Bacon and Oscar Mayer Bacon. Nor do most ice creams, such as Dreyer's Vanilla Ice Cream. Nor do most potato chips; for example, Lay's Classic Potato Chips, contain no trans fat, no high fructose corn syrup, and no white flour. And the leading brand of white bread, Wonder Bread, contains no trans fat. *See* Weston Dec. Exhibits. D-I.

1   claim will be adjudicated under the 'reasonable consumer' standard rather than by
2   examining the individual circumstances of each plaintiff.").

3         Kraft's next typicality argument, that Plaintiffs' purchasing habits "differed"
4   from the class's rendering them atypical, is absurd—no class could be certified if
5   every member must have purchased a deceptively-labeled product with the
6   identical frequency. *C.f. In re Citric Acid*, 1996 U.S. Dist. LEXIS 16409, at *15
7   (N.D. Cal. Oct. 1, 1996) ("[T]he variety among plaintiffs with regard to frequency,
8   continuity, recency, and mode of purchase contributes to their representativeness
9   because there will likely be similar diversity among members of the class.").
10  Similarly, Ms. Whitt purchasing one product in an isolated incident after the suit
11  was filed does not render her atypical. *See Zeisel*, 2011 U.S. Dist. LEXIS 60608, at
12  *10-12 (plaintiff not inadequate "because he has continued to purchase, and
13  testified that he would continue to purchase Shelled Walnut Products since he filed
14  suit").

15        Finally, Kraft contends Plaintiffs are atypical because they are supposedly
16  subject to two "unique defenses," which must be "central to the litigation" to
17  defeat typicality. *Herrera v. LCS Fin. Servs. Corp.*, 2011 U.S. Dist. LEXIS 58288,
18  at *29 (N.D. Cal. June 1, 2011) (citation omitted); *see also Anderson v. New*
19  *Dimension Fin. Servs., L.P.*, 2001 U.S. Dist. LEXIS 11412, at *15 (N.D. Ill. Aug.
20  7, 2001) (citation omitted) ("Defenses that are unique to a named plaintiff are
21  relevant to the inquiry into whether the plaintiff's claims are typical but are not
22  necessarily dispositive of the issue."). Kraft first asserts without explanation that
23  reliance is a "unique defense," but "[t]he defense of non-reliance is generally not a
24  basis for denial of class certification." *Stiller v. Costco*, 2010 U.S. Dist. LEXIS
25  140297, at * (S.D. Cal. Dec. 13, 2010) (internal quotations omitted) (citing *Hanon*,
26  976 F.2d at 508)). This is sensible. At the class certification stage, issues of fact
27  inevitably abound, including as to the named plaintiff's reliance. Because the
28  named plaintiff is the only class member who must show reliance under the UCL,

24

FAL and CLRA the defense of non-reliance will virtually *always* present a technically unique defense, and thus no named plaintiff could ever be typical.

Kraft next asserts—also without explanation—that Plaintiffs are uniquely subject to a statute of limitations defense. But in the 18 months this case has been pending, after more than 125 docket entries, Kraft has never asserted such a defense, whether in its several Rule 12 motions over multiple rounds of briefing, or in its Answer (Dkt. No. 83). Accordingly, it is waived, and thus cannot present a unique defense. *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . statute of limitations")); *see also Morrison v. Mahoney*, 299 F.3d 1042, 1046 (9th Cir. 2005) (Federal Rules require a defendant "to raise every defense in its *first responsive pleading*, and defenses not so raised are deemed waived" (emphasis added)); *Jorst v. Bros.*, 2001 U.S. Dist. LEXIS 12824, at *27-28 (N.D. Cal. Aug. 13, 2001) (statute of limitations defense waived under Rule 8(c) where "plaintiffs have suffered prejudice, as the parties have proceeded through almost a year of litigation, including depositions of multiple witnesses and preparing the summary judgment motions."); *Taylor v. Garrett*, 1992 U.S. Dist. LEXIS 14328, at *8 (E.D. Pa. Sept. 17, 1992) ("Defendants' answer to the first amended complaint . . . asserted sixteen affirmative defenses but failed to present a statute of limitations defense. It is well settled that a statute of limitations time bar is waived under Rule 8(c) if not raised in defendant's answer to the complaint." (citation omitted)); *accord NAACP v. Corinth*, 83 F.R.D. 46, 58 (N.D. Miss. 1979) (on motion for class certification, "[w]e need not be concerned with the question of reducing the size of the putative class because of any applicable statute of limitations [because] defendants have failed to plead in their answer the statute of limitations as an affirmative defense, as required by Rule 8(c)").

Moreover, Kraft is wrong because any class member who purchased a qualifying product prior to the statutory period is subject to a limitations defense.

1   But that does not raise a predominating individual issue because the statute of

2   limitations defense can be defeated by the delayed discovery doctrine, which can

3   be proven by common evidence of Kraft's conduct. *See infra* Point VII(C).

4       **C.    Adequacy**

5       The adequacy requirement involves a two-part inquiry: "(1) do the named

6   plaintiffs and their counsel have any conflicts of interest with other class members

7   and (2) will the named plaintiffs and their counsel prosecute the action vigorously

8   on behalf of the class?" *Hanlon*, 150 F.3d at 1020. "[T]he mere potential for a

9   conflict of interest is not sufficient to defeat class certification; the conflict must be

10  actual, not hypothetical." *Berrien v. New Raintree Resorts Int'l, LLC*, 2011 U.S.

11  Dist. LEXIS 90594, at *8 (N.D. Cal. Aug. 15, 2011) (citations omitted). "This

12  requirement is satisfied as long as one named plaintiff adequately represents the

13  class." *Kyne v. Ritz-Carlton Hotel Co., L.L.C.*, 2011 U.S. Dist. LEXIS 77814, at *9

14  (D. Haw. June 27, 2011) (citation omitted). Kraft challenges Plaintiffs' adequacy

15  on four grounds: their typicality; their supposed lack of involvement in, or

16  understanding of, the case; their supposed lack of credibility; and their counsel's

17  adequacy. Opp. 22-23, 38-40. None has merit.

18      Kraft's first argument, that Plaintiffs are inadequate because their claims are

19  atypical, *id.* at 22, is wrong for the reasons discussed above. [16] Kraft next makes a

20  series of arguments based on Plaintiffs' supposed lack of knowledge of the case.

21

22  [16] *Turner v. A.B. Carter, Inc.*, 85 F.R.D. 360, 364 (E.D. Va. 1980), Opp. 22, is

23  inapposite. That case involved injuries stemming from alleged discriminatory
    racial steering practices in residential housing, and the court found "tester"

24  plaintiffs—those who had "sought information from a lessor or real estate agency
    […] without a good faith intent to actually lease"—inadequate to represent "renter"

25  plaintiffs, who sought rental information "with the good faith intent, at the time, to

26  actually lease," *Id.* at 366 & n.9. Here, Plaintiffs' injury is not "qualitatively

27  different from," *id.* at 367, but identical to, the class members: each was injured by

28  purchasing foods labeled in a manner likely to deceive a reasonable consumer.

Opp. 22. "The threshold of knowledge required to qualify a class representative is low; a class representative will be deemed inadequate only if 'startlingly unfamiliar' with the case." *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259 , 267 (N.D. Cal. 2011) (quoting *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004)). Kraft is wrong that Plaintiffs are not involved in or knowledgeable about this case. Besides pre-filing communications to prepare the Complaint, each Plaintiff assisted counsel in providing initial and supplemental responses to interrogatories and document requests, and each searched personal hard copy and electronic files for responsive documents. *See, e.g.*, Red Dep. Tr. 17:12-18:14; Whitt Dep. Tr. 33:9-36:16. Each prepared then sat for deposition, Red for five hours, Whitt for four.[17]

Kraft then complains that Plaintiffs are unfamiliar with the procedural history involving its multiple attempts to dismiss this action. Such detailed recall of these details is not required, however, because "[t]he fact that plaintiffs are familiar with the basis for the suit and their responsibilities as lead plaintiffs is sufficient to establish their adequacy." *Hodges*, 274 F.R.D. at 267 (citation omitted). *See generally* Red. Dep. Tr. 89:2-15; Whitt Dep. Tr. 85:3-18, 86:13-87:4.

Kraft also argues Ms. Red is inadequate because she supposedly does not understand what it means to be a class representative. Opp. 22. Once again, the testimony Kraft cites does not support its contention. Following a confused

---

[17] Both Plaintiffs also showed their dedication to being representative plaintiffs in actions challenging health and wellness advertising on products containing trans fat by serving as class representatives in a similar action against Unilever, including taking time off work and traveling to attend a Court hearing in San Jose, and reviewing and approving the final settlement on behalf of a nationwide class, obligating Unilever to remove trans fat from all its margarines. In that case, Judge Ware held Ms. Whitt and Red "will fairly and adequately protected the interests of the Members of the Settlement Class," *Red v. Unilever United States, Inc.*, No. 10-cv-387 JW (N.D. Cal.) (Dkt. No. 163 at 2, ¶ 5). *See generally* Red Dep. Tr. 7, 86 (testimony concerning involvement in *Unilever*); Whitt Dep. Tr. 154-56 (same).

1    exchange interrupted by objections, after Ms. Red initially answered, "No," she

2    immediately sought to correct herself: *"I mean -- . . . Say it again, because I got*

3    *lost with you guys."* Red. Dep. Tr. 78:19-79:1. Rather than repeat the question as

4    requested, Kraft asked others before returning to the topic. Then, Ms. Red testified:

5         Q.    Do you know what class of people you're seeking to represent? Do

6               you know who is in the class?

7         A.    *People who bought the products.*

8         Q.    Okay. Everywhere? Anywhere?

9         A.    *Ever since maybe 2000.*

10        Q.    Okay, and what relief are you seeking for yourself, if you know?

11        A.    *Just to take out labels that are not honest. You know, if it's not*

12              *healthy, I don't –   * * ***

13        Q.    [Are] you[] going to seek to have the class compensated – class

14              members?

15        A.    *Well, I think they deserve something if – if – if they bought the*

16              *products, at least something towards that.*

17   *Id.* 96:17-97:24.[18] Kraft also attacks Ms. Whitt's adequacy because she was

18   unaware the Weston Firm had hired co-counsel to help prosecute the case, but

19   "does not provide a rationale as to why . . .[that] bears on the adequacy of Plaintiffs

20   to serve as class representatives." *Alonzo*, 2011 U.S. Dist. LEXIS 63243, at *25

21   (rejecting argument that plaintiffs' failure to attend deposition and length of time

22   since plaintiffs met their counsel weighed on adequacy).

23        Kraft next argues Plaintiffs are inadequate because of their supposed "lack

24   of credibility regarding the allegations being made," Opp. 22 (citation omitted). As

25   _____

26   [18] Ms. Whitt explained to Kraft's counsel that she chose to be a plaintiff in this
     case because she was "just really surprised about the misleading information that
27   you're putting in your products," and also provided a complete understanding of
     her role as a class representative. *See* Whitt Dep. Tr. 157:23-159:21.
28

1   demonstrated above, Kraft seriously mischaracterizes Plaintiffs' testimony, and its

2   argument is wholly unsupported. But even if Kraft were right, "credibility

3   problems do not automatically render a proposed class representative inadequate."

4   *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010). Thus in

5   *Zeisel*, the court held that despite inconsistencies in plaintiff's testimony, "on this

6   record the Court cannot say his credibility is so open to question that it is likely to

7   harm [his] case," 2011 U.S. Dist. LEXIS 60608, at *28 (internal quotations and

8   citation omitted). *See also Alonzo*, 2011 U.S. Dist. LEXIS 63243, at *26

9   ("Plaintiffs note that there were inconsistencies with Alonzo's testimony but assert

10  that these are inconsistencies that are inherent in deposition testimony and the

11  result of confusion rather than a lack of credibility. . . . Defendant's assertions do

12  not establish that Plaintiffs[] would be inadequate class representatives.").

13  Finally, Kraft challenges the adequacy of Plaintiffs' counsel, Opp. 38-40,

14  but the declarations submitted by counsel (Dkt. Nos. 96-98), and the recent

15  decisions of several courts,[19] contradict Kraft's arguments.

16

17

18

___

19  [19] *See, e.g., Hohenberg v. Ferrero U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 38471, at

20  *5 (S.D. Cal. Mar. 22, 2011) (Appointing Weston and Marron interim class

21  counsel and stating, "[e]ach proposed class counsel appears to be well qualified to

    represent the interests of the purported class and to manage this litigation.");

22  *Chacanaca v. Quaker Oats Co.*, 2011 U.S. Dist. LEXIS 65023, at *8 (N.D. Cal.

23  June 14, 2011) (on a contested motion for appointment, stating:

24      There is no question here that both the Weston/Marron counsel . . .
        have ample experience handling class actions and complex litigation.

25      It is also clear that both have particular familiarity with suits involving
        issues of mislabeling in the food industry. Even more specifically,

26      both firms seem to have developed a niche expertise in litigation
        centered on trans fat. . . . [T]hey will therefore be appointed as interim

27      class counsel.

28

## VI.   CERTIFICATION UNDER RULE 23(b)(2) REMAINS PROPER AFTER *DUKES III*

District court decisions after *Dukes III* have affirmed that the basic principles of certification under Rule 23(b)(2) in the Ninth Circuit have not been changed. In *Ugas v. H&H Block Enters., LLC*, for example, after "carefully consider[ing] . . . the Supreme Court's decision in *Dukes* [*III*]," the court held that to determine whether final relief "relates exclusively or predominantly to money damages," courts must:

> examine the specific facts and circumstances of each case, focusing predominantly on the plaintiffs' intent in bringing the suit. To certify a class under Rule 23(b)(2) there must be a finding that (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.

2011 U.S. Dist. LEXIS 86769, at *6 (C.D. Cal. Aug. 4, 2011) (citations omitted). Here, both tests are met.

First, given plaintiffs' allegations that the artificial trans fat in Kraft's products is toxic, unsafe at any level, and substantially increases the risk of disease and death, reasonable consumers would seek to force Kraft to remove this dangerous substance from its products, or at least refrain from advertising those products as healthy. Ms. Red and Ms. Whitt both testified their primary interest was in having Kraft remove the misleading labels. Red Dep. Tr. 96:24-97:2; Whitt Dep. Tr. 86:25-87:1. And that is consistent with the nationwide class settlement Plaintiffs approved in *Unilever*, which required the company to remove trans fat from all of its margarines but did not include monetary compensation to the class. Second, if a jury or the Court finds Kraft's health and wellness advertising is likely

30

1    to deceive a reasonable consumer, the class will be entitled to, and the Court would

2    presumably issue, final injunctive relief precluding Kraft from using the

3    advertising. *See, e.g.*, *Potter v. Blue Cross Blue Shield of Mich.*, 2011 U.S. Dist.

4    LEXIS 92076, at *24-25 (E.D. Mich. July 14, 2011) (post-*Dukes III* decision

5    applying criteria to certify 23(b)(2) class).[20]

6    ## VII.   THE REQUIREMENTS OF RULE 23(b)(3) ARE MET

7        "In order to determine whether common issues predominate, the Court must

8    analyze the elements of each of the claims [plaintiff] asserts against [defendant]."

9    *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *30-31 (citation omitted). Although Kraft

10   has not done this, it asserts that the elements of Plaintiffs' statutory claims,

11   damages, and the statute of limitations each raise predominating individual

12   issues.[21]

13       ### A.   Materiality

14       Kraft argues that a class cannot be certified under Rule 23(b)(3) because

15   "Kraft Foods' consumer research does not evidence a 'common' consumer view of

16   the snacks." Opp. 26. In support, Kraft offers the Strobel and Kivetz Declarations

17   and contends the Court will have to make "individual factual inquiries regarding

18   whether each class member was 'induced' by false advertising to purchase the

19   product at issue." *Id.* 27. This argument miscomprehends California law and has

20   been repeatedly rejected. *See Stearns*, 2011 U.S. App. LEXIS 17454, at *11-17;

21   *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *31-34; *Kingsbury*, 2011 U.S. Dist.

---

23   [20]  In addition, there is post-*Dukes III* authority for "carving out" Plaintiffs'
24   restitution claims for certification under Rule 23(b)(3) while certifying plaintiffs'
25   injunctive relief claims under the UCL. *See Aho v. Americredit Fin. Servs.*, 2011
     U.S. Dist. 80426, at *18-21 (S.D. Cal. July 25, 2011).

26   [21]  Kraft also asserts that Article III standing requirements and Plaintiffs' reliance
27   raise predominating individual issues. Plaintiffs addressed those arguments above
     and do not repeat that analysis here.

28

1  LEXIS 71058, at *17-19; *Chavez*, 268 F.R.D. at 378-79; *Keilholtz*, 268 F.R.D. at

2  342; *Johnson*, 2011 U.S. Dist. LEXIS 45120, at *11-15**;** *Wolph*, 272 F.R.D. at 488**;**

3  *Menagerie*, 2009 U.S. Dist. LEXIS 108768, at *40-44.

4         To the contrary, once a plaintiff makes the necessary showing for standing,

5  "no further individualized proof of injury or causation is required to impose

6  restitution liability against the defendant in favor of absent class members." *Steroid*

7  *Hormone*, 181 Cal. App. 4th at 154. *See also In re Nat'l W. Life Ins. Deferred*

8  *Annuities Litig.*, 268 F.R.D. 652, 668 (S.D. Cal. 2010) (certifying UCL class

9  because "the absent class members need not prove individual reliance and the

10 individual questions going to the Named Representatives' reliance do not

11 predominate"); *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1292

12 (2002) (plaintiff deemed to have satisfied burden "of showing causation as to each

13 by showing materiality as to all"). And although the CLRA requires that each class

14 member have actual injury caused by defendant's unlawful conduct, "causation, on

15 a class-wide basis, may be established by *materiality*. If the trial court finds that

16 material misrepresentations have been made to the entire class, an inference of

17 reliance arises as to the class." *Stearns*, 2011 U.S. App. 17454, at *18 (quotation

18 omitted).[22]

19

20 [22] Kraft's reliance on *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 977-81

21 (2009), Opp. 27, is misplaced, since it was superseded by the California Court of

22 Appeal's decision in *Steroid Hormone* that "to the extent the appellate court's

23 opinion [in *Cohen*] might be understood to hold that plaintiffs must show class

    members' reliance on the alleged misrepresentations under the UCL, we disagree."

24 181 Cal. App. 4th at 158. *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905 (2010) is

25 similarly distinguishable because "likely less than 17% of the proposed class"

    shopping at Target.com were exposed to the computer error that caused the false

26 "Made in USA" claim. *Id.* at 196. Here, 100% of consumers who purchased the

27 Kraft products in packaged with health and wellness advertising saw the deceptive

    statements. *Pfizer* is also inapposite. The California Court of Appeal overturned a

28 lower court's granting certification to a class that was "grossly overbroad" because

1    Nor does the fact that this action involves six products create predominating

2    individual issues. "To the extent that factual distinctions between Plaintiffs exist,

3    the Supreme Court has recognized that such factual differences do not prevent

4    class action certification when '[i]t is unlikely that differences in the factual

5    background of each claim will affect the outcome of the legal issue.'" *Stukenberg*

6    *v. Perry*, 2011 U.S. Dist. LEXIS 59453, at *18 (S.D. Tex. June 2, 2011) (citing

7    *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)); *see also In re Initial Pub.*

8    *Offering Sec. Litig.*, 227 F.R.D. 65, 87 (S.D.N.Y. 2004) ("In general, where

9    putative class members have been injured by similar material misrepresentations

10   and omissions, the commonality requirement is satisfied.")

11   **B.    Damages**

12   Courts have repeatedly rejected the notion that individual issues of

13   damages—which will almost *always* be present in consumer class actions—

14   predominate. *McKenzie*, 2011 U.S. Dist. LEXIS 65278, at *30 n.3 (quoting *Jaimez*

15   *v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (2010) ("The fact that

16   individualized proof of damages may ultimately be necessary does not mean,

17   however, that [plaintiff's] theory of recovery is not amenable to class treatment."));

18   *Pecover*, 2010 U.S. Dist. LEXIS 140632, at *31 ("Different amounts of damage

19   sustained by individual plaintiffs . . . are not enough to defeat class certification.").

20   Thus in *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *31-33, the court was

21   satisfied "Zeisel has demonstrated that common issues of law and fact

22

23   "many class members, if not most, were never exposed to the alleged
     misrepresentations . . . ." 182 Cal. App. 4th 622, 631 (2010). However, that was

24   because, unlike here, the class definition impermissibly captured 19 mouthwash
     bottles (out of 34) that did not contain challenged claims. *Id.* at 631-32. And a

25   week ago, the Court of Appeals held the plaintiff in *Pfizer* is entitled to bring a

26   renewed certification motion with a more precisely-defined and ascertainable class.
     *Galfano v. Pfizer Inc.*, No. B227121, slip op. (Cal. Ct. App. Aug. 18, 2011),

27   Weston Dec. Ex. J.

28

predominate" because he "contends he will be able to prove the proper amount of restitution by relying on documents produced by Diamond relating to net sales, profits, and costs, as well as retail prices of its Shelled Walnut Products." *Id.*, at *33 (citing *Chavez*, 268 F.R.D. at 379 ("[a]t class certification, a plaintiff must present 'a likely method for determining class damages,' though it is not necessary to show that his method will work with certainty at this time." (citation omitted))); *Zeisel* also dealt with the damages under the CLRA. Again, the Court held the issue did not predominate because "there are common means of proving up damages under Zeisel's theory, i.e., that he and absent class members should recover the purchase price of Shelled Walnut Products." *Id.* at *34; *see also Chavez*, 268 F.R.D. at 379 ("plaintiff has demonstrated at least one measure of damages that is determinable by objective criteria to satisfy sanding requirements under Article III").

As in *Zeisel* and *Chavez*, Plaintiffs' allegations here sufficiently establish several possible means of proving up damages. First, the SAC alleges the "Kraft PHVO Products cost more than similar products without misleading labeling, and would have cost less absent the false and misleading statements." SAC ¶ 133. That allegation is provable by reference to objective criteria, e.g., information about the Kraft Products' net sales and retail prices, and reference to competing products (including other Kraft products that did not contain trans fat or carry health and wellness advertising). The SAC also alleges Plaintiffs "would have been willing to pay less," or "would not have purchased the Kraft PHVO Products . . . absent these advertisements." SAC ¶ 135. Those allegations lead wide latitude for arguing, as Plaintiffs do, that the products had *no* value to a reasonable consumer because they are dangerous and unlawfully labeled, or for allowing a fact-finder to make a determination as to the proper proportion of the retail purchase price that should be restored to class members because of Kraft's deceptive advertising.

### C.     Statute of Limitations

Kraft argues that its statutes of limitations defense presents a predominating individual issue "[b]ecause determining whether each member's claim is time-barred requires an individualized inquiry," Opp. 37. Kraft's waiver of the statutes of limitations defense precludes this argument; but Kraft is also wrong.

Plaintiffs propose a class period predating the statute of limitations under their California law claims on the basis of their properly-pled delayed discovery allegations, SAC ¶¶ 140-44. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1140-44 (C.D. Cal. 2010); *Henderson v. J.M. Smucker Co.*, 2011 U.S. Dist. LEXIS 27953, at *6-8 (C.D. Cal. Mar. 17, 2011). The allegations may be applied on a class-wide basis so long as the Court determines Plaintiffs could submit common proof on which a jury could find delayed discovery should apply. *See Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1263 (11th Cir. 2003) (evidence of the defendant's behavior common to the class sufficiently established elements of fraudulent concealment); *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. at 310 (fraudulent concealment allegations focused on defendant's behavior that was common to the class).

The elements of delayed discovery are (a) lack of knowledge, (b) lack of means of obtaining knowledge in the exercise of reasonable diligence, and (c) the manner of actual discovery. *See Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991) (applying California law). Plaintiffs can prove each element by reference to common proof.

"The delayed discovery rule is typically employed when the defendant is in a far superior position to know of the act and the injury, and the act and the injury are difficult for the plaintiff to detect." *Keilholtz v. Lennox Hearth Prods.*, 2009 U.S. Dist. LEXIS 81108, at *9-10 (N.D. Cal. Sept. 8, 2009) (citations omitted). Although the court in *Keilholtz* dismissed a class action complaint for insufficiently pleading delayed discovery on behalf of the class, its decision

35

suggests it is proper to apply the rule to unnamed class members where a plaintiff may plausibly demonstrate "the experiences of those unnamed class members are similar to their own." *See id.* at *11. *Compare* SAC ¶¶ 143-44.

At the certification stage, Plaintiff need only show that she could demonstrate the elements by common evidence—she is not required to prove the merits of her delayed discovery allegations now. *See Tibble v. Edison Int'l*, 2009 U.S. Dist. LEXIS 120939, at *28 (C.D. Cal. June 30, 2009) ("Because the statute of limitations is an affirmative defense, . . . a determination on the statute of limitations is premature at this point in the litigation."). Plaintiffs offer evidence suggesting consumers lacked knowledge and the means of obtaining knowledge of the claims because Kraft was "in a far superior position to know of the act and the injury, and the act and the injury are difficult for the plaintiff to detect." *Keilholtz*, 2009 U.S. Dist. LEXIS 81108, at *9-10. This includes evidence of Kraft's behavior affecting every consumer of its deceptively-labeled products, like Kraft's knowledge of the dangers of trans fat and the degree to which its health and wellness advertising influences consumer purchases. As for the final element, class-wide proof of the manner of discovery for unnamed class members will consist of the public notice distributed upon certification of a class in this case.

Even if Plaintiffs' allegations of delayed discovery were not subject to common proof, however, "individual issues relating to the statute of limitations do not bar certification where there is otherwise a sufficient showing of commonality." *In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 531 n.8 (N.D. Cal. 2010) (citing *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 477-78 (9th Cir. 1976)). *See also Bautista-Perez v. Holder*, 2009 U.S. Dist. LEXIS 63446, at *20-21 (N.D. Cal. July 9, 2009) ("[W]hether [representative plaintiffs] and similarly situated class members . . . can prevail on the merits or are time-barred . . . is a question for a later stage of litigation. Their claims do not lack commonality simply because a legal question regarding the statute of limitations

36

1  remains for resolution at the merits stage of litigation."). Further, if the statute of

2  limitations did present a predominating individual issue, the remedy would be to

3  narrow the class period, not deny certification.

4  **VIII. A NATIONWIDE CALIFORNIA LAW CLASS IS PROPER**

5      **A.    Nationwide Application of California Law Does Not Violate Due**

6             **Process Under *Shutts***

7      "[T]he Due Process Clause . . . provide[s] ***modest*** restrictions on the

8  application of forum law." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818

9  (1985) (emphasis added). A state only "must have ***a*** significant contact or

10 significant ***aggregation of contacts***, creating state interests, such that choice of its

11 law is neither arbitrary nor fundamentally unfair." *Id*. (emphasis added). Due

12 Process serves only to prevent the extreme of applying the law of a state "only

13 casually or slightly related to the litigation." *Id* at 819.

14     Kraft's contacts with California relating to the claims of this case are not

15 "casual" or "slight," but include, for example, manufacturing facilities in five

16 California cities and distribution of products to thousands of California retail

17 customers and millions of consumers. *See* Mot. 24-25. Critically, some of those

18 California manufacturing facilities manufactured products at issue in this case. For

19 example, a Nabisco facility in Buena Park, California, in operation from 1965 to

20 December 2004, produced 5 million Ritz Crackers and 6.2 million Honey Maid

21 Graham Crackers per 8-hour shift, and also manufactured Premium Saltines. *See*

22 Weston Dec. Ex. C.

23     Due Process is also no barrier to certification of a nationwide class because,

24 unlike in *Shutts*, Kraft has demonstrated no conflict between California and the

25 laws of other states. "There can be no injury in applying Kansas law if it is not in

26 conflict with that of any other jurisdiction connected to this suit." *Id*. at 816. See

27 *Parkinson v. Hyundai Motor Am*., 258 F.R.D. 580, 589 (C.D. Cal. 2008)

28 (certifying nationwide California-law class where defendant has substantial

37

California operations, a significant number of class members reside in California, and California's consumer protection statutes are similar to those of other states, even though production of product at issue was entirely in Korea). Accordingly, California law may be applied to a nationwide class without violating Kraft's right to due process.

### B.     Kraft Did Not Satisfy Its California Choice-of-Law Burden

Because the application of California law to the claims of the class does not violate due process, it was Kraft's burden to show foreign law, rather than California law, should apply. *Keilholtz*, 268 F.R.D. at 340 (citing *Martin v. Dahlberg*, 156 F.R.D. 207, 218 (N.D. Cal. 1994); *Pecover*, 2010 U.S. Dist. LEXIS 140632, at *53; *Wolph*, 272 F.R.D. at 485. As the proponent of foreign law, Kraft bore the burden of demonstrating that another state's law (1) is materially different than California's, (2) actually conflicts with California's, and (3) that that state has a greater interest in application of its law than California, e.g., because its interests would be "more impaired" if its law were not applied. *See Wash. Mut. Bank v. Super. Ct*., 24 Cal. 4th 906, 919-20 (2001). Kraft's 2-page effort falls well short.

Although Kraft concludes that Illinois, New Jersey and Delaware have a "greater interest" in application of their law, Kraft has failed to demonstrate any material differences that actually conflict with California law. Rather than attempt the governmental analysis as it was obligated, Kraft resorts to the conclusory statement that "the concurrently-filed chart (Ex. 38)[23] [demonstrates] California's

---

[23] Plaintiffs object to Exhibit 38 as an improper attempt to circumvent the 40-page limit set by the Court's July 19 Order (Dkt. No. 113). Such incorporation by reference "disregards the spirit of the Local Rules and is unfair to Plaintiff," particularly after Plaintiff stipulated to extending Kraft's limit to 40 pages. *See Cirulli v. Hyundai Motor Co.*, 2009 U.S. Dist. LEXIS 125139, at *6 (C.D. Cal. June 12, 2009). Accordingly, the Court should strike or ignore Exhibit 38. *See, e.g., Delta Smelt Consol. Cases v. Salazar*, 760 F. Supp. 2d 855, 939 (E.D. Cal.

consumer protection laws differ materially from the consumer protection laws of other states." Opp. 34. But Kraft's "mere listing of so-called 'material differences' in appendices, without providing accompanying analysis, [is] almost entirely unhelpful." *Pecover*, 2010 U.S. Dist. LEXIS 140632, at *58. This is especially true where Kraft's chart—besides being nearly impossible to read—merely identifies certain elements of various laws and does not even attempt to show that any purported differences are material. Instead, Kraft

> fails to identify the applicable rule of law in each potentially concerned state or show these states' rules of law materially differ from the law of California. Because Defendant has failed to satisfy its burden to do so, the Court is unable to proceed to steps two and three of a choice of law analysis.

*Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 529 (S.D. Cal. Jan. 6, 2011); *see also Was. Mut.*, 24 Cal. 4th at 919. Moreover, Kraft cannot rely on general language from *Wolph* or other cases to convince this Court of material differences *in this case*, since Kraft must show materiality "on the facts of this case." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. Cal. 2010); *see also Mazza*, 254 F.R.D. at 622 ("Defendant's analysis fails to show that these differences are in fact material."). Even if the Court could discern material differences in state law from Kraft's chart, however, Kraft has failed to show any "true conflicts."

If the Court nevertheless finds the nationwide application of California law inappropriate, Plaintiffs respectfully request that the Court exercise its discretion to certify a California-only class, with leave file an amended motion that would expand the class to states where application of California law is appropriate and/or

2010) (refusing to address arguments incorporated by reference because it would be prejudicial).

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1  bring identical claims under other states' laws . *See, e.g., Tylka*, 178 F.R.D. at 498
2  (After declining to certify nationwide class, certifying class under state law
3  because "a failure to certify a class will most likely render individual actions in this
4  case noneconomical for Plaintiffs to pursue.")

### CONCLUSION

6  The Court should grant Plaintiffs' Motion.

9  DATED: August 24, 2011                    Respectfully Submitted,

11                                                   /s/Gregory S. Weston
12                                                   Gregory S. Weston

13                                                   **THE WESTON FIRM**
14                                                   GREGORY S. WESTON
15                                                   JACK FITZGERALD
                                                     MELANIE PERSINGER
16                                                   1405 Morena Blvd., Suite 201
                                                     San Diego, CA 92110
17                                                   Telephone:  619 798 2006
18                                                   Facsimile:   480 247 4553

19                                                   **LAW OFFICES OF RONALD A.**
                                                     **MARRON, APLC**
20                                                   RONALD A. MARRON
21                                                   3636 4th Street, Suite 202
                                                     San Diego, CA 92103
22                                                   Telephone:  619 696 9066
23                                                   Facsimile:   619 564 6665

24                                                   ***Counsel for Plaintiffs and the***
                                                     ***Proposed Class***

40