**THE WESTON FIRM**
GREGORY S. WESTON (239944)
greg@westonfirm.com
JACK FITZGERALD (257370)
jack@westonfirm.com
MELANIE PERSINGER (275432)
mel@westonfirm.com
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

LAW OFFICES OF RONALD A. MARRON, APLC
RONALD A. MARRON (175650)
ron.marron@gmail.com
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone: (619) 696-9066
Facsimile: (619) 564-6665

Counsel for Plaintiff and the Proposed Class

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br><br>Defendants. | Case No. 2:10-cv-01028 GW (AGRx)<br>Pleading Type: Class Action<br>Action Filed: February 11, 2010<br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY RE: MOTION FOR CLASS CERTIFICATION**<br><br>Judge: The Hon. George H. Wu<br>Date: September 29, 2011<br>Time: 8:30 a.m.<br>Location: Courtroom 10 |

Plaintiffs respectfully lodge and request the Court take notice of the following two orders certifying similar false advertising claims:

- *Delarosa v. Boiron, Inc.*, 2011 U.S. Dist. LEXIS 106248, No. 8:10-CV-1569-JST (CWx) (C.D. Cal. Aug. 24, 2011) (Exhibit A)
- *Yumul v. Smart Balance Inc.*, No. 2:10-cv-00927-MMM (AJWx) (tentative order) (Exhibit B)

*Delarosa*, like this case, involves deceptive claims made on a product label under the UCL, FAL, and CLRA. After carefully considering the new standards imposed on 23(b)(2) classes by *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), Judge Tucker certified claims for injunctive relief, restitution, actual damages, and punitive damages under 23(b)(2), finding them incidental to the claim for injunctive relief because their application would not require any further factual inquiry. The court further found the same claims appropriate for certification under 23(b)(3) because the common issue of whether the defendant's label claims were deceptive predominated over any individual question.

*Yumul*, while a tentative order, is even more on point, because it involves essentially identical claims as those before the Court, under the same laws, brought by a plaintiff represented by the same counsel as Plaintiffs here. In particular, Judge Morrow rejected most every argument Kraft has made. See pp. 7-13 (rejecting same Article III standing argument Kraft makes); pp. 22-29 (rejecting various typicality arguments similar to those Kraft makes); pp. 31-32 & n. 80 (following *Tobacco II*, declining to consider expert report similar to the one Kraft submitted, and rejecting argument that the contention that consumers buy products for many different reasons shows predominance and materiality are lacking); pp. 37-40 (concluding a nationwide California law class is appropriate and does not violate due process).

Plaintiffs agree with Kraft that the Court should also consider *Stearns v. Ticketmaster Corp.*, __ F.3d __, 2011 U.S. App. LEXIS 17454 (9th Cir. Cal. Aug.

1

22, 2011). In particular, Plaintiffs respectfully request that the Court compare *Stearns* with various parts of Kraft's opposition to class certification, Dkt. No. 116.

| Kraft's Opposition Brief | *Stearns v. Ticketmaster* |
|---|---|
| The proposed class action cannot be prosecuted in federal court because Article III standing requires each plaintiff to show some injury. […] Plaintiffs have presented no evidence that all the class members suffered an injury to have Article III standing (p. 31) | In a class action, standing is satisfied if at least one named plaintiff meets the requirements. Thus, we consider only whether at least one named plaintiff satisfies the standing requirements. (at *16, quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc)) |
| commonality is lacking because many [proposed class members] did not rely on the allegedly misleading statements (p. 18)<br><br>Determining which putative class members were in fact harmed by the alleged misrepresentations on some of Kraft Foods' packaging would require individualized inquiries. (p. 33) | relief under the UCL is available without individualized proof of deception, reliance and injury." (at *12-13 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009))) |
| *Tobacco II* concerned the issue of standing only in California state courts […] Therefore, *Tobacco II* is "irrelevant" to the predominance inquiry required by Rule 23(b)(3). (pp 26-27) | The district court determined that individual issues predominated for purposes of the UCL claim […] Unfortunately, the district court did not have the benefit of *In re Tobacco II Cases* when it ruled, **and that case makes all the difference in the world**. (at *12, citation shortened) |

The rest of *Stearns* is just as unhelpful for Kraft when its citations to *Stearns* are examined in context, setting aside Kraft's liberties (once again). For example, Kraft quotes *Stearns* as follows: "there was no cohesion among the members

2

because they were exposed to quite disparate information[.]" Kraft Not. of Lodging at 2. Kraft does not indicate, however, that despite inserting a period where bracketed, the quoted sentence does not actually end there, but continues, "***from various representatives of the defendant***." *Stearns*, at *13 (emphasis added).

That is a key difference. *Stearns* was citing *Wal-Mart* as a factual example, and that case involved a corporate policy *forbidding* sex discrimination, but allegations that *individual managers* engaged in sex discrimination in various ways and to varying degrees. Here, Plaintiffs were exposed to *every* challenged claim on the label of each product purchased, not "disparate" claims made by different individuals across the country, each on their own deviating from an express corporate policy. There is simply no factual analogy to *Wal-Mart*.

Kraft also fails to note that *Stearns* analyzed the UCL and CLRA claims separately. Other than the incomplete quotation above, every part cited by Kraft is from the CLRA section. The lack of reference to the UCL holding is no surprise as the Ninth Circuit reversed the lower court's denial of UCL certification.

*Stearns* discussion of the CLRA was mixed, first reversing denial based on lack of CLRA notice, then affirming denial of an overly broad class, and finally reversing the dismissal of a complaint with a narrower class so a renewed motion could be filed on behalf of the narrower class. 2011 U.S. App. LEXIS 17454, at *20-27.

Kraft also claims *Stearns* held the larger proposed CLRA class was overbroad because of "differences among consumer behavior," but the section quoted dealt with an issue unique to the claims in *Stearns* not present in typical false advertising cases like this one.

In *Stearns*, the claim was that after visiting the Ticketmaster website to purchase concert and sports tickets, class members were deceptively enrolled in an unrelated coupon printing service, "inadvertently becoming committed to purchasing EPI's services, which they neither expected, nor wanted, nor used and

3

1 that EPI then proceeds to mulct them with continuing charges." *Id.* at \*4. Thus the
2 allegations were not the defendant falsely advertised a product, but that it had an
3 intentionally confusing website that charged people for a service they didn't want
4 to purchase.

5       This unusual factual situation created the issue of how to determine, from
6 among those enrolled in the coupon printing service, which individuals were hit
7 with charges that were indeed "neither expected, nor wanted, nor used." The long
8 quotation from Kraft about varying consumer behavior dealt with whether people
9 who enrolled, but never logged into the coupon site or complained about the credit
10 card charges, and thus could be assumed to fit into the category of those never
11 "expected" or "wanted" the service.

12       Here, again, the injury is not an unwanted product, but a product falsely
13 advertised, and injury can be presumed if the alleged deceptions would be material
14 to a reasonable consumer. That some class members might have not cared or
15 individually relied on the claims they were exposed to is no more relevant here
16 than it was in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 332 (2011), where
17 no doubt many class members were motivated to purchase the door locks at issue
18 by reasons irrelevant to the false "Made in U.S.A." claim on the label, or in *Chavez*
19 *v. Blue Sky Nat. Bev. Co.*, 268 F.R.D. 365 (N.D. Cal. 2010), where many class
20 members were undoubtedly compelled to purchase the subject beverages for
21 reasons other than the false statement of geographic origin.
22 //
23 //
24 //
25 //
26 //
27 //
28 //

| | |
|---|---|
| Dated: September 24, 2011 | Respectfully submitted, |
| | /s/ Gregory S. Weston |
| | **THE WESTON FIRM** |
| | GREGORY S. WESTON |
| | JACK FITZGERALD |
| | MELANIE PERSINGER |
| | 1405 Morena Blvd., Suite 201 |
| | San Diego, CA 92110 |
| | Telephone:  (619) 798-2006 |
| | Facsimile:   (480) 247-4553 |
| | |
| | **LAW OFFICES OF RONALD A. MARRON, APLC** |
| | RONALD A. MARRON |
| | 3636 4th Street, Suite 202 |
| | San Diego, CA 92103 |
| | Telephone:  (619) 696-9066 |
| | Facsimile:   (619) 564-6665 |
| | |
| | Counsel for Plaintiff and the Proposed Class |

5

*Red et al. v. Kraft Foods Inc. et al.,* Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY RE: MOTION FOR CLASS CERTIFICATION