Reply at 4.

It is clear that the above changes do not address all of Defendants' concerns about overbreadth. However, Plaintiffs argue that it is not necessary to condition class membership on exposure to any claims with respect to the Teddy Grahams, Honey Maid Grahams, Ginger Snaps and Vegetable Thins products because "Plaintiffs allege that, along with other health and wellness advertising, the product names [themselves] are deceptive," therefore every purchaser has standing. The suggestion that this Court found that Plaintiffs could state a claim based merely on the names of the products is, an overly generous (and, in the end, erroneous) interpretation of the Court's January 13, 2011 ruling. It is doubtful that the class - even under the amended definition - has been defined in such a way that all of the members of the proposed class would have Article III standing.

Here, the Court must distinguish between Article III standing and standing to sue under the UCL, FAL, and CLRA. Under the UCL, a plaintiff has standing where the plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.[3] "'[T]o avoid a dismissal based on lack of [Article III] standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention." 7AA Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil 3d §1785.1 at 390 (2005) (hereinafter, "Wright & Miller"). Therefore, a class definition can only include prospective plaintiffs who have Article III standing. Under the UCL, although named plaintiffs must demonstrate that they have suffered an injury in fact by pleading and proving actual reliance and the loss of money or property, the reliance requirement does not apply to other members of the class. See In re Tobacco II, 46 Cal.4th 298, 321 (2009); In re Vioxx Class Cases, 180 Cal.App.4th 116, 130 (2009) ("In order to obtain a remedy for deceptive advertising, a UCL plaintiff need only establish that members of the public were likely to be deceived by the advertising."). The same standard applies under the FAL and CLRA. See Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351, 1360 (2003) (noting requirement under the CLRA that plaintiff allege statements by defendant that are likely to deceive a reasonable consumer); Colgan v. Leatherman Tool Group, Inc., 135 Cal.App.4th 663, 682 (2006) ("To prevail on a false advertising claim, a plaintiff need only show that members of the public are likely to be deceived."). Nevertheless, to the extent that the proposed class appears to necessarily include consumers that were not exposed to the allegedly misleading statements, Kraft is correct that it is still overly broad.

2. Do the named Plaintiffs have standing?

The Court would reject Defendants' challenges to the representative Plaintiffs' standing.

---

[3] A consumer who purchases a product based on misrepresentation has Article III standing. See Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 329 (2011) ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately. This economic harm - the loss of real dollars from a consumer's pocket - is the same whether or not a court might objectively view the products as functionally equivalent.").

Defendants argue that statements by Red and Whitt during their depositions discredited the theory of the case set forth in the complaint. Among other things, Defendants assert that Red and Whitt testified that they considered the products at issue to be "indulgent treats," that they bought them because they liked their taste, that they purchased many of the products before (ands after) any of the alleged deceptive statements were on the packaging, and that many of the challenged statements were not misleading. While such statements are obviously problematic for Plaintiffs' lawsuit, such cherry-picked testimony is insufficient to demonstrate that the named Plaintiffs lack standing.

### B. Applicability of California Law to Nationwide Class

With this lawsuit, Plaintiffs purport to bring claims on behalf of a nationwide class under California's UCL. FAL, and CLRA. There has been no showing why such claims would be appropriate. Plaintiffs' asserted bases for applying California law to the claims of out-of-state class members are that Kraft Foods "maintains manufacturing and other facilities in California" and "has engaged in advertising and marketing in this District." Mot. at 24. These are insufficient.

In order to permit the application of the forum law to the claims of nonresidents, Plaintiffs must show that the defendant has a "'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [California] law is not arbitrary or unfair." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821-22 (1985). Thus, "a California court may properly apply" California laws "to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California." Wershba v. Apple Camp., Inc., 91 Cal. App. 4th 224, 243 (2001); Parkinson v. Hyundai, 258 F.R.D. 580, 598 (C.D. Cal. 2008). In In re Mattel, Inc., 588 F. Supp. 2d 1111 (C.D. Cal. 2008), the district court ruled that UCL and CLRA claims by non-resident defendants could be maintained against a non-California company, but noted:

> Plaintiffs complain of misrepresentations made in reports, company statements, and advertising that are reasonably likely to have come from or been approved by Mattel corporate headquarters in California. The connections between Fisher-Price and California are weaker, but the complaint does allege that "many of [Fisher-Price's] executives, including its Vice President of Consumer Products, are located in California." While these connections may, after a more thorough development of the facts, prove to be specious or irrelevant, the Court finds that the alleged California connections are sufficient to state claims by non-California plaintiffs.

Id. at 1119. Even if this Court were to follow this reasoning, Plaintiffs here have not demonstrated even this degree of connection between Defendants and the forum state.

In Sullivan v. Oracle Corp., 547 F.3d 1177, 1187 (9th Cir. 2008), the Ninth Circuit held

that, even where a defendant is a resident of California, a plaintiff may not assert an unfair competition claim against the corporation for activities that occurred outside California. It subsequently withdrew its Opinion upon certification of three questions to the California Supreme Court: "First, does the California Labor Code apply to overtime work performed in California for a California-based employer by out-of-state plaintiffs in the circumstances of this case, such that overtime pay is required for work in excess of eight hours per day or in excess of forty hours per week? [¶] Second, does [Business and Professions Code section] 17200 apply to the overtime work described in question one? [¶] Third, does [section] 17200 apply to overtime work performed outside California for a California-based employer by out-of-state plaintiffs in the circumstances of this case if the employer failed to comply with the overtime provisions of the FLSA?" See Sullivan v. Oracle Corp., 557 F.3d 979, 983 (9th Cir. 2009). In answering the third question, the California Supreme Court referred to the "so-called presumption against extraterritorial application," which requires courts to "presume the Legislature did not intend a statute to be 'operative, with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred "from the language of the act or from its purpose, subject matter or history.' [Citation]." Sullivan v. Oracle Corp., 51 Cal. 4th 1191, 1207 (Cal. 2011). The Court found that "[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL in full force." Id. at 1207.

    Here, Plaintiffs have not offered any facts that would overcome the presumption against extraterritorial application as to any of their claims. Plaintiffs do not allege that the representations or omissions at issue originated in California, but merely that they were part of a nationwide marketing campaign. On at least this basis, the Court would deny Plaintiffs' request to certify the class as it is currently defined. Cf. also Parkinson v. Hyundai Motor America, 258 F.R.D. 580 (C.D. Cal. 2008) (certifying class composed of California residents and non-residents and noting that the "representations or omissions" at issue were alleged to have emanated from California, and that the application of the UCL and CLRA was therefore proper).

    If this were the sole barrier to class certification (and it isn't), the Court would probably accede to Plaintiffs' request that the Court exercise its discretion to certify a California-only class. It would be premature, however, to give an indicated ruling on any future request to "bring identical claims under other states' laws." Reply at 40.

### C. Rule 23(a) Requirements
    1. <u>Whether the class is ascertainable</u>

    Defendants argue that Plaintiffs cannot satisfy the requirements for class certification set forth in Rule 23(a) because (1) the putative class is not ascertainable; (2) Plaintiffs have not met their burden of demonstrating Rule 23(a)'s commonality requirement; (3) the two class representatives cannot adequately and fairly represent the class, and (4) the class representatives' claims are not typical of the class.

    The question of whether the putative class is ascertainable is, again, primarily a question of standing. Although there is no requirement that each class member submit evidence of personal standing, "nonetheless, a class must 'be defined in such a way that anyone within it

would have standing.'" Burdick v. Union Sec. Ins. Co., 2009 U.S. Dist. LEXIS 121768 *10 (C.D. Cal. Dec. 9, 2009) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006)). Thus, a proposed class that includes "non-harmed" class members "is both imprecise and overbroad." Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009). Here, there is, potentially, a question whether Plaintiffs' proposed class - as now defined - included consumers who were not exposed to the supposedly misleading product labeling claims that are alleged in the Complaint. In addition, Kraft, citing Oshana v. Coca-Cola Co, 472 F.3d 506, 514 (7th Cir. 2006), maintains that the proposed class is defective because it includes consumers who may not have relied upon such claims in making their purchasing decisions. This last point may be difficult to reconcile with the statutory standing requirements for UCL, FAL, and CLRA claims discussed in the previous section. It seems clear, though, that to the extent the class definition includes consumers who might not even have seen the allegedly misleading claims, it is overbroad.

There is another problem that arguably goes to whether the class is ascertainable in the ordinary meaning of the word. Even assuming that the Court would approve an inclusive class consisting of consumers who may have purchased one of the products in reliance upon one of the supposed misrepresentations, Plaintiffs have not offered any mechanism for determining who such people might be. The proposed class is ascertainable in the sense that there are objective criteria for determining who its members are, but not in the sense that they could actually ever be determined. See Chavez v. Blue Sky Natural Bev. Co., 268 F.R.D. 365, 376 (N.D. Cal. 2010) ("The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member."); but see Zeisel v. Diamond Foods, Inc., 2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011) (certifying class where class definition "includes objective characteristics that would permit a consumer to identify themself as a member of the proposed class.").

    2. After *Wal-Mart Stores*, there are doubts about whether Plaintiffs have satisfied the commonality requirement.

Rule 23(a)(2) requires that a class may be certified only if there exist "questions of law or fact common to the class." The commonality requirement "is construed permissively," and the existence of some common legal and factual issues is sufficient. Jordan v. County of Los Angeles, 669 F.2d 1311, 1320 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982). As the Ninth Circuit has noted: "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

In Wal-Mart Stores, the Supreme Court instructed that, in order to satisfy the commonality requirement, plaintiffs must demonstrate that their claims "depend upon a common contention" that is "capable of classwide resolution." 180 L. Ed. 2d at 389. The Court further clarified that this means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 389-90. Here, if the "common contention" is that Kraft's labeling claims were so misleading as a whole that they were liable to deceive a reasonable consumer, the question would indeed appear to be capable of

resolution as to the class. But, probably, we cannot operate at that level of abstraction. As Defendants note, Plaintiffs' proposed class consists of millions of consumers who purchased different products bearing different labels over the span of a decade. Plaintiffs' contention that "Kraft has presented universal, class-wide misrepresentations . . . that do not vary between Class Members," Mot. at 10, is, as Defendants argue, demonstrably false. Different consumers were exposed to different representations.

Plaintiffs correctly note that there is at least one common question as to "whether representations on Kraft's labels violated the FDCA or Sherman Law (sic) as a predicate UCL ' 'unlawful' violation." Reply 18:20-22. It is doubtful that this would be a sufficient basis upon which to certify a class as to all of Plaintiffs' claims. The other supposedly common questions they identify (such as "whether the challenged representations on Kraft's labels were misleading") are actually too fragmented to support certification of a single class, as is demonstrated by Plaintiffs' own argument. Plaintiffs write:

> Here, not only is there a "common nucleus of operative facts" because the action challenges the advertising on six products manufactured by a single defendant, but there are substantial similarities between the products' advertising and ingredients (the basis for Plaintiffs' allegations that the advertising is deceptive). For example, five products have "made with" or similar ingredient claims; four have "sensible" and two have "smart" claims; two have "graham" and "honey" claims; and two have "wholesome" claims. All six products are made with trans fat and refined white flour, four with HFCS, and three with added sugar.

Reply 19:23-20:2.

In none of the cases cited by Plaintiff have the claims arisen from such a wide-range of products and product labelling claims. See, e.g., Zeisel, 2011 U.S. Dist. LEXIS 60608, at *3-4 (claims involving defendant's use of "express and implied statements about the positive effects of omega-3 fatty acid consumption on health to entice consumers to purchase its [products]"); Chavez, 268 F.R.D. 365, 368 (N.D. Cal. 2010) (product labels suggested that product was made in New Mexico); Johnson v. Gen. Mills, Inc., 2011 U.S. Dist. LEXIS 45120, at *8 (C.D. Cal. Apr. 20, 2011) (representations that defendant's yogurt promoted digestive health). Plaintiffs correctly note that, in Tylka v. Gerber Prods. Co., 178 F.R.D. 493, 497 (N.D. Ill. 1998), the court rejected defendant's argument that because the case concerned several Gerber products and consumers were "subject to different ads run in a variety of mediums, at different times," there was "no common nucleus of facts." Id. at 497. There, plaintiffs alleged that "(1) Gerber adulterated its second-stage and third-stage baby food products with water, sugar, starches, or a combination thereof, and (2) used misleading advertising to promote its adulterated goods." Id. at 495. Plaintiffs' claims in this case - that the presence of trans-fat and other ingredients in Kraft's products made their various statements regarding the wholesomeness of their products are somewhat analogous but not perfectly so.

Finally, Plaintiffs also appear to argue that the calculation of restitution presents a

common issue that would support certification. The Court would reject this argument. If there are no common issues as to liability, the motion for certification should be denied.

While the question of commonality is somewhat of a close call (its resolution would depend mostly on the extent to which the Wal-Mart Stores opinion has affected the rule that the commonality requirement should be liberally construed), the Court would note that it would reject Kraft's other arguments against finding commonality. Kraft argues (1) that commonality is lacking because consumers had differing reasons for purchasing the products and so many of the class members did not rely on the allegedly misleading statements; (2) that many consumers did not believe that the challenged statements were actually misleading; and (3) that the representative Plaintiffs opined at their depositions that if class members did not see or rely on the challenged statements, or if they understood that the snacks contained so-called "bad" ingredients, they have not been harmed. These arguments would only be effective if Plaintiffs were required to demonstrate reliance on the part of each member of the putative class.[4] This is not to say, of course, that Defendants will not ultimately succeed on the merits as to Plaintiffs' claims. It is just that these types of arguments would not be a barrier to finding that the commonality requirement is satisfied as to Plaintiffs' claims.

3. Typicality probably is satisfied.

Typicality requires a determination as to whether the named plaintiffs claims are typical of those of the class members she seeks to represent. Fed. R. Civ. P. 23(a)(3). To satisfy typicality, a class representative must "possess the same interest and suffer the same injury as the class members," Gen. Tel. Co. v. Falcon, 457 U.S. 147, 156 (1982), such that the evidence needed to prove the named plaintiff's claim is probative of the other class members' claims. Wiener v. Dannon Co., 255 F.R.D. 658, 665-66 (C.D. Cal. 2009). Typicality, like commonality, is a "permissive standard[ ]." Hanlon, 150 F.3d at 1020. Indeed, the Supreme Court has noted:

> "[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest."

Wal-Mart Stores, 180 L. Ed. 2d at 390 n.5 (quoting Gen. Tel. Co. v. Falcon, 457 U.S. at 157-58

---

[4] As noted in Stern, *Bus. & Prof. C. § 17200 Practice* (The Rutter Group 2010) § 8:78 at 8-21: "[i]n a true class action brought under the UCL, classwide restitution may be ordered without absolute proof that each member of the class is even entitled to recover; it is sufficient that defendant 'may have' obtained their money by unlawful or unfair means."

-11-

n. 13 (1982)). Typicality may be found lacking "if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) 976 F.2d at 508 (citation and internal quotes omitted). "[E]ven an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." J.H. Cohn & Co. v. Am. Appraisal Assoc., Inc., 628 F.2d 994, 999 (7th Cir. 1980).

Here, Defendants raise some questions as to whether Plaintiffs' claims would be typical of those of the class. Most of their arguments in this regard probably would not prevent the Court from certifying the class. Defendants argue that Red and Whitt are in a different position than the other class members because both testified at their depositions that they would have bought Defendants' products at the same price, even if the supposed misrepresentations were not on the packaging. Defendants' evidentiary citations in this regard are not rock solid. Page 140 of Red's deposition transcript (Exh. 15) does not say what Defendants say it does, and the Court probably would sustain the objections at page 111 of the Whitt deposition transcript (Exh. 16). Moreover, as Plaintiffs observe, the fact that Plaintiffs bought the products in part because of taste and brand familiarity would not defeat certification, since a "plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." Tobacco II, 46 Cal. 4th at 328.

Defendants also note that "Plaintiffs' purchasing habits varied from the rest of the proposed class." Opp. 21-23. For example, Whitt has never bought Ginger Snaps. Exh. 16 at 152. Red did not buy or rarely bought three other snacks. Exh. 15 at 92, 131-32, 156, 158. As Plaintiffs observe, differences "with regard to frequency, continuity, recency, and mode of purchase" does not equate to atypicality, but rather would "contribute[] to . . . representativeness because there will likely be similar diversity among members of the class." In re Citric Acid, 1996 U.S. Dist. LEXIS 16409, at *15 (N.D. Cal. Oct. 1, 1996)

More problematically, though, Whitt has continued buying Honey Maid Grahams, even after filing this suit. Exh. 16 at 115, 150. While the plaintiff in Zeisel was not found to be inadequate even though he had "continued to purchase, and testified that he would continue to purchase Shelled Walnut Products since he filed suit," 2011 U.S. Dist. LEXIS 60608, at *10-12, neither did he claim that walnuts were unhealthy. Here, the fact that Plaintiffs may have continued to buy the products despite knowing that they were supposedly unhealthy may indeed compromise their claims. Additionally, Defendants note that both Plaintiffs testified that they started buying these products long before most of the challenged statements were used. Exh. 15 at 130-31,196-97; Exh. 16 at 85-86. Thus, a problem arises that, if the named Plaintiffs bought the Defendants' products before the purported misrepresentations appeared on the packages and continued to purchase them after (1) the misrepresentations were added to the packaging, (2) this lawsuit was filed, and (3) they had knowledge that the representations on the packages were false or misleading, then the named representatives would not be typical of the class; unless it is the intention of the Plaintiffs to insist that (despite the above) they are, in which case it would seem that Plaintiffs have almost certainly destroyed the ability of the class to ever establish reliance and/or materiality of the alleged misrepresentations.

Finally, Defendants note that both continue to buy products that have trans fat, sugar, and

other "bad" ingredients, such as potato chips and chocolate chip cookies. While this, in all likelihood, would hardly render Plaintiffs (or their claims) atypical of the class, the court in Cleary v. Philip Morris USA, 265 F.R.D. 289, 293 (N.D. Ill. 2010), denied class certification where "[s]ome class members may have purchased [the products] for reasons wholly unrelated to [the challenged statements] - for example, because they preferred the flavor over other brands," and others may have bought them "despite being completely unaware" of the challenged representations. Id. at 293. This, however, was not a case involving claims under California law.

### 4. Kivetz Declaration

In opposing Plaintiffs' motion for class certification, Kraft has submitted the declaration of Columbia Business School Professor Ran Kivetz ("Kivetz"). Kivetz offers his expert opinion that Kraft's alleged deception cannot be generalized across the proposed class. Professor Kivetz noted that there are substantial differences in the statements made on the Kraft Foods packaging over the years, that there is no scientific evidence to support Plaintiffs' view of generalized deception across millions of different consumers, and that numerous other factors (such as brand loyalty rather than alleged misrepresentations) drove the sales of Kraft snacks.

Because Plaintiffs do not have to demonstrate individualized reliance by members of the putative class, certain aspects of the Kivetz Declaration are, arguably, only marginally relevant. Nevertheless, the Kivetz Derclaration casts further doubt on Plaintiffs' ability to prove their claims by common evidence insofar as he testifies to the following: "(a) there are multiple and substantial differences among the alleged misrepresentations; accused products, packages, and advertisements; and proposed Class members; (b) there is no scientific evidence to support the generalization of the alleged deception to the entire proposed Class; and (c) the Plaintiffs' testimonies do not support generalizing the alleged deception across the proposed Class members." Kivetz Decl. ¶ 14A. Tentatively, the Court would give less weight to Kivetz's opinions that "[t]he alleged deception is not an important causal factor in consumers' decisions to purchase the accused products," id. at ¶ 14B, and "[t]here are meaningful and substantial differences across the proposed Class members in terms of their purchase drivers and in terms of the effect, if any, that the alleged deception might have on their purchase decisions," id. at ¶ 14C. Paradoxically (to the extent that Tobacco II suggests that Plaintiffs would only be required to show that a reasonable class member would be likely to be deceived by Defendants' product labeling claims), it might even be argued that these assertions suggest that the claims of the class are susceptible to resolution on their merits based on common proof.

### 5. It is not clear that Plaintiffs would fairly and adequately represent the class.

A class may not be certified unless the Court is convinced that the "named plaintiffs claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected." Wal-Mart Stores, 180 L. Ed. 2d at 390 n.5. Class certification should be denied if "the putative lead plaintiff gives the court any reason to doubt the ability to meet these fiduciary obligations." In re Quintus Secs. Litig., 148 F. Supp. 2d 967, 970 (N.D. Cal. 2001).

Here, Defendants have raised several doubts about Plaintiffs' ability to fairly and adequately represent the class. While the Court would probably, for the most part, reject

Defendants' argument that Plaintiffs' claims are not co-extensive with the claims of the class (although as noted above, this may eventually prove fatal to those claims), Defendants correctly note that there is at least some basis for concern about whether Plaintiffs are "'not simply lending [their] name to a suit controlled entirely by the class attorney.'" Beck v. Status Game Corp., 1995 U.S. Dist. LEXIS 9978 (S.D.N.Y. July 13, 1995) (quoting 7A Wright & Miller § 1766 (2d Ed. 1986)). Both Plaintiffs in their depositions exhibited a lack of familiarity with the case. Both testified they did not understand the differences between the original complaint and the SAC or why the changes were made. Ex. 15 at 111-13; Ex. 16 at 93-94. While Defendants' arguments in this regard depend to a certain extent upon their incessant characterization of Plaintiffs' deposition testimony in the harshest possible light, nevertheless, the Court concludes that these questions need to be explored further.

There is, moreover, an issue as to whether Plaintiffs' counsel is "qualified, experienced, and able to vigorously conduct the proposed litigation." Quintus, 148 F. Supp. 2d at 972. Here, Plaintiffs have failed to make the necessary showing that their counsel have the resources necessary to commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(iv). Defendants further note that Judge Patel recently denied The Weston Firm's request to be appointed class counsel in light of "concern[s] about their relative lack of experience with class certification motions and subsequent litigation." Levitt v. Yelp! Inc., No. 10-1321, Doc. No. 39 at 2 (N.D. Cal. Aug. 24, 2010) (Ex. 31). Another federal judge denied a proposed settlement, expressing "concern" that The Weston Firm had not "done all that they can do in the interest of the class." Red v. Unilever PLC, No. 10-387, Doc. No. 133 at 14:2-14 (N.D. Cal. Nov. 23, 2010) (Ware, J.) (Ex. 32).[5] Although The Law Offices of Ronald Marron has recently been associated into the case, Defendants raise a question as to whether Mr. Marron is actively involved in this litigation.

In addition, Defendants refer to The Weston Firm's having been reprimanded by three different federal judges in 2010. Much more troubling than this, they also note that The Weston Firm's former co-counsel testified under oath that Mr. Weston had (1) offered a "kickback" to an employee's roommate in return for serving as a named plaintiff in a class action; (2) promised a "finder's fee" to his employee in return for "signing up" her roommate as a named plaintiff; and (3) agreed to compensate the firm's non-lawyer employees with settlement proceeds on a percentage basis. Unilever PLC, No. 10-387, Dkt. No. 72, attached to Declaration of Elizabeth Lee Beck as Exhibit 35, Docket Item No. 116-5. Obviously, this Court would have an obligation to the putative class to fully investigate these accusations before certifying a class and appointing The Weston Firm as class counsel.

### D. Rule 23(b) Requirements
1. Because of the broad scope of Plaintiffs' Complaint, it is at least questionable whether common questions of fact predominate.

Class certification pursuant to Rule 23(b)(3) requires Plaintiffs to establish that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3)

---

[5] It appears that Plaintiffs herein are the named plaintiffs in the Unilever case as well.

Here, Defendants argue that simply by virtue of the scope of the SAC (i.e., challenges to 13 products with 57 different iterations of packaging purchased by consumers over an 11-year period), Plaintiffs cannot show that common questions predominate over individual issues. They note that, notwithstanding Plaintiffs reference to "a well-documented, long-term advertising campaign," Plaintiffs have offered no evidence of a uniform campaign.

In order to invoke a presumption of reliance under Tobacco II, a plaintiff must show that all of the members of the putative class were exposed to the same representation and were likely to have been deceived by it. Pfizer Inc. v. Superior Court,182 Cal. App. 4th 622, 632 (2010) ("[O]ne who was not exposed to the alleged misrepresentations and therefore could not possibly have lost money or property as a result of the unfair competition is not entitled to restitution."). In Pfizer, a putative class of Listerine mouthwash consumers sued, complaining of supposedly misleading statements about Listerine's efficacy. 182 Cal.App. 4th at 625. The California appellate court refused to certify a "grossly overbroad" class of all purchasers because "perhaps the majority of class members who purchased Listerine during the [relevant period] did so not because of any exposure to Pfizer's allegedly deceptive conduct, but rather, because they were brand-loyal customers or for other reasons." Id. at 632. See also Cohen v. DirecTV, Inc.,178 Cal. App. 4th 966, 981 (2009) ("[T]he trial court's concerns that the UCL and the CLRA claims alleged by Cohen and the other class members would involve factual questions associated with their reliance on DIRECTV's alleged false representations was a proper criterion for the court's consideration . . . even after Tobacco II,"); Sevidal v. Target Corp.,189 Cal. App. 4th 905, 928 (2010) (class certification was improper where "allegation is based on an alleged false misrepresentation to which the majority of class members were never exposed."). Here, as in Campion v. Old Republic Home Protection Co., 272 F.R.D. 517 (S.D. Cal. 2011), members of the putative class "have seen all, some, or none of the advertisements that form the basis of a plaintiff's suit" and, therefore, "an inference of common reliance or liability is not permitted."

In addition to raising the question whether all of the putative class members were exposed to Defendants' alleged misrepresentations, Kraft argues that its statutes of limitations defense presents a predominating individual issue "[b]ecause determining whether each member's claim is time-barred requires an individualized inquiry." Opp. 37. Oddly, it does not appear that Kraft asserted a statute of limitations defense in its Answer. Regardless, Plaintiffs have alleged delayed discovery, SAC ¶¶ 140-44, and such allegations would likely be susceptible to common proof. It seems unlikely (but not impossible) that there would be individualized statute of limitations defenses that would preclude class certification. See In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig., 270 F.R.D. 521, 531 n.8 (N.D. Cal. 2010) ("[I]ndividual issues relating to the statute of limitations do not bar certification where there is otherwise a sufficient showing of commonality.") (citing Cameron v. E.M. Adams & Co., 547 F.2d 473, 477-78 (9th Cir. 1976)); Bautista-Perez v. Holder, 2009 U.S.Dist. LEXIS 63446, at *20-21 (N.D. Cal. July 9, 2009) ("[C]laims do not lack commonality simply because a legal question regarding the statute of limitations remains for resolution at the merits stage of litigation.").

2. Whether Plaintiffs' claims for monetary relief preclude certification under Rule 23(b)(2).

Plaintiffs contend that the proposed class may be certified under Rule 23(b)(2) as an

injunctive class action on the ground that their claims for monetary relief do not "predominate" over the requested injunctive relief. The Supreme Court held in Wal-Mart Stores that certification is not appropriate where "the monetary relief is not incidental to the injunctive or declaratory relief," noting that the essential question is whether "each class member would be entitled to an individualized award of monetary damages." 180 L. Ed 2d at 396. Here, Defendants argue somewhat persuasively that the Wal-Mart Stores decision forecloses a Rule 23(b)(2) class because Plaintiffs' requests for monetary relief would necessitate individualized inquiries regarding the amount of damages for each class member. They further argue that monetary relief clearly predominates because the amount of potential damages will be monumental and much of the injunctive relief they seek is moot (for example, Kraft Foods no longer uses the "Smart Choices" label and has dropped "Sensible Snacking" and "Sensible Solutions" on most products) or precluded by the Court's prior rulings.

**CONCLUSION**

Because there are significant questions as to the over-breadth of the proposed class, whether it is ascertainable, whether common issue of fact predominate, whether Plaintiffs are typical of the purported class, and whether California law applies to the claims of nonresidents, the Court would deny without prejudice Plaintiffs' motion for class certification.