UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-1028-GW(AGRx) | Date | June 6, 2012 |
| Title | *Evangeline Red, et al. v. Kraft Foods, Inc., et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Jack Fitzgerald
Ronald A. Marron
Sara D. Avila
Gregory S. Weston

Attorneys Present for Defendants:

Kenneth K. Lee

PROCEEDINGS:   PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION (filed 05/09/12)

The Court's Tentative Ruling is circulated and attached hereto. Court hears argument. Parties will meet and confer, by no later than June 20, 2012, to determine the extent to which defendant voluntarily agrees not to utilize in the future the labels and marketing/advertising language that plaintiffs challenge in this suit. The motion is continued **July 2, 2012 at 8:30 a.m.**

:   15

Initials of Preparer   JG

*__Evangeline Red, et al. v. Kraft Foods, Inc., et al.__*; Case No. CV-10-1028
Tentative Ruling on Renewed Motion for Class Certification

## I. Background

This putative class action lawsuit was filed by Plaintiffs Evangeline Red ("Red") and Rachel Whitt ("Whitt") (collectively "Plaintiffs") against Defendants Kraft Goods, Inc., Kraft Foods North America, and Kraft Foods Global, Inc. (collectively "Kraft" or "Defendants") on February 11, 2010. *See* Docket No. 1. Plaintiffs claim that Kraft falsely markets numerous products, namely Teddy Grahams, Ritz Crackers, Saltine Crackers, Honey Maid Graham Crackers, Vegetable Thins and Ginger Snaps (collectively "Products"), as healthy, despite the fact that they contain high levels of partially hydrogenated vegetable oil, "as well as a variety of unhealthy, highly-refined, highly-processed, and nutritionally empty ingredients," and thus allegedly cause health problems including cardiovascular disease, diabetes and cancer. *See* Pls.' Second Amended Complaint ("SAC"), Docket No. 58 ¶¶ 5, 31-43, 44-47, 48-54. As such, Plaintiffs claim that Kraft's labeling of the Products violates (1) the California Unfair Competition Law's prohibition of unlawful business acts or practices; (2) the California Unfair Competitions Law's prohibition against unfair or fraudulent business practices or acts; (3) California's False Advertising Law, and (4) the federal Consumer Legal Remedies Act. *See generally* SAC.

Plaintiffs have moved for class certification twice before, both times seeking certification as a Rule 23(b)(3) class for monetary damages. This Court denied the first motion to certify the class, noting that the Court would not certify a nationwide class asserting California state law claims because "Plaintiffs have not offered any facts that would overcome the presumption against extraterritorial application as to any of their claims." *See* Docket No. 145 at 8. Plaintiffs then brought a renewed class certification motion, seeking certification of a number of subclasses, divided by product, limited to California consumers. *See* Docket No. 156.[1]

---

[1] The first renewed motion for class certification proposed the following subclasses:

• The **Ginger Snaps Subclass**: All persons who purchased in California, on or after February 11, 2006, and on or before December 31, 2010, Ginger Snaps in packaging bearing the phrase "sensible solution."

• The **Vegetable Thins Subclass**: All persons who purchased in California, on or after January 1, 2007, Vegetable Thins in packaging bearing the phrase "made with real vegetables."

• The **Premium Saltines Subclass**: All persons who purchased in California, on or after February 11, 2006, and on or before June 30, 2011, Premium Saltines in packaging bearing the phrases "sensible snacking," or "sensible solution."

• The **Teddy Grahams Subclass**: All persons who purchased in California, on or after February 11, 2006, and on or before December 31, 2011, 10-ounce or 9.5-ounce varieties of Teddy Grahams in packaging bearing the phrases "sensible snacking," "sensible solution," "smart choices," or "help support kids' growth and development."

• The **Honey Maid Grahams Subclass**: All persons who purchased in California, on or after January 1,

-1-

The Court denied the first renewed motion for class certification in its entirety, largely on the grounds that the proposed subclasses' lacked ascertainability and that individualized issues would predominate in calculating damages and determining class membership; as such, the Court held that Rule 23(b)(3) certification was unwarranted. *See* Docket Nos. 212, 216. The Court held, however, Plaintiffs could file a renewed class certification motion for injunctive relief only pursuant to Rule 23(b)(2). Docket No. 216.

Accordingly, Plaintiffs timely filed a second renewed (third overall) class certification motion, seeking certification of a 23(b)(2) class for injunctive relief, presently before this Court. Whereas the first class certification motion proposed a nationwide class, and the second proposed a class of only California consumers, this third class certification motion now proposes a class of consumers located in nine different states: California, Connecticut, Idaho, New Jersey, Oregon, Rhode Island, Texas, Vermont and West Virginia (the "Class States"). *See* Pls.' Mot., Docket No. 217 at 2. Plaintiffs now propose ten different subclasses:

> 1) The Ginger Snaps Subclass: All persons who purchased in the Class States, between April 1, 2008 and December 31, 2010, Ginger Snaps in packaging bearing the phrase "sensible solution."
>
> 2) The Vegetable Thins Subclass: All persons who purchased in the Class States, on or after January 1, 2007, Vegetable Thins in packaging bearing the phrase "made with real vegetables."
>
> 3) The Premium Saltines Subclass: All persons who purchased in the Class States, between February 11, 2006 and June 30, 2011, Premium Saltines in packaging bearing the phrases "sensible snacking," or "sensible solution."
>
> 4) The Teddy Grahams I Subclass: All persons who purchased in the Class States, between April 1, 2006 and June 1, 2009, 10-ounce or 9.5-ounce varieties of Teddy Grahams in packaging bearing the phrases "sensible snacking" or "sensible solution."
>
> 5) The Teddy Grahams II Subclass: All persons who purchased in the Class States, between January 1, 2009 and December 31, 2011, 10-ounce or 9.5-ounce varieties of Teddy Grahams in packaging bearing the phrase "help support kids' growth and development."

---

2004, Honey Maid Grahams in packaging bearing the phrases "sensible snacking," "sensible solution," or "wholesome."

• The **Ritz I Subclass**: All persons who purchased in California, on or after February 11, 2006, and on or before June 30, 2010, Reduced Fat, Whole Wheat, Hint of Salt, or Low Sodium varieties of Ritz Crackers in packaging bearing the phrases "sensible snacking" or "sensible solution."

• The **Ritz II (Roasted Vegetable) Subclass**: All persons who purchased in California, on or after February 11, 2006, the Roasted Vegetable variety of Ritz Crackers in packaging bearing the phrase "made with real vegetables."

6) The Honey Maid Grahams Subclass: All persons who purchased in the Class States, between February 11, 2006 and April 1, 2010, Honey Maid Grahams in packaging bearing the phrases "sensible snacking," or "sensible solution."

7) The Ritz Whole Wheat Subclass: All persons who purchased in the Class States, between January 1, 2007 and June 30, 2010, the Whole Wheat variety of Ritz Crackers in packaging bearing the phrase "sensible solution."

8) The Ritz Reduced Fat Subclass: All persons who purchased in the Class States, between February 11, 2006 and June 30, 2010, the Reduced Fat variety of Ritz Crackers in packaging bearing the phrases "sensible snacking" or "sensible solution."

9) The Ritz Low Salt Subclass: All persons who purchased in the Class States, between January 1, 2007 and June 30, 2010, Low Sodium or Hint of Salt varieties of Ritz Crackers in packaging bearing the phrase "sensible solution."

10) The Ritz Roasted Vegetable Subclass: All persons who purchased in the Class States, on or after February 11, 2006, the Roasted Vegetable variety of Ritz Crackers in packaging bearing the phrase "made with real vegetables."

Docket No. 217 at 1-2; *see also* Decl. of Gregory Weston ("Weston Decl."), Exhs. 1-10 (depicting challenged labels).

## II. Legal Standard

A class action lawsuit is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). To depart from this general rule, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (internal quotations and citation omitted). As a result, the proponent of class treatment bears the burden of demonstrating that class certification is appropriate. *See In re N. Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure (hereinafter referred to as either "Rule 23" or "Fed. R. Civ. P. 23"). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996); *Wal-Mart Stores, Inc. v Dukes*, 131 S. Ct. 2541, 2551 (2011). Rule 23 requires the party seeking certification to satisfy all four requirements of Rule 23(a) and at least one of the subparagraphs of Rule 23(b). *See Valentino*, 97 F.3d at 1234.

Rule 23(a) requires that the parties seeking certification show: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class. Fed. R. Civ. P. 23(a). Class certification under Rule 23(b)(2), at issue here, is warranted if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b). Class certification under Rule 23(b)(2) is appropriate "only where the primary relief sought is declaratory or injunctive." *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011).

Rule 23(c)(5) permits the class to be divided into subclasses "that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5). Where Plaintiffs seek certification of subclasses, "each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action. A failure to do so will either require the dismissal of the action with respect to the subclass or force the action to proceed with regard to the members of the subclass on an individual basis." *Betts v. Reliable Collection Agency*, 659 F.2d 1000, 1005 (9th Cir. 1981); *see also Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 587 (S.D. Cal. 2010).

"[A]part from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011). A class is sufficiently ascertainable if its members can be identified by reference to objective criteria. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal. 2010). The proposed class "must 'be defined in such a way that anyone within it would have standing.'" *Burdick v. Union Sec. Ins. Co.*, 2009 U.S. Dist. LEXIS 121768 *10 (C.D. Cal. Dec. 9, 2009) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). Thus, a proposed class that includes "non-harmed" class members "is both imprecise and overbroad." *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).

### III. Analysis

As noted by Plaintiffs, this Court previously found that all of the prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy of representation) were met; the Court found, however, that Plaintiffs' proposed subclasses met neither the "predominance" requirement of Rule 23(b)(3) nor the ascertainability requirement when considered in the context of a Rule 23(b)(3) class. Defendants essentially raise four arguments in opposing Plaintiffs' renewed motion for class certification: ascertainability, mootness, standing, and cohesiveness.

#### A. Ascertainability

While Defendants argue that the ascertainability requirement is still a bar to certification of the proposed Rule 23(b)(2) class, the Court would not agree. The Court's hesitancy to find that ascertainability was met in considering the previous renewed class certification motion was related to the "manageability" aspect of a Rule 23(b)(3) case: "the Court fails to see how it will be, as it must be, '*administratively feasible* to determine whether a particular person is a class member.'" Docket No. 212 at 5 (citing *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010) (emphasis added). Indeed, we further held:

> A lack of ascertainability alone will generally not scuttle class certification. *See Galvan v. KDI Distrib.*, No. SACV

> 08-0999-JVS (ANx), 2011 U.S. Dist. LEXIS 127602, 15-16 (C.D. Cal. Oct. 25, 2011) ("the class definition may include individuals who ... have inadequate proof to go forward with the class. However, these ascertainability issues are not fatal to class certification and may be addressed later in the litigation"). However, manageability is a consideration taken into account in assessing whether common questions of fact or law predominate, which the Court must find to be met before certifying a 23(b)(3) class. *See* Fed. R. Civ. P. 23(b)(3)(D). Thus, the Court is inclined to deny class certification on this basis, though will continue to assess the parties' arguments as to whether the remaining Rule 23 factors have been met.

It is clear that any worries this Court previously had regarding ascertainability were all dependent on Plaintiffs' seeking a 23(b)(3) damages class; now that Plaintiffs seek only injunctive relief, the Court's ascertainability concerns are allayed. Defendants present caselaw suggesting that the Court can and should deny certification of an injunctive relief only class on the basis of a purported lack of ascertainability; the vast majority of the cited cases, though, involved situations where the proposed class was presented as a 23(b)(3) or a 23(b)(2) class; no longer the case here. *See* Docket No. 221 at 10.

More importantly, Defendants have not presented a viable argument that a class here would not be ascertainable. A class seeking injunctive relief will not need to self identify in order to seek relief; indeed, class members in a 23(b)(2) opt-out class generally need not even receive notice. *See* Fed. R. Civ. P. 23(c)(2)(A); *see also* Manual for Complex Litigation (4th) § 32.42 ("Less precision is required in the definition of a Rule 23(b)(2) class"); *id.* § 21.222 (stating that definition of Rule 23(b)(3) class must be "precise, objective, and presently ascertainable" while a Rule 23(b)(1) or (b)(2) action "may not" because no notice is required). In sum, ascertainability is no impediment to certification of a Rule 23(b)(2) class here.

### B. Mootness

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citations omitted). Kraft argues that Plaintiffs' class claims as styled in the instant motion are moot because the only challenged label still in use is "Made with Real Vegetables," which Defendants argue is not actionable as a matter of law. We need not reach the issue of whether the claims based on "made with real vegetables" are viable as a matter of law, however, because we find that based on the evidence and arguments presently submitted by Kraft, none of the claims are moot. Kraft argues that the claims are moot because: 1) all of the potentially actionable labels are no longer in use, and 2) Kraft presently has no intent to use the challenged labels in the future. Kraft submits as

evidence of its future corporate intent only a four-page declaration from Ellen Smith, chief counsel of Kraft's snacks and confectionary business unit, who testifies, "To the best of my knowledge, Kraft Foods has no plans to use Sensible Solution on Ginger Snaps packaging in the future." Decl. of Ellen Smith, Docket No. 221, ¶ 4. She makes identical statements regarding the other challenged labels and products. *See id.* ¶¶ 6, 8-10, 12-17. Defendants note that Plaintiffs must, in order to demonstrate that their claims are not moot, demonstrate that there is a "cognizable danger of recurrent violation." See Docket No. 221 at 6 *(citing Am. Fed'n of Gov't Emps., AFL-CIO v. Brown*, 886 F. Supp. 16, 20 (D. D.C. 1994)). Defendants proceed to cite a series of cases where they claim courts found label-based consumer claims moot based only on the defendant's voluntary discontinuation of the offending label. However, many of the cited cases, as noted by Plaintiffs, do not so hold. In *Contessa Food Prods., Inc. v. Lockpur Fish Processing, Ltd.*, No. CV 98-8218 NM (SHx), 2003 U.S. Dist. LEXIS 26682 (C.D. Cal. Jan. 29, 2003), the Court found a labeling claim moot not, as Defendants aver, "because the defendant company had no intention to resume alleged mislabeling," (Docket No. 221 at 5), but instead because the defendant would "continue to *comply with this court's prior ruling*" forbidding the use of certain labels. *Id.* at *25 (emphasis added).[2] Defendants also cite two cases where the product itself was either discontinued or changed so as to more accurately reflect the challenged label, both of which scenarios obviously present a stronger argument for mootness than the instant situation. *See* Docket No. 221 at 6 (citing *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742(DLC), 2011 U.S. Dist. LEXIS 6094, at *4 (S.D.N.Y. Jan. 21, 2011) and *U.S. v. Nutri-Cology, Inc.*, No. C-91-1332-DLJ, 1993 U.S. Dist. LEXIS 21448, at *23 n.5 (N.D. Cal. Sept. 23, 1993)). Here, in contrast, the Products are still being marketed but the defendant company's counsel (not marketing decision-maker) merely states that to the best of her knowledge the company currently "has no plans" to use the label on the still on-sale product in the future.

    Plaintiff responds by citing internal Kraft documents purporting to show how important the challenged labels are to Kraft's marketing efforts, purportedly indicating that there is indeed a danger, despite Ms. Smith's assertions, that Kraft will recommence using the challenged labels. *See* Docket No. 223 at 3-7; Decl. Of Courtland Creekmore. While the Court find this line of reasoning somewhat tenuous, Defendants of course bear the burden of showing that Plaintiffs' claims are moot, and Defendants have not cited any case where a weak assertion by corporate counsel that there are no current plans to use the challenged labels is sufficient to moot such challenges under consumer protection laws. *See Friends of the Earth, Inc.*, 528 U.S. at 189 ("The 'heavy burden of persuad[ing]' the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness.") (citation omitted). Plaintiffs' motion for class certification would thus not be denied on the basis of mootness.

### C. Standing

Kraft argues that Plaintiffs lack standing to pursue injunctive relief challenging the labeling at issue here because Plaintiffs allege in the SAC that they no longer buy any of the challenged products. Defendants cite to *Robinson v. Hornell Brewing Co.*, No. 11-2183 (JBS-

---

[2] Defendants also cite a non-precedential unpublished Tenth Circuit opinion and two Florida district court cases from the 1990s for this same proposition; the Court should not find such rulings very persuasive precedent.

JS), 2012 U.S. Dist. LEXIS 51460 (D. N.J. Apr. 11, 2012), where a class action was filed challenging Arizona iced tea's use of the phrase "all natural" on bottle labels. The New Jersey court denied certification on the basis of a lack of standing, explaining that because Plaintiff asserted that he would never buy the tea again, he lacked standing to pursue a consumer claim based on the tea's label, because "merely seeing a label that Plaintiff believes is incorrect or that he believes could be misleading to others" was not deemed a sufficient injury to confer article III standing upon the plaintiff. *Id.* at *13-14.

Obviously, were the Court to adhere to Defendants' logic here, any consumer plaintiffs seeking injunctive relief would be caught between the proverbial rock and hard place: either they continue buying the very product they seek to challenge as fraudulently marketed, or, they lack standing to pursue claims asserting that the product is fraudulently marketed. If this argument were followed to its logical conclusion, even consumers challenging products as dangerously defective would either need to continue to purchase the dangerous products, or, lack standing to allege their defects. Unsurprisingly, *Robinson* is the only factually analogous case Defendants have rustled up that subscribes to this reasoning, plainly contrary to the purposes of California's consumer protection statutes. Many courts have rejected similar arguments as to standing in consumer claims for injunctive relief, as the Court would here. *See, e.g., Henderson v. Gruma Corp.*, CV 10-04173 AHM (AJWx), 2011 U.S. Dist. LEXIS 41077, at *19-20 (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendants advocate, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ("once bitten, twice shy") and would never have Article III standing"). In sum, class certification should not be denied based on any lack of standing.

### D. Cohesiveness

Class claims under Rule 23(b)(2) must be "cohesive." *See Grayson v. 7–Eleven, Inc.*, No. 09–CV1353 MMA (WMc), 2011 WL 2414378, at *2 (S.D. Cal. June 10, 2011); *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 635-36 (W.D. Wash. 2011); *Sweet v. Pfizer*, 232 F.R.D. 360, 374 (C.D. Cal. 2005) ("even though Rule 23(b)(2), unlike Rule 23(b)(3), does not specifically contain predominance and superiority requirements, a class under Rule 23(b)(2) must not be overrun with individual issues."); *Lewallen v. Medtronic USA, Inc.*, No. C01–20395 RMW, 2002 WL 31300899, at *3 (N.D. Cal. Aug. 28, 2002) ("[T]o be certified under Rule 23(b)(2), the class claims must be cohesive .... [T]he requisite cohesiveness is lacking where individual issues predominate.").

Kraft argues that the proposed subclasses claims are insufficiently cohesive for one reason: the multistate nature of the proposed subclasses.[3] The new multistate subclasses seek to

---

[3] Kraft also in one sentence argues that questions regarding "what customers actually saw, what packaging, and what actually motivated customers to purchase the product" could defeat cohesiveness, and refers the Court to its opposition filed in response to the previous renewed motion for class certification. However, the previous briefing resulted in this Court finding that while such individualized questions would preclude class certification because they would cause class membership and damages calculations both impossible and individualized, the Court does not see that such issues would cause an injunctive class to lack cohesiveness. To the contrary, once Plaintiff identifies the challenged labels, the Court's adjudication of whether those labels violate any of the consumer statutes Plaintiffs

impose California consumer protection law upon Defendants' activities that take place in eight other states. Plaintiffs appear to have cherry-picked the Class States based on a purported similarity between the laws of those states and the California statutes under which Plaintiffs claims arise. As aptly noted by Kraft, this Court has already rejected the extraterritorial application of California law based on the facts of this case, and issued a detailed ruling as to this issue in response to Plaintiff's first motion for class certification, where the Court held that a nationwide class asserting California claims was inappropriate given that the challenged conduct did not emanate from California. *See* Docket No. 145 at 7. The fact that Plaintiffs now restrict their classes to consumers located in eight, as opposed to forty-nine, other states does not affect this analysis. Therefore, the Court would not certify any multistate classes.

However, Plaintiffs have indicated a willingness to restrict the classes to California consumers. Docket No. 217 at 2 n.2. The Court would discuss with Plaintiffs at the hearing whether they are prepared to move forward with these class claims if the Court declines to certify any classes that include out of state consumers.

### IV. Conclusion

The Court would DENY any multistate proposed classes, but would consider GRANTING Plaintiffs' motion for class certification if Plaintiffs agree to restrict the class definitions so as to include only California consumers. If the Court decides to certify California-only classes, the Court would ask Plaintiffs to draft a proposed order including the amended subclass definitions.

---

have evoked would not rest on the individualized inquiries to which Kraft briefly alludes.