1  **THE WESTON FIRM**
2  GREGORY S. WESTON (239944)
   *greg@westonfirm.com*
3  JACK FITZGERALD (257370)
   *jack@westonfirm.com*
4  MELANIE PERSINGER (275423)
   *mel@westonfirm.com*
5  COURTLAND CREEKMORE (182018)
   *courtland@westonfirm.com*
6
7  1405 Morena Blvd., Suite 201
   San Diego, CA 92110
8  Telephone:   (619) 798 2006
   Facsimile:    (480) 247 4553
9

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
MAGGIE K. REALIN (263639)
*maggie@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone:   (619) 696-9006
Facsimile:    (619) 564-6665

10
11 ***Lead Counsel for Plaintiffs and the Proposed Class***
   *[Additional Counsel listed on signature page]*
12

13 **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**
14

15 EVANGELINE RED and RACHEL
   WHITT, on behalf of themselves and
16 all others similarly situated,
17                    Plaintiffs,
18     v.
19
20 KRAFT FOODS INC., KRAFT
   FOODS NORTH AMERICA, and
21 KRAFT FOODS GLOBAL, INC.,
22                    Defendants.
23
24

Case No. 2:10-cv-01028 GW(AGRx)
Pleading Type: Class Action
Action Filed: February 11, 2010

**PLAINTIFFS' SUPPLEMENTAL
SUBMISSION IN SUPPORT OF
THEIR SECOND RENEWED
MOTION FOR CLASS
CERTIFICATION PURSUANT TO
FED. R. CIV. P. 23(B)(2)**

Judge:        The Hon. George Wu
Date:         August 2, 2012
Time:         8:30 a.m.
Location:     Courtroom 10

25
26
27
28

---

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ........................................................................................... 1

PROCEDURAL HISTORY................................................................................ 3

    I.     THE PLEADINGS & RULE 12 DECISIONS ................................. 3

          A.    Plaintiffs' Initial & First Amended Complaints ................... 3

          B.    The Second Amended Complaint ....................................... 7

    II.    THE CLASS CERTIFICATION MOTIONS ............................. 10

          A.    Plaintiffs' First Certification Motion ................................ 10

          B.    Plaintiffs' Renewed Certification Motion.......................... 10

          C.    Plaintiffs' Second Renewed Certification Motion............. 13

REASONS FOR CERTIFYING THE CLASS ................................................. 16

    I.     NONE OF PLAINTIFFS' INJUNCTIVE RELIEF CLAIMS ARE MOOT ................................................................. 16

          A.    Cooper's Testimony Does Not Credibly Establish Mootness .......... 17

               i.    Premium Saltines ..................................................... 17

               ii.    Teddy Grahams......................................................... 17

               iii.    Online Retailers ...................................................... 19

          B.    Cooper's Declaration is Insufficient to Moot Plaintiffs' Claims Without Entry of an Enforceable Order and Judgment Against Kraft .......................................... 20

    II.    EVEN IF SOME OF PLAINTIFFS' INJUNCTIVE RELIEF CLAIMS WERE MOOT, SEVERAL CLAIMS REMAIN ........................ 21

          A.    Enjoining Kraft from Using the Remaining Packaging Claims ........ 21

          B.    Enjoining Kraft From Using *Any* Non-FDA Health & Wellness Claims on Foods Containing Objectionable Ingredients.................................. 22

          C.    Requiring Kraft to Engage in a Corrective Advertising Campaign ...................................................... 23

          D.    Requiring Kraft to Recall and/or Destroy Existing Misleading Advertising and Prevent Retailers from Using Misleading Advertising ............................... 25

CONCLUSION ............................................................................................ 25

i

# TABLE OF AUTHORITIES

**Cases**

*Chacanaca v. Quaker Oats Co.*,
  752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...................................................8

*Colgan v. Leatherman Tool Group, Inc.*,
  135 Cal. App. 4th 663 (2006) ...............................................................25

*Consumers Union of U.S. v. Alta-Dena Certified Dairy*,
  4 Cal. App. 4th 963 (1992) ....................................................................24

*Contessa Food Prods., Inc. v. Lockpur Fish Processing, Ltd.*,
  2003 U.S. Dist. LEXIS 26682 (C.D. Cal. Jan. 29, 2003) ...........................20

*Ellis v. City of San Diego*,
  176 F.3d 1183 (9th Cir. 1999) .................................................................20

*Fletcher v. Security Pac. Nat'l Bank*,
  23 Cal. 3d 442 (1979) ............................................................................24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,Inc.*,
  528 U.S. 167 (2000) ...............................................................................19

*Gator.com Corp. v. L.L. Bean, Inc.*,
  398 F.3d 1125 (9th Cir. 2005) .................................................................19

*Henderson v. Gruma Corp.*,
  2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ...........................7

*In re Quaker Oats Labeling Litig.*,
  2012 U.S. Dist. LEXIS 42777 (N.D. Cal. Mar. 28, 2012)...........................7

*Johnson v. Gen. Mills, Inc.*,
  2011 U.S. Dist. LEXIS 154213 (C.D. Cal. Mar. 3, 2011)...........................11

*Lima v. Gateway, Inc.*,
  710 F. Supp. 2d 1000 (C.D. Cal. 2010) ...................................................11

*Najarro v. Wollman*,
  2012 U.S. Dist. LEXIS 75032 (N.D. Cal. May 30, 2012)...........................20

ii

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF CLASS CERTIFICATION

*People ex rel. Mosk v. Nat'l Research Co. of Cal.*,
   201 Cal. App. 2d 765 (1962) ............................................................................23

*People v. Toomey*,
   157 Cal. App. 3d 1 (1984) ..............................................................................23

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   130 S. Ct. 1431 (2010) ...................................................................................21

*Warner-Lambert Co. v. F.T.C.*,
   562 F.2d 749 (D.C. Cir. 1977) ......................................................................24

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ............................................................5, 11, 13

**Statutes**

21 U.S.C. § 343(q) ............................................................................................22

21 U.S.C. § 343(r) ............................................................................................22

Cal. Bus. & Prof. Code § 17203 ......................................................................23

Cal. Bus. & Prof. Code § 17535 ......................................................................23

**Rules**

C.D. Cal. L.R. 7-18 ..........................................................................................16

**Regulations**

21 C.F.R. §§ 101..54-101.77 ...........................................................................22

21 C.F.R. §§ 101.13 .........................................................................................22

21 C.F.R. §§ 101.14 .........................................................................................22

21 C.F.R. §§ 101.9 ...........................................................................................22

iii

*Red et al. v. Kraft Foods Inc.,* Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF CLASS CERTIFICATION

# **INTRODUCTION**

Plaintiffs respectfully make this Supplemental Submission in support of their Second Renewed Motion for Class Certification under Rule 23(b)(2), which is limited to their injunctive relief claims. This Submission demonstrates the following:

**First**, that Kraft's Cooper Declaration (Dkt. No. 233, Ex. A) is insufficient to moot *any* of Plaintiffs' injunctive claims because it does not credibly establish no probability of future violations in that:

    (a)    Kraft products in accused packaging that are still available in the marketplace raise the specter of ongoing or future violations; and

    (b)    Notwithstanding any voluntary cessation of the accused advertising by Kraft, the products are still widely marketed by online retailers using the challenged packaging statements.

**Second**, that the Cooper Declaration is insufficient to moot Plaintiffs' injunctive claims because, standing alone and without a concomitant consent judgment and/or Court Order, its promises are unenforceable.

**Third**, that even if the Cooper Declaration were sufficient to moot the four challenged packaging statements it addresses (the "Cooper Statements"[1]), Plaintiffs have several remaining claims for injunctive relief, namely:

    (a)    Enjoining Kraft from using several additional challenged packaging statements;

    (b)    Enjoining Kraft from using *any* non-FDA health and wellness statement on the packaging of foods containing the objectionable ingredients identified in the Second Amended Complaint ("SAC"), especially artificial trans fat;

    (c)    Requiring Kraft to engage in a corrective advertising campaign;

    (d)    Requiring Kraft to recall and destroy existing advertising and packaging bearing any of the challenged statements; and

---

[1] *E.g.*, (1) "Sensible Snacking," (2) "Sensible Solution," (3) "Smart Choices," and (4) "Help Support Kids' Growth and Development." *See* Cooper Decl. ¶¶ 4-7.

1

(e)     Requiring Kraft to inform its online and "brick and mortar" wholesale and retail customers of the prohibition against the challenged packaging, and instruct them that as a condition of Kraft's further sales to them, to remove any photos of challenged packaging from the Web.

Further, in order to address the Court's concern that "the procedure is kind of like muddled at this point," July 2, 2012 Hrg. Tr. at 6,[2] and its admonition that it "want[s] the record to be complete on this, and . . . to reflect that apparently there are defendant's products with language other than 'made with real vegetables' that [are] still percolating out there in the marketplace," *id.* at 11, Plaintiffs offer a detailed procedural history. This also serves to ensure the Court that Plaintiffs have no intention to "pull a fast one and include something in these class definitions that [the Court has] already ruled" could not go forward, *id.* at 19, and that all the remaining claims "have been included in the complaint" and have "been the subject of this action," *id.* at 21

Finally, the Court made two comments recently that concern Plaintiffs because they appear to contradict the Court's earlier, carefully-considered holdings on an important case issue. Plaintiffs' SAC seeks an Order enjoining Kraft from using "any other misleading health claim on the products" not permitted or required by the Federal Food, Drug and Cosmetic Act and its implementing regulations. SAC at 57, Prayer for Relief ¶ B(c); *see also* June 6, 2012 Hrg. Tr. at 11-12[3] ("[T]he injunction we seek goes beyond just the particular claims that they used . . . . We don't want to see any health-related claims made on products with substantial trans fat and refined [sugar and flour.]").

At the June 6 hearing, however, the Court asked Plaintiffs' counsel, "[a]re you attempting to make an argument that if in fact the product has what is allowed for under federal law, to say it is zero trans fat that they are not allowed to use the word healthy in their products?" June 6, 2012 Hrg. Tr. at 11. The implication of the Court's question was

---

[2] Attached to the Fitzgerald Declaration as Exhibit 1.

[3] Attached to the Fitzgerald Declaration as Exhibit 2.

that such a request would somehow be improper. The Court was even more explicit during the July 2, 2012 hearing, during which it stated that, if Plaintiffs' request was that Kraft "would also be somehow barred from using the word wholesome or something of that sort, if in fact there is any amount of trans fat . . . , I think[] this Court has already indicated [that] would not fly." July 2, 2012 Hrg. Tr. at 18.

It is true that at one point the Court indicated its thinking that any allegations that Kraft's health and wellness packaging is misleading based on the presence of trans fat in its products would be preempted; but in *several* subsequent decisions, the Court expressly recognized the error in this thinking and held just the opposite.

Because this affects both Plaintiffs' request for an injunction against additional packaging phrases still appearing on Kraft products, and its request for a general prohibition against *any* non-FDA regulated health and wellness packaging or advertising, we provide a detailed record of the Court's holdings in this regard.

## PROCEDURAL HISTORY

### I.    THE PLEADINGS & RULE 12 DECISIONS

#### A.    Plaintiffs' Initial & First Amended Complaints

Plaintiffs filed this action on February 11, 2010, alleging that various health and wellness statements on the packaging of several Kraft products were false and misleading in light of the products' artificial trans fat content. Dkt. No. 1. After Kraft moved to dismiss the Complaint, Plaintiffs filed their First Amended Complaint ("FAC") on May 15, 2010. Dkt. No. 27.[4]

In response to Kraft's Motion to Dismiss the FAC (Dkt. No. 29), the Court tentatively found some of Plaintiffs' claims preempted.[5] *See* June 24, 2010 Tentative

---

[4] The specific products and packaging statements the FAC challenged are identified in Exhibit 3 to the Fitzgerald Declaration.

[5] In its Order, the Court noted that "[t]he FAC seeks a combination of mandatory and prohibitive injunctive relief . . . [including] an order compelling Kraft to conduct a corrective advertising campaign . . . [and] compelling Kraft to destroy all misleading and deceptive advertising materials." June 24, 2010 Ten. Order at 2.

3

Ruling, Dkt. No. 36 at 3, 5, 7, 13 (holding "no cholesterol," "whole grain" and "0g trans fat" claims preempted). As to the majority of claims, however, the Court held that "the NLEA's express preemption provision would not appear to bar Plaintiffs from alleging that Kraft's general assertions about the healthfulness of its products containing artificial trans fats are deceptive and misleading to consumers." *Id.* at 3.

More specifically, the Court ruled that, aside from the few preempted packaging statements, "[o]ther phrases used by Defendants in their product labeling are not explicitly regulated by the FDCA. Thus, Plaintiffs' challenges to Defendants' alleged labeling claims about the overall healthiness/wholesomeness of their products . . . would not be expressly preempted." *Id.* at 5.[6]

Consistent with its decision, the Court instructed Kraft to file a motion to strike affected portions of the FAC. *Id.* at 8. Instead, Kraft "treat[ed] the motion to strike as, essentially, an opportunity to re-argue the Court's Tentative Ruling." July 26, 2010 Tentative Ruling, Dkt. No. 40 at 1.

Declining to "revisit, as Defendants urge, [the Court's] ruling that Plaintiffs' claims – with respect to Defendants' statements about the overall healthfulness of their products – may proceed," *id.*, the Court explained that Kraft "commit[ted] a logical fallacy" when they argued that the FDA regulation requiring the disclosure of trans fat in the Nutrition Facts Box, 21 C.F.R. § 101.9(c)(2)(ii), preempted all of Plaintiffs' claims, because Plaintiffs were not seeking to impose any non-identical requirement to federal labeling standards, and the FDCA does not expressly authorize "statements about the overall healthfulness of products containing trans fat." *Id.* at 2; *see also id.* at 9-10 ("The Court would . . . deny the Rule 12(f) Motion to Strike as to the . . . allegations targeted at the labeling claims about the overall healthiness/wholesomeness of Defendants' products

---

[6] Later, the Court clarified that Plaintiffs could challenge the phrase used on Teddy Grahams, "Help Support Kids' Growth and Development," despite that it was tied to a "good source" statement, which is an FDA-regulated claim and thus preempted. *See* November 4, 2010 Tentative Ruling, Dkt. No. 67 at 3-4 n.3, 6-7; January 13, 2010 Order, Dkt. No. 79 at 5.

1    . . . ."). The Court also rejected, for a second time, Kraft's argument under the reasonable

2    consumer standard, since "the challenged statements may 'contribute[] . . . to the

3    deceptive context of the packaging as a whole' . . . ." *Id.* (citing *Williams v. Gerber*

4    *Prods. Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008)).

5         Despite the Court's indications in its June 24 and July 26 Tentative Rulings that

6    Plaintiffs' claims could proceed on the theory that non-preempted health and wellness

7    labeling claims were misleading because of the presence of trans fat in the Kraft

8    products, during the July 26 hearing the Court indicated from the bench that *all* such

9    claims would likely be preempted:

10        In the end if the plaintiff really is arguing trans fat, then let's just put the

11        cards on the table and let's let the chips fall where they may and you can

12        appeal to the Ninth Circuit. I had thought there were other aspects of this

13        case other than trans fat, but if I'm wrong then I'm going to have to change

14        my tentative. * * * What I guess what the plaintiff is basically saying is that

15        trans fat is so unhealthy that even those trace amounts in a serving size is not

16        healthy and therefore the defendants shouldn't e allowed to do such things as

17        referencing that it is made with real vegetables or steps to a healthier you, et

18        cetera, et cetera, et cetera, as long as there is some trace element of trans fat

19        in the product. I understand the argument. I don't think that argument is

20        going to fly however. So the question is what else do you have besides that?

21   July 26, 2010 Hrg. Tr. at 11, 13.[7]

22        Accordingly, the Court ordered Plaintiffs to submit an offer of proof that there

23   were reasons, other than the presence of trans fat, that Kraft's health and wellness

24   labeling may be deceptive. *See* July 26 Hr. Tr. at 14-15 ("I want you to give me as an

25   offer of proof . . . separately as to [each claim] say that this is misleading because of this

26   whatever it is. . . . and we will see how many rely on trans fat and how many don't rely

27

28   _____

     [7] Attached to the Fitzgerald Declaration as Exhibit 4.

5

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF CLASS CERTIFICATION

1   specifically on trans fat and we will go from there."). The Court also permitted Plaintiffs
2   to propose amendments to their theory of Kraft's deceptive advertising. *See id.* at 15.

3       Plaintiffs submitted their Offer of Proof on August 2. Dkt. No. 41. That brief gave
4   a detailed analysis why the health and wellness claims the Court ruled were not
5   preempted under the NLEA (indeed, not regulated at all under the FDCA) should not be
6   dismissed simply because Plaintiffs alleged they are deceptive based on trans fat in the
7   Kraft products. *See* Offer of Proof at 4-8. Kraft responded to the Offer of Proof by
8   setting forth, once again, the argument the Court previously called a "logical fallacy,"
9   that Plaintiffs' claims based on the existence of trans fat were preempted because
10  Plaintiffs supposedly sought to force Kraft to disclose sub-0.5g amounts of trans fat in a
11  manner other than provided under the FDCA.

12      Considering the parties respective arguments, in its September 16, 2010 Tentative
13  Ruling, later adopted as the Court's final Order, the Court wrote that it would
14  "reconsider its announced intention (which was somewhat inconsistent with its written
15  rulings) to strike all of the allegations in the complaint that arise from the presence of
16  trans fat in Defendants' products." September 16, 2010 Order, Dkt. No. 59 at 1. In doing
17  so, the Court rejected Kraft's argument as a "straw man," since "Plaintiffs are not, with
18  this lawsuit, necessarily trying to force [disclosure of less than 0.5g of trans fat per
19  serving] but, rather, are simply trying to prevent Defendants from making certain other
20  claims." *Id.* at 2. The Court also rejected Kraft's argument "that, because the FDA
21  allows trans fat to be included in food products, and requires amounts of trans fat to be
22  disclosed as '0g trans fat,' statements about the healthfulness of the products cannot be
23  'misleading.'" *Id.* at 2 n.2.[8]

24

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [8] The Court's decision is in accordance with several others considering similar
26  arguments. For example, the Honorable Richard Seeborg recently rejected the assertion
    that FDA regulations rendered similar false advertising allegations implausible:
27
28      Quaker argues that all of plaintiffs' claims "are based on the implausible
        allegation that trans fat is 'toxic to human health' and that there is 'no safe
        level' of trans fat consumption." Quaker insists that the FDA has

6

## B.    The Second Amended Complaint

Although the Court eventually recognized the error in Kraft's argument that all claims based on the presence of trans fat were preempted, and the Court's indication from the bench that it would likely accede to that argument, Plaintiffs filed, along with their Offer of Proof, a Proposed Second Amended Complaint in response to the Court's direction (*see* Dkt. No. 42), which the Court later permitted Plaintiffs to file.

The SAC (Dkt. No. 58) both provided additional bases for Plaintiffs' allegations that Kraft's health and wellness labeling was deceptive, and challenged additional packaging language, while omitting any challenges to packaging phrases that the Court

"thoroughly evaluated and rejected the key scientific premises" underlying plaintiffs' theory of liability. In response, plaintiffs argue that Quaker is substantially overstating what the FDA has actually determined regarding trans fats, and that, if anything, the FDA has recognized that trans fats may need further regulation. While plaintiffs have persuasive arguments in that regard, even if it were the case that the FDA had clearly and specifically found that trans fats are safe in small quantities (notwithstanding possible consequences of cumulative exposure), that would not justify dismissing the complaint under *Twombly* and *Iqbal* as "implausible." Although the FDA's conclusions, and the research on which it has relied, may serve as evidence Quaker can offer to rebut plaintiffs' allegations, there is no basis . . . to conclude the FDA is so infallible that it is wholly implausible for plaintiffs to contend trans fats present a health risk. Particularly given that scientific understanding of the risks presented by particular substances often evolves over time, the FDA pronouncements on which Quaker relies are insufficient to support dismissing the complaint on implausibility grounds.

*In re Quaker Oats Labeling Litig.*, 2012 U.S. Dist. LEXIS 42777, at *6-7 (N.D. Cal. Mar. 28, 2012). *See also Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077, at *30-31 (C.D. Cal. Apr. 11 2011) (upholding as not preempted allegation that "All Natural" packaging claim was false and misleading under California law in light of presence of trans fat in food); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1123-24 (N.D. Cal. 2010) (upholding as not preempted allegations that packaging phrases "wholesome," "Smart Choices Made Easy," and photographs of healthy children, oats and nuts were misleading in light of presence of trans fat in foods).

had ruled were preempted.[9] Specifically, Plaintiffs added challenges to claims of "Graham," "Honey," and "Ginger and Molasses" on various products, and alleged that Kraft's health and wellness advertising was deceptive based on *both* the products' trans fat content *and* the presence of other objectionable ingredients, like high fructose corn syrup, highly-refined white flour, highly-refined and added sugar, disodium 5'-guanylate, and monosodium glutamate. Further, the SAC clarified that each of the challenged statements was not only misleading by itself, but also contributed to the deceptive context of the packaging as a whole. *See* SAC ¶¶ 82, 84, 108, 122.

In response to Kraft's Motion to Dismiss the SAC (Dkt. No. 63), the Court issued a Tentative Ruling on November 4, 2010, which it later adopted as its final Order. *See* Dkt. Nos. 67, 70. Faced with Kraft's rearguing the preemption issue, the Court reiterated its previous holding:

> Although it never did so in any of its written tentative rulings, this Court at one time indicated from the bench that it would only allow Plaintiffs' lawsuit to proceed to the extent that they could demonstrate that it was not solely predicated upon the presence of artificial trans fat in Defendant's products. As explained in the previous tentative, however, the mere fact that Plaintiffs' claims may be predicated upon the presence of artificial trans fat does not mean that all of their claims are preempted.

November 4, 2010 Tentative Ruling at 1.

In the same decision, the Court addressed Kraft's arguments with respect to Plaintiffs' challenges to the packaging claims "Made with Real Vegetables," "Graham," "Honey," and "Ginger and Molasses." *See id.* at 3-6. Distinguishing Judge Seeborg's decision in *Chacanaca* , 752 F. Supp. 2d 1111, the Court found that "Plaintiffs argue persuasively that two phrases at issue in this case – *i.e.*, 'Made with Real Vegetables'

---

[9] The specific products and packaging statements the SAC challenged are identified in Exhibit 5 to the Fitzgerald Declaration. *See generally* Pl. Supplemental Br. Concerning the SAC, Dkt. No. 68 (for each product and challenged phrase, identifying basis for Plaintiffs' allegations that statement if false or misleading).

and 'Made with Real Ginger and Molasses' – do not meet the definition of implied nutrient content claims" and thus "there would be no obvious argument for express preemption." November 4, 2010 Tentative Ruling at 5.

The Court also rejected Kraft's "argument that challenged words and images concerning vegetables, honey, molasses and ginger are preempted because they comply with the FDA's 'characterizing flavor' regulations," finding persuasive Plaintiffs' argument that these phrases and associated images are intended to convey a message about the products' *ingredients*, not their *flavor*. *See id.* at 5-6.

The Court further noted that "Defendants have not, on preemption grounds, challenged Plaintiffs' allegation that the product name and package of Teddy Grahams and Honey maid Grahams are misleading because they falsely claim that it is a graham product – *i.e.*, that it is made from graham flour – even though it is primarily made from heavily refined white flour." *Id.* at 6 (citing SAC).

Although the Court denied Kraft's Motion to Dismiss the SAC, it did so "without prejudice" and did "not bar[] defendants from making any additional motions to dismiss." (*See* Dkt. No. 70.) Accordingly, Kraft filed another Motion to Dismiss the SAC on December 7, 2010. (Dkt. No. 76.) The Court heard the motion on January 13, 2011, before which it circulated its Tentative Ruling, which it later adopted as its final Order. Dkt. No. 79. In that decision, the Court again addressed the previous preemption thinking and explained the procedural posture of Plaintiffs' pleading:

> At one point the Court made a comment from the bench suggesting that any claims that were premised in any way upon the presence of trans fat in Defendant's products would be preempted, but it has since acknowledged that this was probably wrong. In response to this suggestion, however, Plaintiffs added a number of claims that were either unrelated or only tangentially related to their trans fat claims . . . . The current motion to dismiss challenges those allegations, certain averments based on statements relating to the overall healthfulness of Defendant's products, and certain

9

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF CLASS CERTIFICATION

1    labeling claims that Kraft characterizes as non-actionable "puffing." As
2    Plaintiffs have sufficiently alleged that each of the challenged statements is
3    either deceptive in its own right or contributes to the deceptive nature of the
4    packaging as a whole, Kraft's renewed motion to dismiss [is] DENIED.

5  January 13, 2010 Order at 1. In sum, the Court upheld every challenge to packaging
6  statements advanced in the SAC, both individually and for their contribution to the
7  deceptive context of the Kraft products' packaging as a whole.

8       Kraft filed its Answer on January 28, 2011. Dkt. No. 83.

9  **II.    THE CLASS CERTIFICATION MOTIONS**

10      **A.    Plaintiffs' First Certification Motion**

11      Plaintiffs filed their initial Motion for Class Certification on May 13, 2011 (Dkt.
12  No. 95), in which they sought certification of the putative class's damages and injunctive
13  relief claims under Rule 23(b)(3). That motion proposed a single nationwide class
14  comprised of purchasers of all the accused Kraft products since January 1, 2000. *See*
15  Dkt. No. 95-1 at 4. Although the class definition did not reference *any* specific
16  packaging statements, this did not indicate that Plaintiffs had abandoned all their claims.
17  *C.f. id.* at 5-6 (identifying all claims relating to each product). The Court, however,
18  found several problems and denied the motion without prejudice. *See* September 29,
19  2011 Tentative Ruling, Dkt. No. 145.

20      **B.    Plaintiffs' Renewed Certification Motion**

21      Plaintiffs filed their Renewed Motion for Class Certification on December 19,
22  2011. Dkt. No. 156. In addition to limiting their proposed class to California consumers,
23  in order to address one of the major defects the Court identified with Plaintiffs' previous
24  class definition—that it was overbroad because it captured some Kraft packaging that
25  did not bear the challenged statements, *see* September 29, 2011 Tentative Ruling at 5-
26  6—Plaintiffs advanced product-specific Subclass definitions that (1) narrowed the
27  respective Subclass periods to the time during which discovery showed the challenged
28  phrases appeared on the respective products' packaging, and (2) employed the use of

specific challenged phrases to further define the contours of the product packaging captured by each Subclass definition. *See* Pl. Renewed Mot. for Class Cert., Dkt. No. 156-1 at 1-2.

Although each Subclass definition contained only the smallest number of packaging phrases that Plaintiffs determined were necessary to accurately define the contours of the proposed Subclass, the use of such phrases in the definitions was never meant to abandon any of Plaintiffs' "live" claims, e.g., those that had survived dismissal. That, of course, is the function of Plaintiffs' Complaint, whereas a class definition exists to notify the parties, Court and general public what persons are subject to the litigation and bound by any judgment.

Plaintiffs always intended and believed that, with the contours of each Subclass defined, they would litigate their challenges to *all* of their remaining claims which appeared on packaging captured by each definition. This was especially true because the relevant issue for each product is not whether each claim is *individually* misleading, but whether the packaging is "deceptive as a whole." *Williams*, 552 F.3d at 939 n.3; *Johnson v. Gen. Mills, Inc.*, 2011 U.S. Dist. LEXIS 154213, at *5 (C.D. Cal. Mar. 3, 2011) (

> General Mills attempts to isolate each particular statement or image and
> divorce it from its full context. . . . . This approach is flawed. Even assuming
> General Mills is correct that some of the statements would themselves be
> non-actionable, they 'cannot be considered in isolation because they
> contribute to the [potentially] deceptive context' of the packaging and
> marketing 'as a whole.'" (citing and quoting *Williams*, 552 F.3d at 939 n.3;
> *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1007 (C.D. Cal. 2010) (citing
> *Williams*, 552 F.3d at 939 n.3)).

That Plaintiffs did not intend to abandon claims by electing not to list all challenged phrases in the Subclass definitions is apparent from the material filed in support of the motion. For example, the supporting Persinger Declaration (Dkt. No. 157) identified the Teddy Grahams packages on which the phrase "wholesome" appeared,

even though "wholesome" was not included in the Teddy Grahams Subclass definition, and the packaging of Honey Maid Grahams and Ritz on which the phrase "Nutritionists Recommend" appeared, despite that this phrase never appeared in their respective Subclass definitions. *See* Persinger Decl. at 1-4.

Plaintiffs' Memorandum also made it clear that Plaintiffs had not abandoned claims that did not appear in the Subclass definitions. For example, Plaintiffs described the Ginger Snaps label as "claim[ing] the product was a 'Sensible Solution' and 'Made with Real Ginger & Molasses!'" despite that the Subclass definition included only the former phrase. *See* Pl. Renewed Mot. for Class Cert. at 1, 9. Similarly, despite not appearing in the respective Subclass definitions, Plaintiffs discussed the depiction of vegetables on Vegetable Thins and Ritz Roasted Vegetable, *id.* at 9-10, 12; the phrase "wholesome" on Teddy Grahams, *id.* at 10-11; and the phrase "nutritionists recommend" on Honey Maid Grahams and Ritz, *id.* at 11-12. In addition, Plaintiffs' discussion of each products' packaging specifically referred to the SAC's allegations concerning *each* of the remaining challenged phrases, not just those appearing in the Subclass definitions. *See id.* at 9-12; *compare* App. B, *infra*.

Kraft plainly understood that the Subclass definitions delineated the contours of the class, not serve as a listing of each claim asserted. Although none of the Subclass definitions referred to "Nutritionists Recommend," in its Opposition, Kraft wrote:

> Plaintiffs also selectively omit key words or context from the statements made on the packaging. For example, they continue to misleadingly suggest that the packaging stated that "nutritionists recommend" eating Nabisco snacks. In reality, the packaging of Ritz crackers on the side stated, "Nutritionists Recommend eating at least three one-ounce equivalents of whole grain products per day . . . ."

Kraft Opp. to Renewed Mot. for Class Cert., Dkt. No. 176 at 4.

In their Reply, Plaintiffs further evinced their intent to challenge the Kraft products packaging—and the extent to which each challenged phrase contributes to the

12

deceptive packaging—"as a whole," notwithstanding the limited use of specific packaging phrases to define the Subclasses. Plaintiffs argued that every class member need not be exposed "to the *exact same* representation where the allegation is that defendants' varying statements conveyed a consistent misleading message to the class." Pl. Reply in Supp. of Renewed Mot. for Class Cert., Dkt. No. 183 at 18. And although several definitions used just one or two packaging phrases to define the contours of the Subclass, Plaintiffs further noted that "there may be some variation within some Subclasses. But Plaintiffs allege that the challenged representations conveyed a consistent health and wellness message, and that each such statement 'contributes . . . to the deceptive context of the packaging as a whole.'" *Id.* at 20 (quoting *Williams*, 552 F.3d at 939 n.3).[10]

Although the Court found that the Rule 23(a) factors were satisfied, it ultimately denied Plaintiffs' Renewed Motion for Class Certification on the basis that the proposed class lacked ascertainability and that individual questions of damages predominated. *See* April 12, 2012 Tentative Ruling, Dkt. No. 212; April 26, 2012 Order, Dkt. No. 216. The Court, however, gave Plaintiffs leave to file a Second Renewed Motion for Class Certification under Rule 23(b)(2) limited to their claims for injunctive relief. Plaintiffs did so on May 9, 2012. Dkt. No. 217.

**C.    Plaintiffs' Second Renewed Certification Motion**

Plaintiffs' Second Renewed Motion for Class Certification noted that "Plaintiffs seek an order enjoining Kraft from using the various health and wellness claims on the packaging of accused products so long as they contain . . . trans fat." Pl. Second

---

[10] Moreover, in discussing their reliance on the Kraft products' packaging, Plaintiffs cited their testimony concerning some of the challenged packaging statements that were not used in defining the Subclasses (for example, "Honey" and "wholesome" for the Teddy Grahams Subclass). *See, e.g.*, Ex. 1 to Fitzgerald Decl. in Supp. of Pl. Reply in Supp. of Renewed Mot. for Class Cert., Dkt. No. 184-1 at 2 (quoting Ms. Red, in response to a request to "identify . . . anything on the packaging . . . that you think is deceptive," as stating "and it says 'honey.' To me, honey is healthier than—it's natural."); *id.* at 3 (quoting Ms. Whitt as testifying "'Honey' can be misleading . . . The 'wholesome choice for your family.'").

13

Renewed Mot. for Class Cert., Dkt. No. 217-1 at 5 (citing SAC Prayer for Relief ¶ B). In other words, Plaintiffs' claims were tied to the allegations in the SAC, *not* solely the phrases used to define the contours of each Subclass.

In its Opposition, Kraft argued that Plaintiffs' injunctive relief claims were moot because, supposedly, "[e]xcept for "Made with Real Vegetables," none of the challenged statements is still being used today on the packaging of the snack products." Kraft Opp. to Pl. Second Renewed Mot. for Class Cert., Dkt. No. 221 at 1; *see also id.* at 7 ("The only challenged statement that is being used today on the packaging is 'Made with Real Vegetables.'"). Responding to Kraft's attempt to narrow the packaging claims challenged in Plaintiffs' SAC, in their Reply in Support of their Second Renewed Motion for Class Certification (Dkt. No. 223), Plaintiffs argued that the action was not moot, in part because the Smith Declaration asserting mootness did not address several statements that Plaintiffs' alleged contribute to the deceptive context of the Kraft products' packaging as a whole. Pl. Reply in Supp. of Second Renewed Mot. for Class Cert. at 1 ("Smith addresses only a fraction of the claims at issue"); *see also id.* at 6-7 ("Plaintiffs' Complaint alleges that several other claims that Smith does not address at all are misleading under the UCL, FAL and CLRA . . . includ[ing]: 'graham,' . . . 'wholesome,' . . . 'whole wheat,' . . . 'honey' . . . and 'ginger' and 'molasses'" (citations to SAC omitted). As Plaintiffs explained:

> ***Plaintiffs have not, of course, abandoned their challenges to these claims simply because they do not appear in the Subclass definitions***. Those definitions identify certain labeling claims in the interest of limiting each Subclass to a particular set of packaging, but for the packaging that is part of each Subclass, Plaintiffs continue to assert *all* their challenges that survived dismissal. *See* Dkt. Nos. 37-1, 40, 59, 67 & 70, 79. This is true despite the Court's holding that Plaintiffs cannot state claims based on the names of the products alone, *see* Dkt. No. 145-1 at 6, because Plaintiffs allege that each of these words or phrases contributes to the deceptive context of the packaging

14

1    as a whole for packaging that also contains phrases like "Sensible Solution"

2    and "Help Kids' Growth and Development."

3  *Id.* at 7 n.4.

4        If there was any question remaining that Plaintiffs had not abandoned their

5  allegations that *all* the packaging statements surviving dismissal and appearing on

6  packaging captured by the Subclass definitions were misleading, individually or in the

7  context of the packaging as a whole—even if not explicitly *used* to *define* the

8  Subclasses—it was resolved during the Court-ordered meet-and-confer with Kraft

9  concerning the possibility of a stipulated resolution whereby Kraft would agree to a

10  Court Order prohibiting it from using the accused packaging. During that conference,

11  Plaintiffs' counsel explained that the purpose of the Subclass definitions was to define

12  the contours of each Subclass in the most efficient manner possible (and thus using the

13  minimum number of packaging phrases necessary to capture the complete universe of

14  packaging being challenged), and not to identify the universe of challenged language,

15  which was the function of Plaintiffs' SAC. *See* Fitzgerald Decl. ¶¶ 5-8.

16        Accordingly, Kraft's eleventh hour so-called "Status Report" (Dkt. No. 233) is

17  entirely disingenuous—if not outright lacking candor—when it claims that Plaintiffs'

18  23(b)(2) certification motion "challenged only four statements," and therefore "the only

19  remaining statement at issue now is 'Made with Real Vegetables." Kraft Status Report at

20  2 & n.1.[11]

21

22  [11] Kraft's "Status Report," filed three business days before the July 2 hearing (but four

23  days after Kraft staked its final position in the parties' meet-and-confer process, *see*

      Fitzgerald Decl. ¶ 9), was improper. Neither the Cooper Declaration, nor any other

24  "writing" was never provided to Plaintiffs' counsel before filing, as the Court required.

      *See* June 6 Hrg. Tr. at 13 ("I will allow you to state the Defendants' position initially in

25  writing, provide it to Plaintiffs' counsel. . . . I will give the defense counsel two weeks to

26  provide something to Plaintiffs' counsel."). The "Status Report" and Declaration were

      also filed last-minute so that Plaintiffs did not have a fair opportunity to respond.  And

27  the "Status Report" is, in part, an improper motion for reconsideration of the Court's

28  several decisions upholding "Made with Real Vegetables" as actionable. *See* June 24,

      2010 Tentative Ruling at 9; July 26, 2010 Tentative Ruling at 8-9; November 4, 2010

15

1

## REASONS FOR CERTIFYING THE CLASS

2

## I.    NONE OF PLAINTIFFS' INJUNCTIVE RELIEF CLAIMS ARE MOOT

3          Although this case has been pending for more than two years, only when it

4    became apparent to Kraft that a class would likely be certified under Rule 23(b)(2) did it

5    file a Declaration from its Chief Counsel, Ellen Smith, averring that *to her knowledge*,

6    Kraft currently "has no plans" concerning what packaging language it may use in the

7    future. Kraft argued this was sufficient to demonstrate no "probability of future

8    violations," Kraft Opp. to Second Renewed Mot. for Class Cert. at 5. The Court agreed

9    with Plaintiffs, however, that notwithstanding the Smith Declaration, "none of the claims

10   are moot." June 6, 2012 Tentative Ruling, Dkt. No. 232 at 5. Specifically, the Court held

11   that (a) Kraft misrepresented the case law on which it relied, where mootness was found

12   only after entrance of a *court order*, or where the product had been discontinued

13   altogether, and (b) a "weak assertion by corporate counsel that there are no current plans

14   to use the challenged labels" was insufficient to moot Plaintiffs' claims. *Id.* at 6.

15         Having rejected the Smith Declaration, at the June 6 hearing, the Court inquired

16   whether "Kraft [is] willing to state or provide the Court with a *stipulation* that it will not

17   use any of these statements ever again in its products?" June 6 Hrg. Tr. at 4. Kraft's

18   counsel responded by offering the Court "a more definitive statement" from "a

19   marketing person, an executive," *id.* This the Court rejected, instead instructing Kraft to

20   "talk with Plaintiffs' counsel. And if you guys can reach *a stipulation* on the point, then

21   it seems to me there is nothing I need to certify for a class." *Id.* at 5. Later the Court said:

22             if the Defendant is willing to stipulate to something and if it covers the

23             Plaintiffs' concerns, then that's fine. If there is a concern that you guys can't

24             agree upon, *then I guess that will be what is being litigated at this point in*

25   _____

26   Tentative Ruling at 7; January 13, 2011 Tentative Ruling at 2-5. Yet Kraft did not
     comply with Local Rule 7-18, setting forth the standard for valid reconsideration
27   motions, and Kraft's motion is *not* valid because the cases it cites do not present "a
     material different in fact or law from that presented to the Court" earlier. C.D. Cal. L.R.
28   7-18. Instead, they are only factually-distinguishable cases from non-binding sister
     courts. *See* Kraft Status Report at 3-4.

*time insofar as this action is concerned*. But I will allow the parties to discuss this to see if they can reach some sort of an *agreement*."

*Id.* at 11 (emphases added). It further noted that "if the matter is not resolved" by an agreement between the parties, it "will lift the [discovery] stay . . . ." *Id.* at 13. As the Court directed, on June 19 and 22 the parties met and conferred, but did not reach resolution. Fitzgerald Decl. ¶¶ 7-10. Days later, on June 26, without notifying Plaintiffs, Kraft filed its "Status Report," with an attached Declaration of its Senior Vice President of Biscuits, Jay A. Cooper, who avers that Kraft is no longer using, has no intention of using, and will not be using the Cooper Statements. Cooper Decl. at ¶¶ 4-7.

### A.   Cooper's Testimony Does Not Credibly Establish Mootness

Plaintiffs' injunctive claims are not moot in part because Cooper's Declaration is not full, fair, complete and accurate.

#### i.   Premium Saltines

Plaintiffs previously demonstrated that as of May 28, 2012, Premium Saltines were available for sale in San Diego in packaging bearing the "Sensible Snacking" claim. Creekmore Decl., Dkt. No. 223-1 at ¶ 18 & Ex. 15. Accordingly, Cooper's averment that "Sensible Snacking is no longer used on the packaging of the products included in the Original Premium Saltines Subclass definition," Cooper Decl. ¶ 4, is false. This is so despite that the Supermax store at which the accused Saltines were purchased is a "discount" retailer. For this claim to be truly moot, Kraft must not only aver that it "has no intention of using" the maligned packaging in the future, but also must ensure that it is no longer available in the marketplace.

#### ii.   Teddy Grahams

On two separate, recent occasions, Plaintiffs' counsel observed packages of "Mini" Teddy Grahams for sale in major supermarket chains (Safeway and Vons) in major markets (San Jose area and San Diego), with future expiration dates (September and November 2012), bearing the "Help Kids' Growth and Development" claim.

17

1    Fitzgerald Decl. ¶¶ 11-12. The Court astutely asked of Kraft's counsel, "why is that not a

2    smoking gun for purposes of this argument?" July 2 Hrg. Tr. at 9.

3           Cooper's Declaration carefully states that "Help Support Kids' Growth and

4    Development is no longer used on the packaging of products *in the Teddy Grahams II*

5    *Subclass* ('Teddy Grahams II')," and that Kraft "has no intention of using" the phrase

6    "*on Teddy Grahams II packaging, advertising, or marketing material*," Cooper Decl. ¶ 6

7    (emphases added). Plaintiffs initially included Mini Teddy Grahams in their proposed

8    class (*see* Weston Decl. in Supp. of Mot. for Class Cert., Dkt. No. 96, Ex. 16, Dkt. No.

9    96-2 at 27). Nevertheless, after the Court denied their initial certification motion in part

10   because of "57 different iterations of packaging," September 29 Tentative Ruling at 15,

11   Plaintiffs narrowed the class by restricting the Teddy Grahams Subclass to "10-ounce

12   and 9.5-ounce varieties." *See* Pl. Renewed Mot. for Class Cert. at 1. "Mini" Teddy

13   Grahams are 8 ounces, and thus not included. Cooper's averment is, therefore, not

14   literally false; but it may fairly be characterized as hyper-technical, a partial truth, and/or

15   not a full, fair, complete and accurate representation as it relates to Kraft's conduct at

16   issue in this suit. Moreover, Kraft's seizure upon the limitations in the Subclass

17   definitions, and its apparent intention to modify its behavior only with respect to the

18   product versions technically captured by a Subclass definition but not across its entire

19   product lines, calls into serious question Kraft's argument that there is no reasonable

20   probability of it resuming the challenged conduct.

21          Indeed, this Court recently observed that "[t]he mere fact that [Kraft] ceased

22   voluntarily for one reason or another [using some challenged packaging statements]

23   doesn't necessarily mean that that's mooted out in this particular context *especially*

24   *given the number of times they have utilized this type of approach*." April 12, 2012 Hrg.

25   Tr., at 6 (emphasis added).[12] More recently, the Court reiterated that the challenged

26   "statements that are raised by Plaintiffs are statements that periodically have been raised

27   on more than one occasion by the defendants as to various products and *there's no*

28

[12] Attached to the Fitzgerald Declaration as Exhibit 9.

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF CLASS CERTIFICATION

1    *indication that they will not be raised in some form again*." June 6 Hrg. Tr. at 4

2    (emphasis added).

3          In addition, it would be inefficient to require the filing of a new lawsuit to

4    challenge Mini Teddy Grahams using the statements when the general issue of whether

5    the statements are false or misleading is already being litigated in this Court, especially

6    where the Subclass definition was restricted only in the interest of meeting Rule

7    23(b)(3)'s predominance requirement, but that requirement is no longer at issue for

8    Plaintiffs' Rule 23(b)(2) motion.[13] "'To abandon the case at an advanced stage may

9    prove more wasteful than frugal,' and a flexible application of the mootness doctrine

10   may therefore be appropriate." *C.f. Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125,

11   1132 (9th Cir. 2005) (quoting *Friends of the Earch, Inc. v. Laidlaw Envtl. Servs.,Inc.*,

12   528 U.S. 167, 191-92 (2000)).

13                  **iii.        Online Retailers**

14         Kraft may no longer intend to *create and distribute* "hard copy" packaging to be

15   sold at brick-and-mortar retailers, but this will not prevent scores of online retailers from

16   continuing to advertise Kraft's products using the accused packaging statements,

17   meaning that class members and the public will still be *exposed* to the statements, and

18   Kraft will still *benefit* from them. *See* Fitzgerald Decl. ¶¶ 12-15. Because the injury

19   under California law is the public's *exposure* to a misleading statement, even if Kraft no

20   longer manufactures and distributes the products in the accused packaging, Plaintiffs'

21   injunctive claims are not moot unless and until Kraft instructs its wholesale and retail

22   customers to remove and discontinue using any photos, images or other advertising that

23   shows the accused packaging.

24

25

26

27   ─────────────────

[13] In order to avoid this problem, and since there would be no predominance issue,

28   Plaintiffs could, with the Court's leave, simply omit the phrase "10-ounce or 9.5-ounce varieties of" in the Teddy Grahams I and II Subclass definitions.

*Red et al. v. Kraft Foods Inc.,* Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF CLASS CERTIFICATION

**B.**   **Cooper's Declaration is Insufficient to Moot Plaintiffs' Claims Without Entry of an Enforceable Order and Judgment Against Kraft**

Even if the Court fully credits Cooper's Declaration, it should, respectfully, only deem the challenges to the phrases he addresses moot if there is a consent judgment or other Court order enjoining Kraft's use of the statements. As the Court observed, other courts have found defendants' voluntary cessation of accused conduct sufficient to moot a case "not, as Defendants aver, 'because the defendant company had no intention to resume alleged mislabeling,' but instead because the defendant would 'continue to *comply with this court's prior ruling*' forbidding the use of certain labels." June 6, 2012 Tentative Ruling at 6 (record citation omitted) (citing *Contessa Food Prods., Inc. v. Lockpur Fish Processing, Ltd.*, 2003 U.S. Dist. LEXIS 26682 (C.D. Cal. Jan. 29, 2003)).

The requirement that Kraft be bound by a Court order is sensible, because the Cooper Declaration is unenforceable and thus, standing alone, represents only an illusory "mooting" of Plaintiffs' claims. If Kraft resumed the challenged conduct after the action ended, Cooper—whose Declaration is made "under the penalties for perjury"—might be faulted for perjuring himself, but this is little consolation to Plaintiffs, the putative class, or the general public. Perjury is not an actionable civil claim. *Najarro v. Wollman*, 2012 U.S. Dist. LEXIS 75032, at *9 (N.D. Cal. May 30, 2012) ("The claims of . . . 'perjury' are dismissed because there is no private right of action for . . . those claims." (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Ellis v. City of San Diego*, 176 F.3d 1183, 1189 (9th Cir. 1999)). On the other hand, with the entry of a Court order and/or consent judgment, Plaintiffs or other members of the class or general public could enforce the injunction through a civil contempt action.

In rejecting Kraft's offer of a mere declaration at the June 6 hearing, the Court implicitly acknowledge this problem, stating that if Kraft "in fact . . . issue[s] some sort of product that has the offending language in it, then you could get them for a violation of the *stipulation*, *which would I presume be incorporated into some sort of Court Order*." June 6 Hrg. Tr. at 10 (emphasis added).

20

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF CLASS CERTIFICATION

The Court has invited Kraft to state whether it is willing to have such an Order and/or consent judgment entered against it, and Kraft's response remains to be seen. *But see* July 2, 2012 Hrg. Tr. at 5 ("we . . . don't think it's necessary"). One of the reasons the parties did not come to a stipulation on the issue, however, was that this was a condition of Plaintiffs' agreement to enter into a stipulation, and Kraft would not agree.

## II.   EVEN IF SOME OF PLAINTIFFS' INJUNCTIVE RELIEF CLAIMS WERE MOOT, SEVERAL CLAIMS REMAIN

Even if Plaintiffs' injunctive relief claims concerning Cooper Statements were mooted, this would not moot Plaintiffs' entire action nor obviate the need for class certification. Rather, Plaintiffs would still have several active class claims for injunctive relief for which they would be "entitl[ed]" to class certification. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437-38 (2010) ("a plaintiff whose suit meets the specified criteria" is "entitl[ed]" to an order of certification, as the "discretion suggested by Rule 23's 'may' is discretion residing in the plaintiff[.]").

### A.   Enjoining Kraft from Using the Remaining Packaging Claims

Even if the Cooper Declaration mooted four challenged packaging statements, many remain. *See generally* App. B, *infra*. These include:

The Ginger Snaps Subclass (*see* Fitzgerald Decl. Ex. 12)

• *Made with Real Ginger & Molasses*

The Vegetable Thins Subclass (*see* Fitzgerald Decl. Ex. 13)

• *Vegetable Thins*; *Made with Real Vegetables*; prominent fresh vegetable imagery

Teddy Grahams I and II Subclasses (*see* Fitzgerald Decl. Ex. 14)

• *Teddy Grahams*; *Graham*; *Wholesome*

Honey Maid Grahams Subclass (*see* Fitzgerald Decl. Ex. 15)

• *Honey Maid Grahams*; *Honey*; *Graham*; images of flowing honey, honeycombs and bees; *Wholesome*; *Nutritionists Recommend*; *Steps to a Healthier You*

1 | Ritz Whole Wheat Subclass (*see* Fitzgerald Decl. Ex. 16)

2 | • *Steps to a Healthier You*; *Nutritionists Recommend Whole Wheat*[14]

3 | Ritz Roasted Vegetable Subclass (*see* Fitzgerald Decl. Ex. 17)

4 | • *Roasted Vegetable*; *Made with Real Vegetables*; prominent fresh vegetable
5 | imagery

6 | **B.     Enjoining Kraft From Using *Any* Non-FDA Health & Wellness Claims**
7 | **on Foods Containing Objectionable Ingredients**

8 | Plaintiffs recognize that under the NLEA's express preemption clause, the Court
9 | may not enjoin Kraft from using any health claim, nutrient content claim, or Nutrition
10 | Facts Box disclosure that is permitted under or required by the FDCA and its
11 | implementing regulations. *See* 21 U.S.C. § 343(r)-(q) ; 21 C.F.R. §§ 101.9, 101.13,
12 | 101.14, 101.54-101.77. There is nothing, however, which would prevent the Court from
13 | granting the relief Plaintiffs request in their Complaint by enjoining Kraft from using
14 | "any other misleading health claim on the products" that is not permitted or required by
15 | the FDCA. SAC at 57, Prayer for Relief ¶ B(c); *see also* June 6 Hrg. Tr. at 11-12 ("[T]he
16 | injunction we seek goes beyond just the particular claims that they used . . . . We don't
17 | want to see any health-related claims made on products with substantial trans fat and
18 | refined [sugar and flour.]")

19 | Kraft's Status Report (Dkt. No. 233) complains that Plaintiffs' request in this
20 | respect is "far too vague," and suggests that "Plaintiffs can initiate a new lawsuit if Kraft
21 | . . . uses a new 'health and wellness' claim . . . ." Kraft Status Report at 2. But the Court
22 | has often used language the embodies the notion, referring to Kraft's "general assertions
23 | about the healthfulness of its products," "claims about the overall
24 | healthiness/wholesomeness" of Kraft's products," and "statements about the overall
25 | healthfulness of [Kraft's] products." *See* June 24, 2010 Tentative Ruling at 2-3, 5, 7;
26 | July 26, 2010 Tentative Ruling at 4.

27
28

---

[14] Although the Court found preempted statements about the *amount* of whole *grain* in the Kraft products, it upheld Plaintiffs' challenge to "whole wheat." January 13, 2011 Order at 4.

It would not be difficult to formulate an injunctive order that would adequately dictate what advertising Kraft is enjoined from using on products containing trans fat, for example prohibiting Kraft from using any packaging statement that touts the purported benefits of such a product to consumers' health and wellness. Such an order might include a list of words or phrases that Kraft may not use. The exact contours of such an order would have to be litigated and carefully considered, of course, but there is nothing that renders the issuance of such an injunctive order impossible.

## C.    Requiring Kraft to Engage in a Corrective Advertising Campaign

Plaintiffs' Complaint also seeks an order requiring Kraft to conduct a corrective advertising campaign. SAC at 57, Prayer for Relief ¶ C; *see also* June 6 Hrg. Tr. at 12 ("we are also seeking as part of our injunctive relief a corrective advertising campaign"). There is ample statutory and case law authority for this remedy.

California's UCL authorizes courts to make "such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . . ." Cal. Bus. & Prof. Code § 17203. Similarly, the FAL permits "such orders or judgments . . . as may be necessary to prevent the use or employment by any person . . . of any practices which violate this chapter . . . ." *Id.* § 17535. "[I]t would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited" under these statutes, "since unfair or fraudulent practices may run the gamut of human ingenuity and chicanery." *People ex rel. Mosk v. Nat'l Research Co. of Cal.*, 201 Cal. App. 2d 765, 772 (1962). Thus, these statutes "vest[] the trial court with broad authority to fashion a remedy that will prevent unfair trade practices and will deter the defendant and others from engaging in such practices in the future." *People v. Toomey*, 157 Cal. App. 3d 1, 20 (1984). Courts may enter injunctive relief solely on the basis of protecting the public's right to be protected from fraud and deceit. *Mosk*, 201 Cal. App. 2d at 771. This authority extends to injunctive orders directing an offender to take corrective measures. As the California Court of Appeal has explained:

The remedial power granted under these sections is extraordinarily broad. Probably because false advertising and unfair business practices can take many forms, the Legislature has given the courts the power to fashion remedies to prevent their "use or employment" in whatever context they may occur. The circumstances surrounding Alta-Dena's false advertising fully support the conclusion that a warning was required . . . . Alta-Dena had created a public perception that its RCM was safe and nutritionally superior to pasteurized milk. The warning statement mandated by the trial court is valid as necessary to correct that misperception. . . . "To allow consumers to continue to buy the product on the strength of the impression built up by prior advertising—an impression which is now known to be false—would be unfair and deceptive." *Warner-Lambert Co. v. F.T.C.*, 562 F.2d 749, 761 (D.C. Cir. 1977).  Furthermore, the court's authority to "prevent the use or employment" of unfair business practices and false advertising necessarily includes the authority to make orders to prevent such activities form occurring in the future. While an injunction against future violations might have some deterrent effect, it is only a partial remedy since it does not correct the consequences of past conduct. *C.f. Fletcher v. Security Pac. Nat'l Bank*, 23 Cal. 3d 442, 451 (1979). An "order which commands [a party] only to go and sin no more simply allows every violator a free bite at the apple." *Warner-Lambert*, 562 F.2d at 761-62 n.60 (internal quotation marks omitted). The warning statement mandated by the trial court is necessary to deter Alta-Dena from conducting similar misleading advertising campaigns in the future.

*Consumers Union of U.S. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 972-73 (1992) (collecting state and federal precedent).

While *Alta-Dena* involved a mandatory warning, other courts have exercised their broad discretion to fashion injunctive relief by requiring defendants who violate the

UCL and FAL to engage in corrective advertising. In *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006), the California Supreme Court reviewed the trial court's injunction requiring Leatherman to (a) disseminate a corrective announcement on its Web site for six months and in California newspapers for 12 weeks that its multipurpose tools are not entirely "Made in the U.S.A.," and (b) notify retailers and wholesalers (including online) of the false advertising and instruct them to (i) stop advertising the tools as "Made in the U.S.A.," and (ii) return any offending packaging or advertising to Leatherman. *Id.* at 677-78. The same order required Leatherman to notify class members of procedures for obtaining restitution. *Id.* Because the Supreme Court found restitution improper, *id.* at 700, it remanded the injunction order, but only noted that "some modification . . . is warranted to take into account that there is no need to give notice for the purpose of restitution." *Id.* at 702. Thus the *Colgan* decision effectively affirmed the validity of the trial court's order requiring corrective advertising.

### D.     Requiring Kraft to Recall and/or Destroy Existing Misleading Advertising and Prevent Retailers from Using Misleading Advertising

The SAC also seeks "[a]n order compelling Kraft to destroy all misleading and deceptive advertising materials and products . . . ." SAC at 58, Prayer for Relief ¶ E. Plaintiffs specifically seek an order requiring Kraft to: (a) identify what packaging bearing the challenged claims still exists, where it is located, destroy it, then certify that it did so; and (b) inform its online and "brick and mortar" wholesale and retail customers of the prohibition against using the challenged packaging in any display or advertisement for the products, instruct them to return any offending packaging for destruction, and instruct them to remove any photos of challenged packaging from the Web, then certify that it did so. Absent Kraft's agreement to do the above, Plaintiffs' injunctive claims are not moot since Plaintiffs will not have obtained the full relief they seek by those claims.

### CONCLUSION

The Court should enter the concurrently-filed Proposed Certification Order.

25

1  DATED: July 8, 2012

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18  **MILSTEIN ADELMAN, LLP**
GILLIAN L. WADE

19  SARA D. AVILA
2800 Donald Douglas Loop North

20  Santa Monica, CA 90405
Telephone:   (310) 396-9600

21  Facsimile:   (310) 396-9635

22  *Additional Counsel for Plaintiffs and*

23  *the Proposed Class*

24

25

26

27

28

Respectfully Submitted,


/s/Gregory S. Weston
Gregory S. Weston
**THE WESTON FIRM**
GREGORY S. WESTON
JACK FITZGERALD
MELANIE PERSINGER
COURTLAND CREEKMORE
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (480) 247-4553

**LAW OFFICES OF RONALD
A. MARRON, APLC**
RONALD A. MARRON
MAGGIE K. REALIN
SKYE RESENDES
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone:   (619) 696-9006
Facsimile:    (619) 564-6665

*Lead Counsel for Plaintiffs and the
Proposed Class*

*Red et al. v. Kraft Foods Inc.,* Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF CLASS CERTIFICATION