**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
Kelly M. Morrison (Cal. Bar No. 255513)
kmorrison@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071-2054
Phone:      (213) 239-5100
Facsimile:  (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
Jill M. Hutchison (*pro hac vice*)
jhutchison@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:      (312) 222-9350
Facsimile:  (312) 527-0484

Attorneys for Defendants Kraft Foods Global, Inc.,
improperly sued as Kraft Foods North America, and Kraft Foods Inc.

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br><br>Defendants. | No. CV10-01028-GW (AGRX)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF SECOND RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>[Declarations of Jay Cooper, James Low, and Kenneth K. Lee filed concurrently herewith]<br><br>Hearing Date: August 20, 2012<br>Time: 8:30 a.m.<br>Courtroom: 10<br>Judge: Hon. George H. Wu<br>Action Filed: February 11, 2010 |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................3

    I.    The Court Should Not Consider Plaintiffs' Improper Submission
        Because It Does Not Comply With the Court's July 2, 2012 Order.....3

    II.    Most of Plaintiffs' Claims Are Moot Because They Challenge
        Labels or Ingredients That Are No Longer Used...............................4

        A.    Most of the Challenged Labels Are No Longer Used on the
            Packaging, and There is No Reasonable Expectation They
            Will Be Re-Introduced ...............................................................5

            1.    Plaintiffs' claims are still moot, even if some
                discontinued packaging may remain on the shelves
                for a few additional months..............................................6

            2.    Third-party online retailers' use of Kraft Foods'
                discontinued packaging cannot salvage Plaintiffs'
                moot claims ....................................................................9

            3.    Plaintiffs' additional make-shift injunctive relief
                 claims are meritless .........................................................9

        B.    Many of the Challenged Products No Longer Contain HFCS
            or PHVO, Mooting Plaintiffs' Claims Regarding Those
            Ingredients................................................................................11

    III.    Plaintiffs' Attempts to Challenge Statements Not Alleged in the
        Operative Second Amended Complaint Should Be Rejected.............12

    IV.    The Court Has Already Rejected Several of the Phrases Included
        in Plaintiffs' Most Recent Proposed Subclass Definitions ................13

        A.    The Court Has Already Ruled That Plaintiffs Cannot State a
            Claim Based Entirely On Product Names ................................13

        B.    The Court Has Already Indicated that Claims Based On the
            Term "Wholesome" Are Inactionable ......................................14

i

C.   The Court Has Already Indicated That The Phrases "Nutritionists Recommend" and "Steps To a Healthier You" Cannot, Standing Alone, Form the Basis of a Claim ..............15

V.   The Remaining Challenged Phrases Are Inactionable As a Matter of Law ........................................................................15

A.   The "Made With" Claims are Truthful and Nondeceptive.......16

B.   Word and Images Connoting Characterizing Flavors Are Inactionable..........................................................................18

CONCLUSION.................................................................................21

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Am. Fed'n of Gov't Emps., AFL-CIO v. Brown*,
   866 F. Supp. 16 (D.D.C. 1994)................................................................6

*Caribbean Marine Servs. Co. v. Baldridge*,
   844 F.2d 668 (9th Cir. 1988) ............................................................10

*Colgan v. Leatherman Tool Group, Inc.*,
   135 Cal. App. 4th 663 (2006) ............................................................11

*Consumers Union of United States, Inc. v. Alta-Dena Certified Dairy*,
   4 Cal. App. 4th 963 (1992) ................................................................10

*County of Los Angeles v. Davis*,
   440 U.S. 625 (1979)........................................................................4, 8

*Ctr. for Food Safety v. Vilsack*,
   734 F. Supp. 2d 948 (N.D. Cal. 2010) ..............................................10

*Dvora v. Gen. Mills, Inc.*,
   No. 11-1074, 2011 WL 1897349 (C.D. Cal. May 16, 2011) .......18, 19

*Henderson v. Gruma Corp.*,
   No. 10-4173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011).......16, 17

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) .........................................................17

*Jones v. Metro. Life Ins. Co.*,
   No. 08-03971, 2010 WL 4055928 (N.D. Cal. Oct. 15, 2010)............4

*JSMS Rural LP v. GMG Capital Partners III, LP*,
   No. 04-8591, 2006 WL 2239681 (S.D.N.Y. Aug. 4, 2006) ...............4

*Mathews v. Gov't Emps. Ins. Co.*,
   23 F. Supp. 2d 1160 (S.D. Cal. 1998) ................................................6

*McKinniss v. Gen. Mills, Inc.*,
   No. 07-2521, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007)............18

*McKinnis v. Kellogg USA*,
    No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)............................18

*McKinniss v. Sunny Delight Beverages Co.*,
    No. 07-2034, 2007 WL 4766525 (C.D. Cal. Sept. 3, 2007)........................17, 19

*Mosk v. National Research Co. of California*,
    201 Cal. App. 2d 765 (1962) ............................................................................10

*People v. Nat'l Ass'n of Realtors*,
    120 Cal. App. 3d 459 (1981) ............................................................................ 6

*People v Toomey*,
    157 Cal. App. 3d 1 (1984) ................................................................................10

*Pharmanex, Inc. v. HPF*,
    221 F.3d 1352, 2000 WL 703164 (10th Cir. Apr. 20, 2000) ...........................6

*Plascencia v. Lending 1st Mortgage*,
    No. 07-4485, 2012 WL 253319 (N.D. Cal. Jan. 6, 2012) ...............................12

*Pom Wonderful LLC v. Coca-Cola Co.*,
    679 F.3d 1170 (9th Cir. 2012) ..........................................................................19

*Rooney v. Cumberland Packing Corp.*,
    No. 12-33, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ..........................14, 17

*Volkswagenwerk Aktiengesellschaft v. Church*,
    411 F.2d 350 (9th Cir. 1969) .............................................................................6

**OTHER AUTHORITIES**

21 C.F.R. § 101.22 (i) .................................................................................18

# **INTRODUCTION**

Plaintiffs' 25-page Supplemental Submission is a far cry from the simple "declaration" requested by the Court in its July 2 Order.  Rather, it is merely the latest in Plaintiffs' many attempts to move the goalposts whenever the Court rules against them.

When Plaintiffs filed this lawsuit two years ago, they complained that Kraft Foods failed to disclose that certain Nabisco snacks contain trace amounts of trans fat, even though the packaging disclosed "0g trans fat" in accordance with federal law.  After this Court held that federal law preempted a number of their claims, Plaintiffs' counsel filed an amended complaint objecting to the presence of ingredients that would reasonably be expected to be in snack products (such as white flour and sugar), even though the class representatives admitted that they knew nothing about these changes to their claims and were not attempting to avoid consuming these ingredients.

Plaintiffs submitted nearly 140 pages of briefing in support of their Rule 23(b)(3) class.  When the Court rejected it, Plaintiffs wanted to push the goalposts further and submitted an additional 60 pages seeking a Rule 23(b)(2) class.  And when the Court indicated at the July 2 hearing that it was inclined to deny the Rule 23(b)(2) class on mootness grounds, Plaintiffs tried to avert that fate by pointing to statements and products that are not even included in their subclass definitions or the operative complaint.  In their latest filing, Plaintiffs propose ten subclasses challenging a variety of different phrases that are no longer being used, that were not identified in the operative complaint, or that have been previously rejected by the Court as inactionable.  None of the subclasses is proper.

First, several of the challenged phrases are no longer being used, and indeed, the decision to stop using them in many instances was made *before* this lawsuit was even filed in 2010.  These phrases are:

- "Sensible Snacking" in the proposed Original Premium Saltines, Teddy Grahams I, Honey Maid Grahams and Ritz Crackers Reduced Fat subclasses.

- "Sensible Solution" in the proposed Old Fashioned Ginger Snaps, Teddy Grahams I, Honey Maid Grahams, Ritz Crackers Whole Wheat, Ritz Crackers Reduced Fat and Ritz Crackers Hint of Salt subclasses.
- "Smart choices" in the proposed Teddy Grahams I and II subclasses.
- "Help Support Kids' Growth and Development" in the proposed Teddy Grahams II subclass.

Thus, claims based on these phrases in the above subclasses are moot. Plaintiffs raise a red herring by pointing to *discontinued* packaging that may be remaining on the shelves of some retailers. But, under the controlling case law, that is not enough to salvage their case from mootness grounds. In any event, these snacks have relatively short shelf-life and will be gone from the shelves within a few months. There is simply no "reasonable expectation" of "recurring" harm here to justify judicial relief.

Second, several of the phrases challenged in the new proposed subclasses were not included in the Second Amended Complaint (SAC) and are thus inactionable. Those phrases include: (1) "Sensible Solution" in the proposed Saltines class definition; (2) "Sensible Snacking," "wholesome," "steps to a healthier you," and "nutritionists recommend" in the proposed Honey Maid class definition; and (3) "Sensible Snacking" in the proposed Ritz Reduced Fat class definition. These phrases should be stricken from the subclass definitions because Plaintiffs never challenged them in the SAC.

Third, this Court has already rejected several of the phrases or names included in the proposed subclass definitions. These rejected claims include those based merely on the names of products ("Vegetable Thins," "Teddy Grahams," "Honey Maid Grahams," "Roasted Vegetable Ritz," and "whole wheat" as used in "Ritz Whole Wheat"), as well as the term "wholesome." Further, the Court has indicated that the phrases "Nutritionists Recommend" and "Steps to a healthier you," as used in the context on the packaging, could not support a claim if other phrases like "sensible solution" were later deemed inactionable. Since "sensible solution" is no longer being used, any claims based on those two statements must fail.

Once this Court sets aside (1) the phrases that Kraft no longer uses on its labels, (2) the phrases that were not included in the SAC, and (3) the phrases that this Court has already deemed inactionable, only a handful of phrases remain: (i) "Made with Real Vegetables" and vegetable images in the Vegetable Thins and Ritz Roasted Vegetables subclasses; (ii) "Made with Real Ginger & Molasses"; and (iii) references to characterizing flavors, namely "honey" and "graham" in the Honey Maid Grahams and Teddy Grahams subclasses.  As demonstrated below, those phrases cannot be misleading as a matter of law.  This Court already indicated in its most recent tentative opinion that recent case law may render the term "Made with Real Vegetables" inactionable and requested further briefing.

Plaintiffs' fourth attempt to certify a class of snack food purchasers should be denied.  Plaintiffs have had repeated opportunities to propose a viable consumer class with actionable claims, but have failed to do so.

## **ARGUMENT**

## **I.     The Court Should Not Consider Plaintiffs' Improper Submission Because It Does Not Comply With the Court's July 2, 2012 Order.**

As an initial matter, this Court should reject Plaintiffs' attempt to move the goalposts whenever the Court rules against them.  The Court's July 2 tentative opinion stated that it was inclined to deny class certification on mootness grounds, but Plaintiffs' counsel raised a red herring (discussed below) to survive another day.  But the Court's July 2, 2012 Order ("Order") was unequivocal:  Plaintiffs were instructed to "file a declaration with a list of [w]hat's being found in current items and the proposed subclass language."  Dkt. No. 234 at 1.  Plaintiffs treated that Order as an invitation to file *yet another* 25-page motion for class certification,[1] in which they proffer new allegations,

---

[1] Plaintiffs' lengthy submission is ironic in light of their counsel's representation at the July 2 hearing in which counsel stated that he omitted subclass descriptions from his proposed subclass lists not because Plaintiffs intends to abandon them, but because "further ones would have just made the subclass definition longer, and we dropped them

(Continued…)

recycle old ones, and overhaul their theory of the case yet again. Plaintiffs' gamesmanship should not be indulged.

It is well settled that "based on its inherent powers, a court may strike" submissions like Plaintiffs', which "reflect[] procedural impropriety [and] lack of compliance with court rules or orders." *Jones v. Metro. Life Ins. Co.*, No. 08-03971, 2010 WL 4055928, at *6 (N.D. Cal. Oct. 15, 2010). Moreover, "it would be unfair to allow" Plaintiffs to "move the goalposts" yet again by "re-litigating" their claims "with new evidence and arguments" every time their bid for class certification is rejected. *See JSMS Rural LP v. GMG Capital Partners III, LP*, No. 04-8591, 2006 WL 2239681, at *2 (S.D.N.Y. Aug. 4, 2006). Accordingly, the Court should decline to consider Plaintiffs' Supplemental Submission.

## II. Most of Plaintiffs' Claims Are Moot Because They Challenge Labels or Ingredients That Are No Longer Used.

As this Court held, a case is moot "where there is 'no reasonable expectation that the alleged violation will recur,' and where 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" Order at 1 (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Indeed, the Court in its most recent tentative opinion held that it was "inclined to find that [Kraft Foods'] Cooper Declaration is sufficient to support the reasonable expectation that the challenged labels will never be used again, which would eradicate the effects of the alleged violation, at least to the extent that an injunction against future label use . . . could remedy the alleged violation." Order at 2.

The declaration of Jay Cooper — the Senior Vice President who is in charge of approving the packaging of the snacks in question — has settled this issue once and for all. He swore under oath unequivocally that most of the challenged phrases are not

_____

for economy's sake." Ex. A (7/2/12 Tr.) at 16:4-9. Exhibits A-E are attached to the concurrently-filed Declaration of Kenneth K. Lee.

currently used and will not be used in the future.  Moreover, many of Plaintiffs' claims are further rendered moot because many of the challenged products no longer use high fructose corn syrup (HFCS) or partially hydrogenated vegetable oil (PHVO), which served as the bases for Plaintiffs' claims.

### A. Most of the Challenged Labels Are No Longer Used on the Packaging, and There is No Reasonable Expectation They Will Be Re-Introduced.

Plaintiffs challenge "Sensible Snacking, "Sensible Solution," "Smart Choices Program/Grading (sic) Food Choices," and "Help Support Kids Growth and Development."[2] But none of these phrases are "used on the packaging of the products included" in Plaintiffs' subclasses.  Dkt. No. 233, Ex. A (Cooper Decl.) ¶¶ 4-7. Moreover, "Kraft Foods has no intention of using and will not be using" these designations on the packaging "at anytime in the future." *Id.*[3] Mr. Cooper's unequivocal assertion is sufficient to show that there is no "reasonable expectation that the alleged violation will recur."  Order at 1.

Contrary to Plaintiffs' repeated assertions, there is simply no requirement for a court order to render a case moot.  While some courts have held that a court order is *sufficient* to render a case moot, Plaintiffs have not cited a single case stating that a court order is *necessary*.  The key question is whether there is a "reasonable expectation" of recurring harm, not whether there is a court order.  Scores of cases have held that a defendant's assertion that it had discontinued and would not resume the challenged

---

[2]  Plaintiffs challenge these phrases in connection with their Ginger Snaps, Premium Saltines, Teddy Graham I and II, Honey Maid Grahams, Ritz Whole Wheat, Ritz Reduced Fat, and Ritz Low Salt subclasses.

[3] Likewise, there is no reasonable expectation — or even remote possibility — that the label identified in the proposed Ginger Snaps subclass will be used in the future.  The Ginger Snaps subclass is defined to include "all persons who purchased in California, between April 1, 2008 and December 31, 2010, Ginger Snaps in packaging bearing the phrase 'sensible solution' and 'Made with Ginger & Molasses!'"  Kraft sells no Ginger Snaps that bear both of those phrases on the label.

conduct is sufficient to render a case moot if there is no reasonable expectation of recurring harm. *See, e.g.*, *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969) (denying requested injunctive relief where "[t]here is little or no evidence in the record casting doubt on Church's good faith abandonment of this infringement, or indicating that it will be resumed"); *People v. Nat'l Ass'n of Realtors*, 120 Cal. App. 3d 459, 476 (1981) ("The court has the power to refuse to enjoin future conduct where it is satisfied there is no reasonable possibility past unlawful acts will be repeated."); *Mathews v. Gov't Emps. Ins. Co.*, 23 F. Supp. 2d 1160, 1165-1166 (S.D. Cal. 1998) (case moot where defendant submitted affidavits indicating it had "terminated" the challenged conduct); *Am. Fed'n of Gov't Emps., AFL-CIO v. Brown*, 866 F. Supp. 16, 20 (D.D.C. 1994) (accepting lawyer's representation that agency had changed its policy as sufficient to moot case); *Pharmanex, Inc. v. HPF*, 221 F.3d 1352, 2000 WL 703164, at *2 (10th Cir. Apr. 20, 2000) (case was moot because there was no reasonable expectation of recurring harm in light of outside counsel's repeated statements that company had changed its labels).

Similarly here, Plaintiffs have offered no evidence that there is a "reasonable expectation" that Kraft Foods will resume using these phrases. As explained in prior submissions, Kraft Foods decided to stop using a large number of the challenged statements *before* this lawsuit was even filed. In contrast to Plaintiffs' lack of evidence showing any reasonable expectation of recurring harm, Kraft Foods has offered a declaration from a senior business executive who has sworn under oath that Kraft Foods will not be using the challenged statements for the products in question "at anytime in the future." In short, Plaintiffs' wisps of speculation and accusations do not create a "reasonable expectation" of any recurring harm.

    1.  Plaintiffs' claims are still moot, even if some discontinued packaging may remain on the shelves for a few additional months.

Plaintiffs argue that the case is not moot because some products still bearing the discontinued labels may remain on the shelf for the remainder of their shelf life.

Plaintiffs contend that "[f]or this claim to be truly moot, Kraft must not only aver that it 'has no intention of using' the maligned packaging in the future, but also must ensure that it is *no longer available in the marketplace*."  *Id.*; *see also id.* at 19.

As a preliminary matter, with the possibility of one exception, those snacks bearing any of the discontinued statements are no longer available on the shelves of any stores. The one exception involves the "Help Kids' Growth and Development" claim on Teddy Grahams.  Kraft Foods decided to remove this claim from a few remaining Teddy Grahams brand products several months ago — before Plaintiffs offered their subclass definition.  The shelf life of these products, however, ranges from seven to nine months and, therefore, a package with this phrase may still be found in some retail outlets if the bakery that manufactured the product used up its stock of older packaging before using the new packaging that removed the claim.  *See* Supp. Cooper Decl. ¶¶ 4-6 (explaining that a "[p]roduct manufactured in March or early April with a shelf life of seven months could still be in retail stores, but most of it should not longer be available to consumers and has been replaced").  As Mr. Cooper explains, within a finite period of a few months, all of the Teddy Grahams products containing the discontinued labels will be replaced by products containing new labels — and Plaintiffs' claims will be unquestionably rendered moot.  *See id.*

In hopes of manufacturing a viable claim where none exists, Plaintiffs' counsel at the July 2 hearing raised a red herring  by showing a "Mini" Teddy Grahams that had the statement "Help Support Kids' Growth and Development" on it.  *See also* Supp. Sub. at 17.  But the "Mini" Teddy Grahams are *not* a part of this lawsuit.  As Plaintiffs concede, the "Mini" Teddy Grahams class was rejected in September.  *Id.* at 18.  Only the 10-ounce and 9.5-ounce varieties remain, and "Mini" Teddy Grahams are an 8-ounce variety.  For the 10-ounce and 9.5-ounce varieties that were still a part of Plaintiffs' subclass definitions, the statement "Help Support Kids' Growth and Development" was removed many months ago, which is the reason why Plaintiffs could not find any offending packages.  In any event, the final changes to remove "Help Support Kids'

Growth and Development" from the "Mini" 8-ounce Teddy Grahams were implemented in March 2012.  *See* Supp. Cooper Decl. ¶¶ 2-6.  Given their seven-month shelf-life, the "Mini" Teddy Grahams found in stores will not have "Help Support Kids' Growth and Development" by November 2012 at the latest.[4]

Plaintiffs provide no support for their novel theory that Kraft must instantly ensure that all products currently on the shelf are destroyed in order for Plaintiffs' claims to be rendered moot.  Neither law nor common sense supports such a strained and unrealistic interpretation of the mootness doctrine. It is black letter law that "where there is 'no reasonable expectation that the alleged violation will recur,' and where 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation,' the case is moot."  Order at 1 (quoting *Cnty. of Los Angeles*, 440 U.S. at 631).  As this Court  was "inclined to find," "the Cooper declaration is sufficient to support the reasonable expectation that the challenged labels will never be used again, which would eradicate the effects of the alleged violation . . . to the extent that an injunction against future label use . . . could remedy the alleged violation." *Id.* at 2.   In other words, because Kraft has already ceased to use the challenged labels, Plaintiffs have already obtained the relief they sought through their 23(b)(2) class, and the "effects of the alleged violation" have been "eradicated."[5]

---

[4]  Plaintiffs falsely insinuate the Mr. Cooper told a "half-truth" in his prior declaration, and recklessly accuse Kraft Foods "modifying its behavior only with respect to the product versions technically captured by a Subclass definition but not across its entire product lines."   But as set forth above, the decision to remove "Help Support Kids' Growth and Development" from *all* Teddy Grahams products, including the "Mini" Teddy Grahams, was made months *before* Plaintiffs offered their subclass definition.

[5] In any event, the packaging with the challenged statement would be well beyond the shelf life and therefore not in the marketplace by the time the parties fully litigated the injunction request.

2. Third-party online retailers' use of Kraft Foods' discontinued packaging cannot salvage Plaintiffs' moot claims.

Similarly, the use of Kraft Foods' discontinued labels by third-party online retailers cannot defeat mootness. *See* Supp. Sub. at 19. Again, Plaintiffs misunderstand the mootness doctrine. This lawsuit is against Kraft Foods, not third-party online retailers. The question here is whether *Kraft* will use the challenged labels in the future. *See* Order at 2 (finding that the Cooper Declaration, which explains *Kraft*'s decision to discontinue certain labels and *Kraft*'s intention not to reintroduce those labels, is "sufficient to support the reasonable expectation that the challenged labels will never be used again, which would eradicate the effects of the alleged violation") (emphasis added). Kraft cannot be held liable for the acts of third parties. Unsurprisingly, Plaintiffs cite not one single case in support of their novel theory that because someone somewhere might advertise Kraft's products in an objectionable fashion, Plaintiffs' claims against *Kraft* are not moot. Moreover, Kraft cannot order third parties to change their advertising, nor could this Court do so without first giving them an opportunity to respond to Plaintiffs' request for an injunction.

3. Plaintiffs' additional make-shift injunctive relief claims are meritless.

Finally, Plaintiffs contend that "even if some of plaintiffs' injunctive relief claims were moot, several claims remain." Supp. Sub. at 21. Plaintiffs then supply a "wish list" of conduct they ask the Court to enjoin or require, ranging from instructing Kraft not to use "any non-FDA health & wellness claims" to requiring Kraft to undertake a corrective advertising campaign. *Id.* at 22-23. Plaintiffs' attempt to expand the contours of any injunction to encompass their every whim is contrary to law and must be rejected.

First, Plaintiffs seek to enjoin Kraft from using "any other misleading health claim on the products," a demand which they insist "would not be difficult to formulate." *Id.* Plaintiffs' request cannot be taken seriously. Other than vaguely referring to "packaging statement[s] that tout[] the purported benefits of" products containing trans fat "to consumers' health and wellness," Plaintiffs cannot come up with a single example of

9

what this "other misleading health claim" injunction would entail. *Id.* Indeed, they remark "[s]uch an order might include a list of words or phrases that Kraft may not use" — yet they provide not one single example of such a word or phrase. Admitting that "[t]he exact contours of such an order would have to be litigated and carefully considered," Plaintiffs concede that they are seeking prospective relief for unidentified conduct that has not yet taken place. The impropriety of such a request is well settled. *See, e.g.*, *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("speculative injury" is insufficient to warrant injunctive relief); *Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 955 (N.D. Cal. 2010) (denying request for injunction because "any injury from [the challenged] conduct [wa]s purely speculative and dependent on future conduct"). If, in the future, Plaintiffs take issue with one of Kraft's labels, Plaintiffs may file another lawsuit. They cannot, however, use this lawsuit — which has already been morphed beyond recognition — to prohibit unidentified future conduct.

Second, Plaintiffs demand that Kraft undertake "a corrective advertising campaign," Supp. Sub. at 23-24. Again, Plaintiffs supply not one single example of what this campaign might entail, and indeed it is difficult to conceive of what these so-called "corrective" advertisements might say, given that nearly all of the challenged labels have been discontinued. Nor do Plaintiffs supply any authority for the proposition that corrective advertisements are warranted here. Plaintiffs do not and cannot contend that the labels caused or will ever cause immediate physical injury; nor do Plaintiffs identify any facts or information that a corrective advertising campaign would convey.[6] Plaintiffs' half-hearted request should be rejected.

---

[6] The cases Plaintiffs cite are inapposite. Neither *People v Toomey*, 157 Cal. App. 3d 1 (1984), nor *Mosk v. National Research Co. of California*, 201 Cal. App. 2d 765 (1962), involved corrective advertising. *Consumers Union of United States, Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 966 (1992), required the defendant to provide corrective warnings where it had advertised as "safe[]" for two-week-old infants a product that actually contained "disease-causing organisms" causing, *inter alia*,

(Continued…)

Third, Plaintiffs' request that Kraft "recall and/or destroy existing misleading advertising and prevent retailers from using misleading advertising" is pointless.  Supp. Sub. at 25.  As explained above, Plaintiffs offer no authority for the proposition that Kraft should — or even that it could — "identify what packaging bearing the challenged claims still exists, where it is located, [and] destroy it." *Id*.  Given their shelf-life, any remaining snacks with the challenged statements will be gone by the time this litigation concludes.  Nor should Kraft be required to "instruct" third parties to "return" offending packaging and "remove any photos of challenged packaging from the Web."   Kraft is not a regulatory body and cannot require third parties to take affirmative steps based on Plaintiffs' inappropriate demands.

## B. Many of the Challenged Products No Longer Contain HFCS or PHVO, Mooting Plaintiffs' Claims Regarding Those Ingredients.

To the extent Plaintiffs' subclasses include products that Plaintiffs challenged on the basis of inclusion of partially hydrogenated vegetable oil or high fructose corn syrup, many of those claims are also moot:

- Plaintiffs challenge Ginger Snaps labels on the ground that the product allegedly contained HFCS.    SAC ¶ 126; Supp. Sub. Ex. 18 (proposing Ginger Snaps

---

"infection which resulted in a life-threatening aneurism" in one individual's heart that required "major surgery" and lifelong antibiotics.  The products at issue in *Consumers Union*, which resulted in serious injury and death to a vulnerable population, are a far cry from the snack foods in this case, which Plaintiffs do not and cannot allege were physically injurious, let alone deadly.  Finally, in *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 702 (2006), a corrective advertisement was ordered where the defendant made the *false* assertion that "it had stopped making" the challenged representations; "made no commitment to change its labeling practices on a permanent basis"; and in fact "indicated that it may, in the future, resume labeling its products with an unqualified 'Made in U.S.A.' representation."  Even assuming Plaintiffs had actually proposed a viable corrective advertisement, such an advertisement would serve no purpose here, where Kraft has discontinued use of the challenged labels.

subclass).  However, as shown in the federally mandated ingredient list of the current Ginger Snaps, they no longer contain HFCS.  *See* Ex. 1.[7]

- Plaintiffs also asserted claims with respect to their Honey Maid Grahams subclass, based on the presence of HFCS.  *E.g.*, SAC ¶ 124; Supp. Sub. Ex. 18 (proposing Honey Maid subclass).  HFCS, however, was removed from Honey Maid Grahams.  Ex. 4.

- Similarly, the Premium Saltines labels are challenged on the grounds that the products allegedly contain HFCS and sugar.  *E.g.*, SAC ¶¶ 115-16; Supp. Sub. Ex. 18 (proposing Premium Saltines subclass).  But Premium Saltines no longer contain HFCS and did not contain highly refined added sugar at any time during the class period.  Ex. 3.

- Plaintiffs took issue with the Teddy Grahams subclasses I and II, asserting claims based on the presence of PHVO/trans fat for the Honey, Chocolate and Cinnamon varieties.  *E.g.*, SAC ¶ 68; Supp. Sub. Ex. 18.  These products, however, no longer contain PHVO.  Ex. 9.

## III. Plaintiffs' Attempts to Challenge Statements Not Alleged In the Operative Second Amended Complaint Should Be Rejected.

At this late stage in the proceedings, Plaintiffs seek to lard on a number of alleged misrepresentations not identified in the operative pleading, the Second Amended Complaint.  But, as this Court has already recognized, a plaintiff may not seek relief for alleged misrepresentations not identified in the complaint.  *See also Plascencia v. Lending 1st Mortgage*, No. 07-4485, 2012 WL 253319, at *4 (N.D. Cal. Jan. 6, 2012) (denying plaintiffs' request to amend the class certification order because the "proposed amendment would expand the class beyond the claims that they plead in the operative complaint").  As a result, the Court should strike the following from Plaintiffs' proposed class definitions:  (1) "Sensible Solution" in the proposed Saltines class definition; (2)

---

[7]  Exhibits 1-9 are attached to the concurrently-filed Declaration of James Low.

"Sensible Snacking," "wholesome," "steps to a healthier you," and "nutritionists recommend" in the proposed Honey Maid class definition; and (3) "Sensible Snacking" in the proposed Ritz Reduced Fat class definition.  None of these statements on the above snacks are mentioned in the SAC.[8]

## IV.    The Court Has Already Rejected Several of the Phrases Included in Plaintiffs' Most Recent Proposed Subclass Definitions.

The Court specifically admonished Plaintiffs against "pull[ing] a fast one and includ[ing] something in [the proposed amended] class definitions that [it has] already ruled upon." Ex. A (7/2/12 Tr.) at 19:19-23.  But that is precisely what Plaintiffs seek to do by including product names and "wholesome" in their subclass definitions.  Plaintiffs' defiance of the Court's orders should not be indulged.

### A.    The Court Has Already Ruled That Plaintiffs Cannot State a Claim Based Entirely On Product Names.

Despite the Court's warning at the July 2 hearing, Plaintiffs request to amend their proposed subclasses to include various product names — "Vegetable Thins," "Teddy Grahams," "Honey Maid Grahams," "Roasted Vegetable Ritz," and "whole wheat" as

---

[8] The SAC challenges the following labeling statements and images:

- As to Teddy Grahams: "graham," "A fun, wholesome choice for your whole family," "support kids' growth and development," and "Smart Choices."

- As to Vegetable Thins and Ritz Roasted Vegetables:  "Made With Real Vegetables" and images of vegetables.

- As to Ritz Hint of Salt and Ritz Reduced Fat:  "Sensible Solution."

- As to Ritz Whole Wheat:  "whole wheat," "Sensible Solution," "Nutritionists Recommend," and "steps to a healthier you."

- As to Premium Saltines: "Sensible Snacking."

- As to Honey Maid Grahams:  "graham," "honey," and "Sensible Solution."

- As to Ginger Snaps:  "Made with Real Ginger & Molasses" and "Sensible Solution."

used in "Ritz Whole Wheat."[9]  Supp. Sub. Ex. 18.  This Court has already rejected as "erroneous" the "suggestion . . . that Plaintiffs could state a claim based merely on the names of the products."  Dkt. No. 145 (9/29/11 Order) at 6 (refuting Plaintiffs' argument that "the product names [themselves] are deceptive"); *see also Rooney v. Cumberland Packing Corp.*, No. 12-33, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) (rejecting argument that a reasonable consumer would be deceived by the name of the product, "Sugar in the Raw," into believing that it contains nothing other than raw, unprocessed sugar where "[a]side from the brand name, the word raw does not appear on the packaging").  Because the products' names cannot support a claim of deception, they cannot justify an order for injunctive relief, and they cannot form the basis of a certified class.

## B. The Court Has Already Indicated that Claims Based On the Term "Wholesome" Are Inactionable.

Like the products' names, this Court has already suggested that Plaintiffs cannot state a claim on the basis of the word "wholesome."  As the Court put it, Plaintiffs' challenge to the term "wholesome" may not be actionable because it is premised solely on the presence of trace amounts of trans fat in Teddy Grahams.  Ex. A (7/2/12 Tr.) at 17:17-18:8 (explaining "this Court has already indicated [Plaintiffs' challenge to wholesome] would not fly" since "the challenge was that . . . the defendants would . . . be somehow barred from using the word wholesome" because "the products . . . contained . . . trans fats"); *see also* Ex. B (11/4/10 Tr.) at 12:18-14:9 (Plaintiffs' counsel acknowledging that the challenge to the term "wholesome" is based on allegations that Teddy Grahams contained trans fat).  The Court should not permit Plaintiffs to "pull a fast one" and re-insert claims into this lawsuit that have already been rejected.

---

[9]  Plaintiffs purport to challenge the phrase "whole wheat," but the only place that phrase appears on the packaging for Ritz Whole Wheat is as part of the product's name. *See* Ex. 5.

### C. The Court Has Already Indicated That The Phrases "Nutritionists Recommend" and "Steps To a Healthier You" Cannot, Standing Alone, Form the Basis of a Claim.

Finally, the Court previously recognized that the "Nutritionists Recommend" and "steps to a healthier you" labels "are not likely to be determined to be deceptive."  Dkt. No. 36 (6/24/10 Order) at 9-10.  And for good reason.  The label states: "Steps to a healthier you.  Ritz Whole Wheat Crackers have 5 grams of whole grain per 15 gram serving.  Nutritionists recommend eating 3 or more servings of whole grain foods per day (about 16g whole grain per serving or at least 48g per day).  Log on to Mypyramid.gov to help you make smart food choices and get the most nutrition out of your calories."  Ex. 5.  These statements are all factually true, and Plaintiffs never explained how these statements can be false or misleading.

The Court declined, however, to "resolve [the issue] at th[at] juncture" because it determined that "at least some of Plaintiffs' allegations" — such as the "Sensible Solution" and "Smart Choices" labels — "g[a]ve rise to a colorable claim."  Dkt. No. 36 at 9-10.  But, as shown above, those labels cannot support the injunctive relief class requested by Plaintiffs.  The Court should, therefore, confirm that the "Nutritionists Recommend" and "Steps to a healthier you" statements are not deceptive as a matter of law, and reject Plaintiffs' attempt to re-insert them into this lawsuit at the class-certification stage.[10]

### V. The Remaining Challenged Phrases Are Inactionable As a Matter of Law.

As demonstrated above, the majority of Plaintiffs' proposed subclasses identify phrases that cannot form the basis of any claims because (i) they are no longer being

---

[10] Plaintiffs' claims based on these phrases are not actionable for another reason as well — Plaintiffs never saw or relied on them.  As the Court previously recognized, "Nutritionists Recommend" and "steps to a healthier you" appeared only on the side panel of Ritz Whole Wheat crackers.  Dkt. No. 36 (6/24/10 Order) at 9.  Plaintiffs' deposition testimony indicates, however, that they did not review that language on the side panel before purchasing the product.  *See* Ex. C (Whitt Tr.) at 137:5-17; Ex. D (Red Tr.) at 73:10-74:6.

used, (b) they were not alleged in the SAC, or (c) the Court has already deemed inactionable.  As a result, only a handful of challenged phrases remain.  And those remaining phrases are inactionable as a matter of law because new case law indicates that they would not deceive a reasonable consumer.

### A. The "Made With" Claims are Truthful and Nondeceptive.

This Court previously declined to rule on whether the statement "Made with Real Vegetables" "is not actionable as a matter of law," on the ground that Kraft Foods had not submitted sufficient evidence that it will not be using the other challenged representations — "Help Support Kids' Growth and Development," "Sensible Solution," "Sensible Snacking," and "Smart Choices" — in the future.  *See* Dkt. No. 232 (6/6/12 Order) at 5-6. Kraft Foods has now done so.  As explained above and in the Cooper Declarations, Kraft Foods "has no intention of using and will not be using" those labels "at any time in the future."  *See* Dkt. No. 233, Ex. A (Cooper Decl.) ¶¶ 4-7; *see also* Order at 2 (indicating Court's inclination to find mootness as to Plaintiffs' claims challenging statements other than "Made with Real Vegetables").

In light of the evidence establishing mootness, the Court should now evaluate the "Made with Real Vegetables" claim, as well as the recently re-inserted "Made with Real Ginger & Molasses" claim, and find that they are not actionable as a matter of law. Legal authorities issued after Rule 12 briefing concluded in this case compel this result.

Particularly on-point is *Henderson v. Gruma Corp.*, No. 10-4173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011).  That complaint was filed by the Weston Law Firm and alleged, among other things, that the statement "With Garden Vegetables" found on packaged dip was misleading under California law because the product contained trace amounts of trans fat.  The court found that the statement was not actionable as a matter of law because it is factually accurate:  "The phrase 'With Garden Vegetables' is . . . unlikely to deceive a reasonable consumer. *The product does in fact contain vegetables that can be grown in a garden*," including "avocado powder, dehydrated onion, garlic powder and bell pepper."  *Id.*, at *12 (emphasis added).  The court further held that the

"labeling statement does not claim a specific *amount* of vegetables in the product, but rather speaks to their presence in the product, which is not misleading." *Id.*; *see also McKinniss v. Sunny Delight Beverages Co.*, No. 07-2034, 2007 WL 4766525, at *3-4 (C.D. Cal. Sept. 3, 2007) (dismissing claim that depiction of fruit on drink label misled consumers where label said product contained 2% or less of fruit juice). Similarly, here, Plaintiffs do not and cannot dispute the existence of real vegetables in Vegetable Thins and Ritz Roasted Vegetable crackers, and real ginger and molasses in Ginger Snaps. Nor do the labels "claim a specific amount of vegetables [or ginger and molasses] in the product, but rather speak[] to their presence in the product, which is not misleading."

*Rooney v. Cumberland Packaging Corp.* is also instructive here. In *Rooney*, the plaintiff said labels for Sugar in the Raw were misleading because they suggested the product contained unprocessed and unrefined sugar. The court dismissed the claim on a Rule 12(b)(6) motion because "a significant portion of the general consuming public, acting reasonably, would [not] be led to believe that they are purchasing unprocessed or unrefined sugar." 2012 WL 1512106, at *4; *see also Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (in evaluating claims under the UCL, CLRA, and FAL, the court views challenged representations from the perspective of a "reasonable consumer," not "the unwary consumer" or "least sophisticated consumer"). The court noted that the packaging made clear that Sugar in the Raw is made of turbinado sugar, which is "widely marketed" as "raw cane sugar," not unprocessed and unrefined sugar. 2012 WL 1512106, at *4. In light of this "common industry marketing," the court held that the statement "in the raw" was not likely to deceive a reasonable consumer. *Id.*

To the extent that Plaintiffs here are implying that they believe Ritz Roasted Vegetable crackers or Vegetable Thins contained fresh, unprocessed vegetables because of the statement "Made with Real Vegetables," such a claim must fail under *Rooney*. A "significant portion of the general consuming public, acting reasonably" would understand that a box of processed crackers would not have fresh, unprocessed vegetables

---

17

literally inside the box.  Indeed, many crackers on the market today use similar phrases (*e.g.*, "Made with Real Vegetables") on their packaging.  *See* Dkt. No. 222, Exs. A-C.

**B.  Word and Images Connoting Characterizing Flavors Are Inactionable.**

Plaintiffs seek to re-insert into this case claims challenging the use on the products' labels of the words "graham," "honey," and "ginger and molasses," as well as images of vegetables and honey.  There is a reason Plaintiffs did not include these claims in their prior motions for class certification.  In addition to being truthful representations of ingredients included in the products, these images and statements are not actionable because they refer to the products' characterizing flavors.  *See* Ex. E (11/18/10 Tr.) at 9:12-22 (Court suggesting the word "graham" is not misleading "in this particular situation" because it "refers to the flavor, not necessarily to the composition of the type of flour that's being used").

FDA regulations authorize food packaging to include "the common or usual name of the characterizing flavor, e.g., 'vanilla.'"  21 C.F.R. § 101.22(i)(1)  (allowing characterizing flavor to be indicated by "word" or "vignette"); *see also Dvora v. Gen. Mills, Inc.*, No. 11-1074, 2011 WL 1897349, at *5 (C.D. Cal. May 16, 2011) ("the regulations concerning characterizing flavor apply whenever 'the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients'") (quoting 21 C.F.R. § 101.22(i)).  Accordingly, courts in this District have repeatedly held that a label is not misleading where the challenged term or image refers to the product's "characterizing flavor" in compliance with the FDA regulations.  For example, a complaint alleging that a cereal box misleadingly depicted fruit images was dismissed because those fruit vignettes merely "indicate that product's 'characterizing flavor.'" *McKinnis v. Kellogg USA*, No. 07-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007).  In other words, "if it tastes like blueberries, the packaging may contain a depiction of a blueberry." *McKinniss v. Gen. Mills, Inc.*, No. 07-2521, 2007 WL 4762172, at *3-5 (C.D. Cal. Sept. 18, 2007) (dismissing complaint challenging words and images indicating products' "characterizing flavors").

Numerous other decisions in this District have dismissed similar complaints on the ground that the challenged statement or image only indicated the product's flavoring, as FDA regulations specifically permit. *See, e.g.*, *Sunny Delight*, 2007 WL 4766525, at *3-4 (rejecting claim that use of "various fruit names" misleadingly "impl[ied] . . . a high fruit content" where the fruits constituted "characterizing flavor[s]" and labels stated water and HFCS were the most predominant ingredients); *Dvora*, 2011 WL 1897349, at *5 (holding FDA regulations authorized placement of the words "blueberry" and "pomegranate" on a cereal box, even though the cereal did not contain any pomegranate or blueberry); *cf. Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1177 (9th Cir. 2012) (affirming dismissal of claim that juice's name was misleading because the named juices were "not the predominant juice[s] by volume" since FDA regulations authorized Coca-Cola to "give its product a name that refers to juices that provide the characterizing flavor").

Vegetable Thins and Ritz Roasted Vegetable crackers are in fact made with real vegetables, as clearly disclosed on the nutrition facts panel.  Likewise, Teddy Grahams and Honey Maid Grahams are made with graham flour, Honey Maid Grahams include honey, and ginger and molasses are included as ingredients in Ginger Snaps.  Plaintiffs do not allege otherwise.  Yet Plaintiffs claim the packaging for these products — which contain images of vegetables and honey, and the words "graham," "honey," and "ginger and molasses" — are deceptive because, for example, Teddy Grahams and Honey Maid Grahams contain more white flour than graham flour.  SAC ¶¶ 67, 121.  However, a reasonable consumer would understand this packaging to indicate the flavor or presence of a particular ingredient, not as a representation that the product contains a certain amount of that ingredient, or that the product does not contain other so-called "bad" ingredients. *Sunny Delight*, 2007 WL 4766525, at *4 (holding that "the depiction of fruit on a product label is not a specific affirmation that a product contains a particular amount of fruit").  And the packaging accurately indicates the relative amount by weight of each ingredient, which clearly reflects that these products contain more white flour than graham flour.

Moreover, Plaintiffs acknowledged that these types of statements refer to the taste of certain products and not to whether they are "healthy." For example, Red testified that Ginger Snaps "taste[] like ginger," and that she "viewed ginger as a taste issue." Ex. D (Red Tr.) at 200:16-201:1. Asked what was misleading on the package, she did not mention "ginger" or "molasses." *Id.* at 201:24-202:17.[11] Likewise, Red described Honey Maid Grahams as tasting like a "cracker with honey" and having "a graham taste." *Id.* at 160:2-8. Both she and Whitt were asked what on the Honey Maid Grahams packaging was deceptive, and neither identified the name "Honey Maid Grahams," the word "graham(s)," or honey imaging like flowing honey, honeycombs, or bees. *Id.* at 163:21-164:7, 169:19-170:24; Ex. C (Whitt Tr.) at 149:23-151:9. Similarly, Red stated that the Ritz Crackers Roasted Vegetable had a vegetable-type taste. Ex. D at 174:23-175:18. She assumed that "real vegetables" on the product meant that the product contained "real vegetables," but she did not know and had not checked whether the product was made with real vegetables. *Id.* at 177:6-23. As a quick look at the ingredient list shows, she was not deceived because her assumption was true — Ritz Crackers Roasted Vegetables is indeed made with real vegetables. Notably, she did *not* assume that the product contained a particular amount of vegetables and did *not* claim that the statement suggested the product was healthy or had any other attribute. Instead, she bought them because they tasted good. *See id.* at 177:24-178:8.[12]

---

[11] Whitt never purchased Ginger Snaps. Ex. C (Whitt Tr.) at 85:16-20, 152:10-12.

[12] These statements also cannot be deceptive as a matter of law because they are factually true and Plaintiffs did not dispute that at their depositions. For example, neither Plaintiff claims to have been deceived by "Made with Ginger & Molasses" on Ginger Snaps. Ex. D (Red Tr.) at 201:24-202:17. And neither stated that the term "graham" was deceptive. *Id.* at 138:8-139:17; Ex. C (Whitt Tr.) at 109:14-110:7. In fact, Red did not even *know* what graham flour was. Ex. D at 163:16-19; *see also id.* at 163:21-164:7, 169:19-170:24; Ex. C at 149:23-151:9. Without any adequate representative who claims to have been deceived by and relied on the statement at issue, the Court should decline to certify a subclass.

## **CONCLUSION**

For the foregoing reasons, Kraft Foods respectfully requests that the Court deny Plaintiffs' Second Renewed Motion for Class Certification.


Dated:  July 27, 2012                                         JENNER & BLOCK LLP


/s/ Kenneth K. Lee
By: Kenneth K. Lee

Attorneys for Defendants

21