**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (480) 247-4553

**LAW OFFICES OF RONALD A.
MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone:   (619) 696-9006
Facsimile:    (619) 564-6665

***Lead Counsel for Plaintiffs and the Proposed Class***
*[Additional Counsel listed on signature page]*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br><br>        Defendants. | Case No. 2:10-cv-01028 GW(AGRx)<br>Pleading Type: Class Action<br>Action Filed: February 11, 2010<br><br>**PLAINTIFFS' RESPONSE AND OBJECTIONS TO KRAFT'S "PROPOSED ORDER CONFIRMING DEFENDANT'S DECISION NOT TO USE CERTAIN PHRASES ON FUTURE PACKAGING" (DKT. NO. 247-1) AND "SUPPLEMENTAL BRIEF RE 'MADE WITH REAL VEGETABLES' CLAIM" (DKT NO. 248)**<br><br>Judge:      The Hon. George Wu<br>Date:       October 11, 2012<br>Time:       8:30 a.m.<br>Location:   Courtroom 10 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii

ARGUMENT ...................................................................................................... 1

    I.     THE INJUNCTIVE ORDER SHOULD BE VACATED ............................ 1

    II.    "MADE WITH REAL VEGETABLES" IS AN ACTIONABLE
        CLAIM ..................................................................................................... 7

CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Bloedorn v. Keel*,
  2012 U.S. Dist. LEXIS 30601 (S.D. Ga. Mar. 6, 2012) ...................................4

*Brockey v. Moore*,
  107 Cal. App. 4th 86 (2003) ..........................................................................9

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  2012 U.S. App. LEXIS 6851 (9th Cir. 2012) ................................................10

*Chacanaca v. Quaker Oats Co.*,
  752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...................................................6, 10

*Day v. AT&T Corp.*,
  63 Cal. App. 4th 325 (1998) ..........................................................................9

*Dean v. United of Omaha Life Ins. Co.*,
  2008 U.S. Dist. LEXIS 112692 (C.D. Cal. Oct. 14, 2008)...........................6

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980)........................................................................................4

*Espenscheid v. DirectSat USA, LLC*,
  2012 U.S. App. LEXIS 16258 (7th Cir. Aug. 6, 2012) ..................................4

*Gomez v. Campbell-Ewald Co.*,
  805 F. Supp. 2d 923 (C.D. Cal. 2011) ...........................................................4

*Hairston v. South Beach Beverage Co, Inc.*,
  2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012) ...........................10

*Henderson v. Gruma Corp.*,
  2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ..............................9

*Henderson v. J.M. Smucker Co.*,
  2011 U.S. Dist. LEXIS 27953 (C.D. Cal. Mar. 17, 2011)....................8, 9, 10

*In re Ferrero Litig.*,
  794 F. Supp. 2d 1107 (S.D. Cal. 2011)........................................................10

*In re Quaker Oats Labeling Litig.*,
   2012 U.S. Dist. LEXIS 42777 (N.D. Cal. Mar. 28, 2012) ................................6

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012) .....................................................................6

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) .....................................................................................8

*Kuahulu v. Employers Ins. of Wausau*,
   557 F.2d 1334 (9th Cir. 1977) .........................................................................6

*Leoni v. State Bar*,
   39 Cal. 3d 609 (1985) ......................................................................................9

*Lierboe v. State Farm Mut. Auto Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003) .........................................................................7

*McNatt v. Allied-Signal*,
   1992 U.S. App. LEXIS 28787 (9th Cir. 1992) ................................................4

*Morgan v. AT&T Wireless Servs., Inc.*,
   177 Cal. App. 4th 1235 (2009) ........................................................................9

*Narouz v. Charter Commc'ns, LLC*,
   591 F.3d 1261 (9th Cir. 2010) .........................................................................4

*Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980) ....................................................................................3, 4

*Pinnock v. Safino Designs, Inc.*,
   2007 U.S. Dist. LEXIS 63374 (S.D. Cal. 2007) .............................................4

*Pitts v. Terrible Herbst, Inc.*,
   653 F. 3d 1081 (9th Cir. 2011) ....................................................................4, 6

*Premier Commc'ns Network, Inc. v. Fuentes*,
   880 F.2d 1096 (9th Cir. 1989) .........................................................................2

*Rooney v. Cumberland Packing Corp.*,
   2012 U.S. Dist. LEXIS 58710 (S.D. Cal. Apr. 16, 2012)...............................10

iii

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
130 S. Ct. 1431 (2010) ...................................................................3, 4

*Stuart v. Cadbury Adams USA, LLC*,
458 Fed. Appx. 689 (9th Cir. Nov. 21, 2011) ...............................10

*Tur v. Youtube, Inc.*,
562 F.3d 1212 (9th Cir. 2009) .......................................................4

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .........................................................8

*Videtto v. Kellogg USA*,
2009 U.S. Dist. LEXIS 43114 (E.D. Cal. May 21, 2009) .............10

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ......................................................8, 9

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................10

*Zepeda v. U.S. Immigration & Naturalization Serv.*,
753 F.2d 719  (9th Cir. 1983) ........................................................2

**Rules**

C.D. Cal. Civ. L.R. 7-18 .........................................................................7

Fed. R. Civ. P. 23(b) ...............................................................................3

Fed. R. Civ. P. 23(b)(2).............................................................................3

iv

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' RESPONSE TO KRAFT'S PROPOSED ORDER & SUPPLEMENTAL FILING

# ARGUMENT

## I.     THE INJUNCTIVE ORDER SHOULD BE VACATED

On September 7, the Court filed an "Order Confirming Defendant's Decision Not to Use Certain Phrases on Future Packaging" (Dkt. No. 249, the "Injunctive Order"), which Kraft had filed as a proposed order a day earlier (Dkt. No. 247-1)[1] in response to the Court's statement that it would find certain claims moot "if *and only if* Kraft agrees to stipulate to a Court Order unconditionally mandating its compliance with the Cooper Declaration . . . ." (Dkt. No. 245 at 4.) At the August 23 hearing, Kraft therefore promised to "work that court order . . . to match that of the declarations," and be "confined to . . . the Cooper declaration." (Ex. 1, Aug. 23 Hrg. Tr. at 12.)

The Cooper Declaration to which the Court's decision and Kraft's counsel referred promised that Kraft "has no intention of using and will not be using" the phrases "Sensible Snacking," "Sensible Solution," "Help Support Kids' Growth and Development," or "Smart Choices" (the "Phrases") on *any* Premium Saltines, Teddy Grahams, Honey Maid Grahams, or Ritz "packaging, advertising, or marketing material at any time in the future." (Dkt. No. 233, Ex. A ¶¶ 4-7.)

By contrast, the Injunctive Order *only* enjoins Kraft from using the Phrases "as depicted in the packaging submitted with the Second Amended Complaint," and then only applies to "current formulations . . . based on [a product's] current ingredient list, weight by percentage of ingredients and nutritional profile." (Dkt. No. 249 at 2-3.)

These limitations impose clear conditions on Mr. Cooper's promise that Kraft "will not be using" the Phrases on "any" accused Kraft product. Thus, the Injunctive Order patently fails the Court's requirement of "unconditional compliance" with the Cooper Declaration. Instead, these limitations materially narrow the scope of Kraft behavior actually enjoined and limit its future liability for the same conduct.

---

[1] Presumably, execution of the Injunctive Order the day after Kraft filed it was a clerical error, since the Court set out a briefing schedule for Plaintiff's response. Ex. 1, Aug. 23 Hrg. Tr. at 19:3-20:9. We nevertheless argue why it should now be vacated.

1

*Red et al. v. Kraft Foods Inc.,* Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' RESPONSE TO KRAFT'S PROPOSED ORDER & SUPPLEMENTAL FILING

These Kraft-authored limitations also render the Injunctive Order nearly illusory. Since it applies only to the Phrases "as depicted" in the SAC and the Products' "current formulations . . . ingredient list, weight by percentage of ingredients and nutritional profile," the Injunctive Order allows Kraft to use the Phrases and avoid contempt by making superficial or negligible changes to *either* the Phrases *or* products.[2]

Further, the phrase "nutritional profile" in the Injunctive Order is vague and ambiguous, so the order lacks certainty. *See Premier Commc'ns Network, Inc. v. Fuentes*, 880 F.2d 1096, 1100 (9th Cir. 1989). Similarly, the Injunctive Order does not identify or enumerate the "current formulations" to which it applies, leaving future courts unable to determine whether a Kraft product is covered. Moreover, the Injunctive Order's provision limiting injunction to Kraft's use of the Phrases consistent with "packaging submitted with the Second Amended Complaint," is meaningless. Plaintiffs did not submit packaging with the SAC. Instead, the SAC depicts *portions* of *exemplars* of packaging, which are necessarily incomplete. This is not what Mr. Cooper promised.

The Injunctive Order should also be vacated because the portion denying class certification (Dkt. No. 249 at 3:13-15) is clearly erroneous.

Absent prior or concurrent certification, the Injunctive Order only binds and inures to the benefit of Kraft and the named Plaintiffs. *See Zepeda v. U.S. Immigration & Naturalization Serv.*, 753 F.2d 719, 727-28 & n.1 (9th Cir. 1983). This leaves Mss. Red and Whitt burdened with policing Kraft while wasting resources by encouraging new

---

[2] The Court was previously concerned over Kraft's resort to the hyper-technical when evaluating mootness. (*See* Dkt. No. 245 at 3 n.1.) Its concern should be greater here. Food manufacturers regularly reformulate products in response to commodity costs and availability, customer or consumer comments, changes in suppliers, and a variety of other circumstances. The class periods here began between 2006 and 2008, since which the products were likely reformulated many times. When the Court required "unconditional compliance" with the Cooper Declaration, we doubt it meant Kraft could draft an order enjoining only its particular conduct at the exact moment the order was signed. Instead, as Mr. Cooper promised, *all versions* of the Kraft products must be permanently enjoined from using the Phrases, period.

2

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' RESPONSE TO KRAFT'S PROPOSED ORDER & SUPPLEMENTAL FILING

1 suits from other putative class members seeking identical relief for the whole class. The

2 Court should not avoid the opportunity the Federal Rules provide to fashion "injunctive

3 relief . . . respecting the class as a whole," Fed. R. Civ. P. 23(b)(2), in favor of an

4 injunction benefitting (and enforceable by) only the named Plaintiffs.

5      The Federal Rules also "give the proposed class representative the right to have a

6 class certified if the requirements of the Rules are met." *Parole Comm'n v. Geraghty*,

7 445 U.S. 388, 403 (1980). Rule 23 is "a categorical rule entitling a plaintiff whose suit

8 meets the specified criteria to pursue his claim as a class action." *Shady Grove*

9 *Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1438 (2010).[3] Plaintiffs

10 demonstrated they satisfied Rule 23(a)'s criteria on April 12, 2012 (Dkt. No. 212 at 6-9,

11 14-17), and Rule 23(b)(2)'s criteria on June 6, 2012 (Dkt. No. 232). Thus Plaintiffs have

12 been ***entitled*** to an order of certification for more than three months. During the last

13 hearing, however, the Court suggested that an order enjoining certain phrases, even

14 while leading the Court to deny certification as moot, would "accomplish the particular

15 cessation that is the primary aspect" of Plaintiffs' case and constitute "the best

16 [Plaintiffs] would be getting if this matter went forward as a class . . . ." (Aug. 23 Hrg.

17 Tr. at 7, 11.) This is incorrect.

18      "A plaintiff who brings a class action presents two separate issues for judicial

19 resolution. One is the claim on the merits; the other is the claim that he is entitled to

20 represent a class." *Geraghty*, 445 U.S. at 402. A named plaintiff's interest in certification

21 "may be either an individual economic interest . . . or a private-attorney-general-like

22 interest in having a class certified if the requirements of Rule 23 are met . . . ." *Pitts v.*

23

24 [3] Rule 23 provides that "[a] class *may be maintained* if Rule 23(a) is satisfied and if" one

25 of the Rule 23(b) criteria is met. Fed. R. Civ. P. 23(b) (emphasis added). In *Shady Grove*, the Supreme Court explained that "[t]he Federal Rules regularly use 'may' to

26 confer categorical permission . . . ." 130 S. Ct. at 1437 (citations omitted). Moreover, "[c]ourts do not maintain actions; litigants do." *Id.* at 1438. Accordingly, "[t]he

27 discretion suggested by Rule 23's 'may' is discretion residing in the plaintiff: He may

28 bring his claim in a class action if he wishes." *Id.*

*Terrible Herbst, Inc.*, 653 F. 3d 1081, 1090 (9th Cir. 2011) (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 336 (1980); *Geraghty*, 445 U.S. at 403)). Where a defendant acts pre-certification to moot the named plaintiffs' claims but does not consent to an order of certification, "Art. III adversity continue[s]" because "the defendant has not offered all that has been requested in the complaint (*i.e.*, relief for the class) . . . ." *Roper*, 445 U.S. at 341. *Compare* SAC at 57, Prayer for Relief ¶ A.

A denial of class certification based on Kraft's pre-certification mooting of Plaintiffs' claims would deprive Plaintiffs of their "categorical . . . entitl[ement]," to certification after satisfying Rule 23, *Shady Grove*, 130 S. Ct. at 1437, and their "financial interest" in certification: the likelihood of an incentive award, and their ability to "shift part of the costs of litigation. . . ." *See Roper*, 445 U.S. at 336; *Pitts*, 663 F.3d at 1088-90 (citation omitted); *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1265 (9th Cir. 2010) (addressing named plaintiff's interest in obtaining incentive award); *Espenscheid v. DirectSat USA, LLC*, 2012 U.S. App. LEXIS 16258, at *5-6 (7th Cir. Aug. 6, 2012) (Posner, J.) (same); *Gomez v. Campbell-Ewald Co.*, 805 F. Supp. 2d 923, 929 (C.D. Cal. 2011) (expanding interpretation of *Narouz*).

Like denying certification based on mootness where Rule 23 is satisfied, even a *finding* of mootness at this stage is an abuse of discretion. "Mootness is jurisdictional," *Tur v. Youtube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009), and "involves, in part, a factual inquiry." *Bloedorn v. Keel*, 2012 U.S. Dist. LEXIS 30601, at *8 (S.D. Ga. Mar. 6, 2012). "[W]here jurisdiction is challenged, 'the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss.'" *McNatt v. Allied-Signal*, 1992 U.S. App. LEXIS 28787, at *13 (9th Cir. 1992) (citation omitted); *see also Pinnock v. Safino Designs, Inc.*, 2007 U.S. Dist. LEXIS 63374, at *7-8 (S.D. Cal. 2007); *Bloedorn*, 2012 U.S. Dist. LEXIS 30601, at *8.

In addition, Plaintiffs assert that their claims are not moot because they seek injunctive relief beyond Kraft's cessation of the challenged advertising. (*See* Dkt. No. 235 at 21-25). The Court, however, distinguished two cases Plaintiffs cited, stating it

4

*Red et al. v. Kraft Foods Inc.,* Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' RESPONSE TO KRAFT'S PROPOSED ORDER & SUPPLEMENTAL FILING

would "not allow this laundry list of fanciful potential outcomes . . . prevent the Court from finding moot all claims based on words that Kraft will be barred, by court order, from using on future products." (Dkt. No. 245 at 4 n.3.) But with no discovery or litigation yet on the propriety of the injunctive relief Plaintiffs request, a merits holding on class certification that the relief is improper is clear error.

But even if Kraft's cessation of the Phrases were sufficient to moot some of Plaintiffs' challenges, several viable claims remain for Subclasses 1 and 4-7, to whom the Injunctive Order nevertheless erroneously denies certification.

### "Made with Real Ginger & Molasses" (Ginger Snaps Subclass)

The Ginger Snaps Subclass still includes a challenge to "Made with Real Ginger & Molasses," which the Court has twice upheld. (Dkt. No. 67 at 6; Dkt. No. 79 at 4-5.)

### "Honey," Honey Imagery, "Graham" (Teddy Grahams, Honey Maid Grahams)

The Court upheld Plaintiffs' challenges to ingredient call-outs, including "honey," honey imagery, and "graham." (Dkt. No. 79 at 3-4.)

### "Wholesome" (Teddy Grahams, Honey Maid Grahams)

Although the Court's last tentative order cited its July 2 comment that Plaintiffs' "wholesome" challenge "would not fly" (Dkt. No. 245 at 6-7), that comment was likely a mistaken statement of the Court's earlier holding.[4] Indeed, the Court has repeatedly upheld challenges to phrases like "Sensible Solution" based on Plaintiffs' theory that the phrases are deceptively suggestive of healthfulness when used to market Kraft products containing trans fat and other objectionable ingredients. Plaintiffs perceive no meaningful distinction between these phrases and Kraft's use of "wholesome" to convey a health message, nor has the Court expressed a distinction, instead only stating the

---

[4] Plaintiffs recently detailed the procedural history in which the Court initially upheld the claim, later decided the claim was preempted if it was based on trans fat, then realized this was erroneous, reversed itself, and explained why. (*See* Dkt. No. 235 at 3-15.) We believe the Court's July 2 comment may have been based on its recollection of the second stage, without recalling the third, and would respectfully request that the Court review Plaintiffs' recounting before finally deciding the status of "wholesome."

*Red et al. v. Kraft Foods Inc.,* Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' RESPONSE TO KRAFT'S PROPOSED ORDER & SUPPLEMENTAL FILING

1   claim "would not fly" without explanation. Further, in a case this Court has frequently

2   cited, another district court upheld "wholesome" challenges to foods made with trans

3   fats. *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1123-24 (N.D. Cal.

4   2010); *In re Quaker Oats Labeling Litig.*, 2012 U.S. Dist. LEXIS 42777, at *15 (N.D.

5   Cal. Mar. 28, 2012).

6       "Nutritionists Recommend," "Steps to a Healthier You" (Honey Maid Grahams,

7       Ritz Whole Wheat)

8       The Court indicated it would not certify these Subclasses based on "Nutritionists

9   Recommend" and "Steps to a Healthier You" alone since Plaintiffs did not rely on these

10  phrases (Dkt. No. 245 at 7), but each class has other challenges remaining. Moreover, a

11  Plaintiff has standing to challenge a product with many individual claims that convey a

12  common health message, even if she did not rely on all of them. *See, e.g. Johns v. Bayer

13  Corp.*, 280 F.R.D. 551, 560 (S.D. Cal. 2012). Plaintiffs thus unarguably had standing to

14  challenge these products *before* Kraft's voluntary cessation of some claims used on their

15  packaging. But they do not lose standing *because* of Kraft's mooting the particular

16  claims (and only those claims) that Plaintiffs relied on. Rather, in the Ninth Circuit,

17  where a named plaintiff's claims have been involuntarily compromised before a

18  certification motion, the Court must treat the motion (and the question of the named

19  plaintiff's standing) as "relating back" to the filing of the initial complaint. *See Pitts*, 653

20  F.3d at 1091-92. If the Court disagrees, however, it should permit, and Plaintiffs would

21  respectfully request leave for, the addition of a class representative who relied on these

22  advertisements, rather than throw away years of litigation by denying the Subclasses

23  certification on this basis. *See Kuahulu v. Employers Ins. of Wausau*, 557 F.2d 1334,

24  1336-37 (9th Cir. 1977) (when faced with the possibility of denying certification based

25  on the named plaintiff, district courts should "determine whether a substitute

26  representative would be available"); *Dean v. United of Omaha Life Ins. Co.*, 2008 U.S.

27  Dist. LEXIS 112692, at *10 (C.D. Cal. Oct. 14, 2008) (in certification decision, where

28  proposed representative was disqualified, permitting plaintiffs' counsel 30 days to

6

1   substitute an appropriate representative); *c.f. Lierboe v. State Farm Mut. Auto Ins. Co.*,

2   350 F.3d 1018, 1023 (9th Cir. 2003) (noting judicial economy considerations and

3   distinguishing case where named plaintiff never had standing, in which dismissal

4   without substitution was proper, from case where plaintiff's claims had been mooted).

5   <u>Product Names (Teddy Grahams, Honey Maid Grahams, Ritz Whole Wheat)</u>

6   Although the Court indicated Plaintiffs' claims cannot be "based *solely* on a

7   product's name" (Dkt. No. 245 at 7 (emphasis added)), which in Plaintiffs' view is an

8   error of law, the Court permitted their challenge in connection other labeling claims.

9   Since the Teddy Graham, Honey Maid Graham and Ritz Whole Wheat Subclasses

10  include other viable claims, the product names are also still at issue.

11  ## II.   "MADE WITH REAL VEGETABLES" IS AN ACTIONABLE CLAIM

12  Kraft's motion is frivolous because it rehashes arguments the Court rejected three

13  times (Dkt. Nos. 36, 40, 79) while citing no binding or even persuasive authority that the

14  Court's prior holdings were erroneous.[5] In addition, Kraft habitually relies on the straw

15  man strategy of misrepresenting Plaintiffs' Complaint as alleging that Kraft's "Made

16  With Real Vegetable" advertisements misleadingly suggest that Vegetable Thins and

17  Ritz Roasted Vegetables are "made solely or primarily of vegetables," are "as healthy as

18  fresh vegetables," and "contain no supposedly 'bad' ingredients." (*See* Suppl. Br. at 1:9-

19  14, 1:25-28; 2:6-10, 2:22-3:3, 5:6-8, 5:13-14, 7:3-6.) The real import of Plaintiffs'

20  Complaint, however, is that Kraft's "Made With Real Vegetables" claims and prominent

21  vegetable imagery are among the "various methods [Kraft employs] to suggest to

22  consumers that its products containing artificial trans fat are healthy," or to suggest "the

23  overall healthiness/wholesomeness of their products" (Dkt. No. 36 at 1, 5; *compare* SAC

24  _____

25  [5] If Kraft had moved for reconsideration rather than made an *ad hoc* Rule 12 motion in
    the middle of class certification, it would fall far short of showing, as would be required,

26  "a material difference in law or fact from that presented to the Court before" its prior
    decisions, "the emergence of new material facts or a change of law occurring after" the

27  Court's prior decisions, or the Court's "failure to consider material facts" submitted

28  before its prior decisions. C.D. Cal. Civ. L.R. 7-18.

¶¶ 84, 93, 98). *Accord Henderson v. J.M. Smucker Co.*, 2011 U.S. Dist. LEXIS 27953, at *11 (C.D. Cal. Mar. 17, 2011) ("Plaintiff's theory of the case . . . seems not to be that the statements are *literally* deceptive, but that they are deceptive in their connotation as to the healthfulness of the enclosed products.").[6] Finally, Kraft's reliance on extraneous material to argue that Plaintiffs' claims fail as a matter of law under Rule 12(b)(6) (Suppl. Br. at 1, 5-6 & n.4, 10 n.5) is particularly frivolous the Court indulged Kraft's request for additional Rule 12 briefing at an inappropriate procedural stage (*see* Dkt. No. 245 at 6), warned that it ought not be frivolous (*see* Aug. 23 Hrg. Tr. at 17), and did not invite summary judgment briefing.[7]

Kraft's motion rehashes three arguments this Court and others have repeatedly rejected: (a) that because "Made With Real Vegetables" is literally true, it is categorically unactionable (Suppl. Br. at 4-6); (b) that the fine-print Ingredient List corrects Kraft's front-label misrepresentations (*id.* at 10 & n.5); and (c) that it would be impossible for a reasonable consumer to be misled (*id.* at 6-10).

Contrary to Kraft's assertion that "Made With Real Vegetables" claims are true and therefore unactionable, "[t]he California Supreme Court has recognized that [the UCL, FAL and CLRA] prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). Thus, even "[a] perfectly true statement couched in such a manner that it is likely to

---

[6] It is also an issue of fact whether, as Plaintiffs allege, a reasonable consumer would interpret the products' packaging as implying something greater than a few milligrams of dehydrated "vegetable powder." (*See* SAC ¶¶ 83, 94.)

[7] The Court's consideration of Kraft's motion as written would require it to "convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Any such motion would be premature in the absence of any merits discovery. Nor is this ten-page supplemental response a fair opportunity to respond to a summary judgment motion.

8

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' RESPONSE TO KRAFT'S PROPOSED ORDER & SUPPLEMENTAL FILING

mislead or deceive the consumer . . . is actionable under these sections." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998); *see also Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009). Kraft's reliance on *Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ("*Gruma*"), is misplaced. (Suppl. Br. at 5-6.) That decision is not binding. Rather, that court arrived at a different conclusion than this Court, and without addressing the long-established rule in California that perfectly true statements may be actionable. Moreover, unlike here, in *Gruma* "Plaintiffs d[id] not provide a specific argument as to how this statement is misleading." *Id.* at *33-34. In addition, the *Gruma* decision was issued less than three months after the Court's January 13, 2011 decision denying Kraft's Rule 12 motion a third time (Dkt. No. 79 at 2), but in the ensuing 17 months, Kraft has never moved for reconsideration based on the decision.

Similarly, Kraft's strained read of *Williams*, suggesting that when the ingredient list is "consistent with the front label statement" it should "be included in the Court's evaluation of the packaging" at the pleading stage (Suppl. Br. at 10 n.5), is incorrect. The *Williams* court actually held that reasonable consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." 552 F.3d at 939. Moreover, while fine-print disclosures "may be relevant in the fact-intensive reasonable consumer analysis, *Williams* instructs that such reasoning cannot be the basis for granting a motion to dismiss." *Henderson*, 2011 U.S. Dist. LEXIS 27953, at *12 (citing 552 F.3d at 939).

Finally, it is well-settled that "whether a business practice is deceptive will usually be a question of fact not appropriate for a decision on [a motion to dismiss]." (Dkt. No. 36 at 9 (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003)).) Thus, the Ninth Circuit has held that motions to dismiss deceptive business practices claims should only be granted in "rare situation[s]," as where it would be "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams*, 552 F.3d at 939. Accordingly, Kraft's burden to obtain dismissal at the pleading stage is heavy.

9

*Red et al. v. Kraft Foods Inc.,* Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' RESPONSE TO KRAFT'S PROPOSED ORDER & SUPPLEMENTAL FILING

1    Kraft's argument in this regard takes three forms: (a) mischaracterizing Plaintiffs'
2    theories of deception then arguing why those theories would not apply to reasonable
3    consumers; (b) citing factually distinguishable cases in which some courts found,
4    unremarkably, that it would be impossible for reasonable consumers to be deceived by
5    certain phrases not at issue here; and (c) citing Plaintiffs' deposition testimony as though
6    this were a summary judgment motion.

7         While common sense may suggest that "Made With Real Vegetables" would not
8    suggest to reasonable consumers that crackers are in fact fresh vegetables and salt-free,
9    however, that is not Plaintiffs' allegation. Similarly, although the courts in *Hairston*,
10   *Stuart*, *Videtto*, *Carrea*, and *Rooney* determined that it would be impossible for
11   reasonable consumers to be misled by the particular advertisements challenged, none of
12   them addresses the claim at issue here.[8] Of course, for every case Kraft cites, there are
13   dozens denying dismissal under the same standard, including several that allege certain
14   phrases are misleading because they suggest the healthfulness of foods containing trans
15   fat or other harmful ingredients.[9] Finally, Kraft cannot rely on Plaintiffs' deposition
16   testimony to argue the merits of the reasonable consumer standard on a pleading motion.

## CONCLUSION

18        The Court should vacate the Injunctive Order, denying Kraft's motion to dismiss
19   "Made With Real Vegetables" claims, and certify all the Subclasses.

---

20   [8] *Hairston v. South Beach Beverage Co, Inc.*, 2012 U.S. Dist. LEXIS 74279 (C.D. Cal.
21   May 18, 2012) ("all natural"); *Stuart v. Cadbury Adams USA, LLC*, 458 Fed. Appx. 689
     (9th Cir. Nov. 21, 2011) ("whitens teeth" and "removes stains"); *Videtto v. Kellogg USA*,
22   2009 U.S. Dist. LEXIS 43114 (E.D. Cal. May 21, 2009) ("Froot"); *Carrea v. Dreyer's*
23   *Grand Ice Cream, Inc.*, 2012 U.S. App. LEXIS 6851 (9th Cir. 2012) ("Original" and
     "Classic"); *Rooney v. Cumberland Packing Corp.*, 2012 U.S. Dist. LEXIS 58710 (S.D.
24   Cal. Apr. 16, 2012) ("Sugar in the Raw"). Two cases Kraft cites, *Stuart* and *Carrea*, are
25   unpublished memorandum dispositions, upon which the Court previously warned it
     would not rely. (Dkt. No. 212 at 6 n.5.)
26

27   [9] *E.g.*, *Henderson*, 2011 U.S. Dist. LEXIS 27953, at *10-13; *Yumul v. Smart Balance,*
     *Inc.*, 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010); *Chacanaca*, 752 F. Supp. 2d at 1125-
28   26; *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011).

1    DATED: July 8, 2012                          Respectfully Submitted,

2                                                 /s/Gregory S. Weston
3                                                 Gregory S. Weston

4                                                 **THE WESTON FIRM**
                                                  GREGORY S. WESTON
5                                                 JACK FITZGERALD
                                                  MELANIE PERSINGER
6                                                 COURTLAND CREEKMORE
7                                                 1405 Morena Blvd., Suite 201
                                                  San Diego, CA 92110
8                                                 Telephone:   (619) 798-2006
9                                                 Facsimile:    (480) 247-4553

10                                                **LAW   OFFICES   OF   RONALD
                                                  A. MARRON, APLC**
11                                                RONALD A. MARRON
12                                                SKYE RESENDES
                                                  3636 4th Street, Suite 202
13                                                San Diego, CA 92103
14                                                Telephone:   (619) 696-9006
                                                  Facsimile:    (619) 564-6665
15
16                                                *Lead Counsel for Plaintiffs and the
                                                  Proposed Class*
17

18   **MILSTEIN ADELMAN, LLP**
19   GILLIAN L. WADE
     SARA D. AVILA
20   2800 Donald Douglas Loop North
21   Santa Monica, CA 90405
     Telephone:   (310) 396-9600
22   Facsimile:    (310) 396-9635

23   *Additional Counsel for Plaintiffs and
     the Proposed Class*
24

25

26

27

28

*Red et al. v. Kraft Foods Inc.,* Case No. 2:10-cv-01028 GW (AGRx)
PLAINTIFFS' RESPONSE TO KRAFT'S PROPOSED ORDER & SUPPLEMENTAL FILING

# EXHIBIT 1

```
 1                    UNITED STATES OF AMERICA
                    UNITED STATES DISTRICT COURT
 2                 CENTRAL DISTRICT OF CALIFORNIA
                          WESTERN DIVISION
 3
                              - - -
 4                   HONORABLE GEORGE H. WU
            UNITED STATES DISTRICT JUDGE PRESIDING
 5                            - - -

 6
    EVANGELINE RED, ET AL;              )
 7                                      )
            PLAINTIFF,                  )
 8                                      )
    VS.                                 )   CASE NO.:
 9                                      )   CV 10-1028-GW
    KRAFT FOODS, INC., ET AL.,          )
10                                      )
                DEFENDANT.              )
11                                      )
    _____)
12

13

14
              REPORTER'S TRANSCRIPT OF PROCEEDINGS
15
                 THURSDAY, AUGUST 23, 2012
16
                   LOS ANGELES, CALIFORNIA
17

18

19

20

21             LAURA MILLER ELIAS, CSR 10019
               FEDERAL OFFICIAL COURT REPORTER
22             312 NORTH SPRING STREET, ROOM 453
               LOS ANGELES, CALIFORNIA 90012
23                 PH:  (213)620-0890

24

25
```

```
1    APPEARANCES OF COUNSEL:

2

3    ON BEHALF OF PLAINTIFF:

4
            GREGORY WESTON, ESQ.
5

6
            LAW OFFICES OF RONALD A. MARMON
7
            BY: RONALD A. MARRON, ESQ.
8            3636 FOURTH AVENUE
             SUITE 202
9            SAN DIEGO, CA 92103

10
            SARA D. AVILA, ESQ.
11            2800 DONALD DOUGLAS LOOP NORTH
             SANTA MONICA, CA 90405
12

13
     ON BEHALF OF DEFENDANT:
14
            JENNER & BLOCK
15
            BY: DEAN N. PANOS, ESQ.
16                KENNETH LEE, ESQ.

17            633 WEST 5TH STREET
             LOS ANGELES, CA 90071
18

19

20

21

22

23

24

25
```

```
 1            MR. WESTON:  Thank you, Your Honor.
 2            First of all, all of the claims that we're
 3   attacking here were on the products at the time that we filed
 4   the claim which was February 2010.  And, of course, we sent
 5   our CLRA letter even before that time.  So what Mr. Panos was
 6   saying about people suing over things that aren't being used
 7   anymore would have no analogy to this case.
 8            After I read the tentative, I have a few issues
 9   with it.  The first one sort of deal with the issue of
10   remedy.  The Court distinguished the Alta-Dena Dairy case and
11   the Colgan case from this one, but I don't think that's
12   enough to or the proper location procedurally to essentially
13   strike remedy.  What we do have citations to are that the UCL
14   gives the Court a very broad cleansing power to not just stop
15   a labeling violation, but also to remedy its effects.  And in
16   fact the Alta-Dena case specifically says stopping future
17   label violations is incomplete.  It specifically says that's
18   a partial remedy and it doesn't stop the misimpression in the
19   consumers' minds that this old labeling campaign concluded.
20   So if the Court later finds --
21            THE COURT:  As I have indicated, first of all, by
22   entering into -- the Court entering into an order does
23   accomplish the particular cessation that is the primary
24   aspect.  And insofar as what the, I guess, plaintiff wants
25   over and above that, it really depends on the nature of the
```

```
 1    evidence that defendant put forward.  We've had these
 2    declarations.  We've had no opportunity to cross-examine
 3    these witnesses.  We have no way to see who else might be
 4    saying something different.  We have no way to show that
 5    Kraft has a strong economic motivation to use this again.
 6    And we have no way of showing what consumer --
 7              THE COURT:  Let me stop you again.  I don't
 8    understand the context of my issuing an order.  In other
 9    words, that covers my order.  In other words, the best you
10    would be getting if this matter went forward as a class is an
11    order from the Court.  So what you're basically doing is
12    getting an order from the court.  I understand that the pitch
13    you might be making and let me hear what the defense response
14    to this is is that in essence I have indicated I would not
15    treat the defendants entering into or agreeing to the Court's
16    order as an admission of wrongdoing.  But the plaintiffs may
17    want the Court to make a determination of wrongdoing in the
18    sense that if they wanted, for example, attempt to get
19    attorneys' fees or something of that sort that's something
20    they would want.
21              MR. PANOS:  Oh, Judge, you just hit the nail on the
22    head.
23              THE COURT:  Of course, I hit the nail on the head.
24    That's what I'm paid to do.  Sometimes, though, I miss.  I
25    always try to hit the nail on the head.
```

```
 1          MR. PANOS:  I think that's exactly why plaintiffs
 2   didn't agree.  In fact, Your Honor, let me go back here to
 3   Mr. Weston's original point that he said well, why are they
 4   now raising the issue of the court order with the client.
 5   We're not just raising the issue for the first time of the
 6   court order with the client.  We tried to work out a
 7   situation, but it may not surprise you that what Mr. Weston
 8   wanted in that court order was all the things that Your Honor
 9   found to be not appropriate in this context.  It wasn't
10   confined to, as Your Honor put it, the Cooper declaration.
11          I'm highly confident, Judge, we will be able to
12   work that court order into what Your Honor's ruling is to
13   match that of the declarations that are at issue here.  Okay?
14   I would be very shocked if that doesn't happen.  Okay.
15          Now, with respect to that latter point, Judge,
16   mootness is mootness.  If there is not a case in controversy
17   and your court order would bar the defendant from using those
18   claims again, then I don't know what else there is to
19   litigate particularly because with the B-3 classes already
20   out, the only thing that would be left is the issue,
21   Your Honor, as to whether there should be injunction.  And if
22   we satisfy Your Honor's order with the agreed language or the
23   language as Your Honor has indicated I believe is required,
24   it's moot.  That's what moot means.  Moot means moot.
25          THE COURT:  Let me ask you this question, though.
```

1    Court, I'm read from page 6.  "The Court already held that

2    the made with real vegetable claim does not fail as a matter

3    of law in ruling on the motion to dismiss."  So he's asking

4    to have yet another motion to dismiss one of the claim.

5             THE COURT:  Yeah, but you don't get to the latter

6    part of that sentence which is, "Thus the Court would either

7    certify a 23(b)(2) subclass as to only the made with

8    vegetables label of Vegetable Thins and Ritz Roasted

9    Vegetable crackers, or might permit further briefing as to

10   whether such claims would fail as a matter of law."

11             If it fails as a matter of law, it fails as a

12   matter of law, you know, and whether or not they do it now,

13   you know a week from now or six months from now unless the

14   law changes, you're gonna be dead in the water anyway so

15   might as well get this stuff over with now unless you're

16   gonna say they can come up with no theory.

17             MR. WESTON:  They've done it again and again,

18   though.

19             THE COURT:  Let me just stop you, though.  If you

20   really feel so confident in that, let them make their motion.

21   Give me a one-page response that says hey, this is so obvious

22   it's stupid.  Ask for sanctions, too.  And if I agree with

23   you that the motion was stupid, I'll give you the attorney's

24   fees for the motion.  I don't mind doing that.

25             MR. WESTON:  Well, Your Honor, I have no problem --

1  I think is the mechanics of the stipulation.  A stipulation

2  sometimes implies both parties.

3          THE COURT:  No, no, no.  I didn't see the word

4  stipulation come from his mouth.  He's talking about an

5  order.  He's going to agree to an order.  Obviously, you'll

6  have a chance to review the order and if you don't like the

7  terms, but it's not my envisioning this is not a stipulation.

8  My envisioning is whether or not he is agreeable to an order

9  as the Court had outlined in its prior ruling.

10          MR. WESTON:  Well, I request the Court put the same

11  deadlines for the briefing of the vegetables issue with them

12  coming up with an order proposing to the Court.

13          THE COURT:  That's fine.  He's willing to do it.

14          MR. WESTON:  Okay.  I think two weeks for them from

15  today and then they'll do their brief and their proposed

16  order on mootness and we'll have two weeks to respond?

17          THE COURT:  Sure, that's not a problem.  So your

18  response would be due on -- I said theirs was going to be due

19  on the 6th of September and then yours will be due the 20th

20  of September and the reply October 4th.  I'll put you back on

21  for the 11th of October.

22          MR. PANOS:  Give me one second just to check the

23  calendars.

24          MR. WESTON:  I should probably check mine, too.  I

25  don't believe we have anything.  And our deadline was the

1    20th?

2              THE COURT:   Yes.

3              MR. WESTON:   Okay.   And there was gonna be a

4    10-page limitation on --

5              THE COURT:   Everything, on everything.

6              MR. WESTON:   Okay.

7              THE COURT:   I don't think you need more than ten

8    pages if you object to the proposed order, because I don't

9    presume the proposed order is going to be ten pages.

10             MR. WESTON:   Okay.   I think that does cover it.

11   Oh, I guess one other issue maybe that we can handle now,

12   maybe later.   I'm not sure how we're going to appeal a

13   mootness order if we don't find or appeal some of the

14   statements about remedy because I guess what the Court would

15   be saying is I'm gonna dismiss this claim because the

16   defendant has said I will never use it again, but plaintiff

17   may not have a corrective advertising campaign.   I think that

18   would constitute an order against you.

19             THE COURT:   I think it's clear you're not waiving

20   anything in this regard.   And so I presume that, you know,

21   you can always go to the Appellate Court and make the

22   argument that even though the Court has issued an order, it

23   did not issue anything further other than that.   And that you

24   could say that is abuse of discretion, but, however, you must

25   realize this is injunctive relief we're talking about.