**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
Kelly M. Morrison (Cal. Bar No. 255513)
kmorrison@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071-2054
Phone:      (213) 239-5100
Facsimile:  (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
Jill M. Hutchison (*pro hac vice*)
jhutchison@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:      (312) 222-9350
Facsimile:  (312) 527-0484

Attorneys for Defendants Kraft Foods Global, Inc.,
improperly sued as Kraft Foods North America, and Kraft Foods Inc.

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC., <br><br> Defendants. | No. CV10-01028-GW (AGRX) <br><br> **DECLARATION OF KENNETH K. LEE IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF FAILURE TO OPPOSE MOTION FOR FEES AND COSTS** <br><br> Status Conference <br> Date: February 21, 2013 <br> Time: 8:30 a.m. <br> Courtroom: 10 <br><br> Judge: Hon. George H. Wu <br><br> Action Filed: February 11, 2010 |

I, Kenneth K. Lee, declare as follows:

1.      I am an attorney in the Los Angeles office of Jenner & Block LLP, counsel in this action for Kraft Foods.  If called to testify, I would and could testify with personal knowledge as to all of the following.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Reporter's Transcript of Proceedings from the Status Conference held on December 17, 2012 in the above-captioned matter.

3.      Attached hereto as Exhibit 2 is a true and correct copy of Plaintiffs' Second Set of Interrogatories Addressed to Kraft Foods Global, Inc., which were served on January 11, 2013.

4.      Attached hereto as Exhibit 3 is a true and correct copy of Plaintiffs' Second Set of Requests for the Production of Documents from Kraft Foods Global, Inc., which were served on January 11, 2013.

5.      Attached hereto as Exhibit 4 is a true and correct copy of a January 17, 2013 letter from Kenneth K. Lee to Gregory S. Weston and Ronald A. Marron.

6.      Attached hereto as Exhibit 5 is a true and correct copy of Plaintiffs' Third Set of Interrogatories Addressed to Kraft Foods Global, Inc., which were served on January 25, 2013.

7.      Attached hereto as Exhibit 6 is a true and correct copy of a January 25, 2013 letter from Jack Fitzgerald to Kenneth K. Lee.

8.      Attached hereto as Exhibit 7 is a true and correct copy of a January 28, 2013 letter from Kenneth K. Lee to Gregory S. Weston, Jack Fitzgerald, and Ronald A. Marron.

I declare under the penalty of perjury under the laws of United States and California that the foregoing is true and correct.

Executed February 19, 2013 in Los Angeles, California.

/s/ Kenneth K. Lee

# EXHIBIT 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE **GEORGE H. WU**, JUDGE PRESIDING

---

**EVANGELINE RED**, et al,                    )
                                              )
                                              )
                                              )
                     Plaintiffs,              )
                                              )No. 12-7099GW(SHx)
          VS                                  )
                                              )
**KRAFT FOODS, INC.**, et al,                 )
                                              )
                                              )
                     Defendants.              )
_____)

Reporter's Transcript of Proceedings
**STATUS CONFERENCE**
Los Angeles, California
**MONDAY, DECEMBER 17, 2012**

ANNE KIELWASSER, CRR, RPR, CSR
Federal Official Court Reporter
312 North Spring Street, Room 432
Los Angeles, California 90012
Telephone: (213) 894-2969
anne.kielwasser@gmail.com
AKtranscripts.com

UNITED STATES DISTRICT COURT

2

1                         A P P E A R A N C E S

2

3       **ON BEHALF OF THE PLAINTIFFS:**

4       Gregory S Weston.
        Weston Firm
5       1405 Morena Boulevard Suite 201
        San Diego, CA 92110
6       619-798-2006
        Fax:  480-247-4553
7       Email:  Greg@westonfirm.com

8

9       **ON BEHALF OF THE DEFENDANTS:**

10
        Kenneth K Lee
11      Jenner and Block LLP
        633 West Fifth Street Suite 3500
12      Los Angeles, CA 90071-2054
        213-239-5100
13      Fax:  213-239-5162
        Email:  Klee@jenner.com
14

15

16

17

18

19

20

21

22

23

24

25

1    MONDAY, DECEMBER 17, 2012                          9:10 A.M.

2                              ~  ~  ~

3                    P R O C E E D I N G S

4                              ~  ~  ~

5              THE COURT:  Let me call the matter of Red versus

6    Kraft Foods.

7              MR. WESTON:  Good morning, Your Honor.  Greg

8    Weston for both plaintiff.

9              MR. LEE:  Good morning, Your Honor.  Kenneth Lee

10   on behalf of defendant, Kraft Foods.

11             THE COURT:  All right, the Court received the

12   joint report regarding the remaining issues in this case; and

13   as I understand it, there are basically four points or

14   matters.  First of all, the plaintiffs are indicating they

15   seek to go forward on their individual claims, but Kraft has

16   made an offer to settle those for, I guess, $100.  Is it $100

17   each?

18             MR. LEE:  Sure, why not.

19             THE COURT:  Okay, $100 each.

20             MR. WESTON:  Your Honor, plaintiffs have received

21   no settlement offer, ever, in the entirety of the case with

22   Kraft.

23             THE COURT:  I thought it was in their papers.

24             MR. WESTON:  I have never seen it.

25             THE COURT:  All right.

4

1      MR. WESTON:  If they want to send us one, we'll

2  look at it.

3      THE COURT:  All right, send them one and see if

4  that can resolve that aspect of it.

5          The second one is, that the plaintiff seeks

6  to lift discovery.  I guess they want to do discovery on

7  their individual claims.  But let's be blunt about this.

8  Your clients' claims individually aren't worth much.

9      MR. WESTON:  No, they're not.

10     THE COURT:  Okay.  So, why would you engage in

11  expensive discovery on stuff that is not economically worth

12  it?

13     MR. WESTON:  Well, Your Honor, there is a

14  possibility that we'd prevail at trial, and then the Court's

15  order denying class certification would be reversed.  And

16  then we have a finding of liabilities as well as a finding of

17  class certification.

18     THE COURT:  Uh, yes, I suppose anything is

19  possible, but it's not something that one would throw a lot

20  of money at at this point in time.

21          So, I'm not going to lift discovery at this

22  stage of this situation.  Let's see if the matter can be

23  resolved.  Because if, in fact, the Court is wrong and you

24  get -- I get reversed on the class certification issue, and

25  the case goes forward, at that point in time you could do

5

1    discovery, et cetera, et cetera.  And the discovery that you

2    would do as a class would be different slightly than

3    discovery that you're going to be doing individually.

4            All right, and then there is a -- plaintiff

5    wants to make a motion for attorneys' fees.  I have no

6    problem with the plaintiffs making a motion for attorneys'

7    fees, but the case pretty much has to be over before I would

8    allow that, because I want to see what -- not the appeal

9    portion, obviously, but this portion here, because I want to

10   see what the attorneys' fees would be based on once the case

11   is over.  And -- that was Issue No. 3.

12           And Issue No. 4 is, that the plaintiffs, as

13   they indicate, they may make another motion for class

14   certification.  At this point in time the answer would be no.

15   I've considered class certification ad nauseam in this

16   matter.  I don't want to consider another one.  So, if there

17   is an appeal, if I get reversed, okay; if I don't get

18   reversed, okay.  But no more.

19           MR. WESTON:  Your Honor, I think what you said

20   about attorneys' fees is wise, and the case generally is

21   over.  I mean, we can move forward with our individual

22   claims; but, you know, the reality is, if the Court awards us

23   millions of dollars in fees, we're unlikely to want to --

24           THE COURT:  Yeah, but the problem is -- the

25   prospect of my awarding you million dollars in attorneys'

6

1    fees is not high.  So --

2           MR. WESTON:  The Court should await to see our

3    brief before saying that.

4           THE COURT:  Let me put it this way, you know,

5    maybe I'm just cheap; but, you know, my -- when I award

6    attorneys' fees, you know, it has to be something more

7    concrete than -- you know, I don't think, again, it's a

8    situation where we'll have to see -- and I agree with you.  I

9    have to see the motion, itself.

10           I'm not talking about whether or not you win

11   or lose on attorneys fees; I'm just talking about the dollar

12   figure.  I can't imagine there will be million of dollars'

13   worth of attorneys' fees that's already been spent in this

14   matter.  That's the aspect of what I'm questioning, not the

15   merits of it.  Although I'm not saying one way or the other

16   on the merits either, because I have to read the moving or

17   opposing papers.

18           All right, so, why don't we do this.  Why

19   don't we see if we can resolve just the remaining issue of

20   the individual stuff, you know, and I'll give you, guys,

21   like, let's say 21 days, to see if you can do that.

22           And what I'll do is continue this matter, and

23   I want you guys to give me a schedule in regards to the

24   remaining portion of the case.  That one obviously includes

25   the attorneys' fees, the motion for attorneys' fees.

 1              And, you know, your schedule is whatever you

 2    guys agree upon would be probably fine with the Court.

 3              MR. WESTON:  Your Honor, if possible, I think we

 4    can set a calendar for the attorney fee motion.  I have a

 5    suggestion if I may offer it, which is, that it be heard on

 6    April 8th and filed on April 18th with three weeks for both

 7    the opposition and reply brief.

 8              MR. LEE:  Your Honor, we would like at least after

 9    they filed their motion to take a look at it and then

10    determine the scheduling afterwards, just because, from our

11    preliminary talks about attorneys fees, they are indeed

12    seeking millions of dollars.  And if that is what they are

13    seeking, we would like to get some discovery to make sure

14    there is a basis to request millions of dollars in

15    attorneys' --

16              THE COURT:  Well, let me just stop you.

17              I presume that if there is a motion for

18    attorneys fees, and if it is a substantial amount that you're

19    indicating it will be, is that it will be accompanied, that

20    can be submitted under seal by an itemization as to every,

21    you know -- in other words, so we can figure out where the

22    time went.  So --

23              MR. WESTON:  Yes, Your Honor.  If I could just get

24    the Court's permission in advance.  We can file our billing

25    records under seal with the Court, and of course provide a

8

1   copy to Kraft.  I'm not sure Kraft would want any further

2   discovery beyond that.

3                   THE COURT:  What further discovery would you want

4   besides that?

5                   MR. LEE:  We would like to see how they come up

6   with the numbers, details.

7                   THE COURT:  I'll tell you what, what don't --

8                   MR. WESTON:  What details?

9                   THE COURT:  Well, let me stop you.

10                  MR. WESTON:  Yes.

11                  THE COURT:  No bickering.

12                  Let me leave it on April the 8th.  Let me

13  have, however --

14                  Why do you need until February the 28th to

15  file it?

16                  MR. WESTON:  I was just going to suggest February

17  18th.

18                  THE COURT:  Why would you need that long?

19                  MR. WESTON:  Well, that gives both defendant three

20  weeks to oppose, plaintiffs three weeks for reply, and the

21  Court two weeks before the hearing to have all the papers

22  under submission.

23                  THE COURT:  Why can't you file the motion, itself,

24  by, let's say, the first of February?

25                  MR. WESTON:  That's ambitious, but I think the

1    Court -- we may be able to do that if we --

2             THE COURT:  I'll tell you what.  Why don't you

3    do it -- okay, file it by February the 8th.

4             MR. WESTON:  Okay, we can do that, Your Honor.

5             THE COURT:  And what I'll do is, I will schedule

6    just a status conference on the 18th of February, and that

7    status conference will be -- just to make sure that it's --

8    to see if the individual claims are resolved and so there is

9    nothing else that needs to be done in this matter except for

10   the issue of attorneys' fees.

11            And then I will also hear at that point in

12   time if the defendant wants something other than a hearing

13   date in -- on or about April the 8th, in other words, if you

14   want to do discovery, let me know by a filing, let's say, by

15   the noon on the 14th of February as to what discovery you're

16   proposing.

17            But I would somehow, at this point in time,

18   more or less agree with the plaintiffs' counsel, that if they

19   give you a sufficiently itemized accounting of their time, I

20   don't understand what other discovery that you guys are going

21   to want to do.  And we'll talk about the scheduling further

22   on the 18th of February.  But it's my expectation that the

23   hearing on the motion for attorneys' fees will be on or

24   before April 8, okay?

25            All right?  Anything else?

10

1          MR. LEE:  No, Your Honor.

2          THE COURT:  Okay.

3          MR. WESTON:  Thank you, Your Honor.

4                  ~ ~ ~

5          (Proceedings concluded.)

6                  ~ ~ ~

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2    I hereby certify that the foregoing is a true and correct

3    transcript of the stenographically recorded proceedings in

4    the above matter.

5    Fees charged for this transcript, less any circuit fee

6    reduction and/or deposit, are in conformance with the

7    regulations of the judicial conference of the United States.

8

9

10   /S/Anne Kielwasser                    12/28/2012

11   Anne Kielwasser, CRR, RPR, CSR        Date
     Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

## $

$100 [3] - 3:16, 3:19

## /

/S/Anne [1] - 11:10

## 1

12-7099GW(SHx [1] - 1:10
12/28/2012 [1] - 11:10
1405 [1] - 2:5
14th [1] - 9:15
17 [2] - 1:17, 3:1
18th [4] - 7:6, 8:17, 9:6, 9:22

## 2

201 [1] - 2:5
2012 [2] - 1:17, 3:1
21 [1] - 6:21
213 [1] - 1:24
213-239-5100 [1] - 2:12
213-239-5162 [1] - 2:13
28th [1] - 8:14

## 3

3 [1] - 5:11
312 [1] - 1:23
3500 [1] - 2:11

## 4

4 [1] - 5:12
432 [1] - 1:23
480-247-4553 [1] - 2:6

## 6

619-798-2006 [1] - 2:6
633 [1] - 2:11

## 8

8 [1] - 9:24
894-2969 [1] - 1:24
8th [4] - 7:6, 8:12, 9:3, 9:13

## 9

90012 [1] - 1:24
90071-2054 [1] - 2:12
92110 [1] - 2:5
9:10 [1] - 3:1

## A

A.M [1] - 3:1
able [1] - 9:1
accompanied [1] - 7:19
accounting [1] - 9:19
ad [1] - 5:15
advance [1] - 7:24
afterwards [1] - 7:10
agree [3] - 6:8, 7:2, 9:18
aKtranscripts.com [1] - 1:25
al [2] - 1:8, 1:12
allow [1] - 5:8
ambitious [1] - 8:25
amount [1] - 7:18
Angeles [3] - 1:17, 1:24, 2:12
Anne [1] - 11:11
ANNE [1] - 1:22
anne.kielwasser@gmail.com [1] - 1:25
answer [1] - 5:14
appeal [2] - 5:8, 5:17
April [5] - 7:6, 8:12, 9:13, 9:24
aspect [2] - 4:4, 6:14
attorney [1] - 7:4
attorneys [6] - 6:11, 7:11, 7:18
attorneys' [12] - 5:5, 5:6, 5:10, 5:20, 5:25, 6:6, 6:13, 6:25, 7:15, 9:10, 9:23
await [1] - 6:2
award [1] - 6:5
awarding [1] - 5:25
awards [1] - 5:22

## B

based [1] - 5:10
basis [1] - 7:14
behalf [1] - 3:10
BEHALF [2] - 2:3, 2:9
beyond [1] - 8:2
bickering [1] - 8:11
billing [1] - 7:24

Block [1] - 2:11
blunt [1] - 4:7
Boulevard [1] - 2:5
brief [2] - 6:3, 7:7

## C

CA [2] - 2:5, 2:12
calendar [1] - 7:4
CALIFORNIA [1] - 1:2
California [2] - 1:17, 1:24
case [7] - 3:12, 3:21, 4:25, 5:7, 5:10, 5:20, 6:24
CENTRAL [1] - 1:2
certification [5] - 4:15, 4:17, 4:24, 5:14, 5:15
certify [1] - 11:2
cetera [2] - 5:1
charged [1] - 11:5
cheap [1] - 6:5
circuit [1] - 11:5
claims [5] - 3:15, 4:7, 4:8, 5:22, 9:8
class [6] - 4:15, 4:17, 4:24, 5:2, 5:13, 5:15
clients' [1] - 4:8
concluded [1] - 10:5
concrete [1] - 6:7
CONFERENCE [1] - 1:16
conference [3] - 9:6, 9:7, 11:7
conformance [1] - 11:6
consider [1] - 5:16
considered [1] - 5:15
continue [1] - 6:22
copy [1] - 8:1
correct [1] - 11:2
counsel [1] - 9:18
course [1] - 7:25
COURT [21] - 1:1, 3:5, 3:11, 3:19, 3:23, 3:25, 4:3, 4:10, 4:18, 5:24, 6:4, 7:16, 8:3, 8:7, 8:9, 8:11, 8:18, 8:23, 9:2, 9:5, 10:2
Court [10] - 1:23, 3:11, 4:23, 5:22, 6:2, 7:2, 7:25, 8:21, 9:1, 11:11
Court's [2] - 4:14, 7:24
CRR [2] - 1:22, 11:11
CSR [2] - 1:22, 11:11

## D

Date [1] - 11:11
date [1] - 9:13
days [1] - 6:21
DECEMBER [2] - 1:17, 3:1
defendant [3] - 3:10, 8:19, 9:12
defendants [1] - 1:13
DEFENDANTS [1] - 2:9
denying [1] - 4:15
deposit [1] - 11:6
details [2] - 8:6, 8:8
determine [1] - 7:10
Diego [1] - 2:5
different [1] - 5:2
discovery [5] - 4:6, 4:11, 4:21, 5:1, 5:3, 7:13, 8:2, 8:3, 9:14, 9:15, 9:20
DISTRICT [2] - 1:1, 1:2
dollar [1] - 6:11
dollars [4] - 5:23, 5:25, 7:12, 7:14
dollars' [1] - 6:12
done [1] - 9:9

## E

economically [1] - 4:11
either [1] - 6:16
Email [2] - 2:7, 2:13
engage [1] - 4:10
entirety [1] - 3:21
et [4] - 1:8, 1:12, 5:1
EVANGELINE [1] - 1:8
except [1] - 9:9
expectation [1] - 9:22
expensive [1] - 4:11

## F

fact [1] - 4:23
Fax [2] - 2:6, 2:13
February [7] - 8:14, 8:16, 8:24, 9:3, 9:6, 9:15, 9:22
Federal [1] - 1:23
fee [2] - 7:4, 11:5
fees [16] - 5:5, 5:7, 5:10, 5:20, 5:23, 6:1, 6:6, 6:11, 6:13, 6:25, 7:11, 7:18, 9:10, 9:23, 11:5

## Fifth [1] - 2:11

Fifth [1] - 2:11
figure [2] - 6:12, 7:21
file [4] - 7:24, 8:15, 8:23, 9:3
filed [2] - 7:6, 7:9
filing [1] - 9:14
fine [1] - 7:2
Firm [1] - 2:4
first [2] - 3:14, 8:24
FOODS [1] - 1:12
Foods [2] - 3:6, 3:10
foregoing [1] - 11:2
forward [3] - 3:15, 4:25, 5:21
four [1] - 3:13

## G

generally [1] - 5:20
GEORGE [1] - 1:4
Greg [1] - 3:7
greg@westonfirm.com [1] - 2:7
Gregory [1] - 2:4
guess [1] - 3:16, 4:6
guys [4] - 6:20, 6:23, 7:2, 9:20

## H

hear [1] - 9:11
heard [1] - 7:5
hearing [3] - 8:21, 9:12, 9:23
hereby [1] - 11:2
high [1] - 6:1
Honor [1] - 3:7, 3:9, 3:20, 4:13, 5:19, 7:3, 7:8, 7:23, 9:4, 10:1, 10:3
HONORABLE [1] - 1:4

## I

imagine [1] - 6:12
INC [1] - 1:12
includes [1] - 6:24
indeed [1] - 7:11
indicate [1] - 5:13
indicating [2] - 3:14, 7:19
individual [5] - 3:15, 4:7, 5:21, 6:20, 9:8
individually [2] - 4:8, 5:3
issue [3] - 4:24, 6:19, 9:10
Issue [2] - 5:11, 5:12

**issues** [1] - 3:12
**itemization** [1] - 7:20
**itemized** [1] - 9:19
**itself** [2] - 6:9, 8:23

**J**

**Jenner** [1] - 2:11
**joint** [1] - 3:12
**JUDGE** [1] - 1:4
**judicial** [1] - 11:7

**K**

**Kenneth** [2] - 2:10, 3:9
**Kielwasser** [2] - 11:10, 11:11
**KIELWASSER** [1] - 1:22
**klee@jenner.com** [1] - 2:13
**KRAFT** [1] - 1:12
**Kraft** [6] - 3:6, 3:10, 3:15, 3:22, 8:1

**L**

**least** [1] - 7:8
**leave** [1] - 8:12
**Lee** [2] - 2:10, 3:9
**LEE** [5] - 3:9, 3:18, 7:8, 8:5, 10:1
**less** [2] - 9:18, 11:5
**liabilities** [1] - 4:16
**lift** [2] - 4:6, 4:21
**LLP** [1] - 2:11
**look** [2] - 4:2, 7:9
**Los** [3] - 1:17, 1:24, 2:12
**lose** [1] - 6:11

**M**

**matter** [7] - 3:5, 4:22, 5:16, 6:14, 6:22, 9:9, 11:4
**matters** [1] - 3:14
**mean** [1] - 5:21
**merits** [2] - 6:15, 6:16
**million** [2] - 5:25, 6:12
**millions** [3] - 5:23, 7:12, 7:14
**MONDAY** [2] - 1:17, 3:1
**money** [1] - 4:20
**Morena** [1] - 2:5
**morning** [2] - 3:7, 3:9

**motion** [10] - 5:5, 5:6, 5:13, 6:9, 6:25, 7:4, 7:9, 7:17, 8:23, 9:23
**move** [1] - 5:21
**moving** [1] - 6:16
**MR** [22] - 3:7, 3:9, 3:18, 3:20, 3:24, 4:1, 4:9, 4:13, 5:19, 6:2, 7:3, 7:8, 7:23, 8:5, 8:8, 8:10, 8:16, 8:19, 8:25, 9:4, 10:1, 10:3

**N**

**nauseam** [1] - 5:15
**need** [2] - 8:14, 8:18
**needs** [1] - 9:9
**never** [1] - 3:24
**noon** [1] - 9:15
**North** [1] - 1:23
**nothing** [1] - 9:9
**numbers** [1] - 8:6

**O**

**obviously** [2] - 5:9, 6:24
**OF** [3] - 1:2, 2:3, 2:9
**offer** [3] - 3:16, 3:21, 7:5
**Official** [1] - 1:23
**official** [1] - 11:11
**ON** [2] - 2:3, 2:9
**once** [1] - 5:10
**one** [7] - 4:1, 4:3, 4:5, 4:19, 5:16, 6:15, 6:24
**oppose** [1] - 8:20
**opposing** [1] - 6:17
**opposition** [1] - 7:7
**order** [1] - 4:15

**P**

**papers** [3] - 3:23, 6:17, 8:21
**permission** [1] - 7:24
**plaintiff** [3] - 3:8, 4:5, 5:4
**plaintiffs** [6] - 1:10, 3:14, 3:20, 5:6, 5:12, 8:20
**PLAINTIFFS** [1] - 2:3
**plaintiffs'** [1] - 9:18
**point** [5] - 4:20, 4:25, 5:14, 9:11, 9:17
**points** [1] - 3:13
**portion** [3] - 5:9, 6:24

**possibility** [1] - 4:14
**possible** [2] - 4:19, 7:3
**preliminary** [1] - 7:11
**PRESIDING** [1] - 1:4
**presume** [1] - 7:17
**pretty** [1] - 5:7
**prevail** [1] - 4:14
**problem** [2] - 5:6, 5:24
**proceedings** [2] - 10:5, 11:3
**Proceedings** [1] - 1:16
**proposing** [1] - 9:16
**prospect** [1] - 5:25
**provide** [1] - 7:25
**put** [1] - 6:4

**Q**

**questioning** [1] - 6:14

**R**

**read** [1] - 6:16
**reality** [1] - 5:22
**received** [2] - 3:11, 3:20
**recorded** [1] - 11:3
**records** [1] - 7:25
**RED** [1] - 1:8
**Red** [1] - 3:5
**reduction** [1] - 11:6
**regarding** [1] - 3:12
**regards** [1] - 6:23
**regulations** [1] - 11:7
**remaining** [3] - 3:12, 6:19, 6:24
**reply** [2] - 7:7, 8:20
**report** [1] - 3:12
**Reporter** [2] - 1:23, 11:11
**Reporter's** [1] - 1:16
**request** [1] - 7:14
**resolve** [2] - 4:4, 6:19
**resolved** [2] - 4:23, 9:8
**reversed** [4] - 4:15, 4:24, 5:17, 5:18
**Room** [1] - 1:23
**RPR** [2] - 1:22, 11:11

**S**

**San** [1] - 2:5
**schedule** [3] - 6:23, 7:1, 9:5

**scheduling** [2] - 7:10, 9:21
**seal** [2] - 7:20, 7:25
**second** [1] - 4:5
**see** [11] - 4:3, 4:22, 5:8, 5:10, 6:2, 6:8, 6:9, 6:19, 6:21, 8:5, 9:8
**seek** [1] - 3:15
**seeking** [2] - 7:12, 7:13
**seeks** [1] - 4:5
**send** [2] - 4:1, 4:3
**set** [1] - 7:4
**settle** [1] - 3:16
**settlement** [1] - 3:21
**situation** [2] - 4:22, 5:8
**slightly** [1] - 5:2
**spent** [1] - 6:13
**Spring** [1] - 1:23
**stage** [1] - 4:22
**States** [1] - 11:7
**STATES** [1] - 1:1
**status** [2] - 9:6, 9:7
**STATUS** [1] - 1:16
**stenographically** [1] - 11:3
**stop** [2] - 7:16, 8:9
**Street** [2] - 1:23, 2:11
**stuff** [2] - 4:11, 6:20
**submission** [1] - 8:22
**submitted** [1] - 7:20
**substantial** [1] - 7:18
**sufficiently** [1] - 9:19
**suggest** [1] - 8:16
**suggestion** [1] - 7:5
**Suite** [2] - 2:5, 2:11
**suppose** [1] - 4:18

**T**

**talks** [1] - 7:11
**telephone** [1] - 1:24
**THE** [22] - 2:3, 2:9, 3:5, 3:11, 3:19, 3:23, 3:25, 4:3, 4:10, 4:18, 5:24, 6:4, 7:16, 8:3, 8:7, 8:9, 8:11, 8:18, 8:23, 9:2, 9:5, 10:2
**three** [3] - 7:6, 8:19, 8:20
**throw** [1] - 4:19
**transcript** [2] - 11:3, 11:5
**Transcript** [1] - 1:16
**trial** [1] - 4:14
**true** [1] - 11:2
**two** [1] - 8:21

**U**

**under** [3] - 7:20, 7:25, 8:22
**United** [1] - 11:7
**UNITED** [1] - 1:1
**unlikely** [1] - 5:23
**up** [1] - 8:5

**V**

**versus** [1] - 3:5
**vS** [1] - 1:11

**W**

**wants** [2] - 5:5, 9:12
**weeks** [4] - 7:6, 8:20, 8:21
**West** [1] - 2:11
**Weston** [3] - 2:4, 2:4, 3:8
**WESTON** [17] - 3:7, 3:20, 3:24, 4:1, 4:9, 4:13, 5:19, 6:2, 7:3, 7:23, 8:8, 8:10, 8:16, 8:19, 8:25, 9:4, 10:3
**win** [1] - 6:10
**wise** [1] - 5:20
**words** [2] - 7:21, 9:13
**worth** [3] - 4:8, 4:11, 6:13
**WU** [1] - 1:4

# EXHIBIT 2

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:  (619) 798-2006
Facsimile:   (480) 247-4553

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone:  (619) 696-9006
Facsimile:   (619) 564-6665

**Counsel for Plaintiffs**

**[Additional Counsel Listed on Signature Page]**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

EVANGELINE RED, and RACHEL WHITT, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,

Defendants.

Case No.: 2:10-cv-01028-GW(AGRX)
Pleading Type: Class Action

**PLAINTIFFS' SECOND SET OF INTERROGATORIES ADDRESSED TO KRAFT FOODS GLOBAL, INC.**

Judge: The Hon. George Wu
Action Filed: February 11, 2010

PROPOUNDING PARTY:      PLAINTIFFS Evangeline Red and Rachel Whitt.

RESPONDING PARTY:        DEFENDANT Kraft Foods Inc.

SET:                                    Two

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs Evangeline Red and Rachel Whitt hereby serve these Interrogatories on Defendant Kraft Foods Inc. Defendant shall serve such responses upon Plaintiffs, by and through their attorneys of record herein, as required by Fed. R. Civ. P. 26 and 33.

## I.   DEFINITIONS AND INSTRUCTIONS

1.   "YOU" and "YOUR" mean the defendant responding to these Requests, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under their control or on their behalf.

2.   "PERSON" means natural PERSONS, proprietorships, public or private corporations, partnerships, trusts, joint ventures, groups, associations, organizations or other legal entities, including representatives of any such PERSON or PERSONS.

3.   The term "CONCERNING" means relating to, referring to, describing, evidencing or constituting.

4.   "DOCUMENT" is defined to be synonymous and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure. A copy or duplicate of a DOCUMENT which has any non-conforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing is a separate DOCUMENT within the meaning of this term. DOCUMENTS include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, report, note, Post-It, message, telephone message, telephone log, diary, journal, appointment calendar, calendar, group scheduler calendar, drawing, painting, accounting paper, minutes, working paper, financial report, accounting report, work papers, drafts, facsimile, report, contract, invoice, record of purchase or sale, Teletype message, chart,

1

graph, index, directory, computer directory, computer disk, computer tape, or any other written, printed, typed, punched, taped, filmed, or graphic matter however produced or reproduced. DOCUMENTS also include the file, folder tabs, and labels appended to or containing any DOCUMENTS.

5. "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by and/or through any means including, but not limited to speech, writings, language (computer, foreign or otherwise), computer electronics of any kind (including, but not limited to "email"), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic and/or optical disks, "floppy disks," compact discs, CD ROM discs, sound, radio and/or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types and/or other media of any kind. The term "COMMUNICATION" also includes, without limitation, all "DOCUMENTS" (as defined herein) and all inquiries, discussions, conversations, negotiations, agreements, understandings, MEETINGS, notices, requests, responses, demands, complaints, and/or press, publicity or trade releases.

6. "MEETING," "MEET," or "MET" means any assembly, convocation, encounter, or contemporaneous presence of two or more PERSONS for any purpose, whether planned or not planned, arranged or scheduled in advance during which a communication of any kind occurred and shall include, but not be limited to, formal gatherings, conversations, video conferences, and telephone calls.

7. "MARKETING" or "MARKET" means all activities involved in the distribution of a PRODUCT including, without limitation, advertising, locating and contacting prospective customers, attempting to sell, making sales presentations, selling, preparing and submitting bids, shipping PRODUCTS, servicing customers and the supervision and management of the same.

8. "CLASS PERIOD" refers to January 1, 2000 to the present.

9. "PRODUCT" means a manufactured packaged food item made by YOU identified in the Complaint, i.e., Teddy Grahams Chocolatey Chip Graham Snacks,

2

Teddy Grahams Honey Graham Snacks, Vegetable Thins Baked Snack Crackers, Ritz Crackers Roasted Vegetable, Ritz Crackers Hint of Salt, Ritz Crackers Reduced Fat, Ritz Crackers Whole Wheat, Original Premium Saltine Crackers, Honey Maid Honey Grahams, Honey Maid Low Fat Honey Grahams, and Ginger Snaps, and shall further include any PRODUCTS subsequently added to the Complaint by amendment.

10.    The singular form of a word should be interpreted as plural wherever necessary to bring within the scope of the request any information that might otherwise be construed outside its scope.

11.    The words "and" and "or" shall be construed either disjunctively or conjunctively wherever necessary to bring within the scope of this request any information that might otherwise be construed outside its scope.

## II.    **INTERROGATORIES**

INTERROGATORY NO. 15:

Identify the amount of trans fat in each of YOUR PRODUCTS during the CLASS PERIOD, and any changes thereto.

INTERROGATORY NO. 16:

For each change in the amount of trans fat in YOUR PRODUCTS, identify the date the change was made.

State the amount YOU paid for legal services to the law firm Jenner & Block for the defense of this action, as of the most recent date you received a bill.

INTERROGATORY NO. 18:

State the most recent billing rate for each of the attorneys at the law firm Jenner & Block who has represented YOU in defense of this action

1   Dated: January 11, 2013

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Greg Weston* (signature)

Gregory S. Weston

**THE WESTON FIRM**
GREGORY S. WESTON
JACK FITZGERALD
MELANIE PERSINGER
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

**LAW OFFICES OF RONALD**

**A. MARRON, APLC**
RONALD A. MARRON
SKYE RESENDES
ALEXIS M. WOOD
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**Counsel for Plaintiffs**

**MILLSTEIN ADELMAN, LLP**
GILLIAN L. WADE
SARA D. AVILA
2800 Donald Douglas Loop North
Santa Monica, CA 90405
Telephone: (310) 396-9600
Facsimile: (310) 396-9635

**Additional Counsel for Plaintiffs**

# EXHIBIT 3

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (480) 247-4553

**Counsel for Plaintiffs**

**[Additional Counsel Listed on Signature Page]**

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone:   (619) 696-9006
Facsimile:   (619) 564-6665

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br><br>Defendants. | Case No.: 2:10-cv-01028-GW(AGRX)<br>Pleading Type: Class Action<br><br>**PLAINTIFFS' SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS FROM KRAFT FOODS GLOBAL, INC.**<br><br>Judge: The Hon. George Wu<br>Action Filed: February 11, 2010 |

PROPOUNDING PARTY:        PLAINTIFFS Evangeline Red and Rachel Whitt.

RESPONDING PARTY:          DEFENDANT Kraft Foods Inc.

SET:                                      Two

1    Pursuant to Rules 26 and 34 the Federal Rules of Civil Procedure, Plaintiffs

2 Evangeline Red and Rachel Whitt hereby request that Defendant Kraft Foods Inc.

3 produce for inspection and copying all DOCUMENTS, as defined herein, that are

4 specified in this Request. Production shall be made to the Weston Firm, 1405 Morena

5 Blvd., Suite 201, San Diego, CA 92110. Defendant shall also serve upon Plaintiffs, by

6 and through their attorneys of record herein, the written response as required by Fed. R.

7 Civ. P. 26 and 34.

8 **I.    DEFINITIONS AND INSTRUCTIONS**

9    1.    "YOU" and "YOUR" mean the defendant responding to these Requests,

10 and, where applicable, any predecessors and/or successors in interest, present and former

11 parents, subsidiaries, divisions and affiliates, and present and former directors,

12 employers, employees, attorneys, agents, other representatives and all other PERSONS

13 acting under their control or on their behalf.

14    2.    "PERSON" means natural PERSONS, proprietorships, public or private

15 corporations, partnerships, trusts, joint ventures, groups, associations, organizations or

16 other legal entities, including representatives of any such PERSON or PERSONS.

17    3.    "DOCUMENT" is defined to be synonymous and equal in scope to usage of

18 this term in Rule 34(a) of the Federal Rules of Civil Procedure. A copy or duplicate of a

19 DOCUMENT which has any non-conforming notes, marginal annotations or other

20 markings, and any preliminary version, draft or revision of the foregoing is a separate

21 Document within the meaning of this term. DOCUMENTS include, by way of example

22 only, any memorandum, letter, envelope, correspondence, electronic mail, report, note,

23 Post-It, message, telephone message, telephone log, diary, journal, appointment calendar,

24 calendar, group scheduler calendar, drawing, painting, accounting paper, minutes,

25 working paper, financial report, accounting report, work papers, drafts, facsimile, report,

26 contract, invoice, record of purchase or sale, Teletype message, chart, graph, index,

27 directory, computer directory, computer disk, computer tape, or any other written,

28 printed, typed, punched, taped, filmed, or graphic matter however produced or

2

1  reproduced. DOCUMENTS also include the file, folder tabs, and labels appended to or
2  containing any DOCUMENTS.

3      4.    "COMMUNICATION" means the transmission, sending and/or receipt of
4  information of any kind by and/or through any means including, but not limited to
5  speech, writings, language (computer, foreign or otherwise), computer electronics of any
6  kind (including, but not limited to "email"), magnetic tape, videotape, photographs,
7  graphs, symbols, signs, magnetic and/or optical disks, "floppy disks," compact discs, CD
8  ROM discs, sound, radio and/or video signals, telecommunication, telephone, teletype,
9  facsimile, telegram, microfilm, microfiche, photographic film of all types and/or other
10  media of any kind. The term "COMMUNICATION" also includes, without limitation, all
11  "DOCUMENTS" (as defined herein) and all inquiries, discussions, conversations,
12  negotiations, agreements, understandings, Meetings, notices, requests, responses,
13  demands, complaints, and/or press, publicity or trade releases.

14      5.    "MEETING," "MEET," or "MET" means any assembly, convocation,
15  encounter, or contemporaneous presence of two or more PERSONS for any purpose,
16  whether planned or not planned, arranged or scheduled in advance during which a
17  communication of any kind occurred and shall include, but not be limited to, formal
18  gatherings, conversations, video conferences, and telephone calls.

19      6.    "MARKETING" or "MARKET" means all activities involved in the
20  distribution of a PRODUCT including, without limitation, advertising, locating and
21  contacting prospective customers, attempting to sell, making sales presentations, selling,
22  preparing and submitting bids, shipping products, servicing customers and the
23  supervision and management of the same.

24      7.    "RELATING TO" means in whole or in part constituting, containing,
25  CONCERNING, discussing, referring, describing, analyzing, identifying, evidencing, or
26  stating.

27      8.    "CONCERNING" means and includes relating to, referring to, describing,
28  discussing, analyzing, identifying, evidencing, containing, stating, or constituting.

3

9.     "CLASS PERIOD" refers to January 1, 2000 to the present.

10.    "PRODUCT" means a manufactured packaged food item made by YOU identified in the currently-operative Complaint, *i.e.*, Teddy Grahams Chocolatey Chip Graham Snacks, Teddy Grahams Honey Graham Snacks, Vegetable Thins Baked Snack Crackers, Ritz Crackers Roasted Vegetable, Ritz Crackers Hint of Salt, Ritz Crackers Reduced Fat, Ritz Crackers Whole Wheat, Original Premium Saltine Crackers, Honey Maid Honey Grahams, Honey Maid Low Fat Honey Grahams, and Ginger Snaps, and shall further include any products subsequently added to the Complaint by amendment

11.    "SOCIAL MEDIA" means web-based and mobile technologies used to turn communication into interactive dialog, including but not limited to, Internet forums, weblogs, social blogs, micro-blogs, wikis, podcasts, photograph and video sharing sites, rating sites and social bookmarking sites.

12.    The singular form of a word should be interpreted as plural wherever necessary to bring within the scope of the request any information that might otherwise be construed outside its scope.

13.    The words "and" and "or" shall be construed either disjunctively or conjunctively wherever necessary to bring within the scope of this request any information that might otherwise be construed to be outside its scope.

14.    In responding to this Request, YOU are required to furnish all DOCUMENTS that are available to YOU, including DOCUMENTS in the possession, custody or control of YOUR attorneys, officers, agents, employees, accountants, consultants, representatives, or any PERSONS directly or indirectly employed by or connected with YOU or YOUR attorneys or anyone else subject to YOUR control. All DOCUMENTS that are responsive, in whole or in part, to any portion of this Request shall be produced in their entirety, including all attachments.

15.    All DOCUMENTS should be produced as they are kept in the ordinary course of business or should be organized and labeled to correspond to the specific requests to which they are responsive. All DOCUMENTS should be produced in any file

4

1  folder or carton in which they have been maintained, and should be stored, clipped,
2  stapled, or otherwise arranged in the same form and manner in which they were found.

3      16.    Electronic stored information ("ESI") should be produced in the following
4  formats:

5      **A.**    **NATIVE FILES.** For ESI originally created using common, off-the-shelf
6  software (e.g., Microsoft Office products), YOU should produce DOCUMENTS in native
7  format. If YOU are unable to produce certain DOCUMENTS in native format, YOU
8  should describe the reason for the inability (e.g., the document was created using
9  proprietary software).

10      **B.**    **TIFFs/JPEGs.** For ESI created using proprietary software or otherwise
11  unable to be produced in native format, black and white images should be delivered as
12  300 D.P.I. Group IV compression single page TIFFs and color images should be
13  delivered as single page JPEGs. Images shall be clearly labeled to show redacted,
14  privileged material. Each image should have a unique file name and should be named
15  with the Bates number assigned to it. For any hard-copy DOCUMENTS scanned to ESI,
16  either for production or in the regular course of business, any such ESI images (whether
17  in tiff, jpeg, pdf, or some other format) should be produced so that they are either text-
18  readable, or along with a concurrent Optical Character Recognition (OCR) file. Extracted
19  OCR files for scanned document should be provided within the Concordance delimited
20  file (DAT).

21      **C.**    **DATABASE**    **LOAD**    **FILES/CROSS-REFERENCE**    **FILES.**
22  DOCUMENTS should be provided with (1) a Concordance delimited file (DAT), and (2)
23  an Opticon delimited file (LOG or OPT).

24      **D.**    **UNITIZING OF DOCUMENTS.** In scanning paper DOCUMENTS,
25  distinct DOCUMENTS should not be merged into a single record, and single
26  DOCUMENTS should not be split into multiple records (i.e., paper DOCUMENTS
27  should be logically unitized).

28

5

*Red et al. v. Kraft Foods Inc. et al.*, Case No. 2:10-cv-01028-GW(AGRX)
PLAINTIFFS' SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

**E.     PARENT-CHILD RELATIONSHIPS.** Parent-child relationships (the association between an attachment and its parent document) should be preserved.

**F.     TEXT.** Extracted text for electronic files should be provided within the Concordance delimited file (DAT).

**G.     OBJECTIVE CODING FIELDS.** The following objective coding fields should be provided for each electronic document converted to TIFF:

- Beginning Bates Number
- Ending Bates Number
- Beginning Attachment Number
- Ending Attachment Number
- Source/Custodian.

**H.     OBJECTIVE CODING FORMAT.** The objective coding information should be provided in the following format:

- Fields should be Pipe (|) delimited.
- String values within the file should be enclosed with Carats (^).
- Multi-entries in a field should have a semi-colon (;) delimiter.
- The first line should contain headers and below the first line there should be exactly one line for each document.

Each line of objective coding information, corresponding to a single document, must contain the same number of fields as the header row.

17.     If and to the extent that YOU object to any request, state with specificity all grounds for any such objection.

18.     Unless otherwise indicated, each matter or request listed below shall cover the period from January 1, 2000 to the present.

19.     If YOU assert any claim of privilege to object to any request, and YOU withhold DOCUMENTS based on that asserted privilege, state the title and nature of the DOCUMENT(S), and furnish a list signed by the attorney of record giving the following information with respect to each withheld Document: (a) the name and title of the author

6

1   and/or sender and the name and title of the recipient; (b) the date of the Document's

2   origination; (c) the name of each PERSON or PERSONS participating in the preparation

3   of the Document; (d) the name and position, if any, of each PERSON to whom the

4   contents of the Document have been communicated by copy, exhibition, reading, or

5   substantial summarization; (e) a statement of the specific basis on which privilege is

6   claimed and whether or not the subject matter or the contents of that Document is limited

7   to legal advice or information provided for the purpose of securing legal advice; and (f)

8   the identity and position, if any, of the other PERSON or PERSONS supplying the

9   attorney signing the list with the information requested in subparagraphs above.

10       20.   In the event that any Document called for by these requests has been

11   destroyed or discarded, identify that Document by stating the title (if known) and nature

12   of the Document and furnish a list signed by the attorney of record giving the following

13   information with respect to each Document: (a) any addressor or addressee; (b) any

14   indicated or blind copies; (c) the Document's date, subject matter, number of pages, and

15   attachments or appendices; (d) all PERSONS to whom the Document was distributed,

16   shown, or explained; (e) its date of destruction or discard and the manner of destruction

17   or discard; and (f) the PERSONS authorizing or carrying out such destruction or discard.

18       21.   The following requests are continuing in nature and in the event YOU

19   become aware of or acquire additional information relating or referring thereto, such

20   additional information is to be promptly produced.

21   **II.   REQUESTS FOR PRODUCTION OF DOCUMENTS**

22   <u>REQUEST NO. 62</u>

23       DOCUMENTS sufficient to show the formulation of each of the PRODUCTS

24   during the CLASS PERIOD, including the amount, by weight, of each ingredient in the

25   PRODUCTS.

26   <u>REQUEST NO. 63</u>

27       DOCUMENTS sufficient to show the dates each formulation (as identified by

28   REQUEST NO. 62) was in use.

7

1  <u>REQUEST NO. 64</u>

2      DOCUMENTS RELATING TO any changes in the amount of trans fat in the

3  PRODUCTS.

4  <u>REQUEST NO. 65</u>

5      DOCUMENTS sufficient to show the date of each change in the amount of trans

6  fat in the PRODUCTS (as identified by REQUEST NO. 64).

7

8  DATED: January 11, 2013                Respectfully Submitted,

9

10                                          Gregory S. Weston

11                                          **THE WESTON FIRM**

12                                          GREGORY S. WESTON
                                           JACK FITZGERALD

13                                          MELANIE PERSINGER

14                                          1405 Morena Blvd., Suite 201
                                           San Diego, CA 92110

15                                          Telephone:  (619) 798-2006

16                                          Facsimile:  (480) 247-4553

17

18                                          **LAW OFFICES OF RONALD
                                           A. MARRON, APLC**

19                                          RONALD A. MARRON
                                           SKYE RESENDES

20                                          ALEXIS M. WOOD

21                                          3636 4th Street, Suite 202
                                           San Diego, CA 92103

22                                          Telephone:  (619) 696-9006

23                                          Facsimile:  (619) 564-6665

24                                          <u>**Counsel for Plaintiffs**</u>

25

26

27

28

*Red et al. v. Kraft Foods Inc. et al.*, Case No. 2:10-cv-01028-GW(AGRX)
PLAINTIFFS' SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

# EXHIBIT 4

# JENNER&BLOCK

January 17, 2013

Jenner & Block LLP
633 West 5th Street
Suite 3600
Los Angeles, CA 90071
Tel 213-239-5100
www.jenner.com

Chicago
Los Angeles
New York
Washington, DC

Kenneth K. Lee
213-239-5152 direct
213-239-5162 facsimile
KLee@jenner.com

<u>VIA E-MAIL</u>

Gregory S. Weston
The Weston Firm
1405 Morena Blvd., Suite 201
San Diego, CA 92110

Ronald A. Marron
Law Offices of Ronald A. Marron
3636 4th Avenue, Suite 202
San Diego, CA 92103

Re:   *Red v. Kraft Foods Inc.*, Case No. 2:10-CV-01028-GW-AGRx

Dear Greg and Ron:

On January 11, 2013, you sent us via e-mail Plaintiffs' Second Requests for Production of Documents (Request Nos. 62-65) and Second Set of Interrogatories (Request Nos. 15-18). As you know, you have repeatedly asked the Court to lift the stay of discovery in this litigation. And every single time, the Court has rejected your request. Your most recent request came on December 17, 2012, when Judge Wu yet again told you that "I'm not going to lift [the stay of] discovery." In light of the Court's order that discovery be stayed, your discovery requests are improper.

Sincerely,

Kenneth K. Lee

**EXHIBIT 5**

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:  (619) 798-2006
Facsimile:   (480) 247-4553

**Counsel for Plaintiffs**

**[Additional Counsel Listed on Signature Page]**

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone:  (619) 696-9006
Facsimile:   (619) 564-6665

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELINE RED, and RACHEL WHITT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br><br>Defendants. | Case No.: 2:10-cv-01028-GW(AGRX)<br>Pleading Type: Class Action<br><br>**PLAINTIFFS' THIRD SET OF INTERROGATORIES ADDRESSED TO KRAFT FOODS GLOBAL, INC.**<br><br>Judge: The Hon. George Wu<br>Action Filed: February 11, 2010 |

PROPOUNDING PARTY:     PLAINTIFFS Evangeline Red and Rachel Whitt.

RESPONDING PARTY:     DEFENDANT Kraft Foods Inc.

SET:     Third

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs Evangeline Red and Rachel Whitt hereby serve these Interrogatories on Defendant Kraft Foods Inc. Defendant shall serve such responses upon Plaintiffs, by and through their attorneys of record herein, as required by Fed. R. Civ. P. 26 and 33.

## I.  **DEFINITIONS AND INSTRUCTIONS**

1.    "YOU" and "YOUR" mean the defendant responding to these Requests, and, where applicable, any predecessors and/or successors in interest, present and former parents, subsidiaries, divisions and affiliates, and present and former directors, employers, employees, attorneys, agents, other representatives and all other PERSONS acting under their control or on their behalf.

2.    "PERSON" means natural PERSONS, proprietorships, public or private corporations, partnerships, trusts, joint ventures, groups, associations, organizations or other legal entities, including representatives of any such PERSON or PERSONS.

3.    The term "CONCERNING" means relating to, referring to, describing, evidencing or constituting.

4.    "DOCUMENT" is defined to be synonymous and equal in scope to usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure. A copy or duplicate of a DOCUMENT which has any non-conforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing is a separate DOCUMENT within the meaning of this term. DOCUMENTS include, by way of example only, any memorandum, letter, envelope, correspondence, electronic mail, report, note, Post-It, message, telephone message, telephone log, diary, journal, appointment calendar, calendar, group scheduler calendar, drawing, painting, accounting paper, minutes, working paper, financial report, accounting report, work papers, drafts, facsimile, report, contract, invoice, record of purchase or sale, Teletype message, chart, graph, index, directory, computer directory, computer disk, computer tape, or any other written, printed, typed, punched, taped, filmed, or graphic matter however produced or

1

reproduced. DOCUMENTS also include the file, folder tabs, and labels appended to or containing any DOCUMENTS.

5.    "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by and/or through any means including, but not limited to speech, writings, language (computer, foreign or otherwise), computer electronics of any kind (including, but not limited to "email"), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic and/or optical disks, "floppy disks," compact discs, CD ROM discs, sound, radio and/or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types and/or other media of any kind. The term "COMMUNICATION" also includes, without limitation, all "DOCUMENTS" (as defined herein) and all inquiries, discussions, conversations, negotiations, agreements, understandings, MEETINGS, notices, requests, responses, demands, complaints, and/or press, publicity or trade releases.

6.    "MEETING," "MEET," or "MET" means any assembly, convocation, encounter, or contemporaneous presence of two or more PERSONS for any purpose, whether planned or not planned, arranged or scheduled in advance during which a communication of any kind occurred and shall include, but not be limited to, formal gatherings, conversations, video conferences, and telephone calls.

7.    "MARKETING" or "MARKET" means all activities involved in the distribution of a PRODUCT including, without limitation, advertising, locating and contacting prospective customers, attempting to sell, making sales presentations, selling, preparing and submitting bids, shipping PRODUCTS, servicing customers and the supervision and management of the same.

8.    "CLASS PERIOD" refers to January 1, 2000 to the present.

9.    "PRODUCT" means a manufactured packaged food item made by YOU identified in the Complaint, i.e., Teddy Grahams Chocolatey Chip Graham Snacks, Teddy Grahams Honey Graham Snacks, Teddy Grahams Cinnamon Graham Snacks, Teddy Grahams Chocolate Graham Snacks, Vegetable Thins Baked Snack Crackers, Ritz

2

Crackers Roasted Vegetable, Ritz Crackers Hint of Salt, Ritz Crackers Reduced Fat, Ritz Crackers Whole Wheat, Original Premium Saltine Crackers, Honey Maid Honey Grahams, Honey Maid Low Fat Honey Grahams, and Ginger Snaps, and shall further include any PRODUCTS subsequently added to the Complaint by amendment.

10.     The singular form of a word should be interpreted as plural wherever necessary to bring within the scope of the request any information that might otherwise be construed outside its scope.

11.     The words "and" and "or" shall be construed either disjunctively or conjunctively wherever necessary to bring within the scope of this request any information that might otherwise be construed outside its scope.

## II.     **INTERROGATORIES**

INTERROGATORY NO. 19:

Identify each PRODUCT'S annual dollar and unit sales for the years 2004 through 2012, including by variety where applicable.

1  Dated: January 25, 2013

2                                                    _____
                                                    Jack Fitzgerald
3
4                                                    **THE WESTON FIRM**
                                                    GREGORY S. WESTON
5                                                    JACK FITZGERALD
                                                    MELANIE PERSINGER
6                                                    1405 Morena Blvd., Suite 201
                                                    San Diego, CA 92110
7                                                    Telephone:  (619) 798-2006
                                                    Facsimile:   (480) 247-4553
8
9
10                                                   **LAW OFFICES OF RONALD**

11                                                   **A. MARRON, APLC**
                                                    RONALD A. MARRON
12                                                   SKYE RESENDES
                                                    ALEXIS M. WOOD
13                                                   3636 4th Street, Suite 202
                                                    San Diego, CA 92103
14                                                   Telephone:  (619) 696-9006
                                                    Facsimile:   (619) 564-6665
15
16
17                                                   **Counsel for Plaintiffs**

18  **MILLSTEIN ADELMAN, LLP**
    GILLIAN L. WADE
19  SARA D. AVILA
    2800 Donald Douglas Loop North
20  Santa Monica, CA 90405
    Telephone:  (310) 396-9600
21
22  Facsimile:   (310) 396-9635

23  **Additional Counsel for Plaintiffs**

24

25

26

27

28

# EXHIBIT 6

# THE WESTON FIRM

1405 Morena Blvd., Suite 201 | San Diego, CA 92110

TEL: 619-798-2006
FAX: 480-247-4553
www.westonfirm.com

Friday, January 25, 2013

**VIA EMAIL AND FIRST CLASS MAIL**
Kenneth K. Lee
klee@jenner.com
Jenner & Block, LLP
633 West 5th St.
Los Angeles, CA 90071

Re:   *Red et al. v. Kraft Foods Inc., et al.*; Case No. 2:10-cv-01028 –GW (AGRx)
      <u>Meet and Confer Regarding Plaintiffs' Second Set of Discovery Requests</u>

Dear Ken:

I write in response to your January 17, 2013 letter concerning Kraft's position that Plaintiffs' Second Set of Requests for Production and Second Set of Interrogatories are improper. Pursuant to Local Rule 37-1, Plaintiffs request a meet and confer conference within ten days with respect to the discovery issues described below.

On January 11, 2013, Plaintiffs served the following limited discovery requests on Kraft:

<u>INTERROGATORY NO. 15:</u>
Identify the amount of trans fat in each of YOUR PRODUCTS during the CLASS PERIOD, and any changes thereto.

<u>INTERROGATORY NO. 16:</u>
For each change in the amount of trans fat in YOUR PRODUCTS, identify the date the change was made.

<u>INTERROGATORY NO. 17:</u>
State the most recent billing rate for each of the attorneys at the law firm Jenner & Block who has represented YOU in defense of this action

<u>DOCUMENT REQUEST NO. 62</u>
DOCUMENTS sufficient to show the formulation of each of the PRODUCTS during the CLASS PERIOD, including the amount, by weight, of each ingredient in the PRODUCTS.

DOCUMENT REQUEST NO. 63
DOCUMENTS sufficient to show the dates each formulation (as identified by REQUEST NO. 62) was in use.

DOCUMENT REQUEST NO. 64
DOCUMENTS RELATING TO any changes in the amount of trans far in the PRODUCTS.

DOCUMENT REQUEST NO. 65
DOCUMENTS sufficient to show the date of each change in the amount of trans fat in the PRODUCTS (as identified by REQUEST NO. 64).

While your January 17 letter correctly notes that the Court earlier stayed merits discovery, as you are aware, at the December 17, 2012 Status Conference, the Court invited the parties to seek discovery related to Plaintiffs' upcoming fee motion.

Each of the above requests seeks information that Plaintiffs will use in their motion. Accordingly, we request that Kraft reconsider its position and provide responses to Plaintiffs' limited discovery requests (interrogatories and document requests) for the reasons identified below.

Please advise when you are available next week to meet and confer.

Sincerely,

Jack Fitzgerald
THE WESTON FIRM

CC:
Dean Panos (dpanos@jenner.com)
Gregory S. Weston (greg@westonfirm.com)
Ronald A. Marron (ron@consumersadvocates.com)

# EXHIBIT 7

# JENNER&BLOCK

January 28, 2013

Jenner & Block LLP
633 West 5th Street
Suite 3600
Los Angeles, CA 90071
Tel 213-239-5100
www.jenner.com

Chicago
Los Angeles
New York
Washington, DC

Kenneth K. Lee
213-239-5152 direct
213-239-5162 facsimile
KLee@jenner.com

<u>VIA E-MAIL</u>

Gregory S. Weston and Jack Fitzgerald
The Weston Firm
1405 Morena Blvd., Suite 201
San Diego, CA 92110

Ronald A. Marron
Law Offices of Ronald A. Marron
3636 4th Avenue, Suite 202
San Diego, CA 92103

Re:    *Red v. Kraft Foods Inc.*, Case No. 2:10-CV-01028-GW-AGRx

Dear Greg, Jack, and Ron:

I am responding to Jack's January 24 letter stating that the "Court invited the parties to seek discovery related to Plaintiffs' upcoming fee motion." Please state where in the December 17, 2012 hearing transcript that the Court invited such discovery. To the contrary, Judge Wu rejected your latest attempts to engage in discovery and said "I'm not going to lift [the stay of] discovery at this stage." Tr. 4.

Discovery relating to attorneys' fees motion was mentioned only when Kraft Foods' counsel stated that *Kraft Foods* should be entitled to discovery if Plaintiffs followed through on their promise to seek "millions of dollars" in attorneys' fees. And even then, Judge Wu declined to allow discovery at this point and said that Kraft Foods could raise this issue again after Plaintiffs submitted their fees motion. Tr. 9.

Accordingly, your Second Requests for Production of Documents (Request Nos. 62-65) and Second and Third Sets of Interrogatories (Request Nos. 15-19) are improper and violate the Court's order staying discovery. Unless you can provide us with facts supporting your statement that the "Court invited the parties to seek discovery related to Plaintiffs' upcoming fee motion," a meet-and-confer about a discovery request that contravenes the Court's order would be premature and pointless.

Sincerely,

/s/ Kenneth K. Lee

Kenneth K. Lee