1  **JENNER & BLOCK LLP**
   Kenneth K. Lee (Cal. Bar No. 264296)
2  klee@jenner.com
   Kelly M. Morrison (Cal. Bar No. 255513)
3  kmorrison@jenner.com
   633 West 5th Street, Suite 3600
4  Los Angeles, CA  90071-2054
   Phone:     (213) 239-5100
5  Facsimile:  (213) 239-5199

6  **JENNER & BLOCK LLP**
   Dean N. Panos (*pro hac vice*)
7  dpanos@jenner.com
   Jill M. Hutchison (*pro hac vice*)
8  jhutchison@jenner.com
   353 N. Clark Street
9  Chicago, IL 60654-3456
   Phone:     (312) 222-9350
10 Facsimile:  (312) 527-0484

11 Attorneys for Defendants Kraft Foods Global, Inc.,
   improperly sued as Kraft Foods North America, and Kraft Foods Inc.
12

13            UNITED STATES DISTRICT COURT
         FOR THE CENTRAL DISTRICT OF CALIFORNIA
14

| | |
|---|---|
| 15  EVANGELINE RED and RACHEL WHITT, on Behalf of Themselves and 16  All Others Similarly Situated,<br><br>17            Plaintiffs,<br>       vs.<br>18  KRAFT FOODS INC., KRAFT 19  FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br>20            Defendants.<br>21<br>22<br>23<br>24 | No. CV10-01028-GW (AGRX)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**[FILED UNDER SEAL PURSUANT TO STIPULATED PROTECTIVE ORDER]**<br><br>[Declaration of Kenneth K. Lee filed concurrently herewith]<br><br>Hearing Date: April 8, 2013<br>Time: 8:30 a.m.<br>Courtroom: 10<br>Judge: Hon. George H. Wu<br>Action Filed: February 11, 2010 |

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

I.    Plaintiffs Failed to Show a Single Challenged Statement Was
      Deceptive.................................................................................................... 3

II.   Nearly Every One of Plaintiffs' Requested Relief Was Denied........... 4

III.  Plaintiffs Failed to Obtain Class Certification – Three Times.............. 6

IV.   The Order Confirming Kraft's Decision Is Issued Over Plaintiffs'
      Objections.................................................................................................. 7

V.    Plaintiffs Intend to Appeal the Order They Now Claim as a
      Success ...................................................................................................... 9

ARGUMENT............................................................................................................ 9

I.    Plaintiffs Are Not Entitled To Attorneys' Fees Because They Have
      Lost............................................................................................................ 9

      A.   Plaintiffs Are Not A Prevailing Plaintiff Under the CLRA
           Because They Failed to Obtain a Single Cent or Achieve
           Their Litigation Objective .......................................................... 9

      B.   Plaintiffs' Post Hoc Attempt to Recast Their Litigation
           Objectives Fails......................................................................... 11

      C.   The Private Attorney General Statute Does Not Allow a Fee
           Award Because Plaintiffs Did Not Succeed, There Was No
           Significant Benefit to the Public, And a Fee Award Is Not
           Necessary .................................................................................. 15

           1.   Plaintiffs are not a successful party because they lost ... 15

           2.   This lawsuit did not result in enforcement of an
                important right or a significant benefit to the public...... 15

           3.   Public enforcement was not necessary here.................. 18

4.    The court should decline to exercise its discretion to award fees ........................................................................ 19

II.    Plaintiffs' $3.3 Million Fee Request Is Not Reasonable ................... 19

    A.    The Proposed Lodestar of $1.4 Million Is Not Reasonable ..... 20

        1.    Plaintiffs engaged in duplicative and excessive billing . 20

        2.    A reduction is warranted for vague time entries and block-billing ............................................................... 22

        3.    The lodestar should take into account Plaintiffs' many unsuccessful claims and failure to secure their primary goal ........................................................... 23

    B.    The Court Should Apply A Negative Multiplier ..................... 23

    C.    Plaintiffs' Request Is Excessive Compared to Fees Awarded in Other Cases ...................................................................... 25

CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

*Adv. Micro Devices, Inc. v. Nat'l Semiconductor Corp.,*
   38 F. Supp. 2d 802 (N.D. Cal. 1999)..................................................19

*Baxter v. Salutary Sportsclubs, Inc.,*
   122 Cal. App. 4th 941 (2004)...............................14, 15,16, 17

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ...........................................19, 24

*Bronk v. Talarico,*
   2007 U.S. App. Unpub. LEXIS 1540 (2007) ..........................25

*Camarillo v. City of Maywood,*
   No. 07-3469, 2011 WL 3665028 (C.D. Cal. Aug. 22, 2011)..............23

*Ctr. for Biological Diversity v. Cal. Fish & Game Comm'n,*
   195 Cal. App. 4th 128 (2011) .........................................12, 16

*Chavez v. City of L.A.,*
   47 Cal. 4th 970 (2010) ................................................20, 23

*Christensen v. Stevedoring Servs. of Am.,*
   557 F.3d 1049 (9th Cir. 2009) ..............................................23

*Christian Research Inst. v. Alnor,*
   165 Cal. App. 4th 1315 (2008) .......................................20, 22

*Ebbetts Pass Forest Watch v. Cal. Dep't of Forestry & Fire Protection,*
   187 Cal. App. 4th 376 (2010) ...............................................15

*Fulford v. Logitech,*
   No. 08-2041, 2010 U.S. Dist. LEXIS 144437 (N.D. Cal. Mar. 5, 2010)...........25

*Gates v. Deukmejian,*
   987 F.2d 1392 (9th Cir. 1992) ...............................................20

*Giovannoni v. Bidna & Keys,*
   255 F. App'x 124 (9th Cir. 2007).............................................20

*Graciano v. Robinson Ford Sales, Inc.,*
   144 Cal App. 4th 140 (2006) .................................................10

*Graham v. DaimlerChrysler Corp.*,
   34 Cal. 4th 553, 577 (2004) ..................................................................14

*Grimsley v. Bd. of Supervisors of San Benito Cnty.*,
   169 Cal. App. 3d 960 (1985) ..........................................................16, 19

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..............................................................................23

*Herson v. City of Richmond*,
   No. 09-2516, 2012 WL 1189613 (N.D. Cal. Mar. 9, 2012)..............15

*Hoffman v. Constr. Protective Servs., Inc.*,
   2006 WL 6105640 (C.D. Cal. Dec. 21, 2006)..................................25

*Karuk Tribe of N. Cal. v. Cal. Regional Water Quality Control Bd., N. Coast Region*,
   183 Cal. App. 4th 330 (2010)....................................................*passim*

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) ......................................................................20

*Kim v. Euromotors West/The Auto Gallery*,
   149 Cal. App. 4th 170 (2007) ..................................................9, 10, 11

*King v. Lewis*,
   219 Cal. App. 3d 552 (1990) ..............................................................12

*Lafever v. Acosta, Inc.*,
   No. 10-1782, 2011 WL 5416650 (N.D. Cal. Nov. 8, 2011)..............22

*Lemus v. Burnham Painting & Drywall Corp.*,
   426 F. App'x 543 (9th Cir. 2011)........................................................25

*Marlo v. United Parcel Serv., Inc.*,
   453 F. App'x 682 (9th Cir. 2011)..................................................13, 23

*Marlo v. United Parcel Serv., Inc.*,
   No. 03-4336, Dkt. No. 970 (Aug. 12, 2009) ......................................13

*McGinnis v. Kentucky Fried Chicken*,
   51 F.3d 805 (9th Cir. 1994) ................................................................24

*McCown v. City of Fontana,*
   565 F.3d 1097 (9th Cir. 2009) ......................................................... 24

*Mitchell v. Skyline Homes,*
   No. 09-2241, 2012 WL 602907 (E.D. Cal. Feb. 23, 2012) ............................... 15

*Muller v. Reagh,*
   179 Cal. App. 2d 814 (1960) ......................................................... 25

*Mundy v. Neal,*
   186 Cal. App. 4th 256 (2010) ....................................................14, 15

*Parkinson v. Hyundai Motor Am.,*
   796 F. Supp. 2d 1160 (C.D. Cal. 2010) ........................................*passim*

*Perez v. Safety-Kleen Sys., Inc.,*
   No. 05-5338, 2010 WL 934100 (N.D. Cal. Mar. 15, 2010) ............................. 19

*Perez v. Safety-Kleen Sys., Inc.,*
   448 F. App'x 707 (9th Cir. 2011) .................................................... 23

*Robbins v. Alibrandi,*
   127 Cal. App. 4th 438 (2005) ........................................................ 24

*Saldana-Neily v. Taco Bell of Am., Inc.,*
   No. 04-4571, 2008 WL 793872 (N.D. Cal. Mar. 24, 2008) ........................20, 22

*Skaff v. Meridien N. Am. Beverly Hills, LLC,*
   506 F.3d 832 (9th Cir. 2007) ......................................................... 14

*Suzuki v. Hitachi Global Storage Techs., Inc.,*
   No. 06-7289, 2010 WL 956896 (N.D. Cal. Mar. 12, 2010) ............................. 24

*Unocal Corp. v. United States,*
   222 F.3d 528 (9th Cir. 2000) ....................................................18, 19

*Vasquez v. State,*
   45 Cal. 4th 243 (2008) ..........................................................18, 19

*Westside Cmty. for Indep. Living, Inc. v. Obledo,*
   33 Cal. 3d 348 (1983) ................................................................ 16

OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS

*Wilson v. Airborne, Inc.*,
   No. 07-770, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008)...............................25

**OTHER AUTHORITIES**

Cal. Civ. Code § 1021.5........................................................................15

Cal. Civ. Code § 1780(e) ......................................................................9

# **INTRODUCTION**

Plaintiffs' attorneys demand a staggering $3.3 million in legal fees, claiming that they are the "prevailing" and "successful" parties. They insist they have prevailed, even though they have (i) failed to recover a single cent, (ii) failed in three attempts at class certification, and (iii) failed to obtain any court order finding that the labels were deceptive or directing Kraft Foods to change any of its labels or ingredients. Only in an Orwellian Newspeak-world can that track record of failure be considered a "success." In reality, Plaintiffs have lost this case, despite being afforded multiple opportunities to revamp their theory of the case and to seek class certification.

When Plaintiffs initially filed this complaint, they primarily sought monetary recovery based on trace amounts of trans fat found in over a dozen Nabisco snacks. But this Court ruled that trans fat claims were preempted under federal law. So Plaintiffs changed their theory of the case and filed two additional amended complaints. But the Court still held that most of the challenged statements were non-actionable. Undeterred, Plaintiffs sought a Rule 23(b)(3) class seeking monetary recovery based on a few remaining statements. The Court denied a damages-based class twice. Unable to recover any restitution, Plaintiffs as a last ditch effort tried to certify a Rule 23(b)(2) injunctive-relief only class. That attempt, too, failed. Simply put, Plaintiffs are not entitled to any attorneys' fees because they in no way "succeeded" or "prevailed," and their fees motion should be denied for the following reasons:

<u>First</u>, Plaintiffs have come nowhere close to meeting the definition of "prevailing plaintiff" under the California Consumers Legal Remedies Act (CLRA). *See* Cal. Civ. Code § 1780(e). To obtain attorneys' fees under that statute, Plaintiffs must show that they obtained a "net monetary recovery" or "most or all of what [they] wanted by filing the action." No amount of spin or revisionism can obscure the fact that Plaintiffs lost this case. They sought hundreds of millions of dollars, but have not obtained a single cent. Their far-reaching requests for injunctive relief were denied. Further, the Court held that most claims were non-actionable, and there was never any finding of liability or

deception.  There is a reason why Kraft Foods will be not seeking an appeal of this Court's decisions, while Plaintiffs have appealed one decision already (unsuccessfully) and have indicated they will appeal other decisions as well.

The most Plaintiffs can tout is that Kraft agreed to an order affirming its prior public statement that it would not use a few statements, many of which had been discontinued *before* this lawsuit was even filed.  Kraft Foods voluntarily agreed to that order, even though — or because — there was not a scintilla of evidence that Kraft Foods would ever resume using those phrases.  Plaintiffs also try to usurp credit for Kraft Foods' recent voluntary decisions to change the formulation of some of its products.  But that decision had *nothing* to do with this lawsuit.  In fact, Plaintiffs never requested any of these changes in their suit, there is no Court order compelling Kraft Foods to change the formulations, and the Court held that claims based on these ingredients were non-actionable.  Perhaps recognizing these shortcomings, Plaintiffs try to concoct a "public benefit" by making the fantastic and unsupportable claim that their lawsuit has saved dozens of lives and hundreds of millions of dollars.  In short, Plaintiffs' token "victory" hardly amounts to achieving "most or all what [they] wanted by filing the action," and courts have held that such minor "victories" do not justify an award of attorneys' fees.

Second, Plaintiffs have not "succeeded," either, under California's private attorney general statute.  A court has the discretion to award attorneys' fees only if a party shows (i) it was successful, (ii) its lawsuit conferred a "significant" benefit on the public, and (iii) an award of attorneys' fees is necessary to encourage public-minded lawsuits.  Plaintiffs have met none of these requirements.  They did not win this case.  Nor did their lawsuit confer any benefit on the public.  And attorneys' fees are not necessary here.

Third, even if Plaintiffs had succeeded — which they clearly did not — their $3.3 million request must be denied because is not reasonable.  Their billing entries reflect inefficiencies, duplicative tasks, and entries that defy credibility.  For example, Mr. Greg Weston claims to have billed a Herculean 23.8 hours in a *single day*.  Even when he purports to have billed a slightly more realistic number (11 hours in one day), it turns out

that he claimed to have billed another 10.1 hours on that *same day* in a different case in which he is seeking fees.  Plaintiffs also unnecessarily sent four, five, and even *six* attorneys and staff to attend each hearing, all of whom billed for travel time.

## BACKGROUND

Plaintiffs have suffered setbacks and losses at every stage of this litigation.  Simply stated, under no metric would Plaintiffs be considered the prevailing party in this lawsuit.

### I.   Plaintiffs Failed to Show a Single Challenged Statement Was Deceptive.

In this lawsuit, Plaintiffs challenged 17 statements on 14 snack products as allegedly false or misleading.  In their first two complaints, Plaintiffs complained that Kraft Foods failed to disclose that these Nabisco snacks contained trace amounts of trans fat, even though the packaging stated "0g trans fat" in accordance with federal law. Dkt. Nos. 1, 27.  This Court held that federal law preempted trans fat claims and questioned the viability of this lawsuit. Dkt. No. 36. So Plaintiffs (or more accurately, their lawyers) began searching for a new theory to salvage their lawsuit.  In their third complaint, Plaintiffs primarily objected to a completely different — and rather ordinary — set of ingredients:  White flour, sugar, and other supposedly "bad" ingredients. Dkt. No. 58. Plaintiffs' counsel argued that positive statements on the packaging were misleading because the snacks also contained "bad" ingredients, even though they were disclosed.

Despite being afforded three chances to present a viable complaint, Plaintiffs ultimately failed to obtain a ruling that a single one of those statements was deceptive. Instead, the Court systematically deemed the challenged statements non-actionable as a matter of law.  Except for the few statements that Kraft Foods voluntarily decided to cease using (many *prior* to the filing of this lawsuit), Kraft Foods continues to use almost all of the challenged statements to this day.

| Challenged Statement | Court's Ruling |
|---|---|
| No Cholesterol<br>5 grams whole grain<br>6 grams whole grain | The Court held that Plaintiffs' challenges to the "no cholesterol" and "whole grain" statements were preempted. Dkt. No. 59 at 1. |
| Teddy Grahams<br>Honey Maid Grahams | The Court held that Plaintiffs could not state a claim on the basis of the products' names. |

| | |
|---|---|
| Vegetable Thins<br>Roasted Vegetable Ritz<br>Ritz Crackers Whole Wheat | Dkt. Nos. 145 at 6; 245 at 7; 258 at n.2 (citing Dkt. No. 256). |
| Wholesome | The Court held that Plaintiffs' "wholesome" claim "would not fly." Dkt. No. 245 at 7. |
| Nutritionists Recommend<br>Steps to a Healthier You | The Court held Plaintiffs could not challenge these phrases because "Plaintiffs never actually relied on these phrases in making their purchases," and they are "not likely to be determined to be deceptive." Dkt. Nos. 245 at 7; 36 at 9-10; 258 at n.2 (citing Dkt. No. 256). |
| Made With Real Vegetables<br>Made with Real Ginger & Molasses | The Court held that "Made with Real Vegetables" and "Made with Real Ginger & Molasses" are not actionable because no reasonable consumer would be misled. Dkt. No. 258; Ex. 1 at 33:2-9.[1] |
| A good source of Calcium Iron & Zinc to help support kids' growth and development<br>Sensible Solution<br>Sensible Snacking<br>Smart Choices Program | The Court held Plaintiffs' request for injunctive relief was moot as to these claims because Kraft is no longer using the challenged statements. Dkt. Nos. 258, 259. |

## II.   Nearly Every One of Plaintiffs' Requested Relief Was Denied.

Plaintiffs requested ten forms of relief, nine of which were denied.[2] Among other things, the Court denied Plaintiffs' primary and "initial" goal of certification of a "23(b)(3) damages class, seeking restitution from Kraft." Dkt. No. 245 at n.2. As a result, despite requesting disgorgement, restitution, and actual and punitive damages — which would have amounted to literally hundreds of millions of dollars — Plaintiffs failed to obtain a single cent for the putative class. Plaintiffs also failed to obtain most of their requested injunctive relief, much of which the Court rejected as "fanciful" and "absurd." Dkt. No. 245 at n.3, 4.

---

[1] Cited exhibits are attached to the concurrently-filed Declaration of Kenneth K. Lee.

[2] The tenth request — for an order enjoining Kraft from marketing the Kraft Products with the word "sensible" when they contain artificial *trans* fat — is discussed below.

| Relief Requested | Court's Ruling |
|---|---|
| An order declaring this action to be a proper class action.  Dkt. No. 1 at 43; Dkt. No. 27 at 46; Dkt. No.  58 at 57. | The Court three times denied class certification.  Dkt. Nos. 145, 216, 258. |
| An order requiring Kraft to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice to be paid to consumers.  Dkt. No. 1 at 44; Dkt. No. 27 at 46; Dkt. No. 58 at 57. | The Court denied certification of a Rule 23(b)(3) damages class, barring the class from obtaining disgorgement of profits.  *See* Dkt. Nos. 145, 216. |
| An order requiring Kraft to pay restitution to consumers to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or  violation of the CLRA. Dkt. No. 1 at 44; Dkt. No. 27 at 47; Dkt. No. 58 at 58. | The Court denied certification of a Rule 23(b)(3) damages class, barring the class from obtaining restitution.  *See* Dkt. Nos. 145, 216. |
| Actual and punitive damages under the CLRA. Dkt. No. 1 at 44; Dkt. No. 27 at 47; Dkt. No. 58 at 58. | The Court denied certification of a Rule 23(b)(3) damages class, barring the class from obtaining damages.  *See* Dkt. Nos. 145, 216. |
| An order enjoining Kraft from marketing the Kraft Products as "no cholesterol" and/or "cholesterol free" when they contain artificial *trans* fat. Dkt. No. 1 at 44; Dkt. No. 27 at 46. | The Court held that Plaintiffs' challenge to the "cholesterol" labels was preempted, and thus Plaintiffs could not obtain any relief on that basis. Dkt. No. 59 at 1. |
| An order enjoining Kraft from marketing the Kraft Products using the word "wholesome" when they contain artificial *trans* fat. Dkt. No. 1 at 44; Dkt. No. 27 at 46; Dkt. No. 58 at 57. | The Court held that "claims resting on the word 'wholesome' as used on products that contained de minimis amounts of transfats . . . 'would not fly,'" and thus Plaintiffs could not recover any relief on the basis of Kraft Foods' "wholesome" labels. Dkt. No. 145 at 7. |
| An order enjoining Kraft from use of any other misleading health claim on the products described herein.  Dkt. No. 27 at 46; Dkt. No. 58 at 57. | The Court rejected Plaintiffs' request for "[a]n order enjoining Kraft from . . . use of any other misleading health claim on the products" as "absurd."  Dkt. No. 245 at n.4. |

| | |
|---|---|
| An order compelling Kraft to conduct a corrective advertising campaign to inform the public that its products contain unsafe amounts of *trans* fat at consumers' actual consumption levels. Dkt. No. 1 at 44; Dkt. No. 27 at 46; Dkt. No. 58 at 57. | The Court held that Plaintiffs' request for "[a]n order compelling Kraft to conduct a corrective advertising campaign to inform the public that its products contain unsafe amounts of *trans* fat at consumers' actual consumption levels" was "not" "appropriate . . . in the instant matter." Dkt. No. 145 at n.3. |
| An order compelling Kraft to destroy all misleading and deceptive advertising materials. Dkt. No. 1 at 44; Dkt. No. 27 at 46; Dkt. No. 58 at 58. | The Court described Plaintiffs' request for "[a]n order compelling Kraft to destroy all misleading and deceptive advertising materials and products as provided by 15 U.S.C. § 1118" as "fanciful" and held it was "not warranted in a labeling case *of this type*." Dkt. No. 145 at n.3. |

## III.  Plaintiffs Failed to Obtain Class Certification – Three Times.

Plaintiffs filed three motions for class certification, all of which were denied. As this Court recognized, Plaintiffs' primary and "initial" goal was certification of a "23(b)(3) damages class, seeking restitution from Kraft." Dkt. No. 245 at n.2.[3] Accordingly, their first motion was primarily focused on a Rule 23(b)(3) damages class, and a Rule 23(b)(2) class was mentioned only in an attempt to shoehorn monetary relief into a 23(b)(2) class. *See* Dkt. No. 95-1 at 14. In a detailed opinion, the Court denied Plaintiffs' request for a 23(b)(3) class, setting forth why the case is not amenable for class treatment. The Court noted that there is no commonality or even an ascertainable class under Rule 23(a), and questioned whether Plaintiffs were adequate representatives. It further held that Rule 23(b)(3) requirements were not met because individual issues predominated over common ones. Dkt. No. 145. Finally, the Court held that, in light of *Wal-Mart Stores, Inc. v. Dukes*, certification under 23(b)(2) was inappropriate because the requested monetary relief was not merely "incidental" to injunctive relief, but rather was the focus of Plaintiffs' lawsuit. *See id.* at 16; Dkt. No. 212 at 4.

---

[3]  The Court also recognized that the reason Plaintiffs sought class certification was "because they want to receive incentive awards." Dkt. No. 253 at 4. The Court refused to issue incentive awards in light of Plaintiffs' failure to obtain certification. *Id.*

In their second motion for class certification, Plaintiffs again focused on a damages-based class and tried to evade the Court's prior denial of class certification by offering multiple subclasses. Underscoring that their primary goal in this litigation was monetary relief, Plaintiffs relegated their request for an injunctive relief class to a footnote, and admitted they sought an injunctive relief class only if the Court found "the issue of damages so problematic as to preclude certification" of a damages class. Dkt. No. 156-1 at n.17. But the Court again denied class certification, reaffirming that individual issues predominate. Dkt. No. 212. Plaintiffs then requested permission to appeal the Court's order denying certification of a damages class, arguing that a Rule 23(b)(2) class for injunctive relief was "insufficient consolation." Ex. 2.[4]

It was only after the Court conclusively ruled that it would not certify a damages class that Plaintiffs filed a motion to certify an injunctive relief class. But the third time was not the charm for Plaintiffs. Their final certification motion was denied on the ground that Plaintiffs could not seek injunctive relief on the basis of any of their remaining claims, each of which was non-actionable.

## IV.    The Order Confirming Kraft's Decision is Issued Over Plaintiffs' Objections.

On June 26, 2012, Kraft Foods submitted a declaration from Jay Cooper explaining that Kraft had ceased using certain phrases—"sensible solution," "sensible snacking," "smart choices," and "help support kids' growth and development"—on its product packaging. Dkt. No. 233. The Court recognized that "Kraft 'decided to stop using a number of the challenged statements *before* this lawsuit was even filed,'" and that the Cooper Declaration was likely "sufficient to support the reasonable expectation that the challenged labels will never be used again." Dkt. Nos. 234 at 2; 245 at 3. It thus held that Kraft's decision, if included in a Court order, would moot many of Plaintiffs' claims. Dkt. No. 253. The Court emphasized that Kraft's agreement to submit to a Court order codifying its voluntary decision "would not be construed as an admission of liability or as

---

[4] The Ninth Circuit denied that petition. Plaintiffs nonetheless seek attorneys' fees for time spent on that petition as well as on the three unsuccessful class certification motions.

1    evidence of any wrongdoing." Dkt. No. 260 at 4; Dkt. No. 245 at 8.  Because Kraft

2    Foods had already decided to stop using the challenged phrases in any event, it agreed to

3    submit to a Court order to that effect.  Plaintiffs' counsel recognized that Kraft Foods had

4    "voluntarily elected not to use" the challenged language.  *See* Ex. 1 at 13.  Thus, the

5    Court order had no practical impact on Kraft Foods' conduct.

6          Plaintiffs now attempt to take credit for the Court's Order Confirming Defendant's

7    Decision Not To Use Certain Phrases on Future Packaging (Dkt. No. 260), ignoring that

8    it was in fact entered "[o]ver Plaintiffs' strenuous objections."  Dkt. No. 253 at 3.

9    Plaintiffs made numerous attempts to derail the entry of the order, each of which was

10   rejected.  First, they claimed to have a "'smoking gun' Teddy Grahams package" that

11   evidenced the order was insufficient.  Dkt. No. 245 at 3.  The Court concluded "that

12   Plaintiffs are in possession of no 'smoking gun' Teddy Grahams (or other) package that

13   undercuts the credibility of either the Smith or Cooper declarations." *Id.*  Plaintiffs then

14   argued the order was inadequate because they desired additional relief, including

15   requiring Kraft to prevent retailers from displaying certain packaging, a corrective

16   advertising campaign, and a recall.   The Court "reject[ed] out of hand Plaintiffs'

17   suggestion that Kraft must somehow prevent retailers from displaying the products

18   bearing the challenged label" and denied the other relief as "fanciful." Dkt. No. 245 at 4.

19   Next, they argued the order had to "ban all use of the challenged phrases." Dkt. No. 253

20   at 3.  The Court rejected this argument as well.  *Id.*  The Court also rejected Plaintiffs'

21   argument that the order was inadequate because they should receive incentive awards,

22   finding "no precedent" for Plaintiffs' request.  *Id.* at 4.

23         In the face of Plaintiffs' many objections, "[t]he Court . . . generously provided

24   Plaintiffs another opportunity to suggest [their] own language" for the order.  Dkt. No.

25   258 at 2.  But Plaintiffs "took this as an opportunity to attempt to relitigate the issue of

26   whether *any* court order could moot their clams, as their proposed order envision[ed] the

27   certification of all ten subclasses," and to "relitigate . . . many of the claims . . . the Court

28   already found to be non-actionable for various reasons." *Id.*  The Court dismissed

1  Plaintiffs' proposal as "not relevant to the dispute at this juncture," and entered the order

2  proposed by Kraft. *Id.*; *see* Dkt. No. 260. Finally, the Court rejected Plaintiffs' proposal

3  that Kraft Foods bear the burden of seeking Plaintiffs' approval before undertaking future

4  product and/or package reformulations. Ex. 1 at 43-44.

5  **V.     Plaintiffs Intend to Appeal the Order They Now Claim as a Success.**

6        Recognizing that the Court had denied almost all of their requested relief and

7  deemed their claims non-actionable, Plaintiffs' counsel sought to "make the record" at the

8  November 2012 hearing for their anticipated appeal regarding "why [Plaintiffs] believe

9  [the Court's] rulings are erroneous." Ex. 1 at 4, 36, 50. Plaintiffs' request to "make a

10 record" confirms that even Plaintiffs do not believe they prevailed.[5]

11                     **ARGUMENT**

12 **I.      Plaintiffs Are Not Entitled To Attorneys' Fees Because They Have Lost.**

13      **A. Plaintiffs Are Not A Prevailing Plaintiff Under the CLRA Because They**

14          **Failed to Obtain a Single Cent or Achieve Their Litigation Objective.**

15       California's CLRA authorizes an award of attorneys' fees and costs to a

16 "prevailing plaintiff in litigation filed pursuant to" that statute. Cal. Civ. Code §

17 1780(e). A plaintiff is a "prevailing plaintiff" under the CLRA only if it (1) "obtained a

18 net monetary recovery" or (2) "realized its litigation objectives." *Parkinson v. Hyundai*

19 *Motor Am.*, 796 F. Supp. 2d 1160, 1169 (C.D. Cal. 2010) (quoting *Kim v. Euromotors*

20 *West/The Auto Gallery*, 149 Cal. App. 4th 170, 179 (2007)). In other words, "[a] plaintiff

21 prevails, in essence, when he gets most or all of what he wanted by filing the action."

22 *Kim*, 149 Cal. App. 4th at 179-80 (citation omitted).

23       It is undisputed here that Plaintiffs have not obtained a "net monetary recovery."

24 They sought hundreds of millions of dollars in restitution, but they have not obtained a

---

26 [5] Despite these failures, Plaintiffs' counsel demands that Kraft Foods pay $3.3 million in

27 fees. Interestingly, Plaintiffs' counsel demanded the exact same $3.3 million amount for
their involvement in *Henderson v. J.M. Smucker*, No. 10-4524 (C.D. Cal.) even though

28 no class was certified and the case was dismissed. The lodestar amount ($1.4 million)
and proposed multiplier (2.25) in that case are eerily similar to the figures here.

single cent on behalf of the class. Plaintiffs also "s[ought] class certification because they want[ed] to receive incentive awards," but that request, too, was denied by the Court. Dkt. No. 253 at 4. Therefore, the only way Plaintiffs can plausibly seek attorneys' fees is if they can show that they realized their litigation objective and achieved "most or all of what [they] wanted by filing the action." *Kim*, 149 Cal. App. 4th at 179-80. "[I]n deciding prevailing party status under the CLRA, 'the court should adopt a pragmatic approach, determining prevailing party status based on which party succeeded on a practical level. Under that approach, the court exercises its discretion to determine the prevailing party by analyzing which party realized its litigation objectives.'" *Id.* at 179 (quoting *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 150 (2006)).

Under this pragmatic approach, there can only be one prevailing party here — Kraft Foods. It has "realized its litigation objectives" because no damages were awarded, Plaintiffs' request for class certification was denied (three times), and many of their claims were deemed non-actionable as a matter of law. There is no Court order directing Kraft Foods to change any of their labels or its ingredients. Aside from those statements that Kraft Foods voluntarily decided to discontinue (many *before* this lawsuit was filed), Kraft Foods continues to use almost all of the challenged statements to this day. There has been no judicial finding of liability or deception, either. Not surprisingly, Kraft Foods does not intend to seek an appeal of any of this Court's decisions because it has prevailed. Plaintiffs, in contrast, already unsuccessfully sought an appeal under Rule 23(f) to the Ninth Circuit. And Plaintiffs indicated they will appeal many of this Court's rulings because common sense dictates that they have lost this case.

As set forth in detail above, Plaintiffs have lost this case and did not achieve "most or all what [they] wanted by filing the action." *Kim*, 149 Cal. App. 4th at 180. They amended their complaint multiple times and altered their theory of the case, but the Court still dismissed a large number of their claims as a matter of law. Plaintiffs made it clear that their primary goal in this litigation was to obtain hundreds of millions of dollars in restitution, but they have failed to obtain a single dollar for the class. Only after their

1    damages-based class was denied twice, did Plaintiffs try to obtain injunctive relief, but

2    even that attempt was largely thwarted.

3           In sum, Plaintiffs neither obtained a "net monetary recovery" nor "realized [their]

4    litigation objectives." *Parkinson*, 796 F. Supp. 2d at 1169.   The only "party" that

5    "succeeded on a practical level" is Kraft Foods, which demonstrated that Plaintiffs'

6    lawsuit is improper as a procedural matter (it cannot proceed as a class action), as a

7    practical matter (the requested relief is not appropriate), and as a matter of law (the claims

8    are not actionable).  *See Kim*, 149 Cal. App. 4th at 179.

9           **B. Plaintiffs' Post Hoc Attempt to Recast Their Litigation Objectives Fails.**

10          Faced with this record of failed objectives, Plaintiffs try to reformulate their

11   litigation objectives.  They suggest that their chief goal was never about monetary relief,

12   but rather they hoped to change the labeling and ingredients of Kraft Foods snacks.   Such

13   an attempt by Plaintiffs "to recast the purpose, scope, and outcome of the litigation" must

14   be rejected. *Karuk Tribe of N. Cal. v. Cal. Regional Water Quality Control Bd., N. Coast*

15   *Region*, 183 Cal. App. 4th 330, 365 (2010).

16          Plaintiffs first try to take credit for Kraft's business decision to stop using certain

17   phrases, such as "sensible snacking" and "sensible solutions."  But that decision had

18   *nothing* to do with Plaintiffs' lawsuit. As this Court recognized, "Kraft 'decided to stop

19   using a number of the challenged statements *before* this lawsuit was even filed.'"  Dkt.

20   No. 245 at 3.  For example, "Sensible Snacking" was removed from Teddy Grahams and

21   Ritz Crackers Reduced Fat packaging in 2006 and Honey Maid Grahams packaging in

22   2007, while "Sensible Solution" was removed from Teddy Grahams packaging in 2009

23   and from Honey Maid Grahams packaging in late 2009 or early 2010. Dkt. No. 221-1 at

24   ¶¶ 8, 9, 12, 13, 15; *see also* Dkt. No. 245 at 3.  Moreover, the Court has repeatedly held

25   that Defendants' voluntary decision to stop using certain phrases on its packaging "shall

26   not be construed as an admission of liability or as evidence of any wrongdoing." Dkt.

27   No. 260 at 3; *see also* Dkt. No. 234 at n.1.

28          Further, it is of little consequence that Kraft Foods agreed to an order reaffirming

---

1   its prior statement that it would not use statements it had already decided to stop using.

2   Notably, Plaintiffs did not provide a single piece of evidence that Kraft Foods intended to

3   use those challenged statements ever again. *See* Dkt. No. 245.  Indeed, that is precisely

4   why Kraft Foods voluntarily agreed to enter into that order.[6]  Courts take a pragmatic

5   approach in determining who won and who lost.   Here, the "cold hard reality, from a

6   practical assessment, is that [P]laintiffs lost. . . . Any realistic assessment of this litigation

7   from a practical perspective based on the impact of the case as a whole can come to no

8   other conclusion." *Karuk*, 183 Cal. App. 4th at 365-66 (internal citations omitted).

9        Moreover, even if this Court were inclined to give some credit to Plaintiffs, that

10  does not entitle them to attorneys fees because attorneys' fees are not justified where the

11  relief obtained is "'relatively insignificant' when compared to the totality of relief

12  sought." *King v. Lewis*, 219 Cal. App. 3d 552, 556-57 (1990); *see also Ctr. for*

13  *Biological Diversity v. Cal. Fish & Game Comm'n*, 195 Cal. App. 4th 128, 140-41 (2011)

14  (fee award improper where, although plaintiff obtained some of the relief it requested, it

15  did not achieve its "strategic objective").

16       For example, in *King*, voters filed a petition to compel Sonoma County Counsel to

17  delete or amend an "impartial analysis" section prepared for a county referendum.  219

18  Cal. App. 3d at 553.  The trial court granted some of the requested relief, "ordering three

19  revisions to be made to the impartial analysis." *Id.*  But the court denied the request for

20  attorney's fees because the specific revisions it ordered were "'relatively insignificant'

21  when compared to the totality of relief sought." *Id.* at 556.   The Court of Appeal

22  affirmed, agreeing that none of the relief ordered by the trial court "demonstrated that the

23  analysis had been misleading" or "significantly alter[ed] the connotation of the impartial

24  _____

25  [6] As Kraft Foods disclosed to the Court at the time it entered the order, it had already

26  divested ownership of these products and transferred them to Mondelez Global LLC.
    Kraft Foods' counsel then reached out to Mondelez Global LLC, which voluntarily

27  agreed to be subject to the order and to follow Kraft Foods' prior public commitment that

28  it would not resume using the discontinued statements.   This underscores that this
    "victory" touted by Plaintiffs was of little import to either Kraft Foods or Mondelez.

1   analysis." *Id.* at 557. In other words, the lawsuit, *as a practical matter*, did not change

2   the election information available to the public. *Id.* at 556-57.

3         Similarly, in *Marlo*, the Ninth Circuit affirmed Judge Pregerson's holding that a

4   plaintiff could not recover fees incurred in his unsuccessful attempt to certify a class.

5   *Marlo v. United Parcel Serv., Inc.*, 453 F. App'x 682, 684 (9th Cir. 2011). Although the

6   plaintiff "succeeded on the majority of his individual claims," he "fail[ed] to achieve

7   class certification." *Id.* Thus, in granting an award of attorneys' fees to the plaintiff, the

8   district court emphasized that "[t]he prevailing plaintiff-employee here is *Marlo* — not

9   the class." Ex. 3, *Marlo v. United Parcel Serv., Inc.*, No. 03-4336, Dkt. No. 970 at 25

10   (Aug. 12, 2009), *aff'd* 453 F. App'x 682. As a result, "hours spent working solely on

11   class-related issues [we]re not recoverable." *Id.* at 25-27 ("eliminat[ing]" from fee award

12   "all hours related to briefing and researching the motions for certification . . ., the

13   interlocutory appeal" of the court's order denying certification, "class-related discovery,"

14   and other work that "centrally involved class issues").

15         The *King* and *Marlo* cases demonstrate that a fee award is inappropriate here.

16   None of Plaintiffs' hours are recoverable because they neither obtained relief for

17   themselves nor achieved certification of a class. And, as in *King*, Plaintiffs' lawsuit

18   neither showed that any of the challenged statements were misleading nor obtained a

19   "significant benefit" for the public. The most Plaintiffs could be said to have obtained

20   was the inclusion in a Court order of Kraft's prior voluntary decision to stop using certain

21   phrases. And that order — which expressly provides that it "shall not be construed as an

22   admission of liability or as evidence of any wrongdoing" (Dkt. No. 260 at 3) — was

23   entered *despite* Plaintiff's protestations, not because of their efforts.

24         In another *post hoc* attempt to claim victory, Plaintiffs try to take credit for the fact

25   that Kraft Foods recently decided to reformulate the ingredients of certain products

26   (which it frequently does for various business reasons). But that argument fails because

27   (1) Plaintiffs never requested a change in ingredients, (2) there is no order requiring Kraft

28   Foods to reformulate its products, and (3) the Court held that the ingredients in question

1   (*e.g.,* trans fat, white flour) could not serve as a basis for an actionable claim.

2        Plaintiffs first claim success for Kraft Foods' decision to stop making Teddy

3   Grahams with PHVO, arguing that "[t]his is the exact relief Lead Counsel and Plaintiffs

4   have sought and obtained in *other* trans fat class actions." Mot. at 5 (emphasis added).

5   Plaintiffs' argument misses the mark — the relief Plaintiffs or their counsel sought in

6   *other cases* is irrelevant. None of Plaintiffs' pleadings in this case requested that PHVO

7   be removed from Teddy Grahams. *Cf. Karuk*, 183 Cal. App. 4th at 366 (reversing

8   attorney fee award where "[t]he only relief/achievement/success" from the litigation "was

9   not sought by plaintiffs, but was engineered by the trial court"). Further, this Court held

10  that Plaintiffs' trans fat claims were preempted under federal law. *See* Dkt. No. 36.

11       Plaintiffs next claim victory based on Kraft Foods' decision to reformulate its

12  Teddy Grahams' recipe to include more graham flour as opposed to white flour but,

13  again, Plaintiffs never requested this type of relief and this Court held that the name of

14  the product name "graham" is not actionable. *See* Dkt. Nos. 145 at 6; 245 at 7. Nor did

15  Plaintiffs ever seek an injunction requiring Kraft Foods to cease making its Premium

16  Saltines with HFCS. Finally, there was no Court order directing that the "Nutritionists

17  Recommend" language be less prominent because the Court held that such a statement

18  was not actionable. *See* Dkt. Nos. 245 at 7; 36 at 9-10. Simply stated, relief that was

19  never requested (and which in any event would have been based on non-actionable

20  claims) cannot later be deemed a key "litigation objective" warranting an award of

21  attorney's fees.[7]

22  _____

23  [7] Moreover, because there is no Court order requiring these changes, Plaintiffs would be

24  limited to seeking attorney's fees under the so-called catalyst theory. *See Skaff v.*

    *Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 844 n.11 (9th Cir. 2007) (per curiam).

25  But they are barred from doing so, because, among other things, they failed to make a

26  reasonable attempt to settle their dispute with Kraft Foods prior to filing this lawsuit.

    *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 577 (2004) ("a plaintiff seeking

27  attorney fees under a catalyst theory must first reasonably attempt to settle the matter

    short of litigation"); *Mundy v. Neal*, 186 Cal. App. 4th 256, 260(2010); *Baxter v. Salutary*

28  *Sportsclubs, Inc.*, 122 Cal. App. 4th 941, 946-47 (2004) (attorney fee award improper

                                                                            (Continued...)

**C. The Private Attorney General Statute Does Not Allow a Fee Award Because Plaintiffs Did Not Succeed, There Was No Significant Benefit to the Public, And a Fee Award Is Not Necessary.**

The Court may award attorneys' fees to Plaintiffs under California Code of Civil Procedure section 1021.5 only if, after "a practical and realistic assessment of the litigation," it determines (1) Plaintiffs were "a successful party," (2) that this lawsuit "resulted in (a) enforcement of an important right affecting the public interest and (b) a significant benefit to the general public or a large class of persons, and (3) the necessity and financial burden of private enforcement of the important right make an award of fees appropriate." *Karuk*, 183 Cal. App. at 363; *Parkinson*, 796 F. Supp. 2d at 1169 . Plaintiffs bear the burden of establishing each prerequisite to an award of attorney fees under Section 1021.5, but have failed to do so here. *Ebbetts Pass Forest Watch v. Cal. Dep't of Forestry & Fire Protection*, 187 Cal. App. 4th 376, 381 (2010).

**1. Plaintiffs are not a successful party because they lost.**

As with the CLRA, a plaintiff may be a "successful party" under Section 1021.5 if it "achieve[d] its litigation objectives." *Parkinson*, 796 F. Supp. 2d at 1169-70; *Karuk*, 183 Cal. App. 4th at 362-63; *Ebbetts Pass*, 187 Cal. App. 4th at 381. As explained in detail above, Plaintiffs did not achieve their "litigation objectives."

---

where "there is no evidence that [plaintiff] notified [defendant] of the deficiencies in its contracts, or demanded their correction, before filing th[e] action"). Plaintiffs sent a pre-suit CLRA letter to Kraft Foods on February 10, 2010, the same day they filed their complaint. Ex. 4. Plaintiffs cannot reasonably argue that this same-day letter — in which the Weston firm threatens to "seek damages" — evidences a reasonable attempt to "settle the case before filing it." *Mundy*, 186 Cal. App. 4th at 260; *see Herson v. City of Richmond*, No. 09-2516, 2012 WL 1189613, at *2 (N.D. Cal. Mar. 9, 2012) (fee award improper where "Defendant had no[] opportunity to address the harm alleged by Plaintiffs prior to the suit"), *adopted by* No. 09-2516, 2012 WL 1188898 (N.D. Cal. Apr. 6, 2012); *Mitchell v. Skyline Homes*, No. 09-2241, 2012 WL 602907, at *2 (E.D. Cal. Feb. 23, 2012) (same). Nor may the pre-litigation notice requirement be excused "based on *ex post* allegations of futility." *See Herson*, 2012 WL 1189613, at *2.

**2.  This lawsuit did not result in enforcement of an important right or a significant benefit to the public.**

Section 1021.5 "specifically provides for an award only when the lawsuit has conferred 'a significant benefit' on 'the general public or a large class of persons.'" *Baxter*, 122 Cal. App. 4th at 945 (citation omitted).  To establish whether a fee award is permissible, "[t]he trial court must determine the significance of the benefit . . . by realistically assessing the gains that have resulted in a particular case." *Id.* (declining to award fees even where plaintiff technically prevailed on UCL claim).

Plaintiffs cannot satisfy the "significant benefit" requirement for at least two reasons.  First, fees are appropriate only when the plaintiff's lawsuit *causes* a change in the defendant's behavior that confers a significant benefit on the public.  Here, Kraft Foods' voluntary decision to cease using certain phrases was unrelated to the lawsuit.  "[I]n order to justify a fee award [under Section 1021.5], there must be a causal connection between the lawsuit and the relief obtained. . . ." *Karuk*, 183 Cal. App. 4th at 365-66 (quoting *Westside Cmty. for Indep. Living, Inc. v. Obledo*, 33 Cal. 3d 348, 353 (1983)).  Thus, a court properly denies a motion for fees where it concludes "that the [defendant] would in any event, itself had made the revisions" for which the plaintiff claimed credit, or that the changes were made for reasons unrelated to the lawsuit. *Grimsley v. Bd. of Supervisors of San Benito Cnty.*, 169 Cal. App. 3d 960, 967 (1985).

As this Court previously recognized, Kraft Foods had already decided before this lawsuit was even filed to stop using several of the challenged statements. *See* Dkt. No. 245 at 3; *see also* Dkt. Nos. 221-1, 242.  Therefore, this lawsuit logically could not have been the cause of any of the changes.  To the extent Plaintiffs did "cause" anything, it was merely the incorporation into a Court order of Kraft Foods' earlier decisions to cease using certain phrases on its packaging.  In other words, Plaintiffs' sole claimed success is a minor procedural victory with no real impact:  obtaining an order directing Kraft Foods not to do something it had already decided not to do concerning products it no longer manufactured or sold at the time of the order.  Importantly, Section 1021.5 does not

1    "authorize an award of fees . . . in every lawsuit enforcing a constitutional or statutory

2    right." *Baxter*, 122 Cal. App. 4th at 945 (refusing to award fees where UCL victory did

3    not confer a substantial benefit on a large segment of the public).  Rather, because "the

4    critical fact is the impact of the action," a "purely procedural" victory does not constitute

5    a "significant benefit" such that an award of attorneys' fees would be appropriate under

6    Section 1021.5.  *See Ctr. for Biological Diversity*, 195 Cal. App. 4th at 139-41; *Karuk*,

7    183 Cal. App. 4th at 365-69 (success on "a purely technical and procedural matter" with

8    no practical impact on the defendant's conduct does not constitute a "significant

9    benefit").  As in *Baxter*, to the extent Plaintiffs have obtained any relief, "it strains candor

10   to characterize th[at] scant relief . . . as a 'significant benefit.'"  122 Cal. App. 4th at 946.

11          Second, fees are inappropriate because neither Kraft Foods' decision, nor the mere

12   insertion of that decision into an order, conferred a "significant benefit" on the public.

13   Plaintiffs have made absolutely no showing that including Kraft Foods' voluntary

14   decision in an order conferred any benefit on the public, let alone a "significant" one.

15   Before the lawsuit was even filed, Kraft Foods had already decided on its own to cease

16   using the phrases "sensible solution" and "sensible snacking" on many of the products in

17   this lawsuit.   Dkt. No. 221-1.  And the industry-wide "Smart Choices" program was

18   discontinued in 2009, again before Plaintiffs sued.  *See* Ex. 10.  The "victory" is

19   particularly hollow because Plaintiffs did not provide a single piece of evidence

20   suggesting that Kraft Foods was planning to recommence using any of the discontinued

21   statements in the future, especially where (1) many of them had been discontinued years

22   ago; (2) Kraft Foods had submitted sworn declarations from its executives stating Kraft

23   Foods' decision that it would not use the phrases in the future; and (3) Kraft Foods had

24   already transferred the challenged products to a separate public company (Mondelez

25   Global LLC) at the time the order was entered.  That Mondelez voluntarily consented to

26   being bound by the order — notwithstanding that it is not even a party to this lawsuit —

27   serves to highlight that the order does not, as a practical matter, prevent the defendants

28   from doing anything they had not already decided not to do.

1   Recognizing that the mere inclusion of Kraft Foods' decision in a Court order did

2   not confer a "significant benefit," Plaintiffs claim that, with the challenged statements

3   removed from the packaging, "consumers are less likely to purchase the products and

4   consume trans fat." Mot. 13.  But this illusory "benefit" is a red herring.  First, as this

5   Court recognized, many of the challenged statements were removed from the packaging

6   long ago.  Dkt. No. 245 at 3.  Second, two of the challenged phrases — "smart choices"

7   and "help kids' growth and development" — were found only on Teddy Grahams, most

8   of which no longer include trans fat.  Dkt. No. 221-1 ¶ 11.[8]

9   ### 3. Public enforcement was not necessary here.

10  "The purpose of the 'private attorney general' doctrine is to encourage suits of

11  societal importance which private parties would not otherwise have an incentive to

12  pursue. Section 1021.5 was not designed 'as a method for rewarding litigants motivated

13  by their own pecuniary interests who only coincidentally protect the public interest.'

14  Therefore, in determining whether to exercise its discretion to award fees under the

15  doctrine, the district court must consider whether the plaintiff's own interests are

16  sufficient to motivate such a suit, or whether plaintiffs in actions of this kind require the

17  additional carrot of shifted fees to ensure that the public interest will be vindicated."

18  *Unocal Corp. v. United States*, 222 F.3d 528, 544 (9th Cir. 2000) (no attorney's fees

19  where, contrary to the plaintiff's characterization, the plaintiff was acting in its own

20  financial interest, "not to protect the public from future environmental disasters").

21  _____

22  [8] In concocting this sham public benefit, Plaintiffs rely on an expert declaration from Dr.
    Wong, who speculates without any bases that this litigation will save dozens of lives for

23  an annual benefit of $213.3 million.  This is the same Dr. Wong who submitted an

24  equally dubious declaration earlier in the case.  This latest declaration does not meet any
    of the *Daubert* factors because Dr. Wong's conclusion is based on incorrect facts and

25  assumptions, he relies on a highly suspect methodology that cannot withstand any

26  scrutiny, and he is not qualified to opine on the alleged fiscal impact of this litigation.
    Notably, even though he speculates about dozens of hypothetical lives saved, Plaintiffs

27  Red and Whitt stated under oath in their interrogatory responses that they "do[] not make
    any personal injury claims, which are irrelevant to the question of whether Kraft's

28  advertisements are likely to deceive a reasonable consumer."  Ex. 5 at 16; Ex. 6 at 16.

The record in this case makes abundantly clear that Plaintiffs and their attorneys initiated this lawsuit for financial gain, not to protect the public. As this Court recognized, "Plaintiffs frankly acknowledge that [they] s[ought] class certification because they want[ed] to receive incentive awards." Dkt. No. 253 at 4. Similarly, Plaintiffs' counsel spent the bulk of the lawsuit focused on their "initial goal" of certifying a damages class because their agreement with Plaintiffs entitles them to a ██████████████████ Ex. 7. Simply stated, Plaintiffs and their counsel had more than "sufficient financial incentive to bring th[is] lawsuit" without "the additional carrot of shifted fees" under section 1021.5. *Adv. Micro Devices, Inc. v. Nat'l Semiconductor Corp.*, 38 F. Supp. 2d 802, 815 (N.D. Cal. 1999); *Unocal*, 222 F.3d at 544.

### 4. The court should decline to exercise its discretion to award fees.

Contrary to Plaintiffs' characterization of the statute, it must "be remembered that section 1021.5 provides that under the circumstances there enumerated, 'a court *may* award attorney's fees.' Such an award is *discretionary . . . .*" *Grimsley*, 169 Cal. App. 3d at 965. Even if Plaintiffs could satisfy each of the requirements of Section 1021.5, the inquiry would not end there. "In deciding whether to award fees," courts are directed to "realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory." *Vasquez v. State*, 45 Cal. 4th 243, 251 (2008) (instructing judges to "exercise 'discretion'"). Thus, even if Plaintiffs could satisfy section 1021.5, the Court should exercise its discretion to deny the attorneys' fee motion.

## II.   Plaintiffs' $3.3 Million Fee Request Is Not Reasonable.

Even if this Court determines that attorneys' fees are appropriate, it may only award a "reasonable" amount. A determination of reasonableness involves a two-step process. First, the court calculates the "lodestar" figure by "multiplying the number of hours the prevailing party *reasonably* expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.

2011) (emphasis added). Second, "the court may adjust [the lodestar] upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941-42 (quotation omitted).

"Notably, the court may reduce a requested fee award, or deny one altogether, where a fee request appears unreasonably inflated." *Perez v. Safety-Kleen Sys., Inc.*, No. 05-5338, 2010 WL 934100, at *3 (N.D. Cal. Mar. 15, 2010), *aff'd* 448 F. App'x 707 (9th Cir. 2011); *see Chavez v. City of L.A.*, 47 Cal. 4th 970 (2010) (fees denied where fee request was "grossly inflated when considered in light of the single claim on which plaintiff succeeded [and] the amount of damages awarded on that claim"). Moreover, a district court "is not required to set forth an hour-by-hour analysis of the fee request," but rather "has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

**A. The Proposed Lodestar of $1.4 Million Is Not Reasonable.**

"The recovery of fees and costs" should not result in "a windfall." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1321 (2008). But Plaintiffs' lodestar of $1.4 million would lead to an unjustified financial boon for Plaintiffs' counsel.

**1. Plaintiffs engaged in duplicative and excessive billing.**

The California Supreme Court has directed trial courts to "carefully review attorney documentation of hours expended" because "'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). A court should also deduct for unnecessary or excessive billing entries. *See Saldana-Neily v. Taco Bell of Am., Inc.*, No. 04-4571, 2008 WL 793872, at *9-10 (N.D. Cal. Mar. 24, 2008). In making an adjustment for duplicative, excessive, or unnecessary billing, "a court is not required to set forth an hour-by-hour analysis of the fee request [but] may instead reduce the award on a percentage basis so long as there is a

1    concise but clear explanation of the court's reasons for choosing a given percentage

2    reduction." *Id.* at *10; *see also, e.g.*, *Giovannoni v. Bidna & Keys*, 255 F. App'x 124,

3    125-26 (9th Cir. 2007) (affirming "across-the-board" 50% reduction in requested fees).

4         The billing records submitted by Plaintiffs reflect countless inefficiencies,

5    duplication, and many instances of work that was unnecessary. For example, Plaintiffs'

6    counsel regularly sent three, four, five, or even *six* attorneys and/or paralegals to court

7    appearances (none of whom work in the Los Angeles area), and now seek reimbursement

8    for both each person's attendance and travel time (as well as travel expenses such as

9    airfare and hotel). In one instance, five attorneys and a paralegal attended the hearing on

10   September 29, 2011, one of whom billed 12.7 hours for travelling to and attending the

11   hearing (and all of whom billed at least 7.5 hours for the trip). *See* Time Entries, Dkt.

12   No. 285 at Ex. 1 ("TE") at 17, 34, 41, 47, 53; Dkt. No. 285 at Ex. 2 ("TE2") at 20. The

13   same five attorneys (with a different paralegal) again attended the April 12, 2012 hearing,

14   collectively billing 100 hours to prepare for, attend, and travel to the hearing, for which

15   they now request reimbursement of $112,681. *See* TE at 22, 37, 42, 50, 76; TE2 at 29.

16        Moreover, a number of billing entries are excessive or defy credibility. For

17   example, Greg Weston says he billed an astounding 23.8 hours in *one day* to prepare a

18   class certification brief. TE at 12 (5/12/11). Such Superman stamina was not out of the

19   norm. For example, he claimed to have billed 11 hours defending Plaintiff Red's

20   deposition (which lasted only 7 hours), while billing an additional 10.2 hours that same

21   day to a different case in which he submitted a fee motion. *Id.* at 10 (4/13/11); Ex. 8 at

22   20. Thus, Mr. Weston claims to have billed a total of 21.2 hours that day.[9]

23        Other lawyers and staff engaged in excessive billing as well. Chris Tanimasa

24   billed 21.7 hours to preparing a single deposition summary. TE at 68. Likewise, Mr.

25   _____

26   [9] Kraft Foods was able to obtain the Weston Firm's billing records in only one case, *In re*
     *Nucoa Real Margarine Litig.* The billing records in other cases were filed under seal. If
27   the Court is inclined to give credence to the Weston Firm's billing records, Kraft Foods
     requests that the Weston Firm be compelled to produce its billing records from other
28   cases to ensure accuracy in light of the evident red flags.

1  Fitzgerald billed 18 hours to preparing for, traveling to, and attending a hearing at which

2  he did not utter a single word. *Id.* at 29; *see also, e.g.*, *id.* at 30 (Fitzgerald billing 15

3  hours to attend a hearing at which he did not speak); *id.* at 49 (Persinger billing 8.8 hours

4  to cite-checking a reply brief); *id.* at 61-62 (Newberry billing 7 hours to prepare a

5  proposed order). And Plaintiffs' counsel collectively billed *over 300 hours* to preparing

6  the fee motion — more than any other brief filed in this case. *Id.* at 26-28, 40-41, 48, 50-

7  51, 64-67, 78-81, 82-84 (primarily vague entries, such as 46 hours billed by Fitzgerald to

8  ████████████████████████████████████████ *see id.* at 40-41).

9      Finally, Plaintiffs' counsel seeks reimbursement for many tasks that appear

10  unrelated to the litigation or unnecessary. For example, most of the time billed by Allen

11  Bradley was spent ████████████████████████ *Id.* at 81; *see also id.* at

12  42-43 ██████████████████████████████████████████████████████████

13  Similarly, Mr. Weston seeks reimbursement for an ██████████████████████████

14  ████████ *Id.* at 25. A number of billing entries also reflect time spent drafting discovery

15  that the Court had forbidden and briefing that was never submitted. *See, e.g.*, *id.* at 50; *id.*

16  at 3 (opposition brief never filed); *id.* at 80 (motion to compel never filed). And

17  Plaintiffs' counsel frequently billed their "attorney rate for work that should have been

18  performed by a nonlawyer as it was purely clerical or secretarial in nature." *Saldana-*

19  *Neily*, 2008 WL 793872, at *9.[10]

20      **2. A reduction is warranted for vague time entries and block-billing.**

21      "Counsel compounded the boldness of [improper] reimbursement requests with

22  vague billing entries" and block-billing that "obscured the nature of some of the work

23  claimed" — "a risky choice since the burden of proving entitlement to fees rests on the

24  moving party." *Christian Research*, 165 Cal. App. 4th at 1325. The block billing makes

25

26  ───────────────

27  [10] *See, e.g.*, TE at 3-7 (Weston billing for ████████████████████████████████████

28  ██████████████████████ ; *id.* at 35 (Fitzgerald billing for ████████████████████████
   ████████████████████████████ .

───────────────

22

1   it difficult "to determine whether there is excessive or unnecessary billing," or how much.

2   *Lafever v. Acosta*, No. 10-1782, 2011 WL 5416650, at *5 (N.D. Cal. Nov. 8, 2011).[11]

3   **3. The lodestar should take into account Plaintiffs' many unsuccessful**
4   **claims and failure to secure their primary goal.**

5          "If a plaintiff has prevailed on some claims but not others, fees are not awarded for

6   time spent litigating claims unrelated to the successful claims, and the trial court 'should

7   award only that amount of fees that is reasonable in relation to the results obtained."

8   *Chavez*, 47 Cal. 4th at 989.   Thus, for example, the California Supreme Court affirmed a

9   trial court's decision to "deny[] attorney fees altogether" where the prevailing plaintiff

10  sought $870,000 in fees notwithstanding that its "success was modest at best." *Id.* at 990-

11  91.   Similarly, the Ninth Circuit affirmed a 50% reduction to the proposed lodestar in

12  light of the plaintiffs' limited success. *Perez*, 448 F. App'x at 709.

13         Here, Plaintiffs seek reimbursement of fees incurred in all aspects of the case,

14  regardless of the outcome.   But they should not be awarded fees for time spent litigating

15  unsuccessful claims.   For example, Plaintiffs should not receive reimbursement of fees

16  incurred in seeking certification, since all such requests were denied.   *See Marlo*, 453 F.

17  App'x at 684 (deducting from lodestar fees incurred in seeking certification).[12]

18  _____

19  [11]   *See, e.g.*, TE at 37 (Fitzgerald billing 10 hours to ███████████████

20  ███████████████████████████████████████████████ *id.* at 42 (Creekmore

21  billing 7 hours to ████████████████████████████████

22  █████████████████████████████████.

23  [12] Plaintiffs' attorneys have also failed to meet their burden of showing that their proposed

24  rates are reasonable.   *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th
    Cir. 2009) (attorney affidavits alone are insufficient).   The evidence they do submit in

25  support of their rates is also flawed.   First, in the cases cited by Plaintiffs, the rates were

26  awarded as part of a settlement and were not disputed by the defendant.   Second, they
    rely on rates in cases in which the class received substantial monetary relief, providing a

27  crucial distinction.   *Cf. Camarillo v. City of Maywood*, No. 07-3469, 2011 WL 3665028,

28  at *7 (C.D. Cal. Aug. 22, 2011) (refusing to award rates approved in other cases
    involving plaintiff's counsel on the ground that they were distinguishable).   Third, they
    (Continued...)

OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS

**B. The Court Should Apply A Negative Multiplier.**

Once the Court has determined a lodestar, that figure "may be adjusted upward or downward." *Parkinson*, 796 F. Supp. 2d at 1170. Plaintiffs' counsel request a multiplier of 2.3, on the ground that they allegedly obtained "exceptional results," took on a "contingency risk," prosecuted a case "involve[ing] novel issues and difficult questions," and "showed skill." None of these alleged factors warrants the imposition of a 2.3 multiplier here. Indeed, the lodestar should be adjusted *downward*.

<u>First</u>, the Ninth Circuit recently held that the "contingency" factor "is no longer valid" and, thus, cannot support the imposition of a multiplier. *See Bluetooth Headset*, 654 F.3d at 942 n.7 . Further, a multiplier is not appropriate to compensate counsel for allegedly foregoing other employment because then "a multiplier would be appropriate in any lodestar type of case, since it is axiomatic that time spent by individual attorneys on one case prevents them from spending time on another." *Parkinson*, 796 F. Supp. 2d at 1175 (quoting *Robbins v. Alibrandi*, 127 Cal. App. 4th 438, 454 (2005)). <u>Second</u>, there should be no multiplier for the alleged complexity of the case because "the degree of counsel's skill is already built into the hourly rates requested and approved." *Id.* <u>Third</u>, there should be a downward multiplier because Plaintiffs have failed in most aspects of the case. "[I]n judging the plaintiff's level of success and the reasonableness of hours spent achieving that success, a district court should 'give primary consideration to the amount of damages awarded as compared to the amount sought.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2009) (quotation and citation omitted). In keeping with the Ninth Circuit's admonition that a fee award *must* be reduced "so that it is commensurate with the extent of the plaintiff's success" (*McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 808, 810 (9th Cir. 1994)), district courts routinely apply a negative multiplier to the lodestar amount to account for limited success.

---

rely on rates charged by attorneys who have had 30-40 years' experience and are from large national law firms with significant overhead. *Cf. id.* at *9.

1    Recent Ninth Circuit decisions have affirmed an 80% reduction of the lodestar in

2    cases where plaintiffs' counsel had a class certified or achieved at least *some* benefits for

3    the class.[13]  Here, Plaintiffs have failed completely in their objectives, and their requested

4    fees should be reduced more significantly (assuming they are even entitled to fees).

5    **C. Plaintiffs' Request Is Excessive Compared to Awards in Other Cases.**

6    In class action cases where the plaintiffs actually prevailed and obtained significant

7    benefits for the class, their attorneys received significantly less than the $3.3 million that

8    Plaintiffs' counsel demands.  *See Fulford v. Logitech, Inc.*, No. 08-2041, 2010 U.S. Dist.

9    LEXIS 144437 (N.D. Cal. Mar. 5, 2010) ($665,000 in fees where each class member

10   received replacement remote control); *Bronk v. Talarico*, 2007 Cal. App. Unpub. LEXIS

11   1540 (2007) ($115,000 where class certified for settlement); *see also Wilson v. Airborne,*

12   *Inc.*, No. 07-770, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ($3.4m in fees where

13   class certified with $23.25m settlement fund).  Further, Judge Morrow awarded the

14   Weston Firm only $435,000 in a case in which, *unlike here*, a settlement "provide[d] a

15   significant benefit to the class as a whole, with a recovery which, for some claimants, will

16   nearly equal the full price they paid for Nucoa during the class period."  Ex. 9.[14]

17   **CONCLUSION**

18   Kraft Foods respectfully requests that the Court deny Plaintiffs' motion in its

19   entirety.  Any award must be limited to a reasonable amount taking into account

20   Plaintiffs' extremely limited success on behalf of the putative class.

21   _____

22   [13] *Suzuki v. Hitachi Global Storage Techs., Inc.*, No. 06-7289, 2010 WL 956896, at *4-5

23   (N.D. Cal. Mar. 12, 2010), *aff'd* 434 F. App'x 695 (9th Cir. 2011) (reducing lodestar by
     approximately 80% in light of the "extremely minimal results obtained for the class");

24   *Lemus v. Burnham Painting & Drywall Corp.*, 426 F. App'x 543 (9th Cir. 2011)

25   (affirming 71% fee reduction where plaintiffs obtained only 36% of damages requested);
     *Hoffman v. Constr. Protective Servs., Inc.*, 2006 WL 6105640, at *4-5 (C.D. Cal. Dec. 21,

26   2006) (reducing lodestar by about 80% "to account for," *inter alia*, "Plaintiffs' limited

27   success [and] disproportionate recovery"), *enforced*, 431 F. App'x 601 (9th Cir. 2011).

28   [14] Plaintiffs seek costs under CCP section 1033.5, but "until a final judgment is entered . .
     . neither party is entitled to costs."  *Muller v. Reagh*, 179 Cal. App. 2d 814, 815 (1960).

1  Dated:  March 18, 2013                    JENNER & BLOCK LLP

2                                            /s/ Kenneth K. Lee
3                                            Attorneys for Defendants

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28