**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:  (619) 798-2006
Facsimile:   (480) 247-4553

**Lead Counsel for Plaintiffs**

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone:  (619) 696-9006
Facsimile:   (619) 564-6665

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EVANGELINE RED and RACHEL WHITT, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>KRAFT FOODS INC., KRAFT FOODS NORTH AMERICA, and KRAFT FOODS GLOBAL, INC.,<br><br>        Defendants. | Case No. 2:10-cv-01028 GW(AGRx)<br>Pleading Type: Class Action<br>Action Filed: February 11, 2010<br><br>**REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Judge:     The Hon. George Wu<br>Date:      April 8, 2013<br>Time:      8:30 a.m.<br>Location:  Courtroom 10 |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................. iii

INTRODUCTION ........................................................................................... 1

ARGUMENT ................................................................................................. 3

I.      PLAINTIFFS' FEE REQUEST IS REASONABLE ..................................... 3

        A.     Lead Counsel's Requested Rates Are Reasonable and *Below* Those Approved By Another Central District Court This Month ............................................................................... 4

        B.     With the Exception of a Typographical Error, Kraft's Specific Challenges to Lead Counsel's Billing Should be Rejected ............................................................................. 6

               1.    Kraft's Challenges to Specific Time Entries Should be Rejected .................................................................. 7

               2.    Kraft's Challenges to Lead Counsel's General Billing Practices Should be Rejected ...................................... 9

               3.    Kraft's Lawyers Engage in the Same Practices Over Which It Complains ............................................... 9

        C.     The Court Should Apply a *Positive* Multiplier ................................ 10

II.     KRAFT HAS NOT DISPUTED PLAINTIFFS' ENTITLEMENT TO FEES .............................................................................. 15

        A.     Plaintiffs are "Successful" and "Prevailing" Parties By Virtue of Obtaining the Permanent Injunction ................................. 15

        B.     The Lawsuit Was a Substantial Factor in Changes to Kraft's Business Practices Not Addressed in the Permanent Injunction ........................................................................ 17

        C.     The Remaining Elements of Section 1021.5 Are Satisfied .............. 21

i

1.   The Lawsuit Resulted in the Enforcement of an
     Important Right Affecting the Public Interest.........................21

2.   The Lawsuit Conferred a Significant Benefit on the
     General Public ........................................................................22

3.   The Necessity and Financial Burden of Private
     Enforcement Make a Fee Award Appropriate.........................23

CONCLUSION .................................................................................................25

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Advanced Micro Devices, Inc. v. Nat'l Semiconductor Corp.*,
   38 F. Supp. 2d 802 (N.D. Cal. 1999)............................................................................25

*Akins v. Enterprise Rent-A-Car Co. of San Francisco*,
   79 Cal. App. 4th 1127 (2000) ...................................................................................12

*Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany*,
   493 F.3d 110 (2d Cir. 2007) .......................................................................................7

*Armstrong v. Davis*,
   318 F.3d 965 (9th Cir. 2003) ...................................................................................11

*Barrios v. Cal. Interscholastic Fed'n*,
   277 F.3d 1128 (9th Cir. 2002) .................................................................................15

*Baxter v. Salutary Sportsclubs, Inc.*,
   122 Cal. App. 4th 941 (2004) ..................................................................................21

*Blum v. Stenson*,
   465 U.S. 886 (1984).....................................................................................................5

*Bowman v. City of Berkeley*,
   131 Cal. App. 4th 173 (2005) ..................................................................................15

*Brazil v. Dell Inc.*,
   2012 U.S. Dist. LEXIS 47986 (N.D. Cal. Apr. 4, 2012)...........................................13

*Broughton v. Cigna Healthplans*,
   21 Cal. 4th 1066 (1999) ...............................................................................................3

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2012).................................................................................3

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,
   532 U.S. 598 (2001).............................................................................................15, 17

*Cadkin v. Loose*,
   569 F.3d 1142 (9th Cir. 2009) .................................................................................15

iii

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

*Camarillo v. City of Maywood*,
  2011 U.S. Dist. LEXIS 93695 (C.D. Cal. Aug. 22, 2011) ...........................................4

*Carnegie v. Household Int'l Inc.*,
  376 F.3d 656 (7th Cir. 2004) ...................................................................................24

*Cates v. Chiang*,
  213 Cal. App. 4th 791 (2013) ..................................................................................12

*Charlebois v. Angels Baseball LP*,
  2012 U.S. Dist. LEXIS 91069 (C.D. Cal. May 30, 2012)..............................5, 6, 24

*Conservatorship of Whitley*,
  50 Cal. 4th 1206  (2010) .........................................................................................25

*Cruz ex rel. Cruz v. Alhambra Sch. Dist.*,
  601 F. Supp. 2d 1183 (C.D. Cal. 2009) ......................................................................5

*Ctr. for Biological Diversity v. Cal. Fish & Game Comm'n*,
  195 Cal. App. 4th 128 (2011) ..................................................................................21

*Davis v. San Francisco*,
  976 F.2d 1536 (9th Cir. 1992) ...................................................................................8

*Dvora v. Gen. Mills, Inc.*,
  2011 U.S. Dist. LEXIS 55513 (C.D. Cal. May 16, 2011).............................................2

*Edwards v. Princess Cruise Lines, Ltd.*,
  471 F. Supp. 2d 1032 (N.D. Cal. 2007)....................................................................16

*Elan Microelectronics Corp. v. Apple, Inc.*,
  2011 U.S. Dist. LEXIS 101761 (N.D. Cal. Sept. 9, 2011).........................................23

*Elster v. Friedman*,
  211 Cal. App. 3d 1439 (1989) .................................................................................16

*Envtl. Prot. Info Ctr. v. Pac. Lumber Co.*,
  229 F. Supp. 2d 993 (N.D. Cal. 2002)......................................................................17

*Estate of Trynin*,
  49 Cal. 3d 868 (1989) ...............................................................................................8

iv

*Farrar v. Hobby,*
  506 U.S. 103 (1992)...........................................................................................13

*Flitton v. Primary Residential Mortg., Inc.,*
  614 F.3d 1173 (10th Cir. 2010) ......................................................................9

*Fox v. Vice,*
  131 S. Ct. 2205 (2011)....................................................................................10

*Franco v. Ruiz Food Prods.,*
  2012 U.S. Dist. LEXIS 169057 (E.D. Cal. Nov. 27, 2012)..........................13

*Gallucci v. Boiron, Inc.,*
  2012 U.S. Dist. LEXIS 157039 (S.D. Cal. Oct. 31, 2012)...........................22

*Graham v. DaimlerChrysler Corp.,*
  34 Cal. 4th 553 (2004) ...........................................................................*passim*

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983)..............................................................................9, 10, 11

*Herson v. Richmond,*
  2012 U.S. Dist. LEXIS 49761 (N.D. Cal. Mar. 9, 2012) .............................20

*Hogar Dulce Hogar v. Cmty. Dev. Comm'n of the City of Escondido,*
  157 Cal. App. 4th 1358  (2007) .....................................................................18

*Hohlbein v. Utah Land Res. LLC,*
  467 Fed. App'x 715 (9th Cir. Feb. 2, 2012) .................................................13

*Holman v. Altana Pharma US, Inc.,*
  186 Cal. App. 4th 262 (2010) .......................................................................14

*Hopkins v. Stryker Sales Corp.,*
  2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013) .......................10, 13

*Hubbard v. SoBreck, LLC,*
  554 F.3d 742 (9th Cir. 2009) ........................................................................16

*In re Bluetooth Headset Prods. Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011) ........................................................................12

v

*Red et al. v. Kraft Foods Inc.,* Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

*In re Qunol CoQ10 Liquid Labeling Litig.*,
   2013 U.S. Dist. LEXIS 35066 (C.D. Cal. Mar. 13, 2013)......................................4, 13

*Karuk Tribe of N. Cal. v. Cal. Reg'l Water Quality Control Bd.*,
   183 Cal. App. 4th 330 (2010) ....................................................................21, 22

*Kim v. Euromotors West/The Auto Gallery*,
   149 Cal. App. 4th 170 (2007) ..............................................................................16

*Kim v. Space Pencil, Inc.*,
   2012 U.S. Dist. LEXIS 169922 (N.D. Cal. Nov. 28, 2012) .......................................14

*Lolley v. Campbell*,
   28 Cal. 4th 367 (2002) ..........................................................................................14

*Lucas v. White*,
   63 F. Supp. 2d 1046 (N.D. Cal. 1999).....................................................................5

*Lyons v. Chinese Hosp. Assn.*,
   136 Cal. App. 4th 1331 (2006) ..................................................................23, 24, 25

*Mangold v. Cal. Pub. Util. Comm'n*,
   67 F.3d 1470 (9th Cir. 1990) .................................................................................12

*Marine Forests Soc'y v. Cal. Coastal Comm'n*,
   160 Cal. App. 4th 867 (2008) ................................................................................15

*Marlo v. United Parcel Serv., Inc.*,
   No. 03-CV-4336-DDP, slip op. (C.D. Cal. Aug. 12, 2009) .................................9, 12

*Moreno v. Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ................................................................................7

*Muller v. Reagh*,
   179 Cal. App. 2d 814 (1960) .................................................................................25

*Paulson v. City of San Diego*,
   2007 U.S. Dist. LEXIS 43587 (S.D. Cal. June 13, 2007) ........................................20

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986)...............................................................................................11

*Perez v. Safety-Kleen Sys.*,
   2010 U.S. Dist. LEXIS 23612 (N.D. Cal. Mar. 15, 2010) .......................... 22

*Perez v. Safety-Kleen Sys.*,
   448 Fed. App'x 707 (9th Cir. 2011) .................................................. 12

*Posada v. Lamb County*,
   716 F.2d 1066 (5th Cir. 1983) ........................................................ 18

*Premier Commc'ns Network, Inc. v. Fuentes*,
   880 F.2d 1096 (9th Cir. 1989) .......................................................... 1

*Richard S. v. Dep't of Developmental Servs.*,
   317 F.3d 1080 (9th Cir. 2003) ........................................................ 16

*Robinson v. City of Chowchilla*,
   202 Cal. App. 4th 382 (2011) ......................................................... 25

*Sablan v. Dep't of Fin.*,
   856 F.2d 1317 (9th Cir. 1988) ........................................................ 18

*Seever v. Copley Press, Inc.*,
   141 Cal. App. 4th 1550 (2006) ........................................................ 14

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) ...................................................................... 4

*Shames v. Hertz Corp.*,
   2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012) ......................... 5

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
   506 F.3d 832 (9th Cir. 2007) ................................................. 15, 16, 19

*Smith v. CRST Van Expedited, Inc.*,
   2013 U.S. Dist. LEXIS 6049 (S.D. Cal. Jan. 14, 2013) .......................... 13

*Stivers v. Pierce*,
   71 F.3d 732 (9th Cir. 1995) ........................................................... 18

*Taylor v. Westly*,
   525 F.3d 1288 (9th Cir. 2008) ........................................................ 14

vii

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

*Tex. State Teachers Assn. v. Garland Indep. Sch. Dist.*,
   489 U.S. 782 (1989)............................................................................15

*Tipton-Whittingham v. City of Los Angeles*,
   316 F.3d 1058 (9th Cir. 2003) ...................................................15, 19

*Tipton-Whittingham v. City of Los Angeles*,
   34 Cal. 4th 604 (2004) ...............................................................15, 19

*Transbay Auto Serv. v. Chevron U.S.A., Inc.*,
   2013 U.S. Dist. LEXIS 31806 (N.D. Cal. Mar. 6, 2013) .....................9

*United States v. One 2008 Toyota Rav 4 Sports Utility Vehicle*,
   2012 U.S. Dist. LEXIS 158417 (C.D. Cal. Oct. 18, 2012) .................15

*United States v. San Francisco*,
   748 F. Supp. 1416 (N.D. Cal. 1990) ...................................................8

*Unocal Corp. v. United States*,
   222 F.3d 528 (9th Cir. 2000) .............................................................25

*Vasquez v. California*,
   45 Cal. 4th 243 (2008) .........................................................15, 19, 20

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ....................................................11, 13

*Woodland Hills Residents Assn., Inc. v. City Council*,
   23 Cal. 3d 917 (1979) ...................................................................4, 23

*Yeager v. AT&T Mobility, LLC*,
   2012 U.S. Dist. LEXIS 179842 (E.D. Cal. Dec. 19, 2012) .................11

*Yellow Cab. Co. v. Yellow Cab. Co. of Elk Grove, Inc.*,
   2006 U.S. Dist. LEXIS 89338 (E.D. Cal. Dec. 11, 2006).....................23

**Rules**

Cal. Code Civ. P. § 1032.......................................................................25

Cal. Code Civ. P. § 1032(a)(4) .............................................................25

viii

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

Cal. Code Civ. P. § 1033................................................................................25

Cal. Code Civ. P. § 1033.5.............................................................................25

Cal. Code Civ. P. § 1033.5(a)........................................................................25

Cal. Code Civ. P. § 527.6(h)..........................................................................16

Cal. Code Civ. P. § 527.6(r)...........................................................................16

*Red et al. v. Kraft Foods Inc.,* Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

# **INTRODUCTION**

While Kraft advances an exhaustingly one-sided view of this multi-year litigation in which *both* sides experienced periodic victories and set-backs, it largely ignores the only consequential fact on this fee motion: by Court Order, Plaintiffs have permanently enjoined Kraft from using the primary packaging phrases challenged in this lawsuit, bringing about a judicially-recognized change in the parties' legal relationship that inures, not only to Plaintiffs' benefit, but also that of absent Class Members, who did not even release claims against Kraft to obtain the relief. Kraft asserts that the Permanent Injunction is "relatively insignificant" relief, Opp. at 12 (quotation omitted), but the Court has already found otherwise:

- "[I]f in fact Defendants are willing to stipulate that they will not utilize these types of advertisements . . . . [t]hat's <u>more than what the Plaintiffs would otherwise get</u> I would think." June 6, 2012 Hrg. Tr. at 7.

- The permanent injunction is "<u>the best you're going to get</u> if you litigate the case anyway," July 2, 2012 Hrg. Tr. at 13.

- "[A]bsent class members <u>simply cannot obtain any more than a properly-worded court order would provide</u> . . . . Defendant is . . . offer[ing] to voluntarily submit to an order that provides <u>the best case scenario</u> that any proposed class could obtain." Oct. 11, 2012 Ten. Ruling, Dkt. 253 at 4 n.5.

Even Kraft—before the prospect of fees arose—agreed that the Permanent Injunction "covers the specific claims Plaintiffs made" and thereby provides "*complete relief* to the plaintiffs," Dkt. 251 at 3 (emphasis added, quotation marks omitted) (quoting *Premier Commc'ns Network, Inc. v. Fuentes*, 880 F.2d 1096, 1100-1101 (9th Cir. 1989)).

Obtaining this relief is all the more impressive considering that Kraft is a Fortune 50 company that enjoyed revenue over $54 billion in 2011, was long-parented by tobacco company Philip Morris and is run by former tobacco executives, and was represented by one of the country's preeminent national defense firms, while Plaintiffs are individual consumer volunteers and the Court has noted "the small size of the

1

Weston firm" and that "[t]he Marron firm is similarly small," Apr. 12, 2012 Ten. Ruling, Dkt. No. 212 at 16.

Kraft now pretends that its acquiescence to the permanent enjoinment of advertising phrases that helped greatly increase product sales—a point Kraft does not dispute—was inconsequential and unnecessary. The record belies these contentions.

Although it could have cut short the litigation by agreeing to such an Order earlier (and thereby obviated much of Lead Counsel's $1.4 million lodestar investment in prosecuting the action), Kraft instead vigorously litigated this case for three years. When the Court invited Kraft's agreement to the Order, it repeatedly declined. *See, e.g.*, July 2, 2012 Hrg. Tr. at 5 ("we don't think it's necessary"); Aug. 23, 2012 Ten. Ruling, Dkt. 245 at 2 ("defense counsel would not agree to any stipulated court order that would mandate Kraft's compliance with the Cooper Declaration" (record citation omitted)).

Only on the brink of class certification—after the Court had already found all Rule 23(a) factors satisfied, and when the Court held that "if *and only if* Kraft agrees to stipulate to a Court Order . . . would [it] find . . . many of Plaintiffs' claims moot" and thereby deny certification, Dkt. 245 at 4-5 (emphasis in original)—did Kraft finally, begrudgingly, consent to the Permanent Injunction.

And contrary to Kraft's assertion that "there was not a scintilla of evidence that Kraft Foods would ever resume using those phrases" now permanently enjoined, Opp. at 2, the Court has noted Kraft's habitual use of such health and wellness advertising:[1]

> • "[T]hat [Kraft] ceased voluntarily for one reason or another [using some challenged packaging statements] doesn't mean necessarily that that's mooted out in this particular context <u>especially given the number of times they have utilized this approach</u>." April 12, 2012 Hrg. Tr. at 6.

---

[1] In a similar consumer class action, the Court opined that it was "difficult to discount Plaintiff's contention that Defendant marketed its product in part to capitalize on 'current health conscious messages,'" and "sincerely hope[d] that such a ploy will not be rewarded in the marketplace," *Dvora v. Gen. Mills, Inc.*, 2011 U.S. Dist. LEXIS 55513, at *15 (C.D. Cal. May 16, 2011) (Wu, J.) (record citation omitted). This statement might just as easily apply to Kraft's behavior.

2

1    • "[T]he complained about statements that are raised by the Plaintiffs

2    are statements that periodically <u>have been raised on more than one occasion</u>

3    <u>by the Defendants as to various products and there's no indication that they</u>

4    <u>will not be raised in some form yet again</u>." June 6, 2012 Hrg. Tr. at 4.

5    • "[T]here is a <u>lack of a clear, unequivocal decision to cease using the</u>

6    <u>challenged labels</u>," Aug. 23, 2012 Ten. Ruling, Dkt. 245 at 3.

7    But it is the Court's requirement for a Court Order enjoining the use of the phrases,

8    notwithstanding assurances by Kraft's lawyers and officers that Kraft did not intend to

9    use them again, and over Kraft's strenuous objection, *see* Dkt. 245 at 4, that best

10   illustrates the Permanent Injunction's necessity.

11       Given this history, the Court has already indicated its belief that Plaintiffs are

12   entitled to fees. *See* Dec. 17, 2012 Hrg. Tr. at 6 ("I'm not talking about whether or not

13   you win or lose on attorneys fees; I'm just talking about the dollar figure. . . . That's the

14   aspect of what I'm questioning, not the merits of it."); Feb. 21, 2013 Hrg. Tr. at 5 ("It's

15   something between zero and 3-something million."). Accordingly, Plaintiffs address

16   Kraft's erroneous entitlement arguments only after first discussing the reasonableness of

17   the fee request. Aside from identifying one typographical error in Plaintiffs' 127 pages

18   of billing records, which Kraft treats with inappropriate sarcasm, Kraft has not identified

19   any aspect of Plaintiffs' fee and cost request that is erroneous or unreasonable.

20                                    <u>**ARGUMENT**</u>

21   **I.    PLAINTIFFS' FEE REQUEST IS REASONABLE**

22       "[C]ounsel . . . as a practical matter are the class's real champions." *Bruno v.*

23   *Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2012) (quotation omitted).

24   The California Legislature promulgated the fee-shifting statutes Plaintiffs invoke

25   precisely because fee awards to counsel are integral to the private enforcement of the

26   state's public policies. *See*, *e.g.*, *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066,

27   1086 (1999) ("the availability of costs and attorneys fees to prevailing plaintiffs is

28   integral to making the CLRA an effective piece of consumer legislation"); *Woodland*

3

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

*Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 933 (1979) ("privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions," and "without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible."); *Serrano v. Priest*, 20 Cal. 3d 25, 44-45 (1977).

Kraft argues that Plaintiffs' fee request is unreasonable, challenging Lead Counsel's rates, Opp. at 23 n.12, some specific time entries, *id.* at 20-23, and asserting that Lead Counsel's lodestar should be adjusted downward to account for Plaintiffs' "failures," *id.* at 24-25. None of these arguments is availing.

## A. Lead Counsel's Requested Rates Are Reasonable and *Below* Those Approved By Another Central District Court This Month

Lead Counsel's requested rates are identical to those twice approved in the Southern District of California last summer, and lower than those approved by the Honorable David O. Carter *this month*. *See In re Qunol CoQ10 Liquid Labeling Litig.*, 2013 U.S. Dist. LEXIS 35066, at *8-10 (C.D. Cal. Mar. 13, 2013) (approving rates of $680 for Mr. Marron, $550 for Mssrs. Weston and Fitzgerald, $400 for Ms. Resendes, and $315 for Ms. Persinger, each higher than requested here).[2]

In a footnote, Kraft nevertheless asserts that Lead Counsel "failed to . . . show[ ] that their proposed rates are reasonable," Opp. at 23 n.12 (citation omitted), raising four specific challenges: (1) the reasonableness of the requested rates is supported only by attorney affidavits; (2) the cases Lead Counsel cite for the reasonableness of its rates

---

[2] *See* Weston Reply Decl. ¶ 2 & Ex. 1. If these rates were applied here, Lead Counsel's lodestar would increase by $53,379.50, and, with the 2.3 multiplier requested, Plaintiffs' fee request by $122,722.85. *Camarillo v. City of Maywood*, 2011 U.S. Dist. LEXIS 93695 (C.D. Cal. Aug. 22, 2011), *see* Opp. at 23 n.12, is distinguishable because the rates Lead Counsel were awarded in *Ferrero*, *Gallucci*, and *Qunol* were for similar litigation. *Compare Camarillo*, 2011 U.S. Dist. LEXIS 93695, at *28-29 (detailing the ways in which earlier case awarding fees, on which fee request was based, was vastly different). Moreover, unlike here, where Lead Counsel were recently awarded *higher* rates than requested, in *Camarillo*, several attorneys had received rates significantly lower than their requested rates shortly before filing the fee application. *See id.* at *27.

4

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

involve awards pursuant to settlements where rates were not disputed by defendants; (3) the cases Lead Counsel cite involved classes that received monetary relief; and (4) Lead Counsel rely on rates charged by attorneys with 30-40 years' experience, from large national law firms. Kraft's "[c]onclusory and unsubstantiated objections are not sufficient to warrant a reduction in fees." *Lucas v. White*, 63 F. Supp. 2d 1046, 1057-58 (N.D. Cal. 1999).

Kraft's first argument is belied by its second and third, in which Kraft attempts to distinguish the *cases* Lead Counsel cites, and by the substance of Lead Counsel's supporting declaration. *See* Dkt. 274, Fitzgerald Decl. ¶¶ 9-25; *see also* Mot. at 15-16.

Kraft's next two arguments are misguided. Neither the context in which a rate is requested, the lack of an opposition, nor the relief obtained, is determinative of (or even a factor in) its reasonableness. Instead, reasonable rates are those "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

Finally, Kraft argues that Lead Counsel's rates should be lower than those billed by attorneys at large national defense firms, but "Defendants offer no authority to explain why the size of a firm or the firm's reputation renders comparisons to [Lead] Counsel inappropriate," and "[c]ourts have rejected similar arguments under similar fee-shifting statutes." *Charlebois v. Angels Baseball LP*, 2012 U.S. Dist. LEXIS 91069, at *22-23 (C.D. Cal. May 30, 2012) (citing *Cruz ex rel. Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1194-95 (C.D. Cal. 2009)). To the contrary, the applicable standard compares the fee applicant's rates to other *lawyers*, not other law firms, *id.* at *23, and "a rule requiring a comparison of firms would . . . artificially depress attorney fee awards, as few [public interest] firms can afford to employ hundreds of associates given the uncertainty of contingency-fee litigation," *id.* at *23-24. In addition, Lead Counsel's rates are *far lower* than typical rates at such law firms. *See*, *e.g.*, *Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577, at *60 (S.D. Cal. Nov. 5, 2012) ("'top billers' at five national firms charged between $1,025 and $1,250 per hour"); *Charlebois*, 2012 U.S.

5

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

Dist. LEXIS 91069, at *24. In point of fact, in a *2009* bankruptcy fee application, Kraft's attorneys, Jenner & Block, requested rates similar to, or higher than Lead Counsel's 2013 rates. *See* Weston Reply Decl. Exs. 2 (Fee Application at ii-iv), 3 (Examiner's Report at 6 ¶ 13).

## B.   With the Exception of a Typographical Error, Kraft's Specific Challenges to Lead Counsel's Billing Should be Rejected

To support their reasonable lodestar, Lead Counsel provided 127 pages of billing records, detailing more than 3,600 hours[3] worked over more than three years, by 17 timekeepers. Weston Decl. Exs. 1-2.[4] While Lead Counsel did their best to ensure the accuracy of these records, minor errors are nearly inevitable. Kraft has identified one such error. Opp. at 21 (noting Weston billing entry for 23.8 hours on May 12, 2011). This was clearly a typographical error, as the two entries for May 12, in the amount of 10.2 hours and 0.1 hours, are identical to the one entry for May 13, in the amount of 10.3 hours, and were accidently duplicated. This hardly deserves Kraft's sarcasm. *See* Opp. at 2 ("Herculean 23.8 hours in a *single day*"), 21 ("Superman stamina").[5]

While Plaintiffs concede the lodestar should be reduced by $5,407.50 (10.3 hours X $525/hour), the remainder of Kraft's complaints should be rejected.

---

[3] These records reflect Lead Counsel's "carefully review[ing] its hours and ma[king] cuts for time entry errors, duplications, and instances where Lead Counsel determined hours should be reduced or not billed." Mot. at 17 (citing Fitzgerald Decl. ¶ 27). Specifically, Lead Counsel cut 258 hours from its "raw" records when preparing its fee request, representing a self-imposed "haircut" of approximately 7% even before filing the application. Weston Reply Decl. ¶ 5. And Lead Counsel have not sought compensation for any hours billed after February 6, 2013, including on this Reply.

[4] In a footnote, Kraft calls an unrelated fee application of Plaintiffs' counsel in a different case "eerily similar" to this application, given a similar lodestar and multiplier request. *See* Opp. at 9 n.5. That case, *Henderson v. J.M. Smucker Co.*, was filed on June 18, 2010, four months after this case. That Lead Counsel incurred a similar lodestar in two cases prosecuted over the same three-year period only *confirms* that Lead Counsel's request here is reasonable, since it is consistent across both cases, and indeed slightly less on a per-month basis here given the later filing of *Henderson*.

[5] Kraft also challenges Mr. Weston's time spent defending Ms. Red's deposition given that he also worked on a class certification brief in another case the same day. Opp. at 21. This entry, however, is accurate. Weston Reply Decl. ¶ 6.

6

### 1.    *Kraft's Challenges to Specific Time Entries Should be Rejected*

"[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. . . . By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. Sacramento*, 534 F.3d 1106, 1112 n.2 (9th Cir. 2008). Kraft nevertheless challenges a handful of specific time entries. These challenges should be rejected.

First, Kraft asserts that sending multiple lawyers or paralegals (what Kraft calls "staff") to two major hearings (the September 29, 2011 and April 23, 2012 class certification hearings) was excessive. Opp. at 21.[6] This is not excessive, though because "a reasonable, paying client would expect to pay" for multiple attorneys to attend such important hearings. *See Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany*, 493 F.3d 110, 112 (2d Cir. 2007) (citation omitted).

Next, Kraft challenges the 21.7 hours a paralegal spent summarizing Amelia Strobel's deposition, which ran 6 hours and 55 minutes, with a dense, 263-page transcript. Opp. at 21-22. As the records reflect, Mr. Tanimasa spent two full days, and one half day, working on the document. This is not only not excessive, but an efficient use of time, as any attorney who has worked on deposition summaries would appreciate.

Kraft makes a similar challenge to Ms. Persinger's time spent cite checking a brief. Opp. at 22. This was necessary because Lead Counsel take their duty of candor seriously and do their best not to misrepresent the holdings or facts of the decisions on which they rely.

Kraft also challenges Mr. Fitzgerald's time preparing for and attending hearings at which another attorney presented oral argument. But this time was reasonable because the preparation of all attending attorneys, who may assist the presenter in evaluating Tentative Rulings and providing notes during argument, is a benefit to the Class.

---

[6] Earlier in its brief, Kraft contends that Plaintiffs "sent four, five, and even *six* attorneys and staff to attend ***each*** hearing . . . ." Opp. at 3 (bolded emphasis added). This is untrue, as some hearings were attended by only one or two attorneys, and no paralegals.

7

Similarly, Kraft challenges Mr. Bradley's work on a litigation website, and a media appearance of Mr. Weston's. Opp. at 22. These tasks kept absent class members informed, were directly related to the goals of the litigation and representation of Plaintiffs and the putative class, and are thus reasonable and compensable. *See United States v. San Francisco*, 748 F. Supp. 1416, 1423 (N.D. Cal. 1990).

Kraft also challenges an entry of Mr. Creekmore's concerning the "research[ing] [of] social networking metrics and compliance monitoring organizations," Opp. at 22, but does not appreciate the relevance of this entry. Mr. Creekmore was looking for such organizations to draft discovery requests concerning Kraft's communications with them. Weston Reply Decl. ¶ 7. This was reasonable.[7]

Kraft also identifies a few instances in which attorneys performed tasks that might have been performed by staff. Opp. at 22. These complaints are nitpicking and unreasonable. While Lead Counsel endeavored to assign such tasks to staff when possible, there were occasionally times that it was *not possible*, for example, on evenings and weekends. Even Kraft's lawyers undoubtedly performed some "non-lawyer" tasks throughout this multi-year litigation. This should not be punished when not excessive.

Finally, Kraft complains about the time spent on Plaintiffs' fee application, Opp. at 22, but given its thoroughness, the time spent was reasonable. In addition, Kraft could have settled this issue, as most reasonable defendants in its situation would, and thereby avoided Lead Counsel's investment in making this application, which is compensable. *Davis v. San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992); *Estate of Trynin*, 49 Cal. 3d 868, 874-75 (1989).

---

[7] Kraft contends that "[a] number of billing entries . . . reflect time spent drafting discovery that the Court had forbidden and briefing that was never submitted," Opp. at 22 (citing TE 3, 50, 80). These complaints are unwarranted. While Plaintiffs amended their Complaint rather than filing an Opposition to Kraft's first Motion to Dismiss, their work was incorporated into the Opposition filed in response to Kraft's Motion to Dismiss the First Amended Complaint. The "forbidden" discovery over which Kraft complains is the few fee-related discovery requests Plaintiffs sent Kraft, which the Court did *not* forbid (*see* Dkt. 286 at 4-5)—not merits discovery, as Kraft implies. Finally, page 80 of the Weston Firm's time records contains no reference to a motion to compel, as Kraft asserts.

8

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

### 2. *Kraft's Challenges to Lead Counsel's General Billing Practices Should be Rejected*

Kraft argues that Lead Counsel's lodestar should be reduced for "block billing" and "vague time entries." Opp. at 22. As Lead Counsel's billing records reflect, however, block billing was the exception, *see* Weston Decl. Exs. 1-2, and entries where time was so billed are not sufficiently vague to justify a reduction.

Similarly, the entries that Kraft complains are "vague" may be terse, but are not ambiguous. For example, Kraft provides no authority that when a lawyer spends a day drafting a brief, he need parse out the different tasks involved, for example, research versus writing. *Accord Hensley v. Eckerhart*, 461 U.S. 424, 437 n. 12 (1983) (counsel "is not required to record in great detail how each minute of his time was expended" but instead "should identify the general subject matter of his time expenditures"); *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1178-79 (10th Cir. 2010).

In the *Marlo* decision on which Kraft relies, a court in this District rejected similar arguments. *See* Lee Decl. Ex. 3, *Marlo v. United Parcel Serv., Inc.*, No. 03-CV-4336-DDP, slip op. at 24 (C.D. Cal. Aug. 12, 2009). *See also Transbay Auto Serv. v. Chevron U.S.A., Inc.*, 2013 U.S. Dist. LEXIS 31806, at *17 (N.D. Cal. Mar. 6, 2013) ("block billing . . . is permissible").

### 3. *Kraft's Lawyers Engage in the Same Practices Over Which It Complains*

Despite Kraft's challenges, and Plaintiffs' request that Kraft provide its attorneys' billing records for comparison, Kraft refused to provide, even confidentially, its lawyers' own records. But Jenner's 2009 fee application demonstrates that it engages in the same practices over which Kraft complains. The Examiner's Report (Weston Reply Decl. Ex. 3) notes that:

> • Jenner's request "include[s] days in which a single professional billed as many as 23.50 hours . . . including a timekeeper who billed 480.1 hours to this case for forty-one consecutive days," Rpt. at 7.

9

1       • Jenner billed "$150,000.00 . . . to daily status calls. . . . lasting an

2  hour or more attended by a dozen or more professionals," *id.* at 9, and had a

3  practice of "staffing events with multiple professionals," *id.* at 10.

4       • "Jenner professionals billed nearly $250,000 in charges for tasks that

5  that may have been clerical or administrative in nature," *id.* at 10, and billed

6  "$30,000.00 in fees for tasks performed by attorneys that might have been

7  properly assigned to a paralegal," *id.*at 12.

8       • Jenner engaged in some block billing. *Id.* at 12.

9  Nevertheless, the Examiner suggested no disallowance for these practices, finding them

10  relatively isolated, and reasoning that the lack of complete and error-free billing

11  perfection is not sufficient justification to cut time entries from a fee application. *See id.*

12  at 8-11.

13       "A request for attorney's fees should not result in a second major litigation."

14  *Hensley*, 461 U.S. at 437. If the Court finds any issues Kraft raises potentially

15  problematic, it should, respectfully, not reduce Lead Counsel's lodestar absent a finding

16  of pervasive problems. In comparison to the overall number of hours billed, Kraft's

17  challenges are relatively small, and "trial courts need not, and indeed should not, become

18  green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice,

19  not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

20       **C.**    **The Court Should Apply a *Positive* Multiplier**

21       Kraft argues that the Court should, first, reduce Lead Counsel's lodestar to "take

22  into account Plaintiffs' many unsuccessful claims," then after doing so, apply an

23  *additional* negative multiplier to reduce the lodestar *again*, for the same reason. Opp. at

24  23-25. While such a double-reduction is wholly baseless, no reduction is warranted at

25  all. To the contrary, Lead Counsel's lodestar should be enhanced by the 2.3 multiplier

26  sought. "Multipliers of 1 to 4 are commonly found to be appropriate in complex class

27  action cases." *Hopkins v. Stryker Sales Corp.*, 2013 U.S. Dist. LEXIS 16939, at *12

28  (N.D. Cal. Feb. 6, 2013) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6

10

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

(9th Cir. 2002) (finding that, in approximately 83 percent of surveyed cases, multiplier was between 1.0 and 4.0 with a "bare majority . . . 54% . . . in the 1.5 – 3.0 range")).

Kraft's assertion that Lead Counsel's lodestar should be reduced depends upon its erroneous equation of "claims" with "challenges." Claims are causes of action, of which Plaintiffs alleged three: violations of the UCL, FAL, and CLRA. All were for Kraft's false advertising, and all sought the injunctive relief embodied in the Permanent Injunction. While some of Plaintiffs' specific *challenges* to particular phrases were unsuccessful for one reason or another, the U.S. Supreme Court has explained this is an insufficient basis on which to reduce fees:

> In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the ligation.[8] [¶] Where a plaintiff has obtained excellent results, . . . . the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.

*Hensley*, 461 U.S. at 435; *see also Yeager v. AT&T Mobility, LLC*, 2012 U.S. Dist. LEXIS 179842, at *11-14 (E.D. Cal. Dec. 19, 2012) (rejecting similar argument where "one discreet act by defendant formed the factual predicate or each of plaintiff's

---

[8] Time is reasonably expended on the litigation when it is "useful and of the type ordinarily necessary to secure the final result obtained from the litigation." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (internal citations and quotation marks omitted); *see also Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003) (in awarding fees, the court should determine "whether the work product . . . was both useful and of a type ordinarily necessary to advance the . . . litigation").

11

claims"); *Marlo*, slip op. at 31.[9] Moreover, California law "does not require the detailed parsing of attorney labor that Defendant demands." *Perez v. Safety-Kleen Sys.*, 448 Fed. App'x 707, 708 (9th Cir. 2011) (Mem.) (citations omitted); *see also Akins v. Enterprise Rent-A-Car Co. of San Francisco*, 79 Cal. App. 4th 1127, 1133 (2000).

Kraft also questions Plaintiffs' enhancement factors. *See* Opp. at 24; *compare* Mot. at 18-25. Relying on a footnote in *Bluetooth*, Kraft contends that "the 'contingency' factor 'is no longer valid,'" Opp. at 24 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 n.7 (9th Cir. 2011)). This statement is difficult to reconcile with the *Bluetooth* court's earlier statement, in the body of its decision (not a footnote), that "the risk of nonpayment" justifies enhancement. *See* 654 F.3d at 942 (quotation omitted). Reconciliation is unnecessary, however, because the award in *Bluetooth* was based on the parties' *contract*, *see id.* at 941, not on California's fee-shifting statutes invoked here, which the *Bluetooth* court does not discuss. Regardless of how federal law treats contingency risk, California law—which the Court is obligated to apply, *see* Mot. at 7-8[10]—still contemplates its application in enhancing a fee award. *See*, *e.g.*, *Cates v. Chiang*, 213 Cal. App. 4th 791, 824-25 (2013); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004); *compare Mangold*, 67 F.3d at 1478 (noting federal law does not permit contingency risk multiplier, while state law does).[11]

---

[9] Kraft's reliance on *Marlo* is misplaced. *See* Opp. at 13, 23. Even the most generous reading does not support Kraft's assertion that the *Marlo* court held "a plaintiff could not recover fees incurred in his unsuccessful attempt to certify a class." *Id.* at 13. Instead, the *Marlo* court discounted time spent *solely* on class issues only because the relief obtained was personal to Marlo, and offered no benefit to the class. *See Marlo*, slip. op. at 25. By contrast, the Permanent Injunction inures to the benefit of the entire proposed class, and was a direct result of Lead Counsel's efforts to obtain class certification, and Kraft's efforts to avoid it. *See* Dkt. 245 at 4-5.

[10] *See also Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1990) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees." (citations omitted)); *id.* at 1478-79 (district court did not err in applying 2.0 multiplier to fee award based on contingency risk and exceptional result).

[11] Kraft also asserts that Lead Counsel's foregoing other employment, and the degree of skill exhibited, are inappropriate grounds for enhancement, based solely on the non-

12

Kraft also ignores the excellent result the Permanent Injunction represents. "[T]here is a high value to [such] injunctive relief . . . . New labeling practices affecting hundreds of thousands of [products] per year . . . bring a benefit to class consumers, the marketplace, and competitors who do not mislabel their products." *Qunol CoQ10 Liquid Labeling Litig.*, 2013 U.S. Dist. LEXIS 35066, at *10; *see also Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986, at *4 (N.D. Cal. Apr. 4, 2012) ("The structural changes to Dell's marketing practices resulting from this litigation, particularly Dell's elimination of allegedly false representations . . . conferred a benefit on both the class members and the public at large." (citing *Vizcaino*, 290 F.3d at 1049 ("Incidental or nonmonetary benefits conferred by the litigation are a relevant circumstances [in considering the reasonableness of fee awards.]"))).

While *Qunol* and *Dell* involved excellent results because of the defendants' agreement to cease the allegedly deceptive advertising, this action involves two additional benefits. As explained by Dr. Wong, and unchallenged by Kraft except for attorney argument in a footnote, the cessation of Kraft's false advertising will reduce sales of its unhealthy products and thereby promote a societal *health* benefit, and corresponding macroeconomic benefit, not present in *Qunol* and *Dell*. In addition,

binding decision in *Parkinson*. The first factor, however, was included in the section of Plaintiff's Motion on contingency risk. *See* Mot. at 19-21; *compare Franco v. Ruiz Food Prods.*, 2012 U.S. Dist. LEXIS 169057, at *59 (E.D. Cal. Nov. 27, 2012) (multiplier of lodestar justified by contingency risk, delay, and preclusion of other employment). And while the *Parkinson* court may have believed that the novelty, difficulty, and skill of counsel was subsumed in the lodestar of counsel in that case, other courts have enhanced fee awards in recognition of this factor. *See, e.g., Hopkins*, 2013 U.S. Dist. LEXIS 16939, at *13 ("In light of . . . the skill required in conducting this litigation properly, the Court believes that a multiplier of 2.76 is justified."); *accord Hohlbein v. Utah Land Res. LLC*, 467 Fed. App'x 715, 716 (9th Cir. Feb. 2, 2012) (Mem.) ("In deciding whether to enhance or reduce the lodestar figure, the court considers . . . the novelty and difficulty of the questions involved, . . . [and] the skill requisite to perform the legal service properly . . . ." (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *Smith v. CRST Van Expedited, Inc.*, 2013 U.S. Dist. LEXIS 6049, at *12 (S.D. Cal. Jan. 14, 2013) (California law permits enhancement "based on, among other factors, the quality of representation, the novelty and complexity of the issues, the results obtained, and the contingent risk present" (citation omitted)).

13

1    Plaintiffs obtained the Permanent Injunction without a single absent class member
2    releasing any claim against Kraft, an unusual result. Enhancement is especially
3    warranted where, as here, the relief obtained "prevents Defendant from engaging in the
4    conduct that was the subject of the suit and does not bind the class members," thereby
5    presenting an "unmitigated benefit to the class" that "justifies the requested fee award
6    and multiplier." *Kim v. Space Pencil, Inc.*, 2012 U.S. Dist. LEXIS 169922, at *22 (N.D.
7    Cal. Nov. 28, 2012). And while the modifications to Kraft's behavior not embodied in
8    the Permanent Injunction but prompted by the lawsuit are not necessary for Plaintiffs'
9    entitlement to fees, these additional benefits above and beyond the Court Order, *see* Mot.
10   at 5, add to the action's excellent results and benefits.

11          Finally, the Court should consider the parties' widely disparate resources, and the
12   deterrent value of a substantial fee award, in determining an appropriate fee. "[W]hen
13   two competing parties possess vastly disparate economic resources, this may require the
14   trial courts to 'scale' the financial incentives . . . to the parties' respective resources."
15   *Holman v. Altana Pharma US, Inc.*, 186 Cal. App. 4th 262, 284 (2010) (quoting *Seever*
16   *v. Copley Press, Inc.*, 141 Cal. App. 4th 1550, 1562 (2006)); *c.f. Taylor v. Westly*, 525
17   F.3d 1288, 1290 (9th Cir. 2008) (directing the district court to award fees where "the
18   disparity in litigation resources between the parties . . . create[d] a considerable risk of
19   starving out plaintiffs" who obtained a preliminary injunction). Moreover, the Court
20   denied the certification of a substantial damages class essentially because Kraft's
21   behavior was pervasive, affecting manageability. Plaintiffs' fee request, by comparison,
22   is miniscule, only 0.0006% of one year of Kraft's revenue. Since Kraft has avoided the
23   deterrence of direct financial liability to consumers, the Court should apply the requested
24   multiplier. *Accord Lolley v. Campbell*, 28 Cal. 4th 367, 375 (2002) (the "realization that
25   the opposing party, although poor, has access to an attorney and that an attorney's fee
26   may be awarded deters noncompliance with the law" (quotation omitted)).

27
28

14

## II.   KRAFT HAS NOT DISPUTED PLAINTIFFS' ENTITLEMENT TO FEES

### A.   Plaintiffs are "Successful" and "Prevailing" Parties By Virtue of Obtaining the Permanent Injunction

Federal courts universally hold that a plaintiff who secures a judicially-recognized change in her legal relationship to a defendant has prevailed for purposes of entitlement to fees. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) ("court-ordered consent decrees create the 'material alteration of the legal relationship' of the parties' necessary to permit an award of attorney's fees" (quoting *Tex. State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) (citations omitted))); *Cadkin v. Loose*, 569 F.3d 1142, 1148 (9th Cir. 2009) ("the key inquiry is whether some court action has created a 'material alteration of the legal relationship of the parties'" (quoting *Buckhannon*, 532 U.S. at 604)); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 843 (9th Cir. 2007); *Tipton-Whittingham v. City of Los Angeles*, 316 F.3d 1058, 1061-63 (9th Cir. 2003); *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002); *United States v. One 2008 Toyota Rav 4 Sports Utility Vehicle*, 2012 U.S. Dist. LEXIS 158417, at *8 (C.D. Cal. Oct. 18, 2012) ("the touchstone is whether the parties' legal relationship has changed under judicial imprimatur"). The same is true of California courts. "In cases where judicial relief was obtained, it is sufficient if the plaintiff achieved partial success or succeeded on *any* significant issue in the litigation which achieved *some* of the benefit the plaintiff sought in bringing the suit." *Marine Forests Soc'y v. Cal. Coastal Comm'n*, 160 Cal. App. 4th 867, 878 (2008) (emphasis in original) (citing *Bowman v. City of Berkeley*, 131 Cal. App. 4th 173, 177-78 (2005)); *see also Vasquez v. California*, 45 Cal. 4th 243, 247, 259-61 (2008); *Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604, 608 (2004); *Graham*, 34 Cal. 4th at 575.

Wholly ignoring this ubiquitous authority Plaintiffs cited, Mot. at 10-11 & n.5, Kraft argues that Plaintiffs "lost" based on a purported success standard set forth in *dicta* in *Kim v. Euromotors West/The Auto Gallery*, a 2007 California Court of Appeal case

15

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

1  quoting a 1989 case, *Elster*, which did not involve the fee-shifting statutes invoked here,

2  and whose definition of "prevailing plaintiff" has since been rejected.[12] *See* Opp. at 9

3  (quoting *Kim*, 149 Cal. App. 4th 170, 179-80 (2007) (quoting *Elster v. Friedman*, 211

4  Cal. App. 3d 1439, 1443-44 (1989)). Moreover, contrary to Kraft's assertion, *Kim* never

5  holds that "the only way Plaintiffs can plausibly seek attorneys' fees is if they can show

6  that they realized their litigation objective and achieved 'most or all of what [they]

7  wanted by filing the action.'" Opp. at 10 (citing 149 Cal. App. 4th 179-80, but omitting

8  *Kim's* quotation of *Elster*). Instead, *Kim* merely noted in *dicta* how other courts had

9  previously analyzed "prevailing plaintiff" under various statutes—only one of which

10 Kraft cherry-picks for discussion—without adopting any particular definition. *See* 149

11 Cal. App. 4th at 181. Kraft's reliance on *Kim* is also misplaced because that case

12 concerned a private settlement agreement. *Id.* at 174-75, 180-81. Thus, at best, *Kim*

13 "defines who is a 'successful party' in cases," unlike this one, "in which 'litigation does

14 not result in a judicial resolution.'" *See Skaff*, 506 F.3d at 843 (quoting *Graham*, 34 Cal.

15 4th at 560). *Compare Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1087

16 (9th Cir. 2003) ("Contrary to the argument advanced by defendants, prevailing party

17 status is not determined by degree of success achieved.").

18    Given the Permanent Injunction and applicable law, Kraft's arguments are

19 misguided. It complains that Plaintiffs "take credit for Kraft's business decision to stop

20 using certain phrases . . . . [b]ut that decision had *nothing* to do with Plaintiffs' lawsuit."

21

---

22 [12] *Elster* involved a fee award under Cal. Code Civ. P. § 527.6(h) (now § 527.6(r) ),

23 which provides that "[t]he prevailing party in any action brought under this section may

   be awarded court costs and attorney's fees, if any." *See* 211 Cal. App. 3d at 1443. As the

24 *Kim* court explained, in construing the statute's term, "prevailing party," the *Elster* court

   "looked to the definition contained in the more general Code of Civil Procedure section

25 1032." 149 Cal. 4th at 179; *see also Elster*, 211 Cal. App. 3d at 1443. More

   recently, however, "California courts have rejected the notion that section 1032 defines

26 the term 'prevailing party' for all purposes. A prevailing party who is entitled to costs

   under § 1032 is not necessarily entitled to fees under a fee shifting statute." *Edwards v.*

27 *Princess Cruise Lines, Ltd.*, 471 F. Supp. 2d 1032, 1033-34 (N.D. Cal. 2007); *see also*

   *Hubbard v. SoBreck, LLC*, 554 F.3d 742, 746 (9th Cir. 2009); Mot. at 9-10 (discussing

28 standards actually applicable in the absence of a judicial resolution).

16

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

Opp. at 11. But the timing of, and impetus behind Kraft's "voluntary" changes is irrelevant. What matters is the enforceable legal rights conferred on Plaintiffs by the Permanent Injunction. *C.f. Envtl. Prot. Info Ctr. v. Pac. Lumber Co.*, 229 F. Supp. 2d 993, 1004 (N.D. Cal. 2002) ("[A] defendant acting in accordance with a court order cannot be presumed to be acting gratuitously. . . . [D]efendants could have been held in contempt had they continued [the enjoined practice] in contravention of the court order. Thus, plaintiffs' efforts resulted in a court-ordered change in the relationship between the parties, supporting compensation under *Buckhannon*." (quotation omitted)).

Similarly, it makes no difference that Kraft agreed to the Permanent Injunction to avoid a merits decision, a point on which its brief harps. *See* Opp. at 3-4, 10-11, 13. "Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered 'change [in] the legal relationship between [the plaintiff] and the defendant.'" *Buckhannon*, 532 U.S. at 604 (internal citation and quotation omitted). And while there has been no determination so far that the enjoined phrases are deceptive, neither has the Court or a jury found the packaging innocuous.

## B.   The Lawsuit Was a Substantial Factor in Changes to Kraft's Business Practices Not Addressed in the Permanent Injunction

Although obtaining the Permanent Injunction alone renders Plaintiffs "prevailing" under the CLRA, entitling them to fees, and "successful" under Section 1021.5, entitling them to fees if they satisfy that statute's remaining elements, Plaintiffs are also successful because their lawsuit caused changes to challenged business practices not embodied in the Permanent Injunction. Mot. at 11-12. Kraft argues that these successes do not support a fee award because "(1) Plaintiffs never requested a change in ingredients, (2) there is no order requiring Kraft Foods to reformulate its products, and (3) the Court held that the ingredients in question (*e.g.*, trans fat, white flour) could not serve as a basis for an actionable claim." Opp. at 13-14. Kraft also (4) disputes satisfaction of Section 1021.5's "necessity" requirement in light of the catalyst theory Plaintiffs invoke. *See id.* at 14-15 n.7. Each of these arguments is erroneous.

17

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

Given that Plaintiffs sought an order enjoining Kraft from using the challenged health and wellness claims *so long as the products contained the ingredients at issue*, *see* Dkt. 58, SAC at 57 (Prayer for Relief), Kraft's first argument is misguided.[13] Kraft's second argument is unavailing because proceeding under a catalyst theory necessarily means there is "no order requiring" the change in conduct prompted by the lawsuit.[14] Kraft's third argument misrepresents the record. *See* Sept. 16, 2010 Ten. Ruling, Dkt. 59 at 1-2; Nov. 4, 2010 Ten. Ruling, Dkt. 67 at 1; Jan. 13, 2011 Ten. Ruling, Dkt. 79 at 1. Kraft's fourth argument is also erroneous, but requires a more detailed discussion.

In *Tipton-Whittingham*, the Ninth Circuit, in light of the U.S. Supreme Court's decision in *Buckhannon*, certified to the California Supreme Court the question of

---

[13] Although for catalyst theory "it can be difficult to prove causation . . . . [, w]hen action is taken by the defendant after plaintiff's lawsuit is filed the chronology of events may permit the inference that the two events are causally related." *Californians for Responsible Toxics Management v. Kizer*, 211 Cal. App. 3d 961, 968 (1989) ["*Kizer*"] (citation omitted). "Importantly, the catalyst theory does not require that [a plaintiff]'s litigation be the only cause of defendant's acquiescence." *Hogar Dulce Hogar v. Cmty. Dev. Comm'n of the City of Escondido*, 157 Cal. App. 4th 1358, 1365 (2007). "If plaintiff's lawsuit 'induced' defendant's response or was a 'material factor' or 'contributed in a significant way' to the result achieved then plaintiff has shown the necessary causal connection." *Kizer*, 211 Cal. App. 3d at 967 (citations omitted). While Kraft disputes whether these changed business practices were a "key 'litigation objective'" of Plaintiffs', Opp. at 14, Kraft does *not* dispute the causal connection between the lawsuit and the changes described. *See* Mot. at 5, 11-12. Moreover, given the chronology, Plaintiffs are entitled to a presumption of causality, which Kraft did not even try to rebut. *See Kizer*, 211 Cal. App. 3d at 968; *Posada v. Lamb County*, 716 F.2d 1066, 1072 (5th Cir. 1983) ("Clues to the provocative effects of the plaintiffs' legal efforts are often best gleaned from the chronology of events: defendants, on the whole, are usually rather reluctant to concede that the litigation prompted them to mend their ways."); *c.f. Sablan v. Dep't of Fin.*, 856 F.2d 1317, 1326 (9th Cir. 1988).

[14] To the extent this argument can be interpreted as challenging the "merit" prong of catalyst theory, *see Graham*, 34 Cal. 4th at 575, this is erroneous. A lawsuit has merit for purposes of catalyst theory if it "is not 'frivolous, unreasonable or groundless,'" *id.* (quoting *Stivers v. Pierce*, 71 F.3d 732, 752 n.9 (9th Cir. 1995)). In such cases, "[t]he determination the trial court must make is not unlike the determination it makes when asked to issue a preliminary injunction, i.e., *not a final decision on the merits* but a determination . . . that the questions of law or fact are grave and difficult." *Id.* at 575-76 (emphasis added, internal quotations and citations omitted). Given that many of Plaintiffs' claims survived dismissal despite several rounds of Kraft's challenges, there has been a sufficient demonstration of merit.

18

whether attorneys' fees may be awarded under Section 1021.5 where there is no judicially-recognized change in the parties' legal relationship but the plaintiff has been the "catalyst" in bringing about relief sought by the litigation. *See* 316 F.3d at 1060. Responding, in 2004 the California Supreme Court decided the companion cases of *Graham* and *Tipton-Whittingham*, holding that, in order to obtain fees on a catalyst theory without a judicially-recognized change in the parties' legal relationship, a party must establish, *inter alia*, that "the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." *Graham*, 34 Cal. 4th at 561, 577, 594; *Tipton-Whittingham*, 34 Cal. 4th at 608. In *Graham*, the court explained this requirement is directly related to Section 1021.5's "necessity . . . of private enforcement" element. 34 Cal. 4th at 577.

Four years later, the court revisited this issue in *Vasquez*, in which it held that the requirement of a prelitigation attempt to settle did not apply where fees are awarded based on a judicially-recognized resolution. *See* 45 Cal. 4th at 253-54; *see also Skaff*, 506 F.3d at 843. In rejecting the defendant's argument that the absence of a prelitigation attempt to settle should bar Section 1021.5 fees in all cases, the *Vasquez* court explained that the statute "does not expressly or by necessary implication require that the plaintiff have attempted to settle the dispute; it requires, instead, only that the court determine that private enforcement was sufficiently necessary to justify the award." 45 Cal. 4th at 251-52. After a thorough discussion of *Graham* and post-*Graham* decisions demonstrating the lack of a categorical requirement for a prelitigation settlement attempt, the *Vasquez* court explained that, "[i]n *Graham*, we simply identified a set of cases at one end of the equitable spectrum that appeared to justify a bright-line rule because, in those cases, no court-ordered change in the parties' legal relationship exists to show that the public benefit supposedly meriting fees was caused by plaintiff's litigation," *Id.* at 259.

In sum, the requirement has everything to do with Section 1021.5's "necessity" element. Consistent with this reasoning, the element is satisfied where a plaintiff "has been diligent in trying to secure a settlement rather than prolong the litigation." *Paulson*

19

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

1  *v. City of San Diego*, 2007 U.S. Dist. LEXIS 43587, at *10 (S.D. Cal. June 13, 2007)

2  (describing *post-filing* settlement negotiations).

3          Relying on *Graham* and its progeny, Kraft argues that Plaintiffs may not recover

4  fees for such success because "they failed to make a reasonable attempt to settle their

5  dispute with Kraft Foods prior to filing this lawsuit," Opp. at 14 n.7 (citations omitted),

6  which Kraft contends may not be "excused 'based on *ex post* allegations of futility,'" *id.*

7  at 15 n.7 (quoting *Herson v. Richmond*, 2012 U.S. Dist. LEXIS 49761, at *7 (N.D. Cal.

8  Mar. 9, 2012)). Contrary to *Herson*, however, *Vasquez* strongly indicated that *Graham's*

9  requirement for a prelitigation attempt to settle—which exists only to ensure the

10  satisfaction of Section 1021.5's "necessity" prong—might admit an exception for

11  futility, since "the claim that settlement efforts would have been futile is logically

12  relevant to a trial court's determination of the question whether private enforcement was

13  sufficiently necessary to justify an award of fees." 45 Cal. 4th at 259 n.5.

14          Much of this discussion is academic given Plaintiffs' success obtaining the

15  Permanent Injunction. To the extent Plaintiffs may also be considered successful for

16  prompting additional changes to Kraft's business practices, however, the Court should,

17  respectfully, "admit an exception for futility" to the requirement for a prelitigation

18  attempt to settle. Kraft did not respond to Plaintiffs' CLRA demand letter calling for

19  Kraft to "initiat[e] a process to refund monies paid to you by all Americans who

20  purchased your products . . . in the past ten years," Lee Decl. Ex. 4, CLRA Letter at 2.

21  Moreover, Plaintiffs attempted to settle the action early on, through mediation. Then,

22  and over the next several years, Kraft refused to even *entertain* a classwide settlement.

23  Weston Reply Decl. ¶ 8. In fact, the first time Kraft made even an *individual* offer was

24  during the December 17, 2012 hearing. *See* Dec. 17, 2012 Hrg. Tr. at 3. But Kraft would

25  not even honor that offer, instead sending a letter two days later demanding that Lead

26  Counsel "set forth what you believe are the named plaintiffs' damages in this case . . . ."

27  Weston Reply Decl. Ex. 4. These facts demonstrate the futility of any prelitigation

28  attempt to settle.

20

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

C.      **The Remaining Elements of Section 1021.5 Are Satisfied**

       1.      ***The Lawsuit Resulted in the Enforcement of an Important Right Affecting the Public Interest***

Kraft argues that the Preliminary Injunction did not "enforce" an important public right, because it had supposedly stopped the offending business practices voluntarily. Opp. at 16. Besides misrepresenting the facts—while Kraft had stopped using *some* enjoined phrases on *some* products, others were continuing, *see*, *e.g.*, Aug. 23, 2012 Ten. Ruling, Dkt. 245 at 3—this argument misses the import of the Permanent Injunction, which enjoins Kraft from engaging in practices that it otherwise was free to resume.

Kraft's reliance on *Karuk Tribe of N. Cal. v. Cal. Reg'l Water Quality Control Bd.*, 183 Cal. App. 4th 330 (2010), Opp. at 16, is misplaced.[15] In *Karuk*, plaintiffs asked the Water Quality Control Board to enforce California's law governing waste discharge, which the Board declined based on earlier litigation holding such attempts preempted. *See* 183 Cal. App. 4th at 334-35. In rejecting plaintiffs' request, the Board made "'a thoughtful and well-reasoned determination' concerning its lack of authority to enforce state law," *id.* at 335 (quoting lower court decision without citation), which the lower court believed was sufficient to justify fees. The appeals court overturned the fee, however, because "[t]he best that can be said for the unorthodox proceedings that occurred here is that the Board . . . augmented the reasoning behind its decision that it

---

[15]  *Baxter v. Salutary Sportsclubs, Inc.*, 122 Cal. App. 4th 941 (2004) is also distinguishable. *See* Opp. at 17. There, the trial court held a significant right had not been vindicated because the health club contracts at issue "failed to comply with [applicable] law" only in "limited respects," the Plaintiff had "never even visited one of defendant's clubs," and no one had suffered any damage, since there was no evidence "to establish the enforcement or attempted enforcement of the nonconforming contractual language against a member who is a signatory to a nonconforming contract." *See* 122 Cal. App. 4th at 946. The conduct challenged in *Baxter* thus presents no competent analogy to Kraft's behavior, which affected millions of Americans over a ten-year period, greatly increasing Kraft's sales of the accused products. *See* Mot. at 5-6. And *Ctr. for Biological Diversity v. Cal. Fish & Game Comm'n*, 195 Cal. App. 4th 128 (2011), *see* Opp. at 17, is distinguishable as holding that there was no *enforcement* of an important public right, even though the lawsuit *implicated* such a right. *See* 195 Cal. App. 4th at 139-41.

21

was without authority to grant the private parties' request that it enforce state law." *Id.* Thus, plaintiffs did not obtain the relief they requested, and fees should not have been awarded because the Board merely "polish[ed] up and augment[ed] the recitals and reasoning supporting a decision" *denying* the plaintiffs' requested relief "that was already more than legally sufficient." *Id.* at 336. In sum, as the court explained, "[t]he Board [c]orrectly [d]etermined [t]hat [i]t [h]ad [n]o [a]uthority to [g]rant the [r]elief [s]ought by Plaintiffs." *Id.* at 342. As a result, the court determined that the "impact [of the lawsuit] can only be described as nil." *Id.* at 365.

Had this Court believed that the impact of a Permanent Injunction would be "nil," it would not have required a Court Order, but instead found mootness based on Kraft's assurances alone. But that did not happen. Instead, the Court noted Kraft's propensity for the accused behavior, the weakness of its officers' assurances that it will not occur in the future, and Kraft's attempt to evade the Court's instructions for an Order by initially proposing something substantially less than what its officers promised. Thus, contrary to Kraft's argument, the entrance of an Order enjoining Kraft from engaging in deceptive labeling easily satisfies this element of Section 1021.5. *See, e.g.*, *Gallucci v. Boiron, Inc.*, 2012 U.S. Dist. LEXIS 157039, at *25 (S.D. Cal. Oct. 31, 2012); *Perez v. Safety-Kleen Sys.*, 2010 U.S. Dist. LEXIS 23612, at *19 (N.D. Cal. Mar. 15, 2010).

### 2.    *The Lawsuit Conferred a Significant Benefit on the General Public*

Kraft argues that the Permanent Injunction does not confer a "significant benefit" on the public because it had supposedly decided to stop using some enjoined phrases before the lawsuit. Even if this were true, the Permanent Injunction imposes a *legal obligation* on Kraft to refrain from using the accused advertising, which presents the public with a far stronger assurance of freedom from deception than Kraft's ceasing the use of some phrases temporarily, but being free to revive them at any time.

In a footnote, Kraft calls Dr. Wong's Declaration a "sham." Opp. at 18 n.8. But while Kraft pays lip service to *Daubert*, it does not attempt to demonstrate how or why Dr. Wong's analysis is mistaken or unreliable. "Attorney argument is not adequate to

22

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

raise a *Daubert* issue, and thus, there is no basis for exclusion of [an expert's] testimony under *Daubert*." *Yellow Cab. Co. v. Yellow Cab. Co. of Elk Grove, Inc.*, 2006 U.S. Dist. LEXIS 89338, at *6-7 (E.D. Cal. Dec. 11, 2006); *accord Elan Microelectronics Corp. v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 101761, at *9 (N.D. Cal. Sept. 9, 2011). Moreover, that Plaintiffs did not make personal injury claims, *see* Opp. at 18 n.8 (citing Lee Decl. Exs. 5-6) does not undermine the significant public health benefits—and corresponding macroeconomic benefits—of decreased trans fat consumption.

### 3. The Necessity and Financial Burden of Private Enforcement Make a Fee Award Appropriate

Kraft challenges the satisfaction of Section 1021.5's "necessity and financial burden of private enforcement" prong on the basis that prospective incentive awards for Plaintiffs, and prospective fees for their attorneys, provided "sufficient financial incentive" to bring the lawsuit. Opp. at 18-19. These arguments are easily dispelled.

Under this prong of Section 1021.5, "fees are recoverable 'when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter."'" *Lyons v. Chinese Hosp. Assn.*, 136 Cal. App. 4th 1331, 1348 (2006) (quoting *Woodland Hills*, 23 Cal. 3d at 941 (quotation omitted)). When evaluating this requirement, courts "consider 'the *estimated value* of the case at the time the vital litigation decisions were being made,'" because "the purpose of section 1021.5 is to encourage public interest litigation by offering the 'bounty' of a court-ordered fee" and "the focus of that incentive is on the point in time when vital litigation decisions are being considered." *Id.* at 1352-53 (emphasis in original).

Plaintiffs' "individual stake in the matter"—what they spent on the Kraft snacks, representing their maximum individual recovery—is far out of proportion to the $1.4 million in fees and $18,000 in costs spent prosecuting the action. Thus, Plaintiffs are not "litigants motivated by their own pecuniary interests who only coincidentally protect the public interest," *id.* at 1348 (quotation omitted), and their personal stake did not

23

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

"exceed[] by a substantial margin the actual litigation costs," *id.* at 1353 (quotation omitted), meaning "a fee award [is] appropriate," *id.* Nor was "the enforcement of the public interest . . . merely 'coincidental to the attainment of [Plaintiffs'] personal goals,'" *id.* at 1351 (quotation omitted). As Judge Posner wrote, "only a lunatic or fanatic sues for $30," *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Plaintiffs are not lunatics or fanatics, but volunteers who brought this suit in the public interest, rather than for personal financial gain.[16]

For its argument that the prospect of an indeterminate, unguaranteed incentive award gave Plaintiffs sufficient financial incentive to bring suit, Kraft's record citation is disingenuous. *See* Opp. at 19 (citing Dkt. 253 at 4). The Court's October 11, 2012 Tentative Ruling merely noted Plaintiffs' argument that a prospective incentive award provided a financial interest in *certification* notwithstanding Kraft's mooting their claims pre-certification. This does not suggest that potential incentive awards gave Plaintiffs compelling financial incentive to *file suit*. Moreover, the prospect of an indeterminate incentive award, typically no more than a few thousand dollars in consumer class actions *if* successful and *if* awarded by the Court, is *still* disproportionate to the costs of prosecuting the case. *See Charlebois*, 2012 U.S. Dist. LEXIS 91069, at *8 ("[T]he financial burden prong is satisfied because the $18,000 that Plaintiff seeks as his enhancement fee is not sufficient incentive to take on this litigation, which spanned two years" (citation omitted)).

Furthermore, contrary to Kraft's argument, Opp. at 19, this Section 1021.5 element has nothing to do with the financial motivations of the *attorneys* who prosecute a case. Every attorney expects to be compensated fairly for his or her work, but Section 1021.5 focuses only on the *plaintiff's* financial burden.[17] And "the California Supreme

---

[16] A plaintiff "can be expected to have some concrete personal interest in the issue being litigated," and still recover fees, and "[a] pecuniary interest in the outcome of the litigation is not disqualifying." *Lyons*, 136 Cal. App. 4th at 1351-52 (citation omitted).

[17] Kraft's argument also renders Section 1021.5 self-defeating. Lead Counsel had an expectation that they would be compensated, if successful, precisely because Section

24

*Red et al. v. Kraft Foods Inc.*, Case No. 2:10-cv-01028 GW (AGRx)
REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

1    Court [has] indicated that the necessity of private enforcement [prong] require[s] courts

2    to consider only one fact—the availability of public enforcement." *Robinson v. City of*

3    *Chowchilla*, 202 Cal. App. 4th 382, 401 (2011) (citing *Conservatorship of Whitley*, 50

4    Cal. 4th 1206, 1217 (2010)); *see also Lyons*, 136 Cal. App. 4th at 1348 (citation

5    omitted). Here, it is undisputed that "no government action was being taken to vindicate

6    [Plaintiffs'] rights," and "[t]herefore, private enforcement was [Plaintiffs'] only realistic

7    way to enforce [their]" rights. *See Robinson*, 202 Cal. App. 4th at 401.[18]

8                                   **CONCLUSION**

9         Plaintiffs respectfully request that the Court award fees of $3,286,499.90

10   (representing Lead Counsel's $1,428,913 adjusted lodestar (as noted in Section I.B),

11   with a 2.3 multiplier) and $18,132.56 in costs.[19]

12

---

13   1021.5 provides for fee-shifting. According to Kraft, the existence of Section 1021.5

14   thereby obviates the need for it. In other words, "attorneys' fees are not necessary here,"
     Opp. at 2, because the potential for obtaining fees is sufficient financial incentive to

15   bring the suit. *Id.* at 19. That makes no sense, and is ultimately erroneous. *See Lyons*,
     136 Cal. App. 4th at 1351 ("Nor does the fact that the case was pursued on a

16   contingency fee basis undercut a plaintiff's attorney fee claim . . . .").

17   [18] The cases on which Kraft relies are distinguishable. *Unocal Corp. v. United States*,
     222 F.3d 528 (9th Cir. 2000) was a lawsuit brought by the owner of a ruptured pipeline

18   to recover *$4 million* in clean-up costs. *Id.* at 531. *Advanced Micro Devices, Inc. v. Nat'l*
     *Semiconductor Corp.*, 38 F. Supp. 2d 802 (N.D. Cal. 1999) also involved a plaintiff

19   seeking "recovery of its cleanup costs," *id.* at 815. By contrast, Plaintiff's claims are for

20   the recovery of small amounts spent on inexpensive retail items.

21   [19] Relying on a 1960 decision, in an argument relegated to a one-sentence footnote, Kraft
     asserts that the Court may not award costs under Cal. Code Civ. P. § 1033.5 "until a

22   final judgment is entered," Opp. at 25 n.14 (quoting *Muller v. Reagh*, 179 Cal. App. 2d

23   814, 815 (1960)). *Muller*, however, involved a different statute (§ 1033, which governs
     the discretionary award of costs "where judgment could have been rendered in [a]

24   limited civil case," not § 1032, the statute Plaintiffs invoke, which provides for the
     "[r]ecovery of costs by [a] prevailing party *as a matter of right*." *See* Cal. Code Civ. P. §

25   1032(a)(4) (statutory title quoted, emphasis added). Although Plaintiffs' Motion could

26   have more clearly invoked § 1032, they twice cited § 1033.5 as a basis for obtaining
     costs, Mot. at 1, 25, which provides that certain enumerated items "are allowable as

27   costs *under Section 1032*," Cal. Code Civ. P. § 1033.5(a) (emphasis added). Moreover,
     *Muller* is distinguishable because, unlike here, the plaintiff had not secured any relief,

28   but instead improperly moved for costs after the defendant successfully moved for a
     mistrial. 179 Cal. App. 2d at 814-15.

                                         25

1   DATED: March 28, 2013

2                                                 Respectfully Submitted,

3                                                 /s/Gregory S. Weston
                                                  Gregory S. Weston

4                                                 **THE WESTON FIRM**
5                                                 GREGORY S. WESTON
                                                  JACK FITZGERALD
6                                                 MELANIE PERSINGER
7                                                 1405 Morena Blvd., Suite 201
                                                  San Diego, CA 92110
8                                                 Telephone:  (619) 798-2006

9                                                 **LAW  OFFICES  OF  RONALD
                                                  A. MARRON, APLC**
10                                                RONALD A. MARRON
11                                                SKYE RESENDES
                                                  ALEXIS M. WOOD
12                                                3636 4th Street, Suite 202
13                                                San Diego, CA 92103
                                                  Telephone:  (619) 696-9006

14                                                **<u>Lead Counsel for Plaintiffs</u>**

15

16

17

18

19

20

21

22

23

24

25

26

27

28