# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-1028-GW(AGRx) | Date | April 8, 2013 |
| Title | *Evangeline Red, et al. v. Kraft Foods, Inc., et al.* | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Deborah Parker | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

   Ronald A. Morrow
   Gregory S. Weston
   John J. Fitzgerald

Attorneys Present for Defendants:

   Kenneth K. Lee

**PROCEEDINGS:**     PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS (filed 02/08/13)

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Plaintiffs' motion is TAKEN UNDER SUBMISSION. Court to issue ruling. Defendants will file a proposed judgment forthwith.

 

:    30

Initials of Preparer    JG

*Evangeline Red, et al. v. Kraft Foods, Inc. et al.*, Case No. CV-10-1028-GW (AGRx)
Tentative Ruling on Plaintiffs' Motion for Attorneys' Fees and Costs

*\*\*\* Presently, this tentative ruling has been distributed only to the parties. Some of the documentation submitted in connection with these motions was filed under seal. Should either party wish this tentative ruling redacted so as to maintain the confidentiality of sealed material, such request should be made to the Court at the hearing. Otherwise, this Order will be publicly docketed. \*\*\**

## I. Background

Plaintiffs Evangeline Red and Rachel Whitt (collectively, "Plaintiffs") filed this putative class action suit against Kraft Foods Inc. ("Defendant" or "Kraft") on February 11, 2010, alleging that the labeling on certain Kraft snacks is deceptive and misleading. *See generally* Docket No. 1. Plaintiffs alleged that Kraft failed to disclose that some of its food contained trans fat and falsely marketed products such as Teddy Grahams, Ritz Crackers and Graham Crackers as healthy in spite of their allegedly unhealthy, highly-refined, highly-processed, and nutritionally empty ingredients. *See generally* Docket Nos. 1, 27, 58.

Plaintiffs' original complaint sought, in part, an order compelling Kraft to "cease marketing the Kraft Products and using the misleading tactics complained of" in the lawsuit. *See* Complaint, Docket No. 1, ¶ 7. The primary focus of Plaintiffs' lawsuit was the contention that Kraft was using "various methods to represent that Kraft Products, which contain artificial *trans* fat, . . . [was] not harmful to the cardiovascular system." *Id.* at ¶ 6; *see also* ¶¶ 13-77. On April 7, 2010, Kraft moved to dismiss the Complaint, in part, on the grounds that: (1) Plaintiffs' claims were preempted by the "comprehensive federal system of regulation," (2) Kraft's products complied with applicable federal regulations regarding trace amounts of trans fat and other labeling requirements, and (3) the alleged misleading language on the packaging cited by Plaintiffs were either true (and hence not objectively misleading) and/or were mere puffery (and hence non-actionable). *See* Docket No. 17 at 10 of 34. On May 2, 2010, Plaintiffs were given leave to file a First Amended Complaint ("FAC"), which rendered the motion moot. *See* Docket No. 26.

The factual allegations and causes of action in the FAC were substantially similar to those in the original Complaint. *Compare* Docket Nos. 1 and 27. On May 26, 2010, Kraft re-filed its Motion to Dismiss. *See* Docket No. 29. On June 24, 2010, this Court took the matter under submission after issuing a "tentative ruling" which held that Plaintiffs' claims of mislabeling and/or misleading language on Kraft's packaging as to "0 trans fat," "no cholesterol," and "whole grain" were preempted by federal law. *See* Docket No. 36. However, because no cause of action could be dismissed in its entirety (*see id.* at 8 of 14), Kraft was allowed to file a Motion to Strike, which it did on July 8, 2010. *See* Docket No. 37. On July 26, 2010, this Court issued a "tentative ruling" which granted the Motion to Strike in part (*see* Docket No. 40), and later issued a final ruling to that effect, but allowing Plaintiffs leave to file a Second Amended Complaint ("SAC"). *See* Docket No. 59.

On September 16, 2010, Plaintiffs filed the SAC, which contained the same causes of action as the prior pleadings (but which substituted the term partially hydrogenated vegetable oil ("PHVO") in place of trans fat) and which included averments as to Kraft's labeling of its Teddy Grahams,

Honey Maid Grahams, Premium Saltines, Vegetable Thins, Ginger Snaps, and Ritz Crackers products as false and misleading under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"). *See, e.g.,* SAC ¶¶ 5-6, 175-86, Docket No. 58. Kraft again moved to dismiss on October 1, 2010, and this Court denied the motion without prejudice because, although the causes of action again contained allegations/claims which were preempted and/or insufficient, no cause of action could be dismissed in its entirety. *See* Docket Nos. 63 and 67. Kraft filed another Motion to Dismiss the SAC on December 7, 2010, with the same ruling being issued on January 13, 2011. *See* Docket Nos. 76 and 79.

On three separate occasions, this Court rejected Plaintiffs' attempts to certify a class. *See* Docket Nos. 145, 216, 258. First, Plaintiffs sought certification as a 23(b)(3) class for monetary damages. In its initial denial of Plaintiffs' motion for class certification, the Court concluded that there was no commonality or ascertainable class under Rule 23(a) and expressed doubt as to the adequacy of Plaintiffs' ability to represent class members. Docket No. 145 at 8-10. The Court also suggested that Plaintiffs' requests for monetary relief would necessitate "individualized inquiries regarding the amount of damages for each class member," making class certification inappropriate. *Id.* at 16. In its second denial of Plaintiffs' motion to certify a class, the Court again held that the class was not ascertainable and that "the 23(b)(3) predominance requirement" was not met "due to concerns regarding manageability and the inevitability of individualized damages calculations." Docket No. 212 at 15.[1] However, the Court allowed Plaintiffs to amend their motion to seek class certification of injunctive relief claims under Rule 23(b)(2). Docket Nos. 216-218.

In responding to Plaintiffs' subsequent motion to certify the proposed injunctive relief class, Kraft argued that because it was no longer using certain challenged health and wellness labels – and had no plans to use them in the future – Plaintiffs claims were effectively moot. Docket No. 221 at 5-7. The Court initially indicated it was inclined to reject this argument – which was originally based on a declaration submitted by Kraft's corporate counsel – and consider certifying the Rule 23(b)(2) class. Docket No. 232 at 7. Before doing so, however, the Court ordered the parties to meet and confer "to determine the extent to which defendant voluntarily agrees not to utilize in the future the labels and marketing/advertising language that plaintiffs challenge in this suit." *Id.* at 1.

The parties failed to reach a resolution, but shortly thereafter Kraft submitted a declaration of Kraft Senior Vice President Jay Cooper indicating that "Kraft Foods has no intention of using and will not be using" certain challenged health and wellness claims on certain "packaging, advertising, or marketing material at any time in the future." Docket No. 233. Following Kraft's submission, the Court concluded that the Cooper Declaration would likely be "sufficient to support the reasonable expectation that the challenged labels will never be used again" and "would definitely find Defendants' position sufficient if Kraft would agree to abide by a Court order to the effect that it would not use the disputed labeling in the future." Docket No. 234 at 1. At the Court's invitation, Plaintiffs filed papers in which they argued that Cooper's declaration was insufficient to moot their claims without the entry of an enforceable order against Kraft. Docket No. 235 at 24-25, Docket No. 244 at 4-7. Plaintiffs also argued that, even with an order, many of their claims would not be moot.

---

[1] After this second ruling, Plaintiffs appealed the order denying certification of a damages class, arguing to the Ninth Circuit that a Rule 23(b)(2) class for injunctive relief was "insufficient consolation." The Ninth Circuit denied that petition. *See* Docket No. 237.

*See Id.*

On August 23, 2012, the Court distributed a tentative order rejecting Kraft's argument that the Cooper Declaration, standing alone, was sufficient to moot Plaintiffs' claims. Docket No. 245 at 3-6. Instead, the Court held that "if *and only if* Kraft agree[d] to stipulate to a Court Order unconditionally mandating its compliance with the Cooper Declaration" would many of Plaintiffs remaining claims be rendered moot. *Id.* at 5.[2] On September 6, 2012, Kraft submitted a proposed injunctive order, which the Court rejected as placing improper limitations and conditions on the behavior enjoined. Docket No 247, Docket No. 253 at 2-3. On October 17, Kraft submitted a new proposed order to address these shortcomings. Docket No. 255.

On October 25, 2012, the Court issued an order (to which Kraft voluntarily agreed) prohibiting Kraft from using the phrases "Sensible Snacking," "Sensible Solution," "Help Support Kids' Growth and Development," and "Smart Choices" on the packaging for a number of the challenged products. Docket No. 260 at 3-4. As such, the Court determined that "Plaintiffs' [remaining] claims encompassed in [the relevant proposed subclasses]" had become moot and thus denied class certification as to the injunctive relief claims for those subclasses. Docket No. 258 at 2. The Court also held that the "two non-mooted" subclasses proposed by Plaintiffs (relating to the use of the phrase "Made with Real Vegetables") failed as a matter of law because the challenged "true" phrases were not "affirmative misrepresentation[s]," and not likely to deceive a reasonable consumer. Docket No. 258 at 3-5.

Plaintiffs filed the instant motion for attorneys' fees and costs on February 8, 2013, arguing that, "[g]iven the Court's Order permanently enjoining Kraft from using the primary packaging phrases challenged, Plaintiffs are 'prevailing and 'successful' parties entitled to reasonable fees" under California's Consumer Legal Remedies Act ("CLRA") – Cal. Civ. Code § 1780(e) – and California's Private Attorney General Statute – Cal. Code Civ. P. § 1021.5. *See* Docket No. 272, at 11. Plaintiffs ask the Court to award a total of $3,298,937.15 in fees and $18,132.56 in costs. *Id.* at 24, 35.

## II. Legal Standards

### A. Attorneys' Fees Under the CLRA

The CLRA provides that the "court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." Cal. Civ. Code § 1780(e). While the CLRA does not define "prevailing plaintiff," courts have held that a CLRA plaintiff "prevails" in litigation if it (1) "obtain[s] a net monetary recovery" or (2) "realize[s] its litigation objectives." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1169 (C.D. Cal. 2010) (quoting *Kim v. Euromotors West/The Auto Galery*, 149 Cal. App. 4th 170, 179 (2007). "[I]n deciding prevailing party status under the CLRA, 'the court should adopt a pragmatic approach, determining prevailing party status based on which party succeeded on a practical level. Under that approach, the court exercises its discretion to determine the prevailing party by analyzing which party realized its litigation objectives.'" *Kim*, 149 Cal. App. 4th at 179 (quoting *Graciano v. Robinson Ford Sales, Inc.*, 144

---

[2] Separately, this Court acknowledged that, while Kraft decided to stop using a number of the challenged statements before the initiation of this lawsuit, at least one of the challenged labels was used until March 2012, well after the filing of Plaintiff's complaint. Docket No. 245 at 3-4.

-3-

Cal. App. 4th 140, 150 (2006)).

### B. Attorneys' Fees Under California's Private Attorney General Statute

"Under the so-called private attorney general statute [Cal. Code Civ. Proc. § 1021.5], a court may award attorney fees to the successful party in an action that has resulted in the enforcement of an important right affecting the public interest." *Vasquez v. State*, 45 Cal. 4th 243, 247 (2008). A court may award fees only if, after "a practical and realistic assessment of the litigation," it determines that (1) plaintiffs were a "successful party;" (2) that the lawsuit "resulted in (a) enforcement of an important right affecting the public interest and (b) a significant benefit to the general public or a large class of persons, and (3) the necessity and financial burden of private enforcement of the important right make an award of fees appropriate." *Karuk v. Cal. Reg'l Water Quality Control Bd.*, 183 Cal. App. 4th 330, 363 (2010); *Parkinson*, 796 F. Supp. 2d at 1169. "[W]ithin the statutory parameters courts retain considerable discretion." *Vasquez*, 45 Cal. 4th at 251. "In deciding whether to award fees, the court 'must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory.'" *Id.* (quoting *Woodland Hills Residents Assn., Inc. v. City Council* 23 Cal. 3d 917, 938 (1979)). The burden is on the claimant to establish each prerequisite to an award of attorney fees under § 1021.5. *Ryan v. California Interscholastic Fed'n*, 94 Cal. App. 4th 1033, 1044 (2001), *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Mkts.*, 127 Cal. App. 4th 387, 401 (2005).

### C. Fee Calculation and Costs

Under both Ninth Circuit and California law, courts have discretion to use the lodestar method to calculate reasonable attorneys' fees. *Parkinson*, 796 F. Supp. 2d at 1170 (citing *Ryan*, 94 Cal. App. 4th at 1044). A determination of reasonableness involves a two-step process. First, the court calculates the "lodestar" figure by "multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Second, "the court may adjust [the lodestar] upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth*, 654 F.3d at 941-42 (citation omitted). "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." *Serrano v. Unruh*, 32 Cal. 3d 621, 635, (1982); *accord Ketchum v. Moses*, 24 Cal. 4th 1122, 1137 (2001).

Cal. Code Civ. Proc. 1033.5 authorizes recovery of costs including court fees, service of process fees, witness fees, and expenses associated with deposition travel. *Bonner v. Fuji Photo Film*, (N.D. Cal. Feb. 12, 2008); *Parkinson*, 796 F. Supp. 2d at 1176. The court also has the discretion to award reimbursement for other costs if they are "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation."[3] *Id.* (quoting §

---

[3] Similarly, Fed. R. Civ. P. 54(d)(1) states that "[u]nless a federal statute, [the Federal Rules], or a court order provides otherwise, costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

1033.5(c)(2)).

### III. Analysis

Kraft argues that Plaintiffs are not "prevailing" or "successful" within the meaning of California's CLRA or Cal. Code Civ. Proc. §1021.5 because they "(i) failed to recover a single cent, (ii) failed in three attempts at class certification, and (iii) failed to obtain any court order finding that the labels were deceptive or directing Kraft Foods to change any of its labels or ingredients." Def. Opp., Docket No. 290, at 8. Kraft argues that its agreement to "an order affirming its prior public statement that it would not use a few statements, many of which had been discontinued *before* this lawsuit was even filed" does not justify an award of attorneys' fees. *Id.* at 9. Kraft also contends that the lawsuit did not confer any benefit on the public and that attorneys' fees are not necessary to encourage protection of the public. *Id.* at 25-26. In addition, Kraft maintains that Plaintiffs' attempt to "usurp credit for Kraft Foods' recent voluntary decisions to change the formulation of some of its products" had nothing to do with this lawsuit. *Id.* at 9, 21 n.7. Finally, Kraft asserts that Plaintiffs' request for $3.3 million in fees is unreasonable. *Id.* at 26-33.

#### A. Plaintiffs' Entitlement to Fees

As referenced above, courts use a "pragmatic approach" in determining "prevailing party status [under the CLRA] based on which party succeeded on a practical level." *Kim,* 149 Cal. App. 4th at 179. "It is settled that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes [under the CLRA] if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Graciano,* 144 Cal. App. 4th at 153 (quotation omitted). Similarly, "the California Supreme Court has 'taken a broad, pragmatic view of what constitutes a 'successful party'" under § 1021.5. *Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 565 (2004). "[A] party need not prevail on every single claim to be considered a successful party within the meaning of [§ 1021.5]." *Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399, 1437 (2009) (citation omitted).

Using the pragmatic approach required by California law, the Court would conclude that Plaintiffs are "prevailing" and "successful" in that they have obtained *some* of "the sought after injunctive relief – *i.e.*, a court order that would prohibit Kraft's use of the challenged packaging." Docket No. 258 at 2. Plaintiffs' original complaint sought to compel Kraft to "cease marketing the Kraft Products using the misleading tactics complained of" in the lawsuit. Compl., Docket No. 1, ¶ 7. Their subsequent pleadings also sought to enjoin the use of allegedly misleading labels on a number of Kraft products. *See, e.g.,* SAC at Prayer for Relief.[4] From a practical standpoint, there is little doubt that the modification of Defendant's labels was a "significant issue" in the litigation. Because the Court issued a permanent injunction prohibiting Kraft Foods from using certain phrases on its packaging, Plaintiffs have necessarily prevailed or succeeded on an issue which achieves at least some of the benefit Plaintiffs sought in bringing this suit.

Nevertheless, the Court also finds that Plaintiffs did not prevail on the primary claims upon which this lawsuit was initially based, *i.e.* the purported misleading nature of Defendant's food

---

[4] During their depositions, Plaintiffs Red and Whitt also testified that they wanted Kraft to "take out labels that are not honest" and "get rid of those labels." Docket No. 132 at 12-13, Docket No. 132-1 at 10-11.

packaging due to the presence of minor amounts of trans fat in the referenced Kraft products and the impact of trans fats on much of the misleading language which was the focus of this action. *See* Docket No. 145 at 2 of 6.[5] Further, this Court never certified this matter as a class action. Additionally, even though Kraft wass required to agree to an injunction, this Court found that Kraft had "decided to stop using a number of the challenged [packaging] statements *before* this lawsuit was ever filed." *See* Dockets nos. 242 at 6 and 245 at 4 of 9 9emphasis in original). Consequently, even though Kraft had agreed to an injunction, there is no evidence that the injunction caused Kraft to stop utilizing that challenged language. *See* "Order Confirming Defendant's Decision not to Use Certain Phrases on Future Packaging" ("Order") Docket No. 249. Finally, the Court found that the Order mooted out 8 of the 10 proposed subclasses that Plaintiffs were pursuing at that point in the litigation, *see* Docket No. 245, and the Court subsequently ruled that Plaintiffs remaining two subclasses failed as a matter of law. *See* Docket No. 249.

Defendant argues that the Court's injunction is, in effect, "of little consequence" because Kraft Foods was merely "agree[ing] to an order reaffirming its prior statement that it would not use the statements it had already decided to stop using." Def. Opp. at 18-19. But "the key inquiry is whether some court action has created a 'material alteration of the legal relationship of the parties.'" *Cadkin v. Loose*, 569 F.3d 1142, 1148 (9th Cir. 2009) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)); *United States v. One 2008 Toyota Rav 4 Sports Utility Vehicle*, No. CV 09-5672-SVW (PJW), 2012 U.S. Dist. LEXIS 158417, at *8 (C.D. Cal. Oct. 18, 2012) ("the touchstone is whether the parties' legal relationship has changed under judicial imprimatur"). In this case, the Court concluded – and Plaintiffs argued – that the Cooper Declaration, standing alone, was insufficient to render many of Plaintiffs' injunctive relief claims moot. Only after Kraft agreed to be bound by a court-ordered injunction were Plaintiffs remaining claims dismissed. *Cf. Envtl. Prot. Info Ctr. v. Pac. Lumber Co.*, 229 F. Supp. 2d 993, 1004 (N.D. Cal. 2002) ("[A] defendant acting in accordance with a court order cannot be presumed to be acting gratuitously . . . [Defendants] could have been held in contempt had they continued [the enjoined practice] in contravention of the court order. Thus, plaintiffs' efforts resulted in a court-ordered change in the relationship between the parties, supporting compensation under *Buckhannon*."). Moreover, while "a consent decree does not always include an admission of liability between [the plaintiff] and the defendant, it nonetheless is a court-ordered 'change [in] the legal relationship between [the plaintiff] and the defendant." *Buckhannon*, 532 U.S. at 604 (citation omitted). Therefore, while Kraft did not admit wrongdoing when it agreed to be bound by this

---

[5] As stated in the September 29, 2011 tentative ruling (subsequently adopted as the Court's final ruling):
> The gist of Plaintiffs' complaint (as it was originally pled) was that the presence of trans fat, or PHVO, in the subject products made certain of Kraft's claims about their healthfulness - for example that they are "wholesome," that they "support kids' growth and development," that "nutritionists recommend" eating them, that they represent "sensible solutions," "steps to a better you," and a "smart choice" - deceptive. Subsequently, Plaintiffs added a number of claims that were either unrelated or only tangentially related to their trans fat claims. For example, they alleged that such statements as "Made with Real Vegetables," "Graham," and "Made with Ginger and Molasses" were misleading to consumers.

*See* Docket No. 145 at 2 of 6. Indeed, a comparison of the initial Complaint (Docket No.1) with the injunction issued herein (Docket No. 249), clearly demonstrates the Plaintiffs' claims were greatly reduced during the course of this litigation.

Court's injunction, the litigation nevertheless resulted in a "court-ordered change" in the legal relationship between the parties.

Defendant also argues that because this Court rejected many of Plaintiffs' requested forms of relief, especially Plaintiffs' repeated motions for class certification, Plaintiffs have "lost this case." Def. Opp. at 17. That Plaintiffs did not succeed on all of their claims, however, is not dispositive for the purposes of the "prevailing" or "successful" party analysis. *Cf. Richard S. v. Dep't of Developmental Servs.*, 317 F. 3d 1080, 1087 (9th Cir. 2003) ("Contrary to the argument advanced by defendants, prevailing party status is not determined by the degree of success achieved") (analyzing attorneys' fees under the ADA and 42 U.S.C. § 1988). "[I]t is sufficient if the plaintiff achieved partial success or succeeded on *any* significant issue in the litigation which achieved *some* of the benefit the plaintiff sought in bringing the suit." *Marine Forests Soc'y v. Cal. Coastal Comm'n*, 160 Cal. App. 4th 867, 878 (2008) (emphasis in original). In addition, under the CLRA, "a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, *or otherwise*." *Graciano*, 144 Cal. App. 4th at 150-51 (emphasis added) (citation and alterations omitted).[6]

The Court would, however, agree with Defendant that Plaintiffs' status as a "prevailing" and "successful" party does not extend to changes made by Kraft relating to its business practices, food formulas, or anything else not covered by the permanent injunction issued by this Court. Def. Opp. at 20-21. Plaintiffs never achieved any change in Kraft's ingredients, there was no "judicial imprimatur" obligating Kraft to reformulate its products, and the Court previously concluded that many of Plaintiffs' claims premised on Kraft ingredients were preempted under federal law. In the absence of a court order requiring the changes for which Plaintiffs seek credit, they are limited to seeking attorneys' fees under the so-called catalyst theory.[7] *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 844 n. 11 (9th Cir. 2007) (per curiam). But in addition to the fact that the evidence in this case does not adequately support an award under this theory, "a plaintiff seeking attorney fees under a catalyst theory must first reasonably attempt to settle the matter short of litigation." *Graham*, 34 Cal. 4th at 577; *Mundy v. Neal*, 186 Cal. App. 4th 256, 260 (2010). Here, Plaintiffs sent a CLRA demand letter to Kraft on February 10, 2010, the same day they filed their complaint. Pl. Ex. 4, Docket No 290-5. This letter, in which the Weston firm threatens to "seek damages," does not evidence a reasonable attempt to "settle the case before filing it." *Mundy*, 186 Cal. App. 4th at 260; *see also Herson v. City of Richmond*, No. 09-2516, 2012 U.S. Dist. LEXIS 49761, at *7 (N.D. Cal. Mar. 9, 2012) (fee award improper where "Defendant had no[] opportunity to address the harm

---

[6] Given that the Court has concluded that Plaintiffs are "prevailing" and "successful" under *both* the CLRA and § 1021.5, and because whether the remaining requirements of § 1021.5 have been met would not impact the total amount of fees that the Court is awarding in this case, the Court assumes for the sake of its analysis that Plaintiffs are entitled to fees under both statutes.

[7] Plaintiffs assert that because they sought an order enjoining Kraft from labeling only those products that "contained the *ingredients* at issue," their lawsuit somehow "induced" Kraft's other changes in its business practices and food formulas. Pl. Reply, Docket No. 298, at 28. The Court finds this "inducement" argument unpersuasive for a variety of reasons, but particularly in light of the Court's early conclusion that many of Plaintiffs' trans fat claims were preempted by federal law, as well as Plaintiffs' repeated failures to obtain class certification.

alleged by Plaintiffs prior to suit").[8]

### B. The Amount of the Award

"Whether an [attorney fee] award is justified and what amount the award should be are two distinct questions, and the factors relating to each must not be intertwined or merged." *Graciano*, 144 Cal. App. 4th at 153-54 (quoting *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1998)); *see also Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615, 626 (2000).

Plaintiffs argue that their request for $3,298,937.15 in attorneys' fees is reasonable because their rates are in line with those prevailing in the community, similar to those recently approved by district courts in California, reasonable by comparison to the averages as approved in other false advertising actions, and the total hours billed were reasonable "at all points in the litigation." Pl. Mot. at 24-28. Plaintiffs also assert that the application of a 2.3 multiplier is reasonable in light of the atypical nature of this false advertising claim, the contingent risk of compensation, preclusion of other employment, "Kraft's dragging the case out as long as possible," and the novelty and difficulty of the lawsuit as well as the skill of counsel. Pl. Mot. At 28-30. Finally, Plaintiffs argue that they are entitled to costs under Cal. Code Civ. P. § 1033.5(a)(1), (3), (4) and (7), and request additional "reasonably necessary" costs under §1033.5(c). *Id.* at 35.

To determine whether Plaintiffs' requested amount is reasonable, the Court: (1) calculates the "lodestar" figure by "multiplying the number of hours the prevailing party reasonably expended on the litigation" by "a reasonable hourly rate for the region and for the experience of the lawyer;" and (2) may "adjust [the lodestar] upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors[.]" *In re Bluetooth*, 654 F.3d at 941-42. "Notably, the court may reduce a requested fee award, or deny one altogether, where a fee request appears unreasonably inflated." *Perez v. Safety-Kleen Sys., Inc.*, No. C 05-5338 PJH, 2010 U.S. Dist. LEXIS 23612, at *10 (N.D. Cal. Mar. 15, 2010) *aff'd* 448 Fed. Appx 707, (9th Cir. 2011); *cf. Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 991 (affirming denial of fees where the request was "grossly inflated when considered in light of the single claim on which plaintiff succeeded [and] the amount of damages awarded on that claim"). A district court "is not required to set forth an hour-by-hour analysis of the fee request," but rather "has the authority to make across-the-board percentage cuts in either the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (citation omitted).

At the outset, the Court would note that it finds the amount of fees requested by Plaintiffs in this case – over $3 million – to be *grossly* inflated.[9] When considered in light of the relatively

---

[8] Plaintiffs also argue that the catalyst theory contains a "futility" exception to the "prelitigation attempt to settle" requirement and that they would have been unable to settle with Kraft before filing suit if they had tried. Pl. Reply at 30. Even if such an exception existed, the Court would find it inapplicable to facts of this case in light of Kraft's voluntary agreement to be bound by the Court's order as well as Kraft's decision to stop using several of the challenged statements before this suit was filed.

[9] The Court also notes that the amount sought by Plaintiffs appears grossly disproportionate relative to other class action cases where, unlike here, the plaintiffs actually obtained class certification and some financial or proprietary compensation for class members. *See, e.g., Fulford v. Logitech Inc.*, No. 08-2041, 2010 U.S. Dist.

limited success that Plaintiffs had in this lawsuit, the "unreasonably inflated" nature of Plaintiffs' request alone is likely sufficient to deny "altogether" the fees request. *See Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982); *Perez*, 2010 U.S. Dist. LEXIS 23612 at *10. While Plaintiffs prevailed in securing a permanent court order prohibiting Kraft from using the four phrases "Sensible Snacking," "Sensible Solution," "Help Support Kids' Growth and Development," and "Smart Choices" on the packaging for a number of the challenged products, Docket No. 260 at 3-4, Plaintiffs failed in their initial and extensive efforts to challenge much more of Kraft's packaging language on the basis of the trans fat content of those products and on the three separate occasions where they sought to obtain class certification, and many of their other claims failed as a matter of law. Thus, even if one finds that Plaintiffs did prevail in this action, it was only as to a relatively minor portion of their lawsuit and, in fact, they did lose on most of the motions/arguments which they presented in this case. Courts "should award only the amount of fees that is reasonable in relation to the results obtained." *See Chavez*, 47 Cal. 4th at 989.

The Court, therefore, would only award Plaintiffs those fees that are reasonably related to the injunction and not fees for time spent litigating unrelated issues.[10] For example, Plaintiffs should not receive reimbursement for fees incurred in seeking class certification since all of those requests were denied. *See Marlo v. United Parcel Serv., Inc.*, 453 Fed. Appx. 682, 684-85 (9th Cir. 2011) (deducting from lodestar fees incurred in seeking certification).

Plaintiffs submitted a lodestar based on a staggering total of 3,643.2 hours (2,365.1 attorney hours and 1,278.1 law clerk and paralegal hours) billed during three years of litigation and on rates that they argue are "reasonable." *See* Pl. Appendix 1, Docket No. 272 at 27; Weston Decl., Docket No. 285. While the Court finds that the *rates* listed by Plaintiffs to be generally reasonable, Fitzgerald Decl., Docket No. 274, the Court concludes that the *total number of hours* suggested by Plaintiffs – and the division of labor between attorneys, law clerks, and paralegals – is far from a reasonable reflection of the time and effort Plaintiffs' expended relative to their limited success in this lawsuit. Viewed in proper context, and upon examination of the fee documentation submitted by Plaintiffs, the Court would determine that no more than 200 attorney hours and 30 law clerk and paralegal hours were "reasonably" expended in relation to Plaintiffs' success in securing the injunction to which Kraft voluntarily agreed (which would also include portions of the time Plaintiffs' counsel spent on motions where they were successful). In addition, the Court would conclude that it is not reasonable for senior attorneys to have billed more than 20% of the hours devoted to the limited, relatively simple labeling dispute on which Plaintiffs prevailed. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, (1980) (courts may deny compensation for "hours that are excessive, redundant, or otherwise unnecessary"). Indeed, the injunction applied only to four of the statements challenged

---

LEXIS 144437, at *8 (N.D. Cal. March 5, 2010) ($665,000 in fees awarded to counsel where each class member received a replacement remote control); *Wilson v. Airborne, Inc.*, No. 07-770, 2008 U.S. Dist. LEXIS 110411, at *35-36 (C.D. Cal. Aug. 13, 2008) (awarding counsel $3.4 million in fees where the certified class had a $23.25 million settlement fund).

[10] Nor are the issues related to the four specific phrases enjoined by this Court so "inextricably intertwined" with the lengthy class certification motions or the other major issues (unsuccessfully) litigated by Plaintiffs in this three-year dispute to warrant the massive award they now seek. *Cf. Palestino v. Johnson & Johnson Prods., Inc.*, 212 F.3d 493, 518 (9th Cir. 2000).

by Plaintiffs (some of which Kraft had ceased using before the filing of the lawsuit) and the Court simultaneously rejected several of Plaintiffs' challenges to Kraft's other statements because the labels were not "affirmative misrepresentation[s]" and not likely to deceive a reasonable consumer. Docket No. 258 at 3-5.

Using an average of Plaintiffs' proposed figures, the Court concludes that the reasonable rate for "senior attorneys" should be $550. *See* Fitzgerald Decl. at 3. Similarly, using an average of Plaintiffs' proposed rates, the Court concludes that the reasonable rate for "junior attorneys" should be $352. The Court finds that the reasonable rate for law clerks and paralegals should be $211.66.[11] Multiplying the number of reasonable hours expended litigating the labeling issue by the reasonable hourly rates (with "junior attorneys" devoting 80% of the attorney hours and "senior attorneys" devoting 20%), the Court concludes that the value of fees awarded should be: (1) $56,320 for junior attorneys; (2) $22,000 for senior attorneys; and (3) $6,349.80 for law clerks and paralegals. Additionally, the Court should find that none of the factors advanced by Plaintiffs – the purported "exceptional results," "contingency risk," and skill level or difficulty of litigation – warrants the imposition of a positive lodestar multiplier. Thus, the total amount of attorneys' fees should be $84,669.80.

Plaintiffs also seek costs in the amount of $18,132.56. Consistent with the foregoing analysis, the Court concludes that Plaintiffs are entitled costs – but only those they incurred in connection with litigating the injunction. Having considered Plaintiffs' appendix of litigation expenses, and in relation to Plaintiffs' relative success, the Court would award Plaintiffs costs in the amount of $2,300.

## IV. Conclusion

In light of Plaintiffs' relatively limited success in this lawsuit, the Court would GRANT Plaintiffs' motion for attorneys' fees, but only in the amount of $84,669.80. The Court would also GRANT Plaintiffs' motion for costs in the amount of $2,300. These figures reflect the rates and effort *reasonably* expended in obtaining the injunction issued by the Court in this Action.

---

[11] For the purposes of these calculations, the Court considered the "senior attorneys" to be "Partners" as well as Courtland Creekmore, a senior associate whose billable rate is $500 per hour. Otherwise, the Court's calculations were based on an average of the categories (*e.g.* "associate" and "law clerk") expressly listed by Plaintiff. Fitzgerald Decl. at 3.