UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1028-GW(AGRx) | Date | April 29, 2015 |
|---|---|---|---|
| Title | *Evangeline Red, et al. v. Kraft Foods, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **(IN CHAMBERS): FINAL RULING ON PLAINTIFFS' RENEWED MOTION FOR ATTORNEYS' FEES [338]**

Attached hereto is the Court's Final Ruling on Plaintiff's Motion for Attorneys's Fees. The Court GRANTS the Renewed Motion for Attorney's Fees in the amount of $11,368.25.

:

Initials of Preparer   JG

*Evangeline Red. et al. v. Kraft Foods. Inc.*, Case No. 10-CV-1028-GW(AGRx)
Final Ruling on Plaintiffs' Renewed Motion for Attorney's Fees

      Plaintiffs Evangeline Red and Rachel Whitt (collectively, "Plaintiffs") filed this putative class action against Kraft Foods, Inc. ("Kraft") in 2010. On October 26, 2012, after extensive litigation, the Court denied Plaintiffs' Second Renewed Motion for Class Certification finding that the claims of eight out of the ten proposed subclasses were moot and the other two sub-classes failed as a matter of law. *See* Docket Nos. 253, 259. Plaintiffs filed their first Motion Attorney's Fees in February 2013, seeking $3.3 million. In a tentative ruling issued at the April 8, 2013 hearing, after characterizing Plaintiffs' fee request as "grossly inflated," and reminding Plaintiffs that they had "pretty much lost," the Court awarded $101,702.38 in fees and costs for the work performed by Plaintiffs' counsel up to that point in time. *See* Docket Nos. 299, 301. Thereafter, Kraft's agreed to settle Plaintiffs' individual claims. Plaintiffs then filed the present Renewed Motion for Attorney's fees – seeking $1.9 million – primarily for work the Court already considered (and provided for) when ruling on Plaintiffs' initial fee motion. *See* Docket No. 338-1. In its tentative ruling on the motion, the Court indicated that it was considering either denying the new attorney's fees request outright or severely limiting the amount granted; but at the hearing the matter was taken under submission. *See* Docket No. 352. Both sides filed supplemental papers on issues involved in the motion. *See* Docket Nos. 353, 354. For the reasons discussed below, the Court now GRANTS Plaintiffs' Motion, but awards them only $11,368.25 in fees.

## I. Background

      Plaintiffs filed this putative class action against Kraft in February 2010, challenging labels on certain Kraft food products. *See* Docket No.1. Following several motions to dismiss or strike (*see* Docket Nos. 17, 29, 37, 63, 76), Plaintiffs' Second Amended Complaint ("SAC") became the operative pleading in this case. *See* Docket No. 58. The SAC describes Kraft's labeling of "Teddy Grahams," "Honey Maid Grahams," "Premium Saltines," "Vegetable Thins," "Ginger Snaps," and "Ritz Crackers" products as false and misleading under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), False Advertising Law (Cal. Bus. & Prof. Code § 17500), and Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq*., "CLRA"). *See, e.g.*, SAC ¶¶ 5-6, at 175-86.

      On three separate occasions, this Court rejected Plaintiffs' attempts to certify a class. *See* Docket Nos. 145, 216, 258. First, Plaintiffs sought certification as a Rule 23(b)(3) class for monetary damages. In its initial denial of Plaintiffs' certification motion, the Court concluded that there was no commonality or ascertainable class under Rule 23(a), and expressed doubt as to the adequacy of Plaintiffs' ability to represent class members. *See* Docket No. 145 at 8-10. The Court also suggested that Plaintiffs' requests for monetary relief would necessitate individualized inquiries regarding the amount of damages for each class member, making class certification inappropriate. *Id.* at 16. In its denial of Plaintiffs' second class certification motion, the Court again held that the class was not ascertainable, and that "concerns regarding manage-ability and

the inevitability of individualized damages calculations" defeated Rule 23(b)(3) predominance. *See* Docket No. 212 at 15.[1] However, the Court allowed Plaintiffs to amend their motion to seek class certification of injunctive relief claims under Rule 23(b)(2). *See* Docket Nos. 216-18.

In responding to Plaintiffs' subsequent motion to certify the proposed injunctive relief class, Kraft argued that because it was no longer using certain of the challenged health and wellness labels – and had no plans to use them in the future – Plaintiffs' claims were effectively moot. *See* Docket No. 221 at 5-7. The Court rejected that argument, concluding that Plaintiffs' claims would be moot "if and only if Kraft agree[d] to stipulate to a Court Order" preventing it from reintroducing the challenged labels. *See* Docket No. 245 at 5.[2] Ultimately, Kraft voluntarily agreed, and, in October 2012, the Court entered an order prohibiting Kraft from using "Sensible Snacking," "Sensible Solution," "Help Support Kids' Growth and Development," and "Smart Choices" on the packaging for a number of the challenged products. *See* Docket No. 260 at 3-4.

In February 2013, Plaintiffs submitted their first Motion for Attorney's Fees, in which they sought $3.3 million for (1) enjoining Kraft from using certain phrases on its packaging, and (2) causing a change in Kraft's business practices. *See* Docket No. 284 at 4-5. Plaintiffs arrived at the $3.3 million dollar figure by increasing their $1.43 million lodestar calculation by a 2.3 multiplier for "exceptional results." *See id.* at 15-25. After characterizing Plaintiffs' fee request as "grossly inflated," particularly for a case where they "pretty much lost," the Court awarded Plaintiffs $101,702.38 in fees and costs based on the "very, very minor point" on which Plaintiffs arguably succeeded – Kraft's agreement to submit to an order prohibiting it from re-introducing food labels it had largely stopped using before the case was filed. *See* Docket Nos. 299; Transcript ("Tr.") 4/8/13, Docket No. 305, at 4:2-12 ("Let me just be blunt: [You] guys were the prevailing parties on a very, very minor point of the case . . . .You failed on most of the stuff in this case . . . . I found that for a small portion of the case, you were the prevailing party and it's that portion that I decided to award attorney's fees on. But let's not kid ourselves."). The fee award also included payment for Plaintiffs' preparation of their fee motion ("fees on fees"). *See* Docket No. 301.[3] In reaching its decision, the Court considered all of Plaintiffs' work to date, and awarded reasonable fees for the small fraction related to Plaintiffs' "limited success." *See* Docket No. 299 at 5-10.

In May 2013, having repeatedly denied Plaintiffs' attempts to certify a class, the Court encouraged the parties to settle Plaintiffs' individual claims. Tr. 5/30/13, Docket No. 310. In so

---

[1] After this second ruling, Plaintiffs appealed the order denying certification of a damages class, arguing to the Ninth Circuit that a Rule 23(b)(2) class for injunctive relief was "insufficient consolation." The Ninth Circuit denied that petition. *See* Docket No. 237.

[2] Kraft decided to stop using most of the challenged statements before this lawsuit was filed, but at least one of the challenged labels was used until March 2012. *See* Docket No. 245 at 3-4.

[3] The fee award included nothing for changing Kraft's business practices because: "Plaintiffs never achieved a change in Kraft's ingredients, there was no 'judicial imprimatur' obligating Kraft to reformulate its products," the "Court . . . concluded that many of Plaintiffs' claims premised on Kraft ingredients were preempted under federal law," and because Plaintiffs did not establish that they were a "catalyst" for any changes. *See* Docket No. 299 at 7-8.

doing, the Court advised Plaintiffs to be "realistic" about their refusal to settle on an individual basis, suggesting that they reach a settlement preserving the right to appeal the Court's class certification rulings, but indicating that holding out for a classwide monetary settlement – after the Court had already rejected class certification multiple times – was unreasonable. *See id.* at 8:20-23 ("The problem is you are not going to get a class settlement unless there is a reversal by the district court. So you are not being realistic in that regard."). Plaintiffs nonetheless initially refused to settle their claims on an individual basis. *See* Docket No. 346 at 15:23-16:2. Ultimately, however, Plaintiffs' individual claims were resolved in a settlement preserving Plaintiffs' rights to appeal this Court's class certification rulings. *See* Docket No. 345 at §§ 2, 4. Aside from that settlement, there were no other developments in this case, and nothing else conferring value to the putative class or the general public since the Court issued its Order on Plaintiffs' first fee motion.

Nonetheless, in their second fee motion, Plaintiffs sought $1.9 million dollars based on a lodestar calculation of $1,587,025.50[4] – primarily for work the Court already considered in the last fee motion – increased by a 1.25 multiplier for "exceptional results." *See* Docket No. 338-1.[5]

## II. Legal Standard
### A. Motions for Reconsideration

A district court has the inherent power to reconsider or modify interlocutory orders before entering a final judgment. *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989); Fed. R. Civ. P. 54(b). But motions for reconsideration are highly disfavored and may only be made on the following specifically-identified grounds:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

C.D. Cal. L.R. 7-18. Further, no "motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." *Id., see also, e.g., Golden Gate Audobon Soc., Inc. v. U.S. Army Corps of Engineers*, 732 F.Supp.1014, 1024 (N.D. Cal. 1989) (declining explicit – rather than de facto – request to reconsider earlier fee ruling where plaintiffs failed to identify some changed circumstance warranting reconsideration).

### B. Attorney's Fees Under the CLRA

The CLRA provides that the "court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." Cal. Civ. Code § 1780(e). Since

---

[4] Plaintiffs' prior lodestar calculation resulted in a $1.43 million base figure before they applied a multiplier.

[5] Plaintiffs have not designated this motion as one for reconsideration under Local Rule 7-18.

the CLRA does not define the term "prevailing plaintiff," California courts have fashioned various tests for determining whether a plaintiff is truly the "prevailing" party. Relying on the general definition of "prevailing party" found in California Code of Civil Procedure § 1032, some courts have found that a plaintiff is a prevailing party under the CLRA if he receives a "net monetary recovery" on his claim. *See, e.g., Reveles v. Toyota by the Bay*, 57 Cal.App.4th 1139, 1154 (1997), *disapproved of on other grounds by Snukal v. Flightways Mfg., Inc.*, 23 Cal. 4th 754 (2000), and *Gavaldon v. DaimlerChrys/er Corp.*, 32 Ca1.4th 1246 (2004); *but see Chinn v. KMR Prop. Mgmt.*, 166 Cal.App.4th 175, 188 (2008) ("Construing the term 'net monetary recovery' [from § 1032] in context, we conclude that the Legislature did not intend to include settlement proceeds received by the plaintiff in exchange for a dismissal in favor of the defendant . . . . [Plaintiff] contends that the common sense meaning of the isolated term 'net monetary recovery' includes settlement proceeds. However, [Plaintiff's] interpretation would lead to an absurd result, as both plaintiff and defendants would be entitled to an award of costs as a matter of right [under § 1032] since Plaintiff would receive a net monetary recovery while Defendant received dismissal in its favor].").[6] Other courts have adopted "a pragmatic approach, determining prevailing party status based on which party succeeded on a practical level. Under that approach, the court exercises its discretion to determine the prevailing party by analyzing which party realized its litigation objectives." *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App.4th 170, 179 (2007) (quoting *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 150 (2006)).

### C. Attorney's Fees Under California's Private Attorney General Statute

""Under the so-called private attorney general statute [Cal. Code Civ. Proc. § 1021.5], a court may award attorney fees to the successful party in an action that has resulted in the enforcement of an important right affecting the public interest." *Vasquez v. State*, 45 Cal.4th 243, 247 (2008). A court may award fees only if, after "a practical and realistic assessment of the litigation," it determines that (1) plaintiffs were a "successful party;" (2) that the lawsuit "resulted in (a) enforcement of an important right affecting the public interest and (b) a significant benefit to the general public or a large class of persons, and (3) the necessity and financial burden of private enforcement of the important right make an award of fees appropriate." *Karukv. Cal. Reg'l Water Quality Control Bd*, 183 Cal.App.4th 330, 363 (2010). "[W]ithin the statutory parameters courts retain considerable discretion." *Vasquez*, 45 Cal.4th at 251. "In deciding whether to award fees, the court 'must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory.'"

---

[6] Califomia Civil Procedure Code § 1032(a)(4) states:
"Prevailing party" includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the "prevailing party" shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034.

*Id.* (quoting *Woodland Hills Residents Assn., Inc. v. City Council,* 23 Cal.3d 917, 938 (1979)). The burden is on the claimant to establish each prerequisite to an award of attorney fees under § 1021.5. *Ryan v. California Interscholastic Fed'n*, 94 Cal.App.4th 1033, 1044 (2001); *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Mkts.*, 127 Cal.App.4th 387, 401 (2005).

### D. Fee Calculation and Costs

"Whether an [attorney's fee] award is justified and what amount the award should be are two distinct questions, and the factors relating to each must not be intertwined or merged." *Graciano*, 144 Cal.App.4th at 153-54 (quoting *Flannery v. California Highway Patrol*, 61 Cal.App.4th 629, 647 (1998)); *see also Ramos v. Countrywide Home Loans, Inc.*, 82 Cal.App.4th 615, 626 (2000). Under both Ninth Circuit and California law, courts have discretion to use the lodestar method to calculate reasonable attorney's fees. *Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160, 1170 (C.D. Cal. 201 0) (citing *Ryan v. California Interscholastic Fed 'n*, 94 Cal.App.4th 1033, 1044 (200 1 )). The determination of reasonableness involves a two-step process. First, the court calculates the "lodestar" figure by "multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Second, "the court may adjust [the lodestar] upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors," "including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.*, 654 F.3d at 941-42 (citation omitted). "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." *Serrano v. Unruh*, 32 Cal.3d 621, 635 (1982); *accord Ketchum v. Moses*, 24 Cal.4th 1122, 1137 (2001); *Chavez v. City of Los Angeles*, 41 Cal.4th 970, 990-91 (2010).[7]

### III. Analysis

#### A. The Court Would Continue Treating Plaintiffs as "Prevailing" Parties Based on Their Very Limited Success in Obtaining an Injunction and Individual Monetary Settlement

Plaintiffs contend that they are the "prevailing" and "successful" parties in this case for three reasons: (1) they achieved a permanent injunction prohibiting Kraft from re-introducing certain challenged statements; (2) they caused changes in Kraft's business practices; and (3) they received an amount of money to settle their individual claims. *See* Docket No. 338-1 at 2:1-5:18. As referenced above, courts use a "pragmatic approach" in determining "prevailing party status [under the CLRA] based on which party succeeded on a practical level." *Kim,* 149 Cal.App.4th at 179. "It is settled that plaintiffs may be considered 'prevailing parties' for attorney's fees

---

[7] Cal. Code Civ. Proc. 1033.5 authorizes recovery of costs including court fees, service of process fees, witness fees, and expenses associated with deposition travel. *Bonner v. Fuji Photo Film*, 2008 U.S. Dist. LEXIS 113965, at *19 (N.D. Cal. Feb. 12, 2008). The court also has discretion to reimburse costs if they are "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." *Id.* (quoting § 1033.5(c)(2)). Similarly, Fed. R. Civ. P. 54(d)(l) states that "[u]nless a federal statute, [the Federal Rules], or a court order provides otherwise, costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

purposes [under the CLRA] if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Graciano*, 144 Cal.App.4th at 153 (quotation omitted). Similarly, "the California Supreme Court has taken a broad, pragmatic view of what constitutes a 'successful party'" under § 1021.5. *Graham v. Daimler Chrysler Corp.*, 34 Cal.4th 553, 565 (2004 ). A party need not prevail on every single claim to be considered a successful party within the meaning of § 1021.5. *Lyons v. Chinese Hosp. Ass'n*, 136 Cal.App.4th 1331, 1346-48 (2006).

  Here, as discussed in the Court's prior Order and during the hearing on Plaintiffs' first fee motion, Plaintiffs earlier prevailed on a minor point – securing the injunction preventing Kraft from re-introducing certain challenged statements, the vast majority of which Kraft had ceased using even before the lawsuit was filed. The Court will continue treating Plaintiffs as the "prevailing" or "successful" party to the extent they succeeded in securing that injunction. *See* Docket No. 299 at 5-7 (explaining the bases for the decision). For the reasons discussed in the Court's prior Order, the Court will continue to *not* treat Plaintiffs as "prevailing" or "successful" parties in achieving changes in Kraft's business practices, food formulas, or anything else not covered by the permanent injunction issued herein or the settlement of individual claims. *Id*. at 7-8 (explaining reasons).

  As for the cash settlements, the Court is of two minds. Plaintiffs filed this case seeking to recover millions of dollars on behalf of a Rule 23(b)(3) damages class for allegedly deceptive labeling on Kraft's snacks. *See generally* Docket Nos. 1, 27, 58. Many claims were dismissed; the Court denied class certification multiple times; there was no liability finding; and, ultimately, Plaintiffs settled their individual claims for a certain dollar figure. The settlement agreement contains no admission of liability. The fact that Plaintiffs, not Kraft, have taken an appeal is indicative as to which party achieved its litigation objectives. Compared to what the putative class initially sought, it is hard to see how Plaintiffs could consider this case a practical success.

  At the same time, the lawsuit was not a class action at the time of Plaintiffs' receipt of a monetary amount, and the cash settlement can be considered an achievement of one of Plaintiffs' primary objectives as individual litigants. Kraft had suggested that Plaintiffs' claims were worth $100-$200 apiece. Plaintiffs ultimately settled for a different amount. At least as far as these individual Plaintiffs are concerned, therefore, the Court could find that their net monetary recovery, coupled with the injunction, merits treating Plaintiffs as "prevailing" parties under the CLRA.[8] *See Reveles*, 57 Cal.App.4th at 1154; Kim, 149 Cal.App.4th at 179.[9]

---

[8] Standing alone, Plaintiffs' cash settlements clearly would not make them "successful" parties under § 1021.5 because the individual settlements did nothing to "benefit to the general public or a large class of persons." *See Karuk*, 183 Cal.App.4th at 363. But to the extent Plaintiffs are "prevailing" parties under the CLRA, their status as "successful" (or "non-successful") parties under § 1021.5 would not impact their total recovery.

[9] Contrary to Plaintiffs' argument, *see* Docket No. 350 at 3:4-8, it is not clear that any "net monetary recovery" received via settlement, no matter how trivial when compared to the initial relief sought, always converts the plaintiff into a CLRA "prevailing" party. In *Kim*, for example, the plaintiff "obtained many of his litigation objectives including return of the car, cancellation of the lease and a monetary recovery." *Kim*, 149 Cal.App.4th at 181. And in *Reveles*, on the morning of trial, the plaintiff obtained a settlement in the amount he had demanded at earlier stages of the case. *Reveles*, 51 Cal.App.4th at 1145. Thus, the cases Plaintiffs cite for the proposition that they are prevailing parties simply because they received a "net monetary recovery" do not exactly support their

**B. The Court Would Award Plaintiffs $11,368.25 in Fees for Work Performed after April 11, 2013**

Of course, whether "an [attorney's fee] award is justified and what amount the award should be are two distinct questions[.]" *Graciano*, 144 Cal.App.4th at 153-54. To determine whether Plaintiffs' requested amount is reasonable, courts: (1) calculate the "lodestar" figure by multiplying the number of hours reasonably expended litigating the successful claims by a reasonably hourly rate; and (2) adjust the lodestar "upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors," including "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 941-42; *Chavez*, 47 Cal.4th at 990-91 (indicating court may measure reasonableness of fees sought in relation to time spent litigating successful claims, rather than all claims, where litigation was unsuccessful overall); *Thorne v. City of El Segundo*, 802 F .2d 1131, 1141 (9th Cir. 1986) (explaining that even where successful and unsuccessful claims are related, the degree of overall success determines whether attorney's fees may be awarded for litigating unsuccessful claims: "If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive") (citations omitted); *Envtl. Prot. Info. Ctr. v. California Dep't of Forestry & Fire Prot.*, 190 Cal.App.4th 217, 238 (2010) (same). A district court "is not required to set forth an hour-by-hour analysis of the fee request," but rather "has the authority to make across-the-board percentage cuts in either the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (citation omitted); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013). Also, a court may deny a fee award altogether "where a fee request appears unreasonably inflated." *Perez v. Safety-Kleen Sys., Inc.*, No. 05-CV-5338 PJH, 2010 U.S. Dist. LEXIS 23612, at *10 (N.D. Cal. Mar. 15, 2010), aff'd 448 Fed. Appx 707, (9th Cir. 2011 ); *cf Chavez*, 47 Cal. 4th at 991.

Here, Plaintiffs' attempt to recover fees for work this Court has already considered, and in amounts that this Court already deemed "grossly inflated," is enough to warrant outright denial. The only significant development to occur since the Court ruled on the last fee motion was Kraft's agreement to settle Plaintiffs' individual claims. Yet, Plaintiffs' total lodestar has now increased from $1.43 million to $1.59 million, and this is despite receiving virtually nothing they set out to obtain through this litigation. In reaching this figure, Plaintiffs included all (or almost all) of the time the Court considered in ruling on their earlier fee motion.

As the California Supreme Court explained in *Serrano*:

---

conclusion. *See* Docket No. 338-l at 10:9-15; Docket No. 350 at 3:4-13. Indeed, other cases interpreting California Civil Procedure Code § 1032, upon which *Kim* and *Reveles* rely, have found that settlements conferring a "net monetary recovery" on the plaintiff in exchange for dismissal in the defendant's favor do not convert the plaintiff into a "prevailing" party. *See Chinn*, 166 Cal.App.4th at 188. The Court is also sensitive to the potentially deleterious incentives that flow from finding Plaintiffs "prevailing" parties in this case based on the relatively minor settlement amount. Arguably, in the next case, a defendant may refuse to settle plaintiffs' individual claims after defeating a class action in order to avoid an adverse "prevailing party" ruling. Were Plaintiffs' recovery here limited only to the settlement amount, this negative incentive would weigh more heavily. But since Plaintiffs received both injunctive relief and a settlement payment, the Court can find them (limited) prevailing parties.

> [If] the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked in the first place. To discourage such greed, a severer reaction is needful[.]

*Serrano*, 32 Cal.3d at 635 (quotations omitted). Thus, a "fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." *Id*. Here, the Court could find Plaintiffs' outrageous fee demand sufficient to warrant outright denial. *See, e.g., Chavez*, 41 Cal.4th at 991 ("[T]he trial court reasonably could and presumably did conclude that plaintiffs attorney fee request in the amount of $870,935.50 for 1,851.43 attorney hours was grossly inflated when considered in light of the single claim on which plaintiff succeeded, the amount of damages awarded on that claim, and the amount of time an attorney might reasonably expect to spend in litigating such a claim. This fact alone was sufficient, in the trial court's discretion, to justify denying attorney fees altogether.").

Even though the Court does not find the excessive fee request sufficient to warrant outright denial, it would drop the amount awarded to $11,368.25. While not styled as a reconsideration motion, in effect, Plaintiffs' efforts to recover fees for work done before April 11, 2013 is an attempt to re-litigate the issues addressed in the Court's prior fee Orders. In those Orders, the Court considered all of litigation to date and awarded Plaintiffs all reasonable amounts recoverable for obtaining the limited injunction and seeking fees. *See* Docket No. 299 (awarding all reasonable amounts recoverable for injunction); Docket No. 301 (awarding all reasonable amounts recoverable for fee petition).[10] Plaintiffs have presented nothing that would cause the Court to reconsider its prior Orders.

Once the fees for previously-considered work are stripped away,[11] Plaintiffs' request seeks roughly $45,473.00 for post-April 11 work to settle Plaintiffs' individual claims.[12] Even this amount is plainly excessive. For example, Plaintiffs seek nearly $3,000 for drafting a motion opposing Kraft's one-page request that its outside counsel appear telephonically for a settlement conference. *See* Docket Nos. 312-14; Docket No. 338-3 at 6 (7/9/13 entry). Then, at the related settlement conference, Plaintiffs insisted on an unrealistic classwide settlement – although the Court had rejected class certification multiple times – rendering the conference effectively a

---

[10] Although Plaintiffs again seek payment for changing Kraft's business practices, as discussed above, the Court already considered and rejected this argument in its last fee Order. *See* Note 3, *supra*. Nothing has changed.

[11] More than 60% of the newly submitted fees relate to the prior fee motion. As the Court stated previously, Plaintiffs have received all that they are possibly entitled to for their excessive "fees on fees" request. *See* Docket No. 301.

[12] Kraft calculates the remaining balance as $40,647.50. *See* Docket No. 346 at 15. The Court arrived at its figure by considering only time entries entered after April 11, 2013. Using this approach (and not including cents), the Court credited Gregory Weston with 28 hours for a base lodestar of $15,400, Jack Fitzgerald with 27 hours for a base lodestar of $14,850, Melanie Persinger with 5.5 hours for a base lodestar of $1,732.5, Paul Joseph with 5.3 hours for a base lodestar of $1,537, Dave Newberry with 35.8 hours for a base lodestar of $6,981, Jacob Sacks with 23.7 hours for a base lodestar of $4,621.5, and Allen Bradley with 1.8 hours for a base lodestar of $351.

waste. *See* Tr. 5/30/13 at 8:20-23 (Court encouraging Plaintiffs to be "realistic" about their settlement prospects: "The problem is you are not going to get a class settlement unless there is a reversal by the district court. So you are not being realistic in that regard."). Plaintiffs also seek nearly $10,000 for producing this fee motion, which is largely the same as their prior motion (including duplicative requests for fees the Court already rejected). Lead counsel also seeks $550 per hour for completing administrative tasks, *see, e.g.*, Docket No. 338-3 at 4 (5/31/13 entry: 18 minutes to "email to magistrate's clerk resetting up settlement conference"); (6/5/13 entry: 12 minutes for "communications with magistrate's deputy re scheduling settlement conference"), and the fee request even includes time apparently spent working on a different case, *see id.* at 8 (10/31/13) entry: "Researching cases cited by Court and *Smucker* to rebut argument that court may reduce fees for work related to unsuccessful claims"). Thus, the amount of fees Plaintiffs have requested for their post-April 11, 2013 work to settle their claims and file this motion is plainly excessive.

In addition, none of the factors advanced by Plaintiffs warrant an enhancement. Rather than "exceptional" results, as delineated above, Plaintiffs achieved virtually nothing they originally set out to accomplish. *See* Tr. 4/8113 at 4:2-12. As Judge King explained in a recent case involving Plaintiffs' counsel, "given the limited relief obtained," Plaintiffs' unbridled attempt to seek unwarranted fees, along with Plaintiffs' other conduct throughout this case, "demonstrates poor judgment." *See* Docket No. 341-5 (2/28/14 Order in which Judge King reduced Plaintiffs' counsel's requested fees by 90% after reducing base lodestar by 50%). Given the excessive over-billing (*i.e.* overworking of tasks), the limited results obtained, and questionable judgment demonstrated during parts of this litigation and settlement process (as described throughout this order), to the extent the Court awards Plaintiffs any fees it will do so in a fashion similar to Judge King – it would drop Plaintiffs' potentially-recoverable fee by 75%, leaving them $11,368.25.

## IV. Conclusion

For the reasons discussed, the Court GRANTS the Renewed Motion for Attorney's fees, but awards them only $11,368.25.